**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONRAD SMITH,

    and

DANNY McELROY

    and

BYRON EVANS

    and

GOVERNOR LATSON,

    and

MELISSA MARSHALL

    and

MICHAEL FORTUNE

    and

JASON DEROCHE

                   **Plaintiffs**,

    v.

DONALD J. TRUMP,  *"solely in his personal capacity"*

    and

DONALD J. TRUMP FOR PRESIDENT, INC.
c/o Bradley T. Crate (Treasurer)

    and

STOP THE STEAL L.L.C.
c/o George B. Coleman

    and

Civil Action No.  1:21-cv-02265-APM

ALI ALEXANDER, a/k/a
Ali Abdul Razaq Akbar, a/k/a Ali Abdul Akbar

    and

BRANDON J. STRAKA

    and

ROGER J. STONE, JR.

    and

PROUD BOYS, an unincorporated association

    and

PROUD BOYS INTERNATIONAL, L.L.C.
c/o Jason L. Van Dyke

    and

ENRIQUE TARRIO

    and

ETHAN NORDEAN

    and

JOSEPH R. BIGGS

    and

ZACHARY REHL

    and

CHARLES DONOHOE

    and

DOMINIC J. PEZZOLA

    and

OATH KEEPERS
c/o Christopher R. Grobl, Esq.

    and

STEWART RHODES
    and

THOMAS E. CALDWELL
    and

JESSICA WATKINS

    and

KELLY MEGGS

    and

ALAN HOSTETTER

    and

RUSSELL TAYLOR

    and

ERIK SCOTT WARNER

    and

FELIPE ANTONIO "TONY" MARTINEZ

    and

DEREK KINNISON

    and

RONALD MELE

    and

JOHN DOES 1-10,
                    **Defendants.**

## DEFENDANT ZACHARY REHL'S
## ANSWER TO THE COMPLAINT

Comes now the Defendant Zachary Rehl, and hereby Answers the Complaint of the Plaintiffs and reminds counsel of their responsibility under Federal Rules of Civil Procedure Rule 11 to inquire and research and have a sound basis for making allegations before making them, including as to each of the separate co-Defendants and recommends that Plaintiffs' counsel amend their Complaint.

## GENERAL ANSWER AND RESPONSES

Those members of the U.S. Capitol Police who were injured during violent confrontations with a few – very few – of the estimated 500,000 to 1 million people who came to the District of Columbia on January 6, 2021, deserve to be compensated, to the extent the legal system is capable of making them whole, for the injuries they sustained.  This includes not only these Plaintiffs but any of the U.S. Capitol Police who suffered injuries.

ZACHARY REHL is the son and grandson of police officers.

In July 2020, REHL participated in the Back the Blue rally in support of police officers, at the Fraternal Order of Police lodge in Philadelphia.

In the bail hearing for release of the Accused ZACHARY REHL, from pre-trial detention hearing in the U.S. District Court for the Eastern District of Pennsylvania, the prosecution conceded in proper candor:

> **To be sure, the indictment does not allege that Mr.  Rehl engaged directly in violence against officers or destruction of property * * * .**

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5 Hearing Before Honorable Richard A. Lloret, United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania, March 26, 2021, Case No.  2:21-mj-526-1, filed publicly as ECF Docket # 9 in that Court.

In parallel criminal cases, the U.S. Attorney's office has not cited to any evidence that ZACHARY REHL ever encountered or interacted with any U.S. Capitol Police officer or any other law enforcement officer either on January 6, 2021, or in events leading up to the demonstrations on January 6, 2021.

However, these Plaintiffs are not suing those who actually injured them, at least not in this suit, except as unknown John Does 1-10. Assuming that the Plaintiffs and other officers can get access through the U.S. Capitol Police to the identifications of those actually responsible from the FBI's massive review of video recordings, those who actually assaulted the Plaintiffs should pay to compensate the officers for their injuries.

One would logically anticipate that there is or will be a different, related lawsuit against those who actually are responsible for injuring these officers. But this is not that. That distinction must not be ignored or kept from view.

Defendant Rehl hopes that the extensive investigation by the Federal Bureau of Investigation and the U.S. Capitol Police and indeed private citizen projects which have identified from video recordings most or all of those who actually attacked and/or injured these Plaintiffs or other police officers can be made available to the officers because their employer is the same U.S. Capitol Police which is the primary complaining agency along with the Congress itself in criminal proceedings. Counsel is not sure of the mechanism for these officers to obtain those criminal investigatory records but is confident that the identity of those who attacked them can be provided so that law enforcement officers can be compensated by those violent tort-feasors.

In understanding these discussions, unfortunately, just as Kleenex ™ -- the brand name of one specific company – has become generic and any tissue is called a Kleenex (improperly,

inaccurately, and falsely) – the name "Proud Boys" has been comically mis-used throughout the political class and news media.

The Chair of the Proud Boys dissociated the organization from those who *as individuals* chose to attend events that day.  Enrique Tarrio told Proud Boys members not to wear any uniform, clothes or insignia ("colors") associated with the Proud Boys.  Tarrio clarified that anyone going to D.C. was going on their own, not as Proud Boys.

However, because Defendant Rehl is facing unfounded criminal prosecution for the same false claims, until Rehl is found not guilty and files a lawsuit for malicious prosecution and Government misconduct, Rehl cannot comment on the details of these events whether it is to his advantage or disadvantage without risking a waiver of his Fifth Amendment rights against self-incrimination.  Therefore, here, Rehl by counsel only admits or denies the allegations.  There are many places where clarification or comment is needed, but Rehl's ability to do so is limited.

All commentary or additional details is supplied by Rehl's counsel, Jonathon Moseley, through his prior investigation and research including before representing Rehl and is not a statement by Rehl.  Furthermore, Rehl's denial of the compound allegations of this civil Complaint are in some cases overbroad because of his inability to make statements that might risk waiving his Fifth Amendment rights.  After he is found not guilty, Rehl will have to amend and clarify his responses freed from this limitation.

Furthermore, the Complaint is a much more-detailed copy of other similar lawsuits such as by Members of Congress.  It continues the chronic use of extremely compound paragraphs.  Defendant Rehl, by counsel, requests that the allegations be restated in an Amended Complaint so that it can be more easily understood, analyzed, responded to, discussed, and decided.

For economy the Defendant includes the demand for all paragraphs below that each

matter not admitted or accepted without first-hand knowledge be proven by the Plaintiffs, and incorporates that demand with regard to all of his answers to the paragraphs of the Complaint.

Furthermore, throughout the Complaint's compound paragraphs, the Complaint alleges actions or statements by all of the Defendants but also an unbounded population of millions of other people.  Clearly it would be impossible for Defendant Rehl to know everything that other people did or said or speak for all of the people swept up in the Complaint's over-broad implications.  Therefore, Rehl can only admit or deny with regard to himself or maybe those about whom he has direct personal knowledge.  The Defendant also notes that some things are "known" only through news media reporting and endeavors to be clear if something is known or believed only through news reporting.

Finally, the Plaintiffs – no doubt their counsel by its mission as created – seem to think that if something is done or someone is affected in a completely color-blind, non-racial way, motivation, and purpose, that it becomes racism if the affected persons just happens to be Black. The entire lawsuit suffers from the defective logic that if someone gets in a car accident with a bus full of Vietnamese nuns, the driver committed racial violence *because* (unknown to him while driving) the passengers were Vietnamese.  There are no facts alleged nor possible that the thugs who assaulted the Plaintiffs knew their race especially underneath helmets.

The Proud Boys, of course, are led by a Black man who is an immigrant from Cuba.



**Enrique Tarrio, Chair of the Proud Boys**

The Proud Boys Club publicly proclaims that 20% of its membership are Blacks or Hispanics.  "I denounce White supremacy," Mr. Tarrio said in a Thursday interview with WSVN-TV in Miami. "I denounce anti-Semitism. I denounce racism. I denounce fascism. I denounce communism and any other -ism that is prejudiced toward people because of their race, religion, culture, tone of skin."  And "Mr. Reilly, author of "Hate Crime Hoax," said his research shows law enforcement officials estimate that 10% to 20% of Proud Boys members are racial minorities."  *See* Valerie Richardson, "Enrique Tarrio says Proud Boys not White supremacists," The Washington Times, October 1, 2020, accessible at:

https://www.washingtontimes.com/news/2020/oct/1/enrique-tarrio-says-proud-boys-not-white-supremaci/

Whether or not one might believe that to be true, the fact is undeniable that the Proud Boys want to present an image of inclusion, diversity, and welcoming of all races.  Publicly proclaiming themselves to be 20% minority and wanting to be seen as welcoming of all races completely destroys the ugly slurs lying about them as racist.

## ANSWERS TO INDIVIDUAL PARAGRAPHS OF THE COMPLAINT

*Answering Complaint Par. 1)*          The paragraph is compound.  Defendant accepts the allegations of the first sentence without dispute, lacking first-hand knowledge.  Rehl has never encountered or interacted with these Plaintiffs ever.  Rehl accepts as true without any first-hand knowledge based solely on public news coverage the allegations of the second sentence up to the hyphen.  Rehl denies that he ever engaged in any violent, mass attack in the District of Columbia at any time in 2021.  Rehl denies that he ever engaged, aided, and/or joined any attack in the District of Columbia at any time in 2021.  Rehl denies that he ever took any action or made any statement to or had any intent to prevent Congress from certifying the results of the 2020 Presidential election,

because that would leave the Office of President vacant and would not make Donald Trump

President for another four years.  Rehl publicly stated his request as a petition for redress of

grievances that Congress should meet and resolve disputes about the votes for President as provided

for by law.  Rehl denies that he caused any injuries to anyone in the District of Columbia at any time

in 2021.  Rehl denies that he caused anyone to violently assault, spit on, tear-gas, bear spray, or put

in fear of their lives anyone in D.C. in 2021.  Based on review of the videos produced and knowledge

of Trump supporters, Rehl affirmatively denies as a scurrilous falsehood that anyone used any racial

slurs or epithets in the presence of any U.S. Capitol Police officer, although many portrayed in videos

expressed the opinion that the officers should be on the side of the demonstrators.

   ***Answering Complaint Par. 2)***          Defendant Rehl denies all of the allegations of the

compound paragraph.

   ***Answering Complaint Par. 3)***          Defendant Rehl denies all of the allegations of the

compound paragraph, including but not limited to the fact that there is no Klu Klux Klan Act and

there is no basis for asserting the D.C. State law Bias-Related Crimes Act.

   ***Answering Complaint Par. 4)***          Defendant Rehl denies all of the allegations of the

compound paragraph.  Defendant demands that the Plaintiffs' counsel retract the paragraph as a

violation of FRCP Rule 11, in anticipation of filing a motion for sanctions.  The lies in the

paragraph are damnable lies, reprehensible and disgusting.  First, it is a falsehood that election

audit / recount efforts focused on jurisdictions with high Black populations.  Note that Pittsburgh

at 23% is only slightly higher than the nation's Black population.  However, Arizona and

Wisconsin as a whole have been the focus.  Concerns about the election started with Antrim

County, Michigan – which is 94.7% White. [1]  When massive errors were found in Antrim

County which appeared to have been won for Biden but once the spotlight was on, thousands of

---

[1]          https://datausa.io/profile/geo/antrim-county-mi/

votes were corrected to be for Trump, concerns about the accuracy of the election nation-wide went sky-high.  It was literally a 94.7% White County that started the passion for an accurate tally of the elections.[2]  Second, no Trump supporter focused on voter fraud and electoral fraud *because of* anyone's race, but because of them being run by Democrats and the actual evidence of actual fraud.  Is "Democrat" a race now?  Third, the genuine voters in those States and cities are the victims whose votes were stolen by electoral fraud and voter fraud.  *What is the question on the table?  What is it that Trump and his supporters claimed?*  If Democrat operatives cast fraudulent mail-in votes, the actual voter is deprived of their right to vote.  The genuine voters listed on the voter registration rolls are not the parties at fault.  The claim is liberal, mostly-White Democrat operatives bused in from liberal cities who steal mail-in ballots or fraudulently request ballots and intercept them and cast votes.  It is disturbing that these experienced, highly-political attorneys for the Plaintiffs want to rebut a claim they don't even begin to understand.  When mostly-White liberal activists "harvest" votes from nursing homes and Democrat-dominant neighborhoods, the residents of those cities and States are the victims whose votes are beings stolen if the ballots are altered or replaced.  It is preposterous to claim that the actual legitimate voters who had a right to vote in those cities were the ones who committed fraud.  If they cast their own ballots being registered to vote there, they could not be fraudulent votes.  Fraud would require someone casting a ballot who is not a resident of those cities entitled to vote there.  At least that was the non-racist claim of the Defendants.

> ***Answering Complaint Par. 5)***        Defendant Rehl denies all of the allegations of the compound paragraph.

---

[2]        Daniel Chaitin, "Michigan attorney claims 'explosive' evidence found in Antrim County 2020 election fraud case," <u>Washington Examiner</u>, May 18, 2021, accessible at https://www.msn.com/en-us/news/politics/michigan-attorney-claims-explosive-evidence-found-in-antrim-county-2020-election-fraud-case/ar-BB1gRZMk

***Answering Complaint Par. 6)***        Defendant Rehl denies all of the allegations of the compound paragraph.  Furthermore, Donald Trump did not hold a rally.  Supporters organized as "Women for America First" organized the rally.  Trump was not planned to speak at this rally until around the day before on January 5, announced after the U.S. Senate election in Georgia.  The "TRUMP's January 6 rally" that wasn't Trump's rally had nothing to do with any attacks on the U.S. Capitol or on the Plaintiffs and avers that "TRUMP's January 6 rally" was authorized by a permit issued by the U.S. Park Police and avers that "TRUMP's January 6 rally" was a 100% (perfectly) peaceful exercise of the right of free speech, the right to peaceably assemble, and the right to petition the government for redress of grievances – all rights guaranteed by the First Amendment to the U.S. Constitution.  Accordingly, Defendants did raise money to attend and plan to attend a perfectly peaceful, perfectly lawful rally at the Ellipse authorized by a permit from the U.S. Park Police and entirely innocent.  Also, videos reveal to counsel that the rally included around 10,000 Asian-Americans opposed to the Chinese Communist Party and therefore supporting Trump's continuation as President and handing out orange T-shirts.



Around 10% to 20% of the flags held up at the rallies at the Ellipse and at the U.S. Capitol were Vietnamese flags and flags of other Asian nations.

***Answering Complaint Par. 7)***        Defendant Rehl denies all of the allegations of the compound paragraph, at least with regard to him and anyone he knows.  Some of the items included in the long compound paragraph were apparently done by others.

***Answering Complaint Par. 8)***        Defendant Rehl denies all of the allegations of the compound paragraph, at least with regard to him and anyone he knows.  Some of the items included in the long compound paragraph were apparently done by others.

***Answering Complaint Par. 9)***        Although Defendant Rehl is not speaking for Defendant Trump, to the extent that the paragraph appears to imply the involvement of others at Trump's behest, Rehl denies all of the allegations of the compound paragraph, at least with regard to him and anyone he knows.  Some of the items included in the long compound paragraph may have been done by others.

***Answering Complaint Par. 10)***        Defendant Rehl denies all of the allegations of the compound paragraph, at least with regard to him and anyone he knows.  Rehl is without direct knowledge of any injuries sustained, including because others are responsible for those injuries.

***Answering Complaint Par. 11)***        Rehl accepts without first-hand knowledge of the Plaintiff's facts stated about himself as true.

***Answering Complaint Par. 12)***        Rehl accepts without first-hand knowledge of the Plaintiff's facts stated about himself as true.

***Answering Complaint Par. 13)***        Rehl accepts without first-hand knowledge of the Plaintiff's facts stated about himself as true.

***Answering Complaint Par. 14)***        Rehl accepts without first-hand knowledge of the

Plaintiff's facts stated about himself as true.

   ***Answering Complaint Par. 15)***  Rehl accepts without first-hand knowledge of the

Plaintiff's facts stated about himself as true.

   ***Answering Complaint Par. 16)***  Rehl accepts without first-hand knowledge of the

Plaintiff's facts stated about himself as true.

   ***Answering Complaint Par. 17)***  Rehl accepts without first-hand knowledge of the

Plaintiff's facts stated about himself as true.

   ***Answering Complaint Par. 18)***  Rehl accepts from news reports the allegations as

true, except that Rehl has no knowledge of the interpretation of whether Donald Trump was

acting in his person capacity, official capacity or perhaps both.

   ***Answering Complaint Par. 19)***  Rehl accepts from news reports the allegations as

true, except that there appears to be a clerical error as to whether the organization is an LLC or a

corporation.

   ***Answering Complaint Par. 20)***  Rehl has no knowledge of a STOP THE STEAL,

LLC now nor at any time in the past and has no knowledge to admit or deny the allegation.

   ***Answering Complaint Par. 21)***  Rehl has no knowledge of Ali Alexander, except

that his name surfaced when the U.S. Capitol Police released the permits they had issued for

events on the U.S. Capitol grounds for January 6, 2021.

   ***Answering Complaint Par. 22)***  Rehl has no knowledge to admit or deny the

allegation.  Rehl objects that the word "breached" is ambiguous and meaningless as used by the

Plaintiffs and others, often to refer to those who merely walked in open doors believing entry to

be permissible.

   ***Answering Complaint Par. 23)***  Rehl denies awareness of an entity called "STOP

THE STEAL" until the U.S. Capitol Police released the six (6) permits issued for demonstrations on January 6, 2021, to BUZZFED on September 9, 2021, but that "Stop the Steal" was a hashtag, shorthand, and slogan rather than the name of an organization, rally, or event.  Rehl responds to the compound paragraph that millions of people had meetings "at least once shortly before the Capitol attack" and this is a meaningless allegation.  Rehl accepts the other facts alleged in the paragraph, but not the insinuations and implications.

*Answering Complaint Par. 24)*        Defendant Rehl denies all of the allegations of the compound paragraph, except that there is a volunteer group called the Proud Boys Club.  Enrique Tarrio has explained that Proud Boys International, LLC was created without authorization by a supporter in Texas but was never used for anything and has been terminated.  Rehl responds that the Proud Boys do not have a structured organization.  They are not the Foreign Legion.  Rehl further avers that the Chair Enrique Tarrio dissociated the Proud Boys from the events of January 5-6, 2021, by noting the enthusiasm of those who wanted to attend but instructing them not to wear any insignia or uniforms of the Proud Boys.  Thus Tarrio made clear that no one was attending *as* a member of the Proud Boys, but only as individuals. The Proud Boys Club did not participate in events in D.C. on January 5-6, 2021, although some overlapping group of people were both attendees of those events and also independently members of the Proud Boys.  Those who chose to attend peaceful and legal events at the Ellipse of course coordinated their visit.

*Answering Complaint Par. 25)*        Defendant Rehl denies all of the allegations of the compound paragraph.  Defendant demands that the Plaintiffs' counsel retract the paragraph as a violation of FRCP Rule 11, in anticipation of filing a motion for sanctions.

*Answering Complaint Par. 26)*        Rehl denies the allegations of the paragraph and notes that Enrique Tarrio has publicly explained that Proud Boys International, LLC was never

authorized to be formed by a supporter in Texas and was never used for the Proud Boys Club.

For any further information, one would have to talk to Tarrio and Jason Van Dyke.

   ***Answering Complaint Par. 27)***   Rehl accepts the allegations as true based on news

reports.

   ***Answering Complaint Par. 28)***   Rehl is unable to respond to the mixture of

allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination.

   ***Answering Complaint Par. 29)***   Rehl is unable to respond to the mixture of

allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination.

   ***Answering Complaint Par. 30)***   Rehl is unable to respond to the mixture of

allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination, that is specifically with regard

to the Plaintiffs labelling and characterization of Rehl's position.  However, Rehl denies that he

breached the U.S. Capitol on January 6, 2021.  For public information, see:

https://youtu.be/rQDwsyFXYhg

   ***Answering Complaint Par. 31)***   Rehl is unable to respond to the mixture of

allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination.

   ***Answering Complaint Par. 32)***   Rehl is unable to respond to the mixture of

allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination.Rehl has no knowledge of

details of the Oath Keepers other than what is in public news media reporting.

*Answering Complaint Par. 33)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 34)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 35)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 36)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 37)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 38)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 39)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 40)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he

preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 41)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 42)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 43)*        Rehl is unable to respond to the mixture of allegations without drawing upon and stating his personal knowledge at a time when he preserves his Fifth Amendment rights against self-incrimination.

*Answering Complaint Par. 44)*        Rehl has no knowledge of the Defendants John Does 1-10 except that news reporting and videos taken show that there were actually some people who engaged in violent confrontations and attacks upon U.S. Capitol police officers.

*Answering Complaint Par. 45)*        This paragraph is a statement of law to which no response is required.

*Answering Complaint Par. 46)*        This paragraph is a statement of law to which no response is required, however, the Plaintiffs have intentionally polluted the jury pool in this District.

*Answering Complaint Par. 47)*        This paragraph is a statement of law to which no response is required, however depending on the claims, the factual foundation for jurisdiction might fail especially considering a count by count basis.

*Answering Complaint Par. 48)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts, except that Trump's Twitter account had approximately 83-86 million followers.  The allegations illustrate the absurdity of suing Rehl as if Rehl could influence or reach 83 million people.

*Answering Complaint Par. 49)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 50)*        Rehl accepts as true that Trump posted something on social media but answers that almost every quote of Trump's statements and Rehl's statements are usually misrepresentations and taken out of context.

*Answering Complaint Par. 51)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, including as being self-evidently false.  The changes to the election rules in the 2020 Presidential election violated Article II, Section 1 of the U.S. Constitution which invests only the States' legislatures with the power to set the rules for a Presidential election.  It is beyond dispute that the 2020 election was conducted in violation of Article II, Section 1's grant of exclusive authority to the legislatures.  The fact that Democrats then swiftly moved to try to make COVID-only measures permanent puts the lie to the excuse that the unconstitutional changes to election rules were because of COVID-19 rather than to corrupt the election.

*Answering Complaint Par. 52)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 53)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that whether Stewart Rhodes made statements speaks for itself.

**Answering Complaint Par. 54)**        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

**Answering Complaint Par. 55)**        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

**Answering Complaint Par. 56)**        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, and furthermore demands that Plaintiffs' counsel retract the despicable, reprehensible, and sanctionable lies in this paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  In addition to the outrageous and false race-baiting, the allegations concern the presidential debate in Columbus, Ohio, when **_Joe Biden_** – not Donald Trump -- mentioned the Proud Boys during the September 29, 2020, debate.

The moderator of the debate, Chris Wallace, asked debate participant Donald Trump during that debate:  [3]

---

[3]        C-SPAN, September 29, 2020, accessible at:  https://www.c-span.org/video/?475793-1/trump-biden-debate&live.  NOTE:  C-SPAN admits that the apparent transcript on the left side is computer-generated closed caption text, and is not prepared by any human and C-SPAN disclaims any claim to its accuracy.  One must listen to the actual words spoken in the video.  *See* Jonathon Moseley, "C-SPAN posting inaccurate transcripts of Trump briefings -Updated," American Thinker, April 30, 2020, accessible at:
https://www.americanthinker.com/blog/2020/04/cspan_posting_inaccurate_transcripts_of_trump_briefing

CHRIS WALLACE:  Are you willing tonight to condemn white supremacists and militia groups…"

DONALD TRUMP:  "Sure…"

CHRIS WALLACE:  "And to say that they need to stand down and not add to the violence in a number of these cities as we saw in Kenosha, and as we've seen in Portland"

DONALD TRUMP:  "Sure, I'm willing to do that."

CHRIS WALLACE:  "Are you prepared specifically to do it?

DONALD TRUMP:   "I would say almost everything I see is from the left wing not from the right wing."

CHRIS WALLACE:  "But what are you saying?"

DONALD TRUMP:   "I'm willing to do anything. I want to see peace."

CHRIS WALLACE:  "Well, do it, sir."

JOE BIDEN:  "Say it.  Do it.  Say it."

DONALD TRUMP:  [pause, thinking] "What do you want to call them?  Give me a name.  Give me a name.   Go ahead and who do you want me to condemn?"

CHRIS WALLACE: "White supremacists and right-wing militias"

**JOE BIDEN: "Proud Boys"**

DONALD TRUMP:  "Proud Boys…  Stand back and stand by.  But I'll tell you what, somebody's got to do something about Antifa and the left because this is not a right-wing problem.  This is a left-wing problem."

Thus, the allegation oft-repeated is a fraudulent lie.  There is no indication that Trump ever had the Proud Boys on his mind nor that he intended to communicate anything to them.  When Joe Biden suggested that Donald Trump should condemn the Proud Boys and tell them to stand down, Donald Trump agreed… but only upon Joe Biden choosing the target Biden's fixation and paranoia.

On the contrary, Trump disclaimed having any group or person in mind.  In the video

---

s.html.  Counsel searched for news media transcripts to cite to and found that none of them agree with each other or with the actual video of the candidates and mediator actually speaking on camera.

(not in written form), Trump visibly hesitates before asking "What do you want to call them? Give me a name. …"  indicating that he doesn't know specifically who Chris Wallace is talking about.

> "I don't know who the Proud Boys are. You'll have to give me a definition because I really don't know who they are. I can only say they have to stand down and let law enforcement do their work," Trump told reporters at the White House.
>
> The president then echoed his comments from Tuesday night, insisting that the "real problem" is antifa, the broad, far-left militant anti-facist movement.
>
> "Whatever group you are talking about, let law enforcement do the work. Now, antifa is a real problem. Because the problem is on the left. And Biden refuses to talk about it," Trump said.
>
> * * *  When asked by a reporter if he welcomed support from white supremacist groups or would denounce them, Trump said that "law and order" was important to his campaign, and added, "I have always denounced any form – any form of any of that, you have to denounce. But I also – Joe Biden has to say something about antifa."

Claire Hensen, "Trump: 'I Don't Know Who the Proud Boys Are,'" U.S. News, September 30, 2020, accessible at:  https://www.usnews.com/news/national-news/articles/2020-09-30/trump-i-dont-know-who-the-proud-boys-are

Note that it does not matter if trump secretly believed what he said.  It is a sanctionable misrepresentation in violation of FRCP Rule 11 to claim that the Proud Boys would be encouraged by Trump telling the world "I don't know who the Proud Boys are." Or "I can only say they have to stand down and let law enforcement do their work."  Or "Whatever group you are talking about, let law enforcement do the work."

When asked for the 100,000[th] time if he would denounce White supremacists – which Trump has always answered yes, he does – "I have always denounced any form – any form of any of that, you have to denounce."  This would not encourage or conspire with White

supremacists, if there are any left in the United States.

Rehl demands that Plaintiffs' counsel retract these scurrilous, incendiary, race-baiting allegations as violating Rule 11 and encourages a stop to these damnable lies.

***Answering Complaint Par. 57)*** Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, and further demands that Plaintiffs' counsel retract this paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  In particular, the Plaintiffs' counsel are very familiar with publicity and marketing and do not need to be instructed on when a leader of an organization is trying to make the best of sudden publicity.  These counsel cannot possibly believe their allegations as officers of the Court.

***Answering Complaint Par. 58)*** Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, and furthermore denies the implication that Donald Trump as the leader of the free world and running for re-election ever knew the Proud Boys' interpretation of his statements.  The debate and other remarks indicate that Trump had never heard of the Proud Boys until journalists wanted to bait him with outrageously-false accusations disguised as questions and Joe Biden raised the Proud Boys.

***Answering Complaint Par. 59)*** Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, at least as it relates to him, noting the wide array of players that the Plaintiffs sweep into combined and compound allegations.

***Answering Complaint Par. 60)*** Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that Rehl admits and agrees that as early as November 5, 2020, various people started using the slogan #stopthesteal.  That is, "Stop the Steal" was a slogan, not an organization or an event.

*Answering Complaint Par. 61)*        Assuming "major news outlets" has a specific meaning, Rehl accepts the allegations that major news outlets called the election for Biden and Harris.  Yet Rehl denies that the news media is empowered to decide the winners of elections.

*Answering Complaint Par. 62)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Lawyers like Plaintiffs' counsel familiar with the procedural stages of lawsuits know better than the general public the falsehood of these allegations by knowing how courts work.  Plaintiffs' counsel should withdraw the allegation pursuant to Rule 11.

*Answering Complaint Par. 63)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Lawyers like Plaintiffs' counsel familiar with the procedural stages of lawsuits know better than the general public the falsehood of these allegations by knowing how courts work.  Plaintiffs' counsel should withdraw the allegation pursuant to Rule 11.  They know that courts did not find a lack of factual report but based on procedural objections refused to hear the facts and evidence.  While journalists may not understand these distinctions, lawyers do.

*Answering Complaint Par. 64)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

**_Answering Complaint Par. 65)_**        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, and furthermore demands that Plaintiffs' counsel retract the despicable, reprehensible, and sanctionable lies in this paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  Since Guiliani never mentioned the race of any voter, the counsel for the Plaintiffs know their allegations to be false.  Nothing involving the 2020 election had anything to do with race, other than Trump and his campaign appealing to Blacks, Hispanics, and women that he wanted their vote, and Trump winning a greater proportion of Blacks and Hispanics than most other Republicans.  No racist or White supremacist would be attracted to a Republican candidate openly and persistently seeking the votes of Blacks and Hispanics (unless their choice was on factors other than race and race had nothing to do with the support of the candidate).

**_Answering Complaint Par. 66)_**        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, but the allegation includes the entire country involving unknown and unidentified people at unidentified locations at unidentified times.  No one can know everything that was done or not know everywhere.  Any statements actually made speak for themselves, but chronically statements are offered by Left-wing activists that do not cite to the actual statement and do not provide any documentary support and when one finds the actual document or video of the alleged statement it turns out not to be as represented and/or taken out of context.  For example, in one series of communications, as read on the radio on WMAL, an Oath Keeper said that he could not walk across the Mall that day because of his

physical condition and would stay at the hotel in Virginia.  Others responded – clearly making fun of him – that he would be their "QRF" (Quick Reaction Force).  That is a single guy who was too out of shape to walk on the mall would be their back-up.  They were clearly teasing him and ribbing him.  Yet, political Washington took it as serious.  Comments must be read and understood in context, including to determine when something is a statement of fact or something else like teasing a friend.  Therefore, Rehl must deny any supposed statement which does not cite to the actual text of the entire passage in full context.

*Answering Complaint Par. 67)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, but the allegation includes the entire country involving unknown and unidentified people at unidentified locations at unidentified times.  No one can know everything that was done or not know everywhere.  Any statements actually made speak for themselves, but chronically statements are offered by Left-wing activists that do not cite to the actual statement and do not provide any documentary support and when one finds the actual document or video of the alleged statement it turns out not to be as represented and/or taken out of context.

*Answering Complaint Par. 68)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, but the allegations concern unidentified communications at unidentified times.  No one can know everything that was done or not know everywhere.  Any statements actually made speak for themselves, but chronically statements are offered by Left-wing activists that do not cite to the actual statement and do not provide any documentary support and when one finds the actual document or video of the alleged statement it

turns out not to be as represented and/or taken out of context.

    ***Answering Complaint Par. 69)***    Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, but the allegation concern unidentified communications made at unidentified times.  No one can know everything that was done or not done everywhere.  Any statements actually made speak for themselves, but chronically statements are offered by Left-wing activists that do not cite to the actual statement and do not provide any documentary support and when one finds the actual document or video of the alleged statement it turns out not to be as represented and/or taken out of context.

    ***Answering Complaint Par. 70)***    Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, including for the reasons stated in response to Par. 68.

    ***Answering Complaint Par. 71)***    Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, including for the reasons stated in response to Par. 68.  However, Rehl does note that to the knowledge of most people "Stop the Steal" was a slogan.

    ***Answering Complaint Par. 72)***    Rehl would have no way of knowing, nor would his counsel, even if he could speak from personal knowledge rather than from his counsel's analysis of the facts and news coverage, what Donald Trump said in private phone calls.  However, with regard to 72(b) alleging at one point:

> TRUMP told Raffensperger, "I just want to find 11,780 votes, which is one more than we have [and one more than the 11,779 vote margin of defeat] because we won the state. . . . Fellas, I need 11,000 votes. Give me a break." TRUMP encouraged

Raffensperger to "reexamine" the election results but "with people who want to find answers."

Counsel for the Plaintiffs fully understand that in the federal and state lawsuits that had been filed, ***parties are REQUIRED to hold a FRCP Rule 26 consultation*** and that Trump was ***required*** to consult with Raffensperger about what each side was seeking in discovery and whether the other side would consent in whole or in part and how the parties would proceed with discovery. Counsel also understands that in every election-related lawsuit it is mandatory or nearly so to show that the lawsuit could change the outcome. So Plaintiff's counsel knows that when Trump said on a recorded phone call "I just want to find 11,780 votes, which is one more than we have because we won the state. . . . Fellas, I need 11,000 votes. Give me a break." Trump was addressing an essential legal element of the lawsuits, which he was required to analyze and present so that the lawsuit could proceed. He was required to consult on why he sought discovery as part of discussing what discovery he would be seeking in the lawsuits.

***Answering Complaint Par. 73)***        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts. Rehl furthermore demands that Plaintiffs' counsel retract the final allegations of the paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions. Plaintiff's counsel repeats the scurrilous construction of "marchers violently clashed with counter-protestors," without identifying who attacked whom. This is no better than saying that where the police go there is violence, without identifying that the criminals caused the violence. The constant scurrilous accusation that violence "resulted" is no better than saying that the police cause crime because the police and crime are often co-existent in the same place. The Proud Boys' mission is to block Left-wing thugs from breaking up and silencing conservative demonstrators. That's why the Left hates them so much… they help

27

conservatives get their message out without being bludgeoned into silence.

***Answering Complaint Par. 74)***        Rehl has no knowledge of the allegations of this compound paragraph, as all Proud Boys are not the same person.  However, Rehl notes that the Plaintiffs have admitted and confessed that "storming the capitol" (in Georgia) did not mean violence or attacks on anyone, as the Georgia event on November 18, 2020, unfolded peacefully.

***Answering Complaint Par. 75)***        Rehl admits parts of the first sentence of the compound paragraph, but does not admit who organized the protest.  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Rehl furthermore demands that Plaintiffs' counsel retract the final allegations of the paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  Plaintiff's counsel repeats the scurrilous construction of "the rally resulted in acts of violence against Black Americans" without even trying to allege who attacked whom.  No third year law student could turn in a paper with such a statement.  This is no better than saying that where the police go there is violence, without identifying that the criminals caused the violence.  The Proud Boys attend events to protect demonstrators from vicious Left-wing attacks by attackers such as ANTIFA and BLM (who are almost entirely White liberals, not actual Blacks).  Similarly, the Plaintiff's counsel perpetuates the lie sanctionable under Rule 11 that the removal of yard signs worth at most around $100 constitute vandalizing a building by the removal of a yard sign.

***Answering Complaint Par. 76)***        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Counsel for the Plaintiffs are especially knowledgeable and expert at public relations and promotion and know that "TRUMP 'needs to know from you that you are with him,'" is political puffery and no one takes that seriously as precise

fact.  Clearly, Trump was not literally checking which of the demonstrators were with him or not. Defendant's counsel gets about 10 text messages a day with messages such as "Donald Trump asked why your name was not on the list of donations."  No one believes that Trump is actually looking over a list of small donors and asking about me.  Plaintiffs' counsel knows full well that Rhodes' statement is political rhetoric, not literally true.

     ***Answering Complaint Par. 77)***     Rehl denies the allegations of the compound paragraph as being imprecisely stated, and reflecting the lack of interest in the laws governing the election of the President which gave rise to the petitions for redress of grievances and angry disagreements.  On December 14, 2020, the Electors in each State cast their votes in the legislature in each State Capitol.  But most importantly, Federal law ***DOES NOT*** require Congress to convene to count those ballots.  Federal law requires Congress meeting in Joint Session to ***HEAR DISPUTES*** and resolve them ***BEFORE*** counting the correct, accurate totals. The establishment in Washington seems to assume that the January 6, 2021, is the date upon which they pose for photographs, rather than doing real work.  This is vital because the demonstrators on January 6, 2021, were gathered to petition the government for redress of grievances that Members of Congress not only were refusing to do their job, but didn't comprehend what their job actually was that day (other than just posing for photographs). Congress proposed to do half its job.  The demonstrators demanded that Congress do and complete all of its job – including deciding which ballots to count (which slate of electors to count).  Many of those Members of Congress outraged at challenges to the Electoral College vote have actually themselves personally objected to Electoral College votes in years past.

     The First Superseding Indictment in the baseless criminal case against Zachary Relh admits and confesses on behalf of the U.S. Capitol Police as the primary complaining agency, that:

**36. On December 23, 2020, REHL posted on social media describing January 6, 2021, "as the day Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and yes, there will be a big rally on that day."**

Thus, the grand jury by indictment and the prosecution assisting in the drafting of the indictment admits and confesses that REHL's goal was to "rally" to get Congress "**to argue the legitimacy of the [E]lectoral [C]ollege votes**"  and – *for THAT  purpose* " **yes, there will be a big rally on that day.**"

Obviously, Congress could not "argue the legitimacy" of the Electoral College votes if Congress were obstructed from meeting in session.  Rehl wanted Congress to meet, not to be obstructed.  But Rehl wanted Congress to do its job, completely not half way.

*Answering Complaint Par. 78)*        Rehl denies the allegations of the compound paragraph.  Rehl demands that Plaintiffs' counsel retract the allegation that there were any extremists or white supremacist groups invited to or present at the demonstrations in the District of Columbia on January 6, 2021, pursuant to FRCP Rule 11.  There are few more outrageous false slurs today (which is evidence of the fading away of racism) than being called a racist.

*Answering Complaint Par. 79)*        Rehl denies the allegations of the compound paragraph.  The permit for the January 6 rally was submitted by Women for America First.  Six (6) permits for demonstrations on the U.S. Capitol grounds were issued for January 6, 2021.  Therefore, demonstrators were already planning to go the U.S. Capitol regardless of Trump's ideas on the subject.

*Answering Complaint Par. 80)*        Rehl denies the allegations of the compound paragraph.

*Answering Complaint Par. 81)*        Rehl denies the allegations of the compound paragraph, except that tens of thousands of people promoted the rally on December 6, 2021.

Any statements made by others speak for themselves if properly cited and presented in full context.

***Answering Complaint Par. 82)***      Rehl admits the allegations that Trump made the statements in Trump's "tweet" message on Twitter, based on the contents of the tweet.

***Answering Complaint Par. 83)***      Rehl denies the allegations of the compound paragraph, including because Trump never asked supporters to come Washington, D.C. "in order to prevent Congress from counting the electoral votes."  Trump could not be re-elected as President if Congress did not count the electoral votes.  That would leave no one as President.  The allegation made almost universally is manifestly absurd.  The only way Trump could be re-elected is if Congress met and decided disputes and counted the correct Electoral College votes.  No one wanted the office of President to be vacant and perhaps make Nancy Pelosi President.

***Answering Complaint Par. 84)***      Rehl denies the allegations of the compound paragraph.

***Answering Complaint Par. 85)***      Rehl does not have first-hand knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 86)***      Rehl does not have first-hand knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 87)***      Rehl does not have first-hand knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 88)***      Rehl does not have first-hand knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 89)***      Rehl denies the allegations of the compound paragraph.

***Answering Complaint Par. 90)***      Rehl admits the allegations of the compound

paragraph to the extent that the messages speak for themselves.

*Answering Complaint Par. 91)*        Rehl admits the allegations of the compound

paragraph to the extent that the messages – which have not been cited to specifically or provided

in full context -- speak for themselves.

*Answering Complaint Par. 92)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts, including because stopping the count of Electoral

College votes could not make Trump the President (for another term), would leave the

Presidency vacant and would probably make Nancy Pelosi President.

*Answering Complaint Par. 93)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 94)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 95)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 96)*        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts, in that the paragraph quotes to uncited messages

most likely taken out of context, but also because the public, prominent, consistent mission of the

Proud Boys and the Oath Keepers has always been to patrol and defend against the chronic

attacks by Left-wing thugs and anarchists such as the heirs of Mussolini's Black Shirts, ANTIFA.

**_Answering Complaint Par. 97)_**        Rehl is without personal knowledge of the allegations of the compound paragraph, but notes the persistent mistake that supporters of Trump coming to D.C. to demand that Congress hear disputes does not equal planning or preparing to attack anyone.

**_Answering Complaint Par. 98)_**        Rehl is without personal knowledge of the allegations of the compound paragraph, but notes the persistent mistake that "the enemy" referred to is ANTIFA and other Left-wing violent thugs.

**_Answering Complaint Par. 99)_**        Rehl is without personal knowledge of the allegations of the compound paragraph, but notes the persistent mistake that "reaction" in "Quick Reaction Force" means to _react_.  No one including these Plaintiffs' counsel seems to understand what the word "reaction" – to ANTIFA – means.

**_Answering Complaint Par. 100)_**        Rehl denies the allegations of the compound paragraph.  Rehl furthermore demands that Plaintiffs' counsel retract the allegations of the paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  The allegation is ridiculous.  No one in America is required to wear anything in particular as long as they wear something.  The allegation that the PROUD BOYS chose _not_ to wear their allegedly-provocative normal uniforms and insignia is ridiculous and disgusting.  Because no one has any obligation to announce themselves or display their affiliations, not wearing something cannot be an allegation of guilt.  The allegations are nonsense.  There is no obligation to wear a patch publicizing one's group memberships.  Moreover, clearly, Enrique Tarrio was dissociating the Proud Boys from the events held on January 6, 2021.  Clearly, the

quoted language shows the leader of a group saying that if you go to the January 5-6, 2021, rallies you are going as individuals, *NOT AS PROUD BOYS.*

      ***Answering Complaint Par. 101)***     Rehl has no first-hand knowledge of the allegations of the compound paragraph.

      ***Answering Complaint Par. 102)***     Rehl has no first-hand knowledge of the allegations of the compound paragraph.

      ***Answering Complaint Par. 103)***     Rehl denies the allegations of the compound paragraph, including in that Trump never sought to stop the count of Electoral College votes, which would prevent anyone from becoming President and would leave the Presidency vacant or make Nancy Pelosi President.  Trump and the demonstrators demanded that Congress  meet and hear and resolve disputed Electoral College votes.

      ***Answering Complaint Par. 104)***     Rehl denies the allegations of the compound paragraph, including in that Trump never sought to stop the count of Electoral College votes, which would prevent anyone from becoming President and would leave the Presidency vacant or make Nancy Pelosi President.  Trump and the demonstrators demanded that Congress  meet and hear and resolve disputed Electoral College votes.

      ***Answering Complaint Par. 105)***     Rehl denies the allegations of the compound paragraph.  The constitutional purpose of the Joint Session of Congress on January 6, 2021, is to hear and resolve disputes – not simply to do mathematics and pose for photographs.  One way of performing the constitutional obligation to hear and resolve disputes could be in the minds of some (though never done before) to send disputed votes back to the States.  Hundreds of State

legislatures sent letters to Pence asking Pence to send the question back to them.[4]  Many State

legislatures convene on set dates and those legislatures thought that they lacked the power to call

themselves into session, which is obviously a dubious idea but that's what they believed.

Therefore, those State legislatures asked to have the Electoral College ballots sent back to them

so they could resolve disputes and return the ballots in time for the inauguration of the President.

The Constitution requires Congress to ***convene*** on January 6.  It does not require Congress to

***finish*** on January 6.  Had Pence as the Presiding Officer of the U.S. Senate given time for the

pressurized steam to be released and the questions to be examined, the divisiveness and hostility

in our society could have been mostly avoided.  No one suggested that Pence had the authority to

choose the next President.  But as the Presiding Officer of the Senate Pence could have led the

Joint Session in making sure that all arguments were fairly heard with transparency and the

public would have confidence in the final result.  That is, the Defendants' petitions to the

Congress for redress of grievance may have been incorrect, but they were legitimate questions

working within our Constitutional system.  That is, those criminals and thugs who went crazy

and attacked police were not in any way carrying out the goals of these Defendants.

**Answering Complaint Par. 106)**       Rehl denies the allegations of the compound

paragraph, including because demonstrations at the U.S. Capitol were pre-planned weeks earlier

and the crowds were already planning to go to the Capitol.  The U.S. Capitol Police had issued

six (6) different permits for six (6) different demonstrations on January 6, 2021.  Furthermore,

stopping the Congress from certifying election results would not make anyone President and was

not the goal of any of the Defendants.  Furthermore, no one claimed that Pence would be taking

unilateral action but rather fulfilling his Constitutional duty to oversee the resolution of disputed

---

[4]       Dozens of letters from State legislators were published at NationalFile.com but in the
hysteria, the legislators have since scrubbed their involvement from the public record.

Electoral College votes. [5]  Pence's role was administrative.  The decisions would be made

pursuant to the Constitution and federal law and the State legislatures empowered by Article II,

Section 1, to govern the Presidential election.  Pence could not make a unilateral decision as to

who should be the next President and none of the Defendants ever suggested such a thing.

**Answering Complaint Par. 107)**        Rehl admits part of the compound and "marbled"

paragraph (that is, true and false allegations are inter-mixed in an unstructured way) and denies

the rest.  Videotape affirmatively disproves the false allegation that (as time went on) "the crowd

was [became] visibly agitated and riotous."  The video record shows exactly the opposite.   The rest

of the alleged statements ascribed to Trump speak for themselves, as long as they are properly cited

to and presented in context.  Among other things, reportedly the day was quite cold and very, very

windy, the sound system was had two massive banks of speakers which were out of synchronization

and were conflicting with each other, so that speeches could not be understood by the crowd.  Not

being able to clearly hear the speakers is one reason attendees at the Ellipse calmly and peacefully

left and wandered toward the pre-arranged demonstrations at the U.S. Capitol.  Furthermore, there

are no allegations or facts that anyone who heard Trump or Guiliani or others speak are the same

crowds who went to the U.S. Capitol.  Many people went straight to the pre-arranged demonstrations

at the U.S. Capitol and never went to the Ellipse at all.

**Answering Complaint Par. 108)**        Rehl denies the allegations of the compound

paragraph, including in that the U.S. Capitol Police issued six (6) permits for six (6) demonstrations

on the U.S. Capitol grounds on January 6, 2021, and no one walked slowly and calmly to the U.S.

Capitol because of anything Trump said.  They had already planned to exercise their right of free

---

[5]      Jason Leopold, "The Capitol Police Granted Permits For Jan. 6 Protests Despite Signs
That Organizers Weren't Who They Said They Were," Buzzfeed News, September 9, 2021,
updated September 17, 2021, https://www.buzzfeednews.com/article/jasonleopold/the-capitol-
police-said-jan-6-unrest-on-capitol-grounds?origin=web-hf.   To the best of Defendant's
knowledge, these permits were never revoked.

speech before Trump spoke.  Trump made clear that "I know" many of you are going to the Capitol.

Trump never instructed anyone to go to the Capitol.  He knew they already planned to go.   The rest

of the alleged statements ascribed to Trump speak for themselves, as long as they are properly cited

to and presented in context.  Among other things, reportedly the day was quite cold and very, very

windy, the sound system was had two massive banks of speakers which were out of synchronization

and were conflicting with each other, so that speeches could not be understood by the crowd.  Not

being able to clearly hear the speakers is one reason attendees at the Ellipse calmly and peacefully

left and wandered toward the pre-arranged demonstrations at the U.S. Capitol.  Furthermore, there

are no allegations or facts that anyone who heard Trump or Guiliani or others speak are the same

crowds who went to the U.S. Capitol.  Many people went straight to the pre-arranged demonstrations

at the U.S. Capitol and never went to the Ellipse at all.

> ***Answering Complaint Par. 109)***        Rehl denies each and every allegation of the
compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or
Plaintiffs' counsel's misinterpretation of facts.  The rest of the alleged statements ascribed to Trump
speak for themselves, as long as they are properly cited and presented in context.  Among other
things, reportedly the day was quite cold and very, very windy, the sound system was had two
massive banks of speakers which were out of synchronization and were conflicting with each other,
so that speeches could not be understood by the crowd.  Not being able to clearly hear the speakers is
one reason attendees at the Ellipse calmly and peacefully left and wandered toward the pre-arranged
demonstrations at the U.S. Capitol.  Furthermore, there are no allegations or facts that anyone who
heard Trump or Guiliani or others speak are the same crowds who went to the U.S. Capitol.  Many
people went straight to the pre-arranged demonstrations at the U.S. Capitol and never went to the
Ellipse at all.

> ***Answering Complaint Par. 110)***        Rehl denies each and every allegation of the

compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  The rest of the alleged statements ascribed to Trump speak for themselves, as long as they are properly cited to and presented in context.  Among other things, reportedly the day was quite cold and very, very windy, the sound system was had two massive banks of speakers which were out of synchronization and were conflicting with each other, so that speeches could not be understood by the crowd.  Not being able to clearly hear the speakers is one reason attendees at the Ellipse calmly and peacefully left and wandered toward the pre-arranged demonstrations at the U.S. Capitol.  Furthermore, there are no allegations or facts that anyone who heard Trump or Guiliani or others speak are the same crowds who went to the U.S. Capitol.  Many people went straight to the pre-arranged demonstrations at the U.S. Capitol and never went to the Ellipse at all.

*Answering Complaint Par. 111)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Among other things, reportedly the day was quite cold and very, very windy, the sound system was had two massive banks of speakers which were out of synchronization and were conflicting with each other, so that speeches could not be understood by the crowd.  Not being able to clearly hear the speakers is one reason attendees at the Ellipse calmly and peacefully left and wandered toward the pre-arranged demonstrations at the U.S. Capitol.  Furthermore, there are no allegations or facts that anyone who heard Trump or Guiliani or others speak are the same crowds who went to the U.S. Capitol.  Many people went straight to the pre-arranged demonstrations at the U.S. Capitol and never went to the Ellipse at all.  *There is no plausibility that Trump was able to see the crowd*.  Trump was seen by the crowd on giant jumbotron television screens.  He was very far from the crowd.

*Answering Complaint Par. 112)*        The paragraph is an opinion and/or conclusion of

law, not to mention mind-reading, to which a response is not required under the normal rules and practice of pleading.

  *Answering Complaint Par. 113)*   The paragraph is an opinion and/or conclusion of law, not to mention mind-reading, to which a response is not required under the normal rules and practice of pleading.

  *Answering Complaint Par. 114)*   Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  In particularly the allegation that "Congress' count of the electoral votes was a mere formality" is not only false but in conflict with the rest of the paragraph describing the objections provided for under the Constitution and federal law.  This matters because the Defendants were petitioning their government for redress grievances that Congress hear and resolve disputes and tally the correct Electoral College votes (as they waw it) rather than (as they saw it) counting the wrong Electoral College votes.  The difference between asking Congress to do its job and trying to stop anyone from becoming President transforms the exercise of a Constitutional right under the First Amendment into a crime.  Therefore, the persistent but subtle games with language matter.

  *Answering Complaint Par. 115)*   Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  *Answering Complaint Par. 116)*   Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  *Answering Complaint Par. 117)*   Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 118)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that is clear that some "others" unknown to Rehl did – as shown in videos – assault U.S. Capitol Police officers on January 6, 2021.

*Answering Complaint Par. 119)*        Rehl has no knowledge other than from news media reports of the allegations of the compound paragraph except that Trump did not instruct anyone to march to the Capitol, including because the demonstrators already planned to go the Capitol before Trump ever announced that he would speak at the Ellipse, including in response to the six (6) permits issued by the U.S, Capitol Police for demonstrations on the U.S. Capitol grounds on January 6, 2021.

*Answering Complaint Par. 120)*        Rehl accepts the first two sentences of the compound paragraph as likely true from public news media reports.  However, Rehl denies the rest of the paragraph.  Stopping the Electoral College vote could not make Trump President for another four years, but demanding that the Congress do its job and hear and resolve disputes could, potentially.

*Answering Complaint Par. 121)*        Rehl denies the allegations of the compound paragraph.  In fact, at every large gathering such as the many demonstrations on January 6, 2021, in the District of Columbia, cell phone communications are jammed by the quantity of people present.  There is no evidence that anyone heard trump's words or received his tweets.  It is nearly certain that they did not.  Indeed, the hysterical political class has claimed that demonstrators listening to radios with ear pieces is some abominable crime.  If they did not have ear pieces from radios or cell phones, how would any of the demonstrators hear what Trump was saying?  Among other things, reportedly the day was quite cold and very, very windy, the sound system was had two massive banks of speakers which were out of synchronization and were conflicting with each other, so that speeches could not be understood by the crowd.  Not being

able to clearly hear the speakers is one reason attendees at the Ellipse calmly and peacefully left and wandered toward the pre-arranged demonstrations at the U.S. Capitol.  Furthermore, there are no allegations or facts that anyone who heard Trump or Guiliani or others speak are the same crowds who went to the U.S. Capitol.  Many people went straight to the pre-arranged demonstrations at the U.S. Capitol and never went to the Ellipse at all.

     ***Answering Complaint Par. 122)***     Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, and furthermore demands that Plaintiffs' counsel retract the despicable, reprehensible, and sanctionable lies in this paragraph subject to FRCP Rule 11, in anticipation of Rehl, by counsel, filing a motion for Rule 11 sanctions.  Racism played no role in anything that happened in the events on January 6, 2021, and the attempt at race-baiting and incendiary false provocations is disgusting.  While unfortunately, there were many law enforcement officials of all races and genders assaulted by violent hooligans and thugs, they were not assaulted *because of their race*.  Plaintiff's counsel knows the difference but has reprehensibly claimed in a lack of candor to the Court that those officers who happened to be Black – victimized the same as those who are not – were assaulted *because they are Black.*  This is a knowing lie to the Court by Plaintiff's counsel.  Furthermore, many of the videos shows officers wearing helmets such that their race could not be known by the thugs and criminals who violently attacked police officers.

     ***Answering Complaint Par. 123)***     Rehl has no knowledge of the allegations of the compound paragraph.

     ***Answering Complaint Par. 124)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 125)***     Rehl has no knowledge of the allegations of the paragraph.

***Answering Complaint Par. 126)***     Rehl has no knowledge of the allegations of the paragraph.

***Answering Complaint Par. 127)***     Rehl denies the allegations of the compound paragraph.

***Answering Complaint Par. 128)***     Rehl has no knowledge of the allegations of the compound paragraph.  However, since the Oath Keepers did not have any such gas, as far as publicly reported, not on a scale to matter in tunnels, it appears that an FBI plant inside the OATH KEEPERS was trying to communicate to with government officials to turn on gas because the OATH KEEPERS he was spying on were all in the tunnels where they could be gassed. The message seems to have been sent accidentally to the Oath Keepers group instead of to the FBI.  Signaling that the Oath Keepers were in the tunnels and that gas should be used would only make sense to someone with massive quantities of gas to release, that is, law enforcement authorities.

***Answering Complaint Par. 129)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 130)***     Rehl has no knowledge of the allegations of the compound paragraph, except that two false quotes are attributed to Rehl, which Rehl denies.

***Answering Complaint Par. 131)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 132)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 133)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 134)***     Rehl has no knowledge of the allegations of the compound paragraph, except that the communications speak for themselves if properly cited and presented in context.

***Answering Complaint Par. 135)***     Rehl has no knowledge of the allegations of the compound paragraph, except that the Plaintiffs make the unfounded assumption that anyone could actually hear or receive Trump's tweets or messages and that those who heard it are the same as those who went to the U.S. Capitol.

***Answering Complaint Par. 136)***     Rehl has no knowledge of the allegations of the compound paragraph.

***Answering Complaint Par. 137)***     Rehl denies the allegations of the compound paragraph to the extent that Trump's written and verbal communications speak for themselves, if properly presented reliably and in context.

***Answering Complaint Par. 138)***     Rehl has no knowledge of the allegations of the compound paragraph other than from news media reporting.

***Answering Complaint Par. 139)***     Because the allegations of the compound paragraph are largely the Plaintiffs' interpretations and opinions, Rehl denies the allegations and asks for proof.  Rehl has no knowledge of Guiliani's phone calls.  Also, whether or not Trump's speech from the Ellipse was "totally appropriate" or not is not relevant to any of the other matters alleged in this Complaint.

***Answering Complaint Par. 140)***     Rehl denies the allegations of the compound paragraph to the extent that Trump's written and verbal communications speak for themselves, if

properly presented reliably and in context.

*Answering Complaint Par. 141)*     Rehl denies the allegations of the compound

paragraph to the extent that Trump's written and verbal communications speak for themselves, if

properly presented reliably and in context.  However, whether this Court on the criminal side is

(in the opinion of recent protest members) a blatant double standard compared to Left-wing

demonstrators who injured over 1,000 police officers throughout 2020 and led to several deaths

is completely unrelated to the matters in this Complaint.  Demanding that Lady Justice should

not be peeking from behind her blindfold but a single consistent standard should be followed for

all pre-trial detainees is not support for what a few violent thugs and criminals out of hundreds of

thousands did.  The highly-politicized Plaintiffs' counsel is fully aware that one has nothing to

do with the other.  There was a day when Plaintiffs' counsel would have been fighting for fair

and consistent standards for pre-trial release on bail along with the once-great ACLU.

*Answering Complaint Par. 142)*     Rehl admits the allegation of the paragraph,

although notes that the U.S. Capitol Police performs other duties as well such as issuing permits

for demonstrations as it did for six (6) different demonstrations on the U.S. Capitol grounds for

January 6, 2021, and welcomes the public to freely visit the U.S. Capitol building on normal

days, including to visit the two gift shops in the U.S. Capitol building, watching Congress in

session from the open-air U.S. House chamber gallery and the U.S. Senate chamber gallery, with

no divider between the citizens and their representatives while debating and voting on legislation

and its progress, or to tour the Rotunda or Statuary Hall.  The U.S. Capitol Police has the

extremely difficult and taxing responsibility to welcome, invite, and allow the public to visit their

house, the Capitol, while simultaneously vigilantly detecting threats in real-time and protecting

Members of Congress, Congressional staff, even visitors in the building, and the physical

building and its content as well.  Theirs is an incredibly difficult and important job with many

tasks.  Their job is made all the more difficult by the fact that Congress is a normally public

building open to the public, not unlike how the National Air and Space Museum is "secured" 24

hours a day yet visited by large numbers of tourists from around the world.

      ***Answering Complaint Par. 143)***     Rehl has no ability to have first-hand knowledge of

the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer Smith.  Rehl

accepts without dispute the injuries and treatments that the Plaintiff may document for the Court

as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible

for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly

to the matters at hand) making an issue of anyone's race.

      ***Answering Complaint Par. 144)***     Rehl has no ability to have first-hand knowledge of

the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer McElroy.  Rehl

accepts without dispute the injuries and treatments that the Plaintiff may document for the Court

as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible

for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly

to the matters at hand) making an issue of anyone's race.

      ***Answering Complaint Par. 145)***     Rehl has no ability to have first-hand knowledge of

the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer Evans.  Rehl

accepts without dispute the injuries and treatments that the Plaintiff may document for the Court

as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible

for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly

to the matters at hand) making an issue of anyone's race.

      ***Answering Complaint Par. 146)***     Rehl has no ability to have first-hand knowledge of

45

the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer Latson.  Rehl accepts without dispute the injuries and treatments that the Plaintiff may document for the Court as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly to the matters at hand) making an issue of anyone's race.

**Answering Complaint Par. 147)**        Rehl has no ability to have first-hand knowledge of the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer Marshall.  Rehl accepts without dispute the injuries and treatments that the Plaintiff may document for the Court as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly to the matters at hand) making an issue of anyone's race.

**Answering Complaint Par. 148)**        Rehl has no ability to have first-hand knowledge of the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer Fortune.  Rehl accepts without dispute the injuries and treatments that the Plaintiff may document for the Court as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly to the matters at hand) making an issue of anyone's race.

**Answering Complaint Par. 149)**        Rehl has no ability to have first-hand knowledge of the Plaintiff's actions or injuries.  Rehl has never interacted with Plaintiff Officer DeRoche. Rehl accepts without dispute the injuries and treatments that the Plaintiff may document for the Court as required to satisfy the Court as caused on January 6, 2021.  However, Rehl is not responsible for the Plaintiff's injuries, directly or indirectly. Rehl objects to gratuitously (that is irrelevantly to the matters at hand) making an issue of anyone's race.

***Answering Complaint Par. 150)***     Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 151)***     The paragraph is a legal statement of presentation in the pleading which does not require a response.

***Answering Complaint Par. 152)***     Rehl denies the allegations of the paragraph because the "Klu Klux Klan Act" does not exist.

***Answering Complaint Par. 153)***     Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 154)***     Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 155)***     Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 156)***     To the extent that it relates to Rehl, Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 157)***     Rehl accepts as true from news media reporting and video recordings broadcast over news media that each Plaintiff has suffered the injuries claimed to the extent medical bills and other expenses may be document, however Rehl denies the existence of any conspiracy, or that – to the best of Rehl's knowledge – any of the Defendants

are responsible for the injuries to the Plaintiffs.

*Answering Complaint Par. 158)*     The paragraph is a legal statement of presentation in the pleading which does not require a response.

*Answering Complaint Par. 159)*     Rehl denies the allegations of the paragraph because the "Klu Klux Klan Act" does not exist.  There was a Civil Rights Act of 1871, but there has never been a "Klu Klux Klan Act," despite erroneous, informal, occasional mistaken references.

*Answering Complaint Par. 160)*     Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts and denies that any such conspiracy ever existed or was formed, to the best of Rehl's knowledge.

*Answering Complaint Par. 161)*     Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts and denies that any such conspiracy ever existed or was formed, to the best of Rehl's knowledge.

*Answering Complaint Par. 162)*     Rehl is without personal knowledge to respond regarding Donald Trump.  Moreover, much of the paragraph is opinion or conclusions.

*Answering Complaint Par. 163)*     Rehl is without personal knowledge to respond regarding Alexander, Stone, or Straka.  Moreover, much of the paragraph is opinion or conclusions.

*Answering Complaint Par. 164)*     Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.   Moreover, much of the paragraph is opinion or conclusions. Rehl denies that there were any plans to attack the Capitol involving or known to

the persons mentioned in the paragraph.  Rehl denies that there was any plan to "stop the count of electoral votes" and thereby leave the Presidency vacant for four (4) years.

*Answering Complaint Par. 165)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 166)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.   Note that the paragraph does not allege (merely) that the Plaintiffs were injured but alleges those responsible, which is what Rehl denies.

*Answering Complaint Par. 167)*        The paragraph is a legal conclusion concerning other Defendants and therefore no response is required from Rehl.

*Answering Complaint Par. 168)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.   Note that the paragraph does not allege (merely) that the Plaintiffs were injured but alleges those responsible, which is what Rehl denies.

*Answering Complaint Par. 169)*        The paragraph is a legal statement of presentation in the pleading which does not require a response.

*Answering Complaint Par. 170)*        Rehl accepts the quote from the D.C. law as likely to be accurate.

*Answering Complaint Par. 171)*        Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.   Moreover, much of the paragraph is opinion or conclusions.  Rehl denies engaging in any of the conduct alleged.

***Answering Complaint Par. 172)***      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 173)***      Rehl agrees with the first sentence of the compound paragraph, but responds that the Defendants are the only people here who oppose politically motivated violence, but the Plaintiff's counsel supports politically motivated violence from the Left, such as by ANTIFA.  Rehl denies every allegation of the second and third sentences of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except for the part starting with "Plaintiffs were doing their jobs" which Rehl agrees with.  It is a shame that the Plaintiff's politically-biased and activist counsel do not believe or act upon any of their statements in this paragraph.

***Answering Complaint Par. 174)***      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

***Answering Complaint Par. 175)***      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Plaintiffs' counsel are so far down the rabbit hole (referring to Alice in Wonderland) that they do not realize the absurdity of this allegation.  They are representing U.S. Capitol Police officers injured in violent confrontations on January 6, 2021.  No one stopped to ask these officers if they were Republicans or Democrats, liberals or conservatives, and nothing about the officer's uniforms or appearances would reveal such.

***Answering Complaint Par. 176)***      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 177)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 178)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 179)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 180)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 181)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 182)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 183)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 184)***  The paragraph is a legal statement of presentation in

the pleading which does not require a response.

  ***Answering Complaint Par. 185)***  Rehl admits based upon news media reporting and video recordings released the allegations of the paragraph.

  ***Answering Complaint Par. 186)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 187)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 188)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 189)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that it appears from news media reporting that the Plaintiffs were injured. The paragraph is a legal statement of presentation in the pleading which does not require a response.

  ***Answering Complaint Par. 190)***  The paragraph is a legal statement of presentation in the pleading which does not require a response.

  ***Answering Complaint Par. 191)***  Rehl admits based upon news media reporting and video recordings released the allegations of the paragraph.

  ***Answering Complaint Par. 192)***  Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 193)*      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 194)*      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 195)*      Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that it appears from news media reporting that the Plaintiffs were injured.

*Answering Complaint Par. 196)*      The paragraph is a legal statement of presentation in the pleading which does not require a response.

*Answering Complaint Par. 197)*      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 198)*      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.

*Answering Complaint Par. 199)*      The paragraph is a statement of the law which does not require a response in this Answer.

*Answering Complaint Par. 200)*      Rehl denies each and every allegation of the compound paragraph, including unstated premises, assumptions, inferences, and insinuations, or

Plaintiffs' counsel's misinterpretation of facts.

  ***Answering Complaint Par. 201)***  The paragraph is a statement of the law which does not require a response in this Answer.

  ***Answering Complaint Par. 202)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that it appears from news media reporting that the Plaintiffs were injured.

  ***Answering Complaint Par. 203)***  The paragraph is a statement of the law which does not require a response in this Answer.

  ***Answering Complaint Par. 204)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that it appears from news media reporting that the Plaintiffs were injured.

  ***Answering Complaint Par. 205)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts, except that it appears from news media reporting that the Plaintiffs were injured.

  ***Answering Complaint Par. 206)***  Rehl denies each and every allegation of the paragraph, including unstated premises, assumptions, inferences, and insinuations, or Plaintiffs' counsel's misinterpretation of facts.  Rehl is entitled to sanctions and attorney's fees from the Plaintiff's counsel – which is not claimed against the officers – for their sanctionably false and sloppy conspiracy theory allegations that are false at least with regard to Rehl.

## **AFFIRMATIVE DEFENSES**

1) Plaintiffs have failed to state a claim including because there is no Klu Klux Klan Act.  There is a Civil Rights Act of 1871, which has long ago been merged into the codified statutes of the United States.  One cannot or at least should not sue under the session law when the codified statutes have been amended many times since 1871.

2) The U.S. Supreme Court has ruled that a family of lawsuits like the Civil Rights Act of 1871 cannot be used against private citizens because its nature in enforcing the Fourteenth Amendment is limited to restraints on government.

3) While it is evident from news reporting that the Plaintiffs and other officers were injured, which is inexcusable, with regard to these Defendants the lawsuit is a conspiracy theory.  To the extent that the Plaintiffs are not suing those who actually injured them, the claims are not a conspiracy but a conspiracy theory

4) Plaintiffs have sued the wrong parties.

5) These Defendants have a claim of contribution to the extent that they might be held liable rather than those who actually injured the Plaintiffs and other offices, whose identities have mostly or all been discovered by the FBI.

6) These Defendants have a right to file a Third Party Complaint against those criminals and thugs who actually violently attacked and injured these Plaintiff officers and other officers.

7) The violent attacks and assaults upon police officers are a superseding intervening cause which makes those who actually committed physical attacks and violence against law enforcement officers independent actors solely responsible or

responsible as a separate group for their own criminal actions and torts.

8)  Every allegation against the Defendant Zachary Rehl is false and the Plaintiff's highly-politicized counsel had no reason to believe that any of the allegations were true against Rehl.

In the bail hearing for release of the Accused ZACHARY REHL, from pre-trial detention hearing in the U.S. District Court for the Eastern District of Pennsylvania, the prosecution conceded in proper candor:

> **To be sure, the indictment does not allege that Mr. Rehl engaged directly in violence against officers or destruction of property * * * .**

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5 Hearing Before Honorable Richard A. Lloret, United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania, March 26, 2021, Case No. 2:21-mj-526-1, filed publicly as ECF Docket # 9 in that Court.

## PRAYER FOR RELIEF

A.  Defendant Zachary Rehl respectfully claims his right under the facts and the law to a judgment in his favor and against the Plaintiffs with regard to himself individually.

B.  Defendant Zachary Rehl respectfully the orders and assistance from this Court necessary for the Plaintiffs and any other law enforcement officers injured in relation to the January 6, 2021, demonstrations to obtain from the Federal Bureau of Investigation, the U.S. Capitol Police, any other investigating agency, and even the public (there are apparently private projects to identify people shown in video recordings from January 6, 2021), so that they can sue those actually responsible for their injuries tangible and intangible, and as needed for Defendant Rehl and perhaps other Defendants to file a Third Party Complaint against those criminals, thugs, and/or tortfeasors for contribution or indemnification.

C. Defendant Zachary Rehl asks the Court to deny the Plaintiffs' prayer for relief "A" although Rehl notes that it is not relevant. "[T]he actions described herein" may be a violation of those statutes, but the Defendants did not engage in any of those actions. Therefore, any such declaratory judgment would only apply to those JOHN DOES 1-10 and more who actually attacked law enforcement officials that day.

D. Defendant Zachary Rehl asks the Court to deny the Plaintiffs' prayer for relief "B" as no injunctive relief is properly pled nor appropriate and is likely to be over-broad.

E. With regard to the Plaintiffs' prayer "C," Defendant Zachary Rehl asks the Court to find that those who actually physically attacked and injured tangibly or intangibly the Plaintiffs on or about January 6, 2021, be ordered to pay compensation, but that Rehl and to the best of his knowledge all of the Defendants sued here other than JOHN DOES 1-10 be found not liable for the Plaintiffs' claims.

F. With regard to the Plaintiffs' prayer "D," Defendant Zachary Rehl asks the Court by the jury to find punitive damages against those who actually physically attacked and injured tangibly or intangibly the Plaintiffs on or about January 6, 2021, be ordered to pay compensation, but that Rehl and to the best of his knowledge all of the Defendants sued here other than JOHN DOES 1-10 be found not liable for the Plaintiffs' claims.

G. Defendant Zachary Rehl asks the Court to award him his attorneys' fees and costs to be paid by the Plaintiff's counsel but not by the Plaintiffs personally.

H. Defendant Zachary Rehl asks the Court for such other relief as the Court deems necessary and just.

Dated:  October 4, 2021                    RESPECTFULLY SUBMITTED
                                           ZACHARY REHL, *By Counsel*

Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Facsimile:  (703) 997-0937
Contact@JonMoseley.com
Moseley391@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s).  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia. A copy will also be sent by email.

Mr. Damon Hewitt, Esq.
Jon Greenbaum, Esq., D.C. Bar No. 489887
Edward G. Caspar, Esq., D.C. Bar No. 1644168
David Brody, Esq., D.C. Bar No. 1021476
Arusha Gordon, Esq., D.C. Bar No. 1035129
Noah Baron, D.C. Esq., Bar No. 1048319
Adonne Washington Esq.,
Lawyers' Committee for Civil Rights Under Law
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: (202) 662-8300
jgreenbaum@lawyerscommittee.org
dhewitt@lawyerscommittee.org
ecaspar@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
nbaron@lawyerscommittee.org
awashington@lawyerscommittee.org
Legal Co-Counsel for Plaintiffs

Mr. Robert C Buschel, Esq.
BUSCHEL & GIBBONS, P.A.
501 East Las Olas Boulevard, Suite 304
Fort Lauderdale, Florida 33301
954-530-5748
Buschel@bglaw-pa.com
Legal Counsel for Defendant Roger Stone

Although undersigned counsel should not presume
to decide for other co-Defendants who their legal
counsel should be or will be, outside of this filing
counsel will email a copy of this pleading to counsel
for other named Defendants if they can be determined.


Jonathon A. Moseley, Esq.