**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONRAD SMITH,

    and

DANNY McELROY

    and

BYRON EVANS

    and

GOVERNOR LATSON,

    and

MELISSA MARSHALL

    and

MICHAEL FORTUNE

    and

JASON DEROCHE

                 **Plaintiffs**,

    v.

DONALD J. TRUMP,  *"solely in his personal capacity"*

    and

DONALD J. TRUMP FOR PRESIDENT, INC.
c/o Bradley T. Crate (Treasurer)

    and

STOP THE STEAL L.L.C.
c/o George B. Coleman

    and

Civil Action No.  1:21-cv-02265-APM

ALI ALEXANDER, a/k/a
Ali Abdul Razaq Akbar, a/k/a Ali Abdul Akbar

     and

BRANDON J. STRAKA

     and

ROGER J. STONE, JR.

     and

PROUD BOYS, an unincorporated association

     and

PROUD BOYS INTERNATIONAL, L.L.C.
c/o Jason L. Van Dyke

     and

ENRIQUE TARRIO

     and

ETHAN NORDEAN

     and

JOSEPH R. BIGGS

     and

ZACHARY REHL

     and

CHARLES DONOHOE

     and
DOMINIC J. PEZZOLA

     and

OATH KEEPERS

c/o Christopher R. Grobl, Esq.

     and

STEWART RHODES
     and

THOMAS E. CALDWELL
     and

JESSICA WATKINS

     and

KELLY MEGGS

     and

ALAN HOSTETTER

     and

RUSSELL TAYLOR

     and

ERIK SCOTT WARNER

     and

FELIPE ANTONIO "TONY" MARTINEZ

     and

DEREK KINNISON

     and

RONALD MELE

     and

JOHN DOES 1-10,
                    **Defendants.**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................5

   I.      INTRODUCTION AND CONTEXT...............................................................6

   II.     SUMMARY AND STATEMENT OF FACTS RELEVANT TO MOTION.......8

   III.    GOVERNING LAW AS TO MOTION TO STRIKE MATERIAL...................10

   IV.   ARGUMENT.....................................................................................................11

      A) "The Klu Klux Klan Act" Does Not Exist – Plaintiff Falsely Claim Racism out of Despicable, Incendiary Race-Baiting to Taint the Jury Pool....................11

      B) Plaintiffs on Their Initiative Have Tainted the D.C. Jury Pool...........................15

      C) References to Klu Klux Klan Are Irrelevant and Impertinent............................15

      D) Plaintiffs' Allegations are Improper, Including as Rule 11 Violations...............16

      E) Reservation of All Rights Substantive and Procedural Beyond these Motions...17

CONCLUSION..................................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 664, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). ........................................................................................................... 11

*United States v. Harris*, 106 U.S. 629 (1882) .............................................................................. 12

*United States v. Zachary Rehl*, Case No. 2:21-mj-526-1, United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania ............................................................ 6

## Statutes

17 Stat. 13 ..................................................................................................................................... 11

42 U.S.C. § 1985 ................................................................................................................ 11, 13, 15

An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States and for other Purposes. ............................................................................................... 11

Civil Rights Act of 1871 ......................................................................................................... 11, 15

Klu Klux Klan Act of 1871 .......................................................................................... 12, 13, 15, 18

Public Law (P.L.) 42-22 (April 20, 1871) -- Session 42, Chapter 22 ........................................... 11

The Third Enforcement Act of 1871 ............................................................................................. 12

## Rules

Federal Rules of Civil Procedure ("FRCP") Rule 12(f) ............................................................... 10

Federal Rules of Civil Procedure 12(b)(6) ................................................................................... 17

Federal Rules of Civil Procedure Rule 12(f) ......................................................... 6, 10, 16, 18

Federal Rules of Civil Procedure Rule 11 .............................................................................. 16, 17

## Other Authorities

"Compromise of 1877," History Channel, March 17, 2011, updated November 27, 2019, accessible at:  https://www.history.com/topics/us-presidents/compromise-of-1877 ................ 13

Tara McAndrew, "The History of the KKK in American Politics," JSTOR, January 25, 2017, accessible at:  https://daily.jstor.org/history-kkk-american-politics/ ........................................ 13

Tom Head, "Timeline History of the Klu Klux Klan," ThoughtCo. , updated December 14, 2020, accessible, at:  https://www.thoughtco.com/the-ku-klux-klan-history-721444. ........................ 12

<u>**DEFENDANT ZACHARY REHL'S COMBINED MEMORANDUM OF LAW**
**IN SUPPORT OF ZACHARY REHLS' MOTION TO STRIKE IMPERTINENT**
**MATTER UNDER RULE 12(f)**</u>

**I.    INTRODUCTION AND CONTEXT**

Defendant Zachary Rehl respectfully submits this Memorandum of Law in support of his

Federal Rules of Civil Procedure Rule 12(f) Motion to Strike material from the Complaint.

The Complaint explains that

> 1.  **The seven Plaintiffs in this case are United States Capitol Police**
> **officers. Collectively, they have dedicated more than 150 years to**
> **their shared mission to protect Congress so that it can carry out its**
> **constitutional responsibilities safely and openly. * * * "**

Those members of the U.S. Capitol Police who were injured during violent

confrontations with a few – very few – of the estimated 500,000 to 1 million people who came to

the District of Columbia on January 6, 2021, deserve to be compensated, to the extent the legal

system is capable of making them whole, for the injuries they sustained.  This includes not only

these Plaintiffs but any of the U.S. Capitol Police who suffered injuries.

ZACHARY REHL is the son and grandson of police officers.

In July 2020, REHL participated in the Back the Blue rally in support of police officers,

at the Fraternal Order of Police lodge in Philadelphia.

In the bail hearing for release of the Accused ZACHARY REHL, from pre-trial detention

hearing in the U.S. District Court for the Eastern District of Pennsylvania, the prosecution

conceded in proper candor:

> **To be sure, the indictment does not allege that Mr.  Rehl**
> **engaged   directly   in   violence   against   officers   or**
> **destruction of property * * * .**

Assistant U.S. Attorney Luke M. Jones, Esq., Page 3, Transcript of Detention/Rule 5 Hearing
Before Honorable Richard A. Lloret, *United States v. Zachary Rehl*, Case No. 2:21-mj-526-1,
United States Magistrate Judge, U.S. District Court for the Eastern District of Pennsylvania,
March 26, 2021, filed publicly as ECF Docket # 9 in that Court.

In parallel criminal cases, the U.S. Attorney's office has not cited to any evidence that ZACHARY REHL ever encountered or interacted with any U.S. Capitol Police officer or any other law enforcement officer either on January 6, 2021, or in events leading up to the demonstrations on January 6, 2021.

However, these Plaintiffs are not suing those who actually injured them, at least not in this suit, except as unknown John Does 1-10.

One would logically anticipate that there is or will be a different, related lawsuit against those who actually are responsible for injuring these officers.  But this is not that.  That distinction must not be ignored or kept from view.

In understanding these discussions, unfortunately, just as Kleenex ™ -- the brand name of one specific company – has become generic and any tissue is called a Kleenex (improperly, inaccurately, and falsely) – the name "Proud Boys" has been comically mis-used throughout the political class and news media.

The Chair of the Proud Boys dissociated the organization from those who *as individuals* chose to attend events that day.  Enrique Tarrio told Proud Boys members not to wear any uniform, clothes or insignia ("colors") associated with the Proud Boys.  Tarrio clarified that anyone going to D.C. was going on their own, not as Proud Boys.

The attempt to portray Tarrio's message – echoed by others – that Proud Boy members should not wear their "colors" as something else are ridiculous and absurd.  The idea that people attending a public event are somehow obligated to announce themselves is offensive and nonsensical.  The idea that U.S. citizens attending a public First Amendment demonstration would evade "detection" promotes the offensive idea that law enforcement criminalizes people instead of crimes.

## II.    SUMMARY AND STATEMENT OF FACTS
##        RELEVANT TO MOTION

However, the U.S. Capitol Police issued not one but six (6) different permits for demonstrations to be held on January 6, 2021, on the U.S. Capitol Grounds.  Jason Leopold, "The Capitol Police Granted Permits For Jan. 6 Protests Despite Signs That Organizers Weren't Who They Said They Were," Buzzfeed News, September 9, 2021, updated September 17, 2021, https://www.buzzfeednews.com/article/jasonleopold/the-capitol-police-said-jan-6-unrest-on-capitol-grounds?origin=web-hf.   To the best of Defendant's knowledge, these permits were never revoked.

Defendant does not minimize the injuries to law enforcement that day by some truly violent and out-of-control hooligans, some of whom did apparently come to D.C. already with that criminal intent.  But it is undeniable that the vast majority of people came to D.C. expecting to attend demonstrations or rallies which had received permits from the U.S. Capitol Police and the U.S. Park Police, including at the Ellipse between the Washington Monument and the White House.

In fact, Zachary Rehl has created a fund-raising campaign on a fund-raising platform similar to GoFundMe to raise funds for these Plaintiffs and other U.S. Capitol Police officers injured on or around January 6, 2021.  Anyone who reads or becomes aware of this pleading is encouraged to donate at www.HealCapitolPolice.com.  An independent Treasurer is being recruited, which will be announced on the fund-raising page.

Suing these Defendants cannot be justified as supplementing compensation because most of these Defendants are in no different a financial situation than those who actually injured the Plaintiffs.  Unless Donald Trump or Rudolph Guiliani compensate the Plaintiffs, their recovery

will not be any greater than from those who actually injured them.  And while the direct physical assault by those actually responsible probably cannot be discharged in bankruptcy, the tenuous, gossamer threads of liability attempted here could be.  The Plaintiffs are more likely to be fined under Federal Rule of Civil Procedure Rule 11 than to add to their recovery in this suit.

While one will sympathize with those actually injured and the propriety of them being compensated for any injury, medical treatment, and pain and suffering, and it may seem insensitive at first glance, this lawsuit is not that.  This lawsuit is plainly filed for an improper purpose to use these noble police officers as pawns in a partisan political power struggle to advance other people's agendas, goals, interests, and benefit.  The lawsuit is almost entirely about whether or not the 2020 Presidential election was stolen.

This lawsuit is more about whether or not claims that the 2020 Presidential election were stolen are true or false.  And the lawsuit is about frivolously trying to radicalize this already-controversial series of events with false and ugly claims of racial motivation.  As if the events on January 6, 2021, were not wrenching enough, they must be made worse by a false, groundless, baseless assertion without any evidence that there is some racial component to those events with regard to the election of Joe Biden with a sketchy past on segregation and race.

The Proud Boys, of course, are led by a Black man who is an immigrant from Cuba.



**Enrique Tarrio, Chair of the Proud Boys**

The Proud Boys Club publicly proclaims that 20% of its membership are Blacks or

Hispanics.  "I denounce White supremacy," Mr. Tarrio said in a Thursday interview with WSVN-TV in Miami. "I denounce anti-Semitism. I denounce racism. I denounce fascism. I denounce communism and any other -ism that is prejudiced toward people because of their race, religion, culture, tone of skin."  And "Mr. Reilly, author of "Hate Crime Hoax," said his research shows law enforcement officials estimate that 10% to 20% of Proud Boys members are racial minorities."  *See* Valerie Richardson, "Enrique Tarrio says Proud Boys not White supremacists," The Washington Times, October 1, 2020, accessible at:

https://www.washingtontimes.com/news/2020/oct/1/enrique-tarrio-says-proud-boys-not-white-supremaci/

Whether or not one might believe that to be true, the fact is undeniable that the Proud Boys want to present an image of inclusion, diversity, and welcoming of all races.  Publicly proclaiming themselves to be 20% minority and wanting to be seen as welcoming of all races completely destroys the ugly slurs lying about them as racist.

Plaintiffs' counsel is the Lawyers' Committee for Civil Rights Under Law, but apparently they are not interested in the civil rights of Black men like Enrique Tarrio.

### III.      GOVERNING LAW AS TO MOTION TO STRIKE MATERIAL

Pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(f), the Defendant moves the Court to order the removal of references to the Klu Klux Klan and the incendiary attempts to foment racial division to taint the jury pool in the District of Columbia, such as gratuitously, irrelevantly, and unnecessarily including false allegations about the racial composition of a few, but only a skewed select few, cities.

FRCP Rule 12(f) provides that (using curious terminology):

* * *

(f) MOTION TO STRIKE. The court may strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or
scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to
> the pleading or, if a response is not allowed, within 21
> days after being served with the pleading.
> * * *

## IV.   ARGUMENT

### A)   "The Klu Klux Klan Act" Does Not Exist – Plaintiff Falsely Claim Racism out of Despicable, Incendiary Race-Baiting to Taint the Jury Pool

The Complaint purports to be a suit under the (Anti) Klu Klux Act of 1871.

But the Klu Klux Klan Act does not exist.

The  Civil Rights Act of 1871 does exist.

Plaintiffs are referring to Public Law (P.L.) 42-22 (April 20, 1871) -- Session 42, Chapter
22; 17 Stat. 13 formally named **"An Act to enforce the Provisions of the Fourteenth
Amendment to the Constitution of the United States and for other Purposes."**

According to the U.S. Supreme Court the official short name is "Civil Rights Act of
1871**.**"[1] *See, e.g., the reference in Monell v. Department of Social Services of City of New York*,
436 U.S. 658, 664, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).   The "**Civil Rights Act of 1871**" was
shepherded through Congress and signed by Republican President Ulysses S. Grant, to carry out
the policies of Republican President Abraham Lincoln.

The session law to which Plaintiffs are referring is now confided in 42 U.S.C. § 1985.  (It
was previously codified under the "Revised Statutes.")  A cause of action should be brought
under 42 U.S.C. § 1985 as the most proper, useful, official, and legally valid way to state a cause
of action.  This is important because the codified statutes incorporate in one place all of the

---

[1]     Those seeking to inflame racial tensions pretend that 1964 was the first time a Civil Rights Act was passed,
ignoring the landmark Civil Rights Act of 1957 that Republican President Dwight D. Eisenhower championed and
ran for re-election on, and the Republican Civil Rights Act of 1960.  Here, the suit is on the 1871 Civil Rights Act.

accumulated changes to federal statutes enacted over the years. [2]

The other informal name of the Civil Rights Act of 1871 is "The Third Enforcement Act of 1871" referring to the power under the Fourteenth Amendment of Congress to pass laws to enforce the Fourteenth Amendment.  There are occasional references to a Klu Klux Klan Act, but that is not the name for the statutes.

However, officially, there is no Klu Klux Klan Act of 1871, as shown in the official session laws of the U.S. Congress.  Strikingly, there is no mention of the Klu Klux Klan anywhere in P.L. 42-22  – either in its name, short or long version, or in the actual text of the session law itself.  P.L. 42-22 has a name.  The name has nothing to do with the KKK.  Not using the correct, official name of the statute is an effort to imply racism without evidence.

Furthermore, the actual text of P.L. 42-22 has little to do with the Klu Klux Klan's despicable activities.  Attempts fail at suggesting that the KKK was the evil being addressed by the Act.  The Act reads as being focused on the acts that initiated the Civil War, not on the KKK, such as the rebellion of the Confederacy or the attack on Ft. Sumter.  Historically, the KKK was largely a covert instrument of government officials in the former Confederacy.[3]  The KKK mostly terrorized private individuals but served government officials.  Many members of the KKK were themselves government officials by day, from police officers to mayors to military,

---

[2]      In 1882, the U.S. Supreme Court ruled that the enforcement acts like P.L. 42-22 are unconstitutional, in *United States v. Harris*, 106 U.S. 629 (1882) ("As, therefore, the section of the law under consideration is directed exclusively against the action of private persons, without reference to the laws of the states or their administration by the officers of the state, we are clear in the opinion that it is not warranted by any clause in the Fourteenth Amendment to the Constitution.").  Thus, lawsuits like this should be brought under the codified statutes of the United States Code, not under original session laws which could undergo modification over the years.

[3]      "The Ku Klux Klan was and is undeniably a terrorist organization—but what made the Klan an especially insidious terrorist organization, and a threat to civil liberties, was that it functioned as the unofficial paramilitary arm of Southern segregationist governments  …  it will be remembered as an instrument of cowardly Southern politicians who hid their faces behind hoods, and their ideology behind an unconvincing facade of patriotism."  Tom Head, "Timeline History of the Ku Klux Klan," ThoughtCo. , updated December 14, 2020, accessible, at:  https://www.thoughtco.com/the-ku-klux-klan-history-721444.  ***Saved and preserved on April 18, 2021.***

but wore masks or hoods by night to sustain their governmental positions.[4]

Reconstruction stopped in 1877 when Democrats in Congress demanded the removal of Federal authorities from the former Confederate states as a condition of resolving the disputed presidential election of 1876.  U.S. Government authority over former Confederate States was curtailed in the chambers of the U.S. Congress. [5]

It was not KKK resistance to government, but wheeling and dealing in the cloakroom (or similar locations) of the U.S. Congress, that brought Lincoln's Reconstruction Era to an end, and brought on Jim Crow laws and KKK terror as federal troops withdrew from the South, discrimination, segregation, etc.

Ironically, it was a disputed Electoral College vote tally in the 1876 presidential election that ended Reconstruction.  While the 1877 Compromise was ugly and reeks of vote-trading and corruption, critics of these Defendants refuse to acknowledge that Congress' role in counting Electoral College votes has always included hearing and resolving disputes.

Therefore, reading the ***substance*** of P.L. 42-22 also does not add any support to dragging the Klu Klux Klan into this lawsuit, either.

Why, then, do the Plaintiffs sue within the District of Columbia under a supposed "Klu Klux Klan Act of 1871?"  Why not state a cause of action properly under 42 U.S.C. § 1985?

---

[4]     "In the 1920s, during what historians call the KKK's "second wave," Klan members served in all levels of American government."  Tara McAndrew, "The History of the KKK in American Politics," JSTOR, January 25, 2017, accessible at:  https://daily.jstor.org/history-kkk-american-politics/

[5]     "The Democrats agreed not to block Hayes' victory on the condition that Republicans withdraw all federal troops from the South, thus consolidating Democratic control over the region. As a result of the so-called Compromise of 1877 (or Compromise of 1876), Florida, Louisiana and South Carolina became Democratic once again, effectively bringing an end to the Reconstruction era."

* * *

"The Compromise of 1876 effectively ended the Reconstruction era. Southern Democrats' promises to protect civil and political rights of blacks were not kept, and the end of federal interference in southern affairs led to widespread disenfranchisement of blacks voters."
"Compromise of 1877," History Channel, March 17, 2011, updated November 27, 2019, accessible at: https://www.history.com/topics/us-presidents/compromise-of-1877

Rather than using the correct name of the law, Plaintiffs strain to try to inject race into a racially neutral and color blind controversy.

This entirely unnecessary, irrelevant ("impertinent" as the rules call it), and inappropriate racial polarization is prejudicial under FRCP Rule 12(f) and a deliberate, knowing, intentional effort to influence the jury pool.  It is also a deliberate, knowing, intentional effort to use the Court to defame the Defendants outside of Court.  And it does public harm to society outside of the Court to have activities in this Court – using the prestige of the federal judiciary – to promote racial polarization and gratuitously inflame racial animosity which can cause actual, real harm.

Apparently, those behind the lawsuit think that there is not enough strife, division, wounds, and conflict in our society.  They want to falsely and sanctionably claim a racial motive merely to profit from the racial strife.  If one makes a living treating Polio, what can they do when Polio is all but eradicated?   They'd have to close up shop.  But trying to exploit race and inflame society is as unacceptable as those who injured police officers.

Defendant's counsel (always) urges a logical test:  _Suppose we deleted from the Complaint all references to race and the KKK:  Would anything change in terms of the legitimate legal aspects of the case?_

What would change is improper, extraneous, illegitimate insinuation and smears.

But the actual legal issues in the case would be totally unaffected, if we removed all references to race, the KKK, etc.

This logical test tells us that references to race and the KKK are an abuse of the lawsuit included for an improper purpose because they do not support or enlighten the lawsuit.

The references are included ***TO INFLAME, NOT TO INFORM***.

The Complaint would inflame the jury pool to prejudice the Defendants and to abuse the

judicial process to defame the Defendants in the public through the courts.

Since 92.15% of the District of Columbia's voters voted for the Democrat candidate for President Joe Biden rather than for Donald Trump, see Exhibit A, attached, Plaintiffs' ploy has already inflamed potential jurors and will deny the Defendants a fair trial as required under the Due Process requirements of the U.S. Constitution.

### B)  Plaintiffs on Their Initiative Have Tainted the D.C. Jury Pool

The publicity resulting from this lawsuit was not – as in the typical case – a result of events preceding a case, but from the lawsuit itself.  Here, the surge of publicity intentionally seeking to smear Defendants as violating the "Klu Klux Klan Act" was entirely caused by the original  Plaintiff, and the public relations efforts of the original Plaintiff's allies.

Pre-trial publicity has falsely presented this lawsuit as claiming violations of the Klu Klux Klan Act.  Saturation news coverage reached the D.C. jury pool through The Washington Post, [6] The Washington Times, [7] The Washington Examiner, national and D.C. television news networks, and radio news such as WTOP and WMAL.

### C)  References to Klu Klux Klan Are Irrelevant and Impertinent

Why did the Plaintiffs characterize this lawsuit under the Civil Rights Act of 1871, codified today at 42 U.S.C. 1985, as being filed under the "Klu Klux Klan Act of 1871?"

Therefore, Plaintiffs side-swipe the Defendants with *the Plaintiffs' own* racially-charged allegations, not upon anything that the Defendants said or did having any racial motivation.

Massive publicity followed the filing of this case, combining the Proud Boys and the KKK typically in the same sentence.  Why? *See, index of Exhibit 62,200 Google search results attached as Exhibit B.*

---

[6]      See Exhibit C,  attached.
[7]      See Exhibit D,  attached.

**D)  Plaintiffs' Allegations are Improper, Including as Rule 11 Violations**

Given that the Plaintiffs' allegations also violate FRCP Rule 11, the effects upon the jury pool are legally even more significant.

Given that the Plaintiffs' allegations also violate FRCP Rule 11, the propriety and necessity is far greater of striking the "impertinent" and "scandalous" material (as FRCP Rule 12(f) oddly describes it – Defendant's counsel would describe the material as false, unnecessary, and unfairly prejudicial).  Matter that violates FRCP Rule 11 especially should be stricken.

Plaintiffs sue under a non-existent law transparently for the purpose of continuing to lie about these Defendants and falsely accuse the Defendants of being White supremacists.  This allegation is without evidentiary support.

Without the slightest shred of any evidence of any racial motivation, Plaintiffs allege that attempts to ensure that the 2020 presidential election was conducted honestly, pursuant to Article II, Section 1 of the U.S. Constitution, accurately, and transparently for the confidence of the American people has some racial motive.

There is no evidentiary basis for Plaintiffs alleging that preferring Trump over Biden for President in November 2020 or wanting credible, accurate election results the public can trust would have any racial aspect to it whatsoever.  The attempt to inject race into events having no racial component of any kind is a violation of FRCP Rule 11, once these defamatory lies from the political world became converted into the Complaint filed here in federal court.

Whether one candidate is better than another is of course, beyond all doubt, not of interest to federal courts.  But corrupting the judicial process with false and frivolous allegations of racism is an improper purpose under FRCP Rule 11 and should be of concern.

Therefore, the Plaintiffs' attempts to turn racially-neutral issues into fomenting racial

16

conflict violate FRCP Rule 11 by being filed for an improper purpose – to intentionally corrupt the legal process by prejudicing the Defendants before the jury pool and trying the case in the public news media.  The allegations violate FRCP Rule 11 by not being warranted by existing law.  The allegations violate FRCP Rule 11 by lacking evidentiary support.  The allegations violate FCRP Rule 11 by sparking racial conflict outside the Court and using the Court to defame the Defendants by mis-use of the Court.

### E)  <u>Reservation of All Rights Substantive and Procedural Beyond these Motions</u>

Defendant would not want the Court or the public to confuse the filing of these initial, technical motions with any lack of strong disagreement with the Complaint.

Defendant Zachary Rehl files these initial, technical motions because they must be filed and heard first under the FRCP and governing precedents, not because Defendant is lacking in any determination to fully defend his rights and the truth against Plaintiffs' Complaint.

Defendant fully reserves his objections, denies the allegations of the Complaint, and denies any and all liability under the Complaint's claims.  The Complaint is intended to be defamatory outside of the courthouse and an abuse, continuing to spread false narratives about the Defendant and honorable U.S. citizens and patriots through the courts.

Therefore, at the proper time, after this Court decides on his motion to transfer venue and decides on ordering the Plaintiffs to restate their allegations and claims, Defendant intends to fully respond to the Complaint in all respects and in all procedural methods, including a motion to dismiss under D.C.'s ANTI-SLAPP Act, motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), and if necessary an Answer to the Complaint.

### V.    **CONCLUSION**

The Court should order that the Complaint be redrafted to remove mentions of a Klu

Klux Klan Act, the Klu Klux Klan, White supremacists, racism, racial motives, or other material

that FRCP Rule 12(f) calls in colorful language impertinent or scandalous.

Dated:  October 5, 2021          RESPECTFULLY SUBMITTED
                                    ZACHARY REHL, *By Counsel*

                                    Jonathon A. Moseley, Esq.

                                    USDCDC Bar No. VA005
                                    Virginia State Bar No. 41058
                                    Mailing address only:
                                    5765-F Burke Centre Parkway, PMB #337
                                    Burke, Virginia 22015
                                    Telephone:  (703) 656-1230
                                    Facsimile:  (703) 997-0937
                                    Contact@JonMoseley.com
                                    Moseley391@gmail.com

## CERTIFICATE OF SERVICE

       I hereby certify that on October 5, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s).  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia. A copy will also be sent by email.

                  Mr. Damon Hewitt, Esq.
                  Jon Greenbaum, Esq., D.C. Bar No. 489887
                  Edward G. Caspar, Esq., D.C. Bar No. 1644168
                  David Brody, Esq., D.C. Bar No. 1021476
                  Arusha Gordon, Esq., D.C. Bar No. 1035129
                  Noah Baron, D.C. Esq., Bar No. 1048319
                  Adonne Washington Esq.,
                  Lawyers' Committee for Civil Rights Under Law
                  1500 K Street N.W., Suite 900
                  Washington, DC 20005
                  Tel: (202) 662-8300
                  jgreenbaum@lawyerscommittee.org
                  dhewitt@lawyerscommittee.org
                  ecaspar@lawyerscommittee.org
                  dbrody@lawyerscommittee.org
                  agordon@lawyerscommittee.org

nbaron@lawyerscommittee.org
awashington@lawyerscommittee.org
Legal Co-Counsel for Plaintiffs

Mr. Robert C Buschel, Esq.
BUSCHEL & GIBBONS, P.A.
501 East Las Olas Boulevard, Suite 304
Fort Lauderdale, Florida 33301
954-530-5748
Buschel@bglaw-pa.com
Legal Counsel for Defendant Roger Stone

Although undersigned counsel should not presume
to decide for other co-Defendants who their legal
counsel should be or will be, outside of this filing
counsel will email a copy of this pleading to counsel
for other named Defendants if they can be determined.


Jonathon A. Moseley, Esq.