**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMITH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:21-cv-2265-APM |
| v. | ) |
| | ) |
| TRUMP, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT ETHAN NORDEAN'S MOTION TO STAY CASE IN PART**

Defendant Nordean, through his court-appointed criminal counsel, moves to stay the part of this civil case that concerns Nordean for 90 days. A judgment proof defendant, Nordean has been incarcerated for the past six months as he awaits trial on several complex felony charges relating to the events of January 6. Plaintiffs' counsel have imported those liability theories into the Complaint here, albeit inaccurately. A 90-day stay of this civil matter would not delay Plaintiffs' recovery for several reasons, including that the government has already withdrawn some of the criminal allegations on which the Complaint here stakes its claim to Nordean's nonexistent resources. All of this district's traditional factors support a temporary stay that can be revisited in three months' time.

Plaintiffs' notion appears to be that the Department of Justice is not adequately protecting their interests and that Plaintiffs' counsel are needed to step into the breach. Plaintiffs' counsel are mistaken in that regard.

**I.     The Complaint**

Plaintiffs are clearly defined.   They are seven U.S. Capitol Police officers who defended the Capitol on January 6. Compl., p. 1. Defendants, on the other hand, are a congeries of

individuals who are among the over 640 defendants criminally charged in connection with the events of January 6.  *Id*., pp. 2-7.  Added to the mix in the Complaint here are the former president and one of his political advisors.  *Id.*

What appears to unite this random group of civil defendants—according to the Complaint if not the federal government—is that it was they, and not the other 600-odd criminal defendants, who "caused" the January 6 riot.  *Id.*, p. 5.  Of course, that conflicts with the government's claim that a far greater number of protesters bear causal responsibility.  The Complaint further alleges generally that the former president conspired with each civil Defendant "to prevent Congress from certifying the election results through the use of force, intimidation and threats." *Id.* However, the Complaint does not allege any fact showing an agreement to pursue that end between the former president and Nordean, which the federal government does not allege, or between Nordean and anyone else, which the government has been unable to demonstrate after eight months of searching every device, communication app, and possession of Nordean's.[1]

Nordean is referenced in 12 paragraphs of the Complaint. Compl., ¶¶ 24, 26, 28, 75, 87, 92-93, 99, 114-15, 129, 131.  Virtually every reference rests on a misunderstanding of the criminal case.  The Complaint alleges that Nordean and others "created a leadership structure called the Ministry of Self Defense . . .which was specifically intended to help coordinate the Capitol Attack. . ." Compl., ¶ 24.  This statement may constitute a Rule 11 violation.  Fed. R.

---

[1] In filing these allegations, Plaintiffs' counsel "certifie[d] to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . ." Fed. R. Civ. P. 11(b)(3).  It is difficult to see how that rule has been satisfied here.  The Complaint cites no evidence in support of its allegation that Nordean conspired with the former president to do anything.  In over eight months of criminal case litigation, no evidence has emerged of an agreement between Nordean and anyone else to "use . . .force, intimidation and threats" to "prevent Congress from certifying the election results."

Civ. P. 11(b)(3).  Plaintiffs' claim misapprehends a related allegation in the criminal case, which is itself factually mistaken.  The government has proffered evidence that Nordean participated in a Telegram chat thread called "Ministry of Self-Defense," with over 60 other participants, many of whom did not know one another.  *U.S. v. Nordean*, 21-cr-175, ECF No. 41 (D.D.C. 2021), pp. 1-8.  Although these chats span over 1,500 pages of text, and the days before and after January 6, the messages do not contain a single reference to the commission of any crime.  *Id.* at 2.  The chats encompass a total of six messages by Nordean.  None shows his agreement to do anything, criminal or otherwise.  *Id.*  The government does not even allege that Nordean conspired to use "force, intimidation and threats,"[2] and eight months of litigation have yielded no evidence that he conspired to commit any criminal act on January 6.  All of this information was publicly available to Plaintiffs some five months before the Complaint was filed.  21-cr-175, ECF No. 41.

The Complaint alleges that Nordean currently belongs to something called the "Elders Chapter" of the Proud Boys organization.  Compl., ¶¶ 26, 28.  Again, the information showing this allegation is not supported by evidence was publicly available to Plaintiffs months before the Complaint was filed.  21-cr-175, ECF No. 85-2 (sworn declaration explaining that the "Elders Chapter" no longer engaged in any activity and was dissolved last summer).

The Complaint alleges that Nordean "communicat[ed] through earpieces and walkie-talkie-style communication devices" in order "to coordinate the attackers' movements." Compl., ¶ 114.  This claim is sourced from a pretrial detention motion the government filed in March. 21-cr-175, ECF No. 18, pp. 10-11.  It turned out that this allegation was demonstrably false in

---

[2] Nordean is charged with conspiring to violate 18 U.S.C. § 1512(c)(2).  If the government were accusing him of obstructing Congress "by threats or force," Nordean would be charged under a different obstruction statute.  18 U.S.C. § 1505.  This information was publicly available to Plaintiffs before they filed the Complaint.

several respects.  As the government knew at the time it made the proffer, Nordean's mobile phone was without power during the events of January 6.  21-cr-175, ECF No. 19, p. 9.  Nor did Nordean carry a "walkie-talkie-style communication device" that day.  21-cr-175, ECF No. 22. Thus, Nordean did not "coordinate attackers' movements" with "communication devices." When the Court questioned the government about why it made these factual assertions without evidence, the government withdrew the claim that Nordean "led the Proud Boys through the use of encrypted communications . . .with the specific plans to: split up into groups, attempt to break into the Capitol building from as many different points as possible. . ." The Chief Judge summarized the development as follows:

> THE COURT: What the Government said in its original papers is that [Nordean] directed the Proud Boys with specific plans, telling them to split up into groups and to attempt to break into the Capitol building; that's a far cry from what I heard at the hearing today.  And the Government has backtracked on saying that they actually did see – directly told them to split into different groups and had this kind of strategic plan. . . .
>
> There is no allegation that [Nordean] caused injury to any person or that he even personally caused damage to any particular property.  . . He was a leader of a march down to the Capitol.  Once they got there it's not clear what leadership role this defendant took at all to the people inside the Capitol or – even the evidence about the defendant directing people to break windows to get into the Capitol is weak, to say the least. . .

Hr'g Trans., 3/3/21, pp. 79-80.

That was available to Plaintiffs for five months before the Complaint was filed.

The Complaint alleges that Nordean "assaulted" Capitol Police officers.  Compl., ¶ 115. That is likely a violation of Rule 11.  The government does not accuse Nordean of assaulting anyone on January 6, much less law enforcement.  To the contrary, U.S. Capitol Police video from that day depicts Nordean stopping a protester from shoving a police officer.  21-cr-175, ECF No. 57.  The Court should ask Plaintiffs' counsel to explain its evidentiary basis for this false allegation.

4

The Complaint alleges that during and "immediately after" January 6, Nordean posted on Telegram that protesters at the Capitol were "warriors of God." Compl, ¶ 129.  None of the contemporaneous Telegram chats, to which Plaintiffs have no access in any event, shows Nordean making that comment.

Based on these claims, the Complaint alleges that Nordean conspired to interfere with civil rights, and failed to prevent a conspiracy to interfere with civil rights, in violation of the Ku Klux Klan Act, 42 U.S.C. § 1985(1), § 1986.  Compl., ¶¶ 151-166.

It also alleges that Nordean violated the D.C. Bias-Related Crimes Act (BRCA), D.C. Code § 22-3704(a).  Compl., ¶ 167.  Two of the predicate BRCA "offenses" Nordean is said to have committed are a violation of the D.C. Anti-Terrorism Act of 2002 (ATA) and property destruction in violation of D.C. Code § 22-303.  Nordean is said to have violated the ATA by "commit[ing] and conspir[ing] to commit malicious destruction of property," which is a specified offense under the ATA.  *Id.*, ¶ 176.  Here, too, Plaintiffs have failed to review publicly available records before filing their Complaint.  For the government does not accuse Nordean of conspiracy to commit property destruction and has proffered no evidence that he has.  21-cr-175, ECF No. 26, ¶ 27 (objects of the conspiracy).  Plaintiffs' allegation that Nordean conspired to, or did, destroy property is not based on evidence reviewed by their counsel for the simple reason that it does not exist.

## II.    Argument

### A.    Standard for a motion to stay civil case related to parallel criminal case

The Court has the discretion to stay civil proceedings in the interest of justice and "'in the light of the particular circumstances of the case.'"  *Doe v. Sipper*, 869 F. Supp. 2d 113, 115 (D.D.C. 2012) (Boasberg, J.) (quoting *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.3d

1368, 1375 (D.C. Cir. 1980)).  The factors commonly weighed when a party moves to stay civil proceedings in light of parallel criminal proceedings are: (1) the relationship between the civil and criminal actions; (2) the burden on the court; (3) the hardships or inequalities the parties would face if a stay was granted; and (4) the duration of the requested stay.  *Sipper*, 869 F. Supp. 2d at 116; *see also Horn v. Dist. of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002) (laying out similar factors).  All of these factors support a stay of this case for 90 days.

    **B.    Relationship between this matter and the criminal case**

    The "strongest case" for a stay is where both actions involve the same matter.  *Dresser*, 628 F.2d at 1375-76; *Sipper*, 869 F. Supp. 2d at 116.  When such cases proceed at the same time, it will implicate the defendant's Fifth Amendment rights.  *Sipper*, 869 F. Supp. 2d at 116.  The defendant "would be forced to choose between waiving his Fifth Amendment right to defend himself in the civil suit" or asserting the privilege and possibly losing the civil case.  *Id.* (citing *Walsh Sec.*, *Inc.*, *v. Cristo Prop.*, *Mgmt.*, *Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998)).  "A close relationship between the two actions, furthermore, is often viewed as the most significant factor in the balancing test." *Sipper*, 869 F. Supp. 2d at 116.

    Here, the "civil and criminal actions . . . indisputably stem from identical events." *Sipper*, 869 F. Supp. 2d at 116 (granting stay motion).  The Complaint alleges that Nordean, Joseph Biggs, Charles Donohoe, and Zach Rehl conspired to prevent Congress from certifying the results of the 2020 presidential election.  Compl., p. 5.  That is exactly what the First Superseding Indictment charges in Nordean's criminal case.  21-cr-175, ECF No. 26.  As shown above, nearly every reference in the Complaint to Nordean is sourced from the criminal case (albeit inaccurately).  That the Complaint filters the government's legal theories through the framework of the Ku Klux Klan Act rather than 18 U.S.C. § 371 (criminalizing conspiracy

against laws of the United States) is of no moment, as both claims rest on the same mixed factual and legal theory that Nordean and others conspired to prevent Congress from certifying the 2020 presidential election on January 6.  *Sipper*, 869 F. Supp. 2d at 116 (entering stay because the civil and criminal cases "stem from identical *events*," even though civil case alleged rape and criminal case charged defendant with "sexual abuse") (emphasis added).  The concern for Nordean's Fifth Amendment right is not ameliorated here simply because the Complaint adapts the government's conspiracy allegations to the rubric of the Ku Klux Klan Act.  Thus, this factor argues strongly for a stay.

### C.      Burden on the Court

By granting a stay in a civil case that is parallel to a criminal one, the Court may facilitate the civil matter, whereby the burden on the Court would be eased.  *Sipper*, 869 F. Supp. 2d at 116; *see also Estate of Gaither ex rel. Gaither v. Dist. of Columbia*, 2005 U.S. Dist. LEXIS 35426, at *4 (D.D.C. Dec. 2, 2005) (stay in civil case until resolution of criminal case may later "streamline discovery" in the civil action).  And the Court "has an interest in avoiding unnecessary litigation that would burden its docket and hamper judicial economy." *Sipper*, 869 F. Supp. 2d at 116.

Here, the Court is handling several January 6 criminal matters burdened with abnormally large discovery proportions, including the Oath Keepers case, many of whose defendants have been added as parties here.  The government has called the January 6 investigation one of the largest, if not the largest, in the history of the Department of Justice.  Millions of pages of records, thousands of hours of body-worn camera footage and Capitol CCV film, and countless device seizures are in the process of being produced, reviewed and litigated over.  Allowing every civil case that piggybacks on the criminal investigation to proceed at the same time into

discovery would simply multiply administrative burdens that are already overwhelming the court system.  Over 640 defendants have been criminally charged in this Court in connection with January 6.  Fewer than 100 have pled guilty.  Thus, the "burden on the Court" factor weighs heavily in favor of a 90-day stay, so as to streamline the scope and scale of discovery in this case, should it proceed to that stage.  *Sipper*, 869 F. Supp. 2d at 116 (possibility that criminal case might plead out in the next few months weighs in favor of stay).

###### D.    Balance of interests

As Plaintiffs' counsel explained it to Nordean, Plaintiffs' interests would be harmed by a stay for the following reason.  Other plaintiff groups have also sued Nordean and related January 6 figures.  If Plaintiffs do not get the opportunity to counter motions to dismiss right now, their arguments might carry less weight than other plaintiffs' arguments.  Plaintiffs want to shape the debate.  This does not come close to outweighing Nordean's constitutional rights.

Plaintiffs are represented by an organization called the Lawyers' Committee for Civil Rights Under Law.  It is a large, well-funded public interest law firm, managed by partners at some of the world's most lucrative private law firms.  Lawyers' Committee for Civil Rights Under Law, Board of Directors, https://www.lawyerscommittee.org/boardofdirectors/.[3]  By contrast, the individual being sued by the Lawyers' Committee for Civil Rights Under Law is an impecunious criminal defendant represented by a court-appointed defense lawyer.  Whether the interest of well-resourced Plaintiffs' counsel in using civil litigation to kick an incarcerated, indigent defendant while he is down outweighs the harm to his criminal defense caused by

---

[3] To give some sense of the resources at the disposal of Plaintiffs' counsel, the Wall Street law firm Cravath announced a $6 million donation to Plaintiffs' counsel and two other organizations just two months before the Complaint was filed, https://www.cravath.com/news/cravath-announces-dollar6-million-donation-to-support-civil-rights-legal-services-and-education.html.

forcing his court-appointed counsel to spend uncompensated time duplicating criminal discovery issues here is a value judgment for the Court.  Nordean asks the Court to keep in mind that because he is a judgment proof defendant, the only apparent rationale for insisting that this civil case proceed now is that the Department of Justice is somehow insufficiently protecting Plaintiffs' non-financial interests in connection with January 6.  As the Court knows, that claim lands wide of the mark.  No one involved in these cases can claim with any credibility that the DOJ is not being sufficiently aggressive.

In any case, Nordean's Fifth Amendment dilemma is sufficient to overcome any of those Plaintiff interests.  *Sipper*, 869 F. Supp. 2d at 117-18.  If Nordean were to invoke his Fifth Amendment right and decline, for example, to answer deposition questions or interrogatories, his invocation could be used against him to establish civil liability.  *Id*. (citing *Louis Vuitton Muleteer S.S. v. LY USA*, *Inc.*, 676 F.3d 83, 98 (2d Cir. 2012)).

### E.  Duration of stay

A stay with a limited duration is more likely to be granted than an indefinite one.  *Sipper*, 869 F. Supp. 2d at 118 (citing *Landis v. N. Am. Co.*, 229 U.S. 248, 254-55 (1936)).  As the Court knows, a number of significant motions to dismiss charges are pending in the January 6 cases.  Resolution of those motions will likely occur within the next two months.  The disposition of those issues will likely expedite resolution of a number of relevant criminal cases.  Given that timeline, "a temporary stay of ninety days [is] reasonable."  869 F. Supp. 2d at 118.  At the conclusion of the three-month period, the Court can then revisit the appropriateness of a stay and set a deadline to respond to the Complaint and any related briefing schedule.

Dated: October 11, 2021                          Respectfully submitted,

                                                 */s/ Nicholas D. Smith*
                                                 Nicholas D. Smith (D.C. Bar No. 1029802)

9

7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 11th day of October, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Edward G. Caspar
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202-662-8390
Email: ecaspar@lawyerscommittee.org

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ Nicholas D. Smith
Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*