IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONRAD SMITH,                                    CASE NO.: 1:21-CV-02265-APM
et al.,

      Plaintiffs,
v.                                               Oral Hearing Requested

DONALD J. TRUMP,
et al.,

      Defendants.
_____/

## DEFENDANT BRANDON J. STRAKA'S MOTION TO DISMISS

Defendant Brandon J. Straka moves to dismiss all counts in the Complaint by Plaintiffs Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, and Jason Deroche pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Complaint (ECF No. 1) at 58-70 (¶¶ 151-205) (hereinafter "Compl."). The Court lacks subject matter jurisdiction over several of the Plaintiffs' claims, and the Plaintiffs have failed to state a claim against Mr. Straka upon which relief can be granted.

# Table of Contents

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................. 2

Argument ............................................................................................................... 3

   I.   The "Conspiratorial" Speech of Mr. Straka Alleged in the Complaint is Protected
      Under the First Amendment ......................................................................... 3

      A.  Speech About the Conduct of Public Officials and Elections is Protected at the
         Core of the First Amendment ............................................................. 3

      B.  Plaintiffs' Pleadings Fail to Survive *Brandenburg*'s Requirements................ 5

   II.  The Court Should Dismiss Plaintiffs' Claims Under the 42 U.S.C. §§ 1985 and
      1986 (Counts I and II) ................................................................................ 8

      A.  The Plaintiffs Fail to Allege a Conspiracy Involving Mr. Straka................... 9

      B.  Section 1985(1) Does Not Permit the Plaintiffs to Assert Claims on Behalf of
         Members of Congress, Congressional Staff, the President or Vice President .............. 10

      C.  If Section 1985(1) Provides For the Plaintiffs' Conspiracy Claims, It is
         Unconstitutionally Overbroad.............................................................. 13

      D.  Speech Addressing the Conduct of Public Officials Receives Special Safeguards....... 14

   III.  The Court Should Dismiss Plaintiffs' Claim Under the D.C. Bias-Related Crimes
      Act (Count III) ......................................................................................... 16

      A.  The Plaintiffs Lack Standing and Fail to State a Claim Under the Act to Bias-Via-
         Terrorism-Via-Destruction-of-Property or Bias-Via-Destruction-of-Property ............ 16

      B.  The Plaintiffs Do Not Have Standing to Claim Bias-Via-Rioting and the Law
         Must Not Reach Innocent Conduct........................................................ 18

      C.  The Civil Provision of the Bias Statute Must Be Construed As a But-For Standard .... 19

   IV.  The Court Should Dismiss Plaintiffs' Claims of Battery and Assault (Counts IV and
      V)............................................................................................................ 21

   V.  The Court Should Dismiss Plaintiffs' Claim of Negligence (Count VI).................... 23

Conclusion ............................................................................................................. 24

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 2

*Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) ................................................................... 2, 8

*Bates v. City of Little Rock*, 361 U.S. 516 (1960) ...................................................................... 4

*Bible Believers v. Wayne County, Mich.*, 805 F.3d 228 (6th Cir. 2015) ................................ 6, 14

*Black Lives Matter D.C. v. Trump*, No. 20-CV-1469, 2021 WL 2530722 (D.D.C. June 21, 2021) ...................................................................................................................................... 9, 15

\* *Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................................. 4, 5

*Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711 (9th Cir. 1981) ........................ 10

*Cohen v. California*, 403 U.S. 15 (1971) ...................................................................................... 4

*Cox v. Dep't of the Treasury*, 2021 WL 1268384 (D.D.C. Apr. 6, 2021) .................................... 2

*Crosby v. Catret*, 308 F. App'x 453 (D.C. Cir. 2009) .................................................................. 9

*Crosby v. Catret*, No. CIV.A. 08 0362, 2008 WL 553638 (D.D.C. Feb. 29, 2008) ...................... 9

*Dakota Rural Action v. Noem*, 416 F.Supp.3d 874 (D. S.D. 2019) ........................................ 6, 18

*Dennis v. U.S.*, 341 U.S. 494 (1951) ............................................................................................ 5

*Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) ........................ 1, 15

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) .................................................................. 3

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .............................................................................. 10

\* *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................................................ 22

*Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002) ............................................................................. 8

*Hess v. Indiana*, 414 U.S. 105 (1973) .......................................................................................... 5

*Kelly v. United States*, 140 S.Ct. 1565 (2020) ........................................................................... 12

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019) ................................................ 21

\* *Lucas v. U.S.*, 240 A.3d 328 (D.C. Ct. App. 2020)........................................................ 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................... 16

*Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Ct. App. 1973) ........................... 23

\* *McCracken v. Walls-Kaufman*, 717 A.2d 346 (D.C. Ct. App. 1998) ........................... 23

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)................................................ 3

*Moore v. Carson,* 775 F. App'x 2 (D.C. Cir. 2019)....................................................... 15

*Moore v. Castro,* 192 F. Supp. 3d 18 (D.D.C. 2016)..................................................... 15

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................... 14, 15

*Noto v. U.S.*, 367 U.S. 290 (1961) ...................................................................................... 5

*Nwanguma v. Trump*, 903 F.3d 604 (6th Cir. 2018)......................................................... 6

*People v. Shafou*, 330 N.W.2d 647 (Mich. 1982)........................................................... 18

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377 (1992)................................................. 20

*Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978)........................................................... 23

*Sculimbrene v. Reno,* 158 F.Supp.2d 8 (D.D.C. 2001) ....................................... 2, 14, 15

*State of W. Virginia v. U.S. Dep't of Health & Hum. Servs.*, 145 F. Supp. 3d 94 (D.D.C. 2015) 16

*State v. Montejano*, 196 P.3d 1083 (Wash. Ct. App. 2008)........................................... 18

*Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977) ............................................ 4

*U.S. v. Alvarez*, 567 U.S. 709 (2012).................................................................................. 4

*U.S. v. Jeffries*, 45 F.R.D. 110 (D.D.C. 1968) ............................................................... 18

*U.S. v. Miselis*, 972 F.3d 518 (4th Cir. 2020) ........................................................... 5, 13

*U.S. v. Rundo*, 990 F.3d 709 (9th Cir. 2021) .................................................................... 6

*U.S. v. Straka*, No. 21-CR-00579 (D.D.C. 2021) .................................................... 1, 21

*U.S. v. Williams*, 553 U.S. 285 (2008).............................................................................. 6

*United Mine Workers of America v. Illinois Bar Ass'n*, 389 U.S. 217 (1967) .............................. 4

*W. Virginia ex rel. Morrisey v. United States Dep't of Health & Hum. Servs.*, 827 F.3d 81 (D.C. Cir. 2016) ................................................................................................................................. 16

*Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983) ........................................................ 10

**Statutes**

18 U.S.C. § 201 (1976) ................................................................................................................. 23

2 U.S.C. § 1961 ............................................................................................................................ 11

40 U.S.C. § 5104(e)(2)(D) ....................................................................................................... 1, 21

42 U.S.C. § 1985 ................................................................................................................... 4, 8, 10

42 U.S.C. § 1986 ......................................................................................................................... 4, 8

D.C. CODE § 22-1322 ....................................................................................................... 16, 17, 18

D.C. CODE § 22-303 ..................................................................................................................... 16

D.C. CODE § 22-3153 ............................................................................................................. 16, 17

D.C. CODE § 22-3704(a) ................................................................................................ 15, 16, 17, 18

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ......................................................................... 19, 20

*conspiracy theory*, WIKIPEDIA, https://en.wikipedia.org/wiki/Conspiracy_theory ..................... 24

Eugene Volokh, *Crime–Facilitating Speech*, 57 STAN. L. REV. 1095 (2005) ............................. 14

**Rules**

FED. R. CIV. P. 11 ........................................................................................................................... 2

FED. R. CIV. P. 12 ...................................................................................................................... 2, 3

**Constitutional Provisions**

* U.S. CONST. amend. I ................................................................................................................... 1

## Introduction

"The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 475 (2007) (internal quotations and citations omitted); U.S. CONST. amend. I. In this case, the Court is confronted with the fallout of a very bad day: a protest gone horribly awry at the United States Capitol on January 6, 2021. But there is much more to January 6—including the thousands of peaceful protestors who travelled to Washington, D.C. to have their voices heard. The allegations made in the complaint upon which Plaintiffs predicate their claims are constitutionally protected forms of advocacy. Accordingly, these allegations cannot form the basis for liability lest Brandon Straka and myriad other innocent speakers be punished for exercising their constitutional rights.

Mr. Straka was present on the Capitol grounds that day and recently pleaded guilty to disorderly conduct for his illegal actions there. *See U.S. v. Straka*, No. 21-CR-00579 (D.D.C. 2021); 40 U.S.C. § 5104(e)(2)(D). But neither this nor the other awful events of January 6 permit the circumvention of fundamental constitutional rights presented by this case. Particularly as to the First Amendment: free speech, petitioning the government and peaceable assembly may not be simply transformed into conspiracy, even when the bona fide crimes and torts of others ensue the exercise of those rights. Regrettably, the Plaintiffs endeavor to do just that against Mr. Straka, basing each of their claims against him on conspiracy, and basing that conspiracy on First Amendment conduct with nothing close to assertions that articulate the claim. *See, e.g.*, Compl. at 14 (¶44) (alleging one may "join[] in the conspiracies alleged in this Complaint through . . . planning, support, promotion of, and participation in the January 5 and 6 rallies, the January 6

march, *and* the Capitol Attack[.]" (emphasis added)). For this reason alone, the Court should dismiss the Plaintiffs' counts against Mr. Straka. *See Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004)[1]. Each count also suffers from several distinct or shared flaws. The Plaintiffs' counts against Mr. Straka should be dismissed.

**Statement of Facts**

The Plaintiffs first allege that Brandon J. Straka "is a resident of Omaha, Nebraska, and a promoter for STOP THE STEAL [L.L.C.]. He breached the United States Capitol on January 6." Complaint (ECF No. 1) at 10 (¶22) (hereinafter "Compl."). Batting one for three at the outset (here, accurately asserting only Mr. Straka's residency), the truthfulness of the Plaintiffs' allegations never improves.[2] *Cf. id.* at 12 (¶31) (distinguishing between a breach of the Capitol and its grounds). They note that Mr. Straka gave a speech in Detroit, Michigan on November 6, 2020. *Id.* at 23 (¶69a). They allege that on January 5, 2021, "[a]t Freedom Plaza . . . STRAKA . . . made threats of violence to stop the count of electoral votes." *Id.* at 38 (¶101). Later, they allege, "STRAKA, at one of the Capitol entrances where the crowd had amassed, participated in the attack and yelled directions to fellow attackers to take a protective shield from the hands of a Capitol Police officer trying to protect himself." *Id.* at 44 (¶116). This allegation is also embellished.

---

[1] "In this circuit, District Judge Kollar–Kotelly reached the same conclusion in *Sculimbrene v. Reno,* 158 F.Supp.2d 8 (D.D.C. 2001), explaining that '[l]ike the libel statute at issue in *New York Times v. Sullivan* and the Sedition Act of 1789, Section 1985 of Title 42 carries the *potential* to infringe upon a speaker's First Amendment right if certain safeguards are not imposed.'"

[2] Counsel acknowledges that for purposes of a Rule 12 motion the Court must accept each of the Plaintiffs' allegations as true. *Cox v. Dep't of the Treasury*, 2021 WL 1268384, at *2 (D.D.C. Apr. 6, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But, if this case proceeds in any fashion against Mr. Straka, Counsel believes it is important to make early note of the Plaintiffs' misrepresentations. *See generally* FED. R. CIV. P. 11(b). This includes the fact that Mr. Straka has no connection or relationship with Stop the Steal and that he did not breach the United States Capitol itself.

Nevertheless, none of the Plaintiffs' five causes of action state a claim under these allegations and the Plaintiffs lack standing to bring some of their claims.

**Argument**

Parties may assert the lack of subject-matter jurisdiction and failure to state a claim by motion but must do so prior to filing a responsive pleading. FED. R. CIV. P. 12(b). "Before proceeding to the merits of a claim, a court must satisfy itself that it has subject-matter jurisdiction to consider the claim." *Cox*, 2021 WL 1268384 at *2. Moreover, "[t]o withstand a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). The Plaintiffs have met neither standard and these defenses wholly defeat the Plaintiffs' claims against Mr. Straka.

## I.     The "Conspiratorial" Speech of Mr. Straka Alleged in the Complaint is Protected Under the First Amendment

Speech critical of government officials and public conduct lies at the very heart of the First Amendment. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991). Because of this, statements of unpopular advocacy, ostracized ideas, and painfully ugly and regressive comments are fully protected as free speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's purpose is to protect unpopular speakers from retaliation and their ideas from suppression).

### A.     Speech About the Conduct of Public Officials and Elections is Protected at the Core of the First Amendment

The Plaintiffs make only two factual allegations as to Mr. Straka prior to his presence at the Capitol on January 6, 2021. The first is that he "made threats of violence to stop the count of electoral votes" at Freedom Plaza earlier that day, which is conclusory and far too vague to be

3

considered actionable.[3] The second is that he gave a speech two months prior to January 6, some 400 miles away:

> STRAKA told a crowd at a November 6, 2020 rally in Detroit that "People are out of their f\*\*king minds if they think that we're going to sit down quietly and allow them to steal this election." He proclaimed, "We are not going to take it," directed others to "never ever back down," and pledged he would "do whatever needs to be done to make sure that Donald Trump is victorious as our President for four more years."

Compl. at 23 (¶69a). This is protected speech that meets no exception. It is not incitement, and barely registers above heated political rhetoric. *See generally Cohen v. California*, 403 U.S. 15, 24–26 (1971). It was also not imminent—being issued two months prior to January 6. *See Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969) (First Amendment prohibits punishment of advocacy except when it incites imminent unlawful action).

Without any supporting detail in their factual allegations, in Count II the Plaintiffs allege Mr. Straka participated in a conspiracy (or, under 42 U.S.C. § 1986, neglected or refused to prevent violations of 42 U.S.C. § 1985(1)) by "raising funds to disseminate false claims of election fraud and to hold Stop the Steal rallies[.]" Compl. at 61 (¶163). Claims of election fraud are protected speech under the circumstances alleged here—even false claims of election fraud. *See U.S. v. Alvarez*, 567 U.S. 709 (2012). The same goes for fundraising and holding rallies. The Court should be mindful of the sensitivity demanded by the First Amendment as it assesses the Plaintiffs' claims: there is a consistent, cavalier disregard for free speech throughout the Complaint. Such concerns

---

[3] To the extent that the Plaintiffs associate Mr. Straka with Defendants Stop the Steal L.L.C., Ali Alexander, Roger Stone, and former President Trump, the allegations do not detail that Mr. Straka had any involvement with these defendants other than attendance or speaking at rallies. Attending rallies with others and speaking are protected acts under the First Amendment.

have consistently arisen in civil rights litigation brought by federal agents, and this case is no exception.

> Construction of s 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because 'laws which actually affect the exercise of these vital (First Amendment) rights' need not do so directly and overtly to be adjudged constitutionally offensive. . . . And we have no doubt that the prospect of a federal lawsuit resulting from any citizen complaint about the conduct of federal officials could chill the exercise of the right to petition.

*Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1343 (7th Cir. 1977) (quoting *United Mine Workers of America v. Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967); citing *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960)). To base a claim of conspiracy on protected speech takes far more than alleging that one's "followers" engaged in illegal activity. Compl. at 62 (¶164). The same goes for aiding and abetting allegations. The Plaintiffs do not meet the rudimentary standards for either theory of liability as to Mr. Straka, and the Court must demand far more for such allegations to pass constitutional muster here.

### B.   Plaintiffs' Pleadings Fail to Survive *Brandenburg*'s Requirements

The Plaintiffs fail to meet the constitutional standard required by *Brandenburg* and its progeny for an actionable claim. The government (including this Court via a civil action) may only punish protest-related speech that includes a direct "call to violence" or advocacy that is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *See Brandenburg*, 395 U.S. at 447; *Noto v. U.S.*, 367 U.S. 290, 297–300 (1961). At the same time, the Supreme Court has consistently protected the statement of an idea that "may prompt its hearers to take unlawful action. . . ." *Noto*, 367 U.S. at 297 (quoting *Dennis v. U.S.*, 341 U.S. 494, 545 (1951) (Frankfurter, J., concurring)). Indeed, even a protestor screaming, "We'll take the f***ing street again" amidst an agitated crowd resisting police authority could not be punished for his

speech. *Hess v. Indiana*, 414 U.S. 105, 107 (1973). Plaintiffs fail to distinguish this important constitutional divide and, by so doing, seek to penalize protected advocacy.

The Plaintiffs have pled that Mr. Straka gave an impassioned speech two months prior to January 6, 2021. Compl. at 23 (¶69a). They have also made conclusory statements that Mr. Straka "made threats of violence to stop the count of electoral votes." Compl. at 38 (¶101). However, such pleading, taken on its face, is insufficient to remove the speech at issue from First Amendment protection, per *Brandenburg*. For example, the Fourth Circuit found portions of the federal Anti-Riot Act to be unconstitutional that punished speech which would "promote," "encourage" or "urge" rioting. *U.S. v. Miselis*, 972 F.3d 518 (4th Cir. 2020). There, the court held that speech merely advocating violence remained protected and the Anti-Riot Act was substantially overbroad because it swept in language that might urge, promote, or encourage those acts. *Id.* at 541. Ugly as those ideas may be, the First Amendment assures that individuals are free to communicate them.

The Ninth Circuit reached a similar conclusion in *United States v. Rundo*, where it held portions of the Anti-Riot Act unconstitutional. 990 F.3d 709 (9th Cir. 2021). There, the defendants conducted combat training to prepare for violent acts at political rallies and travelled to a variety of political rallies. *Id.* at 712–13. Like the Fourth Circuit, the Ninth Circuit realized that the broad sweep of the Anti-Riot Act would reach speech far removed from *Brandenburg*'s imminence requirement. *Id.* at 717. Courts nationwide have consistently upheld the right of protestors to urge others to encourage protests, to speak out about issues they care about, and to do so without fear of liability. *See, e.g.*, *Dakota Rural Action v. Noem*, 416 F.Supp.3d 874, 886–87 (D. S.D. 2019) (portions of South Dakota's riot boosting act declared unconstitutional since it penalized speech outside of *Brandenburg*'s confines); *Nwanguma v. Trump*, 903 F.3d 604, 609–13 (6th Cir. 2018) (presidential candidate Trump's speech including "get 'em out of here" was not actionable under

*Brandenburg*); *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 244–46 (6th Cir. 2015) (likely offensive speech of Christian group at Islamic festival protected since actions taken by police punished speech outside of *Brandenburg*'s standard).

Far worse speech—that involving child pornography—remains well protected where abstract advocacy is at hand. *U.S. v. Williams*, 553 U.S. 285 (2008). The statement "I urge you to obtain child pornography" remains protected under the First Amendment because it is sufficiently abstract. *Id*. at 299–300. However, recommending that a person should obtain a *particular* item of child pornography is unprotected because it is sufficiently specific. *Id.* at 300. These constitutional distinctions have remained firm over the years—protecting abstract, non-imminent, if undesirable, speech, while leaving specific, imminent, unlawful speech unprotected.

As pled by Plaintiffs, Mr. Straka's statements fall entirely on the protected end of the *Brandenburg* spectrum. Statements like "[w]e are not going to take it," "never ever back down," "do whatever needs to be done," or suggestions people would not "sit down quietly and allow them to steal this election" are discussions of abstract advocacy about a highly contested presidential election. These statements remain protected advocacy at the core of the First Amendment. They lack any specific call to violence (hypothetically, "People, find a police officer and bash his head in!" or "Attack Senator John Doe now!"). They are not particular in that they do not ask protestors to take unambiguous actions or engage in detailed criminal acts. They are not imminent—the quoted material occurred two months before the January 6 event. And whatever Plaintiffs believe Mr. Straka communicated at Freedom Plaza remains an inkblot in a constitutional Rorschach test. Simply alleging one made "threats of violence" without detailing more does not turn protected advocacy into a punishable conspiracy under a plain reading of *Brandenburg*.

The speech that the Plaintiffs find repugnant remains protected advocacy. Because they have not alleged any speech outside the contours of *Brandenburg* by Mr. Straka, their claims sounding in conspiracy must fail.

## II.    The Court Should Dismiss Plaintiffs' Claims Under the 42 U.S.C. §§ 1985 and 1986 (Counts I and II)

The Plaintiffs bring their first claim under the first part of Title 42, Section 1985, conspiracy to interfere with civil rights:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties . . . . [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(1); *see* Compl. at 58 (¶152). The Plaintiffs further claim that Mr. Straka is liable for neglecting to prevent a violation of Section 1985:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action[.]

42 U.S.C. § 1986. The Plaintiffs' counts fail to state a claim against Mr. Straka under either statute.

## A.    The Plaintiffs Fail to Allege a Conspiracy Involving Mr. Straka

"Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'" *Barr*, 370 F.3d at 1200 (quoting *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002)). The Plaintiffs simply allege in this count that "TRUMP agreed with . . . .STRAKA", "STOP THE STEAL and ALEXANDER agreed with STRAKA" and "STRAKA agreed with STONE", while claiming that details of an agreement to take part in an unlawful action or a lawful action in an unlawful manner lie somewhere in the 150 paragraphs preceding the counts of their complaint. Compl. at 59 (¶155a, c, d). But there are no details whatsoever to support these claims. The Plaintiffs have not adequately alleged a conspiracy involving Mr. Straka, and these counts should be dismissed.

"Merely alleging that the defendant . . . communicated, without alleging any details of those communications *that suggest an unlawful agreement*, cannot justify inferring the requisite agreement for a § [1985(1)] conspiracy." *Black Lives Matter D.C. v. Trump*, No. 20-CV-1469, 2021 WL 2530722, at *12 (D.D.C. June 21, 2021) (emphasis added). The one detailed communication the Plaintiffs attribute to Mr. Straka is a speech two months prior to January 6, 2021. Compl. at 23 (¶69a). The Plaintiffs do not detail how Defendants Trump, Alexander, Stone or anyone affiliated with Stop the Steal L.L.C. agreed with Mr. Straka specifically, or vice versa. Neither does the complaint detail anything Mr. Straka allegedly agreed to do, when he agreed to do it, or in what manner. The Plaintiffs fail to allege an unlawful agreement or a "common scheme" involving Mr. Straka. *See Crosby v. Catret*, No. CIV.A. 08 0362, 2008 WL 553638, at *1 (D.D.C. Feb. 29, 2008), *aff'd*, 308 F. App'x 453 (D.C. Cir. 2009). The Plaintiffs list specific examples of

speech uttered by *other* Defendants that they thought actionable from speeches at Freedom Plaza, except for any specific statement by Mr. Straka. Compl. at 38 (¶101). They include detailed quotes from individuals like Alex Jones and Roger Stone. But when it comes to Mr. Straka, all Plaintiffs suggest is he made "threats of violence" without ever detailing what that speech might be. This cannot form the basis for a Section 1985(1) conspiracy. To allow such barebone pleadings to survive a motion to dismiss would open the floodgates for frivolous litigation to suppress free speech.

 As to Mr. Straka's alleged communications in Detroit, it bears repeating that the First Amendment prohibits broadly inferring a conspiracy from his words, political speech spoken at a peaceful assembly months before alleged violent acts by others. *See supra* part I. The complaint fails to allege a conspiracy by Mr. Straka.

> **B.    Section 1985(1) Does Not Permit the Plaintiffs to Assert Claims on Behalf of Members of Congress, Congressional Staff, the President or Vice President**

The Plaintiffs present a novel, overbroad theory under Section 1985(1) that should be rejected by this Court for lack of standing or failure to state a claim. In the same way the Plaintiffs may not infer a conspiracy by stringing together nonspecific public statements, the themes of peaceful assemblies with which they disagree, and a litany of alleged offenses by John Does to claim a conspiracy,[4] they may not enlarge their alleged conspiracy to include interference with objects—that is, duties—that they do not possess. In other words, Section 1985(1) does not permit the Plaintiffs' to assert a conspiracy claim based on actions against anyone except themselves.

Courts have found that Section 1985(1) "should be accorded 'a sweep as broad as [its] language.'" *Windsor v. The Tennessean*, 719 F.2d 155, 161 (6th Cir. 1983) (quoting *Griffin v.*

---

[4] *See infra* part IV.

*Breckenridge*, 403 U.S. 88, 97 (1971) (discussing Section 1985(3)). Yet Section 1985(1) has clear limitations. For example, the statute provides a cause of action "whereby *another* is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States[.]" 42 U.S.C. § 1981(1), (3) (emphasis added).[5] Despite this broad sweep, Section 1985(1) actions have long been correctly limited "exclusively to the benefit of federal officers." *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981). Clearly, a citizen bystander who is injured during the execution of a conspiracy to assassinate an elected official before he accepts a federal office does not have a cause of action under Section 1985(1). But neither does a federal agent who is injured while stopping that conspiracy. Here, the Plaintiffs are Capitol Police Officers, and thus federal officers. Compl. at 9 (¶¶11-17). But this Court must recognize that, while Section 1985(1) works to their benefit, they may not bring a cause of action for conspiracy against any duties but their own.

The Plaintiffs allege three different conspiracies for purposes of Section 1985(1): first, a conspiracy against "members of Congress, Congressional staff, *or* United States Capitol Police officers" from discharging their duties or President Biden and Vice President Harris from accepting or holding office; second, a conspiracy against "a member of Congress *or* a United States Capitol Police officer" to injure them on account of their lawful discharge of duties; and third, a conspiracy against "members of Congress, Congressional staff, *or* United States Capitol Police officers" to induce them to leave a place where their duties as officers were required to be performed. Compl. at 58-59 (¶153a-c) (emphases added). Thus, under all three theories, the Plaintiffs allege they can recover for injuries in a conspiracy against the discharge of duties they

---

[5] Courts infrequently note that the cause of action to Section 1985(1) is provided at the close of Section 1985(3), but this closing provision of the statute applies to "*any* case of conspiracy set forth in this section[.]" 42 U.S.C. § 1985(3).

do not possess. The Plaintiffs are not, for example, empowered to count electoral votes or to accept the office of the Presidency. *See, e.g.*, *id.* at 6-7 (¶7), 33 (¶91). Alleged conspiracies against the President-elect, members of Congress and even Congressional staffers are distinct, and the Plaintiffs may not assert a vicarious conspiracy because they had to exercise their duties to stop one of them. *See id.* at 4 (¶1) (noting the Plaintiffs' "shared mission to protect Congress so that it can carry out its constitutional responsibilities safely and openly."); *id.* at 54 (¶142) (citing 2 U.S.C. § 1961). This is the plain reading of Section 1985(1): the conspiracy alleged must be aimed at *the officer's* duties and the acts alleged must be done in furtherance of *that* object, not a conspiracy against any duties of any officer a government agent is tasked with protecting. *See also Kelly v. United States*, 140 S.Ct. 1565, 1571–74 (2020) (narrowing the bases of federal fraud prosecutions to the object of the fraud, as opposed to incidental byproducts).

This collapses the Plaintiffs' theory entirely, for there are no allegations that there was a conspiracy against the Capitol Police generally or any Plaintiff in that capacity under Section 1985(1). The Plaintiffs' counts here are based strictly on heated political rhetoric and activity that had nothing to do with the Capitol Police. Absent a limitation on the Plaintiffs' right to sue over conspiracies against *their* office and duties, the application of Section 1985(1) would be unconstitutionally overbroad. This amounts to constitutional commonsense—Members of Congress may bring civil suit as named plaintiffs, just as the Plaintiffs here did, if they wished to allege these claims. This would present the opportunity to examine the particular claims of particular plaintiffs in an adversarial setting. Allowing third parties to abstractly bootstrap potential claims of others onto their claims does not achieve this and would render the process unworkable. The Plaintiffs do not have a private remedy any time two or more persons engage in malfeasance

at the Capitol, yet that is the legal theory that they present to this Court. If that is really what the law means, it is unconstitutional.

### C.    If Section 1985(1) Provides For the Plaintiffs' Conspiracy Claims, It is Unconstitutionally Overbroad

To interpret Section 1985(1) to include conspiracies against other federal officials would raise serious constitutional concerns. Like the Anti-Riot Act considered by the Fourth and Ninth Circuits, Section 1985(1), when used as in the present fashion, is overbroad. It suffers from overbreadth because it allows suit to be brought against speakers engaged in protected advocacy. As stated by the Fourth Circuit, and as analogous here:

> Whereas *Brandenburg* removes advocacy relating to a riot from the protection of the First Amendment only if it is directed and likely to produce an imminent riot, the statute purports to regulate any speech tending merely to "encourage," "promote," or "urge" others to riot, as well as mere advocacy of any act of violence. Altogether, these areas of overbreadth cover the whole realm of advocacy that *Brandenburg* protects, and dwarfs that which it left unprotected.

*Miselis*, 972 F.3d at 541.

If the Plaintiffs' interpretation of Section 1985(1) is correct, the law would penalize substantial amounts of protected advocacy. But *Brandenburg* draws that line at communications directing imminent violence, permitting statutory redress only where that uncommon speech is present. Their theory ignores this limiting principle and swallows innocent, protected advocacy. Under their theory, the law would punish:

- Speech that "encouraged the use of force, intimidation, and threats, and incited violence. . . ." Compl. at 5 (¶2).

- Speech that "encouraged false claims of election fraud. . . ." *Id.* at 6 (¶5).

- Speech "promoting and disseminating countless false claims of election fraud. *Id.* at 6 (¶7).

- Speech "organizing, promoting, holding, and attending rallies." *Id.* at 7 (¶7).

- Speech that "promoted the use of force, intimidation, and threats to prevent election certification. . . ." *Id.* at 23 (¶69).

- Speech preparing and distributing "promotional materials that included maps that referenced the march." *Id.* at 28 (¶79).

- Speech about "false election fraud claims and [] threats of violence to stop the count of electoral votes." *Id.* at 38 (¶101).

The law can punish none of this speech. None of Mr. Straka's speech referenced by Plaintiffs advocates, condones, or even embraces imminent violence or lawlessness. It is not an easy task to "find that speech rises to such a dangerous level that it can be deemed incitement to riot. And unsurprisingly, '[t]here will rarely be enough evidence to create a jury question on whether a speaker was intending to incite imminent crime.'" *Bible Believers*, 805 F.3d at 244 (quoting Eugene Volokh, *Crime–Facilitating Speech*, 57 STAN. L. REV. 1095, 1190 (2005)).

The text of Section 1985(1) provides that individuals must conspire to prevent another to perform certain duties by force, intimidation, or threat. These are concrete actions that must be sufficiently pled to be actionable. But speech calling for an examination of perceived election irregularities in 2020 was not force, intimidation, or threat. Even heated speech suggesting "[w]e are not going to take it" is not force, intimidation, or threat. By its plain terms, Section 1985(1) links liability to specific, concrete types of illegal activity—force, intimidation, or threat. The Plaintiffs seek to stretch the statute's liability beyond its contours and beyond the boundaries of *Brandenburg*, which would be unconstitutional as applied.

### D. Speech Addressing the Conduct of Public Officials Receives Special Safeguards

Although this is not a traditional defamation action, claims arising under Section 1985(1) must receive the protection of *New York Times Co. v. Sullivan*. 376 U.S. 254 (1964); *see Sculimbrene*, 158 F.Supp.2d at 18. As to Mr. Straka, the focus of the instant suit is to punish him

for speaking out about issues of electoral integrity and the conduct of public officials during the 2020 elections. Public officials upset with that speech may use Section 1985(1) as a bludgeon against speakers critical of their performance or position. Here, the Plaintiffs use the statute in a wholly indiscriminate manner—attempting to penalize speakers engaged in heated advocacy, like Mr. Straka, along with others who breached the Capitol or instructed others to do so. This sends a clear message to the innocent class of speakers—do not come to the United States Capitol to voice your concerns lest you otherwise face the punishment of litigation. Those who would dare protest, march, or share their grievances in Washington, D.C. would be chilled by such a prospect, dampening the promise of the protection of the First Amendment for those speaking their own truth to power.

The Complaint alleges that Mr. Straka shared his opinion about perceived irregularities with the 2020 election to audiences in Detroit, Michigan and Washington, D.C. The Plaintiffs are United States Capitol Police officers who were thrust into the center of a national controversy on January 6, thus becoming limited-purpose public figures. *Sculimbrene*, 158 F.Supp.2d at 22–23. As such, as to the speech-related causes of action found in Counts I and II, Plaintiffs must carry the burden that the speech in question was made with actual malice. *Id.* at 24. And where the First Amendment is implicated, inferences should go in favor of speech, not censorship. *New York Times*, 376 U.S. at 289 (discounting the testimony of seven witnesses to draw defamatory inferences); *see also Wisconsin Right to Life*, 551 U.S. at 474 ("Where the First Amendment is implicated, the tie goes to the speaker, not the censor"). Because Plaintiffs have not pled that the statements made by Mr. Straka were communicated with actual malice or were otherwise unprotected constitutionally, Counts I and II fail as a matter of law and should be dismissed.

Each of the foregoing arguments call for the dismissal of Plaintiffs' claims against Mr. Straka under Section 1985. "'A plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986.'" *Black Lives Matter D.C.*, 2021 WL 2530722, at *11 (quoting *Moore v. Castro,* 192 F. Supp. 3d 18, 36 (D.D.C. 2016), *aff'd sub nom. Moore v. Carson,* 775 F. App'x 2 (D.C. Cir. 2019)). Thus, both counts should be dismissed.

### III. The Court Should Dismiss Plaintiffs' Claim Under the D.C. Bias-Related Crimes Act (Count III)

The Plaintiffs claim that Mr. Straka violated the D.C. Bias-Related Crimes Act via an "'intentional act that demonstrates an accused's prejudice based on the actual or perceived . . . political affiliation of a victim[.]'" Compl. at 63 (¶168) (quoting D.C. CODE § 22-3704(a)). Moreover, they allege they incurred injuries "'as a result of'" such acts. *Id.* They allege that the intentional acts in question were terrorism, rioting and inciting to riot, and destruction of property under D.C. law, respectively. Compl. at 63 (¶169) (citing D.C. CODE §§ 22-3153, 22-1322, 22-303). The Plaintiffs again claim that these occurred via conspiracy, against which Mr. Straka reiterates his argument that the Plaintiffs' have failed to properly allege any conspiracy on his part. *See supra* parts I, II(A); *cf.* Compl. at 64-66 (¶¶176, 179, 183). They also claim Mr. Straka engaged in these acts directly, but do not state a claim under any of these statutes much less establish them as intentional or designated acts that give rise to a claim under the Bias-Related Crime Act ("Bias Act").

### A. The Plaintiffs Lack Standing and Fail to State a Claim Under the Act to Bias-Via-Terrorism-Via-Destruction-of-Property or Bias-Via-Destruction-of-Property

To have standing "a plaintiff must allege: (1) injury-in-fact suffered by the plaintiff; (2) a causal connection between the injury and the complained-of conduct; and (3) a likelihood that the injury will be 'redressed by a favorable decision' from the court." *State of W. Virginia v. United*

*States Dep't of Health & Hum. Servs.*, 145 F. Supp. 3d 94, 99 (D.D.C. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *aff'd sub nom. W. Virginia ex rel. Morrisey v. U.S. Dep't of Health & Hum. Servs.*, 827 F.3d 81 (D.C. Cir. 2016). Even construed at its broadest, the Plaintiffs fail to allege a causal connection under the Bias Act for either destruction of property under D.C. Code section 22-303 or under the Anti-Terrorism Act in D.C. Code section 22-3152(1).

To bring an action under the Bias Act, one must be injured as "*a result* of an intentional act[.]" D.C. CODE 22-3704(a) (emphasis added). Under the Anti-Terrorism Act, the Plaintiffs' allegations of terrorism are only in regards to property damage. Compl. at 64 (¶176) (citing D.C. CODE § 22-3153(i), (l)). Likewise, they allege destruction of property specifically as an intentional act. *Id.* at 66 (¶183). As to themselves, the Plaintiffs only allege injury to their persons. *Id.* at 54-57 (¶¶ 143-149). They do not allege that any of these injuries occurred via property damage, such as while trying to extinguish a fire set to destroy property or the like. There is no causal connection between property damage and the Plaintiffs' injuries.

The Plaintiffs' may respond that, as to the Anti-Terrorism Act, biased destruction of property caused intimidation or coercion of a unit of government which, somehow, caused their personal injuries. *See id.* at 64-65 (¶¶177-178). Temporally speaking, this makes no sense, and the *actus reus* for the intentional act remains destruction of property, which must cause the injury. D.C. CODE § 22-3704(a). In any event, the Plaintiffs' have not alleged Mr. Straka engaged in any destruction of property whatsoever, and thus they cannot proceed with these claims as intentional acts under the Bias Act.[6]

---

[6] Mr. Straka again notes his argument against the Plaintiffs' conspiracy claims. *See supra* parts I, II(A). As to the Plaintiffs' allegation that Mr. Straka aided and abetted destruction of property (Compl. at 66 (¶183)), this fails for the same reason as discussed against the Plaintiffs' assault and battery claims. *See infra* part IV.

### B.    The Plaintiffs Do Not Have Standing to Claim Bias-Via-Rioting and the Law Must Not Reach Innocent Conduct

The Plaintiffs also allege Mr. Straka engaged in rioting or incited a riot, and thus committed a designated act for purposes of the Bias Act that caused injury to the Plaintiffs. Compl. at 65-66 (¶¶179-182) (citing D.C. CODE § 22-1322). They allege he aided and abetted rioting, but fail to establish this claim. *Cf. infra* part IV *with* Compl. at 65 (¶181). This law is terse: "A riot in the District of Columbia is a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons." D.C. CODE § 22-1322. The Plaintiffs fail to state a claim that Straka engaged in a riot. Compl. at 65 (¶180). Nevertheless, even with incorporation into the Bias Act the Plaintiffs must establish standing and demonstrate a theory that is not unconstitutionally overbroad.

Implausibly, under the Plaintiffs' theory anyone whose property or person is harmed by a participant in a "biased" riot in D.C. has a cause of action against anyone who participates it. Courts nationwide considering the breadth of anti-rioting laws have limited their reach to actual wrongdoers, not distant, imagined accomplices. *See, e.g.*, *State v. Montejano*, 196 P.3d 1083 (Wash. Ct. App. 2008); *People v. Shafou*, 330 N.W.2d 647, 653–54 (Mich. 1982) (reviewing changes to Michigan's rioting laws after civil disturbances in Detroit in 1967 and noting the difficulty of establishing accomplice liability); *Dakota Rural Action*, 416 F. Supp. 3d 874. And this Court has interpreted the District's earlier anti-rioting law to reach conduct, not advocacy, to be mindful of how narrow the law should apply given these constitutional concerns. *U.S. v. Jeffries*, 45 F.R.D. 110, 116–18 (D.D.C. 1968).

Problematically, Plaintiffs would employ the Bias Act to reach protected speech. The law permits a cause of action for an:

> intentional act that demonstrates an accused's prejudice based on the actual or
> perceived race, color, religion, national origin, sex, age, marital status, personal
> appearance, sexual orientation, gender identity or expression, family
> responsibilities, homelessness, disability, matriculation, or political affiliation
> of a victim of the subject designated act shall have a civil cause of action. . . .

D.C. CODE § 22-3704(a). This definition encompasses speech that is fully protected by the First Amendment. The law requires that some "intentional act" occur—under Plaintiffs' theory, something like associating together at a rally or promoting claims of election fraud. Under such an approach, protestors would be punished based solely on the content of their speech, which remains plainly unconstitutional. Plaintiffs' pleading specifically focuses on the predicate First Amendment conduct of Mr. Straka as a basis for liability, noting that Straka joined with hundreds of others at the Capitol (association) and "incited . . . others to engage in a riot by their actions" (free speech). Compl. at 65 (¶¶180-81). As noted previously, this is all speech that remains protected per *Brandenburg*. Liability cannot attach for Mr. Straka lecturing about perceived irregularities in the 2020 election and assembling with others who shared that common belief.

Where plaintiffs fail to plead that a defendant has committed an intentional act, no liability can attach. Here, the Plaintiffs have not alleged that one of their members suffered an intentional or criminal act committed by Mr. Straka against them—the necessary predicate for the Bias Act to apply. Instead, they are simply upset with the content of his advocacy that remains fully protected under *Brandenburg*. As a result, Count III should be dismissed.

### C.    The Civil Provision of the Bias Statute Must Be Construed As a But-For Standard

An "affiliation" is defined as "[t]he connection or involvement that someone or something has with a political, religious, etc. *organization*." *Affiliation*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). As used here, the Court should consider an "organization" to be "[a] group that has formed for a particular purpose[.]" *Organization*, BLACK'S LAW DICTIONARY (11th

ed. 2019). The Plaintiffs, by their own pleadings, argue that the actions in this count were directed toward both Democrats and Republicans. Compl. at 63 (¶173). This makes sense, since the January 6 protestors were protesting about perceived irregularities, perhaps electoral fraud, during the 2020 elections. Thus, the focus of their protests was about the propriety of elections. A staunch political disagreement over a contentious issue, and activities arising from them, cannot be considered prejudice against a political affiliation, as pled here. *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A preconceived judgment or opinion formed with little or no factual basis; a strong and unreasonable dislike or distrust.").

The Bias Act requires "but-for causation, such that the government must prove that [individuals committed a crime] because of their prejudice against him based on [a protected class.]" *Lucas v. U.S.*, 240 A.3d 328, 333 (D.C. Ct. App. 2020). As the *Lucas* Court recognized, constitutional free speech concerns are raised by bias laws and any such regime must take care not to punish speech alone based on disfavored topics. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 391–94 (1992). Accordingly, the Bias Act requires that the targeted activity, a selection of a victim, is an integral part of the crime and thus not protected expression. *Lucas*, 240 A.3d at 337. Further, it requires *not* that prejudice might be some "contributing cause" to a crime. Rather, one must prove that the "accused would not have committed the underlying crime but-for prejudice against the victim based on the victim's protected characteristic." *Id.* at 340. This ensures that the law abides by constitutional constraints and does not permit punishment due to virtual thought crimes.

The inner thoughts of Mr. Straka and his vibrant advocacy about electoral concerns are not proper bases, per *Lucas*, upon which to penalize him under the Bias Act. Being present on the Capitol grounds, as Plaintiffs allege, does not rise to an act of terrorism, inciting a riot, or

destruction of property. Compl. at 65 (¶180). And his resulting speeches and acts of association are plainly protected by the First Amendment. Plaintiffs fail to allege any but-for causation between acts taken by Mr. Straka and alleged injuries suffered by Defendants. Under the law and its interpretation by *Lucas*, such pleading fails as a matter of law and requires the dismissal of Count III.

Count III is the most creative legal tapestry that the Plaintiffs have presented to this Court (thus far), but this does not make it viable. For the foregoing reasons, the Plaintiffs' Bias Act claim should be dismissed.

## IV.   The Court Should Dismiss Plaintiffs' Claims of Battery and Assault (Counts IV and V)

The Plaintiffs' claims of battery and assault are perhaps the most direct claim against Mr. Straka because they touch upon the circumstances that led to criminal charges against him, for which he plead guilty for disorderly conduct on the Capitol Grounds and will be sentenced. Compl. at 44 (¶116); s*ee U.S. v. Straka, supra; see also* 40 U.S.C. § 5104(e)(2)(D). Nevertheless, these counts should also be dismissed. The Plaintiffs allege that Mr. Straka aided and abetted the alleged assaults and batteries against them and conspired to commit them, respectively. Compl. at 66-69 (¶¶186, 188, 192, 194). Mr. Straka re-alleges that the Plaintiffs have not adequately pled that he was part of a conspiracy. *See supra* parts I, II(A); *cf.* Compl. at 66 (¶188), 68 (¶194). This leaves aiding and abetting assault and battery, for which Plaintiffs also fail to state a claim.

"In order to be liable for aiding and abetting, Plaintiffs must have alleged that (1) the party or parties Defendants aided committed [assault or] battery, (2) Defendants were generally aware of their role in the tortious activity, and (3) Defendants knowingly and substantially assisted in the battery." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 50 (D.D.C. 2019). The Plaintiffs each allege exposure to pepper spray and other noxious gasses as harmful or offensive contacts, each

allege apprehension of imminent harmful or offensive contacts, and some allege additional harmful or offensive contacts. *See* Compl. at 54-57 (¶¶143-149). Plaintiff Latson alleges that he was "physically struck by attackers" while in the Senate Chamber. *Id.* at 55 (¶146). Plaintiff Marshall alleges that she was assaulted on the upper steps of the west side of the Capitol and inside. *Id.* at 56 (¶147). Plaintiff DeRoche alleges that he was assaulted on the north side of the west front steps of the Capitol. *Id.* at 57 (¶149). Mr. Straka, they allege, "at one of the Capitol entrances where the crowd had amassed, participated in the attack and yelled directions to fellow attackers to take a protective shield from the hands of a Capitol police officer[.]" *Id.* at 44 (¶116). The Plaintiffs do not contend that any one of them is the officer in question or that they were at said entrance, when Mr. Straka was present or otherwise.

Even affording the broadest indulgence to aiding and abetting doctrine, the Plaintiffs still fail to state a claim. Their direct claims here are against John Doe defendants. Compl. at 66-67 (¶¶ 185, 191). That they do not know who these people are but can assert that Mr. Straka (among others) aided them is dubious. The Plaintiffs also do not allege any facts that would show Mr. Straka was aware of the alleged assault or battery against any of them, respectively. Finally, perhaps most importantly, they allege no facts that would demonstrate knowing and substantial assistance.

The Plaintiffs' allegations meet none of the six factors of substantial assistance recognized by the D.C. Circuit. First, the Plaintiffs do not allege Mr. Straka's alleged assistance—words— contributed to their alleged attackers' hysteria, and very likely cannot given their respective locations at the time of the acts.[7] *Cf. Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983).

---

[7] The allegations relating to Mr. Straka's speech in Detroit, speech at Freedom Plaza, and other speech far removed from the Capitol grounds on January 6 are again of no moment here, or if they are, raise serious First Amendment concerns. *See supra* part I.

Second, they do not allege any amount or kind of assistance. *Cf. id.* Third, none of the Plaintiffs allege that Mr. Straka was in their vicinity at a point when he could be of substantial assistance to these alleged torts, much less at any point on January 6. *Cf. id.* Yet again, the Plaintiffs cannot credibly assert a relationship between Mr. Straka and the alleged tortfeasors because they cannot even name the alleged tortfeasors. *Cf. id.* Fifth, the Plaintiffs do not allege Mr. Straka's state of mind: to the contrary, they complain of being struck and exposed to noxious gasses such as bear spray, while Mr. Straka's alleged directions involved depriving another officer of his shield. *Cf. id.* Finally, the Plaintiffs identify no bookends to Mr. Straka's alleged assistance, or "[t]he length of time [he] has been involved with a tortfeasor." *Cf. id.*

Mr. Straka did not assault or batter the Plaintiffs or anyone that day, conspire to do so, or aid and abet anyone who did. The Plaintiffs have failed to state a claim otherwise, and these counts should be dismissed.

## V.     The Court Should Dismiss Plaintiffs' Claim of Negligence (Count VI)

The Plaintiffs' last count is negligence. This is based off a supposed "duty to act reasonably and conform to the standards of conduct set out in criminal statutes." Compl. at 68 (¶197). The Plaintiffs then cite three different criminal laws that Mr. Straka was allegedly negligent in violating. *Id.* (¶¶198-203). But one may only bring a cause of action for negligence for violating a statute that does not provide for a cause of action when, among other things, "'the statue imposes specific duties'" on a defendant. *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. Ct. App. 1998) (quoting *Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Ct. App. 1973)). None of the criminal statutes that the Plaintiffs cite impose specific duties on Mr. Straka—they apply to every member of the public. Thus, they do not give rise to a civil cause of action. *Cf. McCracken*, 717 A.2d at 354 (addressing a statute that placed duties on providers of "'professional services of

a medical, therapeutic, or counseling . . . nature'" (citation omitted)); *Marusa*, 484 F.2d at 834 (finding specific duties for tavern owners under regulations governing the sale of liquor); *see also Ray v. Proxmire*, 581 F.2d 998, 1001 (D.C. Cir. 1978) (finding no private cause of action or "duty of care in a common-law-tort cause of action" under 18 U.S.C. § 201 (1976)). The Court should dismiss this claim against Mr. Straka.

### Conclusion

Mr. Straka strongly regrets his disorderly conduct on the Capitol grounds on January 6 and will serve his sentence. *U.S. v. Straka*, *supra*. But his guilt in no way justifies this lawsuit. Properly confined to the law, the Plaintiffs cannot assert facts that will state a claim against Mr. Straka or establish standing. Their conspiracy theory does nothing more than live up to the colloquial, pejorative use of the term. *See conspiracy theory*, WIKIPEDIA, https://en.wikipedia.org/wiki/Conspiracy_theory (last visited Oct. 9, 2021); *see* Compl. at 16 (¶53) (chastising the propagation of "baseless conspiracy theories"). Of most concern constitutionally, the Plaintiffs—agents of the United States government—present theories that would transform free speech, assembly and petitioning the government into conspiracy and aiding and abetting with conclusory allegations that establish neither theory of liability between Mr. Straka and the Plaintiffs. This leaves the Complaint as nothing more than disagreement with Mr. Straka's exercises of his First Amendment rights. For the foregoing reasons, the Court should grant Mr. Straka's motion and dismiss the Plaintiffs' Complaint with prejudice.

Respectfully submitted,

Brandon J. Straka

By Counsel

/s/ Stephen Klein

Stephen R. Klein                                    Benjamin Barr*

Bar No. 177056                                      BARR & KLEIN PLLC

BARR & KLEIN PLLC                                   444 N. Michigan Avenue Ste. 1200

1629 K St. N.W., Ste. 300                           Chicago, IL 60611

Washington, DC 20006                                Telephone: (202) 595-4671

Telephone: (202) 804-6676                           ben@barrklein.com

steve@barrklein.com

*Pro hac vice motion to be filed

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to Plaintiffs' counsel and counsel for Defendants Roger J. Stone, Jr., Ethan Nordean, Zachary Rehl, Kelly Meggs, Felipe Antonio Martinez, and Derek Kinnison.

I further certify that, pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), all other Defendants will be served a copy of this motion and proposed order by first class mail.

/s/ Stephen Klein

*Counsel to Brandon J. Straka*