IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 1:21-CV-02265-APM |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT REHL'S MOTION TO STRIKE**

Plaintiffs are United States Capitol Police officers who suffered injuries during the violent attack on the United States Capitol on January 6, 2021. The attack on the Capitol was not random or spontaneous—it was caused by Defendants, including Defendant Rehl, who provoked, encouraged, and planned the attack as part of a conspiracy to use force, intimidation, and threats to prevent Joe Biden and Kamala Harris from taking office, to prevent Congress from counting the electoral votes, and to prevent the Capitol Police from carrying out their lawful duties.

Plaintiffs' principal claims against all Defendants are for their violations of 42 U.S.C. sections 1985 and 1986, which allow for redress for those injured by conspiracies to use force to prevent federal officers from doing their jobs. Sections 1985 and 1986 are commonly referred to as parts of the Ku Klux Klan Act. Defendant Rehl moves this Court to strike all references to the law by that name and to strike unspecified references to racism, white supremacy, and race. The Court should deny Defendant Rehl's motion because it falls well short of meeting the established

1

standard for striking language from a Complaint, and the challenged references in the Complaint are factually accurate and relevant to Plaintiffs' claims.

## LEGAL STANDARD

A motion to strike is "a drastic remed[y] that courts disfavor." *Bey v. Wash. Metro. Auth.*, 341 F. Supp. 3d 1, 11 (D.D.C. 2018); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (denying motion; noting that "motions to strike, as a general rule, are disfavored"); *NCB Mgmt. Servs., Inc. v. F.D.I.C.*, 843 F. Supp. 2d 62, 72 (D.D.C. 2012) (same). "[A]bsent a strong reason for doing so, courts will generally not tamper with pleadings." *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003) (citation and internal quotations omitted). Accordingly, courts "draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike." *Id.*

Allegations that provide helpful context or background concerning the dispute will not be stricken even in a case, unlike this one, where they are not strictly relevant to a particular claim. *See Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (holding that information that provides important context and background to a suit does not merit striking under Rule 12(f) even if not strictly relevant to a particular claim); *NCB Mgmt. Servs., Inc. v. F.D.I.C.*, 843 F. Supp. 2d 62, 72 (D.D.C. 2012) ("If the allegations challenged by the FDIC are not directly relevant to the merits of the NCB's claims, they nonetheless provide helpful context about the history of the parties' dispute."); *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 22 (D.D.C. 2011), aff'd, 683 F.3d 397 (D.C. Cir. 2012) (Denying motion to strike in part because "it is routine for parties to provide the Court with a certain amount of background information that is not directly relevant to the merits of the claim or motion at issue"). Rather, because motions to strike are often considered "purely cosmetic or 'time wasters,'" courts widely agree that "they

should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1382 (3d ed., 2021 update); *see Nwachukwu*, 216 F.R.D. at 178. ("[B]ecause courts view motions to strike with such disfavor, many courts will grant such motions only if the portions sought to be stricken are prejudicial or scandalous.").

There is a high bar for allegations to be sufficiently scandalous or prejudicial as to warrant striking under Rule 12. It is not enough for a defendant to make "merely an assertion that an unpleasant accusation lodged against it will ultimately be disproved." *Crawford v. Barr*, No. 17-798, 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) (denying motion to strike where movant failed to show statements were made in bad faith or to deceive the court). It is also not enough that pleadings "may cast the defendant in a 'derogatory light.'" *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 58 (D.D.C. 2010) (allegations that did not include "provocative language" nor "detract from the dignity of the Court" were not scandalous or impertinent); *see Jackson v. Starbucks Corp.*, No. 19-1487, 2020 WL 3791873, at *3 (D.D.C. July 7, 2020) ("a pleading may depict the defendant in a negative or even disparaging manner without necessarily making allegations scandalous enough to be removed through a motion to strike"). Instead, for allegations to be considered scandalous under Rule 12(f), they must "suggest[] a needlessly cruel and damaging depiction of a party." *Jackson*, 2020 WL 3791873, at *3; *see Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (scandalous allegations are those that "unnecessarily reflect[] on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court").

# ARGUMENT

The Complaint's references to the Ku Klux Klan Act and to race are proper and necessary to understand the context of this case. These references are relevant to the claims and allegations in the Complaint and the motivations of the Defendants and their co-conspirators. They are neither scandalous nor unduly prejudicial to Defendant Rehl. Defendant Rehl therefore cannot meet the high standard for a motion to strike.[1]

## I. The Complaint's References to the Ku Klux Klan Act Are Accurate and Proper and Do Not Unduly Prejudice Defendant Rehl.

Plaintiffs' principal claims against all Defendants are for Defendants' violations of the laws codified at Title 42 U.S.C. Sections 1985 and 1986. These laws were "passed [as part of] what is now known as the Ku Klux Klan Act. See 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes,' 17 Stat. 13 (now codified at 42 U.S.C. §§ 1983, 1985, and 1986)." *Virginia v. Black*, 538 U.S. 343, 353 (2003). The United States Supreme Court thus recognizes the law's common name, and so does Defendant Rehl. *See id.*; ECF 31-1, Defendant Rehl's Memorandum of Law in support of his Motion to Strike, at 12 (acknowledging that "[t]here are occasional references to a Klu [sic] Klux Klan Act" in reference to the Civil Rights Act of 1871). In fact, the Supreme Court has referred to the "Ku Klux Klan Act" or "Ku Klux Act" over a dozen times.[2] Moreover, the Act's

---

[1] Defendant Rehl's motion also is untimely, as it was not filed before his Answer. *See* Fed. R. Civ. P. 12(f); *Sweeney v. Am. Registry of Pathology*, 287 F. Supp. 2d 1, 5 (D.D.C. 2003) (denying motion to strike in part because it was untimely under Rule 12(f)).

[2] *See Black*, 538 U.S. at 353; *Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990); *Briscoe v. LaHue*, 460 U.S. 325, 337 (1983) ("The Ku Klux Act"); *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 839 (1983) ("The Ku Klux Klan Act") (Blackmun, J., dissenting); *Kimble v. McDuffy, Inc.*, 454 U.S. 1110, 1112 (1981); *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 628 (1979); *Moor v. Alameda Cty.*, 411 U.S. 693, 699 (1973); *District of Columbia v. Carter*, 409 U.S. 418, 423 (1973); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 162

legislative history is filled with discussion about the Ku Klux Klan. *See, e.g.*, *Cong. Globe*, 42d Cong., 1st Sess. 439 (Rep. Cobb discussing "Ku Klux conspiracy"); *id.* at 445 (discussing "evidence that the Ku Klux order still reigns in Kentucky"). It is no surprise, then, that courts routinely refer to claims under Section 1985 and Section 1986 as "claims under [] provision[s] of the Ku Klux Klan Act of 1871." *Spagnola v. Mathis*, 809 F.2d 16, 32 (D.C. Cir. 1986) (Silberman, J., concurring in part and dissenting in part), *on reh'g,* 859 F.2d 223 (D.C. Cir. 1988); *see also, e.g.*, *Black*, 538 U.S. at 353 (§§ 1985 and 1986); *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 840 n.1 (1983) (Blackmun, J., dissenting) (§ 1985(1)); *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 200 n.2 (2d Cir. 2004) (§§ 1985 & 1986); *Sculimbrene v. Reno*, 158 F. Supp. 2d 1, 2 (D.D.C. 2001) (§ 1985(1)).

Thus, the references to the Ku Klux Klan Act in the Complaint are in no way inaccurate, but rather serve to best identify for Defendants, consistent with the notice pleading requirements of the Federal Rules, the source of the laws on which Plaintiffs assert their claims. Nor can the accurate and helpful references to the Ku Klux Klan Act be regarded as unduly prejudicial or scandalous. Defendant Rehl suggests that references to the Ku Klux Klan Act are intended to prejudice the jury pool against Defendant Rehl, *see* ECF 31-1, at 14-15, but he fails to explain how accurate references to the common name of the law under which he is sued "suggest[] a needlessly cruel and damaging depiction of a party," *Jackson*, 2020 WL 3791873, at *3, "unnecessarily reflect[] on [his] moral character . . . or states anything in repulsive language that detracts from the dignity of the court," *Pigford*, 215 F.R.D. at 4. Moreover, any potential for

---

(1970); *Monroe v. Pape*, 365 U.S. 167, 171 (1961), *overruled by Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Collins v. Hardyman*, 341 U.S. 651, 657 (1951).

5

prejudice can be cured with a careful jury instruction rather than the "drastic" remedy of a motion to strike. *See Maronda Homes, Inc. of Fla. v. Progressive Express Ins. Co.*, No. 6:14-CV-1287-ORL-31, 2015 WL 77986, at *2 (M.D. Fla. Jan. 6, 2015) ("To the extent that the allegations [sought to be stricken] might unfairly prejudice Progressive if presented to the jury at trial, that is a problem better addressed by the trial judge in the pretrial order, an order on a motion in limine, or at the trial itself.").

## II. The Complaint's References to Race Are Relevant and Important and Do Not Unduly Prejudice the Defendant.

The Complaint's references to race are important and proper. Defendant Rehl fails to identify with any specificity the particular references he seeks to strike, and for this reason alone, his Motion should be denied. *See* Fed. R. Civ. Proc. 7(b)(1)(B); *Arias-Zeballos v. Tan*, No. 06 CIV. 1268 (GEL), 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (defendant's papers "provide no meaningless [sic] guidance that could help the Court determine which paragraphs of the complaint are appropriate to eliminate as redundant or immaterial"). Nevertheless, as the Complaint alleges, Defendants conspired to use force, intimidation, and threats to prevent Congress from certifying the results of the 2020 Presidential election, in violation of Section 1985(1). *See* ECF 1, Complaint, ¶¶ 1-2, 5, 152-53. Among other actions in support of those efforts:

> Defendants targeted false claims of election fraud at cities and states with significant Black populations—including Atlanta (51% Black), Detroit (78% Black), Milwaukee (39% Black), Philadelphia (43% Black), and Pittsburgh (23% Black)—and sought to intimidate and threaten officials from those and other jurisdictions into overturning the will of the voters. They relied on white supremacist groups and sympathizers to organize and hold rallies and to help plan and carry out the Capitol Attack. Participants in the Attack directed racial epithets at Black officers protecting the Capitol. And after breaching the Capitol, the attackers paraded the Confederate flag and other symbols of white supremacy through the Capitol's halls.

*Id.* ¶ 1. With this and other evidence-based allegations, the Complaint provides context and motivation for the acts of the Defendants and their agents and coconspirators, including the Proud Boys and its members: the nature of their conspiratorial agreements, their motivations and tactics, the context of the events leading up to the Capitol Attack, and the injuries suffered by Plaintiffs. *See Stanbury L. Firm*, 221 F.3d at 1063 (denying motion to strike information providing important context and background to a suit); *NCB Mgmt. Servs., Inc.*, 843 F. Supp. 2d at 72 (same); *Patton Boggs, LLP*, 791 F. Supp. at 13 (same).

For example, part of Defendants' conspiracy involved Defendant Trump and Defendant Trump for President, as well as Defendant Trump's attorney Rudy Giuliani and others, working to overturn the election results in major cities where Black voters had overwhelmingly supported now President Biden and Vice President Harris. *See id.* ¶ 65. Many observers (including Defendants' co-conspirators and participants in the Capitol Attack) correctly interpreted Defendants' efforts as attempts to disenfranchise Black and minority Americans specifically, and to motivate white supremacist groups and others to use force, intimidation, and threats in support of the conspiracy. *See id.* Defendants also encouraged white supremacist groups and sympathizers to come to Washington, D.C., on January 6 to participate in the Capitol Attack. *Id.* ¶¶ 6, 8, 81–82, 91. Indeed, many of the Capitol's attackers exhibited white supremacist sentiment while attacking, including by marching through the Capitol with an unfurled Confederate flag, flashing white power hand symbols, violently destroying the memorial to much-beloved civil rights icon Congressman John Lewis, and displaying anti-Semitic imagery and slogans on their clothes. *Id.* ¶ 121. Defendants' specifically relied on white supremacist groups and sympathizers to help accomplish the goals of their conspiracy, demonstrating that race was an important issue underlying the conspiratorial agreements violating Section 1985(1)

and a motivating issue for some Defendants. *Id.* ¶¶ 4, 56, 73, 78. Whether Defendant Rehl believes the allegations regarding race are wrong or without evidentiary support, *see* ECF 31-1, at 16, is not relevant to a motion to strike. *See Crawford*, 2019 WL 6525652, at *4 (mere assertion that an accusation will be disproved insufficient); *Nwachukwu*, 216 F.R.D. at 178 (all reasonable inferences are to be drawn in favor of plaintiffs). What matters is that the challenged allegations, among others, are relevant and important as discussed above.

The Complaint's allegations concerning race also bear directly on Plaintiffs' injuries. Defendants' actions resulted in numerous Black Capitol Police officers, including some Plaintiffs, being subjected to slurs and abuse based on their race. At least two Plaintiffs were subjected to racial epithets during the Capitol Attack, *see id*. ¶¶ 146, 148, and all Plaintiffs and their fellow officers were subjected to a violent attack in which attackers brazenly displayed symbols of white supremacy. *See id.* ¶ 121.

Courts frequently decline to strike Complaint allegations regarding racial issues where pertinent to the case at hand, as is the case here. *See, e.g.*, *Jackson,* 2020 WL 3791873, at *4; *Cobell v. Norton*, 224 F.R.D. 1, 4–5 (D.D.C. 2004); *Rauh v. Coyne*, No. 88-0833, 1988 WL 279268, at *1 (D.D.C. Oct. 17, 1988); *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014); *Nelson v. Banks*, No. 4:15-CV-00605, 2016 WL 5496406, at *12 (E.D. Ark. Sept. 28, 2016); *Hicks v. Netflix, Inc.*, 2020 WL 2463380, at *11 (C.D. Cal. Mar. 19, 2020). In view of the relevance and importance of the challenged references in the Complaint, as discussed above, the Defendant's motion to strike should be denied.

But even if the challenged references were not strictly relevant to the claims in the Complaint, the court should deny the motion because the references are not "scandalous" or unduly prejudicial. "[R]elevance is not the standard for a motion to strike, and irrelevant

8

information may remain in a complaint so long as it is not scandalous or prejudicial." *Jackson*, 2020 WL 3791873, at *3 (citation omitted). The Complaint alleges abhorrent conduct, to be sure, and counsel have scrupulously ensured, consistent with Rule 11, that each allegation has evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). But to be considered scandalous under Rule 12(f), allegations must "suggest[] a needlessly cruel and damaging depiction of a party," *Jackson*, 2020 WL 3791873, at *3, or "unnecessarily reflect[] on the moral character of an individual or [use] repulsive language that detracts from the dignity of the court." *Pigford*, 215 F.R.D. at 4. The references that Defendant Rehl challenges are not included in the Complaint "needlessly," *Jackson*, 2020 WL 3791873, at *3, nor do they "unnecessarily" reflect on the moral character of any individual, *Pigford*, 215 F.R.D. at 4. Rather, they provide important and helpful context and information to elucidate how Defendants attempted to carry off their conspiracy to use force, intimidation, and threats to disrupt Congress and attack Plaintiffs in violation of the Ku Klux Klan Act, 42 U.S.C. § 1985, among the other claims in the Complaint. As such, the allegations concerning race do not warrant striking under Rule 12(f). *Cf. United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Rehl's motion to strike in its entirety.

Dated: October 19, 2021                     Respectfully submitted,

/s/ *Edward G. Caspar*
Jon Greenbaum, D.C. Bar No. 489887
Edward G. Caspar, D.C. Bar No. 1644168
David Brody, D.C. Bar No. 1021476
Arusha Gordon, D.C. Bar No. 1035129

9

>Adonne Washington, *pro hac vice*
>Lawyers' Committee for Civil Rights Under Law
>1500 K Street N.W., Suite 900
>Washington, D.C. 20005
>Tel: (202) 662-8390
>jgreenbaum@lawyerscommittee.org
>dhewitt@lawyerscommittee.org
>ecaspar@lawyerscommittee.org
>dbrody@lawyerscommittee.org
>agordon@lawyerscommittee.org
>awashington@lawyerscommittee.org
>
>***Counsel for Plaintiffs***

CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5, a copy of the foregoing filing is being served electronically on those parties who have appeared and registered with the Court's ECF system. Plaintiffs are serving remaining defendants via first class mail or other permitted means.

>/s/ Edward G. Caspar
>Edward G. Caspar