IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONRAD SMITH, *et al.,*

                Plaintiffs,

     v.

DONALD J. TRUMP, *et al.*,

                Defendants.

Civil Action No. 1:21-CV-02265-APM

## PLAINTIFFS' OPPOSITION TO MOTIONS TO STAY FROM DEFENDANTS ZACHARY REHL, ETHAN NORDEAN, RUSSELL TAYLOR, AND DEREK KINNISON

Defendants Rehl, Nordean, Taylor, and Kinnison moved to stay these proceedings, arguing that unless the Court stays the case, they may be forced to invoke their right against self-incrimination and would therefore be unfairly prejudiced. The court should deny these motions since the Defendants have failed to meet their heavy burden to justify a stay and none the factors to be considered support a stay.

Defendants articulate no concrete harms warranting a stay and any conjectural harms they identify will not soon occur, if ever. Discovery is months away. None of the interests identified by Defendants would be compromised by pre-discovery litigation, for example, yet delaying it would add months to this case, increase costs for all parties, and needlessly delay justice for Plaintiffs. Asserting motions to dismiss does not put at risk Fifth Amendment or other interests identified by the Defendants—as Defendant Straka has demonstrated. ECF No. 48. And filing an Answer would work no harm, as Defendants Rehl, Taylor, and Caldwell have demonstrated. ECF No. 23; ECF No. 43; ECF No. 58. Rule 12 motions will likely not even be ripe for

1

adjudication until January 28, 2022. *See* Minute Order Granting in Part Pl. Mot. for a Consolidated Briefing Schedule (Oct. 25, 2021).[1]

In contrast, Plaintiffs and the general public have an exceedingly strong interest in this case proceeding and would be significantly prejudiced if it is delayed. Plaintiffs seek relief for the injuries Defendants have caused and to hold Defendants accountable for conspiring to use violence against them to prevent Congress from certifying the results of the Presidential election. The public, too, has a compelling interest in seeing that the attack is examined before a court and its perpetrators held accountable. A stay of this civil litigation—without any real need or actual harm faced by the movants—would needlessly delay Plaintiffs' access to justice, increase the litigation costs for all parties and the Court, and compromise the public interest in the expeditious examination of the January 6 attacks before a court of law.

## LEGAL STANDARD

"A total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987); *accord Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 98 (2d Cir. 2012). "The person seeking a stay 'bears the burden of establishing its need.'" *Louis Vuitton*, 676 F.3d at 97 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("A movant must carry a heavy burden to succeed" on a motion to stay proceedings).

Whether to grant a stay is firmly in this Court's discretion. *See S.E.C. v. Dresser Indus., Inc.,* 628 F.2d 1368, at 1375 (D.C. Cir. 1980) (en banc). "The scope of the stay and the reasons

---

[1] If the criminal cases are not yet resolved by the time discovery commences, the Federal Rules afford ample opportunities short of a stay for the Defendants to protect their interests while this civil case continues.

for its issuance determine whether a stay is immoderate." *Belize Social Dev. Ltd. v. Govt. of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012), *cert. denied,* 568 U.S. 882 (2012). "In the absence of *substantial* prejudice to the right of the parties involved, [] parallel proceedings are unobjectionable." *Dresser Indus.* 628 F.2d at 1374 (emphasis added); *see also HT S.R.L. v. Velasco,* 2015 WL 13759884, at *7 (D.D.C Nov. 13, 2015) ("[T]he mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay.") (quoting *Horn v. Dist. of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002)). A court's decision to grant or withhold a stay must be "based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton,* 676 F.3d at 98.

In deciding whether to stay civil proceedings pending a criminal prosecution, courts consider whether justice will be served "in the light of the particular circumstances of the case." *Doe v Sipper,* 869 F. Supp.2d 113, 115 (D.D.C. 2012) (quoting *Dresser Indus.,* 628 F.2d at 1375). "In determining whether to stay a civil proceeding pending the outcome of a related criminal proceeding, courts within this Circuit have customarily weighed" the five factors articulated in *Barry Farm Resident Council, Inc. v. U.S. Dept. of Navy. Manning v. McHugh*, 2014 WL 12789614, *2 (D.D.C. Jan. 30, 2014) (citing *Barry Farm*, 1997 WL 118412, at *1 (D.D.C. Dec. 18, 1997); *see also Sipper*, 869 F.Supp.2d at 116 (laying out similar factors and noting they "serve only as a 'rough guide' for a court as it exercises its discretion") (quoting *Louis Vuitton,* 676 F.3d at 99).[2] The factors are: (1) the interests of the plaintiffs in proceeding

---

[2] Different cases in this circuit vary in whether they apply the *Barry Farm* factors or the factors articulated in *Sipper*: "1) the relationship between civil and criminal actions, 2) the burden on the court, 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the

expeditiously with the civil litigation as balanced against the prejudice to them if it is delayed; (2) the public interest in the pending civil and criminal litigation; (3) the interests of and burdens on the defendant; (4) the interest of persons not parties to the civil litigation; (5) and the convenience of the court in the management of its cases and the efficient use of judicial resources. *Barry Farm*, 1997 WL 118412, at *1.

A defendant in a criminal case has "no absolute right" to a stay of civil proceedings. *Keating v. Off. of Thrift Supervision,* 45 F. 3d 322, 326 (9th Cir. 1995) (affirming denial of stay, noting, "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.").

## **ARGUMENT**

Consideration of all of the relevant circumstances weighs heavily against a stay of these proceedings. A stay would cause significant prejudice to Plaintiffs' ability to prosecute this case, the public interest in the resolution of these cases is enormous, there is no burden on Defendants at this time, and it is judicially efficient to allow this case to proceed in parallel. (The interests of nonparties, other than those of the public, are not implicated by this case.)

As a preliminary matter, to the extent that any of the Defendants dispute Plaintiffs' legal claims or factual allegations, these arguments are irrelevant and inappropriate in a motion to stay. Defendants will have ample opportunity to make such arguments to the Court and the jury via motions to dismiss, motions for summary judgment, and trial. But in making these arguments,

---

duration of the requested stay." 869 F.Supp.2d at 116. *Sipper*'s factors are derived from another case that was paraphrasing *Barry Farm*. *See U.S. ex rel. Westrick v. Second Chance*, 2007 WL 1020808, *2 (D.D.C. March 31, 2007). The two tests are very similar and would produce the same outcome in this case. Plaintiffs apply the *Barry Farm* factors because they appear to be more commonly used in this circuit.

Defendants further demonstrate that they can argue the merits of this case without jeopardizing their Fifth Amendment rights.

A. **Plaintiffs Have a Strong Interest in Litigating without Delay, and a Stay Would Cause Significant and Unnecessary Prejudice to Them.**

The first factor—the interests of the plaintiffs in proceeding expeditiously with this case as balanced against the prejudice to them if it is delayed—strongly favors Plaintiffs.

Plaintiffs' have a resolute interest in the pursuit of justice. Plaintiffs dedicated their careers to the mission of the United States Capitol Police: "Protect the Congress—its Members, employees, visitors, and facilities—so it can fulfill its constitutional and legislative responsibilities in a safe, secure and open environment." U.S. Capitol Police, *Our Mission*, https://www.uscp.gov/the-department/our-mission (last visited Oct. 22, 2021). Plaintiffs were serving this mission on January 6 and they are serving it through the prosecution of this case. If a stay is granted, Plaintiffs' pursuit of justice, and accountability for those responsible for the harms done to them, will needlessly be delayed.

Moreover, a stay will hamper Plaintiffs' ability to obtain the evidence necessary to prove their case: witnesses' memories may fade and evidence may be lost before it is discovered, particularly digital evidence. Such risk of losing evidence constitutes sufficient prejudice to Plaintiffs to deny a motion to stay. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 694557 (S.D.N.Y. Feb. 22, 2021). In *Wohl*, Plaintiffs brought voter intimidation claims under the Voting Rights Act and the Ku Klux Klan Act, while Defendants were being prosecuted in two states for the same acts. *Id.* at *1. The Court denied defendants' motion to stay discovery, *id.* at *5, reasoning that "a stay could result in witnesses becoming unavailable or suffering from fading memories, which would hamper Plaintiffs' case." *Id.* at *3. As in *Wohl*, a stay here could result in witnesses and other evidence becoming unavailable. The risk here, however, is several

orders of magnitude greater than *Wohl*. That case involves two criminal defendants and only a handful of witnesses. Here, there are 25 named Defendants and likely over a hundred relevant witnesses to be interviewed and examined as well as scores of digital devices and an immense amount of data to be collected. And a stay in this case is even more detrimental than the one sought in *Wohl*, because Defendants seek a stay of the entire case, not just discovery.

Staying this case also would prejudice Plaintiffs' potential to recover on their claims. In denying defendants' motions to stay in *Wohl*, the court also reasoned that "a delay could jeopardize [plaintiffs'] ability to recover [monetary damages] from Defendants." *Id.* at *3. Likewise, here, Defendants' ability to compensate Plaintiffs for their injuries may be drained before this case is concluded. Three other civil suits assert claims based on the January 6, 2021 attack against many of the same defendants as this suit, and those suits are not stayed. *See Thompson v. Trump*, No. 21-cv-400-APM (D.D.C.); *Swalwell v. Trump*, No. 21-cv-586-APM (D.D.C.); *Blasingame v. Trump*, No. 21-cv-858 (D.D.C.). A stay could produce a scenario where even if Plaintiffs prevail, there may be insufficient assets remaining to satisfy a judgment.

Plaintiffs also need to discover the identities of other actors responsible for their injuries—the John Doe Defendants—before statutes of limitations expire. "These concerns are compounded by the fact that the Court has no way of knowing the timeline of the state criminal proceedings. Defendants' request for a stay pending resolution of their criminal cases is thus essentially a request for an open-ended stay, which could be very costly to Plaintiffs." *Wohl*, 2021 WL 694557 at *3. Like in *Wohl*, granting the Motions would essentially be granting a request for an "open-ended" stay which could be costly to Plaintiffs. The criminal trial process could take months or years and lays out an uncertain timeline. "A court must deny a stay without a foreseeable termination date." *Velasco,* 2015 WL 13759884, at *7. Even the 90-day stay

proposed by Defendant Nordean sets an uncertain timeline because he suggests that it may be continued after 90 days. *See* ECF No. 37 at 9 (inviting Court to "revisit the appropriateness of a stay" after 90 days). Moreover, a 90-day stay would unnecessarily and substantially impair Plaintiffs' interests by needlessly delaying pre-discovery litigation and exacerbating all of the harms discussed above.

Defendant Nordean suggests that staying this case while his criminal case proceeds would somehow further Plaintiffs' interests, but he appears to misunderstand the purposes of and the differences between criminal and civil prosecutions. He argues that the Plaintiffs' are pursuing this case because the Department of Justice "is not adequately protecting their [Plaintiffs'] interests." *Id.* at 1. The Department of Justice represents the interests of the United States and not of any private party. Plaintiffs must vindicate their own interests. Plaintiffs cannot rely on criminal and congressional investigations to capture all of the evidence necessary to prove their case; the prosecutors and congressional counsel literally do not represent Plaintiffs' interests. Defendant Nordean also incorrectly and baselessly asserts that this case is adapted from his criminal case and is directly "sourced from the criminal case." Nordean Mot. to Stay at 6-7. The criminal cases are not co-extensive with any civil case. Plaintiffs have their own claims independent of the United States' criminal charges and they deserve and are entitled to have them fairly adjudicated without delay.

Finally, even a stay of the case only as to the moving Defendants would impermissibly prejudice Plaintiffs' ability to pursue their case against the Defendants who do not face criminal charges (such as Trump, Stone, Alexander, and the organizational defendants). Pausing litigation against the moving Defendants will prolong the entire case and unnecessarily increase costs for all parties, as much of the litigation, including motions practice and discovery, will need to be

repeated for the moving Defendants. All parties and the Court, for example, will face duplicative costs and effort from the litigation of motions to dismiss from some Defendants now and the moving Defendants later.

**B.   The Public Interest Weighs Heavily in Favor of Proceeding Expeditiously.**

Plaintiffs bring this case in part "to help ensure that what took place on January 6 never happens again." Compl. at ¶ 10. The attack on the United States Capitol on January 6 was an affront to everyone in the country and put at risk the right of all Americans to choose their own government—to say for themselves who the President will be. The American public has a compelling interest in the outcome of all lawsuits related to an attack that sought to subvert the votes of all Americans. Residents of the District of Columbia have a compelling interest in seeing justice for the rending of their Capitol Hill. And thousands of people who work on Capitol Hill, as well as their loved ones, have a compelling interest in seeking closure for the trauma they experienced. Indeed, this case is unique among all of the current civil and criminal cases related to the Capitol Attack in that it includes a number of defendants and factual allegations, including those related to efforts to overturn the election outcome prior to January 6, not present in the other cases.

Accountability for those who planned, prepared, conspired, and carried out this unprecedented attack on our constitutional democracy is top of mind not only for Plaintiffs, but for the public. As the American election process was consistently undermined by Defendants, the public interest continues to mount in favor of proceeding with the January 6 cases as swiftly and efficiently as possible. Public confidence in American democracy and future elections is at stake; whether or not violence is normalized as a tool to undermine future election results depends in large measure on the civil litigation concerning the January 6 attack. The criminal cases do not address the shared responsibility of the Defendants in this case, including former President

Trump, many of the individual Defendants, and organizational defendants who have not been criminally charged. And Congress's investigation inherently is limited in both duration and public acceptance by the political process.

Plaintiffs' claims are of particular importance to the public because they seek to enforce statutes designed to hold accountable those who conspire to violate civil rights and the integrity of our democratic elections. *See* 42 U.S.C. §§ 1985(1), 1986; *see also Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 280-82 (S.D.N.Y. 2015) (denying stay of entire case due in part to public interest in claims of civil rights violations). "Today, almost 150 years later, the forces and conflicts that animated Congress's adoption of the Ku Klux Klan Act . . . are playing out again before this Court." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457, 464 (S.D.N.Y. 2020) (granting temporary restraining order against voter intimidation robocalls). "Because of the vastly greater population [defendants] can reach instantly with false and dreadful information [through modern technology], contemporary means of voter intimidation may be more detrimental to free elections than the approaches taken for that purpose in past eras, and hence call for swift and effective judicial relief." *Id.*; *see also United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) ("The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political power.").

Plaintiffs' claims likewise draw upon the D.C. Bias-Related Crimes Act, D.C. Code § 22-37704(a) ("BRCA"), which protects individuals from being harmed by those committing crimes based on protected characteristics, including political affiliation. The D.C. Council enacted the BRCA to "curb the proliferation of bias-related or hate crimes of all kinds." *Aboye v. United States*, 121 A.3d 1245, 1250 (D.C. 2015) (quoting Comm. On the Judiciary, Rep. on Bill 8-168

at 2 (Oct. 1, 1989)). The Capitol Attack was motivated by bias on the basis of actual or perceived political affiliation. Making sure that members of the public are not violently attacked for their political affiliation in the nation's capital is of great importance to preserving a democratic system of government.

**C.   Defendants Do Not Identify Any Concrete Burdens Meriting a Stay.**

Consideration of the interests of, and burdens on, the Defendants does not weigh in favor of a stay because Defendants have identified no actual harms likely resulting from the civil litigation. Filing a Rule 12 motion does not implicate any Fifth Amendment privilege. Defendants, and their counsel, are capable of asserting any applicable Fifth Amendment privilege that may be implicated by the need to file and Answer. And the Federal Rules provide ample opportunities to protect their interests and avoid undue burdens as litigation continues.

As an initial matter, Defendants Rehl, Taylor, Caldwell, and Straka have demonstrated that there is no reason to consider a stay prior to the commencement of discovery. Defendants Rehl, Taylor, and Caldwell all filed Answers, *see* ECF No. 23; ECF No. 43; ECF No. 58, and Defendant Straka has filed a motion to dismiss, *see* ECF No. 48. Every other Defendant can likewise file answers or motions to dismiss. Yet, Defendants argue that because they *may* need to assert their Fifth Amendment privilege, whether in an Answer or in response to discovery, the Court should stay these civil proceedings. As some Defendants already have demonstrated that Answers may be filed, and as discovery is several months away, the motions for stays are not ripe at this time. But even if the Court were to consider them now, there is no need to grant a stay.

"A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). Nor does the specter that Defendants *may* want to use the Fifth

Amendment in the future justify a stay now. *See Barry Farm,* 1997 WL 118412, at *3 (denying

stay, reasoning that "Courts have refused to stay civil proceedings pending the outcome of

related criminal proceedings, finding unpersuasive defendants' arguments that the exercise of

their Fifth Amendment rights would somehow prejudice them."); *Wohl*, 2021 WL 694557, at *4

("[I]t is entirely speculative at this stage for Defendants to argue that they will be forced to

choose between self-incrimination and adverse inferences."). "[A] blanket assertion of the

privilege [against self-incrimination] is an inadequate basis for the issuance of a stay. . . . The

court may deny a stay so long as the privilege's invocation does not compel an adverse judgment

against the claimant." *U.S. v. Lot 5,* 23 F.3d 359, 364 (11th Cir. 1994). Judgment in this case is

far in the future.

Defendants rely solely on a speculative, inchoate, future infringement of their Fifth

Amendment rights. Discovery in this case is months away. *See* Minute Order Granting in Part Pl.

Mot. for a Consolidated Briefing Schedule (Oct. 25, 2021). Most Defendants have not yet even

responded to the Complaint.[3] There is no occasion to stay the case and prevent the Court from

receiving answers or adjudicating motions to dismiss. Defendants rely on the argument that their

Fifth Amendment rights would be diminished, but it is impossible to know how significant such

assertions may be in the context of this litigation when discovery has not even begun. "[S]ince

depositions have not yet taken place, there is no way of measuring with any precision what

questions defendants may refuse to answer, or what damage may be done to their position in the

civil case by any assertions of privilege they might choose to make." *Sterling Nat'l Bank v. A-1*

---

[3] Kinnison argues that Plaintiffs are not ready to proceed and may not be able to pursue this case
because not all Defendants have yet appeared or responded to the Complaint. ECF No. 53 at 5. In
so doing, he concedes that there is no need to stay pre-discovery litigation. He also
misunderstands the obligations of a defendant in a civil suit; if a defendant fails to respond to the
Complaint, the Court may enter default against them and the case will proceed.

*Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) (denying stay of depositions because the nature of the threat to defendants' Fifth Amendment rights was imprecise).

Even in *pro se* cases, courts grant only limited and narrow stays to protect a defendant who may not understand how to assert his Fifth Amendment rights correctly. In *County of Suffolk*, the court considered whether to stay a case to protect a *pro se* defendant who was simultaneously being criminally prosecuted. *See* 138 F. Supp. 3d 264. Similar to the present matter, *County of Suffolk* involved civil rights claims under 42 U.S.C. § 1983 against many defendants. *See id.* at 269. The Court held that while it was important to protect the *pro se* defendant's Fifth Amendment rights, there were strong countervailing interests. The Court ultimately granted only a limited stay of discovery as to the defendant but allowed the rest of the case to go forward. *See id*. at 281–82. In contrast, Defendants in this case are each represented by counsel and do not have that challenge. Therefore, Defendants' do not need a stay of discovery at all, no matter how limited.

To the extent that Defendants are concerned that a negative inference may be drawn if they assert their Fifth Amendment privileges at some future point in response to some unknown future question, any invocation during the pendency of their criminal case can be withdrawn once the criminal case is resolved, and the negative inference thus avoided. It is likely that the criminal cases will resolve themselves before civil discovery has concluded. Additionally, to the extent Defendants raise the speculative concern of having to respond to as yet unissued discovery requests while preparing for their criminal cases, which may or may not already have been concluded at that point, the Federal Rules of Civil Procedure afford ample means for Defendants to protect their interest against overly burdensome requests and to request extensions of time to respond. For example, Defendants are "free to make specific challenges" to individual discovery

requests, and the Court has "ample tools to address any meritorious challenges" on a case-by-case basis rather than granting a wholesale stay. *Wohl,* 2021 WL 694557, at *4; *see Louis Vuitton,* 676 F. 3d 83 at 102.

### D. **The Interests of the Court Weigh against Granting a Stay.**

The fifth factor—the convenience of the Court and efficient use of judicial resources—also weighs heavily against granting a stay because the Court has a "well-recognized interest in disposing of the cases on its docket with economy of time and effort." *Louis Vuitton,* 676 F.3d at 104. Freezing the entire case before it even begins would needlessly delay this Court from expediently resolving the cases before it and put this case on a divergent timeline from other related civil cases, including *Thompson,* *Swalwell,* and *Blasingame.* And if the Court stayed all proceedings as to Defendants Rehl, Nordean, Taylor, and Kinnison, but not as to other Defendants who are not under criminal indictment at this time (such as Trump, Alexander, Stone, and the organizational defendants), there is a risk of redundant or disjointed proceedings, as discussed above.

Defendants argue that the strongest case for a stay is when civil and criminal cases arise from the same set of facts. Just because that circumstance presents the strongest case does not mean that the case is strong, however. *See Horn*, 210 F.R.D. at 15 ("[T]he mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay."). Rather, a court's decision to grant or withhold a stay must be "based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton,* 676 F.3d at 98. In *County of Suffolk*, for example, the court denied a general stay where criminal and civil cases arose out of the same facts,

because of the competing interests of many other parties and the public interest in resolving allegations of civil rights violations. *See* 138 F.Supp.3d at 280-82. Similarly, consideration of the particular circumstances of this case, as discussed above, shows that a stay would not be appropriate. In light of the complex scope and unique circumstances of this case and its related cases, the number of parties and witnesses, the anticipated number of legal issues that will be addressed in motions to dismiss, and the interests of Plaintiffs and the public discussed above, a stay is not warranted here. Pausing the case entirely is unwarranted. Pausing it partially as to some Defendants is both unwarranted and will cause additional cost for all parties and the Court.

Defendants contend that granting a stay in this case and allowing the criminal matters to proceed first would benefit the civil discovery later on. It is just as probable, however, that the parties will have the benefit of any evidence generated in the criminal cases regardless of a stay, as discovery in this complex civil litigation likely will be ongoing when the criminal trials are concluded. Allowing litigation of motions to dismiss and other pre-discovery matters is the most efficient use of the Court's resources.

## **CONCLUSION**

Defendants are not entitled to a stay. Any stay is premature, and a complete stay is inappropriate as the court has a variety of tools at its disposal that would allow the litigation to continue, avoid prejudice to the Plaintiffs, and protect the public's and Defendants' identified interests. The civil procedure rules afford ample protections of any interests implicated by concurrent litigation, and those protections can be asserted as the needs arise. For the foregoing reasons, Plaintiffs respectfully request that the Court deny each Defendants' Motion.


October 25, 2021                    */s/ David Brody*_____
                                   Jon Greenbaum, D.C. Bar No. 489887

14

Edward G. Caspar, D.C. Bar. No. 1644168
David Brody, D.C. Bar No. 1021476
Arusha Gordon, D.C. Bar No. 1035129
Adonne Washington, *admitted pro hac vice*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 780-4508
jgreenbaum@lawyerscommittee.org
ecaspar@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
awashington@lawyerscommittee.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5, a copy of the foregoing filing is being

served electronically on those parties who have appeared and registered with the Court's ECF

system. Plaintiffs are serving remaining defendants via first class mail or other permitted means.


October 25, 2021                          */s/ David Brody*
                                         David Brody, D.C. Bar No. 1021476
                                         LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                         UNDER LAW
                                         1500 K St. NW, Suite 900
                                         Washington, DC 20005
                                         (202) 780-4508
                                         dbrody@lawyerscommittee.org