**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONRAD SMITH, *et al.* <br><br> **Plaintiffs**, <br> v. <br><br> DONALD J. TRUMP, *et al.* <br><br> **Defendants.** | Civil Action No.  1:21-cv-02265-APM |

**DEFENDANT ZACHARY REHL'S REPLY MEMORANDUM IN SUPPORT OF HIS RULE 12(f) MOTION TO STRIKE IMPROPER MATERIAL**

Comes now the Defendant Zachary Rehl, and hereby provides this Reply Memorandum to the Plaintiffs' Opposition to his Rule 12(f) Motion to Strike Improper Material to document that the smears in this lawsuit of racism and White supremacy that reverberate throughout the political class are false, and Plaintiffs' counsel should have known that.  Rehl by counsel replies as follows:

**I.     GENERAL CONTEXT**

Defendant asserts that under Federal Rules of Civil Procedure (FRCP") Rule 12(f) the Court can and should order a rewrite of the Complaint to remove incendiary references to racism, White supremacy, and other race-baiting.  There are motions to strike that apply to entire pleadings, but that is not what the Defendant is asking here.  Defendant contends that the fact that there is no factual grounding for the smears as required by FRCP Rule 11 strengthens the case for rewriting the Complaint deleting those references.  Defendant also contends that, especially with no valid purpose for smearing the Defendants, the claims of racism or White supremacy are a "Big Lie" with an improper purpose of defaming the Defendants outside of the Court and inflaming the Court, the jury pool roughly equaling the voters of the District of

Columbia, and confusing and improperly influencing the ultimate *petit jury* selected with documents containing these inflammatory, false, and irrelevant references.

## II.     THE NARROW REQUEST OF DEFENDANT REHL

The Court is asked to consider that Rehl's Proposed Order would allow the Plaintiffs to make any allegation or claim if they have actual solid grounds in fact or law to support the claim pursuant to the investigation requirements of FRCP Rule 11, unless the reference is so irrelevant to the Causes of Action as to be unfairly prejudicial. Rehl does not categorically or automatically ask the Court to pre-determine what is true, but to uphold the requirement that allegations must have a sound basis, heightened by the incendiary nature of the allegations.

## III.    ALLEGATIONS OF RACISM ARE LIES MEANT TO SILENCE DISSENT

The President of the Proud Boys Club of Philadelphia until his arrest was Zachary Rehl. The Vice President was his friend Aaron Wolkind.

Whereas the political class is free to lie on a spectacularly-appalling level, in this courthouse there are rules. Had the Plaintiffs – in following the herd in partisan politics – performed the investigation required under Rule 11, they would have seen that the Philadelphia Proud Boys Club condemns and rejects racism and identity politics. See website page of the Philadelphia Proud Boys at www.ProudBoysPhiladelphia.com under "LEARN MORE," attached as Exhibit A. (Note that the dishonest Left has set up a false page under a different name.)

A copy preserved by the "Way Back Machine" on December 1, 2002, attached in Exhibit B, invites applications to the Proud Boys with the following explanation:

> If you would like to join the Philadelphia chapter, you must be a man and you must love the west. Men of all races, religions, national origins, gay or straight are welcome.

Rehl and Wolkind established the Bylaws of the Proud Boys Club chapter of Philadelphia

to forbid membership by anyone who promotes ethnic nationalism or identitarian race-based groups.  As shown in the attached ByLaws of the Philadelphia Proud Boys Club, racism is prohibited within the Proud Boys and a member or applicant is subject to expulsion from the Proud Boys for espousing racist or White supremacist beliefs, *see*, Bylaws, Exhibit C.

> In keeping with our values, Proud Boys Philadelphia Chapter has no association and will never have any association with Marxist, Fascist, identarian, Alt-right or ethnic nationalist groups. Prospects who are found to be members of Marxist, racially identarian, or ethnic nationalist groups are barred from membership in Proud Boys Philadelphia Chapter. Members of Proud Boys Philadelphia Chapter found to be members of Marxist or identarian organizations or espousing Marxist, identarian, ethnic nationalist, racist or hateful views will be stripped of membership for all time and disavowed.
>
> * * *
>
> **(k)** Proud Boys Philadelphia Chapter finds all forms of ethnic nationalism and identity politics contrary to Proud Boy and American values. Ethnic nationalism runs counter to the spirit of Western Chauvinism. Proud Boys Philadelphia Chapter believes in individual merit and Civic Patriotism. We reject collectivism in any form, be it socialist class identity or racial identarian world views. In keeping with our values, Proud Boys Philadelphia Chapter has no association and will never have any association with Marxist, Fascist, identarian, Alt-right or ethnic nationalist groups. Prospects who are found to be members of Marxist, racially identarian, or ethnic nationalist groups are barred from membership in Proud Boys Philadelphia Chapter. Members of Proud Boys Philadelphia Chapter found to be members of Marxist or identarian organizations or espousing Marxist, identarian, or ethnic nationalist views will be stripped of membership for all time and disavowed.

Although this is a word too new in common usage to be found in formal dictionaries, the popular dictionary appearing on Google defines what the Proud Boys prohibit as being:

> **identitarian**
> [īˌden(t)əˈterēən]
>
> ADJECTIVE
> relating to or supporting the political interests of a particular racial, ethnic, or national group, typically one composed of Europeans or white people.

> NOUN
> a supporter or advocate of the political interests of a particular racial, ethnic, or national group, typically one composed of Europeans or white people.

The Proud Boys clearly and consistently have ***rejected*** racism, White supremacy, and all ethnic nationalism.

However, to silence dissent, the political class falsely smears citizens who disagree with them as racists or parents as domestic terrorists.

The Proud Boys defend the values that built the modern world, as embodied in what is loosely called Western Civilization.  Indeed, the Lawyers Committee for Civil Rights Under Law could never have existed without the values and concepts that the Proud Boys now defend. Those who want to tear down civilization to rule over the rubble lie and call this racist.

Similarly, had the Plaintiffs conducted the investigation required by Rule 11, they would have noticed that President Donald Trump and his supporters have prospered in electoral politics by openly appealing to minority voters.

> President Donald Trump has increased his share of the minority vote four years after defeating Hillary Clinton at the 2016 presidential election, exit poll data shows.
>
> According to surveys conducted by Edison Research and published by *The New York Times*, Trump has boosted his share of the Black vote by 4 percentage points since 2016, when just 8 percent of Black voters supported him.
>
> The commander-in-chief has also seen his backing among Hispanic and Latino voters jump by 4 points over his first term, with 32 percent telling exit pollsters they backed Trump on Tuesday compared to the 28 percent who said so in 2016.
>
> Asian voters took a similarly improved view of the president at the polls yesterday. Thirty-one percent said they voted for Trump in his race against Biden, a 2-point improvement on the incumbent's performance among the demographic in 2016.

James Walker, "Donald Trump Increases His Share of Black, Latino Voters: Election Exit Poll," Newsweek, accessible at:  https://www.msn.com/en-us/news/politics/donald-trump-increases-his-share-of-black-latino-voters-election-exit-poll/ar-BB1aG9Lb

How did Candidate Trump increase the traditional Republican level of support from minorities?  *HE ASKED for their votes*.  See, Candace Smith and David Caplan, "Donald Trump Appeals to Black Voters: 'What Do You Have to Lose by Trying Something New?' *The GOP presidential nominee said Democrats have done a disservice to blacks,"* ABC News, August 19, 2016, accessible at:  https://abcnews.go.com/Politics/donald-trump-appeals-black-voters-lose/story?id=41507104.  Trump and his supporters appealed to minorities by rejecting racism and showing them the respect that the Democrat Party did not.  Democrats took them for granted.  Cynical Republicans had given lip service to outreach to minorities for decades.  Trump and his supporters convinced minorities that this time Trump truly did want minorities' votes.

Thus, the Plaintiffs knew or should have known upon their duty of inquiry that nothing in the events addressed by their lawsuit were related in any way to racism, White supremacy, or bigotry.  Trump and his supporters have actively requested the votes of minorities.

And this is why the lies about racism are necessary.  Candidate Trump urged minorities to think for themselves and vote their own interests, by voting Republican.  *This we cannot have.*

The irrelevant ("impertinent") side-swipes by the Plaintiffs are sanctionable, made intentionally to pollute the jury pool.  They are intended to inflame both the Court and the jury against the Defendants, subjecting the Defendants falsely to hatred for things of which they are innocent, and they exploit the Court's processes to pursue political goals of smearing political opponents.

## IV.    ALLEGATIONS OF RACISM ARE DRAMATICALLY IMMATERIAL

Surprisingly, counsel found little useful in precedents for defining the legal meaning of

"impertinent" under FRCP Rule 12(f).  However, *Business Guides, Inc v. Chromatic Communications Enterprises, Inc*, 498 U.S. 533, 557, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) explains the rule for signature of counsel from English law as ensuring that in "the case laid before him, there is good ground for the suit in the manner in which it is framed.'..." including avoiding that "a bill contained ' irrelevant, impertinent, or scandalous' matter. J. Story, Equity Pleadings § 47, pp. 41-42 (1838)."  That tends to endorse the interpretation that allegations which do not support "good ground for the suit" will likely be "impertinent" under Rule 12(f) – that is not material to the Causes of Action of the Complaint.

That is, material to be struck under Rule 12(f) is <u>both</u> unnecessary to the legal claims <u>and also</u> scandalous or otherwise offensive, or even unduly prejudicial.

Rehl's counsel advances a simple test for "impertinence" under Rule 12(f): [1]

Suppose we rewrote the Plaintiff's lawsuit deleting references to racism or White supremacy.  <u>Would that change anything in the legal substance?</u>   If nothing would change, Rule 12(f) calls for removing the offensive material as "impertinent" (irrelevant).  <u>That is, it is not necessary to the legitimate claims.</u>

The Complaint does allege in Count III liability under D.C. Code § 22-3704(A) – the D.C. Bias-Related Crimes Act.  However, Count III does not allege a racial bias.  Count III alleges political bias.  In the only place where bias-related violence is touched on, the Plaintiffs do not connect anything having to do with race or racism to the Complaint.

These smears are unfairly prejudicial.  The Plaintiffs oppose the motion by arguing it is preferable to leave them in rather than to disturb the Complaint as written.  On the contrary, under these circumstances, the inflammatory and incendiary nature of these smears make them

---

[1] Although "impertinent" can also have a negative connotation not merely a neutral standard of irrelevancy.

unfairly prejudicial

> In regulating the scope of argument, the court should be guided by criteria that are related to the function of argument, i. e., to help the jury remember and interpret the evidence.[4] The prosecutor and the defense counsel in turn must be afforded a full opportunity to advance their competing interpretations, and to emphasize the principles of law that favor their respective positions.[5] The court should exclude only those statements that misrepresent the evidence or the law,[6] introduce irrelevant prejudicial matters,[7] or otherwise tend to confuse the jury.[8]

*United States v. Sawyer*, 443 F.2d 712, 713-714, 143 U.S.App.D.C. 297 (D.C. Cir. 1971). The introduction of groundless distractions can complicate the trial, including by necessitating rebuttal evidence for a fictitious topic that was never substantiated:

> Even under such circumstances the evidence is not inadmissible in the usual sense, but rather is excluded because its admission would unnecessarily expand the trial to include collateral issues, and thus confuse the jury.[14] * * * If confusion and misleading of the jury is accomplished in part by a fictitious opening statement,[16] it is no less reprehensible on that account and the necessity for explanation in rebuttal may be even greater.

*Generally, Bracey v. United States*, 142 F.2d 85, 89-90, 79 U.S. App. D.C. 23 (D.C. Cir. 1944)

There is nothing about the Plaintiff's Complaint which depends upon these gratuitous smears of racism.[2] The false claims actually interfere with any legitimate (if disputed) claims. The incendiary claims of racism distract **serve only purposes exterior to the courthouse.** But here in this Court, the Court can require the rule of law.

Once again, however, unlike many situations, where plaintiffs are too late or cannot pursue those actually responsible, here these Plaintiffs are entirely able to sue those who attacked them and injured them. All they need is access to the identification results of the massive video

---

[2] Because the Plaintiffs have chosen to bring an omnibus Complaint of many Plaintiffs against many Defendants, the roles of some Defendants being entirely different than others, the Plaintiffs cannot ground blanket claims of racism or White supremacy against all Defendants from allegations that some <u>unidentified</u> person – not necessarily any of the Defendants -- supposedly shouted racial epithets, especially when no proof supports this.

processing projects by the FBI and others, performed on behalf of their employer the U.S. Capitol Police and the Congress.  One may assume that such a parallel lawsuit will be filed.

**V.      RACISM IS ONE OF THE UGLIEST SMEARS IN AMERICAN SOCIETY**

If false charges of racism and White supremacy do not move this Court to enforce FRCP Rule 12(f), what will?  It is hard to imagine any worse (false) condemnation in today's society than to call someone a racist.  So is Rule 12(f) basically dead letter?

Around 0.05% of the estimated 500,000 to 1 million citizens who demonstrated in Washington, D.C., physically assaulted U.S. Capitol Police officers and D.C.'s Metropolitan Police Department officers.  If these Plaintiffs and others injured were suing *those*  50-250 assailants, they would be limited only by the financial capacity of those assailants to compensate them.

But this lawsuit is filed against the wrong parties and for an improper purpose.

Fortunately for these individual Plaintiff police officers, there is a proper lawsuit that can be filed against the correct Defendants.  The complaining agencies in the criminal cases are the USCP and Congress.  If the Federal Bureau of Investigation can take a break from silencing dissent from parents at school board meetings and looking away from Antifa riots, they could identify for the Plaintiffs the assailants who actually injured these Plaintiffs and other officers, whom they should sue instead.

But immediately the political class sought to turn dramatic events of January 6, 2021, into a racial issue.  As if society is not divided enough, even before the portable toilets set up on the

U.S. Capitol grounds³ for the benefit of the six (6) demonstration permits issued by the U.S. Capitol Police had been removed by USCP-approved vendors, the political class poured the gasoline of racism onto events in which race played no role.

Finally, we were lectured that we must not judge the *mostly White* "Black Lives Matter" demonstrators by the violence of a few. Yet now it is argued that the 99.95% of January 6, 2021, demonstrators who were thoroughly peaceful are the same as the 0.05% who battled with police.

There was a time, when America was good, that civil rights lawyers fervently rejected judging people as a group based on the actions of a few. Today, partisan advantage is all.

## VI. A COINCIDENCE OF RADE DOES NOT JUSTIFY CLAIMS OF RACISM

It is not relevant whether the Plaintiffs are Black. As alleged in the Complaint, were any of the Plaintiffs attacked *because of being Black?* Clearly no. The Plaintiffs do not allege that.

The Plaintiffs have not alleged that any of the Defendants even *knew* the race of any of the officers, underneath riot gear helmets. The videos show that the most violent confrontations were with officers wearing riot gear and military-style helmets that obscured their faces and heads. *See:* https://www.youtube.com/watch?v=c00DjN4m7G4&t=282s  Therefore, those who actually did attack police officers did not do so because of anyone's race.

U.S. Capitol Police are shown on videos lined up under an arched main entrance side by side engaged in battles with a few rioters. Did rioters assault only the Black officers? No. Similarly, there are videos of brawls in an open courtyard. Do we see violent demonstrators singling out only the Black police officers? No. About 50-250 violent people indiscriminately battled with any police officer near them, regardless of their race.

---

³ https://nationalfile.com/are-us-capitol-police-hiding-permit-for-january-6-demonstrations/ ; https://www.buzzfeednews.com/article/jasonleopold/the-capitol-police-said-jan-6-unrest-on-capitol-grounds

The Complaint alleges that the Defendants, primarily Rudy Guiliani, mentioned examples of voter fraud and electoral fraud in cities that happen to have high percentages of racial minorities.  But did any of the Defendants mention the race of any voter?  No.  The Plaintiffs introduced the racial composition of those cities.  Did any of the Defendants criticize the election in any city based on the race of any voter?  No.  The Plaintiffs want to complain based on the mere accident of racial composition of disputed cities.

Indeed, the racial composition of those cities refers to the *legitimate* registered voters in those cities.  But voter fraud and electoral fraud involves campaign staff or others *stealing* the ballots or identities of the actual voters.  The race of the legitimate, registered voters of a city are not relevant.  The criminals who stole their votes[4]  would have to be considered, not the race of the voters whose votes were stolen.[5]

**VII.       THE KLU KLUX KLAN ACT DOES NOT EXIST.**

The Plaintiffs have alleged a cause of action under 42 U.S.C. §  1985.  But suit cannot be brought under the session law of Public Law Session 42, Chapter 22; 17 Stat. 13.  The law in this area has been amended since 1871, including by Republicans led by Republican President Dwight D. Eisenhower in 1957 and 1960.  The suit is brought under 42 U.S.C. §  1985.

However, even if the Plaintiffs sought to sue under the session law of 1871, that law is named **"An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution**

---

[4]     *See, generally,* "Ballot Harvesting: What Is It? How Does It Work?", FindLaw, https://www.findlaw.com/voting/how-u-s--elections-work/ballot-harvesting--what-is-it--how-does-it-work-.html ("Recent elections in North Carolina have shone a light on potential abuses of ballot harvesting tactics, including:  Mishandling filled and unfilled ballots; Influencing voters' decisions; Illegally filling out voters' ballots").

[5]     To understand what the Defendants were claiming – having nothing to do with race – there is probably no explanation closer to the Defendants than "The Navarro Report" by Peter Navarro, a former Trump aide.  Race clearly plays no role in the allegations of the Defendants about the election.  https://peternavarro.com/the-navarro-report/

**of the United States and for other Purposes.**" It is designated with the short name:  "**The Civil Rights Act of 1871.**" *See, e.g., the reference in Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 664, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).   It was informally known as "**The Third Enforcement Act of 1871**,"

As discussed in Rehl's motion, the Klu Klux Klan is not mentioned in the Act, directly or indirectly.   The substance of the Act sounds in the original Secession of Confederate States from the United States and the start of the Civil War.

## VIII.    CONCLUSION

We live in a time when the law's curious, ancient references to accusations of "a loathsome social disease" currently bear little or no sting, but today allegations of racism are about the worst thing one person can say about another in modern society.  The transparent attempt to silence those with different political views by falsely calling them racists must stop.  Unless the Plaintiffs can substantiate such allegations grounded in facts under Rule 11, the Complaint should be ordered rewritten to focus on the Plaintiffs' physical injuries and other recovery and avoid inflaming the jury.

Dated:  October 26, 2021         RESPECTFULLY SUBMITTED
                                 ZACHARY REHL, *By Counsel*

*/s/ Jonathon A. Moseley*
Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703) 656-1230
Facsimile:  (703) 997-0937
Contact@JonMoseley.com

Moseley391@gmail.com

Jonathon A. Moseley, Esq.

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 26, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s), and also mailed a copy to the following by first class U.S. mail, postage prepaid. From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

    Mr. Damon Hewitt, Esq.
    Jon Greenbaum, Esq., D.C. Bar No. 489887
    Edward G. Caspar, Esq., D.C. Bar No. 1644168
    David Brody, Esq., D.C. Bar No. 1021476
    Arusha Gordon, Esq., D.C. Bar No. 1035129
    Noah Baron, D.C. Esq., Bar No. 1048319
    Adonne Washington Esq.,
    Lawyers' Committee for Civil Rights Under Law
    1500 K Street N.W., Suite 900
    Washington, DC 20005
    Telephone: (202) 662-8300
    jgreenbaum@lawyerscommittee.org
    dhewitt@lawyerscommittee.org
    ecaspar@lawyerscommittee.org
    dbrody@lawyerscommittee.org
    agordon@lawyerscommittee.org
    nbaron@lawyerscommittee.org
    awashington@lawyerscommittee.org
    *Legal Co-Counsel for Plaintiffs*

    Mr. Robert C Buschel, Esq.
    BUSCHEL & GIBBONS, P.A.
    501 East Las Olas Boulevard, Suite 304
    Fort Lauderdale, Florida 33301
    Telephone: 954-530-5748
    Buschel@bglaw-pa.com
    *Legal Counsel for Defendant Roger Stone*

Ms. Juli Zsuzsa Haller, Esq.
LAW OFFICES OF JULIA HALLER
601 Pennsylvania Avenue, NW, Suite 900
S. Building
Washington, DC 20036
Telephone: 202-352-2615
hallerjulia@outlook.com
*Legal Counsel for Kelly Meggs*

Mr. Stephen R. Klein, Esq.
BARR & KLEIN PLLC
1629 K Street NW, Suite. 300
Washington, DC 20006
Telephone: 202-804-6676
steve@barrklein.com
*Legal Counsel for Brandon J. Straka*

Mr. Nicholas D. Smith, Esq.
DAVID B. SMITH, PLLC
7 East 20th Street, Suite 4r
New York, NY 10003
Telephone: 917-902-3869
nds@davidbsmithpllc.com
*Legal Counsel for Felipe Antonio Martinez*

Mr. Nicolai Cocis, Esq.
LAW OFFICE OF NICOLAI COCIS
25026 Las Brisas Road
Murrieta, CA 92562
Telephone:  951-695-1400
Email:  nic@cocislaw.com
*Legal Counsel for Felipe Derek Kinnison*

Dyke Huish, Esq.
LAW OFFICE OF DYKE HUISH
26161 Marguerite Parkway, Suite B
Mission Viejo, CA 92692
Telephone:  949-257-3068
E-mail:  huishlaw@mac.com
*Legal Counsel for Felipe Russell Taylor*

Mr. Grant J. Smith, Esq.
STRATEGYSMITH, P.A.
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, Florida 33301

       Telephone:  954-328-9064
       E-mail:  gsmith@strategysmith.com

*/s/ Jonathon A. Moseley*
Jonathon A. Moseley, Esq.