## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SMITH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 1:21-cv-2265-APM |
| v. | ) |
| | ) |
| TRUMP, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANT ETHAN NORDEAN'S REPLY IN RESPONSE TO PLAINTIFFS' OPPOSITION TO HIS MOTION TO STAY CASE IN PART FOR 90 DAYS

Defendant Nordean's motion to stay the case in part showed that the circumstances here inarguably make out the "strongest case" for temporarily staying a civil proceeding: where a party under indictment for a serious offense is required to defend a civil action involving the same matter, at the same time. *SEC v. Dresser Industries*, *Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980).

Plaintiffs' counterarguments for the supposed need to force an indigent criminal defendant to immediately litigate their derivative civil case are as internally inconsistent and implausible as their Complaint. They wave away Nordean's Fifth Amendment dilemma as speculative, since "discovery is months away" and "filing a Rule 12 motion does not implicate any Fifth Amendment privilege." Pls. Opp., pp. 1, 10. Yet Plaintiffs then turn around and contend that their "strong interest" in opposing a stay is to swiftly "obtain the evidence necessary to prove their case" before "memories fade." *Id.*, p. 5. They add that Nordean cannot be prejudiced since four other criminal defendants have filed answers to their Complaint or a motion to dismiss. Plaintiffs omit that one of those defendants has already pleaded guilty to a

1

misdemeanor offense and the others are either representing themselves pro se or are represented by criminal defense counsel who may not be aware that any Rule 12 motion must be filed before an answer.

Plaintiffs' counsel insist that their case must proceed now because the Department of Justice's parallel criminal cases will not result in compensation for Plaintiffs' alleged January 6 injuries, as DOJ merely "represents the interests of the United States and not of any private party." That inaccurate statement betrays ignorance of basic federal restitution law.  It also ignores that Nordean is indigent and is not even accused of violence on January 6, or of aiding and abetting or planning it.  Nor do Plaintiffs offer any explanation as to how their non-financial pursuit of justice is stymied by DOJ more effectively furthering that interest before their derivative civil case begins.  Plaintiffs offer no cogent reason to interfere with Nordean's ability to defend himself in a parallel complex criminal case or to worsen the Court's already overwhelming January 6 docket bottleneck.   His motion to stay the case for 90 days should be granted, but at the least the Court should stay discovery served on Nordean.

**Argument**

### A.      Relationship between Plaintiffs' Complaint and the criminal case

Plaintiffs begin by ignoring the factor that creates the "strongest case" for a stay: where both the civil and criminal case involve the same matter.  *Dresser*, 628 F.2d at 1375-76; *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012).  They fail to contest that their civil case is factually parallel to Nordean's criminal case, both of which allege a conspiracy between four of the defendants here to interfere with Congress's electoral certificate count on January 6.  They

also fail to contest that the relevant standard is whether the cases arise from "identical events," not whether the cases allege identical causes of action. *Sipper*, 869 F. Supp. 2d at 116.[1]

Plaintiffs say that the "criminal cases do not address the shared responsibility of the Defendants in this case, including former President Trump, many of the individual Defendants, and organizational defendants who have not been criminally charged." Pls. Opp., p. 9. This again demonstrates Plaintiffs' failure to review the criminal cases before filing the Complaint. Nordean's criminal case alleges the "shared responsibility" of four of the defendants in this case: Nordean, Joseph Biggs, Zachary Rehl, and Charles Donohoe. *U.S. v. Nordean*, *et al.*, 21-cr-175-TJK (D.D.C. 2021). Plaintiffs do not successfully argue that the civil and criminal cases do not arise out of identical events by virtue of adding the phrase "including former President Trump." Nor, of course, do Plaintiffs distinguish their case from Nordean's criminal case by saying theirs concerns "the integrity of our democratic elections," "civil rights," and "political affiliation." Pls. Opp., p. 9. *See* 21-cr-175, First Superseding Indictment, ECF No. 26.

Plaintiffs cite no authority for the proposition that there is no close relationship between their case and Nordean's criminal case on account of the fact that Plaintiffs filter the criminal case's allegations through a different federal statutory framework. There is none.

**B.   Balance of interests**

Nordean's constitutional rights and burdens as a criminal defendant are treated cavalierly by Plaintiffs' counsel, the Lawyers' Committee for Civil Rights Under Law. Pls. Opp., pp. 10-13.

---

[1] Nordean's motion pointed out that virtually no reference to him in the Complaint is untouched by factual error and that a diligent review of his public criminal docket would have revealed this to Plaintiffs. Plaintiffs do not contest those points. They seem to contend that whether their Complaint contains demonstrable factual error has no bearing on the issue whether the case should proceed immediately at great expense and to the detriment of Nordean's criminal defense.

Nordean is represented by court-appointed counsel in the criminal case because he has no income or savings.  He has been incarcerated pretrial for over six months.  Though he is not accused of violence, he is charged with multiple highly controversial and novel legal claims which the federal government had never charged before January 6.  According to the DOJ, the January 6 investigation is the largest in its long history.  Nordean and his counsel must sift through millions of pages of records, thousands of hours of body-worn camera footage and Capitol CCTV video, dozens of search warrants and their returns, thousands of pages of mobile phone communications and much else besides.

Plaintiffs say Nordean does not "identify any concrete burdens meriting a stay." Pls. Opp., p. 10.  Respectfully, Plaintiffs' counsel are whistling past the graveyard.  It is nearly impossible for Nordean, who is incarcerated, and his counsel, who lacks consistent access to his client, to keep up with this volume of criminal discovery.  On top of that burden, Nordean is now in the middle of what is probably his fifth bail motion—after having been detained pretrial, then released on bail for several months, and then detained again—based on no breach of release conditions.  He has been up to the Court of Appeals and back.  From jail, he is currently litigating perhaps three different substantive motions in the criminal case.

Nordean cannot simply file any piece of paper in response to the Complaint.  That pleading is riddled with demonstrable factual error; fails to plead necessary facts; is premised on flawed legal theories; appears to be based on speculative media stories rather than a review of evidence by Plaintiffs' counsel; and conflicts with Nordean's constitutional rights.  Yet to respond to the Complaint adequately, Nordean's court-appointed counsel must drop work on the criminal case and attend to Plaintiffs—because their counsel want to litigate merits motions right now.  Plaintiffs' demands for speed are designed to take advantage of indigent defendants who

are burdened with their criminal cases.  Forcing on Nordean the choice of litigating a parallel civil case from jail pro se or relying on his court-appointed criminal counsel even if it detracts from attorney time spent on his criminal case is inconsistent with due process.  It is gamesmanship.

Plaintiffs say Defendants Rehl, Taylor, Caldwell, and Straka "have demonstrated that there is no reason to consider a stay" because they have filed answers or motions to dismiss.  Pls. Opp., p. 10.  That is misleading.  Straka entered a misdemeanor guilty plea before filing a motion to dismiss the Complaint here and he was never criminally accused of conspiracy, as the Complaint alleges here.  *U.S. v. Straka*, 21-cr-579, ECF No. 25 (D.D.C. 2021).  Caldwell is a pro se litigant who cannot be expected to adequately understand the Federal Rules of Civil Procedure or the Fifth Amendment dilemma.  The other defendants are represented by criminal defense counsel who may not understand that any Rule 12 motion must be filed before the answer.

If Nordean were to invoke his Fifth Amendment right in response to deposition questions, interrogatories, or requests for admission, his invocation could be used against him to establish civil liability.  *Sipper*, 869 F. Supp. 2d at 116.  Plaintiffs say this is "speculative" because "discovery is months away." Pls. Opp., p. 11.  Yet the first "strong interest" they identify in avoiding a stay is their "ability to obtain the evidence necessary to prove their case" before "memories fade" and evidence is "lost before it is discovered, particularly digital evidence." *Id.*, p. 5.  But if obtaining quick discovery from a criminal defendant is Plaintiffs' "strong interest," that is not served by forcing Nordean to litigate a motion to dismiss immediately and dealing with discovery "months from now." In reality, as their counsel explained directly to the undersigned, Plaintiffs' actual "interest" is in litigating motions to dismiss now so their arguments shape the public debate about these January 6 controversies, i.e., generate headlines.

They identify no authority holding that interest somehow outweighs the "strongest case" for a stay, when the civil and criminal case involve the same matter. *Dresser*, 628 F.2d at 1375-76.

Plaintiffs claim it is "impossible to know how significant [Fifth Amendment] assertions may be in the context of this litigation when discovery has not even begun." Pls. Opp., p. 11. That is quite disingenuous. Plaintiffs' theory of the case is that Nordean and others conspired to stop or delay Congress's electoral vote count on January 6. That is the entire case. Of course, that is also the theory of the criminal case. Not only is it not "impossible to know" whether Plaintiffs' discovery demands will elicit responses from Nordean on that central issue, it is impossible that Plaintiffs' deposition questions, interrogatories and requests for admission will not cover that subject.

Indeed, Plaintiffs actually state that they likely will attempt to draw a negative inference if a defendant invokes his Fifth Amendment right. Pls. Opp., p. 12. They suggest that the Court should not be concerned, however, because the defendant can avoid that interference by simply "withdrawing" the invocation "once the criminal case is resolved." *Id.* "It is likely that the criminal cases will resolve themselves before civil discovery has concluded." *Id.* What Plaintiffs' counsel do not understand is that the question of how long the January 6 criminal cases will take to "resolve themselves" will very much turn on legal issues that will be decided in the next 90 days. It is quite possible that a flood of appeals could stretch on for years in the criminal cases or barely a trickle. That is one reason why a temporary stay of Nordean's case is appropriate.

Here is what Plaintiffs actually mean: it is indeed likely that Nordean will face the Fifth Amendment dilemma based on our discovery demands, but the indigent criminal defendant

should have to refile his motion to stay whenever he receives the first demand, spending even more of his court-appointed attorney time on this civil matter.[2]

In discussing their own and the public's "interests" in opposing a stay, Plaintiffs fail to offer something concrete that withstands scrutiny. They say staying the case would prejudice their ability to recover monetary damages from Nordean, which they cannot recover from the criminal cases. Pls. Opp., p. 6. "The Department of Justice represents the interests of the United States and not of any private party. Plaintiffs must vindicate their own interests." *Id.*, p. 7. That is a significant statement. Plaintiffs, who are U.S. Capitol Police officers, claim they were assaulted and injured on January 6. The DOJ has brought hundreds of assault charges on precisely those injuries. Plaintiffs' claim that they will not recover for their injuries from the criminal cases means either (a) they admit their injuries were not proximately caused by defendant misconduct, or (b) they are ignorant of the Mandatory Victim Restitution Act (MVRA). 18 U.S.C. § 3663A(a)(1).[3] Either way, their opposition to the stay on this basis fails.

Plaintiffs add that "Defendants' ability to compensate Plaintiffs for their injuries may be drained before this case is concluded." Pls. Opp., p. 6. The problem with this argument is twofold. Nordean is indigent *now*—that is why he is represented by court-appointed counsel in

---

[2] Plaintiffs argue that, instead of a stay, Nordean should spend even more time and resources filing individual objections to each discovery demand that prompts an invocation of the Fifth Amendment. Pls. Opp., p. 12. Plaintiffs ignore that this Court does not impose such burdens on criminal defendants, *Sipper*, 869 F. Supp. 2d at 116 (staying case despite plaintiff's suggestion that the defendant could file individual discovery objections), and that Plaintiffs' own cases reject that approach. *Plaintiffs #1-21 v. Cnty of Suffolk*, 138 F. Supp. 3d 264, 282 (E.D.N.Y. 2015) (staying discovery on criminal defendant).

[3] Restitution to victims is mandatory for "a crime of violence . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." §§ 3663A(c)(1)(A)(i), (c)(1)(B). Courts are required to "order restitution to each victim in the full amount of each victim's losses as determined by the court." § 3664(f)(1)(A).

the criminal case.  Second, what Plaintiffs are actually attempting to do is to get ahead of other law enforcement officers who were injured on January 6.  As explained above, the MVRA will result in compensation for Plaintiffs' injuries—if they were proximately caused by a January 6 defendant.  Plaintiffs' position appears to be that, given the poor defendants' limited resources, this lawsuit should proceed now so they may claim a reward before other nonparty injured officers receive restitution under the MVRA—possibly preventing the nonparty officers from recovering.  It is not clear why the Court should regard that as a compelling interest.

Plaintiffs next contend that they need the case to proceed now "to discover the identities" of the John Doe Defendants, i.e., the people who actually injured Plaintiffs, "before statutes of limitations expire."  Pls. Opp., p. 6.[4]  First, that is internally inconsistent with their argument that Plaintiffs merely want Nordean to file a Rule 12 motion and that concerns about the Fifth Amendment dilemma are premature because "discovery is months away." Second, Plaintiffs filed their Complaint within months of January 6 and do not even cite the relevant statute of limitation periods.  Nordean does not request an "open-ended stay," Pls. Opp., p. 6, but rather one for 90 days, at which point the Court can then review the relevant interests to determine whether the case should proceed.  That is an entirely appropriate, commonplace request that does not prejudice Plaintiffs' limitation period position.  *Sipper*, 869 F. Supp. 2d at 116 (granting stay because of its limited duration).

Finally, Plaintiffs say that granting Nordean's stay would prejudice their ability "to pursue their case against the Defendants who do not face criminal charges (such as Trump, Stone, Alexander, and the organizational defendants)."  Pls. Opp., p. 7.  Not so.  Staying the case

---

[4] Buried in the middle of the Complaint Plaintiffs plead by-the-by that they do not know who caused the injuries they begin alleging on page 54.  Compl., ¶¶ 142-150.

8

*with respect to Nordean* does not hamper Plaintiffs' ability to seek discovery from Defendants who are not currently criminal defendants.  Nor will it "increase costs for all parties" because "motions practice and discovery will need to be repeated." *Id.*, p. 7.  If the Court decides a dispositive motion filed by one of the non-criminal Defendants that concerns a point of law later raised by Nordean, Plaintiffs will argue that the Court's previous disposition is the law of the case.  Those wheels will not need reinventing.  As to discovery, Plaintiffs' duplicative-effort argument is again inconsistent with their position that "discovery is months away" (and Nordean merely requests a 90-day stay).

Plaintiffs' cases do not even support their argument against a temporary stay.  In *Plaintiffs #1-21 v. Cnty of Suffolk*, 138 F. Supp. 3d 264, 282 (E.D.N.Y. 2015), the court granted the defendant's request for a stay of all civil discovery pending resolution of his parallel criminal case.  The court did so because "a defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal proceeding risks the adverse inference in the civil proceeding arising from his or her assertion of the privilege. But if civil defendants do not elect to assert their Fifth Amendment privilege, and instead fully cooperate with discovery, their testimony in their defense in the civil action is likely to constitute admissions of criminal conduct in their criminal prosecution. This is an impossible choice." *Id.* at 280 (internal quotation marks omitted).  Plaintiffs say this outcome was dictated solely by the fact that the defendant was a pro se litigant.  Pls. Opp., p. 12.  Not so.  The court made clear that that consideration merely "strengthened" the defendant's stay argument.  138 F. Supp. 3d at 280.

If the Court is not inclined to enter a temporary stay of the case for 90 days, just as in *Cnty of Suffolk* it should simply stay discovery served on Nordean pending resolution of his

criminal case while allowing discovery to proceed with the non-criminal-defendant Defendants. 138 F. Supp. 3d at 282.

As for the public interest, Plaintiffs say, "The American public has a compelling interest in . . . [a]ccountability for those who planned, prepared, conspired, and carried out this unprecedented attack on our constitutional democracy." Pls. Opp., p. 8.  Plaintiffs do not explain why that interest is not being served by the nearly 700 criminal cases brought by the DOJ to secure accountability.  And, of course, the DOJ has standing to determine whether defendants criminally attempted to delay the electoral certificate count—unlike the police officer Plaintiffs who merely have standing to seek redress for their own personal injuries.[5]

## C.    Burden on the Court

Plaintiffs say that allowing their case to proceed will actually *ease* the Court's burdens. Pls. Opp., p. 13.  Whereas granting a stay would "put this case on a divergent timeline from other related civil cases." *Id.*[6]  The Court should reject this gaslighting.

As explained above, the court system is already being severely tested by the nearly 700 January 6 cases the government has filed.  The administrative burdens created by the largest investigation in DOJ history are complex and enormous.  Allowing every civil case that piggybacks on the January 6 investigation to proceed into discovery will only magnify these historical constraints on the Court.  Nordean asks the Court to contemplate a world where every

---

[5] Thus, in announcing that their Complaint's primary purpose is "to help ensure that what took place on January 6 never happens again," Pls. Opp., p. 8, Plaintiffs, who have no standing to vindicate electoral certificate counting procedures, simultaneously show why their nonjusticiable case is misbegotten.

[6] Plaintiffs cite *Thompson v. Trump*, 21-cv-400 (D.D.C.); *Swalwell v. Trump*, 21-cv-586 (D.D.C.); *Blasingame v. Trump*, 21-cv-858 (D.D.C.).

January 6 criminal defendant is calling chambers every day concerning Plaintiffs' deposition question du jour. The situation is a nightmare scenario that must be avoided.

The *Thompson*, *Swalwell*, and *Blasingame* cases have nothing to do with Nordean's motion. Nordean is not a defendant in any of those matters. Staying Plaintiffs' case or discovery *with respect to Nordean*, will not "put this case on a divergent timeline" from those cases. Pls. Opp., p. 13. Granting Nordean's relief does not prevent Plaintiffs from seeking discovery from Trump, Stone, etc., the defendants in those other civil matters.

> **D.    Duration of stay**

Plaintiffs hardly address that Nordean merely moves to stay the case for 90 days. That's because a motion to stay a case only temporarily is far more likely to be granted. *Sipper*, 869 F. Supp. 2d at 118 (granting 90-day stay of civil case). Plaintiffs nowhere explain how or why all of their cited "interests" would be foiled by a three-month stay of this case. On the other side of the scale, Nordean's criminal case may be resolved in that period of time through motion practice or plea agreement, allowing him to participate fully in discovery here, should this case proceed that far.

Even if the Court does not grant a 90-day stay of the case, it should at least stay discovery with respect to Nordean until his criminal case is resolved. Plaintiffs offer no counterargument to that more limited request and indeed cite cases supporting such relief. *Cnty of Suffolk*, 138 F. Supp. 3d at 282.

**Conclusion**

For all the foregoing reasons, the Court should enter a 90-day stay of this case with respect to Nordean. But even if it does not, it should at least stay discovery served on him until his parallel criminal case is resolved.

Dated: October 27, 2021        Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## Certificate of Service

I hereby certify that on the 27th day of October, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Edward G. Caspar
>LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
>1500 K Street, NW
>Suite 900
>Washington, DC 20005
>202-662-8390
>Email: ecaspar@lawyerscommittee.org

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ Nicholas D. Smith
Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

12