**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CONRAD SMITH, ET AL.,

                    *Plaintiffs*,

       v.

DONALD J. TRUMP,
DONALD J. TRUMP FOR PRESIDENT, INC.,
ROGER STONE, ET AL.,

                  *Defendants*.

Case No. 1:21-cv-022654-APM

---

**DEFENDANT ROGER STONE'S
MOTION TO DISMISS
COMPLAINT**

---

Grant J. Smith
(DDC Bar No. FL-36)
STRATEGYSMITH, P.A.
401 EAST LAS OLAS BOULEVARD
SUITE 130-120
FORT LAUDERDALE, FL 33301
(954) 328-9064
GSMITH@STRATEGYSMITH.COM

Robert C. Buschel
  *Counsel of Record*
(DDC Bar No. FL-39)
BUSCHEL GIBBONS , P.A.
501 E. LAS OLAS BLVD. SUITE 304
FORT LAUDERDALE, FL 33301
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

Defendant Roger Stone ("Stone") respectfully moves that the Court dismiss  the D.C.-law claims under Federal Rules of Civil Procedure12(b)(1); and, dismiss all claims for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure12(b)(6).

Dated: November 12, 2021.

| | |
|---|---|
| Grant J. Smith | Robert C. Buschel |
| (DDC Bar No. FL-36) | *Counsel of Record* |
| STRATEGYSMITH, P.A. | (DDC Bar No. FL-39) |
| 401 EAST LAS OLAS BOULEVARD | BUSCHEL GIBBONS, P.A. |
| SUITE 130-120 | 501 E. LAS OLAS BLVD. SUITE 304 |
| FORT LAUDERDALE, FL 33301 | FORT LAUDERDALE, FL 33301 |
| (954) 328-9064 | (954) 530-5301 |
| GSMITH@STRATEGYSMITH.COM | BUSCHEL@BGLAW-PA.COM |

*Counsel for Roger Stone*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONRAD SMITH, ET AL.,

                      *Plaintiffs*,

          v.

DONALD J. TRUMP,
DONALD J. TRUMP FOR PRESIDENT, INC.,
ROGER STONE, ET AL.,

                    *Defendants*.

Case No. 1:21-cv-022654-APM

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT ROGER STONE'S MOTION TO DISMISS**
**COMPLAINT**

---

Grant J. Smith
(DDC Bar No. FL-36)
STRATEGYSMITH, P.A.
401 EAST LAS OLAS BOULEVARD
SUITE 130-120
FORT LAUDERDALE, FL 33301
(954) 328-9064
GSMITH@STRATEGYSMITH.COM

Robert C. Buschel
  *Counsel of Record*
(DDC Bar No. FL-39)
BUSCHEL GIBBONS , P.A.
501 E. LAS OLAS BLVD. SUITE 304
FORT LAUDERDALE, FL 33301
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

iii

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. v

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 4

ARGUMENT ................................................................................................................... 6

I.  The Court Does Not Have Subject Matter Jurisdiction. (Rule 12(b)(1)) ................... 6

II. Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted. (Rule 12(b)(6)) ............ 7

   A. Standard of Review. ............................................................................................ 7

   B. The allegations are vague and do not support a complete and plausible set of facts. ......... 10

   C. Plaintiffs fail to state a claim of conspiracy. ..................................................... 11

   D. Plaintiffs do not state a claim under section 1985(1) ……………..………………………13

   E. Plaintiffs fail to plead failure to prevent conspiracy to interfere with civil rights, under §1986. ……………………………………………………………………………..…………14

      1. Stone had no power over January 6 crowd ……………………………………………15

      2.  § 1986 is dependent on a proper § 1985 claim ……………………………………16

   F.   Common law claims are insufficient ………………………………………………...16

      1.   Aiding and abetting theory …………………………………………………………16

      2.   Even if aiding and abetting theory exists, plaintiffs fail to state a claim ………...17

      3.   Violation of D.C. Bias-Related Crimes - § 22-3704(a) – Count III ……………18

      4.   Plaintiffs fail to state a claim for battery – Count IV …………………………19

      5.   Plaintiffs fail to state a claim for assault – Count V …………………………..20

      6.   Plaintiffs fail to state a claim for negligence per se - § 22-1322 – Count VI …...21

III.    First Amendment is an absolute defense to plaintiffs' claims …………………….. 22

   A.  Speech and assembly clauses ……………………………………………………22

   B.  Petitioning clause ……………………………………………………………...26

   C.  *Noerr-Pennington* Act ………………………………………………………...27

Conclusion………………………………………………………………………………28

TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Boulter,* 842 F.Supp.2d 85, 119 (D.D.C.2012) ............................................ 17

*Adderley v. State of Fla.*, 385 U.S. 39, 49–51 (1966) .................................................. 27

*Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ..................................................... 7

*Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573, 122 S. Ct. 1700, 152 L.Ed.2d 771 (2002) .......................................................................................................................... 23

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 8, 9, 10, 11

*Baker v. Gurfein,* 744 F.Supp.2d 311, 317 n.3 (D.D.C. 2010) .................................... 17

*\*Barr v. Clinton,* 370 F.3d 1196, 1203 (D.C. Cir. 2004).............................................. 22

*\*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), ..................................... 7, 8, 11

*Bell v. D.C.,* 82 F. Supp. 3d 151, 154 (D.D.C. 2015) .................................................... 8

*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) ......................... 10

*\*Brandenburg v. Ohio,* 395 U.S. 444 (1969).............................................................. 23

*CAIR Action Network, Inc. v. Gaubatz,* 82 F. Supp. 3d 344, 356 (D.D.C. 2015)........................ 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)) .............................. 27

*Carr v. D.C.*, 587 F.3d 401, 406 (D.C. Cir. 2009)....................................................... 22

*Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140–41 (D.D.C. 2011).................................. 17, 18, 20

*\*Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 365 (2010) .......................... 26

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)............................................................... 7

*Covad Comm'cns Co. v. Bell Atlantic Corp.,* 398 F.3d 666, 677 (D.C.Cir.2005) ....................... 27

*Dingle v. District of Columbia,* 571 F.Supp.2d 87, 98 (D.D.C. 2008) ......................... 20

*Doe Through Doe v. D.C.*, 2005 WL 8167785, at \*7 (D.D.C. June 20, 2005)............................. 21

*Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985) ...................... 25

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, (1961)............ 27

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.,* 246 F.Supp.3d 52, 87-88 (D.D.C. 2017) ....................................................................................................................................... 17

*Etheredge v. D.C.*, 635 A.2d 908, 916 (D.C. 1993)....................................................... 19, 20

*\*Flax v. Schertler,* 935 A.2d 1091, 1108 n.15 (D.C.2007)....................................... 16, 17

*Forras v. Rauf,* 39 F.Supp.3d 45, 56 (D.D.C. 2014)............................................................ 20

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019).............................. 9

*Gerlich v. United States Dep't of Justice,* 659 F.Supp.2d 1, 4 (D.D.C.2009)................................ 8

*\*Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) ................................... 13

*Gruenwald v. United States,* 353 U.S. 391, 399 (1957)................................................... 12

*\*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). .......................................... 12, 17, 18

*\*Hall v. Clinton,* 285 F.3d 74, 83 (D.C. Cir. 2002). ...................................................... 22

*Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994)........................ 21

*\*Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) ...................................................... 6

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50-51 (1988).................................... 23

*Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 150 (D.D.C. 2017)......................... 21

*Jackson v. District of Columbia*, 412 A.2d 948, 955 n. 15 (D.C. 1980)...................... 20

*Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008)................................... 6

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994). ............ 11

*Krulewitch v. United States*, 336 U.S. 440, 442 (1949).............................................. 12

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 49 (D.D.C. 2019)....................... 17, 19

*Kush v. Rutledge*, 460 U.S. 719, 724 (1983)................................................................ 13

*\*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .......................................... 6

*Madden v. D.C. Transit Sys., Inc.,* 307 A.2d 756, 757 (D.C. 1973). ............................................. 20

*McCreary v. Heath*, CIV.A. 04-0623 PLF, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) .. 11

*McDonald v. Smith*, 472 U.S. 479, 480 (1985); ....................................................................... 24

*Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 64 (D.D.C. 2009) ... 9

*Partovi v. Matuszewski*, 647 F. Supp. 2d 13, 18 (D.D.C. 2009) ...................................................... 9

*Pena v. A. Anderson Scott Mortg. Group, Inc.,* 692 F. Supp. 2d 102, 106 (D.D.C. 2010) ............ 8

*\*Prisology, Inc. v. Fed. Bureau of Prisons,* 852 F.3d 1114, 1116 (D.C. Cir. 2017). .................... 6

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) ....................................................... 22

*Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004, 1012 (D.S.C.1981) ..................................................... 12

*Sandza v. Barclays Bank PLC,* 151 F. Supp. 3d 94, 101 (D.D.C. 2015) ....................................... 9

*Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 16 (D.D.C. 2001). ....................................................... 14

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105 (1991) ........ 23

*Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ............................................................................. 23

*Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 58 (D.D.C. 2012) ............................................. 9

*Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1346 (7th Cir. 1977) ......................................... 22, 26

*\*Sundberg v. TTR Realty, LLC,* 109 A.3d 1123, 1129 (D.C. 2015) ................................ 16, 17, 18

*Texas v. Johnson*, 491 U.S. 397, 412 (1989). ....................................................................... 1, 22

*United Mine Workers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 222

      (1967) .......................................................................................................................... 26

*\*United States v. Alvarez*, 567 U.S. 709, 717 (2012) ...................................................... 23, 24, 26

*United States v. Cruikshank*, 92 U.S. 542, 552 (1875) ............................................................. 25

*United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) ....................................................... 12

*United States v. Stevens,* 559 U.S. 460, 470 (2010) .................................................................. 23

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761

   (1976) ............................................................................................................................... 24, 26

*Virginia v. Black*, 538 U.S. 343, 359 (2003) ............................................................................... 25

*Walsh v. JPMorgan Chase Bank, NA*, 75 F. Supp. 3d 256, 261 (D.D.C. 2014) ........................... 9

*Watts v. United States,* 394 U.S. 705 (1969). ............................................................................... 25

*Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C.Cir.1995) ................................................................. 27

## Statutes

42 U.S.C. §1986 ................................................................................................................... iv, 14

42 U.S.C. § 1985(1) ............................................................................................................. *passim*

D.C. Code § 22-1322 ................................................................................................................. 21

## Constitutional Provisions

U.S. Const. art. 3, § 2 ................................................................................................................. 6

## INTRODUCTION

Solely to support a false political narrative, Roger Stone has been disparaged as a promoter of an attack at the United States Capitol on January 6, 2021. Roger Stone was not there; thus, Roger Stone did nothing wrong. Roger Stone loves the United States of America. One major reason he does: the First Amendment - the freedom to assemble, freedom to associate, speak freely, and petition the government for redress of grievances. Among other defenses outlined below, the First Amendment provides absolute protection for him from this lawsuit.

Seven United States Capitol Police officers, who were allegedly injured in the course and scope of their duties, filed a lawsuit against Donald J. Trump, his campaign for president, an Alabama limited liability company called, *Stop the Steal*, unincorporated associations named, Oath Keepers, Proud Boys, and a Texas limited liability company of the same name but referenced as "international," along with several named and unnamed individuals, including Roger Stone. Plaintiffs claim these defendants and Roger Stone are responsible for injuries these plaintiffs sustained on January 6, as a result of an "attack" on the United States Capitol. Compl. ¶ 2. Plaintiffs claim, "*Many defendants* in this case, planned, aided and actively participated in that attack." *Id.* (emphasis added). But not *all.* Yet, "All Defendants are responsible for it." *Id.* Their claim is that a civil rights conspiracy among these defendants was to use force, intimidation, and threats to prevent Joe Biden and Kamala Harris from taking office, and to prevent Congress from counting the electoral votes. Roger Stone, who was not alleged to be at or near the Capitol, or communicated in any way with anyone there on January 6, could not be responsible for any tort. Yet, plaintiffs contend he too is responsible for injuries sustained by these plaintiffs. *See id.*

Without proof, plaintiffs claim "racism" and "white supremacy" permeated defendants' efforts at its core. Compl. ¶ 4. Plaintiffs make a point to allege that the claim of election fraud

was based upon race in certain states' election results; however, one of the most contested states was Arizona.[1] But what must be clear when analyzing the sufficiency of the complaint is that these plaintiffs can only remediate their own rights and not the rights of Joe Biden, Kamala Harris, Congress, or the citizens of America. Plaintiffs conceded this when they wrote: "The Department of Justice represents the interests of the United States and not of any private party. Plaintiffs must vindicate their own interests." *See* ECF No. [61] at 7. Roger Stone did not violate any of plaintiffs' interests.

Roger Stone is a political advocate who is being grouped together with other defendants with whom he has no relationship, by the political forces supporting plaintiffs. He is the personification of the First Amendment running, not walking. Free speech must remain *free,* which means it must go unpunished no matter how distasteful it is to plaintiffs or others in some corners of society. Stone creates political speech; none of it is racist. He has a right to assemble. He also has a right to petition the government and redress grievances. Roger Stone is not portrayed by plaintiffs as a leader, a mastermind, or even a player in their conspiracy, other than to allege he had spoken to President Trump, had criticized publicly the outcome of the 2020 presidential election, raised an unspecified amount of money for expenses in Washington, D.C., and had security for himself provided by persons who are allegedly members of defendant organizations, but none of the individual defendants of those organizations were alleged to have provided security for Stone. These facts are insufficient to create or support a conspiracy.

Plaintiffs' claim against "[t]hose Defendants who did not participate in the violence provoked it, encouraged it, planned for it, used it to further their conspiratorial goals, ratified it, and failed to take any action to stop it." Compl. ¶ 8. The Court must analyze which allegations

---

[1]   The state of Arizona has a small percentage of black or African American residents. https://www.census.gov/quickfacts/AZ.

for which defendant can support such a conclusion, particularly as to Roger Stone, because Stone was not present at the Capitol and did not instruct others to attack the Capitol.

This case is meritless and filed for fundraising, sensationalism, and politically partisan reasons. The hope is this Court will authorize a private investigation through civil discovery into Donald J. Trump, his administration, and as a consequence, Roger Stone. This case should not re-litigate the 2020 presidential election. The case is about whether plaintiffs can prove that Stone conspired with others to injure plaintiffs by conspiring to violate their civil rights, and nothing else. But plaintiffs seek to go on a fishing expedition to bolster their political narrative.

Popular speech does not require First Amendment protection. Stone's speech is the alleged source of his tortious conduct. In short, plaintiffs disagree with Stone's political rhetoric so intensely that they conclude, without alleging facts or evidence, that it inspired others at a later time to commit violence against *these* plaintiffs.

As a general proposition, plaintiffs cannot successfully sue Roger Stone because they think he may have been involved in a grand conspiracy in a purported effort of "influencing the policy and conduct of a unit of government by intimidation or coercion." Compl. ¶ 177. There are numerous agreements alleged among defendants, but plaintiffs never specify which defendants were agreeing to what. (Compl. ¶ 155(a)-(i)). Agreement alone does not create an actionable conspiracy.

Allegations of conspiracy to overthrow the government may be fodder for media speculation; however, in the courts there must be and is a higher standard that, without doubt, require plausible allegations that might be provable. Plaintiffs must establish standing and a legitimate claim for relief. Here there is neither.

Plaintiffs allege their civil rights were violated due to assaults that occurred while in the course and scope of their duty. But Roger Stone had absolutely nothing to do with it and the complaint itself confirms it. If the Court were to extract the allegations against Stone, the Court must conclude: *First,* Roger Stone wasn't at the Capitol on January 6; *second,* he didn't say anything to any of the other defendants or anyone suggesting they attack these plaintiffs, let alone attack the Capitol; and *third,* he never said disrupt the function of counting the Electoral College votes in Congress.

### FACTS

Plaintiffs claim Donald J. Trump told lies about the results of the 2020 presidential election and that Roger J. Stone, Jr. and others perpetuated those lies about widespread voter fraud. While doing that, Stone marketed and popularized the slogan #stopthesteal and #fightthefraud. Compl. ¶ 60. Stone also promoted a rally and appeared on stage on December 12, 2020.  *Id.* at ¶ 75.  In addition to promoting rallies and appearing, Stone worked closely with Defendants Proud Boys, Tarrio, and Oath Keepers. *Id.* at ¶ 23. The term, "worked closely" is clarified to mean only a few members of the Oath Keepers who informally provided security to Roger Stone on January 5 & 6 in Washington, D.C.  Stone solicited funds for equipment and security, and otherwise "publicized" the rally. *Id.* at ¶¶ 89, 92, 100, 101. The amount of funds, the type of "equipment" and "security" is not quantified or specified. The law on conspiracy, and aiding and abetting require more than a person mere presence. Stone was not present at the Capitol at all on January 6.

The complaint states Stone spoke to President Donald J. Trump "at least once shortly before the Capitol Attack." *Id.* at ¶ 23. However, plaintiffs do not suggest what "shortly" means or allege what they talked about. Plaintiffs take umbrage that Stone stated that President Trump

won the election and that voting had been corrupted. *See id.* at ¶ 53.[2] They do not like that he said it the "night prior to the rally" and promoted attendance at the rally. *See id.* at ¶ 75.

Stone spoke publicly the night before January 6. Because constitutional rights of speech and assembly are in play, the only plausible discussion can about the content of his speech, not the fact that he spoke. This is especially true for Stone's speech made on December 12, 2020. *See id.* at ¶ 76. Additionally, plaintiffs hold Stone responsible for tweets posted by others without stating if Stone had anything to do with the posts. *Id.* at ¶¶ 80, 89. All of these public speeches by Stone are recorded and published on social media a hundred times over. Public suggestions of what President Trump should do about the election, do not translate to plausible allegations that Stone communicated or conspired to others to injure these plaintiffs. *Id.* at ¶¶ 53, 59.

Plaintiffs object to another defendant's comment that an option is always "1776," because it is code for revolution, but never suggest when or by what means? These were not Stone's words.  Stone did not speak the phrase or clarify its meaning or context. *See id.* at ¶ 101. Then it is alleged that Stone provided his opinion that the election was the choice between "good and evil" and he would be "shoulder to shoulder" with them; but Stone did not attend the rally or march on January 6. *See id.* at ¶101.

Plaintiffs claim that Stone made agreements with various defendants and that Stone's failure to prevent the wrongs that other defendants may have committed triggers conspiracy liability. *Id.* at ¶163.[3] Plaintiffs list the defendants who "agreed" with each other. *See id.* at ¶ 155

---

[2] ". . . For example, in a September 10, 2020 interview with conspiracy theorist Alex Jones, STONE falsely claimed that voting had been "corrupted" through the use of mail-in ballots and urged TRUMP to invoke the Insurrection Act, declare martial law, seize ballot boxes in swing states like Nevada, and arrest political opponents  in both the media and the Democratic Party." Compl. ¶ 53.

[3] "ALEXANDER, STONE, and STRAKA each had the power to prevent or aid in preventing the wrongs conspired to be done as asserted in Count I by, among other things, not raising funds to disseminate false claims of election fraud and to hold Stop the Steal rallies, or instructing the attackers, including members of PROUD BOYS and OATH KEEPERS, not to attack the Capitol and to comply with all police directives concerning access to the

(a)-(i), but the terms of the agreements are not specified. In short, the complaint accuses Stone, in a conclusory fashion, and without alleging sufficient facts, of agreeing with the other defendants to threaten, intimidate, and use force against members of Congress, staff, or Capitol Police officers, so they could not discharge their lawful duties, and prevent Biden and Harris from accepting or holding office. *Id.* at ¶ 153(a)-(c). Roger Stone did not do participate in any of those acts, not by word or by deed.

I.   **The Court does not have Subject Matter Jurisdiction. (Rule 12(b)(1)).[4]**

   *Plaintiffs lack Article III standing.*

   Article III standing concerns subject matter jurisdiction. *Prisology, Inc. v. Fed. Bureau of Prisons,* 852 F.3d 1114, 1116 (D.C. Cir. 2017). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). Plaintiffs cannot sustain this action because they allege no cognizable injury that can be fairly traced to Roger Stone's alleged actions, and thus fail to clear a fundamental constitutional threshold necessary to pursue their claims in federal court. Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. Central to that requirement is that a litigant has "standing." This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent

---

Capitol grounds . . . Any such reasonable diligence by ALEXANDER, STONE, or STRAKA could have prevented or aided in preventing the wrongs conspired to be done in this Complaint, and the damages suffered by Plaintiffs as a result. Compl. ¶ 163.

[4] Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Sweigert v. Perez*, 334 F. Supp. 3d 36, 39–40 (D.D.C. 2018).

action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citation omitted). Similar to Rule 12(b)(6) motions the Court can draw all reasonable inferences from plaintiffs allegations, but it may not "accept interferences that are unsupported by facts," or assume the truth of legal conclusions or give weight to "threadbare recitals of the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted). Stone's challenged action was a result of "independent action of some third party," who is not before the court. *See id.*

Plaintiffs' entire allegations and causes of action stem from unidentified JOHN DOES who physically attacked plaintiffs in an effort to disrupt official conduct in the Capitol on January 6, 2021. All the conduct plaintiffs allege against Stone is legal speech -- speech that advocates gathering, marching, and protesting – a petition for redress of grievances. Nowhere is violence advocated by him against anyone, and especially not against these plaintiffs. Nowhere is trespass on the Capitol advocated by him. Absent a connection between the physical injuries plaintiffs received and Stone's action, plaintiffs have no standing to sue Stone.  *See id.*

## II.    Plaintiffs fail to state a claim upon which relief can be granted. (Rule 12(b)(6)).

### A.  Standard of Review

Until the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, pursuant to *Twombly*, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level

. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell v. D.C.,* 82 F. Supp. 3d 151, 154 (D.D.C. 2015) (Mehta, J.,); *Pena v. A. Anderson Scott Mortg. Group, Inc.,* 692 F. Supp. 2d 102, 106 (D.D.C. 2010). Additionally, the court must determine whether the well-pled factual allegations, if assumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 662. When the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 663.

A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. "Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the 'grounds' of 'entitle[ment] to relief,' a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Gerlich v. United States Dep't of Justice,* 659 F.Supp.2d 1, 4 (D.D.C.2009) (quoting *Twombly,* 550 U.S. at 555–56)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Following *Iqbal*, this District

Court has applied the *Iqbal* standard strictly in cases ranging from racketeering to age discrimination, and other civil rights cases.[5] Invoking terms like "conspiracy" and "agreement" is insufficient. *Twombly,* 550 U.S. at 556. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019), *aff'd,* 816 Fed. Appx. 497 (D.C. Cir. 2020), *cert. denied,* 141 S. Ct. 2466 (2021) (citing *id.* at 556-57)).

Applying the *Iqbal* standard in this case, it is abundantly clear that plaintiffs' allegations of conspiracy fall short in crossing the line from "conceivable" to the "plausible" as they allege fantastic claims that are conclusory and unlikely. *See Iqbal*, 556 U.S. at 680. The Court should "not accept as true, however, the plaintiff[s'] legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.,* 758 F.3d 296, 315 (D.C. Cir. 2014).

As discussed below, the allegations are implausible because they do not clearly identify the overt acts of Roger Stone, that is to say they never describe the purported illegal acts or lawful acts by unlawful means; or, when and how he joined the conspiracy. They describe lawful and constitutionally protected acts. Plaintiffs fail to allege *any* facts that could plausibly support a viable claim, relying instead on broad and conclusory allegations, largely dependent upon lawful First Amendment conduct of speech, assembly, and petition for redress of grievances.

---

[5] *See Sandza v. Barclays Bank PLC,* 151 F. Supp. 3d 94, 101 (D.D.C. 2015) (RICO case applying "implausibility" standard); *Walsh v. JPMorgan Chase Bank, NA*, 75 F. Supp. 3d 256, 261 (D.D.C. 2014) (section 1985 conspiracy); *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 58 (D.D.C. 2012) (ADEA case); *Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 64 (D.D.C. 2009) (§ 1981 case); *Partovi v. Matuszewski*, 647 F. Supp. 2d 13, 18 (D.D.C. 2009) (§ 1983 case).

B. **The allegations are vague and do not support a complete and plausible set of facts.**

The facts of *Iqbal* are instructive on delineating sufficient allegations from insufficient conclusory allegations. In the wake of the September 11, 2001, terrorist attacks Iqbal was arrested in the United States on criminal charges and detained by federal officials. *Iqbal*, 556 U.S. at 666. He claims he was deprived of various constitutional protections while in federal prison. *Id.* He filed a complaint against numerous federal officials, including John Ashcroft, the former Attorney General and Robert Mueller, the then Director of the FBI. *Id.* The complaint against Ashcroft and Mueller alleged that they adopted an unconstitutional policy that subjected Iqbal to "harsh conditions of confinement on account of his race, religion, or national origin." *Id.* After he pled guilty to criminal charges and served his term of imprisonment, Iqbal sued in United States District Court thirty-four then current and former federal officials, and nineteen unnamed federal corrections officers under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). *Id.* at 668.

The complaint further alleged that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Ashcroft and Mueller in discussions in the weeks after September 11, 2001." *Id.* at 669. Lastly, the complaint posited Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to subject" Iqbal to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id.* The pleading named Attorney General Ashcroft as the "principal architect" of the policy, and identified Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id.*

10

The failure of Iqbal's pleading was that he pled as fact allegations that were "merely consistent with" a defendant's liability, it "stop[ped] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Like plaintiffs' complaint, the essential allegations are presented merely consistent with liability and are so outrageous and unexplained that it comes nowhere near line of possibility and plausibility. *See id.* Plausibility of the complaint is a "context-specific task" that requires the court to draw on its "judicial experience" and "common sense." *Id.* at 679.

Without identifying overt acts, (unlawful acts or lawful acts by unlawful means), the allegations do not illustrate a "meeting of the minds." *See id.*; *McCreary v. Heath*, CIV.A. 04-0623 PLF, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (unpublished). What Stone said to Trump when he talked with Stone leaves open the question of what did they discuss – leaving the objective and means of a conspiracy wide open, largely only to the limits to one's imagination. Another unalleged act is what did Stone tell those other co-conspirators? Because these questions are unanswered and not asserted, the complaint is vague and conclusory and does not meet the pleading standard of Rule 8.

Without that level of specificity, plaintiffs will never be able to show they are entitled to relief.  Without more specificity, plaintiffs' complaint fails to "nudge" their claim "across the line from conceivable to plausible." *See id.* at 683 (citing *Twombly,* 550 U.S. at 570); *see Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994).

C. **Plaintiffs fail to state a claim of conspiracy.**

In order for plaintiffs to properly allege their injuries were fairly traceable to Stone's conduct, they must tie Stone to one of the conspiracies plaintiffs claim exist. Elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an

unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. *See, e.g., Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004, 1012 (D.S.C.1981). *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

In some portions of the complaint, the object of the conspiracy was to disrupt a function of Congress or vandalize property in the Capitol. In other parts, the object of the conspiracy is to directly injure plaintiffs. How and when Stone joined either conspiracy is unclear and cannot be penciled in by the court. Plaintiffs must make clear that Stone joined both the conspiracy to disrupt Congress and the conspiracy to injure plaintiffs. Plaintiffs cannot sufficiently allege Stone joined either conspiracy with lawful conduct. Denying the existence of the conspiracy or concealing it, is not considered an overt act in furtherance of that conspiracy. *Gruenwald v. United States,* 353 U.S. 391, 399 (1957) (concealment or denial of conspiracy is not an overt act). The Court must consider when the conspiracy is alleged to have begun and ended. *See Krulewitch v. United States*, 336 U.S. 440, 442 (1949) (court required to determine for purposes of admitting codefendant's statement whether conspiracy "never existed or had long since ended in success or failure. . .."). "In examining whether these conditions are fulfilled, the crucial question . . .  is the scope of the conspiratorial agreement . . ." *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citations omitted). Conspirators must have agreed on the essential nature of the plan. *Id.* (citations omitted). A conspiracy cannot be an amorphous concept. Plaintiffs failed to allege Stone had a meeting of the minds as to the terms and goals of a specific conspiracy and furthered the object of the conspiracy by specified illegal acts.

D.  **Plaintiffs do not state a claim under section 1985(1)**

42 U.S.C. § 1985(1) states:

> If two or more persons in any state or territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the united states, or from discharging any duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder or impede him in the discharge of this official duties.

"The Supreme Court has laid out five specific conspiracies that § 1985 proscribes, which are those that interfere with *(a) the performance of official duties by federal officers;* (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Clause 1 of section 1985(1) is the only clause plaintiffs can pursue.

> *Plaintiffs have failed to allege with particularity a nexus between the defendants' alleged overt conspiratorial acts and Plaintiffs' alleged injury.*

In addition to the arguments made above that plaintiffs do not meet the constitutional requirement of standing and failed to sufficiently allege conspiracy. The purpose of a conspiracy is different than the effect. "The plaintiff's § 1985 claim also must be dismissed because at the pleading stage a plaintiff is required to allege a connection between the overt acts, the furtherance of the conspiracy and the plaintiff's injury." *Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (citation omitted).  At best, plaintiffs correlate allegations of lawful speech with injury. For example, they claim Roger Stone expressed a political view and therefore that means he caused the subsequent events. He helped organize the event where he spoke and allegedly spoke to the President about topics unknown. Without more, there is no cause and effect that alleges a nexus between the overt acts and the injury to the specific plaintiffs in this

13

lawsuit. Plaintiffs must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim under section 1985. *See Graves,* 961 F.Supp. at 320. "A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury." *Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 16 (D.D.C. 2001). The complaint must describe circumstances which involve communication among the individual defendants and allege that the result of these communications was to injure plaintiffs. *Id.* Otherwise, no agreement exists; and thus, no conspiracy. *Id.*

E. **Plaintiffs fail to plead failure to Prevent Conspiracy to Interfere with Civil Rights, under §1986.**

Section 1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, **and having <u>power to prevent or aid</u>** in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

(emphasis added).

Plaintiffs fail to state a claim under section 1986 for two reasons: 1) the statute requires *actual* power over others and *knowledge* of actual power over others; and, 2) if there is no section 1985(1) claim, then no section 1986 claim can remain.

1. **Stone had no power over January 6 crowd.**

Section 1986 imposes liability for negligence on persons who have knowledge of "wrongs visited upon persons, and although aware of the wrong, took no action." *Brown v. Sim*, CIV.A. 03-2655, 2005 WL 3276190, at *4 (D.D.C. Sept. 30, 2005) (citing *Thomas v. News World Communications,* 681 F.Supp. 55, 72 (D.D.C.1988)). The statute "establishes unambiguously that a colorable claim under section 1985 is a prerequisite to stating an adequate claim for neglect to prevent under section 1986." *Id.*

Plaintiffs do not sufficiently allege stone's position of authority over any of the other defendants or the people that breached the capitol on January 6. He is not an agent of the campaign or any of the other corporate defendants. The duty to stop the "wrongs" plaintiffs claim stone had a legal responsibility to stop, must come from power legally conveyed by statute or some other legal relationship. *Power* means formal power or formal authority. All the case law supports an interpretation that there must be a government or formal legal relationship among the parties. *See Bowie v. Maddox,* 642 F.3d 1122, 1132 (D.C. Cir. 2011); *Boling v. United States Parole Comm'n*, 290 F. Supp. 3d 37, 50 (D.D.C. 2017), *aff'd,* 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018). *Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007) (landlord discrimination of tenant). Power of persuasion or status as a public figure, is not the power contemplated by section 1986. Plaintiffs imagine stone was in a conspiracy, he had a duty to stop the effect; and, therefore had the power to stop the effects of a conspiracy. This argument begs the question, how did roger stone join a conspiracy; what were his overt acts, and what was his power over essential unidentified others?

**2.      § 1986 is dependent on a proper § 1985 claim.**

As discussed above, plaintiffs cannot sustain a 1985 claim against Stone. "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." *Hicks v. Williams*, 04-375 (RWR), 2005 WL 3560678, at *3 (D.D.C. Dec. 28, 2005) (*citing Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir.1984); *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir.2000) ("[B]ecause her § 1986 claim is derivative and conditioned on establishing a § 1985 violation, [plaintiff's] § 1986 claim must also be dismissed."); *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir.1981) (holding that a cause of action under § 1986 is dependent on valid claim under § 1985)). Because plaintiffs are unable to assert a viable § 1985 claim, any allegations plaintiffs may have under § 1986 fail as well. *E.g. Bush v. Butler*, 521 F. Supp. 2d 63, 70 (D.D.C. 2007); *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126, reh'g denied, 466 U.S. 954, 104 S. Ct. 2162, 80 L.Ed.2d 547 (1984).

**F.      Common law claims are insufficient.**

**1.      Aiding and abetting theory.**

Torts supported by an aiding and abetting theory do not exist in this District. This theory fails for the simple reason that the District of Columbia "ha[s] not recognized" liability for aiding and abetting tortious conduct. *Sundberg v. TTR Realty, LLC,* 109 A.3d 1123, 1129 (D.C. 2015); *see, e.g., Flax v. Schertler*, 935 A.2d 1091, 1107 n.15 (D.C. 2007) ("we have not" "recognize[d] a tort of aiding and abetting tortious conduct"); *CAIR Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 356 (D.D.C. 2015) ("Because the D.C. Court of Appeals has not recognized a claim for aiding and abetting a tort, this claim fails"). The D.C. Circuit predicted nearly 35 years ago that the District would recognize such liability (*Halberstram v. Welch,* 705 F.2d 472, 479

(D.C. Cir. 1983)), but the D.C. Court of Appeals' more recent decisions in 2007 and 2015 rejecting such liability supersede that case (*see, e.g., Gaubatz,* 82 F. Supp. 3d at 356).

Roger Stone cannot be liable for aiding and abetting. The tort theory of aiding and abetting is not recognized under District Law. *3M Co. v. Boulter,* 842 F.Supp.2d 85, 119 (D.D.C.2012) (citing *Flax v. Schertler,* 935 A.2d 1091, 1108 n.15 (D.C.2007)). Although Plaintiffs may invite this Court to recognize a theory of aiding and abetting, citing to *Halberstram v. Welch,* 705 F.2d 472, 479 (D.C. Cir. 1983), in the ensuing three plus decades, D.C.-law has not recognized such a theory of liability. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015) ("not recognized the tort of aiding and abetting in the District").

A sister court in this district, however, has recognized aiding and abetting liability for common law torts under District of Columbia law. *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 49 (D.D.C. 2019) (Kollar-Kotelly, J.,). The district court there recognized the tort theory based upon the conclusion that it is bound by the D.C. Circuit. *Id.* at 50. Then the court cites to other district court cases for the same proposition. *Id.* (citing *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.,* 246 F.Supp.3d 52, 87-88 (D.D.C. 2017); *Baker v. Gurfein,* 744 F.Supp.2d 311, 317 n.3 (D.D.C. 2010); *Chen v. Bell-Smith*, 768 F.Supp.2d 121, 140 (D.D.C. 2011). *Halberstam* only predicted that the District of Columbia law would support an aiding and abetting theory, but it does not hold that it does. If the D.C. Court of Appeals does not recognize it, then the tort theory does not exist and this Court should not recognize it.

      **2.**      **Even if aiding and abetting theory exists, plaintiffs fail to state a claim.**

"But courts applying D.C. law have found aiders and abettors liable for the underlying tort where (1) the defendant assists the primary violator in performing "a wrongful act that causes an injury; (2) the defendant [is] generally aware of his role as part of an overall illegal or

17

tortious activity at the time he provides the assistance; and (3) the defendant ... knowingly and substantially assist[s] the principal violation." *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140–41 (D.D.C. 2011) (citing *Halberstam,* 705 F.2d at 487–88)) (other citations omitted). There is no allegation that Stone assisted the "primary violator" in performing a wrongful act that caused an injury since plaintiffs do not identify the primary violator. *See Chen,* 768 F. Supp.2d at 140-41. The injury was physical violence. Stone did not aid the unidentified DOES against these plaintiffs. There is no allegation that Stone substantially assisted in the principal violation – violence. Plaintiffs definitely fail to make a case under an aiding and abetting theory based upon a failure to plead "his presence . . . at the time of the tort."  *Id.* at 141 (citing *Halberstam,* 705 F.2d at 478 (quoting Restatement (Second) of Torts § 876 (1979)). Stone was not present when the underlying tort occurred on January 6. *Halberstam,* 705 F.2d at 481 ("Mere presence at the scene, it noted would not be sufficient for liability"). They did not allege, nor did he provide the means for any of the unidentified attackers to be present; they did not allege, nor did he did not provide them weapons or suggest they commit a tort against these plaintiffs. He most importantly they did not allege, nor did he suggest anyone breach the Capitol or its grounds.

### 3.   **Violation of D.C. Bias-Related Crimes - § 22-3704(a) – Count III.**

Plaintiffs allege three theories of liability under the D.C. Bias Crimes Act. Stone did not engage in acts of terrorism. He did not engage in rioting or incite a riot, as explained in the sections on failure to state a claim and First Amendment. *See supra,* II. Stone allegedly aided and abetted others to engage in a riot from afar. Compl. ¶ 181. Since D.C. does not recognize a tort theory of aiding and abetting, this claim must fall. *See supra*, II., F.1-2 . Plaintiffs do not allege a theory of conspiracy as to this count.[6]

---

[6] *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015) ("'a claim of civil conspiracy does not lie for violation of a statute' absent statutory language to the contrary") (citations omitted).

Outside of claiming that Stone made an appeal for an unspecified amount of funds for "equipment" and "security," plaintiffs do not say how Stone aided others to attack them, let alone aid others to destroy property not owned by plaintiffs. *See* Compl. ¶ 183. Stone did not engage in destruction of property. To the extent that the cause of action is supported by a statute that impinges upon free speech, assembly, and redress of grievances, it is unconstitutionally vague and in violation of the First Amendment. *See infra,* III.

Plaintiffs claim they were targeted because of their political bias. Compl. ¶ 174. But, Capitol Police officers do not have a political affiliation. They do not allege defendants perceived that they were Democrats or affiliated with the "Democratic political party." *See id.* Because plaintiffs were not injured because they were or perceived as Democrats, the theory of political bias cannot stand.

### 4.   **Plaintiffs fail to state a claim for battery – Count IV.**

"A battery is an intentional act that causes a harmful or offensive bodily contact." *Etheredge v. D.C.*, 635 A.2d 908, 916 (D.C. 1993) (citation omitted) (quoting Restatement (Second) of Torts, *supra,* § 18)). Stone did not batter anyone. He also did not tell anyone to batter anyone on January 6 or any other day, nor was it alleged that Stone did so. He did not provide any weapons to anyone who attacked any plaintiff, nor was it alleged that he did so. Plaintiffs cannot point to their attackers other than to name them "JOHN DOE Defendants." Stone did not clear the way for another to attack a plaintiff. *See Kurd,* 374 F.Supp. at 50-51. Since he was not there he could not have created a "dangerous and injurious atmosphere which assisted" others to commit a battery. *Id.* at 50. Plaintiffs did not allege that Stone entered a conspiracy to batter the plaintiffs. *See* Compl. ¶188. *Id.*  at 52. (no agreement if plaintiffs present no evidence that any of the other Defendants actually joined another defendant in the street). Plaintiffs have provided no nexus between Stone's alleged tortious conduct and unidentified

others battering plaintiffs. Because they cannot specify Stone's conduct as it relates to these plaintiffs, they have not stated a claim against Stone.

     5.   **Plaintiffs fail to state a claim for assault – Count V.**

"For present purposes, an assault may be defined as an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Id*. In the District of Columbia, "[c]laims for assault must involve 'an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim.'" *Dingle v. District of Columbia,* 571 F.Supp.2d 87, 98 (D.D.C. 2008) (quoting *Etherege v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)). "An actor will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault." *Forras v. Rauf,* 39 F.Supp.3d 45, 56 (D.D.C. 2014), aff'd on other grounds, 812 F.3d 1102 (D.C. Cir. 2016), *see also Jackson v. District of Columbia*, 412 A.2d 948, 955 n. 15 (D.C. 1980). "Also, 'an essential element of ... assault is ... intentional[ly] putting another in apprehension' and absent such an allegation a complaint is 'clearly deficient.'" *Id*. (quoting *Madden v. D.C. Transit Sys., Inc.,* 307 A.2d 756, 757 (D.C. 1973).

   In *Zhi Chen v. District of Columbia*, 808 F.Supp.2d 252, 258-9 (D.D.C. 2011), the Court dismissed the plaintiff's assault claim because she failed "to point to any record evidence indicating that Officer Ha ever attempted or threatened to harm Ms. Chen physically. Ms. Chen's failure to identify such evidence is fatal to her assault claim." Stone did not direct or help anyone assault these plaintiffs. Again, plaintiffs blame unidentified John Doe defendants, who attempted or threatened to do physical harm to plaintiffs. This is insufficient. Because plaintiffs cannot specify Stone's conduct as it relates to these plaintiffs, they have not stated a claim against Stone.

6. **Plaintiffs fail to state a claim for negligence** *per se* **- § 22-1322 – Count VI.**

In Count VI, plaintiffs claim Stone was negligent only for violating D.C. Code § 22-1322. Plaintiffs cite to other statutes supporting negligence *per se* claims as to other defendants, but not Stone. Their sole negligence *per se* claim is tenuous. Like any negligence claim, Stone must owe a duty to these specific plaintiffs based upon a statute. Plaintiffs cited D.C. Code §22-1322. Plaintiffs allege that Stone "incited or urged others to engage in a riot." Compl. ¶ 198(b). There are general references that he participated in planning and recruiting a riot and other acts on January 6, but provide no credible allegation that he undertook any planning or recruiting.

"In order to prevail on a negligence cause of action, the plaintiff must prove the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 150 (D.D.C. 2017). "Consequently, a person is liable to another only when he owes him some duty of care." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994) (citations omitted). This applies to both common law negligence and negligence *per se* claims. *Doe Through Doe v. D.C.*, CV 03-1789 (GK), 2005 WL 8167785, at *7 (D.D.C. June 20, 2005) (citations omitted). Plaintiffs must claim that Stone owes a duty to these plaintiffs. Nothing about Stone's speech on January 5 suggested or triggered any violence toward these plaintiffs or the Capitol. It did not trigger a call for more Capitol security for the following day. Merely by giving a speech, appealing for unspecified equipment, and having security of his own, the day before, created a duty to protect these plaintiffs or the Capitol.

Plaintiffs do not allege that Stone breached his duty to plaintiffs. This statute has a dearth of case law supporting it. But even the leading case defining "incite or urge others to engage in a riot," requires more than speech; absent advocacy of violence, it requires a defendant's presence. "In light of that definition, if members of the crowd were cheering acts of violence committed by

21

other marchers, they would be engaging in criminal conduct." *Carr v. D.C.*, 587 F.3d 401, 406 (D.C. Cir. 2009). Since Stone was not at the scene of the Capitol on January 6, he could not have engaged in the conduct proscribed by § 22-1322.

In sum, plaintiffs do not state how Stone planned, incited, recruited or urged others to riot. Plaintiffs do not allege that any of the people who breached the Capitol heard Stone or were inspired or recruited by Stone. Giving a speech that the presidential election was corrupt, fixed, or stolen, is not sufficient to prove incitement. As discussed earlier, to meet and rally is also a constitutional right that occurs almost daily in our nation's Capital. Inviting people to gather, march, and protest is protected by the First Amendment's speech, assembly, and petitioning clauses. This cause of action must be dismissed.

## III.   First Amendment is an absolute defense to plaintiffs' claims.

Plaintiffs' theories of tort liability do not withstand the First Amendment.

> No citation of authorities is needed for the proposition that the rights our founding fathers set down in the First Amendment are the subject of special protection by the courts.

*Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1346 (7th Cir. 1977) (§ 1985(1) case).

The Circuit has held that First Amendment protections apply to section 1985 claims. *Barr v. Clinton,* 370 F.3d 1196, 1203 (D.C. Cir. 2004); *Hall v. Clinton,* 285 F.3d 74, 83 (D.C. Cir. 2002).

### A.   Speech and Assembly clauses.

Under the First Amendment, the government has no power to restrict expression "because of the content of the message." *Texas v. Johnson*, 491 U.S. 397, 412 (1989). "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) (citations omitted). In particular, it may not prohibit speech simply because society finds the speech "offensive or disagreeable." *Id.* at 414. The free speech clause of the First

22

Amendment can also serve as a defense in state tort suits. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citing *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50-51 (1988)). In short, it does not matter if plaintiffs think Stone and others are lying about election fraud. Correctness, (in all aspects of the word), of political speech is not the test for First Amendment protection. *See, e.g., United States v. Alvarez*, 567 U.S. 709, 717 (2012) ("Absent from those few categories where the law allows content-based regulation of speech is any general exception the First Amendment for false statements").

"When content-based speech regulation is in question, however, exacting scrutiny is required. Statutes suppressing or restricting speech must be judged by the sometimes inconvenient principles of the First Amendment." *Id.* at 715. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (quoting *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573, 122 S. Ct. 1700, 152 L.Ed.2d 771 (2002)). Regardless of what is at stake, the Supreme Court has rejected "free-floating test for First Amendment coverage" as "startling and dangerous," based upon an "*ad hoc* balancing of relative social costs and benefits." *United States v. Stevens,* 559 U.S. 460, 470 (2010). Restrictions based upon content are limited to long recognized "traditional categories" of expression. *Id.* at 468 (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105 (1991)) (Kennedy, J., concurring in judgment). One of the categories is speech that incites "imminent lawless action." *Alvarez,* 567 U.S. at 717 (citing *Brandenburg v. Ohio,* 395 U.S. 444 (1969) (per curiam). This Court must analyze whether Stone said anything that does not get the protection of the First Amendment. The Court must keep in mind, the Supreme Court has "never endorsed the categorical rule . . . that false statements receive no First Amendment protection." *Id.*

Said another way, constitutional speech cannot be an overt act of a conspiracy because, as explained above, overt acts must be acts of illegality. Standing alone, the speech is and must be treated like any other form of pure political speech. "The remedy for speech that is false is speech that is true." *Alvarez*, 567 U.S. at 727. Thus, Stone's published speech itself is not a crime or a tort. Plaintiffs can and only do complain of its purported affect. But the First Amendment does not analyze the effect of speech, only the speech itself. Meaning, plaintiffs must demonstrate the speech does not deserve First Amendment protection, and then the court can consider the causes of action plaintiffs claim.

Stone's remarks in December 2020 and January 5, 2021 did not advocate "imminent lawless action." *Alvarez,* 567 U.S. at 717. Stone raising money for equipment and security for a rally does not shed his First Amendment protection. "It is clear, for example, that speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976).

Plaintiffs have not pled facts that avoid the protections found in *Bradenburg v. Ohio.* 395 U.S. 444 (1969). In *Bradenburg,* a leader of the Ku Klux Klan was convicted of an Ohio statute for advocating the necessity for crime and violence or unlawful methods of terrorism as a means of accomplishing political reform. *Id.* at 445. The Supreme Court declared the Ohio statute unconstitutional. *Id.* at 449. "Neither the indictment nor the trial judge's instructions to the jury in any way refined the statute's bald definition of the crime in terms of mere advocacy not distinguished from incitement to imminent lawless action." *Id.* at 448–49. A statute cannot punish based upon "mere advocacy" or "assembly with others merely to advocate the described type of action." *Id.*; *McDonald v. Smith*, 472 U.S. 479, 480 (1985); *Dunn & Bradstreet, Inc. v.*

*Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985); *United States v. Cruikshank*, 92 U.S. 542, 552 (1875) ("The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances . . . is an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States").

This is precisely what this lawsuit endeavors to do – punish Stone for mere advocacy and by taking part in an assembly with others merely to advocate. *Imminent lawlessness* is key to the distinction between Stone's speech and conduct that is punishable by law. *See id.* Speech that does not inspire imminent lawlessness is permitted speech protected by the First Amendment. Temporally, the injuries to plaintiffs did not occur immediately after Stone's speech. The breach at the Capitol occurred the day after. Without allegations that Stone was present on January 6 at any speech or at the Capitol demonstrates he did not inspire imminent lawlessness or join a conspiracy seeking that lawlessness. Stone would have had to advocate a "true threat," *i.e.* an act of unlawful violence, which he did not do. *See Virginia v. Black*, 538 U.S. 343, 359 (2003). Conclusions that violence is implied by the speaker cannot be presumed. *Id.* at 364. Stone did not advocate violence expressly or implicitly.

For example, the Supreme Court reversed a conviction of a young man for threatening President Johnson when discussing police brutality and the draft after a rally at the Washington Monument. *Watts v. United States,* 394 U.S. 705 (1969). The statement was not a "true threat;" rather, it was "political hyperbole." *Id.* at 708. Nothing Stone is alleged to have said was expressly advocating violence, let alone imminently. Stone advocating the president declare "martial law" asks the president to use power of the government, not incite the breach of the Capitol the next day. *See* Compl. ¶ 53. "Nothing is over until we say it's over," is a paraphrase

from a John Belushi movie.[7] *See* Compl. ¶ 100. Soliciting funds to support a rally is also protected speech. *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 365 (2010) ("No sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations); *Virginia State Bd. of Pharmacy*, 425 U.S. at 761. The constitutional rights of speech and association must save the day for Stone.

B. **Petitioning clause.**

Another protection afforded by the First Amendment is petitioning for a redress of grievances. Stone can redress grievances. This occurs every day in the District. Plaintiffs must allege more than speech, assembly, and communicating grievances to Congress. Section 1985(1) does not permit a cause of action that falls squarely under the First Amendment. *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir. 1977). "For the right to petition for redress of grievances is 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Id.* (citing *United Mine Workers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 222 (1967)). "The public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionality protected free speech area. *Id.* (citations omitted). Stone's speech could not be more political or squarely classified as a petition for the redress of grievances based upon content and location. Plaintiffs' determination of its truthfulness is irrelevant to the inquiry and protection afforded. *See id.* at 1345. To permit a view that perpetuating falsehoods about the election or the futility of the petitioning are exceptions to these rights could "chill the exercise of the right to petition." *Id.* at 1344; *see also Alvarez,* 567 U.S. at 727.

---

[7] Bluto: What? Over? Did you say 'over'? Nothing is over until we decide it is! Was it over when the Germans bombed Pearl Harbor? Hell no!... -- ANIMAL HOUSE, released (July 1978). https://www.filmsite.org/bestspeeches30.html (last reviewed Nov. 8, 2021).

C.   ***Noerr-Pennington* doctrine immunity.**

> The right to petition for the redress of grievances has an ancient history and is not limited to writing a letter or sending a telegram to a congressman; it is not confined to appearing before the local city council, or writing letters to the President or Governor or Mayor. *See NAACP v. Button*, 371 U.S. 415, 429—431, 83 S. Ct. 328, 335—336, 9 L.Ed.2d 405. Conventional methods of petitioning may be, and often have been, shut off to large groups of our citizens. Legislators may turn deaf ears; formal complaints may be routed endlessly through a bureaucratic maze; courts may let the wheels of justice grind very slowly. Those who do not control television and radio, those who cannot afford to advertise in newspapers or circulate elaborate pamphlets may have only a more limited type of access to public officials. Their methods should not be condemned as tactics of obstruction and harassment as long as the assembly and petition are peaceable . . .

*Adderley v. State of Fla.*, 385 U.S. 39, 49—51 (1966) (Douglas, J.,) (dissenting in part).

Roger Stone delivering speeches, encouraging people to gather and march in the District of Columbia is First Amendment conduct. On the flip side, petitioning the government for a redress of grievances is provided immunity under the *Noerr-Pennington* doctrine. "The *Noerr–Pennington* doctrine holds that defendants who petition the government for redress of grievances, 'whether by efforts to influence legislative or executive action or by seeking redress in court,' are immune from liability for such activity under the First Amendment." *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C.Cir.1995); (citing *Covad Comm'cns Co. v. Bell Atlantic Corp.,* 398 F.3d 666, 677 (D.C.Cir.2005); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, (1961); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). "The doctrine's provenance lies in the field of antitrust law, but its reach has since then been extended to include common-law torts such as malicious prosecution and abuse of process." *Id.* It should apply to the present case as well.

The *Noerr-Pennington* doctrine in this context emphasizes Stone's argument in a different way because the rights provided in the clauses of the First Amendment are fundamental

to our nation's character. Plaintiffs have not pled and cannot plead that Roger Stone breached the Capitol and injured police officers while doing it. So what is left? He spoke to a crowd and said he believes President Trump was reelected. He gathered with and stood next to people that are deemed unsavory by plaintiffs. This conduct is legal; it is not lawful conduct by unlawful means. Plaintiffs did not plead what they believe Stone's sinister deeds were. They do not allege what Stone did behind the scenes. Those allegations must be pled or otherwise, they describe only legal conduct protected by the First Amendment and Stone has immunity under the *Noerr-Pennington* doctrine as well. *See id.*

## NOTICE OF ADOPTION

Defendant Roger Stone adopts the arguments of codefendants, to the extent that the arguments apply to him in this action.

## CONCLUSION

Plaintiffs want to hold Roger Stone liable for the acts of others at the Capitol on January 6, for what amounts to political speech about the 2020 presidential election, meeting with President Donald J. Trump, and meeting with certain members of two groups who provided security to Stone when he spoke and was present in the District. Plaintiffs' allege lawful acts and frame it as overt acts in furtherance of a conspiracy, without specifying when Stone joined a conspiracy or how he joined it. All of the acts described are protected by the free speech, assembly, and petition for redress of grievance clauses of the First Amendment. This case must be dismissed.

Respectfully submitted,

\_\_/s/\_\_Robert Buschel_____

Grant J. Smith
(DDC Bar No. FL-36)
STRATEGYSMITH, P.A.
401 EAST LAS OLAS BOULEVARD
SUITE 130-120
FORT LAUDERDALE, FL 33301
(954) 328-9064
GSMITH@STRATEGYSMITH.COM

Robert C. Buschel
  *Counsel of Record*
(DDC Bar No. FL-39)
BUSCHEL GIBBONS , P.A.
501 E. LAS OLAS BLVD. SUITE 304
FORT LAUDERDALE, FL 33301
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

## CERTIFICATE OF SERVICE

I certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

/s/ Robert Buschel
Robert C. Buschel
*Counsel for Roger Stone*

29