**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Civil Division

|  |  |
|---|---|
| **CONRAD SMITH, ET AL.** | |
| Plaintiffs, | **Civil Action No.  1:21-cv-02265-APM** |
| v. | |
| **DONALD J. TRUMP FOR PRESIDENT, INC., ET AL.** | |
| Defendants. | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KELLY MEGGS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND RULE 12(B)(6)**</u>

Defendant Kelly Meggs, by and through undersigned counsel, hereby respectfully moves the Honorable Court to dismiss the various causes of action of the omnibus and compound Complaint of the Plaintiffs, pursuant to (a) Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek injunctive relief, and (b) FRCP Rule 12(b)(6) with respect to the state-based causes of action which implausibly seek to make all Defendants in this case responsible for the intervening, independent, criminal acts of others who allegedly committed treacherous acts whether intentionally or negligently, whereas it is not plead that this Defendant caused any of these acts or committed any injuries.

## I.   INTRODUCTION

First, however, the Complaint does not allege that Plaintiffs could have then or are likely in the future to suffer concrete injury as a direct result of Defendant Kelly Meggs' alleged conduct of attending a rally in the District of Columbia in support of the President of the United

States and entering the Capitol, and the past injuries that Plaintiffs allege could, by Plaintiffs' own admission, be compensated with monetary damages. Thus, Plaintiffs cannot establish Article III standing to seek injunctive relief, much less clear the high bar to obtaining preliminary declaratory relief established in multiple Circuit cases.

Second, Plaintiffs cannot meet their burden of demonstrating a "clear" or "substantial" likelihood of success on the merits, because all of Plaintiffs claims are legally defective. Plaintiff's alleged injuries that are not "fairly traceable" to Defendant Kelly Meggs.

Third, Plaintiffs do not allege with particularity that Defendants deprived their constitutional rights.  Nor can Plaintiffs claim a violation of 42 § 1985 or § 1986, as alleged in Count I or Count II, for reasons to include that Mr. Meggs, the Oath Keepers, (Plaintiffs' allege Mr. Meggs to be an agent of the Oath Keepers), and Roger Stone, (Plaintiffs allege the Oath Keepers and Mr. Meggs provided security for on January 5-6) (ECF 1, ¶ 23), are not State Actors.  Even if Mr. Meggs, or even the Oath Keepers could be considered a state actor, Plaintiffs make no allegation that either Mr. Meggs or the Oath Keepers or even Roger Stone, deprived Plaintiffs of their constitutional rights.

Fourth, Plaintiffs' state based claims, including the assault and battery in Counts III - V, are not legally valid because, among other things, Plaintiffs fail to identify any particular touching or anticipation of touching, much less with specificity, by Defendant Mr. Meggs. Further the Count of Negligence, Count VI, generally and broadly plead, lacks both a specific duty owed by Mr. Meggs to any of the Plaintiffs and causation.

Fifth, Plaintiff's alleged injuries that are not "fairly traceable" to Defendant Kelly Meggs.  The Plaintiffs have not pled allegations of fact of proximate causation.

Sixth, Plaintiffs do not allege with particularity that Defendants deprived them of their constitutional rights.

Seventh, nor can Plaintiffs claim a violation of 42 U.S.C. Sections 1985 or 1986, as alleged in Count I or Count II, for reasons to include that Mr. Meggs, the Oath Keepers, (Plaintiffs' allege Mr. Meggs to be an agent of the Oath Keepers), and Roger Stone, (Plaintiffs allege the Oath Keepers and Mr. Meggs provided security for on January 5-6), are not State Actors.  Even if Mr. Meggs, or even the Oath Keepers could be considered a state actor, Plaintiffs make no allegation that either Mr. Meggs or the Oath Keepers or even Roger Stone, deprived Plaintiffs of their constitutional rights.

Eighth, Plaintiffs' tort based claims, assault and battery in Counts IV and V, are not legally valid because, among other things, Plaintiffs fail to identify any particular touching or anticipation of touching, much less with specificity, by Defendant Mr. Meggs.

Further, Ninth, the Count of Negligence, generally and broadly plead, lacks both a specific duty owed by Mr. Meggs to any of the Plaintiffs and causation.

## II.  STATEMENT OF FACTS

Plaintiffs' Facts are undisputed for purposes of this Motion, and relevant points for background of this Motion are set forth as follows.  LCvR 7(a).

1. Plaintiffs generally allege that "Among other things, Defendants, including Proud Boys and Oath Keepers, raised money for, planned, and recruited co-conspirators to join in Trump's January 6 rally and, ultimately, to join in the Capitol Attack. (ECF 1¶ 6).

2. "Defendants assaulted and injured Plaintiffs and others, and caused millions of dollars of

damage to the Capitol Building and grounds. Through those actions and the actions described in this Complaint, Defendants violated the K[l]u Klux Klan Act, which was designed to prevent precisely the kinds of politically and racially motivated violence they caused and committed on January 6." (ECF 1¶ 10).

3. The only general allegations to "racially motivated violence" are at best, loosely pled against Proud Boys[1], but no such allegations are pled as to Defendant Kelly Meggs, or even the Oath Keepers.  (*See Id.*) (see also ¶¶ 33-37).

4. The Complaint alleges that five of the seven plaintiffs are black, but do not specifically allege that Defendant Meggs assaulted or harmed these Plaintiffs, much less saying anything race-based.  (ECF  1¶ 143-149).

5. The only references to alleged "racism" as against some Defendants in the Complaint appear in more general claims that all or certain "*Defendants* targeted false claims of election fraud at cities and states with significant Black populations- including Atlanta (51% Black), Detroit (78% Black), Milwaukee (39% Black), Philadelphia (43% Black) and Pittsburgh (23% Black).  (ECF 1¶ 4)(see also ¶65 in reference to 'Rudy Guiliani making claims of voter fraud in cities with "large Black populations.").  Further, cities wherein some of the Defendants argued about election integrity, but glaringly absent is any reference to Arizona and election integrity questions there, or the fact that Pittsburg and Philadelphia are not "majority Black cities."  These allegations, of course, are not specific or even attributable to Defendant Kelly Meggs, or even the Oath Keepers.

---

[1] The only attempt at less general race-based allegations appear in more general allegations regarding generalizations about other Trump rallies where Proud Boys Members allegedly attended, but individuals or other specifics are lacking, such as on September 29, 2020 or December 12, 2020 or  (ECF 1, ¶¶ 56, 75).

6. At most the allegations include minimal specific facts, such as Mr. Meggs allegedly posted on social media on December 22, 2020 that the President's rally would be "WILD." (ECF ¶ 86).

7. The Complaint alleges that, *"STONE, a friend and advisor to TRUMP, also worked to promote ad fundraise for the January 6 event, including by coordinating with MEGGS and other members of OATH KEEPERS to provide STONE with Security on January 5 and 6."* (ECF 1 ¶ 80).

8. The Complaint further does allege that, "Oath Keepers intended to be security for Mr. Stone at the rally on January 5-6." 19 (See ECF 1 ¶ 23).

9. Plaintiffs make a loose allegation that MEGGS "told one potential attacker to bring "mace," "gas masks," "batons," and "armor" and advised that person that if they did not have armor to "at last get a plate carrier on Amazon, multi-cam is best." (ECF 1, ¶ 95). As such, the equipment described, assumed only arguendo, also appear consistent with the allegations related to "providing security." *Id.* And as such, the Complaint also makes clear that the protestors were unarmed at the U.S. Capitol on January 6.

10. The Complaint alleges, and it is undisputed, that Kelly Meggs and the Oath Keepers did not have offensive arms at the Capitol, including firearms[2], arson tools, bombs, or even bricks.[3] Plaintiffs otherwise admit firearms were not at the Capitol when they allege that

---

[2] Jill Sanborn testified that the FBI did not confiscate any firearms from the Capitol and that no one got charged for firearms violations. Sen. Ron Johnson (R-WI) questions witnesses during a Senate Homeland Security and Governmental Affairs & Senate Rules and Administration joint hearing to discuss the January 6th attack on the U.S. Capitol on March 3, 2021 in Washington, DC. The Hill, https://youtu.be/AlxsZ-kQ5Ks;

[3] *"Fact check: Construction bricks in Washington D.C. removed on Jan. 6,"* by Reuters Staff,

"could quickly be brought to the Capitol." (ECF 1 ¶ 98).

11. The Complaint makes one reference to a defendant who criminally plead to possessing "magazines" on January 4th, not January 6th, which does not appear specific to the allegations against Defendants herein. (ECF 1¶ 75).

12. The agreements alleged as the basis for Conspiracy are not specific, and do not include any details such time place or manner or who agreed with who to do what or when. (ECF 1 ¶¶ 153-155).

13. There is no allegation that Mr. Meggs ever touched any of the Plaintiffs or ever attempted or threatened to harm any of the Plaintiffs.  (ECF 1 ¶¶184 - 195.)

14. The facts in the Complaint appear to be based primarily in negligence rather than assault, battery or even under the DC biased crimes law, based on an agency relationship with the Oath Keepers.  (ECF 1  ¶¶ 33 and 37, ECF 1 at ¶¶ 164-165).

15. Plaintiffs' claims that Mr. Meggs "breached the Capitol on January 6," (ECF 1¶ 37) but other than that alleged breach, the allegations that Defendants had a common goal are conclusory allegations, insufficient to withstand a motion to dismiss.  (ECF 1 ¶ 83).

16. The Complaint contains a conclusory allegation that Defendants as a group, "intended" to create victims of "Democratic members of Congress, some Republican members of Congress, and Vice President Pence, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"— not Plaintiff police officers. (ECF 1 ¶ 173 (emphasis added).

---

https://www.reuters.com/article/uk-factcheck-construction-bricks-dc-remo/fact-check-construction-bricks-in-washington-d-c-removed-on-jan-6-idUSKBN29B2KM

Mr. Meggs respects the law enforcement officers who – despite being left under-manned by the failures of their leadership – stood their ground and defended Congress and the Capitol, and conveys his best wishes to their health and safety.

## LEGAL ARGUMENT

### A) Standard that the Plaintiffs Must Meet for an Injunction

Plaintiffs are seeking one or more injunctions, which appear undefined.  However, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)(*citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995). "A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiffs favor; and (4) that an injunction is in the public interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992)).

### B) Standard for Defendants' Rule 12(b)(6) Motion to Dismiss

In deciding a FRCP Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiffs favor, accept[ing] as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged."  *Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008) (internal quotations and citations omitted). However, a Rule 12(b)(6) motion to dismiss permits the defendant to test whether the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b) (6) (2008).  "The court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts

set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual

allegations." *Kowal, et al v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994);

*see also Agomo v. Williams*, 2003 D.C. Super. LEXIS 31 (D.C. Super. Ct. 2003); *Alexis v. District*

*of Columbia*, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999).  *Bell Atlantic Corp. v. Twombly*, 127 S.

Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation [is] to provide the grounds of entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of the

cause of action will not do").

Under either standard, however, Plaintiffs have failed to meet the requirements for

preliminary injunctive relief and there is the obvious lack of irreparable injury, as well as the

lack of any articulable claim under R.12(b)(6).

### C) Attenuated, Remote Allegations, Several Steps Removed, Are Not Credible Or Plausible Under *Twombly*

Dismissal is appropriate when a complaint, construed with all well-pleaded facts viewed in

the light most favorable to plaintiffs, *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th

Cir. 2007); *Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 709 (N.D. Tex. 2008), fails

"to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  Given the many attenuated steps between events involving the Plaintiffs and the

obscure, alleged actions against the Defendants, the totality of the allegations and claims are not

credible or plausible under *Bell Atl. Corp. v. Twombly*.  It would be different if the Plaintiffs were

suing those out-of-control people who directly, actually assaulted them.  But instead the

Plaintiffs sue on assumptions about the Defendants remote and many steps removed from any

injuries suffered by the Plaintiffs.  There are too many "hops" and too many open-ended

"maybes," passive voice claims that somebody did something or somebody said something,

which may or may not have been heard by any of the Defendants much less agreed to by any of the Defendants.

Similarly, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) requires that allegations must be more than just "consistent with" liability. A plaintiff must allege facts that show that a defendant *actually is* liable, not that he could *possibly* be liable. *Ashcroft v. Iqbal* teaches that if, after allegations are proven at trial, it is still uncertain if liability does attach, then the allegations are insufficient. The *Iqbal* test is in effect that if the allegations from the Complaint – not adding other evidence not in the Complaint – would leave a fair, unbiased, careful jury unsure at the close of the trial if defendants are liable or not, then the Complaint as filed, at the opening of the lawsuit, is subject to a motion to dismiss for failure to state a claim under FRCP Rule 12(b)(6). If the allegations in the four corners of the Complaint were all proven at trial as pled, but the liability of the defendants would remain unclear without resort to additional facts, then the Complaint fails to state a claim and is subject to dismissal.

Allegations in the passive voice, such as statements by unidentified people, and assumptions (such as that one person made a statement therefore others must have agreed with the statement, even though they might never have heard the statement made) fail to cross the line between possible liability to plausible liability. Allegations that some of the Defendants attended a demonstration and *someone* – unidentified – initiated violence fails to satisfy *Twombly* or *Iqbal* to survive a Rule 12(b)(6) motion to dismiss. Allegations that some unidentified person committed violence, or said something, or did something fail the *Twombly* and *Iqbal* standards.

### D)  Plaintiffs Have Not Demonstrated Irreparable Injury.

Plaintiffs' failure to adequately allege that *they will suffer irreparable harm* as a direct result of Defendant Kelly's alleged action to provide "security for Roger Stone," and his alleged entry into and exit from the Capitol on January 6, 2021, means both that Plaintiffs do not have

Article III standing to seek injunctive relief, and that Plaintiffs have failed to meet the well-established test for obtaining injunctive relief.  (ECF 1, ¶¶ 142-166, ¶ 206).  Plaintiffs generally claim injunctive relief and Declaratory Relief, but fail to state any actual injury they seek to enjoin.  (*See Id*.)

### E)  Plaintiffs Lack Constitutional Standing to Seek Injunctive Relief.

Plaintiffs do not allege any future impact to justify injunctive relief, which is fatal to Plaintiffs' standing to seek injunctive relief.[4] "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  "[T]o satisfy Article Ill's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); (see also, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992)).

"[A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted).  The court further explained that '[t]here must be some connection between the plaintiff and the defendant that "[]differentiate[s]" the plaintiff so that his injury is not "common to all members of the public."' *Id*. at 654-655 (*citing United States v.*

---

[4] Plaintiffs apparently believe that they can sue for everyone in the Capitol, even in America who opposed what happened on January 6th - asserting third-party claims requires a "close relationship with the absent third parties" who must have standing in their own right. *Kowalski v. Tesmer,* 543 U.S. 125 (2004).

*Richardson*, 418 U.S. 166, 177, 94 S. Ct. 2940, 41 L. Ed. 2d 678 (1974) (*quoting Ex parte Levitt*, 302 U.S. 633, 634, 58 S. Ct. 1, 82 L. Ed. 493 (1937)).

‘A person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210, 210 L. Ed. 2d 568, 590-591, (2021) (*citing Clapper v. Amnesty Int'l USA, 568 U. S. 398,* at 414, n. 5, *133 S. Ct. 1138, 185 L. Ed. 2d 264*; *Los Angeles v. Lyons*, 461 U. S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *see also Gubala v. Time Warner Cable, Inc., 846 F. 3d 909, 912 (CA7 2017).* ‘Even apart from that fundamental problem with their argument based on the risk of future harm, the plaintiffs did not factually establish a *sufficient risk of future harm* to support Article III standing.’ *TransUnion LLC*, 141 S. Ct. at 2211-2212 (emphasis added).  The Court further set forth that, ‘a plaintiff must “demonstrate standing separately for each form of relief sought.” *Id*. (*citing Friends of the Earth*, 528 U. S. at 185.)(see also, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (“standing is not dispensed in gross,”);

Further, Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions.’ *LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75 L.Ed. 2nd 675, 684, (1983)(*citing Baker v. Carr*, 369 U.S. 186, 204 (1962)(emphasis added)).

The Plaintiffs herein have plead no constitutional questions, much less imminent harm from future conduct.  (See ECF 1, generally). In addition, the standing doctrine also includes prudential elements, including a general rule that those seeking to assert absent third parties’ rights to have their own Article III standing and a close relationship with the absent third parties.

*Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004)5.

In *LA v. Lyons,* the Court further explained a precedential holding to explain how one cannot rely on past injuries, *O'Shea v. Littleton*, 414 U.S. 488 (1974), in which the Court addressed "a case brought by a class of plaintiffs claiming that they had been subjected to discriminatory enforcement of the criminal law."  *Id.* at 102 (*citing Id.*).

> Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." But the prospect of future injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." … We could not find a case or controversy in those circumstances: the threat to the plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses. . . .

*Lyons*, 461 U . S . at 102-103 (*internal citations omitted.*)

The Supreme Court has held that a plaintiff cannot allege irreparable harm by asserting its constitutional rights were violated in the past.  *See Id.*  In *Lyons,* the Supreme Court held that the plaintiff, who alleged that a police officer placed him in an illegal chokehold in violation of his substantive due process rights under the Fourteenth Amendment,  did not have standing to seek an injunction preventing police officers from using chokeholds in the future because he did not allege facts showing "any real or immediate threat" that he would be subjected to an illegal chokehold again and, thus, no likelihood of "irreparable injury." 461 U.S. at 111.

Plaintiffs' conclusory allegations of past harm fails as a matter of law.  Plaintiffs'

---

[5] Meggs is alleged to have been acting as an agent of the Oath Keepers, Mr. Meggs and the Oath Keepers could not conspire together, as a matter of law. S*ee Legal Aid Society v. Ass'n of Legal Aid Attorneys*, 554 F. Supp. 758, 766–67 (S.D.N.Y. 1982) (*the actions of an agent are attributed to the principal, and so the agent and principal cannot form a conspiracy between "two or more persons"*).

allegations do not constitute a redressable injury in fact – nor a Constitutional deprivation.  These allegations also fail to satisfy the "causation" and "redressability" prongs of the Article III standing inquiry.  *See DaimlerChrysler Corp. v. Cuna*, 547 U.S. 332,346 (2006) ("[A] party seeking federal jurisdiction cannot rely on speculative inferences to connect his injury to the challenged actions of the defendant." (internal quotation marks and alterations omitted)).  *Bond v. United States*, 564 U.S. 211, 222-23 (2011)(One who seeks to initiate or continue proceedings in federal court must demonstrate, among other requirements, both standing to obtain the relief requested, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), and, in addition, an "ongoing interest in the dispute" on the part of the opposing party that is sufficient to establish "concrete adverseness." *Camreta v. Greene*, 563 U.S. 692, 701, 131 S. Ct. 2020, 179 L. Ed. 2d 1118, 1125 (2011) (internal quotation marks omitted)).

Without a showing of irreparable harm, Plaintiffs' request for a preliminary injunction should  be denied as a matter of law.

### F)  Plaintiffs' Claims Are Meritless.

Even if Plaintiffs had standing under irreparable injury to pursue their claims (which they do not), or had sufficiently pled the irreparable injury required to support a preliminary injunction (which they have not), the Complaint fails because Plaintiffs plainly cannot demonstrate a "clear" or "substantial" likelihood of success on the merits of their claims for injunctive relief, and fail to claim of federal tort claim. Indeed, its claims are clearly deficient in all respects.

### G)  Plaintiffs Fail to State a Legal Predicate for 42 U.S.C. § 1985

Nowhere in the Complaint does it suggest that Mr. Meggs, or anyone he is alleged to be

"close to," are State Actors.  Further, the agreements alleged are not specific as to who agreed with who to do what exactly.  (ECF 1, ¶ ¶ 153-155).   And Plaintiffs suggestion that election integrity concerns were raised in cities with a higher percentage of Black residents compared to a city with a lower percentage is insufficient as a matter of law to support Plaintiff's claim of an invidious intention to discriminate. *See Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986) ("[T]here is a requirement that there be a mens rea present, i.e., that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the mens rea requirement necessary to show irrational or invidious class discrimination."). Furthermore, the fact that some individuals within the group may have protected characteristics, such as race, does not transform the group itself into a protected class. *See Jews for Jesus, Inc.* v. *Jewish Cmty. Relations  Council  of NY., Inc.,* 968 F.2d  286,292  (2d Cir.  1992)(a "racially diverse society ... cannot, by definition, constitute a racial class").  "The plaintiffs do not allege that the defendants were motivated by a class-based, invidiously discriminatory animus. … In the absence of pleading this essential element, the plaintiffs' allegations are insufficient to state a valid Section 1985 claim.   *Kelley v. District of Columbia, 893 F. Supp. 2d 115, 121, (D.D.C. 2012)(internal citations omitted).*

Because Mr. Meggs is alleged to have been acting as an agent of the Oath Keepers, Mr. Meggs and the Oath Keepers could not conspire together.  *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 119-120, (D.D.C. 2012) (*citing Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)(The United States District Court in D.C. applied the "intracorporate conspiracy doctrine.")[6].

---

[6] We know from the Government that there were no incriminating signal chats prior to January 6th.

Under 42 U.S.C. § 1985, only the third clause (3) has been recognized as protecting the constitutional rights of "equal protection of the laws" and "equal privileges and immunities under the laws" against private conspiracies in limited contexts. *Griffin v. Breckenridge*, 403 U.S. 88, 101-102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348, (1971). But we observed that the section does not expressly refer to the Fourteenth Amendment and that "The broader scope of § 1985(3) became even more apparent when we [in Griffin] explained that the conspiracy at issue was actionable because it was aimed at depriving the plaintiffs of rights protected by the Thirteenth Amendment and the right to travel guaranteed by the Federal Constitution." *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 832, 103 S. Ct. 3352, 3358, 77 L. Ed. 2d 1049, 1056-1057, 1983.

However, Plaintiffs brought a claim under the first clause, which, as a preliminary matter is limited to constitutional violations by state actors.

> (1) Preventing officer from performing duties. If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat*, any person from accepting or holding any office,* trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any

---

Counsel,

Attached please find a draft transcription of an excerpt of messages obtained from a chat in the Signal encrypted messaging application called "OK FL DC OP Jan 6." This is a draft, and some of the times and content are subject to further editing. The names of several of the participants have been redacted. We are disclosing these messages to you because you will see that, prior to January 6, 2021, this chat does not contain any explicit references to a plan to forcibly enter the U.S. Capitol on January 6, 2021, and also because the government may reference some of the messages in response to Defendant Harrelson's bond review motion. This document should be treated as SENSITIVE under the protective order.

Please let us know if you have any questions.

Jeff Nestler

**Jeffrey S. Nestler**
Assistant United States Attorney
555 Fourth Street NW, Wasington, DC 20530

(See DDC, 1:21-cr-00028-APM ECF 485, at ¶ 75).

officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

42 USCS § 1985 (1)

In *Stern v. United States Gypsum, Inc.* the Court explained clause (1) of 42 U.S.C. §1985, and stated, the irony of which is not lost here on the core of the claim relates to "protesters" at Congress, and, as such the First Amendment cannot be avoided[7]. 'The public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionally protected free speech area.  S*tern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342-1343, (1977) (*citing Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)).   The Court went on to explain that that, "Construction of § 1985(1) to apply a federal

---

[7] The Supreme Court has repeatedly extended First Amendment protection to statements that, in context, do not reasonably state or imply defamatory falsehoods in the requisite sense. In *Greenbelt*, 398 U.S. at 13-15, the Court concluded that use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably be understood to mean the plaintiff had committed a criminal offense…

> And in *Hustler Magazine*, 485 U.S. at 50, the Court held that an ad parody depicting the Rev. Jerry Falwell in an incestuous relationship with his mother could not support an emotional distress claim because the offending speech "could not reasonably have been interpreted as stating actual facts about the public figure involved." So instructed, this court held in *Weyrich*, 235 F.3d at 624-25, that a political magazine's statement that a conservative leader "began to suffer bouts of pessimism and paranoia" following his successful rise to power was not actionable because, in context, the description was merely "rhetorical sophistry, not a verifiably false attribution in fact of a 'debilitating  mental condition'" as the plaintiff had contended.

*Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013).

damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *Id. at* 134.

> "…Any injuries to Stern from appellants' alleged conspiracy resulted from the overt acts of communicating or causing to be communicated complaints about Stern's performance of his official duties to his IRS superiors. We have previously expressed our agreement with appellants that the evils addressed by the Forty-Second Congress in enacting the Act of April 20, 1871, were of a meaningfully different nature, and that there is no indication any member of that Congress ever contemplated the application of what is now § 1985(1) to such facts as Stern's complaint alleges…

> *Id*. at 1342.

Therefore, the Court in *Stern* ultimately held, "Because the count of [Plaintiff]'s complaint drawn under § 1985(1) states no actionable federal claim and no other basis for federal jurisdiction exists, the order of the district court is reversed, and this case is remanded to the district court with direction to dismiss the complaint."   547 F.2d 1329, 1346, (7th Cir. 1977) (further citations omitted).

The Supreme Court later in *Bray v. Alexandria Women's Health Clinic*, as in *Carpenters*[8], as in *Morrison*[9], repeatedly held that the federal tort actions against private individuals fail, *"[a]s we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals,*[10]*"* which was the predicate to the holding in *Stern v.*

---

[8] *United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983).*

[9] *United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d 658, 678, (2000).

[10] *"As we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' Williams I, 341 U.S., at 92 (opinion of Douglas, J.)" United States v. Price, 383 U.S. 787, 799 (1966).*

*United States Gypsum*.

"Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *United States Gypsum, Inc*., 547 F.2d at 1343 (*citing United Mine Workers, supra,* at 222; *Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960)).

Private actors cannot violate, and thus cannot conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights.

> *"It is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause 'does not . . . add anything to the rights which one citizen has under the Constitution against another.'* United States v. Cruikshank*, 92 U.S. 542, 554-555. As Mr. JUSTICE DOUGLAS more recently put it, 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' United States v. Williams, 341 U.S. 70, 92  (dissenting opinion). This has been the view of the Court from the beginning. United States v. Cruikshank, supra; United States v. Harris, 106 U.S. 629;  Civil Rights Cases, 109 U.S. 3; Hodges v. United States, 203 U.S. 1; United States v. Powell, 212 U.S. 564. It remains the Court's view today. See, e. g., Evans v. Newton, 382 U.S. 296;  [\*832]  United States v. Price, post, p. 787." United States v. Guest, 383 U.S. 745, 755 (1966).*
> *The opinion for the Court by Justice Fortas in the companion case characterized the Fourteenth Amendment rights in the same way.*
> *Id.*

In addressing such conspiracies under 1985(3), the Supreme Court explained, "[t]he

---

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983).*

Court of Appeals accordingly erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment. *United Bhd. of Carpenters & Joiners, Local 610, 463 U.S. 831-832.*

In *Bray*, the Supreme Court held that Fourth and Fourteenth Amendment rights cannot be privately impaired. And "[a]s JUSTICE BLACKMUN has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action." 506 U.S. 263, 278 (1993). The *Bray* Court further held and explained the fundamental predicate to its holding, "[t]respassing upon private property is unlawful in all States, as is, in many States and localities, intentionally obstructing the entrance to private premises. These offenses may be prosecuted criminally under state law, and may also be the basis for state civil damages. They do not, however, give rise to a federal cause of action simply because their objective is to prevent the performance of abortions, any more than they do so (as we have held) when their objective is to stifle free speech." *Bray*, 506 U.S. at 286.

> "…Foremost among these limitations is the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action. The principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."

*United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d 658, 678, (2000) (*citing Shelley v. Kraemer*, 334 U.S. 1, 13, 92 L. Ed. 1161, 68 S. Ct. 836, and n. 12 (1948)).

Similarly, the Supreme Court further upheld the unconstitutional infringement of intruding upon a state's criminal jurisdiction when it found that the federal act, *the Chemical Weapons Convention Implementation Act* could not apply to a local crime. *See Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1, (2014) (emphasis added).

### H)  The Remaining Counts Fail to State a Claim as Matter of Law
### When 42 U.S.C. §1985 Fails, then a claim for 42 U.S.C. §1986 Fails.

Plaintiffs claim generally that Defendants each "[knew] that the wrongs conspired to be done and mentioned in section 1985 are about to be committed, has the power to prevent or aid in preventing these wrongs, and yet neglects or refuses to help them."  (ECF 1, ¶ 158-166).

However, it is "[b]ecause [Plaintiff] does not have a valid § 1985 claim, he does not have a valid § 1986 claim.  This court has held that a valid § 1985 claim is a prerequisite to a § 1986 claim." *Von Drake v. St Paul Travelers Ins. Co*., 353 Fed. Appx. 901, 905, (5th Cir. 2009) (citing *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

And there are no specific allegations show Mr. Meggs failed to help when the allegations show he is not charged with any violence, and, in fact, went to the aid of other officers in the Capitol.  Although currently, all facts as alleged by Plaintiff for purposes of the motion are assumed arguendo, only by way of background Mr. Meggs along with Mr. Kenneth Harrelson, and other Oath Keepers, inserted themselves as a buffer between the opposing points of force to protect a Capitol Police Officer.  (Notice the line, and notice their backs to Officer Dunn).[42]



## I) Plaintiffs Fail to Adequately Plead Assault and Battery and DC Hate Crimes Act

"The defendants are correct that [Defendant's] presence at the shooting, without more, cannot render him liable for assault and battery." *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 107, (D.D.C. 2011) (*citing Chen v. District of Columbia*, 808 F. Supp. 2d 252, (D.D.C. 2011) (granting summary judgment for defendant on assault and battery claim because "there is no evidence in the record before the Court that [the defendant] ever touched [the plaintiff] or caused her to be touched" nor that the defendant "ever attempted or threatened to harm [the plaintiff] physically"); *(Halberstam v. Welch*, 705 F.2d at 481).

> A defendant may be held liable for assault against another if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." A defendant may be held liable for battery if the above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results."

*Rude v. Adeboyeku*, 552 F. Supp. 2d 32, 35, (D.D.C. 2008)(*citing Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (*quoting* Restatement (Second) of Torts § 21 (1979)) (interpreting District of Columbia law)(*quoting* Restatement (Second) of Torts § 18 (1979)) (interpreting District of Columbia law).

Plaintiffs have not adequately plead a claim for assault and battery against Mr. Meggs, as there is no allegation that Mr. Meggs ever touched any of the Plaintiffs or "ever attempted or threatened to harm any of the Plaintiffs. (ECF 1 ¶¶184, 195.) Instead the claims appear to be based on an agency relationship with the Oath Keepers. (ECF 1 ¶¶ 33 and 37)[11].

---

[11] Plaintiffs make a claim for punitive damages, which in DC are available based on intentional torts, but Plaintiffs have not plead anywhere close to the factual predicate necessary as to Mr. Meggs' alleged

Further, the conspiracy claim fails because Plaintiffs' claims that Mr. Meggs "breached the Capitol on January 6" and that Defendants had a common goal are conclusory allegations, insufficient to withstand a motion to dismiss.  (ECF 1¶ 37).

To establish the existence of an agreement, the "plaintiff must set forth more than just conclusory allegations of [the] agreement." A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss. " *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement"); *see also Estate of Phillips v. District of Columbia*, 257 F. Supp.2d 69, 83 (D.D.C. 2003) (dismissing claim where plaintiffs failed to specify that defendants how the defendants "acted in concert"); *Davey v. Tomlinson*, 627 F. Supp. 1458, 1462 (E.D. Mich. 1986) (dismissing claim where plaintiff made no allegations of specific acts or the means by which defendants were alleged to have conspired, other than arguing "in conclusory fashion that defendants conspired to deprive him of his constitutional rights").  *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004); see also *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51-52, (D.D.C. 2019).

While Plaintiffs allege the existence of  an agreement, they provide no facts to support its existence.   The Complaint explicitly alleges that "The intended victims of Defendants' were

---

conduct.  (See ECF 1, generally). In the District of Columbia, '…Such malice is shown by commission of a tortious act "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right[s], or other circumstances tending to aggravate the injury."' *Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, *33 (*citing Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). (*quoting Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation mark omitted).

Democratic members of Congress, some Republican members of Congress, and Vice President Pence, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"— not Plaintiff police officers. (ECF 1¶ 173(emphasis added)).

Further, Plaintiffs have not plead a predicate "designated act" as required under the D.C. Hate Crimes Act.  "Under the hate crime statute, Plaintiffs must be the victim of a "designated act" perpetrated by Defendants. D.C. Code § 22-3704(a).  The D.C. Code defines "designated act" broadly as "a criminal act, including arson, assault, burglary, injury to property, kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry, and attempting, aiding, abetting, advising, inciting, conniving, or conspiring to commit arson, assault, burglary, injury to property, kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry." D.C. Code § 22-3701(2)(*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 56, D.D.C. 2019).

Nevertheless, the facts Plaintiffs rely on are based in principles in negligence including "agency" and "vicarious liability" as the predicate action where Mr. Meggs is actually referenced. (See ECF 1, at par. 164-165).  The Complaint explicitly alleges that Defendants, as a group, "intended" to create victims of "Democratic members of Congress, some Republican members of Congress, and Vice President Pence, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"— not Plaintiff police officers. (ECF 1 ¶ 173 (emphasis added)).

Plaintiffs also makes a claim for punitive damages, which in DC, are available based on intentional torts, but Plaintiffs have not plead anywhere close to the factual predicate necessary as to Mr. Meggs' alleged conduct for punitive damages.  (See ECF 1, generally). In the District of Columbia, '…Such malice is shown by commission of a tortious act "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right[s], or other

circumstances tending to aggravate the injury."' *Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, \*33 (*citing Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). (*quoting Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation mark omitted).  As such, the unfounded claim for punitive damages should also be dismissed for failure to state a claim.

## CONCLUSION

The case fails to show irreparable injury, or a likelihood of success, and Plaintiffs certainly do not allege their claims with particularity, or that Mr. Meggs was a state actor, or that Mr. Meggs or the Oath Keepers deprived Plaintiffs of constitutional rights recognized under 42 § 1985 (1) or § 1986.  Plaintiffs fail to support the "conspiracy" with any specific plan.  There are no specific facts related to touching or approaching these Plaintiffs, and a lack of any facts to support a hate crime.

For all of the foregoing reasons, any despite any sympathy this Defendant feels for the Plaintiffs, it is respectfully requested, that the Complaint be Dismissed.

          */s/* Juli Z. Haller
Juli Z. Haller
D.C. Bar No.466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.,
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Kelly Meggs*

Dated: November 12, 2021