**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

CONRAD SMITH, *et al.*,

    Plaintiffs,

        v.

DONALD J. TRUMP, *et al.*,

    Defendants.

---

Civil Action No. 1:21-CV-02265-APM

---

## <u>PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO SERVE DEFENDANTS ALEXANDER, HOSTETTER, AND RHODES</u>

Plaintiffs respectfully move the Court for an extension of time to serve Defendants Alexander, Hostetter, and Rhodes. Despite diligent effort and multiple service attempts on each of those defendants, Plaintiffs have not yet been able to effect service on those Defendants under Rule 4. Plaintiffs' diligence in attempting to serve those defendants, however, and the difficulty in reaching them, provide good cause for an extension of the time period for service under Rule 4(m). Therefore, pursuant to Rule 6(b), Plaintiffs ask that the Court extend the time for service of Defendants Alexander, Hostetter, and Rhodes by 90 days.

## <u>LEGAL AUTHORITY</u>

Rule 4(m) affords 90 days after the filing of a complaint to complete service of process. Fed. R. Civ. P. 4(m). The Rule provides that a court must extend that time period, however, if a plaintiff shows good cause for its failure to serve a defendant. *Id.* "Good cause exists 'when some outside factor . . . rather than inadvertence or negligence, prevented service.'" *Arora v. Buckhead Fam. Dentistry, Inc.*, 263 F. Supp. 3d 121, 131 (D.D.C. 2017) (quoting *Mann v.*

*Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012)). "Good cause arises when 'a plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances.'" *Jewell v. BestBus Co.*, 319 F. Supp. 3d 323, 325 (D.D.C. 2018) (quoting *Raynor v. District of Columbia*, 296 F.Supp.3d 66, 72 (D.D.C. 2017)). Even in the absence of good cause, a court may exercise its discretion to extend the time period for service. *See* Fed. R. Civ. P. 4(m) & advisory committee note on 1993 amendment (Subdivision (m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown."); *Arora*, 263 F. Supp. 3d at 131. In exercising such discretion, courts consider equitable factors such as the plaintiff's good faith in attempting service; the time since the filing of the complaint; harm that would result from a dismissal, as when a statute of limitations has run; any prejudice to a defendant; and a defendant's actual knowledge of the suit. *See Rogers v. Amalgamated Transit Union Local, 689*, 98 F.Supp.3d 1, 7 (D.D.C. 2015).

Plaintiffs filed their Complaint on August 26, 2021. *See* ECF 1 (Complaint). As such, Rule 4(m)'s 90-day service period runs through November 24, 2021. Over the last 90 days, Plaintiffs have diligently served process on, or obtained waivers of service for, 22 of the 25 named Defendants in this case, at considerable cost and effort. During this time, Plaintiffs also have persistently endeavored to effect service on Defendants Alexander, Hostetter, and Rhodes—the only three remaining Defendants, out of 25, remaining to be served. These efforts, as set out below, demonstrate good cause warranting extension of the service period under Rule 4(m). Plaintiffs respectfully submit that they have shown, and continue to show, considerable diligence in their efforts to serve Defendants Alexander, Hostetter, and Rhodes, and that their inability to effect service thus far is due to "outside factor[s] . . . rather than inadvertence or negligence" on the part of Plaintiffs. *Arora*, 263 F. Supp. 3d at 131.

I.       **Plaintiffs' Efforts to Serve Defendant Ali Alexander, a/k/a Ali Abdul Razaq Akbar, Establish Good Cause for an Extension of Time to Effect Service.**

Plaintiffs have made numerous efforts to serve process on Defendant Alexander personally, by certified mail, and through his associate, Baron Coleman.

*Personal Service*

Plaintiffs conducted extensive research and retained a licensed private investigations firm to determine Defendant Alexander's whereabouts so that he could be served process. *See* Ex. 1, Caspar Declaration, ¶ 2. Plaintiffs' counsel and the investigations firm reviewed multiple public records databases, publicly available information online, Defendant Alexander's social media activity, and news reports. *Id.* ¶ 3. Based on this research, the investigators identified a residence on Pinellas Avenue in Fort Worth, Texas, at which Defendant Alexander has resided since 2018. *Id.* ¶ 4. From September 17 through November 19, 2021, private process servers retained by Plaintiffs attempted personal service at the Pinellas Avenue address ten times: twice on September 17 (at 3:00 pm and 6:30 pm), and once each on September 21 (at 12:22 pm), 27 (at 1:30), and 30 (at 7:05 pm); October 2 (at 7:15 am) and 5 (at 10:00 am); and November 17 (at 7:20 pm), 18 (at 8:05 am), and 19 (at 1:45 pm). *Id.* ¶ 12; Ex. 2, King Affidavit, at 1; Ex. 3, Troutz Affidavit. No one answered the door during any of the service attempts. Ex. 2, King Affidavit, at 1; Ex. 3. On the second occasion, the process server observed a package on the front porch addressed to Defendant Alexander. Ex. 2, King Affidavit, at 1. The process server also observed a car with Texas plates that was present on the first three occasions and on November 19, but absent during the other attempts at service. Ex. 2, at 1; Ex. 3. The Plaintiffs' private investigation firm confirmed through a search of a public records database that the car was registered to Defendant Alexander as of December 2020. Ex. 1, Caspar Declaration, ¶ 8.

3

**Service by Certified Mail**

Plaintiffs also attempted to serve Defendant Alexander by certified mail. Rule 4 permits service by means authorized by state law in the state where service is made. *See* Fed. R. Civ. P. 4(e)(1). Texas law permits service in person or by certified mail. *See* Tex. R. Civ. P. 106(a)(1) & (2). Texas law provides, however, that proof of service by certified mail must include the return receipt "with the addressee's signature." Tex. R. Civ. P. 107(c). Courts in Texas have held that a return receipt signed by someone other than the defendant renders service of process defective. *See Hennington v. United Parcel Serv., Inc.*, No. 4:18-cv-00520, 2018 WL 6267768, at *2 (S.D. Tex. Nov. 30, 2018); *Bronze & Beautiful, Inc. v. Mahone*, 750 S.W.2d 28, 29 (Tex. App. 1988). Plaintiffs' private process servers mailed all required service documents to Defendant Alexander at the Pinellas Avenue address on October 8, 2021, via U.S. Postal Service Certified Mail, Return Receipt Requested. *See* Ex. 1, ¶ 12; Ex. 4, October 19 Short Affidavit, at 1. The mail was delivered on October 12, 2021, but the return receipt bears the words "Rt 49 GA" and "COVID;" it does not include Defendant Alexander's name or signature. Ex. 4, at 2.

**Additional Attempts to Facilitate Service**

Plaintiffs' counsel also attempted to facilitate service in communications with Baron Coleman, the registered agent for Defendant Alexander's enterprise, Stop the Steal, LLC, also a defendant in this case. On November 17, 2021, Mr. Coleman emailed counsel for Plaintiffs, notifying him that Mr. Alexander had an upcoming deposition before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, and asking, "May we have until Dec 16 to respond to your complaint, so we can focus on the deposition at this time?" Ex. 1, Caspar Declaration ¶ 14 & Ex. B. Counsel for Plaintiffs spoke with Mr. Coleman on the phone to ask whether he represented Defendant Alexander or Defendant Stop the Steal,

4

LLC, in this case. *Id.* ¶ 15. Mr. Coleman indicated that he did not represent either defendant, but was just assisting Defendant Alexander. *Id.* Counsel for Plaintiffs stated that Defendant Alexander had not yet been served with process, but suggested that Defendant Alexander could waive service of process, which would afford him 60 days to respond to the Complaint. *Id.* Counsel for Plaintiffs asked Mr. Coleman if he would share Defendant Alexander's address, so that Plaintiffs could mail him the Rule 4 waiver form. *Id.* Mr. Coleman declined to share the address, but indicated that he would forward the waiver form to Defendant Alexander by email, if Plaintiffs' counsel would email Mr. Coleman the waiver request. *Id.* Plaintiffs' counsel emailed the waiver request to Mr. Coleman as suggested, and also mailed the waiver request to the Pinellas Avenue address, per the service waiver provisions of Rule 4(d). *Id.*

On November 22, 2021, Mr. Coleman emailed Plaintiffs' counsel: "I spoke with Ali [Alexander], and I will accept service on behalf of Ali personally in exchange for a 60-day extension to answer for STS and Ali, in accordance with our agreement.  Please confirm this is acceptable." *Id.* ¶ 16 & Ex. B. Plaintiffs' counsel responded by email on November 23, explaining that the proposal was not acceptable, and indicating that, because Mr. Coleman did not represent Defendant Alexander as legal counsel in this case, Defendant Alexander would have to sign the service waiver form himself. *Id.* ¶ 17 & Ex. B. Alternatively, Plaintiffs' counsel suggested that, if Defendant Alexander would prefer to be served personally, and he would make himself available to process servers by November 25, Plaintiffs would arrange to serve him and agree to the 60 days he requests to respond to the Complaint. *Id.*

Mr. Coleman responded on November 23, emailing a waiver form with Defendant Alexander's typed name, an illegible signature, and no information for Mr. Alexander's address, email, or phone number, as required by the form. *Id.* ¶ 18 & Ex. C. Plaintiffs' counsel responded

by email that same day, asking for Defendant Alexander to complete the form and, since Mr.

Coleman did not represent Defendant Alexander in this matter, to speak with Defendant

Alexander to confirm his intention to waive service. *Id.* ¶ 19 & Ex. C. Mr. Coleman responded

on November 24, 2021, confirming that he does not represent Defendant Alexander in this

matter, refusing to complete the waiver form with Defendant Alexander's contact information,

and "instructing" Plaintiffs' counsel not to attempt to contact Defendant Alexander. *Id.*

Plaintiffs' counsel replied that same day, explaining that, because Mr. Coleman does not

represent Defendant Alexander in this matter, Plaintiffs' counsel could not accept his

representation that Defendant Alexander intended to waive service, and advising that Plaintiffs

would need to continue their attempts to serve Defendant Alexander, and counsel may need to

contact him to facilitate that service. *Id.* Mr. Coleman responded that same day asking whether it

would help if he copied the attorney who represents Defendant Alexander in this matter, and

Plaintiffs replied that it would be helpful if Mr. Coleman could put me in touch with that

attorney. *Id.* At the time of the filing of this Motion, there has been no further correspondence

with Mr. Coleman, Defendant Alexander, or any counsel for Defendant Alexander. *Id.*

Plaintiffs' ten good faith attempts at personal service by professional process servers,

supported by Plaintiffs' careful inquiry into the address of Defendant Alexander, both by a

professional review of public records databases and the observation at his address of a package

addressed to him and a car registered to him, demonstrate good cause warranting extension of the

service period. In *Jewell v. BestBus Co.*, 319 F. Supp. 3d 323 (D.D.C. 2018), this Court found

good cause requiring an extension of the service period based on the plaintiff's "careful inquiry"

into the address of the defendant and his five unsuccessful attempts at personal service there. *Id.*

at 325-26. Likewise, in *French v. Business Exchange Investments, Inc.*, No. 03-cv-1349, 2005

WL 357281 (D. Or. 2005), the district court found good cause where, as here, the plaintiff had "devoted considerable effort in prosecuting this lawsuit and locating defendants." *Id.* at *7. The plaintiff in *French* had employed two process servers in two different states who attempted both personal service and service by mail, and had conducted public records research in an effort to locate defendants. *Id.*

Additionally, Mr. Coleman's refusal to confirm the address of Defendant Alexander, with whom Mr. Coleman professed to be in communication, and his confusing efforts to negotiate an extension of time for Defendant Alexander to respond to the Complaint and to complete a Rule 4 waiver form for Defendant Alexander, all while maintaining that he did not represent Defendant Alexander in this matter, constitute the kind of "mitigating circumstances" that obstruct service and support a finding of good cause. *See id.* at 326 (holding that statement by defendant's registered agent and CEO that the defendant was not known at the agent's address where service was being attempted was "at least an understandable mitigating circumstance, if not a deliberate effort at, preventing effectuation of service"); *Raynor v. District of Columbia*, 296 F. Supp. 3d 66, 73 (D.D.C. 2017) (finding good cause based on plaintiffs' two unsuccessful attempts at service followed, confusingly, by appearance of counsel on un-served defendant's behalf); *Johnson v. Skolski*, 2007 WL 141961, at *4 (E.D. Mich. 2007) (finding good cause for extension of service deadline where service had been delayed because defendant's employer had refused to provide plaintiff with defendant's address, and the address was not readily discoverable elsewhere). Additionally, Defendant Alexander's apparent knowledge of the complaint, as confirmed by his enterprise's registered agent, Mr. Coleman, supports good cause warranting extension of the service period. *See Selman v. American Sports Underwriters, Inc.*, 697 F. Supp.

225 (W.D. Va. 1988) (finding good cause for extension based on plaintiffs' repeated, good faith efforts at service, coupled with defendant's actual notice of the complaint).

Plaintiffs' difficulty in accomplishing service by certified mail also supports a finding of good cause under Rule 4(m). Plaintiffs supplemented their personal service attempts with an attempted service via certified mail, but the recipient did not sign their name, rendering service incomplete under Texas law. *See Hennington*, 2018 WL 6267768, at *2. Plaintiffs' attempt, however, further demonstrates their diligence in attempting to serve Defendant Alexander and that circumstances outside of their control thwarted service. *See Boles v. Lewis*, No. 1:07-cv-277, 2008 WL 151279, at *1-2 (W.D. Mich. Jan. 14, 2008) (finding good cause for extension where state law permits service by certified mail, complete upon receipt confirmation, and mail carrier failed to ensure that the defendant addressee signed the receipt confirmation); *D'Amario v. Russo*, 750 F. Supp. 560, 563 (D.R.I. 1990) (finding good cause where Plaintiff had made diligent efforts to effect service before the deadline by sending a waiver request by first class mail, hiring a constable who attempted unsuccessfully to serve the defendants on numerous occasions, and employing private process servers one year later, who succeeded in serving the defendants).

Finally, the circumstances noted above suggest that Defendant Alexander is evading service. The research of Plaintiffs' investigators, the car at his address that was registered to him, and the package observed on his porch addressed to him all indicate that the process servers are attempting to serve Defendant at his residence, yet no one once answered the door during any of the ten attempts at various times of day over the course of three months. Process servers also observed that on several occasions Defendant Alexander's car was in the driveway and that a security camera had been installed on the front porch sometime after the second service attempt.

8

Mr. Coleman's evasiveness when asked to confirm Defendant Alexander's address, and his refusal to provide contact information for Defendant Alexander, also supports a conclusion that Defendant Alexander is evading service. A defendant's evasion of service demonstrates good cause for a plaintiffs' failure to timely effect service under Rule 4(m). *See D'Amario*, 750 F. Supp. at 563 (concluding that the professional process server's inability to serve defendants on multiple occasions suggested that the defendants were evading service, which supported extension of time to complete service); *United States v. Tobins*, 483 F. Supp. 2d 68, 79 (D. Mass. 2007) (concluding that defendant's apparent evasion of service supported showing of good cause requiring extension of time for service); Fed. R. Civ. P. 4, advisory committee note on 1993 amendment (noting that "[r]elief may be justified" under Rule 4(m) "if the defendant is evading service"); 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th ed.) (noting that instances in which the defendant purposely evades service "provide strong arguments for granting good-cause extensions of the period for service . . . . The purpose of Rule 4(m) is to prod the slow-footed plaintiff, not to reward the crafty or evasive defendant.") "[T]he rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *Ali v. Mid–Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 35-36 (D.D.C. 2006) (quoting *TRW, Inc., v. Derbyshire*, 157 F.R.D. 59, 60 (D. Colo. 1994)).

## II.   Plaintiffs' Efforts to Serve Defendant Hostetter Establish Good Cause for an Extension of Time to Effect Service.

Plaintiffs have made numerous attempts to serve Defendant Hostetter, both personally and by certified mail, as permitted by the applicable state law.

*Personal Service*

As with Defendant Alexander, Plaintiffs have conducted extensive research and retained a licensed private investigation firm to conduct research to determine Defendant Hostetter's whereabouts in order to effect service of process. Ex. 1, Caspar Declaration, ¶¶ 2-3. The investigations firm reviewed multiple public records databases, publicly available information online, and news reports. *Id.* ¶ 3. Based on their research, the investigators identified two residential addresses for Defendant Hostetter, both in San Clemente, California: the most likely address, based on recent public records reports, on Monterey Lane, and an earlier address on Coronado Lane. *Id.* ¶ 4.

From September 22 through November 20, 2021, private process servers retained by Plaintiffs attempted to serve Defendant Hostetter in person at the San Clemente residences 18 times at various times of day. *See id.*, ¶ 12; Ex. 5, November 9 Canas Affidavit, at 1-2; Ex. 6, November 22 Canas Affidavit, at 1. They attempted personal service at the Monterey Lane address on September 22 (at 8:00 pm), 23 (at 7:55 am), 24 (at 6:31 pm), 25 (at 11:38 am), 27 (at 6:55 am), 28 (at 2:23 pm), 29 (at 7:28 pm), and 30 (at 8:42 am); on October 1 (at 7:00 am), 3 (at 11:16 am), 4 (at 6:59 pm), and 5 (at 8:44 am); and on November 17 (at 8:25 pm), 18 (at 7:00 am), 19 (at 6:39 pm), and 20 (at 12:39 pm). *See* Ex. 5, November 9 Canas Affidavit, at 1-2; Ex. 6, November 22 Canas Affidavit, at 1.They attempted personal service at the Coronado Lane address on November 17 (at 8:31 pm) and 18 (at 7:05 am), when they were told by the current resident that Defendant Hostetter had moved out of the Coronado Lane address about five years before. *See* Ex. 6, November 22 Canas Affidavit, at 1.

During the 16 attempts at service at the Monterey Lane address at various times of the day, no one ever answered the door, although the process server heard a dog barking inside the

residence each time, heard footsteps inside the residence on the September 23 and 28 attempts, and observed lights on inside the residence during seven of the attempts. *See* Ex. 5, November 9 Canas Affidavit, at 1-2; Ex. 6, November 22 Canas Affidavit, at 1. During the attempt on November 17, the process server observed that there were surveillance cameras at the door. *See* Ex. 6, November 22 Canas Affidavit, at 1.

### Certified Mail

Plaintiffs also attempted to serve Defendant Hostetter via certified mail. California law permits service by mail, but it is effective only if the recipient returns a written acknowledgment of receipt. *See* Cal. Civ. Proc. Code § 415.30(c). Professional process servers mailed all required service documents to Defendant Hostetter at his Monterey Lane address via U.S. Postal Service Certified Mail, return receipt requested, on October 5, 2021. *See* Ex. 7, October 5 Short Affidavit, at 1. U.S. Postal Service tracking information indicates that delivery was attempted on October 13, but that no authorized recipient was available, notice of the certified mailing was left, and on October 28, the mailing was designated as unclaimed and returned to sender. *See* Ex. 1, Caspar Declaration, ¶ 11 & Ex. A. Finally, their attempts at personal and certified-mail service unavailing, Plaintiffs mailed a Rule 4 waiver request to Defendant Hostetter at the Monterey Lane address via first class mail on November 20, 2021. *Id.* ¶ 11.

Plaintiffs' numerous, good faith attempts at personal service by professional process servers at the Monterey Lane and Coronado Lane addresses, supported by Plaintiffs' careful inquiry into the addresses of Defendant Hostetter by a professional review of public records databases, the identification of two residential addresses, the confirmation from the current resident of the Coronado Lane address that Defendant Hostetter no longer resides there, and the supplemental service attempts by certified mail, all show Plaintiffs' considerable diligence in

attempting to timely serve Defendant Hostetter. Clearly, the failure to effect service thus far is due to factors other than "inadvertence or negligence" on the part of Plaintiffs. *Arora*, 263 F. Supp. 3d at 131. Plaintiffs' efforts to serve Defendant Hostetter therefore demonstrate the good cause warranting extension of the service time under Rule 4(m). *See Jewell*, 319 F. Supp. 3d at 325-26 (finding good cause based on the plaintiff's "careful inquiry" into the address of the defendant and his five unsuccessful attempts at personal service there); *French*, No. 03-cv-1349, 2005 WL 357281, *7 (finding good cause because the plaintiff had "devoted considerable effort in prosecuting this lawsuit and locating defendants"); *Lopez v. IBM Corp.*, No. 604-cv-1246, 2005 WL 1228725, at *1 (M.D. Fla. 2005) (finding good cause for extension based on plaintiff's multiple attempts by professional process servers at two different locations, and plaintiff's reasonable efforts to research the appropriate address for service).

Additionally, the circumstances set out above suggest that Defendant Hostetter has been evading service. Process servers observed surveillance cameras at his door, and they attempted service at his Monterey Lane address 16 times and no one once answered the door, even though a dog was heard barking, lights were observed on inside, and footsteps were heard on at least one occasion. In revealing contrast, process servers needed to attempt service only two times at Defendant Hostetter's previous Coronado Lane address before the current resident there answered the door. Such evasion of service constitutes an "outside factor" beyond the Plaintiffs' control, *Arora*, 263 F. Supp. 3d at 131, and provides good cause warranting extension of the service time under Rule 4(m). *See D'Amario*, 750 F. Supp. at 563; *Tobins*, 483 F. Supp. 2d at 79.

### III.   Plaintiffs' Efforts to Serve Defendant Rhodes Establish Good Cause for an Extension of Time to Effect Service.

Plaintiffs have worked diligently to determine the whereabouts of Defendant Rhodes and to serve him with process.

*Personal Service*

As with Defendants Alexander and Rhodes, Plaintiffs conducted research and retained a licensed private investigation firm to research the potential whereabouts of Defendant Rhodes and facilitate his service process. *See* Ex. 1, Caspar Declaration, ¶¶ 2-3. The private investigation firm reviewed multiple public records databases, news reports, and other public records. *Id.* ¶ 3. Their research identified a residential address on Sawgrass Court in Granbury, Texas, as associated with Defendant Rhodes. *Id.* ¶ 4. Private process servers attempted to serve Defendant Rhodes personally at that address two times on September 15, 2021. *See id.* ¶ 12; Ex. 8, Lordi Affidavit. On the second attempt, the current resident, who is not Defendant Rhodes, spoke with the process servers and stated that she had purchased the home in March 2021, but not from anyone named Rhodes, and that she did not know anyone named Stewart Rhodes. *See* Ex. 8. Further research established that the Sawgrass Court residence had been owned by a Secretary of the Oath Keepers organization, of which Defendant Rhodes is the President and Director. *See* Ex. 1, Caspar Declaration, ¶¶ 6-7; ECF 1, Complaint, at ¶ 34. Defendant Rhodes had been known to reside there before the residence was sold in March 2021. Ex. 1, ¶ 7.

*Certified Mail*

Additional research also established that Defendant Rhodes advertised another address on the Oath Keepers website for the delivery of checks and money order donations: 1030 E. Hwy 377, Suite 110 – 285 in Granbury, Texas. *See id.* This address is that of a UPS Store approximately 14 miles away from the Sawgrass Court address in Granbury, Texas. *Id.* The UPS Store offers private mailboxes to UPS customers. *Id.* The Oath Keepers website advertising the address notes that mail should be addressed to "Oath Keepers Attn: Stewart Rhodes." *Id.* Additionally, recent reporting by The Wall Street Journal in June 2021 indicated that Rhodes

often uses Oath Keeper funds for his own personal purposes, further indicating that Defendant

Rhodes has personal access to this address. *Id.*

Acting on this information, consistent with Texas law permitting service of process by

certified mail, *see* Tex. R. Civ. P. 106(a)(2), professional process servers mailed the required

service documents to the Highway 377 address via U.S. Postal Service Certified Mail, return

receipt requested, on October 4, 2021. Ex. 9, October 19 Short Affidavit re Rhodes, at 1.

Delivery was signed for on October 8, 2021, but the returned receipt bears the signature of an

Elizabeth B., not that of Defendant Rhodes. *Id.* at 1-2.

Texas law also permits service by alternative means, upon motion and authorized by the

court, that "will be reasonably effective to give the defendant notice of the suit." Tex. R. Civ. P.

106(b)(2). Plaintiffs anticipate filing a motion for approval of such means in the near future. In

the meantime, Plaintiffs' efforts thus far, though not yet successful, demonstrate diligence in

attempting to serve Defendant Rhodes. Plaintiffs' inability to effect service clearly is not due to

their "inadvertence or negligence," but rather to "outside factor[s]," and so good cause exists to

extend the time for service on Defendant Rhodes. *Arora*, 263 F. Supp. 3d at 131. Additionally,

the lack of recent publicly available residential information for Defendant Rhodes in public

records databases, online, or in social media presents unique challenges that have prevented

service of process on Defendant Rhodes, notwithstanding Plaintiff's diligent efforts thus far, and

further supports a finding of good cause warranting an extension of time. *See Elkins v. Broome*,

213 F.R.D. 273, at 276 (M.D. N.C. 2003) (good cause was shown when professional process

servers were unable to find residential information for defendant in public databases because

defendant was a police officer and his home address was made difficult to find due to safety

concerns); *Clayman v. Jung*, 173 F.R.D. 138, 142 (E.D. Pa. 1997) (when long investigation

14

process finally turned up some evidence of elusive defendant's whereabouts, plaintiffs showed good cause for extension).

### IV. Circumstances Merit the Court's Discretionary Extension of Time to Complete Service.

The foregoing circumstances establish good cause for the failure to serve Defendants Alexander, Hostetter, and Rhodes, and an extension of time to serve these defendants therefore is required by Rule 4(m). *See* Fed. R. Civ. P. 4(m). Even in the absence of good cause, however, the circumstances would merit the Court's discretionary extension of the time for service under Rule 4(m). "[T]he district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'" *Arora*, 263 F. Supp. 3d at 131. In exercising such discretion, courts consider the plaintiff's good faith in attempting service; the time since the filing of the complaint; harm that would result from a dismissal, as when a statute of limitations has run; any prejudice to a defendant; and a defendant's actual knowledge of the suit. *See Rogers*, 98 F.Supp.3d at 7.

All of these factors weigh in favor of an extension. As noted above, Plaintiffs have made considerable, good faith efforts to serve all 25 defendants in this case, including Defendants Alexander, Hostetter, and Rhodes. The instant motion for an extension of time, brought pursuant to Rule 6(b)(1)(a) before the time for service has expired, further demonstrates Plaintiffs' diligence and good faith. Plaintiffs seek an additional 90 days to complete service. By that time, briefing concerning the served defendants' responses to the Complaint will only recently have been completed, the motions may still be pending, and discovery is unlikely to have commenced. Even if discovery is beginning at that point, it is likely to take more than a year, which leaves adequate time to resolve any Rule 12 motions of Defendants Alexander, Hostetter, and Rhodes, and for them to participate meaningfully in discovery. Courts have granted Rule 4(m) extensions

after much longer periods of delay. *See, e.g.*, *Cabrera v. Senkowski*, No. 01-cv-1682, 2005 WL 1346928, *2 (N.D. N.Y. 2005) (extending time for service although plaintiff had not made any further efforts at serving the defendant in two years); *D'Amario*, 750 F. Supp. at 562-64 (extending time for service of process up to 17 months following service of complaint).

Additionally, if an extension is not granted, Plaintiffs may suffer meaningful harm, as Plaintiffs' second claim of the Complaint is brought under 42 U.S.C. § 1986, which has a one-year statute of limitations. *See* 42 U.S.C. § 1986. Dismissal of the claims now would leave little time to serve Defendants with an amended complaint, even if one is filed in early December. *See Rogers*, 98 F. Supp. 3d at 7 (extending service time, despite plaintiff's "utter lack of diligence" in effecting service, in part because statute of limitations period for the plaintiff's claim had run and dismissal would bar his claim). Finally, as demonstrated above, it is likely that each of the Defendants already has actual knowledge of the suit, as the Summons and Complaint have been mailed to their addresses and the circumstances suggest their awareness of the suit, and the three Defendants would face no prejudice by an extension.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court extend by 90 days the time allowed for them to complete service of process on Defendants Alexander, Hostetter, and Rhodes.

Dated: November 24, 2021     Respectfully submitted,

              */s/ Edward G. Caspar*
              Jon Greenbaum, D.C. Bar No. 489887
              Edward G. Caspar, D.C. Bar No. 1644168
              David Brody, D.C. Bar No. 1021476
              Arusha Gordon, D.C. Bar No. 1035129
              Adonne Washington, *pro hac vice*
              Lawyers' Committee for Civil Rights Under Law

1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: (202) 662-8390
jgreenbaum@lawyerscommittee.org
ecaspar@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
awashington@lawyerscommittee.org

***Counsel for Plaintiffs***

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5, a copy of the foregoing filing is being served electronically on those parties who have appeared and registered with the Court's ECF system. Plaintiffs are serving remaining defendants via first class mail or other permitted means.

 /s/ Edward G. Caspar
Edward G. Caspar