# EXHIBIT ONE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Civil Division

| | |
|---|---|
| **CONRAD SMITH, ET AL.** | |
| Plaintiffs, | **Civil Action No.  1:21-cv-02265-APM** |
| v. | |
| **DONALD J. TRUMP FOR PRESIDENT, INC., ET AL.** | |
| Defendants. | |

**DEFENDANT KELLY MEGGS' MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED POINTS AND AUTHORITIES  IN SUPPORT THEREOF**

COMES NOW the Defendant Kelly Meggs (Mr. Meggs), by and through undersigned counsel, and moves to dismiss Plaintiffs', Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, Jason Deroche, ("Plaintiffs"), Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The attached Memorandum of Points and Authorities, and a Proposed Form of Order, all incorporated herein, also further support the Motion.  Mr. Meggs requests oral argument.

[SIGNATURE ON NEXT PAGE]

Dated:  December 23, 2021                    Respectfully Submitted,


                              _____/s/ *Juli Z. Haller*_____
                              Julia Z. Haller (#466921)
                              Law Offices of Julia Haller
                              601 Pennsylvania Avenue, NW
                              S. Building, Suite 900
                              Washington, D.C. 20004
                              Tel: 202.729.2201
                              hallerjulia@outlook.com
                              *Counsel for Defendant, Kelly Meggs*


### ***CERTIFICATE OF SERVICE***

I HEREBY CERTIFY that on the 23rd  day of December, 2021, a copy of the foregoing Motion

to Dismiss the Amended Complaint, the attached Memorandum in support thereof, and the

Proposed Form of Order was filed electronically to serve all counsel of record.


                              _____/s/ *Juli Z. Haller*_____
                              Julia Z. Haller

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Civil Division

| | |
|---|---|
| **CONRAD SMITH, ET AL.** | |
| Plaintiffs, | **Civil Action No.  1:21-cv-02265-APM** |
| v. | |
| **DONALD J. TRUMP FOR PRESIDENT, INC., ET AL.** | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) AND RULE 12(B)(6)**

Defendant Kelly Meggs, by and through undersigned counsel, and pursuant to (a) Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek declaratory and injunctive relief, and (b) FRCP Rule 12(b)(6) with respect to the state-based causes of action which implausibly seek to make all Defendants in this case responsible for the intervening, independent, criminal acts of others who allegedly committed treacherous acts, whether intentionally or negligently, hereby respectfully moves the Honorable Court to dismiss the six causes of action of the omnibus and compound Complaint of the Plaintiffs.

## I.   INTRODUCTION

The Amended Complaint weaves an extended and complex conspiracy theory which at its core, seeks to sue those not responsible for the injuries to the Plaintiff police officers and not to sue those who are actually responsible for assaulting them, which is why it fails as a negligence or tort based claim – in addition to failing as a federal civil rights conspiracy claim

seeking relief for alleged past injuries.  As such, the Amended Complaint appears to be dismissive of the Plaintiffs in pursuit of ulterior motives that have little to nothing to do with the interests of the Plaintiffs.

The Complaint does not allege that Plaintiffs have or will in the future suffer concrete injury as a direct result of Defendant Kelly Meggs' alleged conduct. Thus, Plaintiffs cannot establish Article III standing to seek declaratory and injunctive relief, much less clear the high bar to obtaining preliminary declaratory relief established in multiple Circuit cases.  Plaintiffs cannot meet their burden of demonstrating a "clear" or "substantial" likelihood of success on the merits, because all of Plaintiffs claims are legally defective. Plaintiff's alleged injuries that are not "fairly traceable" to Defendant Kelly Meggs.   Moreover, Plaintiffs do not allege with particularity that Defendants deprived their constitutional rights.  Nor can Plaintiffs claim a violation of 42 § 1985 or § 1986, as alleged in Count I or Count II, for reasons to include that Mr. Meggs, the Oath Keepers, (Plaintiffs' appear to allege Mr. Meggs to be an agent of the Oath Keepers), and Roger Stone, (Plaintiffs allege the Oath Keepers and Mr. Meggs provided security for on January 5-6) (ECF 91, ¶ 25, 86), are not State Actors.  Assuming arguendo, Mr. Meggs, or even the Oath Keepers could be considered a state actor, Plaintiffs do not allege with particularity that either Mr. Meggs or the Oath Keepers or even Roger Stone, deprived Plaintiffs of their constitutional rights.

Plaintiffs' state based claims fail because there is no identification of any particular touching or anticipation of touching, much less direct or even indirect contact with any of the Plaintiffs and Mr. Meggs.  Further the Count of Negligence, Count VI, generally and broadly plead, lacks both a specific duty owed by Mr. Meggs to any of the Plaintiffs and there is a lack

of causation- and citing to a few DC Statutes does not create a duty between this defendant and these plaintiffs.

One case comes to the forefront to the myriad of facts alleged from earlier time periods, events from before January 6, 2020, all appearing to relate to a political campaign by one Presidential Candidate: "…the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430, 434, (1969).

By way of background, this Defendant, Kelly Meggs, has not been individually charged with any act of violence or any interaction with any law enforcement at all.   He further has not been charged for bring any weapons to the Capitol.[1]  Instead, on January 6, 2021, a 100% perfectly-peaceful rally was held at and near an area of the Washington Mall and South Lawn of the White House between the Washington Monument and the so-called Ellipse area of the White House grounds because a Candidate for President, the Incumbent President, had had a rally.  The Plaintiffs allege that Donald Trump, (incidentally the President of the United States at the time, in a legal political campaign), promoted this rally and related events planned for January 5-6, 2021, to his 86 million Twitter followers (with about half that many followers on Facebook) and in public statements and interviews.  The Plaintiffs simultaneously allege the go-to smear of the Left of racism, yet allege that a primary organizer of the 100% peaceful rally was, undisputedly, a person of color - Ali Alexander.  The self-contradictions within the Amended Complaint itself, without

---

[1] (See Sixth Indictment, 21cr00028)

the need for outside facts, support dismissal under *Twombly* and *Iqbal.*

In the Amended Complaint's ¶ 84, the Plaintiffs inadvertently admit and confess that the Ellipse rally held a permit from the U.S. Park Police.  Plaintiffs further admit that Defendant Meggs was there to provide security for Roger Stone.  (ECF 91 ¶ 86).  So while seeking to pretend that a First Amendment rally is the cause of any injuries, they let slip that the U.S. Park Police issued a permit for the completely peaceful rally that went ahead without incident at the Ellipse.   In ¶ 86, the Plaintiffs allege that Roger Stone raised funds "for the January 6 event" yet try to tie that to the violence of a very few at the U.S. Capitol 1.2 miles away or to the allegation that Kelly Meggs wore eye protection and other protective gear such as helmets, which may become clear if one considers Plaintiffs allegations that Mr. Meggs came to provide security. (ECF 91, ¶ ¶ 25, 86 and ¶ 101).

## II.  <u>STATEMENT OF MATERIAL FACTS</u>

Plaintiffs' Facts are undisputed - for purposes of this Motion, and relevant points for background of this Motion are set forth as follows.  LCvR 7(a).

1. Plaintiffs generally allege that "Among other things, Defendants, including Proud Boys and Oath Keepers, raised money for, planned, and recruited co-conspirators to join in Trump's January 6 rally and, ultimately, to join in the Capitol Attack." (ECF 91 ¶ 59).   Plaintiffs appear to plead legal "agency" and the doctrine of "respondent superior" (apparently to support tort based claims) when they plead: "OATH KEEPERS took the actions alleged herein through its members, agents, and officers, including RHODES, CALDWELL, WATKINS, and MEGGS, each acting within the scope of the authority delegated to them by OATH KEEPERS or with apparent authority to bind OATH KEEPERS."  *Id.*

4

    a.   Plaintiffs' do not allege "respondent superior" specifically, and the Amended Complaint fails to support *agency in reverse,"-- that is,* actions of the OATH KEEPERS as an organization does not legally bind Mr. Kelly Meggs as an individual.

2. Plaintiffs allege that "Defendants' conspiratorial acts directly resulted in violence against the Capitol and the police officers who defended it, including Plaintiffs. Several Defendants, as well as other attackers, assaulted police officers, broke through the outer police barricades surrounding on the Capitol grounds, and breached the Capitol Building itself." (Id. at ¶ 8)

3. And they allege that "Defendants assaulted and injured Plaintiffs and others, and caused millions of dollars of damage to the Capitol Building and grounds. Through those actions and the actions described in this Complaint, Defendants violated the K[l]u Klux Klan Act, which was designed to precisely prevent the kinds of politically and racially motivated violence they caused and committed on January 6." (ECF 91¶ 10).

4. The only general allegations to "racially motivated violence" are at best, loosely pled against Proud Boys[2], or even the Oath Keepers, although that is not clear, but no such allegations are pled as to Defendant Kelly Meggs. (*See ECF 91 generally*).

5. The Complaint generally alleges that some of the plaintiffs are black[3], but do not

---

[2] The only attempt at less general race-based allegations appear in more general allegations regarding generalizations about other Trump rallies where Proud Boys Members allegedly attended, but individuals or other specifics are lacking, such as on September 29, 2020 or December 12, 2020 or  (ECF 91, ¶¶ 58, 77).

[3] The fact that some individuals within the group may have protected characteristics, such as race, does not transform the group itself into a protected class. *See Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of NY., Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) (a "racially diverse society ...

specifically allege that Defendant Meggs assaulted or harmed these Plaintiffs.  Nor is Defendant Kelly Meggs alleged to have said anything race-based.  (ECF 91 generally).

6.  The only references to alleged "racism" as against some Defendants as a whole in the Complaint appear in more general claims that all or certain *Defendants* targeted "false claims of election fraud" at cities and states with significant Black populations - including Atlanta (51% Black), Detroit (78% Black), Milwaukee (39% Black), Philadelphia (43% Black) and Pittsburgh (23% Black).  (ECF 91¶ 68-69).

7.  Further, cities wherein some of the Defendants or "others" argued about election integrity, but glaringly absent is any reference to Arizona in paragraphs discussing "race."[4]  Plaintiffs also conveniently leave out the fact that Pittsburgh and Philadelphia are not "majority Black cities."  *Id*.  Further, Plaintiffs do not cite to any merit based determination finding that there was no "fraud" in any of the  elections referenced, or cities or states mentioned with regard to the election of 2020.  *Id*., *see also* ECF 91 generally). Moreover, these allegations, of course, are not specific or attributable to Defendant Kelly Meggs.

8.  At most the allegations include minimal specific facts, such as Mr. Meggs allegedly posted on social media on December 22, 2020 that the President's rally would be "WILD."  (ECF 91 at ¶ 92) or that "On January 3, 2021, MEGGS messaged another person that "pence announced he is going to allow the evidence to be presented to Congress. That checks all the boxes. I think this is why we were called there. Anything less would be a terrible mistake. The natives are very restless."  *Id*.  Such a message makes observations of the

---

cannot, by definition, constitute a racial class")

[4] See Id.; see also ¶ 76 where facts are alleged as to the Arizona election dispute was added as background, but not in the context of "race." )

circumstances at that point in time - fails to constitute a fact that supports any actual "planned conduct" or "conspiracy."

9.  The Complaint also alleges that, *"STONE, a friend and advisor to TRUMP, also worked to promote ad fundraise for the January 6 event, including by coordinating with MEGGS and other members of OATH KEEPERS to provide STONE with Security on January 5 and 6."* (ECF 91 ¶ 86).

10. The Complaint alleges that, "STONE also worked closely with OATH KEEPERS, which provided a security detail for him during at least one STOP THE STEAL rally and on January 5 and 6, 2021." 19 (ECF 91 ¶ 25).

11. Plaintiffs later make a loose allegation that MEGGS among others messaged 'to bring heavy flashlights, "Collapsible Batons," "Good hard gloves," "eye pro[tection]," and helmets, *telling them they* could buy "Mechanix gloves and a batters helmet from Walmart." And 'MEGGS told one *potential attacker* to bring "mace," "gas masks," "batons," and "armor," and advised that person that if they did not have armor to "at least get a plate carrier on Amazon multi cam is best."' (ECF 91, ¶ 101).  However, this allegation appears consistent with Plaintiffs' allegations related to Defendant Meggs as there to "provide security." *Id.*  And the Complaint concedes that the protestors were unarmed at the U.S. Capitol on January 6.

12. It is undisputed, that Kelly Meggs and the Oath Keepers did not have arms at the Capitol,

meaning firearms[5], knives, arson tools, bombs, or even bricks.[6]

13. The Complaint refers to a defendant who criminally plead to having "magazines" *on January 4th*, not January 6th, which does not appear specific to the allegations against Kelly Meggs. (ECF 91¶ 80).

14. The agreements alleged as the basis for Conspiracy are not specific, and do not include any details such time place or manner or who agreed with who to do what or when. (ECF 91 ¶¶ 168-172).

15. There is no specific allegation that Mr. Meggs ever touched any of the Plaintiffs or tried to harm any of the Plaintiffs. (ECF 91 ¶¶199 - 202) Instead, Plaintiffs overbroadly and vaguely allege group conduct with no specific allegations much less any specific to Mr. Meggs:

> JOHN DOE Defendants and others intentionally and unlawfully attacked Plaintiffs at the Capitol on January 6, 2021, as related above, causing harmful or offensive bodily contact to all Plaintiffs. All Defendants *aided and abetted*[7] the batteries of Plaintiffs. Through their actions as related above in this Complaint, including their encouragement and facilitation of the batteries, each Defendant knowingly and substantially assisted the batteries. Each Defendant was aware of their role as part of an overall illegal or tortious activity and of their involvement in creating a violent atmosphere in which others might be physically injured.
> *Id.*

---

[5]  Jill Sanborn testified that the FBI did not confiscate any firearms from the Capitol and that no one got charged for firearms violations.  Sen. Ron Johnson (R-WI) questions witnesses during a Senate Homeland Security and Governmental Affairs & Senate Rules and Administration joint hearing to discuss the January 6th attack on the U.S. Capitol on March 3, 2021 in Washington, DC.  The Hill, https://youtu.be/AlxsZ-kQ5Ks;

[6] "*Fact check: Construction bricks in Washington D.C. removed on Jan. 6*," by Reuters Staff, https://www.reuters.com/article/uk-factcheck-construction-bricks-dc-remo/fact-check-construction-bricks-in-washington-d-c-removed-on-jan-6-idUSKBN29B2KM

[7] "Aiding and abetting a battery" is not a recognized "battery" under DC law.

16. The facts in the Complaint rest primarily in negligence rather than assault, battery or even the DC biased crimes law, because the allegations rest on an agency relationship with the Oath Keepers.  (ECF 91  ¶¶ 35,171, 180, 202, 208, 219, 202).

17. Plaintiffs' claims that Mr. Meggs "breached the Capitol on January 6," (ECF 91¶ 39) but other than that alleged breach, the allegations that Defendants, including Mr. Meggs, had a common goal are based on conclusory allegations, insufficient to withstand a motion to dismiss.  (ECF 91 ¶ 86)[8].

18. The Complaint contains a conclusory allegation that Defendants as a group, "intended" to create victims of "Democratic members of Congress, some Republican members of Congress, and Vice President Pence, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"—  and not Plaintiff police officers. (ECF 91 ¶ 188-189 (emphasis added).

19. The Defendants are and were volunteers acting on their own volition, and the Plaintiffs do not allege otherwise.

20. For example, the Plaintiffs' allege that Defendants acted at Trump's direction or command.  (ECF 91 at ¶¶ 76(c), 92, 93, 120, 121, 129).   However, none of the Defendants have any legal status or duty to follow anyone's direction in these matters.

21. Plaintiffs add a claim - in bad faith – without any legal predicate when they raise the DC Terrorism statute with no corresponding facts.   "For the purposes of this chapter, the term:

---

[8] Paragraph 86 is vague and overbroad, with no time, place or manner facts alleged as to who Mr. Meggs is alleged to have attacked,
"Multiple OATH KEEPERS who provided security for STONE during his Stop the Steal efforts on January 5 and 6, including MEGGS, Connie Meggs, and Minuta, participated in the Attack. (ECF 91 ¶ 86).

(1) "Act of terrorism" means an act or acts that constitute a specified offense ***as defined in***

***paragraph (8)*** *of this section":*

***(8)*** "Specified offense" means:
(A) Section 22-2101 (Murder in the first degree);
(B) Section 22-2102 (Murder in the first degree — placing obstructions upon or displacement of railroads);
(C) Section 22-2106 (Murder of law enforcement officer or public safety employee);
(D) Section 22-2103 (Murder in the second degree);
(E) Section 22-2105 (Manslaughter);
(F) Section 22-2001 (Kidnapping and conspiracy to kidnap);
(G) Section 22-401 (Assault with intent to kill only);
(H) Section 22-406 (Mayhem or maliciously disfiguring);
(I) Section 22-301 (Arson);
(J) Section 22-303 (Malicious burning, destruction, or injury of another's property, if the property is valued at $500,000 or more); or
(K) An attempt or conspiracy to commit any of the offenses listed in subparagraphs (A) through (J) of this paragraph.

**and** that are intended to:

(A) Intimidate or coerce a significant portion of the civilian population of:
(i) The District of Columbia; or
(ii) The United States; or
(B) Influence the policy or conduct of a unit of government by intimidation or coercion.
(2) "**Biological agent**" means any microorganism, virus, infectious substance, or biological product that may be engineered as a result of biotechnology, or any naturally occurring or bioengineered component of any such microorganism, virus, infectious substance, or biological product, capable of causing:
(A) **Death, disease, or other biological malfunction** in a human, an animal, a plant, or another living organism;
(B) **Deterioration of food, water,** equipment, supplies, or material of any kind; or
(C) **Deleterious alteration of the environment.**
(3) **"Hoax weapon of mass destruction"** means any device or object that by its design, construction, content, or characteristics, appears to be or to contain, or is represented to be or to contain a weapon of mass destruction, even if it is, in fact, an inoperative facsimile or imitation of a weapon of mass destruction, or contains no weapon of mass destruction.
(4) "Material support or resources" means:
(A) Expert services or assistance;
(B) **Currency, financial securities or other monetary instruments, financial services, lodging, training, false documentation or identification, equipment,**

10

**facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets; or**

(C) A weapon of mass destruction.

(5) **"Nuclear material" means material containing any:**

**(A) Plutonium;**

**(B) Uranium not in the form of ore or ore residue that contains the mixture of isotopes as occurring in nature;**

**(C) Enriched uranium, defined as uranium that contains the isotope 233 or 235 or both in such amount that the abundance ratio of the sum of those isotopes to the isotope 238 is greater than the ratio of the isotope 235 to the isotope 238 occurring in nature; or**

**(D) Uranium 233.**

(6) "Provision of material support or resources for an act of terrorism" means the act of providing material support or resources to a person or an organization with the purpose or knowledge that the material support or resources will be used, in whole or in part, to plan, prepare, or carry out an act of terrorism, or to flee after committing an act of terrorism.

(7) "Solicitation of material support or resources to commit an act of terrorism" means the act of raising, soliciting, or collecting material support or resources with the purpose or knowledge that such material support or resources will be used, in whole or in part, to plan, prepare, or carry out an act of terrorism, or to flee after committing an act of terrorism.

D.C. Code § 22-3152 (emphasis added).

There are no allegations that contemplate the relevant sections of this statute to include specified criminal offenses, with separately defined specific intent, required in relation to the conviction of said enumerated actions.

And as a practical matter, Mr. Meggs respects the law enforcement officers who – despite being left under-manned by the failures of their leadership – stood their ground and defended Congress and the Capitol, and conveys his best wishes to their health and safety.

### III. LEGAL ARGUMENT

In the Amended Complaint, Plaintiffs request relief as follows:

A. A declaratory judgment that the actions described herein constitute a violation of 42 U.S.C. §§ 1985(1) and 1986, 40 U.S.C. § 5104, D.C. Code §§ 22-3704(a) and 1322, and D.C. Code § 10-503.16(b);

B. Appropriate injunctive relief;

C. Compensatory damages in an amount to be determined by the jury at trial;

D. Punitive damages in an amount to be determined by the jury at trial;

E. An award of costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and D.C. Code § 22-3704; and

F. Such other relief as the Court deems necessary and just.

### A. Standard for Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss

A challenge to the standing of a party, when raised as a motion to dismiss, proceeds pursuant to Rule 12(b)(1). *Lipsman v. Sec'y of the Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003).  "Because subject-matter jurisdiction focuses on the Court's power to hear the plaintiff's claim . . . a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim." *Id.* (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

And in deciding a FRCP Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint, with the benefit of all reasonable inferences derived from the facts alleged."  *Aktieselskabet v. Fame Jeans Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008) (internal quotations and citations omitted). However, a Rule 12(b)(6) motion to dismiss permits the defendant to test whether the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b) (6) (2008).  "The court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal, et al v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Agomo v. Williams*, 2003 D.C. Super. LEXIS 31 (D.C. Super. Ct. 2003); *Alexis v. District of Columbia*, 44 F. Supp.2d 331, 336-37 (D.D.C. 1999).  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation [is] to provide the grounds of entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do").

Under either standard, however, Plaintiffs have failed to meet the requirements for preliminary injunctive relief and there is the obvious lack of irreparable injury, as well as the lack of any articulable claim under R.12(b)(6).

Dismissal is proper when a complaint, construed with all well-pleaded facts viewed in the light most favorable to plaintiffs, *see In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *Zagami v. Natural Health Trends Corp*., 540 F. Supp. 2d 705, 709 (N.D. Tex. 2008), fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Given the many attenuated steps between events involving the Plaintiffs and the obscure, alleged actions against the Defendants, the totality of the allegations and claims are not credible or plausible under *Bell Atl. Corp. v. Twombly*.   It would be different if the Plaintiffs were suing those out-of-control people who directly, actually assaulted them. But instead, the Plaintiffs sue on assumptions about the Defendants remote and many steps removed from any injuries suffered by the Plaintiffs.   There are too many "hops" and too many open-ended "maybes," passive voice claims that somebody did something or somebody said something, which may or may not have been heard by any of the Defendants much less agreed to by any of the Defendants.

*Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009) requires that allegations must be more than just "consistent with" liability.  A plaintiff must allege facts that show that a defendant *actually is* liable, not that he could *possibly* be liable.  *Ashcroft v. Iqbal* teaches that if, after allegations are proven at trial, it is still uncertain if liability does attach, then the allegations are insufficient.  The

*Iqbal* test is in effect that if the allegations from the Complaint – not adding other evidence not in the Complaint – would leave a fair, unbiased, careful jury unsure at the close of the trial if defendants are liable or not, then the Complaint as filed, at the opening of the lawsuit, is subject to a motion to dismiss for failure to state a claim under FRCP Rule 12(b)(6).  If the allegations in the four corners of the Complaint were all proven at trial as pled, but the liability of the defendants would remain unclear without resort to additional facts, then the Complaint fails to state a claim and is subject to dismissal.

Plaintiffs' factual allegations, such as statements by unidentified people, and assumptions (such as that one person made a statement therefore others must have agreed with the statement, even though they might never have heard the statement made) fail to cross the line between possible liability to plausible liability.  Allegations that some of the Defendants attended a demonstration and *someone* – unidentified – initiated violence fails to satisfy *Twombly* or *Iqbal* to survive a Rule 12(b)(6) motion to dismiss.  Allegations that some unidentified person committed violence, or said something, or did something fail the *Twombly* and *Iqbal* standards.

### B. Standard that the Plaintiffs Must Meet for Declaratory Relief, and Injunction

Plaintiffs are seeking declaratory judgment and one or more injunctions, which appear undefined, but derived from of 42 U.S.C. §§ 1985(1) and 1986. To the extent any of these particular plaintiffs have a judicially cognizable claim for a declaratory action, at most it would be against the Senate and the House of Representatives. After all, it is Plaintiffs' employment relations to provide security for the House and the Senate.

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry. The court must ask:

(1) whether an actual controversy [of legal interests] exists between the parties in the case;

(2) whether it has authority to grant declaratory relief;

(3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." F*rye v. Anadarko Petroleum Corp.*, 9553 F.3d 285, 293-94 (5th Cir. 2019) (internal citations and quotation marks omitted).

With respect to the first inquiry, the Supreme Court has required that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts."

*MedImmunte, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and alteration omitted).

And the standard for Injunctive Relief includes, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995). "A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiffs favor; and (4) that an injunction is in the public interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992).

## C.  Plaintiffs Have Not Demonstrated Irreparable Injury.

Plaintiffs' failure to adequately allege that *they will suffer irreparable harm* as a direct result of Defendant Kelly's alleged action to provide "security for Roger Stone," and his alleged entry into and exit from the Capitol on January 6, 2021, means both that Plaintiffs do not have Article III standing to seek injunctive relief, and that Plaintiffs have failed to meet the well-established test for obtaining injunctive relief.  (ECF 1, ¶¶ 142-166, ¶ 206).  Plaintiffs generally claim injunctive relief and Declaratory Relief, but fail to state any actual injury they seek to

15

enjoin.   (*See Id.*)

### D.  Plaintiffs Lack Constitutional Standing to Seek Injunctive Relief.

Plaintiffs do not allege any future impact to justify injunctive relief, which is fatal to Plaintiffs' standing to seek injunctive relief.[9] "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[T]o satisfy Article Ill's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); (see also, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992)).

" [A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted).  The court further explained that "[t]here must be some connection between the plaintiff and the defendant that ' []differentiate[s]' the plaintiff so that his injury is not 'common to all members of the public.'" *Id.* at 654-655 (*citing United States v. Richardson*, 418 U.S. 166, 177, 94 S. Ct. 2940, 41 L. Ed. 2d 678 (1974) (*quoting Ex parte Levitt*, 302 U.S. 633, 634, 58 S. Ct. 1, 82 L. Ed. 493 (1937)).

"A person exposed to a risk of future harm may pursue forward-looking, injunctive relief

---

[9] Plaintiffs apparently believe that they can sue for everyone in the Capitol, even in America who opposed what happened on January 6th - asserting third-party claims requires a "close relationship with the absent third parties" who must have standing in their own right. *Kowalski v. Tesmer,* 543 U.S. 125 (2004).

to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210, 210 L. Ed. 2d 568, 590-591, (2021) (*citing Clapper v. Amnesty Int'l USA, 568 U. S. 398,* at 414, n. 5, *133 S. Ct. 1138, 185 L. Ed. 2d 264*; *Los Angeles v. Lyons*, 461 U. S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *see also Gubala v. Time Warner Cable, Inc., 846 F. 3d 909, 912 (CA7 2017).* "Even apart from that fundamental problem with their argument based on the risk of future harm, the plaintiffs did not factually establish a *sufficient risk of future harm* to support Article III standing." *TransUnion LLC*, 141 S. Ct. at 2211-2212 (emphasis added). The Court further set forth that, "a plaintiff must 'demonstrate standing separately for each form of relief sought.'" *Id*. (*citing Friends of the Earth*, 528 U. S. at 185) (see also, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross").

Further, Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions.' *LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75 L.Ed. 2nd 675, 684, (1983)(*citing Baker v. Carr*, 369 U.S. 186, 204 (1962)(emphasis added)). The Plaintiffs here have plead no constitutional questions, much less imminent harm from future conduct. (See ECF 91, generally). In addition, the standing doctrine also includes prudential elements, including a general rule that those seeking to assert absent third parties' rights to have their own Article III standing and a close relationship with the absent third parties. *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004)[10].

---

[10] Meggs is alleged to have been acting as an agent of the Oath Keepers, Mr. Meggs and the Oath Keepers could not conspire together, as a matter of law. S*ee Legal Aid Society v. Ass'n of Legal Aid Attorneys*, 554 F. Supp. 758, 766–67 (S.D.N.Y. 1982) (*the actions of an agent are attributed to the principal, and so the agent and principal cannot form a conspiracy between "two or more persons"*).

The Plaintiffs are individual Capitol Police Officers who have individual claims of injuries alleged to be connected to January 6, 2021, but they have no standing or representational position to sue on behalf of the public at large or Congress or what they perceive to be democracy.  They further have not plead imminent or actual future harm as  a basis for equitable relief from the court.

### a.  Past Injuries Do Not Constitute A Redressable Injury In Fact

In *LA v. Lyons,* the Court further explained a precedential holding to explain how one cannot rely on past injuries, *O'Shea v. Littleton*, 414 U.S. 488 (1974), in which the Court addressed "a case brought by a class of plaintiffs claiming that they had been subjected to discriminatory enforcement of the criminal law." *Id.* at 102 (*citing Id.*).

> Past wrongs were evidence bearing on 'whether there is a real and immediate threat of repeated injury.' But the prospect of future injury rested 'on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners.' … We could not find a case or controversy in those circumstances: the threat to the plaintiffs was not 'sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses. . . .'

*Lyons*, 461 U . S . at 102-103 (*internal citations omitted.*)

The Supreme Court has held that a plaintiff cannot allege irreparable harm by asserting its constitutional rights were violated in the past.  *See Id.*  In *Lyons,* the Supreme Court held that the plaintiff, who alleged that a police officer placed him in an illegal chokehold in violation of his substantive due process rights under the Fourteenth Amendment,  did not have standing to seek an injunction preventing police officers from using chokeholds in the future because he did not allege facts showing "any real or immediate threat" that he would be

18

subjected to an illegal chokehold again and, thus, no likelihood of "irreparable injury." 461 U.S. at 111.

Plaintiffs' conclusory allegations of past harm fails as a matter of law.  Plaintiffs' allegations do not constitute a redressable injury in fact – nor a Constitutional deprivation.  These allegations also do not satisfy the "causation" and "redressability" prongs of the Article III standing inquiry.  *See DaimlerChrysler Corp. v. Cuna*, 547 U.S. 332,346 (2006) (" [A] party seeking federal jurisdiction cannot rely on speculative inferences to connect his injury to the challenged actions of the defendant." (internal quotation marks and alterations omitted)).  *Bond v. United States*, 564 U.S. 211, 222-23 (2011)(One who seeks to initiate or continue proceedings in federal court must demonstrate, among other requirements, both standing to obtain the relief requested, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), and, in addition, an "ongoing interest in the dispute" on the part of the opposing party that is sufficient to establish "concrete adverseness." *Camreta v. Greene*, 563 U.S. 692, 701, 131 S. Ct. 2020, 179 L. Ed. 2d 1118, 1125 (2011) (internal quotation marks omitted).

Without a showing of irreparable harm, Plaintiffs' request for a preliminary injunction must be denied as a matter of law.

### E.  Plaintiffs' Claims Are Meritless.

Even if Plaintiffs had standing under the federal question they plead (ECF 91, ¶47) and no irreparable injury to pursue their claims or had sufficiently pled the irreparable injury required to support a preliminary injunction (which they have not), the Complaint fails because Plaintiffs plainly cannot demonstrate a "clear" or "substantial" likelihood of success on the merits of their claims for injunctive relief, and fail to claim of federal tort claim. Indeed, their

claims are clearly deficient in all respects.

### F.   42 U.S.C. § 1985 and 1986 Fail as a Matter of Law

Plaintiffs brought a claim under the first clause, which, as a preliminary matter is limited

to constitutional violations by state actors.

> (1) Preventing officer from performing duties. If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat*, any person from accepting or holding any office,* trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

42 USCS § 1985 (1).

In *Stern v. United States Gypsum, Inc.* the Seventh Circuit explained in relation to a cause

of action based in past injuries that that, "Construction of § 1985(1) to apply a federal damage

remedy to such facts would raise grave constitutional questions, because 'laws which actually

affect the exercise of these vital [First Amendment] rights' need not do so directly and overtly to

be adjudged constitutionally offensive." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1343

(7th Cir. 1977) (citing *United Mine Workers of America v. Gibbs*, 389 U.S. 217, 222  (1966).  In

applying those principles to that case, the Seventh Circuit reasoned:

> "…Any injuries to Stern from appellants' alleged conspiracy resulted from the overt acts of communicating or causing to be communicated complaints about Stern's performance of his official duties to his IRS superiors. We have previously expressed our agreement with appellants that the evils addressed by the Forty-Second Congress in enacting the Act of April 20, 1871, were of a meaningfully different nature, and that there is no indication any member of that Congress ever contemplated the application of what is now § 1985(1) to such facts as Stern's complaint alleges…"

*Id.* at 1342.

The Court in *Stern* held, "Because the count of [Plaintiff]'s complaint drawn under §
1985(1) states no actionable federal claim and no other basis for federal jurisdiction exists, the
order of the district court is reversed, and this case is remanded to the district court with direction
to dismiss the complaint." 547 F.2d 1329, 1346, (7th Cir. 1977) (further citations omitted).

The Stern Court explained clause (1) of 42 U.S.C. §1985, and stated, that the First
Amendment cannot be avoided.[11] 'The public criticism of governmental policy and those
responsible for government operations is at the very core of the constitutionally protected free
speech area.' S*tern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342-1343 (1977) (*citing
Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *New York Times Co.
v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)).

---

[11] The Supreme Court has repeatedly extended First Amendment protection to statements
that, in context, do not reasonably state or imply defamatory falsehoods in the requisite
sense. In *Greenbelt*, 398 U.S. at 13-15, the Court concluded that use of the word
"blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably
be understood to mean the plaintiff had committed a criminal offense…

> And in *Hustler Magazine*, 485 U.S. at 50, the Court held that an ad parody depicting
> the Rev. Jerry Falwell in an incestuous relationship with his mother could not
> support an emotional distress claim because the offending speech "could not
> reasonably have been interpreted as stating actual facts about the public figure
> involved." So instructed, this court held in *Weyrich*, 235 F.3d at 624-25, that a
> political magazine's statement that a conservative leader "began to suffer bouts of
> pessimism and paranoia" following his successful rise to power was not actionable
> because, in context, the description was merely "rhetorical sophistry, not a
> verifiably false attribution in fact of a 'debilitating mental condition'" as the
> plaintiff had contended.

*Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir.
2013).

The Supreme Court in *Bray v. Alexandria Women's Health Clinic*, as in *Carpenters*[12], as in *Morrison*[13], repeatedly held that the federal tort actions against private individuals fail, "*[a]s we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals,*[14]*"* which was the holding in *Stern v. United States Gypsum*.

"Private actors cannot violate, and thus cannot conspire to violate, another person's First, Fourth, or Fourteenth Amendment rights."[15]

> *"It is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority. The Equal Protection Clause 'does not . . . add anything to the rights which one citizen has under the Constitution against another.'* <u>*United States v. Cruikshank*</u>*, 92 U.S. 542, 554-555.*
> *Id.*

In addressing such conspiracies under 1985(3), the Supreme Court explained, "[t]he Court of Appeals accordingly erred in holding that § 1985(3) prohibits wholly private

---

[12] *United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983).*

[13] *United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed. 2d 658, 678, (2000).

[14] *"As we have consistently held 'The Fourteenth Amendment protects the individual against state action, not against wrongs done by individuals.' Williams I, 341 U.S., at 92 (opinion of Douglas, J.)" United States v. Price, 383 U.S. 787, 799 (1966).*
*United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 831-832, 103 S. Ct. 3352, 3357-3358, 77 L. Ed. 2d 1049, 1056, (1983).*

[15]  "Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *United States Gypsum, Inc*., 547 F.2d at 1343 (*citing United Mine Workers, supra,* at 222; *Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960)).

conspiracies to abridge the right of association guaranteed by the First Amendment. *United Bhd. of Carpenters & Joiners, Local 610, 463 U.S. 831-832.*

In *Bray*, the Supreme Court held that Fourth and Fourteenth Amendment rights cannot be privately impaired. And "[a]s JUSTICE BLACKMUN has cogently put it, the class "cannot be defined simply as the group of victims of the tortious action." 506 U.S. 263, 278 (1993). The *Bray* Court further held and explained the fundamental predicate to its holding, "[t]respassing upon private property is unlawful in all States, as is, in many States and localities, intentionally obstructing the entrance to private premises. These offenses may be prosecuted criminally under state law, and may also be the basis for state civil damages. They do not, however, give rise to a federal cause of action simply because their objective is to prevent the performance of abortions, any more than they do so (as we have held) when their objective is to stifle free speech." *Bray*, 506 U.S. at 286.

> "…Foremost among these limitations is the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action. The principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."
>
> *United States v. Morrison*, 529 U.S. 598, 620-621, 120 S. Ct. 1740, 1755-1756, 146 L. Ed.

2d 658, 678, (2000) (*citing Shelley v. Kraemer*, 334 U.S. 1, 13, 92 L. Ed. 1161, 68 S. Ct. 836, and n. 12 (1948)).[16]

---

[16] Similarly, the Supreme Court further upheld the unconstitutional infringement of intruding upon a state's criminal jurisdiction when it found that the federal act, *the Chemical Weapons Convention Implementation Act* could not apply to a local crime. *See Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1, (2014) (emphasis added).

And nowhere in the Complaint does it suggest that Mr. Meggs, or anyone he is alleged to be "close to," or are State Actors.

### G.    Plaintiffs do not Plead Civil Conspiracy under § 1985(1)

An essential element of any civil conspiracy is "an agreement between two or more persons" to commit the prohibited activity. *Findlay v. Citimortgage*, *Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011). Counts I and II must be dismissed as the Complaint does not allege any facts showing an agreement between Meggs and any other Defendant to commit the acts prohibited by §§ 1985(1), 1986. The agreements alleged are not specific as to who agreed with who to do what exactly.  (ECF 91, ¶ ¶ 168-172).

Further, the conspiracy claim fails because Plaintiffs' claims that Mr. Meggs "breached the Capitol on January 6" and that Defendants had a common goal are conclusory allegations, insufficient to withstand a motion to dismiss.  (ECF 91¶ 39).

To show the existence of an agreement, the "plaintiff must set forth more than just conclusory allegations of [the] agreement." A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss. " *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement"); *see also Estate of Phillips v. District of Columbia*, 257 F. Supp.2d 69, 83 (D.D.C. 2003) (dismissing claim where plaintiffs failed to specify that defendants how the defendants "acted in concert"); *Davey v. Tomlinson*, 627 F. Supp. 1458, 1462 (E.D. Mich. 1986) (dismissing claim where plaintiff made no allegations of specific acts or the means by which defendants were

alleged to have conspired, other than arguing "in conclusory fashion that defendants conspired to deprive him of his constitutional rights"). *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004); see also *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 51-52, (D.D.C. 2019).

While Plaintiffs generally allege the existence of  an agreement, they provide no facts to support its existence.  The Complaint explicitly alleges that "The intended victims of Defendants' were Democratic members of Congress, some Republican members of Congress, and Vice President Pence, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"— not Plaintiff police officers.  (ECF 91, ¶  188-189 (emphasis added).

And Plaintiffs suggestion that election integrity concerns were raised in cities with a higher percentage of Black residents compared to a city with a lower percentage is insufficient as a matter of law to support Plaintiff's claim of an invidious intention to discriminate. *See Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 941–42 (D. Neb. 1986) ("[T]here is a requirement that there be a *mens rea* present, i.e., that the conspirators have a particular hatred of the protected group. . . . Evidence of adverse impact, if any, simply does not fulfill the mens rea requirement necessary to show irrational or invidious class discrimination.").  Furthermore, the fact that some individuals within the group may have protected characteristics, such as race, does not transform the group itself into a protected class. *See Jews for Jesus, Inc.* v. *Jewish Cmty. Relations  Council  of NY., Inc.,* 968 F.2d  286,292  (2d Cir.  1992)(a "racially diverse society ... cannot, by definition, constitute a racial class").  "The plaintiffs do not allege that the defendants were motivated by a class-based, invidiously discriminatory animus. … In the absence of pleading this essential element, the plaintiffs' allegations are insufficient to state a valid Section 1985 claim.  *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 121, (D.D.C. 2012)(internal citations omitted).

And as a practical matter, Mr. Meggs is alleged to have been acting as an agent of the Oath Keepers, Mr. Meggs and the Oath Keepers could not conspire together. *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 119-120, (D.D.C. 2012) (*citing Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)(The United States District Court in D.C. applied the "intracorporate conspiracy doctrine.").(*see also Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007)).[17]

Under 42 U.S.C. § 1985, only the third clause (3) has been recognized as protecting the constitutional rights of "equal protection of the laws" and "equal privileges and immunities under the laws" ***against private conspiracies* in limited contexts.** *Griffin v. Breckenridge*, 403 U.S. 88, 101-102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348, (1971). 'But we observed that the section does not expressly refer to the Fourteenth Amendment and that "The broader scope of § 1985(3) became even more apparent when we [in Griffin] explained that the conspiracy at issue was

---

[17] We know from the Government that there were no incriminating signal chats prior to January 6th.

> Counsel,
>
> Attached please find a draft transcription of an excerpt of messages obtained from a chat in the Signal encrypted messaging application called "OK FL DC OP Jan 6." This is a draft, and some of the times and content are subject to further editing. The names of several of the participants have been redacted. We are disclosing these messages to you because you will see that, prior to January 6, 2021, this chat does not contain any explicit references to a plan to forcibly enter the U.S. Capitol on January 6, 2021, and also because the government may reference some of the messages in response to Defendant Harrelson's bond review motion. This document should be treated as SENSITIVE under the protective order.
>
> Please let us know if you have any questions.
>
> Jeff Nestler
>
> **Jeff S. Nestler**
> Assistant United States Attorney
> 555 Fourth Street NW, Wasington, DC 20530

(See DDC, 1:21-cr-00028-APM ECF 485, at ¶ 75).

actionable because it was aimed at depriving the plaintiffs of rights protected by the Thirteenth Amendment and the right to travel guaranteed by the Federal Constitution." *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 832, 103 S. Ct. 3352, 3358, 77 L. Ed. 2d 1049, 1056-1057, 1983.

### H.  42 U.S.C. §1985 Fails, then a claim for 42 U.S.C. §1986 Fails.

Plaintiffs claim generally that Defendants each "[knew] that the wrongs conspired to be done and mentioned in section 1985 are about to be committed, has the power to prevent or aid in preventing these wrongs, and yet neglects or refuses to help them."  (ECF 1, ¶ 158-166).

However, it is "[b]ecause [Plaintiff] does not have a valid § 1985 claim, he does not have a valid § 1986 claim.  This court has held that a valid § 1985 claim is a prerequisite to a § 1986 claim." *Von Drake v. St Paul Travelers Ins. Co*., 353 Fed. Appx. 901, 905, (5th Cir. 2009) (citing *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

### I.   The Remaining Counts Fail to State a Claim as Matter of Law, specifically Count III -VI.

#### a.   COUNT III, D.C. Code § 22-3704(a) – VIOLATION OF D.C. BIAS-RELATED CRIMES ACT Fails as a Matter of Law

The Plaintiffs here allege that the allegations of the conduct of the Defendants, if those allegations were true, come within the D.C. Hate-Crimes Act based upon the political affiliations of a victim.  Plaintiffs allege that "Defendants are liable under BRCA in three independent ways, each demonstrating their prejudice: Defendants (1) engaged in acts of terrorism in violation of the D.C. Anti-Terrorism Act of 2002, D.C. Code § 22-3153; (2) engaged in rioting or incited a riot, in violation of D.C. Code § 22-1322; or (3) engaged in destruction of property in violation of D.C. Code § 22-303."

To begin, there is actually nothing in the text of D.C. § 22–3704 which permits the

Plaintiffs to transform a claim of rioting under D.C. Code § 22-1322 (which does not provide for a civil cause of action) into a D.C. Bias Related Claims Act civil action under D.C. Code § 22–3704.

In this case, however, there are no allegations as to what the political affiliations are of any of the Plaintiff are.  And there are no allegations that the Defendants knew the political affiliations of any of the Plaintiffs.

There are no allegations that the Plaintiffs were treated differently from anyone else based upon their political affiliations or out of any prejudice towards them based upon their political affiliations.

> § 22–3704. Civil action.
>
> **(b)** In a civil action pursuant to subsection (a) of this section, whether an intentional act has occurred that demonstrates an accused's prejudice based on the actual or perceived color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, homelessness, disability, matriculation, or political affiliation of a victim of the subject designated act shall be determined by reliable, probative, and substantial evidence.

The Plaintiffs do not have standing to assert the Act on behalf of anyone else, but there are no allegations that would support the Act involving anyone else either – much less cited to any reliable, probative and substantial evidence.

Further, Plaintiffs have not plead a predicate "designated act" as required under the D.C. Hate Crimes Act.  "Under the hate crime statute, Plaintiffs must be the victim of a "designated act" perpetrated by Defendants. D.C. Code § 22-3704(a).  The D.C. Code defines "designated act" broadly as "a criminal act, including arson, assault, burglary, injury to property, kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry, and attempting, aiding, abetting, advising, inciting, conniving, or conspiring to commit arson, assault, burglary, injury to property,

kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry." D.C. Code § 22-3701(2)(*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 56, D.D.C. 2019).

Meanwhile, although the Plaintiffs do not base their claim upon race, the Amended Complaint does not allege any act based upon the race of any person. On the contrary, the Plaintiffs allege that some Plaintiffs are Black, and some Plaintiffs are White, yet they allege all being treated exactly the same, regardless of their race.

### b.  Terrorism Allegations Lack Good Faith and Should be Dismissed.

Plaintiffs, however, expressly do not plead the requirements of the statute. Moreover, Kelly Meggs has not been charged with, much less convicted of this statute. (See Statement of Fact 20 and see below in section d).

### c.  Plaintiffs Fail to Legally Plead Assault and Battery

"Battery is an intentional tort. 'Intent and negligence are regarded as mutually exclusive grounds for liability. As the saying goes, there is no such thing as a negligent battery.' 1 DOBBS, LAW OF TORTS § 26 at 51 (2001)."
*District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003) (citing to *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C.1997)).

"The defendants are correct that [Defendant's] presence at the shooting, without more, cannot render him liable for assault and battery." *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 107, (D.D.C. 2011) (*citing Chen v. District of Columbia*, 808 F. Supp. 2d 252, (D.D.C. 2011) (granting summary judgment for defendant on assault and battery claim because "there is no evidence in the record before the Court that [the defendant] ever touched [the plaintiff] or caused her to be touched" nor that the defendant "ever attempted or threatened to harm [the plaintiff] physically"); *(Halberstam v. Welch*, 705 F.2d at 481)).

A defendant may be held liable for assault against another if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." A defendant may be held liable for battery if the

above "requirements of (a) are met and (b) an offensive contact with the person of the other directly or indirectly results."

*Rude v. Adeboyeku*, 552 F. Supp. 2d 32, 35, (D.D.C. 2008)(*citing Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (*quoting* Restatement (Second) of Torts § 21 (1979)) (interpreting District of Columbia law)(*quoting* Restatement (Second) of Torts § 18 (1979)) (interpreting District of Columbia law).

There is no allegation that Mr. Meggs ever touched any of the Plaintiffs or "ever attempted or threatened to harm any of the Plaintiffs. (ECF 91 ¶¶184, 195.) Instead the claims appear to be based on an agency relationship with the Oath Keepers. (ECF 1 ¶¶ 33 and 37)[18].

### d. Negligence Count Lacks Legal Foundation

Plaintiffs cited to DC Code, §22-1322, a criminal statute punishable by imprisonment of not more than one year, a fine of not more than $ 1,000, or both.' See id. § 22-1322(b). *Carr v. District of Columbia,* 565 F. Supp. 2d 94, 100, 2008 U.S. Dist. LEXIS 53335, *12 (*rev'd on o' grounds*), *Carr v. District of Columbia*, 587 F.3d 401. Plaintiffs also cite to two other criminal statutes, 10-503.16(b)(6) and 40 U.S.C. 5014(e)(2)(f). A criminal statute that a defendant is not convicted of, fails to constitute a basis for "negligence per se" for civil liability as Plaintiffs

---

[18] Plaintiffs make a claim for punitive damages, which in DC are available based on intentional torts, but Plaintiffs have not plead anywhere close to the factual predicate necessary as to Mr. Meggs' alleged conduct. (See ECF 1, generally). In the District of Columbia, '…Such malice is shown by commission of a tortious act "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right[s], or other circumstances tending to aggravate the injury."' *Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, *33 (*citing Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). (*quoting Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation mark omitted).

plead.  (ECF 91, ¶214).   "Violation of a statute may give rise to a civil cause of action, and may constitute negligence *per se* if the statute is meant to promote safety, if the plaintiff is 'a member of the class to be protected by the statute,' and if the defendant is a person 'upon whom the statute imposes specific duties.'"  *Frasier v. HP Enter. Servs.*, LLC, (D.D.C. 2016) (held Plaintiff Delorenzo offers no facts to support her allegation that HPES or The Experts violated this criminal statute.)(*citing McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998) (*quoting Marusa v. District of Columbia*, 484 F.2d 828, 834, 157 U.S. App. D.C. 348 (D.C. Cir. 1973)) (other citation omitted).

There is no fact suggesting the elements of the criminal statute have been plead and lacking is any specific duty on Kelly Meggs who has not been criminally convicted of § 22-1322(b), or even charged accordingly.  And no specific allegations show Mr. Meggs did not help when the allegations show he is not charged with any violence, and, in fact, went to the aid of other officers in the Capitol.

In ¶ 131, the Amended Complaint alleges:  "The attackers closely followed and responded to TRUMP's speech and tweets before and during the Capitol Attack."  This also strains *Twombly* credibility, given that those demonstrating outdoors were not home watching television and with massive crowds cell phone service is usually overwhelmed and jammed.

While the concept of proximate cause is somewhat amorphous, see Keeton 279, the common law is clear that certain intervening events — otherwise called "superseding causes" — are sufficient to sever the causal nexus and cut off all liability. See *Exxon Co., U. S. A. v. Sofec*, Inc., 517 U. S. 830, 837 (1996) ("`The doctrine of superseding cause is ... applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was

31

actually brought about by a later cause of independent origin that was not foreseeable'" (quoting

1 T. Schoenbaum, Admiralty and Maritime Law § 5-3, pp. 165-166 (2d ed. 1994))); 57A Am.

Jur. 2d, Negligence § 790, p. 701 (1989) ("The intervention, between the negligence of the

defendant and the occurrence of an injury to the plaintiff, of a new, independent, and efficient

cause, or of a superseding cause, of the injury renders the negligence of the defendant a remote

cause of the injury, and he cannot be held liable, notwithstanding the existence of some

connection between his negligence and the injury").

On September 17, 2021, a new Chief of the USCP, Thomas Manger, as one of the

government entities bringing the complaint against these Defendants in this case, admitted and

confessed among other things, at time stamp 00:18:10:

> **"In terms of how we engage, we handle multiple demonstrations at the
> Capitol and Supreme Court every day. Every day. Multiple
> demonstrations."[19]**

Therefore, the mere presence of demonstrators or the existence of a demonstrator cannot

be a credible proximate cause.  Demonstrations at and around the U.S. Capitol – admits the then

Chief of USCP – are routine and do not by themselves result in any violence or disruption.

Although currently, all facts as alleged by Plaintiff for purposes of the motion are

---

[19] "USCP News Conference on "Justice for J6" Rally" was recorded and broadcast live by

C-SPAN, and is permanently recorded for viewing at:  https://www.c-span.org/video/?514736-

1/us-capitol-police-prepare-threats-violence-justice-j6-rally   And again at time stamp 00:20:09 -

-**"We have multiple demonstrations every day."**



### c. Punitive Damages are not Legally Supported

Plaintiffs also makes a claim for punitive damages, which in DC, are available based on intentional torts, but Plaintiffs have not plead anywhere close to the factual predicate necessary as to Mr. Meggs' alleged conduct for punitive damages. (See ECF 91, generally). In the District of Columbia, '…Such malice is shown by commission of a tortious act "accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right[s], or other circumstances tending to aggravate the injury."' *Flythe v. District of Columbia*, 2016 U.S. Dist. LEXIS 115033, *33 (*citing Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995). (*quoting Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990)) (internal quotation mark omitted). As such, the unfounded claim for punitive damages should also be dismissed for failure

to state a claim.

### IV. <u>CONCLUSION</u>

The 42 § 1985 (1) claim lacks a factual predicate for standing, state action, or that Mr. Meggs deprived Plaintiffs of constitutional rights recognized under 42 § 1985 (1) or § 1986 much less a legal predicate for conspiracy.   Plaintiffs make no attempt to plead irreparable injury, or a likelihood of success, and Plaintiffs certainly do not allege their claims with particularity.

Especially missing is a plan in light of the fact that the Complaint also alleged that Mr. Meggs and the Oath Keepers came to DC to "provide for security" at the rally events of January 5 and January 6 for a Presidential Campaign.  And there are no specific facts related to touching or approaching these individual Plaintiffs, and a lack of any predicate to support a hate crime much less any of the statutes cited, as if thrown together to find something to stick...


Respectfully Submitted,


_____ /s/ Juli Z. Haller _____
Juli Z. Haller
D.C. Bar No.466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.,
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Kelly Meggs*

Dated: December 23, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Civil Division

**CONRAD SMITH, ET AL.**

      Plaintiffs,

v.

**DONALD J. TRUMP FOR PRESIDENT,
INC., ET AL.**

      Defendants.

**Civil Action No.  1:21-cv-02265-APM**

 

    **UPON CONSIDERATION** of Defendant's, Kelly Meggs, Motion to Dismiss Plaintiff's

Amended Complaint, and Points and Authorities in Support thereof, any Opposition thereto, any

Reply and Oral Argument, and the entire record herein, pursuant to (a) Rule 12(b)(1) of the Federal

Rules of Civil Procedure ("FRCP") with respect to the causes of action which seek declaratory

relief and injunctive relief, and (b) FRCP Rule 12(b)(6) with respect to the state-based causes of

action which implausibly seek to make all Defendants in this case responsible for the intervening,

independent, criminal acts of others who allegedly committed treacherous acts whether

intentionally or negligently, whereas it is not plead that this Defendant caused any of these acts or

committed any injuries.

    it is hereby **ORDERED**, that the Motion to Dismiss is hereby **GRANTED**, and that

Plaintiff's Complaint against Defendants is dismissed for under FRCP 12(b)(1) and (b)(6).

    **SO ORDERED**.

 

_____
The Hon. District Judge Amit P. Mehta
United States District Court Judge