IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH, et al.; | Case No. 1:21-CV-02265-APM |
| *Plaintiffs*, | **MOTION TO DISMISS THE AMENDED COMPLAINT** |
| v. | (Oral Hearing Requested) |
| DONALD J. TRUMP, et al., | |
| *Defendants*. | |

## <u>DEFENDANT RONALD MELE'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (b)(6)</u>

Defendant Ronald Mele respectfully moves to dismiss the above-captioned action in its entirety and all counts in the Amended Complaint (ECF No. 91) (hereinafter "Compl.") by Plaintiffs Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, Jason Deroche, and Reginald Cleveland pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and/or Plaintiffs' failure to state a claim against Mr. Mele upon which relief can granted.

Date: January 16, 2022

Attorney for Defendant,  Ronald Mele
Steven C. Bailey (CA SBN 146382)
BAILEY & ROMERO
2535 Kettner Blvd, Ste. 2A1
San Diego, CA 92101
(530) 212-3407
Steven@stevencbailey.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................ 5

   I. Plaintiffs' Lack Standing to Sue Pursuant to Rule12(b)(1) ...................................... 5

      a. Plaintiffs lack standing to sue under a 42 U.S.C. § 1985(1) conspiracy and
        failure to prevent a 1985(1) conspiracy under 42 U.S.C. § 1986 (Counts I
        and II) ........................................................................................................ 6

      b. Plaintiffs lack standing to sue under the D.C. Bias-Related Crimes Act
        (Count III) ................................................................................................. 7

      c. Plaintiffs lack standing to sue under Assault and Battery (Counts IV and V) .............. 9

      d. Plaintiffs lack standing to sue under Negligence (Count VI) ....................... 9

   II. Plaintiffs' Fail to State a Claim for Relief Pursuant to Rule 12(b)(6) ............................... 10

      a. Legal Standard ......................................................................................... 10

      b. Plaintiffs plead insufficient facts to establish a 42 U.S.C. § 1985(1)
        conspiracy (Count I) ................................................................................. 11

      c. Plaintiffs plead insufficient facts to establish that Ronald Mele failed to
        prevent a 1985(1) conspiracy under 42 U.S.C. § 1986 (Count II) .............................. 13

      d. Plaintiffs plead insufficient facts to establish claims under the D.C. Bias-
        Related Crimes Act (Count III) ...................................................................... 14

      e. Plaintiffs plead insufficient facts to establish claims of Battery and Assault
        (Counts IV and V) ....................................................................................... 16

      g. Plaintiffs fail to plead sufficient facts to establish a claim of Negligence
        (Count VI) ................................................................................................. 18

   III. Counts I-VI fail to withstand basic First Amendment precedent and must be dismissed
   because they depend on Mr. Mele's protected speech, expressive conduct, freedom of
   association, and right to petition the government ...................................................... 19

      a. Constitutionally protected speech and assembly and unlawful violence. ................... 20

      b. Three percenter Membership ......................................................................... 23

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

\* *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 10, 13

*Atherton v. D.C. Off. of Mayor*, 567 F.3d 672 (D.C. Cir. 2009) ................................. 13

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ......................... 5

\* *Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) ................................................. 12, 19

\* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 10, 11

\* *Black Lives Matter D.C. v. Trump*, No. 20-CV-1469, 2021 WL 2530722 (D.D.C. June 21, 2021) ........................................................................................................ 14

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .............................................................. 22

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ................ 19

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, (D.C. Cir. 1997) ............. 11

\* *Estate of Boyland v. United States Dep't of Agric.*, 913 F.3d 117 (D.C. Cir. 2019) .......... 6, 9

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ....................................... 11

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001) ..................................................................................................................... 5

*Graves v. United States*, 961 F. Supp. 314 (D.D.C. 1997) ......................................... 13

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .......................................... 17, 18

\* *Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002) ..................................................... 12, 19

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192 (D.C. Cir. 1992) ................................... 5

\* *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) .............................................................................................................. 19, 20

*Kowal v. MCI Comm'ns Corp.*, 16 F. 3d 1271 (D.C. Cir. 1994) ................................. 11

\* *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019) ......................... 9, 15, 16

*Lipsman v. Sec'y of the Army*, 257 F. Supp. 2d 3 (D.D.C. 2003) .................................. 5

\* *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................. 5, 6, 9, 10

*Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Ct. App. 1973) .......................... 18

*McCracken v. Walls-Kaufman*, 717 A.2d 346 (D.C. Ct. App. 1998) .......................... 18

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ..................................................................................................... 19

*Moore v. Castro*, 192 F. Supp. 3d 18 (D.D.C. 2016) ................................................... 14

*Morgan v. District of Columbia*, 550 F. Supp. 465 (D.D.C. 1982) ............................ 12

\* *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). ................................... 21, 22

*Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439 (D.D.C. 2018) ............ 12

*Noto v. United States*, 367 U.S. 290 (1961) ............................................................... 24

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................... 11

*Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978) ...................................................... 19

*Scales v. United States*, 367 U.S. 203 (1961). ........................................................... 23

\* *Snyder v. Phelps*, 562 U.S. 443 (2011) ............................................................... 19, 20

*Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977) ....................................... 19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................ 5

*U.S. v. Mele, 21-CR-00392-RCL* ................................................................................ 2

**Statutes**

18 U.S.C. § 201 (1976) ............................................................................................... 19

\* 42 U.S.C §1985 ........................................................................................ 1, 6, 11, 13, 14

\* 42 U.S.C §1986 ................................................................................... 1, 6, 13, 14

D.C. Code § 22-1322 .................................................................................................. 15

D.C. Code § 22-3152(1) ............................................................................................... 8

\* D.C. Code § 22-3704(a) ...................................................................................... 7, 8, 15

D.C. Code §§ 22-3153 ........................................................................................... 7, 8

D.C. Code §22-1322 ..................................................................................................... 7

D.C. Code §22-303 ....................................................................................................... 7

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................... 16

Buildings & Grounds | Architect of the Capitol (aoc.gov); https://www.aoc.gov/explore-capitol-campus/buildings-grounds ............................. 3

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

**Rules**

Fed. R. Civ. P. 12 .................................................................................................. 5, 11

**Constitutional Provisions**

U.S. CONST., ART. III ................................................................................................ 5

## INTRODUCTION

Plaintiffs allege, without factual grounds, that Ronald Mele and other Defendants conspired to use force, intimidation, and threats to prevent the Biden Harris administration from taking office, to prevent Congress from counting the electoral votes, and to prevent the Capitol Police from carrying out their lawful duties, all while being pervaded with racism and white supremacy.

The object of this lawsuit is to further divide this nation by racial ethnicity and political affiliation through Plaintiffs' use of inflammatory language, continually referring to 42 U.S.C §§1985, 1986 as the Ku Klux Klan Act, pleading each Plaintiffs' racial ethnicity, yet failing to do the same for each Defendant, and mentioning the word white supremacy a grand total of fifteen times. The Plaintiffs go above and beyond to create a narrative of racism, and yet redressing Plaintiffs' alleged injuries is of secondary importance in the Complaint. For the Plaintiff officers are the vehicle by which their counsel aim to prove the more sensational claim, that these twenty-six Defendants in particular "caused" Congress's electoral certificate-counting delay. Significantly, out of the over 600 nonparty defendants who have been criminally charged on that basis it is unclear why Plaintiffs' counsel decided that Mr. Mele and other defendants who played a much less significant role in the events that occurred on January 6, 2021, have been named as defendants in this case.

However, it is clear that the Complaint has used the Plaintiff officers around this January 6 "Capitol Attack" chess board with an eye on political pieces bigger than they and Mr. Mele, who are mere props in this case, because although all six Counts allege that these Defendants caused these officers' injuries, it does not allege any facts showing they did. Hidden in the middle of their Complaint Plaintiffs plead by-the-by that they do not know who caused the

injuries they come around to alleging on page 62. (Compl. at ¶¶ 156-164). The essence of the Complaint is that Plaintiffs claim the identified Defendants "caused" their injuries in this sense: some unidentified protesters among the thousands present at the Capitol that day injured them; Defendants were present in D.C. the same day and audibly shared the same politics and sentiment toward the government; so, Defendants are liable. This is not a cognizable theory of liability under any claim.

Additionally, the complaint is rife with false, misleading, and embellished allegations that are conclusory and wholly deficient of facts that state a claim for relief. The Complaint shrewdly enmeshes all Defendants' statements, social media postings, messages, communications, etc. in an attempt to create an impression of collusion, conspiracy, aiding, abetting, and some sort of planned attack as a common thread between all twenty-six named Defendants, including the former President Trump, all of whom have only one thing in common, being in Washington D.C. on January 6, 2021.

Last, Mr. Mele is currently facing criminal charges in this district court, stemming from the events alleged to have occurred on January 6, 2021, in Washington D.C. *See U.S. v. Mele, 21-CR-00392-RCL*. Since Plaintiffs have failed to sufficiently plead subject matter jurisdiction, have failed to state a claim upon which relief can be granted, and conflict with basic First Amendment precedent the Complaint and all counts against Mr. Mele must be dismissed.

## BACKGROUND

This lawsuit arises out of the events that occurred in Washington D.C., in the areas surrounding the United States Capitol grounds, and inside of the United States Capitol Building on January 6, 2021. (Compl. at ¶¶ 2, 8). On this date Plaintiffs were stationed at the United States Capitol Building as United States Capitol Police Officers. (Compl. at ¶ 1). The Plaintiffs

allege that Ronald Mele "is a resident of Temecula and a member of the Three Percenters…"
(Compl. at ¶ 45) which is factually correct. However, the Plaintiffs mislead the Court when it
states "[h]e breached police barricades on the United States Capitol grounds on January 6, 2021."
*Id*. In making this statement, the Plaintiffs fail to distinguish that the U.S. Capitol grounds
"consists of the U.S. Capitol building," several other buildings, "…and over 270 acres of
grounds."[1] Moreover, this statement is incorrect because it is pled that Mr. Mele was at the steps
next to the Upper West Terrace. (Compl. at ¶ 140(e)). However, no police barricades were
breached by Mr. Mele when he ascended upon the steps next to the Upper West Terrace because
by the time he arrived in that general area there were no police barricades in sight, and no sign or
person of authority to tell him or others in the area otherwise.

The Complaint goes on to allege, "[d]efendants conspired to use force, intimidation, and
threats to prevent Joe Biden and Kamala Harris from taking office, to prevent Congress from
counting the electoral votes… to prevent the Capitol Police from carrying out their lawful duties"
(Compl. at ¶ 5) and that, "Defendants' actions violated the federal Ku Klux Klan Act, the D.C.
Bias-Related Crimes Act, and other laws." (Compl. at ¶ 3.) Further conclusory allegations made
by the Plaintiffs claim that "[d]efendants planned and coordinated among themselves and with
others to come to Washington, D.C., and violently attack the United States Capitol and the law
enforcement officers defending it." (Compl. at ¶ 6) wherein, "[d]efendants' conspiratorial acts
directly resulted in violence against the Capitol and the police officers who defended it,
including Plaintiffs…and caused millions of dollars of damage to the Capitol Building and
grounds…" (Compl. at ¶¶ 8, 10).

The Plaintiffs also allege that Mr. Mele's several chats, messages, social media posts, and

---

[1] Buildings & Grounds | Architect of the Capitol (aoc.gov); https://www.aoc.gov/explore-capitol-campus/buildings-grounds

videos claim that he "brought gear such as medical kits, radios, bear spray, knives, plates, flags, goggles, and helmets, " "Stormed the Capitol",  "rented an SUV because he needed room for the gear" all to provoke and aid in a violent mass attack  the Capitol and those protecting it, all in order to support President Trump. (Compl. at ¶¶ 1, 100, 101, 134, 140(e), 142.) However, every single allegation made in the complaint regarding Mr. Mele is either a half-truth or embellished, and based upon the half-truths and embellished allegations, Plaintiffs have brought a total of six claims against Mr. Mele. However, in the entirety of the 81-page Complaint where Mr. Mele is referenced approximately 17 times, (Compl. at ¶¶ 45, 99(a), 101, 134, 140(e), 142, 170, 179, 195, 213(a), 215), none pleads any fact in support of the above conclusory assertions with respect to Mr. Mele, whom the federal government does not accuse of violence, attempted violence or planning to commit violence on January 6.

It should be needless to say that these "facts" do not support Plaintiffs' sweeping claims that Mr. Mele is personally responsible for any of the Plaintiffs' injuries. It should be needless to add that Plaintiffs' counsel have abused the privilege of filing claims in Court, forcing Mr. Mele and all other defendants to expend significant resources responding to them, particularly where those claims are based on criminal charges which are themselves abusive.

Even in light of these minor allegations, and mainly legal conclusions, the complaint is riddled with factual errors that a diligent review of the public record would have revealed; Plaintiffs lack standing to bring their claims; none of the six causes of action state a claim upon which relief can be granted; and the theories set forth underlying liability conflict with basic First Amendment Precedent. Therefore, Plaintiffs have met neither standard and the Court should dismiss the Complaint and each claim against Mr. Mele.

## ARGUMENT

### I. Plaintiffs' Lack Standing to Sue Pursuant to Rule12(b)(1)

The Court should dismiss Plaintiffs' claims against Ronald Mele under Rule 12(b)(1) for lack of jurisdiction. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' U.S. CONST., ART. III, § 2." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Id. (quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (original quotation marks and alterations). A challenge to the standing of a party, when raised as a motion to dismiss, proceeds pursuant to Rule 12(b)(1). *Lipsman v. Sec'y of the Army*, 257 F. Supp. 2d 3, 6 (D.D.C. 2003). "Because subject-matter jurisdiction focuses on the Court's power to hear the plaintiff's claim . . . a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim." *Id.* (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). It is the plaintiffs' burden to establish that the Court has subject matter jurisdiction. *Lujan*, 504 U.S. at 561. When considering whether it has jurisdiction, the Court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

To show an "injury in fact," a complainant must allege an injury that is "concrete and

particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. "The injury must also be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Estate of Boyland v. United States Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019), *cert. denied sub nom. Estate of Boyland v. Dep't of Agric.*, 140 S. Ct. 947 (2020) (quoting *Lujan*, 504 U.S. at 560).

Here, the Plaintiffs have not alleged facts that, even if true, would show their injuries were "fairly traceable" to Mr. Mele. The only factual allegation regarding Mr. Mele is that he "arriv[ed] January 5 [in Washington D.C.]" (Compl. at ¶ 131.) Beyond that, the Plaintiffs offer nothing but legal conclusions.

### a. Plaintiffs lack standing to sue under a 42 U.S.C. § 1985(1) conspiracy and failure to prevent a 1985(1) conspiracy under 42 U.S.C. § 1986 (Counts I and II)

In Count I, the Plaintiffs generally allege that the Defendants conspired to deprive them of their civil rights and in Count II, that the defendants failed to prevent others from so conspiring. (*Id.* at ¶¶ 168, 169 170, 175, 176, 179.) But again, there are no factual allegations specific to Mr. Mele.

The Plaintiffs allege that Mr. Mele, and several other Defendants planned and coordinated among themselves to come to Washington D.C. and "violently attack the Capitol" through traditional and social media (*id.* at ¶¶ 5,6), and planned to employ force, intimidation, and threats to overturn the outcome of the election (*id.* at ¶¶ 55, 64). But the Plaintiffs do not describe any actual meetings or discussions Mr. Mele attended, or any other facts that suggest he participated in or knew about the alleged conspiracy. Moreover, given the closer scrutiny required pursuant to a motion to dismiss under Rule 12(b)(1), the Plaintiffs have not met their burden.

As a result, the injuries the Plaintiffs allege in Counts I and II are not "fairly traceable" to

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

Mr. Mele, and the Court should dismiss Counts I and II against Mr. Mele for lack of standing.

> **b.** **Plaintiffs lack standing to sue under the D.C. Bias-Related Crimes Act (Count III)**

In Count III, Plaintiffs claim that Mr. Mele violated the D.C. Bias-Related Crimes Act ("D.C. Bias Act") via an "'intentional act that demonstrates an accused's prejudice based on the actual or perceived…political affiliation of a victim[.]'" (Compl. at ¶183) (quoting D.C. Code § 22-3704(a)). Moreover, they allege they incurred injuries "'as a result of'" such acts. *Id.* They allege that the intentional acts in question were terrorism, rioting and inciting to riot, and destruction of property under D.C. law, respectively. (Compl. at ¶184) (citing D.C. Code §§ 22-3153, 22-1322, 22-303). The Plaintiffs again claim that these occurred via conspiracy, against which Mr. Mele reiterates his argument that the Plaintiffs' have failed to properly allege any conspiracy on his part. *See supra* part I(a); *See infra* II(b); *cf.* Compl. at 73-75 (¶¶191, 194, 198). They also claim Mr. Mele engaged in these acts directly, but do not state a claim under any of these statutes much less establish them as intentional or designated acts that give rise to a claim under the D.C. Bias Act.

Plaintiffs plainly lack standing under the D.C. Bias Act because it provides a civil cause of action for

> …any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice based on the actual or perceived…political affiliation of a victim of the subject designated act…

D.C. Code § 22-3704(a).

The Complaint explicitly alleges that "[t]he intended victims of Defendants' [D.C. Bias Act violations] were *Democratic members of Congress, some Republican members of Congress, and Vice President Pence*, whom Defendants perceived to be endorsing Democrats Joe Biden and Kamala Harris by announcing the election results"— not Plaintiff police officers. (Compl. at

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

¶ 188) (emphasis added). The Complaint also explicitly alleges that Mr. Mele's alleged "prejudice based on the actual or perceived political affiliation" was directed at those "victims"—not at Plaintiff police officers. (*Id.* at ¶ 189).

Even construed at its broadest, the Plaintiffs fail to allege a causal connection under the D.C. Bias Act for either destruction of property under D.C. Code section 22-303 or under the Anti-Terrorism Act in D.C. Code section 22-3152(1). To bring an action under the D.C. Bias Act, one must be injured as "*a result* of an intentional act[.]" D.C. Code 22-3704(a) (emphasis added). Under the Anti-Terrorism Act, the Plaintiffs' allegations of terrorism are only in regard to property damage. (Compl. at ¶191) (citing D.C. Code § 22-3153(i), (l)). Likewise, they allege destruction of property specifically as an intentional act. (*Id.* at ¶198). As to themselves, the Plaintiffs only allege injury to their persons. (*Id.* at ¶¶ 157-164). They do not allege that any of these injuries occurred via property damage, such as while trying to extinguish a fire set to destroy property or the like.

There is no causal connection between property damage and the Plaintiffs' injuries. The Plaintiffs' may respond that, as to the Anti-Terrorism Act, biased destruction of property caused intimidation or coercion of a unit of government which, somehow, caused their personal injuries. *See id.* at (¶¶192-193). Temporally speaking, this makes no sense, and the *actus reus* for the intentional act remains destruction of property, which must cause the injury. D.C. Code § 22-3704(a). In any event, the Plaintiffs' have not alleged any concrete or particular action that Mr. Mele himself engaged in any destruction of property whatsoever, and thus they cannot proceed with these claims as intentional acts under the D.C. Bias-Related Crimes Act.

None of the injuries claimed by the individual Plaintiffs in Count III is "concrete and particularized" nor "fairly traceable" to Mr. Mele, and the Court should dismiss Count III against

Mr. Mele for lack of standing.

    **c.**    **Plaintiffs lack standing to sue under Assault and Battery (Counts IV and V)**

In Counts IV and V, Plaintiffs allege that Mr. Mele aided and abetted the alleged assaults and batteries against them and conspired to commit them, respectively. (Compl. at ¶¶201, 203, 207, 209). Mr. Mele re-alleges that the Plaintiffs have not adequately pled that he was part of a conspiracy. *See supra* part I(a); *See infra* II(b); (*cf.* Compl. at ¶¶201, 209). This leaves aiding and abetting assault and battery, for which Plaintiffs also fail to establish that the Court has subject matter jurisdiction.

"In order to be liable for aiding and abetting, Plaintiffs must have alleged that (1) the party or parties Defendants aided committed [assault or] battery, (2) Defendants were generally aware of their role in the tortious activity, and (3) Defendants knowingly and substantially assisted in the battery." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 50 (D.D.C. 2019). The Plaintiffs each allege exposure to pepper spray and other noxious gasses as harmful or offensive contacts, each allege apprehension of imminent harmful or offensive contacts, and some allege additional harmful or offensive contacts. *See* Compl. at 62-65 (¶¶157-163). However, the Plaintiffs have failed to allege facts to show their injuries were "fairly traceable" to Mr. Mele when Plaintiffs do not describe any action of Mr. Mele, and in fact their direct claims here are against John Doe defendants (Compl. at ¶¶200, 206), which is the result of the independent action of some third party not before the court. *Estate of Boyland*, 913 F.3d at 123 (D.C. Cir. 2019), *cert. denied sub nom. Estate of Boyland v. Dep't of Agric.*, 140 S. Ct. 947 (2020) (quoting *Lujan*, 504 U.S. at 560).

As a result, the injuries the Plaintiffs allege in Counts IV and V are not "fairly traceable" to Mr. Mele, and the Court should dismiss Counts IV and V against him for lack of standing.

    **d.**    **Plaintiffs lack standing to sue under Negligence (Count VI)**

In Count VI, the Plaintiffs allege negligence, which is based off a supposed "duty to act reasonably and conform to the standards of conduct set out in criminal statutes." (Compl. at ¶212). The Plaintiffs then cite three different criminal laws that Mr. Mele was allegedly negligent in violating, (*Id.* at ¶¶213-218), for which Plaintiffs fail to establish that the Court has subject matter jurisdiction.

The Plaintiffs have failed to allege facts to show their injuries were "fairly traceable" to Mr. Mele when Plaintiffs describe actions of physical violence, riots, and attacks wholly "hypothetical and conjectural" (*Lujan*, 504 U.S. at 560.) by Mr. Mele's alleged mere presence "at the steps next to the Upper West Terrace[.]" (*Id.* at ¶ ¶134,140).

None of the injuries claimed by the individual plaintiffs in Count VI is "fairly traceable" to Mr. Mele, and the Court should dismiss Count VI against him for lack of standing.

All in all, the Court should dismiss all Counts against Mr. Mele for lack of standing under Rule 12(b)(1).

## II. Plaintiffs' Fail to State a Claim for Relief Pursuant to Rule 12(b)(6)

### a.      Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege sufficient factual allegations that, if accepted as true, would state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although a complaint need not contain detailed factual allegations, it must allege enough facts to raise a plaintiff's claims beyond the level of speculation, and must "nudge" the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

 Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alterations in original). Further, the court "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F. 3d 1271, 1276 (D.C. Cir. 1994).

 When a claim is challenged under Rule 12(b)(6), the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. at 555; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); *Kowal*, 16 F.3d at 1276.

**b.      Plaintiffs plead insufficient facts to establish a 42 U.S.C. § 1985(1) conspiracy (Count I)**

 The Plaintiffs bring their first claim under 42 U.S.C. § 1985(1), conspiracy to interfere with civil rights:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

*See* Compl. at ¶ 167. The Plaintiffs' count fails to state a claim against Mr. Mele under this statute because they fail to allege a conspiracy involving Mr. Mele.

 "Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy,

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'" *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (quoting *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002)). The Plaintiffs simply allege in this count that "TRUMP agreed with…MELE" and "HOSTETTER, TAYLOR, WARNER, MARTINEZ, KINNISON and MELE agreed with each other", while claiming that details of an agreement to take part in an unlawful action or a lawful action in an unlawful manner lie somewhere in the 166 paragraphs preceding the counts of their complaint. (Compl. at ¶155a, i). But there are no details whatsoever to support these claims.

"To allege a conspiracy, the plaintiff must present factual allegations to provide plausible support that 'defendants manifested the specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive.'" *Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 450 (D.D.C. 2018) (citing *Morgan v. District of Columbia*, 550 F. Supp. 465, 470 (D.D.C. 1982)). This requires "more than just conclusory allegations of an agreement," and must include "a factual basis for events, conversations, or documents that indicate an agreement between defendants to violate his rights." *Nanko Shipping, Guinea*, 330 F. Supp. 3d at 450.

The Plaintiffs offer nothing more than conclusory allegations of an agreement. Plaintiffs simply state, that Mr. Mele, and several other Defendants conspired with each other to accomplish the objectives detailed in this complaint. (Compl. at ¶ 170.) Plaintiffs make no distinctions among the "defendants;" a group that includes a broad range of people, from the former President of the United States to political groups and organizations and other unnamed defendants. The Plaintiffs do not identify an actual meeting, discussion, or document that evidences any communication, let alone a conspiratorial agreement between Mr. Mele and the

other defendants. *Nanko Shipping, Guinea*, 330 F. Supp. 3d at 450 (allegations must include "a factual basis for events, conversations, or documents that indicate an agreement between defendants to violate his rights"). The Plaintiffs' conclusory allegations do not provide "plausible support" for the claim that Mr. Mele conspired with the former President of the United States or anyone else. *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) ("The plaintiff has failed to allege that there was ever an agreement or 'meeting of the minds' between any of the defendants.").

The Plaintiffs' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action under § 1985[(1)]. *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (citing *Iqbal*, 556 U.S. at 677).

Therefore, plaintiffs do not meet any of these requirements to allege a conspiracy involving Mr. Mele and the Court should dismiss Count I against Mr. Mele.

c.     **Plaintiffs plead insufficient facts to establish that Ronald Mele failed to prevent a 1985(1) conspiracy under 42 U.S.C. § 1986 (Count II)**

The Plaintiffs bring their second claim under 42 U.S.C. § 1986, that Mr. Mele is liable for neglecting to prevent a 1985(1) conspiracy:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

*See* Compl. at ¶ 174. The Plaintiffs' count fails to state a claim against Mr. Mele under this statute because they fail to allege a 1985 conspiracy involving Mr. Mele. By its very terms, § 1986 requires the plaintiffs to show the existence of a §1985(1) conspiracy, that Mr. Mele knew of the conspiracy, that he had "power to prevent or aid in preventing" it, and that he neglected to prevent it. Again, the plaintiffs have not alleged sufficient facts to establish any of these elements.

Without any supporting detail in their factual allegations, in Count II the Plaintiffs allege Mr. Mele participated in a conspiracy (or, under 42 U.S.C. § 1986, neglected or refused to prevent violations of 42 U.S.C. § 1985(1)) by "attacking the United States Capitol, instructing their followers and fellow attackers not to attack the Capitol, and informing law enforcement of the plans to attack the Capitol to stop the count of electoral votes." (Compl. at ¶179).

Moreover, the plaintiffs allege no facts at all about Mr. Mele's ability to prevent the conspiracy. Instead, they simply offer "threadbare recitals" of the statutory language: "Each Defendant had knowledge that the wrongs conspired to be done, as set out in Count I, were about to be committed, and neglected or refused to prevent or aid in preventing those wrongs. Each such Defendant was in a position and had the power to prevent, or aid in preventing, the wrongs conspired to be done as asserted in Count I." (Compl. at ¶ 160, 161).

"'A plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986.'" *Black Lives Matter D.C. v. Trump*, No. 20-CV-1469, 2021 WL 2530722 at *11 (D.D.C. June 21, 2021) (quoting *Moore v. Castro,* 192 F. Supp. 3d 18, 36 (D.D.C. 2016), *aff'd sub nom. Moore v. Carson,* 775 F. App'x 2 (D.C. Cir. 2019)).

Thus, the Court should dismiss Count II against Mr. Mele.

**d.      Plaintiffs plead insufficient facts to establish claims under the D.C. Bias-**

**Related Crimes Act (Count III)**

The Plaintiffs claim that Mr. Mele violated the D.C. Bias-Related Crimes Act of 1989 ("D.C. Bias Act").

The Plaintiffs allege that Mr. Mele engaged in rioting or incited a riot, and thus committed a designated act for purposes of the Bias Act that caused injury to the Plaintiffs. (Compl. at ¶¶194-195, 197) (citing D.C. Code § 22-1322). They allege he engaged in the riot, by joining with hundreds of attackers, and further aided and abetted the attack, but fail to establish these claims. *Cf. infra* part II(e) *with* (Compl. at ¶195-196). This law is terse: "A riot in the District of Columbia is a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons." D.C. Code § 22-1322. The Plaintiffs fail to state a claim that Mele engaged in a riot. (Compl. at ¶195).

The law permits a cause of action for:

> …an intentional act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, homelessness, disability, matriculation, or political affiliation of a victim of the subject designated act shall have a civil cause of action…

D.C. Code § 22-3704(a). The law requires that some "intentional act" occur, such as h[olding] up signs clearly indicating their purpose for protesting, and that supporters pushed through law enforcement in order to attack protesters while some supporters yelled anti-Kurdish slurs. *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 58 (D.D.C. 2019). Plaintiffs have only alleged that Mr. Mele's acts were motivated by political affiliation bias (Compl. at ¶185). The Plaintiffs, by their own pleadings, argue that the actions in this count were directed toward both Democrats and Republicans. (Compl. at ¶188), which makes sense because the January 6

protests were in regard to perceived election fraud during the 2020 elections. A staunch political

disagreement over a contentious issue, and activities arising from it cannot be considered bias

against a political affiliation as pled here. *See Bias*, Black's Law Dictionary (11th ed. 2019) ("A

mental inclination or tendency; prejudice; predilection").

Furthermore, where Plaintiffs fail to plead that a defendant has committed an intentional

act, no liability can attach. Here, the Plaintiffs have not alleged that one of their members

suffered an intentional act committed by Mr. Mele against them—the necessary predicate for the

D.C. Bias Act to apply. Instead, they are simply upset with the inner thoughts of Mr. Mele, his

social media posts about electoral concerns, and his messages regarding a trip to Washington

D.C., which are not proper bases upon which to penalize him under the D.C. Bias Act.

Being present on the Capitol grounds, as Plaintiffs allege, does not rise to an act of

terrorism, inciting a riot, or destruction of property. (Compl. at ¶195). As a result, the Court

should dismiss Count III against Mr. Mele.

### e.   Plaintiffs plead insufficient facts to establish claims of Battery and Assault (Counts IV and V)

The Plaintiffs allege that Mr. Mele aided and abetted the alleged assaults and batteries

against them and conspired to commit them, respectively. (Compl. at ¶¶201, 203, 207, 209). Mr.

Mele re-alleges that the Plaintiffs have not adequately pled that he was part of a conspiracy. *See*

*supra* parts I(a), II(b); *cf.* Compl. at ¶¶203, 209). This leaves aiding and abetting assault and

battery, for which Plaintiffs also fail to state a claim.

"In order to be liable for aiding and abetting, Plaintiffs must have alleged that (1) the

party or parties Defendants aided committed [assault or] battery, (2) Defendants were generally

aware of their role in the tortious activity, and (3) Defendants knowingly and substantially

assisted in the [assault or] battery." *Kurd*, 374 F. Supp. at 50 (D.D.C. 2019). The Plaintiffs each

allege exposure to pepper spray and other noxious gasses as harmful or offensive contacts, each

allege apprehension of imminent harmful or offensive contacts, and some allege additional

harmful or offensive contacts. (*See* Compl. at ¶¶157-164). Plaintiff McElroy alleges that he

"responded to a call for officers at the Lower West Terrace door area. When he arrived at each

area, he was immediately hit by clouds of mace and bear spray from Defendants and their co-

conspirators[.]" (*Id.* at ¶158). Plaintiff Marshall alleges that she was assaulted on the upper steps

of the west side of the Capitol and inside. (*Id.* at ¶161). Plaintiff DeRoche alleges that he was

assaulted on the north side of the west front steps of the Capitol. (*Id.* at ¶163). Mr. Mele, they

allege, was "at the steps next to the Upper West Terrace[.]" (*Id.* at ¶ ¶134,140). The Plaintiffs do

not contend that they were assaulted by Mr. Mele or that he encouraged an assault on any one of

them at said steps next to the Upper West Terrace, when Mr. Mele was allegedly present or

otherwise.

Even affording the broadest indulgence to aiding and abetting doctrine, the Plaintiffs still

fail to state a claim. Their direct claims here are against John Doe defendants. (Compl. at ¶¶200,

206). That they do not know who these people are but can assert that Mr. Mele (among others)

aided them is questionable. The Plaintiffs also do not allege any facts that would show Mr. Mele

was aware of the alleged assault or battery against any of the Plaintiffs.

Finally, perhaps most importantly, Plaintiffs allege no facts that would demonstrate

knowing and substantial assistance. The Plaintiffs' allegations meet none of the six factors of

substantial assistance recognized by the D.C. Circuit. First, the Plaintiffs do not allege Mr.

Mele's alleged assistance—words—contributed to their alleged attackers' hysteria, and very

likely cannot given their respective locations at the time of the acts. *Cf. Halberstam v. Welch*,

705 F.2d 472, 484 (D.C. Cir. 1983). Second, they do not allege any amount or kind of assistance.

*Cf. id.* Third, none of the Plaintiffs allege that Mr. Mele was in their vicinity at a point when he could be of substantial assistance to these alleged assaults and batteries, much less at any point on January 6. *Cf. id.* Yet again, the Plaintiffs cannot credibly assert a relationship between Mr. Mele and the alleged tortfeasors because they cannot even name the alleged tortfeasors. *Cf. id.* Fifth, the Plaintiffs do not allege Mr. Mele's state of mind: to the contrary, they complain of being struck and exposed to noxious gasses such as bear spray, while Mr. Mele was alleged to have said "We Stormed the Capitol" at the steps next to the Upper West Terrace. *Cf. id.* Finally, the Plaintiffs identify no bookends to Mr. Mele's alleged assistance, or "[t]he length of time [he] has been involved with a tortfeasor." *Cf. Halberstam*, 705 F.2d at 484.

Mr. Mele did not assault nor batter the Plaintiffs or anyone that day, conspire to do so, or aid and abet anyone who did. The Plaintiffs have failed to state a claim otherwise, and the Court should dismiss Counts IV and V against Mr. Mele.

### g.   Plaintiffs fail to plead sufficient facts to establish a claim of Negligence (Count VI)

The Plaintiffs' final count is negligence. This is based off a supposed "duty to act reasonably and conform to the standards of conduct set out in criminal statutes." (Compl. at ¶212). The Plaintiffs then cite three different criminal laws that Mr. Mele was allegedly negligent in violating. *Id.* (¶¶213-218). But one may only bring a cause of action for negligence for violating a statute that does not provide for a cause of action when, among other things, "'the statue imposes specific duties'" on a defendant. *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. Ct. App. 1998) (quoting *Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Ct. App. 1973)).

None of the criminal statutes that the Plaintiffs cite impose specific duties on Mr. Mele— they apply to every member of the public. Thus, they do not give rise to a civil cause of action.

*Cf. McCracken*, 717 A.2d at 354 (addressing a statute that placed duties on providers of

"'professional services of a medical, therapeutic, or counseling . . . nature'" (citation omitted));

*Marusa*, 484 F.2d at 834 (finding specific duties for tavern owners under regulations governing

the sale of liquor); *see also Ray v. Proxmire*, 581 F.2d 998, 1001 (D.C. Cir. 1978) (finding no

private cause of action or "duty of care in a common-law-tort cause of action" under 18 U.S.C. §

201 (1976)).

   The Court should therefore dismiss Count VI against Mr. Mele.

### III. Counts I-VI fail to withstand basic First Amendment precedent and must be dismissed because they depend on Mr. Mele's protected speech, expressive conduct, freedom of association, and right to petition the government

   Plaintiffs' theories of tort liability do not withstand the First Amendment. "No citation of

authorities is needed for the proposition that the rights our founding fathers set down in the First

Amendment are the subject of special protection by the courts." *Stern v. U.S. Gypsum, Inc.*, 547

F.2d 1329, 1346 (7th Cir. 1977) (§ 1985(1) case). An individual's rights to speak, assemble, and

petition the government for redress of grievances are afforded the strongest presumption against

infringement. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466

U.S. 789, 816 (1984) ("[P]olitical speech is entitled to the fullest possible measure of

constitutional protection."). "[S]peech on 'matters of public concern' . . . is 'at the heart of the

First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (quoting *Dun &*

*Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)).

   This Circuit has held that First Amendment protections apply to section 1985 claims.

*Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004); *Hall v. Clinton*, 285 F.3d 74, 83 (D.C.

Cir. 2002). This Court has also held that activities of attendance at, and participation in political

rallies are such activities that lie at the core of the First Amendment. *Jeannette Rankin Brigade v.*

*Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972).

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder*, 562 U.S. at 452. That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Id*. Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Id*.

Nearly every reference to Mr. Mele in the Complaint amounts to a demand that the Court penalize the exercise of various First Amendment rights. (Compl. at ¶¶ 45, 99, 101, 134, 140, 142, 170.) Even if Counts I-VI were properly pleaded, they should be dismissed to the extent the underlying statutes and claims, as applied to Mr. Mele, conflict with his constitutional right to freedom of speech, expressive conduct, freedom of association, and freedom to petition the government.

### a. Constitutionally protected speech and assembly and unlawful violence.

Plaintiffs' claim that evidence of its Ku Klu Klan Act claim lies in Mr. Mele's attendance at, and participation in, political rallies. (Compl. at ¶¶ 99, 134) is at the heart of First Amendment protection. Plaintiffs allege that, on January 6, although Mr. Mele himself committed no acts of violence, others committed such acts, including against Plaintiffs. (Compl. at ¶¶ 156-64). According to Plaintiffs then, Mr. Mele's presence at the Capitol with a group of protesters on January 6 transformed from protected speech and expressive conduct explicitly protected by this Court's precedent, to a violation of the Ku Klux Klan Act, because others committed acts of violence in the same place. *See Jeannette Rankin Brigade*, 342 F. Supp. at 585 (finding unconstitutional U.S. Capitol Police's refusal to allow 5,000 protesters on the steps of the Capitol in protest of the Vietnam War).

Essentially, Plaintiffs have claimed that because the assembly was mixed with violence the conduct should lose its constitutional protection, however, claims like that have been

MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), (6)

unanimously rejected by the Supreme Court. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886,

888-89 (1982). In the *Claiborne Hardware* case, the NAACP along with a church and several

hundred black persons voted to place a boycott on white merchants in Mississippi where many of

the participants constitutionally picketed and boycotted stores. *Claiborne Hardware Co.*, 458

U.S. at 889. During the boycott, some boycotters turned violent and fired shots into homes, threw

bricks through windows, slashed car tires, and threatened to assault boycott breakers. *Id.* at 904.

Seventeen white merchants filed a complaint against the NAACP and many others under

common-law tort theory, and ultimately securing joint and several liability judgments against all

boycotters for the total economic damages—whether or not each member committed acts of

violence. *Id.* at 886, 889. The Mississippi Supreme Court concluded the entire boycott was

unlawful and rejected the nonviolent boycotters' reliance on the First Amendment because

among other reasons, some of its members used violence. *Id.* at 895.

The Supreme Court reversed the lower courts decision and held that, "[C]ivil or criminal

disabilities may not be imposed on one who joins an organization which has among its purposes

the violent overthrow of the Government, unless the individual joins knowing of the

organization's illegal purposes *and with the specific intention* to further those purposes."

(Emphasis added). *Claiborne Hardware Co.*, 458 U.S. at 932. And "the burden of demonstrating

that [violence] colored the entire collective [assembly] . . .is not satisfied by evidence that

violence occurred or even that violence contributed to the success of the [protest]." *Id.* at 933.

Specifically, the Supreme Court begins its opinion by framing the First Amendment issue

as

> [t]he term "concerted action" encompasses unlawful conspiracies and
> constitutionally protected assemblies. The "looseness and pliability" of
> legal doctrine applicable to concerted action led Justice Jackson to note
> that certain joint activities have a "chameleon-like" character. The boycott

of white merchants…had such a character [tha]t included elements of criminality and elements of majesty.

*Id.* at 888.

In finding that the Mississippi Supreme Court erred, the Supreme Court held that members who picketed and made references to the possibility that "necks would be broken" and made threats of "social ostracism" and "vilification" did not lose their constitutional protection, however, those boycotters whose conduct was actually violent went beyond the pale of constitutional protection. *Claiborne Hardware Co.*, at 927, 933. The Supreme Court further found that the Mississippi Court incorrectly held nonviolent members accountable on the theory that the violent members' activities "contributed to" the boycott's success. *Id.* at 921.

Warning of "broken necks" to members of a group some of whom later engaged in violence did not exceed the bounds of protected speech set forth in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), which stated that the constitutional guarantees of free speech do not allow "forbid[ding] or proscrib[ing] advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Claiborne Hardware Co.*, 458 U.S. at 928. Nor did the expression of such violent language impose on the speaker a duty to "repudiate the acts of violence that occurred" in order to preserve constitutional protection. *Id.* at 929. Additionally, liability could not be imposed on the NAACP itself without a finding that it "authorized . . . or ratified [the] unlawful conduct" on which liability was based. *Id.* at 931.

Here, the Plaintiffs have not demonstrated that Mr. Mele's protected speech and expression went outside the bounds of protected speech when the Complaint merely mentions chats, messages, and social media posts of an intention to be in Washington D.C. on January 6.

Plaintiffs attempt to allege these messages, and chats are evidence of conspiracy and/or incited violence, however civil disabilities may not be imposed, and the Plaintiffs burden is not satisfied when the only evidence produced is that violence occurred or contributed to the protest.

The holding of *Claiborne Hardware* is clear and the Plaintiffs' claim that Mr. Mele should be held responsible for injuries they suffered in a protest turned riot is incorrect and barred by First Amendment precedent. Especially in light of the fact that Plaintiffs plead no facts showing that Mr. Mele committed acts of violence against anyone, much less against them specifically, nor do Plaintiffs plead facts showing that Mr. Mele intended to commit violent acts on January 6. Their claim that Mr. Mele's expressive conduct and protected speech is still responsible for others' acts of violence is barred by the First Amendment.

### b. Three percenter Membership

Plaintiffs' allegations that the Three Percenters organization is "an extremist, anti-government militia group that has a significant history of violence" (Compl. ¶ 42-45), and that Mr. Mele's membership in the organization equals evidence of a conspiracy to violate 42 U.S.C 1986 and 1985(1), and an intent to commit the torts in Counts I to VI. *Id*. Plaintiffs attempts to suppress Mr. Mele's association with the Three Percenters have been rejected in federal courts for over sixty years.

In 1961, the Supreme Court considered application of the Smith Act's clause prohibiting membership in organizations advocating the violent or forceful overthrow of the U.S. government, in particular the Communist Party. *Scales v. United States*, 367 U.S. 203 (1961). The Court noted that a "blanket prohibition of association with a group having both legal and illegal aims" would present "a real danger that legitimate political expression or association would be impaired." *Id*. at 229. To punish such association with such a group, there must be "clear proof that a defendant specifically intends to accomplish the aims of the organization by

resort to violence." *Id.* (cleaned up). In *Noto v. United States*, the Court emphasized that this

element of membership crime must be judged "according to the strictest law," *Noto v. United*

*States*, 367 U.S. 290, 299 (1961), otherwise

> there is a danger that one in sympathy with the legitimate aims of such an
> organization, but not specifically intending to accomplish them by resort
> to violence, **might be punished for his adherence to lawful and**
> **constitutionally protected purposes**, because of other and unprotected
> purposes which he does not necessarily share.

(Emphasis added). *Id.* at 299-300.

Here, Plaintiffs attempt to accomplish exactly what the Supreme Court noted was a real

danger. Mr. Mele's membership of the Three Percenters is a legitimate political expression and

association, and Plaintiffs are attempting to impair that First Amendment right. Additionally, in

light of reviewing Mr. Mele's intent and membership of the Three Percenters according to the

strictest law, Plaintiffs have failed to meet that burden because they are simply interested in

punishing Mr. Mele for his adherence to lawful and constitutionally protected purposes of being

a part of the Three Percenters. Plaintiffs have only provided conclusory allegations and half-

truths, none of which properly conveys the claims of violence and conspiracy that Plaintiffs

allege.

Moreover, in *Claiborne Hardware Co.*, the court was clear when it stated that, "Civil

liability may not be imposed merely because an individual belonged to a group, some members

of which committed acts of violence." 458 U.S. at 920. Where, here, Mele cannot be imposed

civil liability merely because others committed acts of violence around him and who belonged to

the same group he belonged to.

Since Plaintiffs do not plead that Mr. Mele specifically intended to commit the acts of

violence they allege other members of his group, or other groups, or the crowd committed, their

attempts to hold him civilly responsible are barred under *Claiborne Hardware*, *Scales*, and *Noto*

and the Complaint must be dismissed.

**NOTICE OF ADOPTION**

Defendant Ronald Mele adopts and joins the arguments of codefendants, to the extent that the arguments apply to him in this action.

**CONCLUSION**

Properly confined to the law, the Plaintiffs cannot assert facts that will state a claim against Mr. Mele or establish standing. The Plaintiffs present mere theories of conspiracy and aiding and abetting with conclusory allegations that do not establish a theory of liability between Mr. Mele and the Plaintiffs, and all of the acts described are protected free speech, assembly, and petition for redress of grievance clauses of the First Amendment.

For the foregoing reasons, Ronald Mele respectfully requests that the Court grant this motion and dismiss the Plaintiffs' Complaint in its entirety with prejudice.

Dated: January 16, 2022     Respectfully Submitted

            Bailey & Romero

By: _____

Steven C. Bailey
*Counsel for Ronald Mele*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2022, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system, which will send a notification of such filing to all counsel and registered parties.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on January 16, 2022, at San Diego, California.

By: _____
Steven C. Bailey
Bailey & Romero Attorneys at Law
2535 Kettner Blvd., Suite 2A1
San Diego, CA 92101

Tel: (530) 212-3407
Steven@stevencbailey.org

*Counsel to Ronald Mele*