# Council of the District of Columbia
# Report

District Building        14th and E Streets, N.W.        Washington, D.C.   20004        724-8000

To:        All Councilmembers

From:      Wilhelmina J. Rolark, Chairperson
           Committee on the Judiciary

Date:      October 18, 1989

Subject:   Bill 8-168, the "Bias-Related Crime Act of 1989"

### SUMMARY OF RECOMMENDATION

The Committee on the Judiciary to which was referred Bill 8-168, the "Bias-Related Crime Act of 1989," having considered the same, reports favorably thereon and recommends that the legislation pass.

### LEGISLATIVE HISTORY

February 23, 1989            Bill 8-168 was introduced in the Office of the Secretary by Councilmember Wilson and co-sponsored by Chairman Clarke

February 27, 1989            Bill 8-168 referred to the Committee on the Judiciary

June 8, 1989                 Public hearing on Bill 8-168

October 18, 1989             Mark-up and discussion of Bill 8-168

### SUMMARY OF CONTENTS                           PAGE

| | | |
|---|---|---|
| I. | Background and Need | 2 |
| II. | Purpose and Effect | 2 |
| III. | Section by Section Analysis | 2 |
| IV. | Summary of Public Hearing | 3 |
| V. | Executive Comments | 6 |
| VI. | Fiscal Impact Statement | 6 |
| VII. | Impact on Existing Law | 6 |
| VIII. | Committee Action | 6 |
| IX. | Attachments | 6 |

personal appearance, sexual orientation, family
responsibilities, physical handicap, matriculation, or
political affiliation.

(2) "Designated act" means a criminal act, including,
arson, assault, burglary, injury to property, kidnapping,
manslaughter, murder, rape, robbery, theft, or trespass, and
attempting, aiding, abetting, advising, inciting, conniving, or
conspiring to commit arson, assault, burglary, injury to
property, kidnapping, manslaughter, murder, rape, robbery,
theft, or trespass.


Sec. 3.  Collection and publication of data.

(a)  The Metropolitan Police force shall afford each crime
victim the opportunity to submit a written statement with his
or her complaint, that contains information to support a claim
that the designated act constitutes a bias-related crime.

(b)  The Mayor shall collect and compile data on the
incidence of bias-related crime.

(c)  Data collected under subsection (b) of this section
shall be used for research or statistical purposes and may not
contain any information that may reveal the identity of an
individual crime victim.

(d)  The Mayor shall publish an annual summary of the data
collected under subsection (b) of this section and transmit the
summary and recommendations based on the summary to the Council.

Sec. 4.  Bias-related crime.

(a)  A person found guilty of a bias-related crime shall be
fined not more than 1-1/2 times the maximum fine authorized for
the designated act and imprisoned for a term not more than
1-1/2 times the maximum term authorized for the designated act.

## I.    BACKGROUND AND NEED

Over the past few years, there has been an alarming increase in crimes motivated by bigotry and prejudice in the District and throughout the nation as a whole.  These bias-related or "hate" crimes include activities like burning a cross in front of a black family's home, painting a swastika on a synagogue, assaulting homosexuals as well as uttering of racial slurs. Irrespective of the basis of a bias-related crime, it is especially abhorrent because it has the effect of isolating an entire class of people, not just the individuals directly affected.

In response to the upsurge of bias-related crimes, several legislatures across the country have enacted laws to curb the proliferation of these crimes.  Bill 8-168, the "Bias-Related Crime Act of 1989," is the legislative response to hate crimes perpetrated in the District.  The Committee believes that treating such crimes seriously will send a powerful message to the victim and the rest of the community that such insidious forms of hatred will not be tolerated in the District and will be treated seriously by law enforcement authorities.

## II.    PURPOSE AND EFFECT

The purpose of Bill 8-168 is to provide for the collection and publication of data about bias-related crime, to enhance the penalties by 1-1/2 times the maximum fine or term authorized for persons who commit bias-related crimes, and to provide a mechanism whereby victims of bias-related crimes can seek appropriate civil relief irrespective of any criminal prosecution or the result of such prosecution.

## III.    SECTION BY SECTION ANALYSIS

### Section 1

States the short title of the Act.

### Section 2

Defines "bias-related crime" as a criminal act which is based primarily upon race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation.  The section also defines "designated act" as a criminal act pursuant to D.C. Code.

### Section 3

Provides that a crime victim may submit a written statement with his or her complaint, with information to support a claim that the act constitutes a bias-related crime.  Empowers the Mayor to collect and publish data regarding bias-related crimes.  However, data collected shall not contain any information that may reveal the identity of an individual crime victim.

## Section 4

Increases the penalty by 1-1/2 times above the present maximum prison term or fine authorized for the designated act, if the perpetrator is found guilty of a bias-related crime.

## Section 5

Establishes a civil cause of action for victims of bias-related crime and holds parents or legal guardians responsible for civil damages where a minor commits a bias-related offense and the parent or legal guardian has been deemed to contribute to the actions of the minor.

## Section 6

States the standard effective date of the Act.


IV.   SUMMARY OF PUBLIC HEARING

On June 8, 1989, the Committee on the Judiciary held a public hearing to receive comments on Bill 8-168, the "Bias-Related Crime Act of 1989."

The following persons submitted oral and written testimony to the Committee and responded to questions:

| | |
|---|---|
| David Bostrom | Metropolitan Police Department |
| Deanna Duby | D.C. Commission for Women |
| Maxine Woodland | Women's Program Managers Committee |
| Franklin Fung Chow | Asian Pacific Islander Affairs Advisory Commission |
| Claude Fontheim | Metro Area Anti-Defamation League of B'nai B'rith and the National Capital Region Of the American |
| Roger Doughty | Gay and Lesbian Activist Alliance |
| Letitia Gomez | ENLACE |
| Herb K. Schultz | Gurtrude Stein Democratic Club |
| Lawrence Washington | D.C. Coalition of Black Gay Men and Women |
| Chris Bates | Melvin Boozer Leadership Roundtable |
| Denise Snyder | D.C. Rape Crisis Center |
| Joseph Matarazzo | American Psychological Association |

David Bostrom, Director of Planning and Development Division, Metropolitan Police Department testified on behalf of the Executive branch.  The Executive branch fully supports the bill but recommended redefining "bias-related crime" and including a definition for "civil rights", as these terms are defined in New York's "Bias Related Violence and Intimidation Act."  Inspector Bostrom also suggested by substitution of the Department of Justice's new National Incident Based Reporting system for the data collection procedures outlined in section 3 (a).  This new reporting system will be adapted by the Metropolitan Police in January, 1990.

Deanna Duby, Commissioner, D.C. Commission for Women and Maxine Woodland, Representative, Women's Program Managers Committee testified in support of the bill. Ms. Duby stated that the collection and reporting of data provision of the bill would provide a clearer picture of the extent of bias-related crimes in the District. She applauded the increased penalties proposed by the bill, stressed the importance of the bill to women in the District, and urged its passage.

Franklin Fung Chow, Chairman - Asian Pacific Islander Affairs Advisory Commission recommended that ethnicity and language be included as bases upon which a bias-related crime may be designated.

Claude Fontheim testified on behalf of the Washington D.C./Maryland Regional Office of the Anti-Defamation League of B'nai B'rith and the Nation Capitol Region of the American Jewish Council. Mr. Fontheim stated that the collection and reporting of data provision in the bill would correct the District's inability to identify the level of hate crimes. He noted that the organizations also support the bill's provisions for the civil cause of action and parental liability. Noting, that a limited group of classifications has been the most effective, Mr. Fontheim recommended limiting the classifications to prejudice based on the actual or perceived race, color, religion, national origin or sexual orientation, similar to the enumerated categories in federal legislation pending before the Congress.

Roger Doughty of the Gay and Lesbian Activists Alliance, Letitia Gomez of Enlace, Herb K. Schultz of the Gertrude Stein Democratic Club testified in support of the legislation. The witnesses stated that they strongly support this legislation for 3 reasons: (1) data collection will enhance the ability to track and counter bias-related violence, (2) increased criminal penalties will send a message that bias-related crimes are not acceptable, will deter crime and encourage prosecutors to pursue these cases to their fullest extent and, (3) increased civil penalties will give victims the option of pursuing civil action against perpetrators of these acts, especially where criminal charges are not brought. They reported a dramatic increase in crimes perpetrated against homosexuals and submitted for the record a study detailing the extent and severity of such violence in the District.

Lawrence Washington of the Coalition of Black Gay Men and Women testified in support of the legislation. Mr. Washington observed that the bill's provision for data collection will pinpoint specific areas and types of violent acts perpetrated. This information, he argued, can be used to educate victimized groups about their rights and the importance of reporting bias-related crimes, as well as increasing society's sensitivity toward these persons. He also testified that the bill's increased criminal and civil penalties convey that bias-related crimes will be punished, not only with criminal sanctions but also civil suit for damages, thereby operating to deter bias-related crimes. In closing, Mr. Washington, urged expeditious action on the bill.

Chris Bates, Co-Chairperson of the Melvin Boozer Leadership Roundtable voiced his support for passage of the bill. Mr. Bates cited the National Gay and Lesbian Task Force findings that bias-related crimes against lesbians and gays is on the rise. He attributed this increase, in part, to the fact that many lesbians and gays fear reporting these crimes because it might reveal their sexual orientation. Mr. Bates testified that the proposed legislation will give victims the courage to report bias-related crimes and to seek restitution for their abuse. He added that the bill will also send an important message to perpetrators that such acts of violence will not be tolerated.

Ronald Davis, Lesbian and Gay Rights Committee of the District of Columbia Bar, presented testimony in favor of the legislation. Mr. Davis identified several infirmities in the current system, such as the public's unawareness to the problem due to lack of collection and reporting requirements, also the failure of prosecutors and judges to take meaningful actions against perpetrators. He noted that the Bar Committee viewed the bill as a welcome reprieve, subject to the following amendments: 1) redefine bias-related crime throughout the bill as being a "criminal act that is primarily based upon" the enumerated categories; 2) expand section 4 to require the sentencing judge to allow testimony from affected individuals or group and indicate how the bias-related crime figured in sentencing; and 3) include legal guardian in the third party liability provision, and limit third party liability to circumstances where fault can be attributed to the parent or legal guardian.

Denise Snyder, Executive Director of the D.C. Rape Crisis Center offered testimony in support of the bill. Ms. Snyder explained that the media's glamorizing rape and society's view that women are "safe and easy" victims make women especially vulnerable against these crimes. She also stated that women are less likely to report sexual assaults as evidenced by the Department of Justice's finding that rape is the most underreported crime. However, those women who do report find the process painful and frustrating and the outcome disappointing. Ms. Snyder strongly urged the passage of the bill because its increased criminal and civil penalties will compensate sexual assault survivors, and its data collection and reporting provisions will help provide evidence of the extent of the problems victims face.

Joseph Matarazzo, President, American Psychological Association submitted testimony in support of the legislation. His testimony focused on the psychological impact of crime and violence based on prejudice and discrimination. Mr. Matarazzo testified that bias-related crimes and violence have a detrimental affect on the mental health persecuted groups and hat it increase community tensions between groups. He stressed the importance of adopting systematic data collection to track the incidence and prevalence of these crimes that this data should be used to develop effective law enforcement intervention strategies and to educate the community. Mr. Matarazzo made the following recommendations: 1) creation of a task force to study the data collected on bias-related crimes, 2) reevaluation of he current program for victim services, 3) limit the categories to include only race, ethnicity, religion and sexual orientation.

V.   <u>EXECUTIVE COMMENTS</u>

Executive Comments on Bill 8-168 were provided by Inspector David Bostrom of the Metropolitan Police Department. A summary of those comments are contained in the Summary of Public hearing above. (See attachment 3).


V.   <u>FISCAL IMPACT STATEMENT</u>

The Executive Branch has indicated that since the Metropolitan Police Department has already made plans to revise its offense activity forms, there would be not additional printing associated with the collection and compilation of data concerning bias-related crimes. However, the cost associated with retention of bias-related crime reports and the victims' written complaint reports should be approximately $67,020 ($52,020 for 3 DS-5 File Clerk positions and $15,000 for a new automated filing system). Finally, since the bill provides for both criminal and civil actions, court overtime will become an additional cost incurred by the department. (See attachment IV).


VII.  <u>IMPACT ON EXISTING LAW</u>

Bill 8-168 would enhance criminal penalties by 1-1/2 times, if the criminal act is determined to be a bias-related crime.


VIII. <u>COMMITTEE ACTION</u>

On October 18, 1989, the Committee on the Judiciary met to discuss and mark-up Bill 8-168, the "Bias-Related Crime Act of 1989."

Chairperson Rolark moved the Committee Print, and the corresponding Committee Report, with leave to staff to make conforming changes. The vote was as follows:

|                         | Bill 8-168 | Report on Bill 8-168 |
|-------------------------|------------|----------------------|
| Chairperson Rolark      | Aye        | Aye                  |
| Councilmember Crawford  | Absent     | Absent               |
| Councilmember Mason     | Aye        | Aye                  |
| Councilmember Nathanson | Aye        | Aye                  |
| Councilmember Ray       | Absent     | Absent               |


IX.   <u>ATTACHMENTS</u>

1. Bill 8-168, the "Bias-Related Crime Act of 1989"
2. Committee Print of Bill 8-168
3. Executive Comments
4. Fiscal Impact Statement

# Council of the District of Columbia

## Memorandum

1350 Pennsylvania Avenue, N.W.     Washington, D.C. 20004

To:     MEMBERS OF THE COUNCIL

From:     RUSSELL A. SMITH, SECRETARY TO THE COUNCIL

Date:     FEBRUARY 27, 1989

Subject:     REFERRAL OF PROPOSED LEGISLATION

Notice is given that the attached proposed legislation has been introduced in the Office of the Secretary on February 23, 1989. Copies are available in Room 28, Legislative Services Division.

TITLE:     Bias-Related Crime Act of 1989, Bill 8-168

INTRODUCED BY:  Councilmember Wilson
CO-SPONSORED BY:  Chairman Clarke

The Chairman is referring this proposed legislation to the Committee on

cc:     General Counsel
        Legislative Counsel
        Legislative Services Division

1  470.20 of this article within the preceding ten years, shall be guilty
2  of a class E felony.
3  § 470.40 Bias related violence and intimidation; reporting.
4     It shall be the duty of the district attorney of the county wherein
5  charges are brought pursuant to this article to submit an affidavit to
6  the commissioner of the state division of criminal justice services giv-
7  ing written notification of the disposition of such charges.
8     § 7.  Section forty-d of the civil rights law, as amended by chapter
9  one hundred ninety-one of the laws of nineteen hundred eighty-two, is
10 amended to read as follows:
11    § 40-d. Penalty for violation. Any person who shall violate any of the
12 provisions of the foregoing section, [or subdivision three of section
13 240.30 or section 240.31 of the penal law,] or who shall aid or incite
14 the violation of any of said provisions shall for each and every viola-
15 tion thereof be liable to a penalty of not less than one hundred dollars
16 nor more than five hundred dollars, to be recovered by the person ag-
17 grieved thereby in any court of competent jurisdiction in the county in
18 which the defendant shall reside. In addition, any person who shall vi-
19 olate any of the provisions of the foregoing section shall be deemed
20 guilty of a class A misdemeanor. At or before the commencement of any
21 action under this section, notice thereof shall be served upon the at-
22 torney general.
23    § 8.  Nothing contained in this act shall be construed to authorize the
24 attorney general to prosecute under subdivision ten of section sixty-
25 three of the executive law any person charged with the commission of a
26 criminal offense as set forth in title Y of part IV of the penal law.
27    § 9.  Nothing contained in this act shall be construed to establish any
28 new category of civil right or civil rights coverage not currently
29 protected by the laws of this state or federal law or to enlarge, dimin-
30 ish or impair any right guaranteed by the laws of this state or federal
31 law.
32    § 10.  If any clause, sentence, paragraph, section or part of this act
33 or the application of it by or to any person or circumstance is declared
34 invalid by any court of competent jurisdiction, the judgment shall not
35 affect, impair or invalidate the remainder thereof, but shall be con-
36 fined in its operation to the clause, sentence, paragraph, section or
37 part of this act directly involved in the controversy in which the judg-
38 ment shall have been rendered.
39    § 11.  This act shall take effect on the first day of November next
40 succeeding the date on which it shall have become a law.

1    (a)  A conspiracy to commit any offense enumerated in paragraph (b) of
2  this subdivision, or an attempt to commit any such offense;
3    (b)  Any of the following offenses set forth in this chapter: sections
4  120.00, 120.05, 120.10, 120.15, 120.20 and 120.25 relating to assault;
5  sections  125.10, subdivision one of section 125.15 and subdivisions one
6  and two of section 125.20 relating to  homicide;  sections  135.05  and
7  135.10  relating  to  unlawful  imprisonment; section 135.20 relating to
8  kidnapping; sections 135.60 and 135.65 relating to  coercion;  sections
9  140.20, 140.25 and 140.30 relating to burglary; sections 145.00, 145.05,
10 145.10 and 145.12 relating to criminal mischief; section 145.14 relating
11 to  criminal tampering; section 145.25 relating to reckless endangerment
12 of property; sections 150.05, 150.10 and 150.15 relating to arson;  sub-
13 division  two  of  section  155.40 relating to larceny; sections 160.05,
14 160.10 and 160.15 relating to robbery; sections 240.05 and 240.08 relat-
15 ing  to riot; section 240.10 relating to unlawful assembly; and subdivi-
16 sion one of section 240.25 relating to harassment.
17   7.  The  term  "civil  rights"  means: (a) applying for or enjoying em-
18 ployment, or any perquisite thereof; (b) enrolling in or  attending  any
19 school  or  college;  (c) using and occupying housing accommodations and
20 commercial space; (d) using and enjoying the  goods,  services,  facili-
21 ties,  privileges  or advantages of any public accommodation as defined in
22 state or federal law, and all public conveyances  operated  on  land  or
23 water  or  in the air as well as the stations and terminals thereof; (e)
24 using  public  streets,  roads,  highways,  bridges,  alleys,  avenues,
25 driveways,  sidewalks,  thoroughfares,  boardwalks,  parks  and  public
26 spaces; (f) participating in or enjoying any benefit,  services,  priv-
27 ilege,  program,  facility  or  activity  provided or administered by the
28 United States or New York state or  any  subdivision  thereof;  and  (g)
29 exercising  or attempting to exercise any right secured by the constitu-
30 tion of this state or of the United States.
31 § 470.10 Bias related violence and intimidation.
32   A  person, whether or not acting under color of law, is guilty of bias
33 related violence and intimidation when, with the intent  to  deprive  an
34 individual  or group of individuals of the exercise of their civil rights
35 because of their race, creed, color, national origin, sex,  disability,
36 age, or sexual orientation, such person commits a designated offense.
37 § 470.20 Bias related violence and intimidation; punishment.
38   Any person who violates section 470.10 of this article shall be guilty
39 of:
40   1.  A  class B felony when the underlying designated offense is an of-
41 fense specified in subdivision one or two  of  section  125.20,  section
42 135.20, 140.30, 145.12, 150.15 or 160.15;
43   2.  A class B felony when the underlying designated offense is a class
44 C felony;
45   3.  A class C felony when the underlying designated offense is a class
46 D felony;
47   4.  A class D felony when the underlying designated offense is a class
48 E felony;
49   5.  A class E felony when the underlying designated offense is a class
50 A misdemeanor; or
51   6.  A  class A misdemeanor when the underlying designated offense is a
52 class B misdemeanor or a violation.
53 § 470.30 Bias related violence and intimidation; persistent conduct.
54   Any  person who commits an offense classified as a class A misdemeanor
55 under section 470.20 of this article and who has  previously  been  con-
56 victed  of  an offense classified as a class A misdemeanor under section

1 shall be fixed by the court pursuant to subdivision four of section
2 70.02. Where the sentence is for a class B felony offense specified in
3 subdivision two of section 220.44 or subdivision one of section 470.20,
4 the minimum period must be fixed by the court at one-third of the maxi-
5 mum term imposed and must be specified in the sentence. Where the sen-
6 tence is for any other felony, the minimum period shall be fixed by the
7 court and specified in the sentence and shall be not less than one year
8 nor more than one-third of the maximum term imposed.
9    § 4. Section 240.30 of such law, as amended by chapter one hundred
10 ninety-one of the laws of nineteen hundred eighty-two, is amended to
11 read as follows:
12 § 240.30 Aggravated harassment [in the second degree].
13    A person is guilty of aggravated harassment [in the second degree]
14 when, with intent to harass, annoy, threaten or alarm another person,
15 he:
16    1. Communicates, or causes a communication to be initiated by mechan-
17 ical or electronic means or otherwise, with a person, anonymously or
18 otherwise, by telephone, or by telegraph, mail or any other form of
19 written communication, in a manner likely to cause annoyance or alarm;
20 or
21    2. Makes a telephone call, whether or not a conversation ensues, with
22 no purpose of legitimate communication[; or
23    3. Strikes, shoves, kicks, or otherwise subjects another person to
24 physical contact, or attempts or threatens to do the same because of the
25 race color, religion or national origin of such person].
26    Aggravated harassment [in the second degree] is a class A misdemeanor.
27    § 5. Section 240.31 of such law is REPEALED.
28    § 6. Part IV of such law is amended by adding a new title Y to read as
29 follows:
30                           TITLE Y
31            BIAS RELATED VIOLENCE AND INTIMIDATION ACT
32                          ARTICLE 470
33                       CRIMINAL PENALTIES
34 Section 470.00 Definitions.
35          470.10 Bias related violence and intimidation.
36          470.20 Bias related violence and intimidation; punishment.
37          470.30 Bias related violence and intimidation; persistent
38                 conduct.
39          470.40 Bias related violence and intimidation; reporting.
40 § 470.00 Definitions.
41    The following definitions are applicable to this article:
42    1. The term "creed", in addition to its ordinary meaning, means relig-
43 ious practice.
44    2. The term "national origin", in addition to its ordinary meaning,
45 means ancestry.
46    3. The term "disability" means an actual or perceived physical, mental
47 or medical impairment resulting from anatomical, physiological or neu-
48 rological conditions which prevents the exercise of a normal bodily
49 function or is demonstrable by medically accepted clinical or laboratory
50 diagnostic techniques.
51    4. The term "age" means sixty years of age or older.
52    5. The term "sexual orientation" means a person's actual or perceived
53 homosexuality, heterosexuality, or bisexuality.
54    6. The term "designated offense" means any one or more of the follow-
55 ing offenses:

6927--A

1987-1988 Regular Sessions

# IN ASSEMBLY

March 31, 1987

---

Introduced by M. of A. EVE, SILVER, RIVERA, WEINSTEIN, JENKINS, GREEN, GANTT, ZIMMER, MARSHALL, NORMAN -- Multi-Sponsored by -- M. of A. BARBARO, BRODSKY, CLARK, Del TORO, DAVIS, DIAZ, FARRELL, GOTTFRIED, GREENE, HARENBERG, KOPPELL, MURTAUGH, PORDUM -- (at request of the Governor and the Attorney General) -- read once and referred to the Committee on Codes -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee

AN ACT to amend the penal law and the civil rights law, in relation to strengthening civil rights protections and to provide criminal remedies against bias related violence, intimidation, vandalism and harassment and to repeal section 240.31 of the penal law relating thereto

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

1    Section 1. Short title. This act may be cited as the "bias related vi-
2  olence and intimidation act".
3    § 2. Paragraph (b) of subdivision two of section 70.00 of the penal
4  law, as amended by chapter two hundred eighty of the laws of nineteen
5  hundred eighty-six, is amended to read as follows:
6    (b)  For a class B felony, the term shall be fixed by the court, and
7  shall not exceed twenty-five years; provided, however, that where the
8  sentence is for a class B felony offense specified in subdivision two of
9  section 220.44 or subdivision one of section 470.20, the maximum term
10  must be at least six years and must not exceed twenty-five years;
11    § 3. Paragraph (b) of subdivision three of section 70.00 of such law,
12  as amended by chapter two hundred eighty of the laws of nineteen hundred
13  eighty-six, is amended to read as follows:
14    (b)  Where the sentence is for a class B or class C violent felony of-
15  fense as defined in subdivision one of section 70.02, the minimum period

EXPLANATION--Matter in italics (underscored) is new; matter in brackets [ ] is old law to be omitted.

LBD11426-02-7

THE EXECUTIVE BRANCH FURTHER SUGGESTS THAT THE BILL SHOULD DEFINE
THE TERM "CIVIL RIGHTS" AND OFFERS THE FOLLOWING DEFINITION,
BASED ON THE NEW YORK STATE ACT:

THE TERM "CIVIL RIGHTS" MEANS:

(A) APPLYING FOR OR ENJOYING EMPLOYMENT, OR ANY
PREREQUISITE THEREOF;

(B) ENROLLING IN OR ATTENDING ANY SCHOOL OR COLLEGE;

(C) USING AND OCCUPYING HOUSING ACCOMMODATIONS AND
COMMERCIAL SPACE;

(D) USING AND ENJOYING THE GOODS, SERVICES, FACILITIES,
PRIVILEGES OR ADVANTAGES OF ANY PUBLIC ACCOMMODATION AS
DEFINED IN DISTRICT OR FEDERAL LAW, AND ALL PUBLIC
CONVEYANCES OPERATED ON LAND OR WATER OR IN THE AIR AS
WELL AS THE STATIONS AND TERMINALS THEREOF;

(E) USING PUBLIC STREETS, ROADS, HIGHWAYS, BRIDGES, ALLEYS,
AVENUES, DRIVEWAYS, SIDEWALKS, THOROUGHFARES,
BOARDWALKS, PARKS AND PUBLIC SPACES;

(F) PARTICIPATING IN OR ENJOYING ANY BENEFIT, SERVICE,
PRIVILEGE, PROGRAM, FACILITY OR ACTIVITY PROVIDED OR
ADMINISTERED BY THE DISTRICT OF COLUMBIA OR THE UNITED
STATES; AND

(G) EXERCISING OR ATTEMPTING TO EXERCISE ANY RIGHT SECURED
BY THE LAWS OF THE DISTRICT OF COLUMBIA, THE DISTRICT
OF COLUMBIA'S HOME RULE CHARTER, THE LAWS OF THE UNITED
STATES, OR THE CONSTITUTION OF THE UNITED STATES.

I HAVE ATTACHED A COPY OF THE NEW YORK STATE ACT TO MY TESTIMONY.

THE FINAL SUGGESTION OFFERED BY THE EXECUTIVE BRANCH CONCERNS THE
WRITTEN STATEMENT WHICH IS TO BE SUBMITTED TO THE METROPOLITAN
POLICE DEPARTMENT BY THE VICTIM OF A CRIME WHO REPORTS A BIAS-
RELATED CRIME.

FOR SOME TIME NOW, THE POLICE DEPARTMENT HAS BEEN PLANNING TO
MODIFY THE OFFENSE REPORT TO CAPTURE WHETHER A CRIME IS A BIAS-
OR HATE-RELATED CRIME. (SIMILARLY, THE OFFENSE REPORT WILL BE
MODIFIED TO CAPTURE WHETHER A CRIME IS AN INTRAFAMILY OFFENSE.)
THIS MODIFICATION HAS TEMPORARILY BEEN PUT ON HOLD BECAUSE OF THE
MODIFICATIONS TO OUR OFFENSE REPORT REQUIRED BY THE NEW CRIME
REPORTING SYSTEM BEING PUT INTO PLACE BY THE DEPARTMENT OF
JUSTICE. THE DISTRICT OF COLUMBIA WILL BE ONE OF THE FIRST
JURISDICTIONS TO ADOPT THIS NEW SYSTEM, WHICH IS CALLED AN
"NATIONAL INCIDENT BASED REPORTING SYSTEM." THIS NEW REPORTING
SYSTEM IS TO BECOME OPERATIONAL IN THE DISTRICT IN JANUARY 1990.
PRIOR TO THAT TIME, OUR OFFENSE REPORT WILL BE MODIFIED TO
CAPTURE BIAS-RELATED CRIME, INTRAFAMILY OFFENSES, AND ADDITIONAL
INFORMATION REQUIRED FOR THE NATIONAL INCIDENT BASED REPORTING
SYSTEM. THE EXECUTIVE BRANCH SUGGESTS SUBSTITUTING THIS METHOD
OF DATA COLLECTION FOR THE PROCEDURES OUTLINED IN THE BILL IN
SECTION 3(A). THIS SUBSTITUTION WOULD NOT DISTURB THE REMAINING
SUBSECTIONS WHICH CALL FOR DATA COLLECTION AND ANNUAL REPORTS BY
THE MAYOR.

THIS CONCLUDES THE EXECUTIVE BRANCH'S TESTIMONY CONCERNING THIS
BILL. I SHALL BE HAPPY AT THIS TIME TO ANSWER ANY OF THE
COMMITTEE'S QUESTIONS CONCERNING THIS BILL.

GOOD MORNING, I AM INSPECTOR DAVID BOSTROM, THE DIRECTOR OF THE
POLICE DEPARTMENT'S PLANNING AND DEVELOPMENT DIVISION. I AM HERE
TODAY TO OFFER TESTIMONY ON BEHALF OF THE EXECUTIVE BRANCH ON
BILL #8-168, THE "BIAS-RELATED CRIMES ACT OF 1989."

THE EXECUTIVE BRANCH FULLY SUPPORTS THE BIAS-RELATED CRIMES ACT
OF 1989. THE EXECUTIVE BRANCH, HOWEVER, OFFERS SEVERAL
MODIFICATIONS TO THE BILL.

IT IS OUR UNDERSTANDING THAT THE INTENT OF SECTION 4 OF THIS BILL
IS TO ENHANCE THE CRIMINAL PENALTIES FOR A CRIME WHEN THE CRIME
IS COMMITTED BECAUSE OF PREJUDICE BASED UPON THE VICTIM'S RACE,
COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE, MARITAL STATUS,
PERSONAL APPEARANCE, SEXUAL ORIENTATION, FAMILY RESPONSIBILITY,
PHYSICAL HANDICAP, MATRICULATION, OR POLITICAL AFFILIATION.
WHILE THE EXECUTIVE BRANCH AGREES WITH THESE DESIGNATED
CATEGORIES, WHICH ARE TAKEN FROM THE HUMAN RIGHTS ACT, WE FEEL
THAT THE DEFINITION OF BIAS-RELATED CRIME SHOULD BE STATED MORE
SUCCINCTLY.

WE RECOMMEND THAT THIS DEFINITION ADOPT THE APPROACH TAKEN BY THE
NEW YORK STATE ASSEMBLY BILL, THE "BIAS RELATED VIOLENCE AND
INTIMIDATION ACT." CURRENTLY, THE LANGUAGE USED IN THE COUNCIL'S
BILL DEFINES A BIAS-RELATED CRIME AS A DESIGNATED CRIMINAL ACT
"THAT DEMONSTRATES IN WHOLE OR IN PART, PREJUDICE BASED UPON..."
FOLLOWED BY THE DESIGNATED CATEGORIES IN THE BILL. THE EXECUTIVE
BRANCH SUGGESTS REPLACING THIS LANGUAGE WITH A DEFINITION OF A
BIAS-RELATED CRIME AS A DESIGNATED CRIMINAL ACT "COMMITTED WITH
THE INTENT TO DEPRIVE ANY PERSON OF THE EXERCISE OF THAT PERSON'S
CIVIL RIGHTS BECAUSE OF..." FOLLOWED BY THE DESIGNATED CATEGORIES
IN THE BILL.

TESTIMONY OF

INSPECTOR DAVID W. BOSTROM

METROPOLITAN POLICE DEPARTMENT


before the

COMMITTEE ON THE JUDICIARY

COUNCIL OF THE DISTRICT OF COLUMBIA


concerning

"Bias-Related Crime Act of 1989"


June 8, 1989

3/BBIAS                                                        1
Committee Print                                                2
Committee on the Judiciary                                     3
Amendment in the Nature of a Substitute                        4

_____                              11
Councilmember Wilhelmina J. Rolark                           12

A BILL                                          16

_____                           19

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA              22

_____                           25

To provide for the collection and publication of data about     29
    bias-related crime, and to provide enhanced penalties       30
    for persons who a commit a bias-related crime and           31
    appropriate civil relief for a victim of bias-related       32
    crime.                                                      33

                                                                          36
      BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA,    37
                                                                          38
That this act may be cited as the "Bias-Related Crime Act of     39
                                                                          40
1989".                                                          41
                                                                          42
      Sec. 2.  Definitions.                                       43
                                                                          44
      For the purposes of this act, the term:                     45
                                                                          46
        (1)  "Bias-related crime" means a separate element          47
                                                                          48
of a designated act that is proven and found to be based        49

1

primarily upon race, color, religion, national origin, sex,
age, marital status, personal appearance, sexual
orientation, family responsibility, physical handicap,
matriculation, or political affiliation.

(2) "Designated act" means a criminal act,
including, arson, assault, burglary, injury to property,
kidnapping, manslaughter, murder, rape, robbery, theft or
trespass, and attempting, aiding, abetting, advising,
inciting, conniving, or conspiring to commit arson, assault,
burglary, injury to property, kidnapping, manslaughter,
murder, rape, robbery, theft, or trespass.

Sec. 3.  Collection and publication of data.

(a)  The Metropolitan Police force shall afford each
crime victim the opportunity to submit with the complaint a
written statement that contains information to support a
claim that the designated act constitutes a bias-related
crime.

(b)  The Mayor shall collect and compile data on the
incidence of bias-related crime.

(c)  Data collected under subsection (b) of this
section shall be used for research or statistical purposes
and may not contain information that may reveal the identity
of an individual crime victim.

(d)  The Mayor shall publish an annual summary of the
data collected under subsection (b) of this section and

transmit the summary and recommendations based on the
summary to the Council.

Sec. 4.  Bias-related crime.

A person charged with and found guilty of a
bias-related crime shall be fined not more than 1-1/2 times
the maximum fine authorized for the designated act and
imprisoned for not more than 1-1/2 times the maximum term
authorized for the designated act.

Sec. 5.  Civil action.

(a)  Irrespective of any criminal prosecution or the
result of a criminal prosecution, any person who incurs
injury to his or her person or property as a result of an
intentional act that is based primarily upon race, color,
religion, national origin, sex, age, marital status,
personal appearance, sexual orientation, family
responsibilities, physical handicap, matriculation, or
political affiliation, shall have a civil cause of action in
a court of competent jurisdiction for appropriate relief,
which includes:

(1)  An injunction;

(2)  Actual or nominal damages for economic or
non-economic loss, including damages for emotional distress;

(3)  Punitive damages in an amount to be
determined by a jury or a court sitting without a jury; or

(4)  Reasonable attorneys' fees and costs.

(b)   In a civil action pursuant to subsection (a) of this section, whether an intentional act has occurred that is based primarily upon race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation, shall be determined by reliable, probative, and substantial evidence.

(c)   The parent of a minor shall be liable for any damages that a minor is required to pay under subsection (a) of this section, if any action or omission of the parent or legal guardian contributed to the actions of the minor.

Sec. 6.   Effective date.

This act shall take effect after a 60-day period of Congressional review following approval by the Mayor (or in the event of veto by the Mayor, action by the Council of the District of Columbia to override the veto) as provided in section 602(c)(1) of the District of Columbia Self-Government and Governmental Reorganization Act, approved December 24, 1973 (87 Stat. 813; D.C. Code, sec. 1-233(c)(1)), and publication in either the District of Columbia Register, the District of Columbia Statutes-at-Large, or the District of Columbia Municipal Regulations.

Sec. 6.  Effective date.

This act shall take effect after a 60-day period of
Congressional review following approval by the Mayor (or in the
event of veto by the Mayor, action by the Council of the
District of Columbia to override the veto) as provided in
section 602(c)(1) of the District of Columbia Self-Government
and Governmental Reorganization Act, approved December 24, 1973
(87 Stat. 813, D.C. Code, sec. 1-233(c)(1)), and publication in
either the District of Columbia Register, the District of
Columbia Statutes-at-Large, or the District of Columbia
Municipal Regulations.

GOVERNMENT OF THE DISTRICT OF C
EXECUTIVE OFFICE



DIRECTOR OF
INTERGOVERNMENTAL RELATIONS
1350 PENNSYLVANIA AVE., N.W. - RM. 416
WASHINGTON, D.C.  20004

October 18, 1989

The Honorable Wilhelmina J. Rolark
Chairperson
Committee on the Judiciary
Council of the District of Columbia
Washington, D.C.  20004

Dear Councilmember Rolark:

This is to provide the Committee with the requested fiscal impact of Bill 8-168, the "Bias-Related Crimes Act of 1989."

Under the provisions of the bill, the Metropolitan Police Department would be responsible for the collection and compilation of all data associated with monitoring bias-related crime incidents.  Since other federally mandated offense reporting requirements will be occurring in 1990, the department has already made plans to revise its offense activity forms. Therefore, no additional printing expenses would be incurred for the specific purposes of Bill 8-168.

Assuming that the department would be required to retain both the bias-related crime reports and the victims written complaint reports for at least three years, additional personnel and materiel resources such as file clerks and a suitable filing system (cabinets) would be required.  The cost associated with this would be approximately $67,020 ($52,020 for 3 DS-5 File Clerk positions, and $15,000 for a new automated filing system).

Finally, the bill makes provisions for the victim to take criminal as well as civil action against the guilty party for the same offense.  Therefore, if Bill 8-168 is enacted, the number of police involved in civil litigation cases is expected to increase slightly, although it is not possible to say how much at this time.  Consequently, court overtime will become an additional cost incurred by the department in conjunction with the bill.

If the Committee has any further questions or need for clarification on this fiscal impact, please do not hesitate to contact me.

Sincerely,

Dwight S. Cropp
Director