IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONRAD SMITH,
et al.,

CASE NO.: 1:21-CV-02265-APM

      Plaintiffs,

v.

Oral Hearing Requested

DONALD J. TRUMP,
et al.,

      Defendants.

_____/

**DEFENDANT BRANDON J. STRAKA'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (ECF No. 89)**

"After this, therefore resulting from it" has no place in serious First Amendment jurisprudence. *Post hoc ergo propter hoc*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential."); *see Buckley v. Valeo*, 424 U.S. 1, 43 (1976) (quoting *Thomas v. Collins*, 323 U.S. 516, 535 (1945)) (distinctions "'between discussion, laudation, general advocacy, and solicitation puts the speaker . . . wholly at the mercy of the varied understanding of his hearers'"). Plaintiffs' assorted allegations about Brandon Straka's conduct on and around January 6, 2021 simply do not present actionable claims to this Court. Rather, the claims threaten Mr. Straka with burdensome litigation entirely based on his exercise of First Amendment rights. In face of such a burden, requiring precise claims is the "touchstone where First Amendment rights are involved." *NAACP v. Button*, 371 U.S. 415, 438 (1963). Based on the pleadings before this Court, Plaintiffs' speculation fails to present actionable claims grounded in relevant facts and legal authority.

Thousands of Americans who assembled to discuss electoral integrity on January 5 and 6, 2021 in Washington, DC—as opposed to rioters—enjoy the same First Amendment rights as the peaceful boycotters in *NAACP v. Claiborne Hardware Co.* 458 U.S. 886, 902 (1982) (upholding

the following as protected First Amendment speech: "'If we catch any of you going in any of them racist stores, we're gonna break your damn neck'"). This, along with the protection afforded by *Brandenburg v. Ohio*, is threatened by the Plaintiffs' complaint. 395 U.S. 444 (1969). Their effort to overturn *Brandenburg* and other enduring First Amendment precedent with a thousand flailing jabs should be rejected by this Court, particularly as to Mr. Straka. Constitutional avoidance is a virtue in courts. *See, e.g.*, *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1435–39 (D.C. Cir. 1996). But the Plaintiffs' allegations so squarely target speech, peaceable assembly, and petitioning that the First Amendment cannot be avoided. *See, e.g.*, *Claiborne Hardware Co.*, 458 U.S. at 925. To be sure, the Plaintiffs fail to state a claim against Mr. Straka or establish rudimentary standing for many of those alleged claims, but this affirms the lengths undertaken in this case to subvert the First Amendment to the whim of federal officials. *See U.S. v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."); *see also* ECF No. 98 (Straka Motion to Dismiss).

The Plaintiffs allege that Mr. Straka engaged in at least three forms of protected advocacy under the First Amendment. First, he gave a speech in favor of electoral integrity in Detroit, Michigan on November 6, 2020. Second, he gave a speech at Freedom Plaza in Washington, D.C. on January 5, 2021. Third, he is alleged to have yelled encouragement at other people on January 6. *See* ECF No. 89 ¶127. Outside of these acts, he has pled guilty for disorderly conduct that included a *singular* comment that others deprive a Capitol Police officer (who is not a plaintiff in this suit) of his shield. None of these three expressions, even coupled with his disorderly conduct, support the far-reaching claims alleged here. The Court should dismiss all counts of the Amended Complaint against Mr. Straka.

I. **Because the Riot on January 6, 2021 is the Central Act of the Plaintiffs' Claims, They Must—and Do Not—Overcome *Brandenburg* and its Progeny as to Incitement of the Riot**

The Plaintiffs argue that "[t]he Amended Complaint alleges and no Defendant disputes that the Capitol Attack was a riot." ECF No. 118 at 40 (citing ECF No. 89 ¶194). This is, ultimately, the reason the Court should dismiss most of the Amended Complaint. The January 6 riot is central to nearly all of the Plaintiffs' claims. *See* ECF No. 118 at 24 (summarizing the conspiracy as one to "use the violent attack on the Capitol and the Capitol Police to stop the electoral count and certification[.]"). It is the "force, intimidation, or threat" by which Mr. Straka is alleged to have conspired to interfere with civil rights. 42 U.S.C. § 1985(1); *see* ECF No. 89 ¶¶166-172; ECF No. 118 at 7. The riot is likewise "the wrong[] conspired to be done" for the Plaintiffs' allegation as to failure to prevent said conspiracy. 42 U.S.C. § 1986; ECF No. 89 ¶¶173-181. Though the riot is presented as a sub-count to the D.C. Bias-Related Crimes Act count, it is also indistinguishable from the other two sub-counts, which allege an "act of terrorism" and "destruction of property", respectively. D.C. CODE §§ 22-3153; 22-1322, 22-303; ECF No. 89 ¶¶182-198. Finally, the riot permeates "the standards of conduct set out in criminal statutes" that make up the Plaintiffs' negligence claim. ECF No. 89 ¶¶211-220. Importantly, all the Plaintiffs' alleged injuries arose from the riot. *Id.* ¶¶157-164; *see Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (conspiracy requires "injury caused by an unlawful overt act performed by one of the parties to the agreement . . . which . . . was done pursuant to and in furtherance of the common scheme").

For these claims to proceed, resulting from an undisputed riot in which the Plaintiffs allege that John Doe defendants—that is, certain participants in the riot—inflicted all their injuries, the Plaintiffs must allege incitement of the riot by the Defendants. *See* ECF No 89 ¶¶46, 200. They have not done so, especially against Mr. Straka. Instead, they allege (1) Mr. Straka gave a speech

in Detroit on November 6, 2020 and (2) Mr. Straka gave a speech at Freedom Plaza in Washington, D.C. on January 5, 2021. ECF No. 89 ¶¶72(a), 108-109.[1] The Plaintiffs fail to plead with particularity any form of incitement by Mr. Straka. Indeed, his statements on November 6, 2020 such as "People are out of their f**king minds if they think that we're going to sit down quietly and allow them to steal this election" and similar advocacy are protected as a matter of law under the First Amendment. ECF No. 98 at 10. These words from November 6, 2020 are nothing close to incitement, and a riot on January 6, 2021 is not imminent after events on November 6, 2020 or even January 5, 2021. *Brandenburg*, 395 U.S. at 447 ("'[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (emphasis added)); *see Imminent*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. (Of a danger or calamity) threatening to occur immediately; dangerously impending <imminent peril>. 2. About to take place <the appointment is now imminent>"). Neither does "yell[ing] encouragement to other attackers" while allegedly "participat[ing]" in the riot meet imminence: a riot is not imminent when it is already occurring. ECF No. 118 at 68 (citing ECF No. 89 ¶127). This is consistent with *Claiborne Hardware Co.*, where acts of violence occurred "weeks or months after" the speech in question. 458 U.S. at 928. Moreover, in the heat of a rally, an advocate must be free to "stimulate his audience with spontaneous and emotional appeals for unity and action in a common cause." *Id.* Mr. Straka did exactly this and his speech remains fully protected per *Brandenburg* and *Claiborne*.

---

[1] The Plaintiffs also allege that Mr. Straka was scheduled to give another speech on the Capitol grounds on January 6, 2021. ECF No. 89 ¶106. Speech that did not occur is also not incitement.

The Plaintiffs allege but one statement of Mr. Straka on January 6—to take a protective shield from a police officer—which allegedly occurred during the riot, not before it as a meaningful precursor. Nor is any such statement circumstantial evidence that would "support an inference of agreement. . . ." ECF. No. 118 at 8-9. Mr. Straka's November 6 and January 5 speeches remain protected advocacy, as does encouragement allegedly offered to those acting in the January 6 riots. This alleged statement cannot form the basis for the elaborate conspiracy scheme imagined by the Plaintiffs. To hold otherwise is to overrule *Hess v. Indiana*, 414 U.S. 105, 109 (1973) (reversing conviction of protestor who yelled, "We'll take the [expletive] street later," amid crowd of protestors ordered to disperse).

The Plaintiffs try to avoid a straightforward analysis. They argue at points that this Court should not view Mr. Straka's (or anyone else's) speech as free speech subject to *Brandenburg*, but statements that support the existence of a conspiracy. ECF No. 118 at 62-64.[2] That is, for four of six counts, Mr. Straka allegedly conspired to cause the riot. This was allegedly through Mr. Straka's conspiratorial agreement with former President Trump, Roger Stone, and others. ECF No. 89 ¶¶170(a), (c). But this cannot be reasonably inferred from Mr. Straka's speech (about election integrity), the only allegations they present prior to the riot. On this, too, the Plaintiffs waffle. *Cf.* ECF No. 118 at 11 (alleging a "shared goal[] of preventing election certification") *with id* at 37 (cryptically alleging a "plan to attack the Capitol."). Moreover, the First Amendment still requires *someone* in the conspiracy to have incited said riot, subject to *Brandenburg*'s requirements. *Cf. California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972) (declining a First

---

[2] Yet, the Plaintiffs also claim Mr. Straka's "statements . . . [were] *integral* to the unlawful conduct in which [he] engaged." ECF No. 118 at 63 (emphasis added). Again, by the Plaintiffs' pleadings, that conduct is the riot, and for speech to serve as the riot's cause the speech must be incitement.

Amendment defense for speech and petitioning allegedly used to violate antitrust laws); *see also U.S. v. Payne*, No. 2:16-CR-46-GMN-PAL, 2017 WL 480392, at *2 (D. Nev. Feb. 2, 2017) (reading a true threat requirement into 18 U.S.C. § 372). The Plaintiffs have not adequately alleged this, either. *See* ECF No. 98 at 11-14.

The Plaintiffs fail to adequately allege that Mr. Straka was involved in a conspiracy. On this basis alone, counts I-V should be dismissed. Because they allege assault and battery via an aiding and abetting theory that is substantively indistinct from their conspiracy theory, those grounds for counts IV-V should be dismissed as well. *See also* ECF No. 98 at 27-32.

## II.     Per *N.A.A.C.P. v. Claiborne Hardware Co.*, Guilt-by-Association Has No Place Here

"The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Claiborne Hardware*, 458 U.S. at 908; *cf.* ECF No. 118 at 65. Yet, as to Mr. Straka, this is the outcome of the Plaintiffs' complaint. To accept the allegations against him, the Court must rule that the protected, non-inciteful advocacy presented by the Plaintiffs was, instead, evidence of a conspiracy to incite a riot. It must further entertain notions that "rais[ing] funds to promote the false election fraud conspiracy or pay for January 6 events", perhaps blended with the non-inciteful speech, alleges a conspiracy. ECF No. 118 at 36-37 (citing ECF No. 89 ¶¶98, 178). The Plaintiffs also intend for the Court to work backwards from a regrettable moment, one to which Mr. Straka expeditiously and fully accepted responsibility, and thereby nullify the protection of his controversial political advocacy. *See generally U.S. v. Straka*, No. 21-CR-00579 (D.D.C. 2021). This permits not only a conspiracy theory, Plaintiffs aver, but allegations of aiding and abetting the assault and battery that occurred against them, respectively. *See, e.g.*, ECF No. 118 at 48-49 (alleging that "knowing and substantial assist[ance]" was derived from "widespread

public statements" that do not meet *Brandenburg*). This nonsense is creative, but it is nonsense, nevertheless. *See Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 479 (2007) (disapproving of a prophylaxis-upon-prophylaxis approach to speech regulation).

> *Claiborne Hardware* specifically forecloses any of these theories of liability:

> > No federal rule of law restricts a State from imposing tort liability for . . . losses that are caused by violence and by threats of violence. When such conduct occurs in the context of constitutionally protected activity, however, "precision of regulation" is demanded. . . . Specifically, the presence of activity protected by the First Amendment imposes restraints on *the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages*.

*Claiborne Hardware*, 458 U.S. at 916–17 (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)) (emphasis added). The gatherings on January 5 and 6, 2021 (distinct from the riot) were just as protected as the meetings of the Claiborne County Branch of the NAACP. Mr. Straka's presentation at the former and presence at the latter were equally protected. The Plaintiffs fail to even allege "an unlawful aim embraced by *that group*" and aim only to transmogrify the controversial speech of either day into aims of violence. *Id.* at 925. Moreover, their allegations do not adequately allege any specific intent by Mr. Straka to further unlawful aims that they attempt to coax from other speeches given at those events. *See, e.g.*, ECF No. 89 ¶108. That is, they argue that the Court should, in effect, ignore *Claiborne Hardware* entirely and proceed with a guilt-by-association theory wholly foreclosed in First Amendment jurisprudence.

## Conclusion

The Plaintiffs present such overbroad theories of incitement, conspiracy and aiding and abetting that merely playing the wrong song at a rally weeks before January 6, 2021 would have fit the bill for any of their allegations. *Cf.* ECF No. 118 at 21 ("[Straka] vowed that '[w]e are not going to take it[.]'") *with* TWISTED SISTER, *We're Not Gonna Take It*, *on* STAY HUNGRY (Atlantic

Records 1984). This is not a "slippery slope" case about the First Amendment: the Plaintiffs have reached the bottom of the hill.

"If that's your best, your best won't do." TWISTED SISTER, *supra*. The Court should dismiss the Amended Complaint.

Respectfully submitted,

Brandon J. Straka

By Counsel

/s/ Stephen Klein
Stephen R. Klein
Bar No. 177056
BARR & KLEIN PLLC
1629 K St. N.W. Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

/s/ Benjamin Barr
Benjamin Barr
(Pro Hac Vice)
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, IL 60611
Telephone: (202) 595-4671
ben@barrklein.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of January, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to Plaintiffs' counsel and counsel for most Defendants.

I further certify that, pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), counsel will endeavor to serve all other named Defendants a copy of this filing by first class mail.

*/s/ Stephen Klein*
Stephen R. Klein

*Counsel to Brandon J. Straka*