**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CONRAD SMITH, ET AL.,

          *Plaintiffs*,

    v.

DONALD J. TRUMP,
DONALD J. TRUMP FOR PRESIDENT, INC.,
ROGER STONE, ET AL.,

          *Defendants*.

Case No. 1:21-cv-02265-APM

---

## DEFENDANT ROGER STONE'S REPLY TO OPPOSITION TO THE MOTION TO DISMISS AMENDED COMPLAINT

---

Grant J. Smith
(DDC Bar No. FL-36)
STRATEGYSMITH, P.A.
401 EAST LAS OLAS BOULEVARD
SUITE 130-120
FORT LAUDERDALE, FL 33301
(954) 328-9064
GSMITH@STRATEGYSMITH.COM

Robert C. Buschel
  *Counsel of Record*
(DDC Bar No. FL-39)
BUSCHEL GIBBONS , P.A.
501 E. LAS OLAS BLVD. SUITE 304
FORT LAUDERDALE, FL 33301
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

REPLY ....................................................................................................................... 1

    I.      Introduction ……………………………………………………….... 1

    II.    Plaintiffs Fail To State a Claim under theories of Conspiracy or Aiding and Abetting. ……………………………………………………………...… 3

    III.   Applying the law to the specific allegations. …………………………..….. 9

    IV.   Plaintiffs do not plead failure to Prevent Conspiracy to Interfere with Civil Rights, under §1986. …………………………………………………….. 13

Conclusion………………………………………………………………………… 15

Certificate of Service ……………………………………………………………… 16

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548 (2007). ........................................................... 2, 8, 9

*Brandenburg v. Ohio,* 395 U.S. 444, 446-47 (1969) ...................................................................... 3

*De Jonge v. State of Oregon*, 299 U.S. 353, 365 (1937) ............................................................. 6, 11

*Dennis v. United States*, 341 U.S. 494 (1951) ................................................................................ 4

*Duncan v. Kahanamoku,* 327 U.S. 304, 315-16 (1946)................................................................. 10

*Gruenwald v. United States,* 353 U.S. 391, 399 (1957)................................................................... 7

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). ................................................. 7, 9, 13

*Huey v. Barloga*, 277 F. Supp. 864, 867 (N.D. Ill. 1967).............................................................. 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F.Supp.2d 1109, 1115 (N.D. Cal. 2008) .......... 8

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994). .............................. 3

*Krulewitch v. United States*, 336 U.S. 440, 442 (1949)................................................................... 7

*Kurd v. Republic of Turkey,* 374 F.Supp.3d 37, 62 (D.D.C. 2019)................................................. 9

*N.A.A.C.P. v. Button*, 371 U.S. 415, 445, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963)........................... 4

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982)................................... 3, 4, 5, 6

*New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)).......................................................... 5

*Noto v. United States*, 367 U.S. 290, 297 (1961)............................................................................ 4

*Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L.Ed.2d 212 (1972)............. 5

*United States v. Bartow*, 19-4496, 2021 WL 1877821 (4th Cir. May 11, 2021)........................... 4

*United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001)......................................................... 7

*United States v. Scott,* 979 F.3d 986, 990-91 (2d Cir. 2020) ........................................................ 8

*United States v. Stevens*, 559 U.S. 460, 468-69 (2010). ................................................................ 5

*Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan*, 518 F. Supp. 993, 1007 (S.D. Tex. 1981). ................................................................................................................ 14

*Watts v. United States*, 394 U.S. 705, 708 (1969) .................................................... 5, 12

**Statutes**

42 U.S.C. § 1985 …………………………………………………………………...…13

42 U.S.C. § 1986.................................................................................................. 13

## REPLY

### I.    Introduction

Plaintiffs' opposition to Stone's motion to dismiss starts in the middle of the supposed conspiracy. Meaning, they ask the Court to assume Stone joined the conspiracy at the start, and then ask the Court to interpret every one of his subsequent lawful and constitutionally protected activities as an overt act or aiding and abetting others' torts. Their main claim being that Stone delivered speeches with alleged false content, not on January 6 but the day before, another speech delivered a day before December 12, 2020, and an interview on September 10, 2020. It would be extremely dangerous to permit plaintiffs to build a case for conspiracy off of people's reaction to political speech. But in this lawsuit, plaintiffs do not claim Stone conspired with the January 6 crowd to attack the Capitol; rather, they seem to suggest Stone's lawful political speeches and association prior to January 6 were the overt acts or aid. They attempt to reframe their legal theories by claiming they do not rely upon Stone's speech, "but for the violent conspiracies and other unlawful conduct in which they engaged and of which their statements were an integral part." (Opp. 60). All Stone did was speak, associate, and petition the government, but plaintiffs interpret those acts as joining the alleged conspiracy or overt acts in furtherance of the conspiracy, when Stone, was not even "merely present," nor spoke on January 6. None of this proves Stone had knowledge of any plan to breach the Capitol and disrupt Congress or further that stated objective.

A string runs through all the causes of action against Stone; plaintiffs ask the Court to assume too much. He had to have knowledge of a plan to attack and disrupt the activities in the Capitol, agreed to help achieve the objective of the conspiracy by participating in acts of disruption of the counting of the electoral vote, and actually provide help. Plaintiffs do not allege

enough. Even though plaintiffs claim to ignore the content of Stone's speech, they still allege it must be used to demonstrate his involvement in the conspiracy. Plaintiffs' theories of liability require the Court to analyze Stone's speech, which is constitutionally protected, and evaluate its truthfulness.

Plaintiffs were required to particularly allege that Stone raised money for specific illegal purposes in order to facilitate the attack, not just appear and speak a day earlier. For example, the lawsuit would have to allege Stone raised money for the weapons, shields, or other items that facilitated the attack, not ordinary items that can be used to appear, associate, and speak. In short, Stone allegedly raised an unspecified amount of funds for a rally in the District, and associated with people who the next day allegedly participated in the attack.  Plaintiffs' theory is: they and Stone must have spoken at some unspecified time before, and Stone agreed to help their plan to disrupt the Capitol by appearing and speaking in the District. Alleging that Stone associated with those people, some of whom participated in illegal acts, is not enough.

Plaintiffs ask this Court to give the First Amendment short shrift as it pertains to Roger Stone's speech, assembly, and petitioning of the government. They invite the Court to analyze the truthfulness of Stone's political speech and deem Stone's unworthy of protection. They assume because the Capitol was attacked on January 6, all events they connect to the event, are worthy of liability. Because Stone gave a speech the night before and one over a month earlier, he is responsible for incitement of the crowd, who went to the Capitol grounds the next day, where many violated the law. This also does not meet the *Twombly/Iqbal* standard.

Conspiracy law, however, is well established and requires more precision. Plaintiffs have not sufficiently alleged Roger Stone had *prior knowledge* of the stated object of the conspiracy, agreed to join that conspiracy and achieve that goal, or commit an overt act (an illegal act or a

lawful act by legal unlawful means) in furtherance of that conspiracy – threaten, intimidate, and use force against members of Congress, staff, or Capitol Police officers, so they could not discharge their lawful duties of permitting Biden and Harris from accepting or holding office.

## II.    Plaintiffs Fail To State a Claim under theories of Conspiracy or Aiding and Abetting.

Plaintiffs, in their opposition to Stone's motion to dismiss enumerate his alleged conduct, which they say amounts to his joining and furthering the conspiracy to violate plaintiffs' civil rights and other statutory and common law rights. Counsel recognizes the Court is presiding over several related cases and has reviewed and analyzed multiple filings. Stone will clarify the law on conspiracy and aiding and abetting, as it pertains to him, and specifically respond to plaintiffs' responses and demonstrate how they failed to state a claim.

There are no allegations Stone spoke directly to anyone where the content of that communication evidenced formed, joined, or furthered the conspiracy. He did not authorize, direct, or ratify specific tortious activity. *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982). None of his speeches directed anyone to commit violence or trespass upon the Capitol Building. *See id.* None of the content of Stone's speeches can be taken as a plausible allegation or evidence that he gave others specific instructions to carry out violent acts or threats against the Capitol or the people meant to work there or protect it. *See id.* Indeed, the Supreme Court in *Claiborne Hardware,* considered whether there was imminent violence after the subject speech was delivered. There was no violence after Stone's speeches. *See id.*

The amended complaint also fails under *Brandenburg v. Ohio,* 395 U.S. 444, 446-47 (1969). An Ohio statute criminalizing speech used to prosecute a member of the Klan advocating for revenge and marching on July Fourth with hundreds of thousands of people was deemed

unconstitutional. *Id.* The Supreme Court reviewed its precedent and wrote that free speech does not permit forbidding advocacy "of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447.  The speech itself was not unlawful and allegations of it cannot be used to demonstrate Stone joined or furthered the conspiracy based upon the content of his speech a day earlier. "That sort of advocacy, even though uttered with the hope that it may ultimately lead to violent revolution, is too remote from concrete action to be regarded as the kind of indoctrination preparatory to action which was condemned in *Dennis v. United States*, 341 U.S. 494 (1951)." *Noto v. United States*, 367 U.S. 290, 297 (1961).

Remarks by other speakers, months before January 6 or even the night before, do not turn Stone's free speech into a crime or an overt act of plaintiffs' alleged conspiracy. Those who actually injured plaintiffs should be held liable. The preference of one's politics certainly cannot determine the outcome of the First Amendment analysis. Civil liability may not be imposed merely because an individual belonged to a group, some members of which may have committed acts of violence. "For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Claiborne Hardware Co.*, 458 U.S. at 920.

But Plaintiffs argue that Stone's speech was false and the falsity of the speech demonstrates Stone joined the conspiracy and furthered it. (Opp. 66). But falsity of speech cannot support allegations of a conspiracy. The Constitution shelters speech "without regard ... to the truth, popularity, or social utility of the ideas and beliefs [that] are offered." *United States v. Bartow*, 19-4496, 2021 WL 1877821 (4th Cir. May 11, 2021) (citing *N.A.A.C.P. v. Button*, 371 U.S. 415, 445, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963)). "Accordingly, as Justice Marshall famously

explained, the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* (citing *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L.Ed.2d 212 (1972)).

The Supreme Court has recognized a few narrowly defined exceptions to speech: obscenity, defamation, fighting words, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468-69 (2010). There is a distinction between political hyperbole, which is protected speech, and true threats. *Watts v. United States*, 394 U.S. 705, 708 (1969). "For we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Id.* (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)). Persons banding together to achieve a common end is an essential part of the American political process. *Claiborne Hardware Co.*, 458 U.S. at 907.

But plaintiffs complain that Stone associates with other people and groups who have bad character. "The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id.* at 908. Plaintiffs, without precision, lump Stone together with all defendants with the notion that all have bad character because they all advocated for something different than what plaintiffs believe to be true – the outcome of the 2020 presidential election, and overstepped by breaching the Capitol. Our Supreme Court rejected that theory of liability decades earlier.

When speaking about actions of the Communist Party in this country, Chief Justice Hughes wrote for the majority:

> It follows from these considerations that, consistently with the Federal Constitution, peaceable assembly for lawful discussion cannot be made a crime. The holding of meetings for peaceable political action cannot be proscribed. Those who assist in the conduct of such meetings cannot be branded as criminals on that score. The question, if the rights of free speech and peaceable assembly are to be preserved, is not as to the auspices under which the meeting is held but as to its purpose; not as to the relations of the speakers, but whether their utterances transcend the bounds of the freedom of speech which the Constitution protects. If the persons assembling have committed crimes elsewhere, if they have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy or other violation of valid laws.

*De Jonge v. State of Oregon*, 299 U.S. 353, 365 (1937).

Plaintiffs have not discerned unlawful acts of Stone at all, let alone in furtherance of the conspiracy in which they claim he is an essential part. Lawful acts by unlawful means could be considered overt acts of a conspiracy, but nonviolent elements of Stone's activities are entitled to First Amendment protection. *See Claiborne Hardware Co.,* 458 U.S. at 915. No doubt, violence is not protected by the First Amendment. *Id.* And those who do violence should be held responsible under tort law. *Id.* at 917.  However, "Specifically, the presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *Id.* Stone, however, did not encourage violence, incite violence, or approve of the violence at the Capitol. Others, not Stone, attacked the Capitol and plaintiffs. But, "[t]he First Amendment similarly restricts the ability of the State to impose liability on an individual solely because of his association with another." *Id.* Since the content of Stone's speech cannot support allegations of conspiracy or other torts, and

the Court cannot analyze the truthfulness of the content of his speech, there are no allegations sufficient to support Stone's liability.

Plaintiffs cannot discard the rigors of pleading torts of civil conspiracy and aiding and abetting. Namely, when did the specific conspiracy against plaintiffs start and end, and when did Stone join it. *Krulewitch v. United States*, 336 U.S. 440, 442 (1949) (court required to determine for purposes of admitting codefendant's statement whether conspiracy "never existed or had long since ended in success or failure. . ."). "In examining whether these conditions are fulfilled, the crucial question . . . is the scope of the conspiratorial agreement . . ." *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citations omitted). *Gruenwald v. United States,* 353 U.S. 391, 399 (1957) (concealment or denial of conspiracy is not an overt act); *Cockrum v. Donald J. Trump for President, Inc.,* 319 F. Supp. 3d 158, 186 (D.D.C. 2018) (citing *Mattel, Inc. v. MGA Entm't, Inc.,* No. 04-cv-9049, 2010 WL 11463911, at *3 (C.D. Cal. Sept. 3, 2010) ("[O]ne logically cannot contemplate acts committed in furtherance of a conspiracy into which he has not yet entered"). Moreover, one cannot offer aiding-abetting or "concerted action" by substantial assistance without knowledge of others planned tortious conduct. *See Halberstam v. Welch,* 705 F.2d 472, 478 (D.C. Cir. 1983) ("Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct"). These are the only limited theories plaintiffs can travel under because Stone was not present on the day of the January 6 attack.

Plaintiffs strain conspiracy case law in the hopes they will make it seem like they have sufficiently alleged a tort of conspiracy against Roger Stone. Plaintiffs claim Stone worked closely with coconspirators while acting to prevent certification of Biden and Harris's election. (Opp. 8). This language is troublesome, and plaintiffs are intentionally imprecise. "Stone worked

closely with coconspirators while acting to prevent certification and Harris's election," is meant to imply something inherently illegal, but they cannot plausibly allege that against Stone. (Opp. 8). Otherwise, the allegation would plainly read: "Stone worked with coconspirators to prevent the certification of Biden and Harris's election through the following unlawful means." Plaintiffs' language is describing parallel conduct but not illegal conduct. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548 (2007).

Plaintiffs attempt to emphasize that false claims of election fraud is clear evidence that Stone must have joined the conspiracy prior to January 6, and itself an overt act in furtherance of the conspiracy. (Opp. 8). This assumption discounts the fact that speech is not illegal and is moreover protected by the First Amendment. Because some of the defendants appeared with Stone at two rallies separated by months does not mean an agreement to cause a riot at the Capitol can be inferred. Inferred invitation *followed by responsive assurances* and conduct is not described by plaintiffs in the amended complaint. (Opp. 6) (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F.Supp.2d 1109, 1115 (N.D. Cal. 2008)). Stone did not receive an invite and Stone did not invite anyone to riot at the Capitol. He also did not respond with assurances as Stone did not go to the rally on the Ellipse or the Capitol on January 6.

Plaintiffs did not allege Stone ratified the attack. (Opp. 6) (*see* cases cited). An agreement can be inferred without any communication from purposeful action in concert, but it requires purposeful action in concert. (Opp. 6) (citing *United States v. Scott,* 979 F.3d 986, 990-91 (2d Cir. 2020)).  This would mean Stone's attendance and participation in the riot at the Capitol. *See id.* (defendants acted in concert by purposefully joining the assault). But outside of agreement, "It is only where means are employed, or purposes are accomplished, which are themselves

tortious, that the conspirators who have not acted but have promoted the act will be held liable." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

Plaintiffs do not succeed because most of the conduct it assigns to Stone blames him for protected speech. The rest of the blame vaguely refers to fundraising and having security provided by some of the defendants to Stone while he was in the District giving the speeches. *Kurd v. Republic of Turkey,* 374 F.Supp.3d 37, 62 (D.D.C. 2019) (citing *Twombly,* 550 U.S. at 557) ("A common goal, never discussed explicitly or implicitly among the Defendants, does not constitute an agreement"). Stone did not clear the way for the attack. *See id.* at 51.

January 6 was a brand new day and a whole new slate of speakers, sending different messages. But plaintiffs assume a residual effect on a different crowd of people. At best, Stone suggested people to march – that is lawful conduct. Plaintiffs do not plausibly allege knowledge. Plaintiffs presume, and ask the Court to assume, Stone knew people were going to breach the Capitol.

### III.   Applying the law to the specific allegations.

Plaintiffs want the Court to infer an agreement between Stone and certain other defendants, and they want the court to infer that lawful conduct is unlawful because others acted separately. But all the allegations against Stone compel the Court to infer too much from legal and constitutionally protected conduct.

First, plaintiffs argue Stone *worked closely with coconspirators* while acting to prevent certification of Biden and Harris's election. (Opp. 8). The meaning of *working closely* with coconspirators is the key question. Plaintiffs beg the Court to read it as, 'work together to attack the Capitol.' Stone gave two speeches, and an interview. The delayed effect of which is conjecture. Everything assumes the attack happened, therefore Stone participated, caused, and

failed to prevent. But they do not allege how he participated outside of meeting with Trump, standing next to some individuals in defendant organizations, and political speech. Plaintiffs never allege what they had talked about when Stone was together with any of the people mentioned.

Next, plaintiffs claim Stone as a longtime associate and advisor of Trump, *promoted Trump's false claims of election fraud* to sow doubt and anger about the electoral process and legitimize the use of force to prevent certification of the election results. (Opp. 8).  But saying there was election fraud is not entry into any conspiracy, it is not an overt act in furtherance of any conspiracy, or substantial assistance to attack the Capitol, it is protected speech. *Claibourne Hardware,* 458 U.S. at 927.

Plaintiffs claim that when Stone publicly urged Trump to invoke the *Insurrection Act,* seize ballot boxes, and arrest political opponents and members of the media, that demonstrates his agreement to enter the conspiracy. (Opp. 8); Am. Compl. ¶ 55. This statement was political speech, however, given in September 2020, directed at one person, President Trump. This statement was made two months before the presidential election and it is not a statement about disrupting the counting of electoral votes at the Capitol. It is not a statement about plaintiffs' alleged conspiracy. It is a remark to a president to mobilize the military to take actions, not a mob to unite and raid the Capitol in order to disrupt the counting of the electoral vote. *See Duncan v. Kahanamoku,* 327 U.S. 304, 315-16 (1946) (martial law has no legal meaning; references military tribunals).

Plaintiffs boldly assert in their response that "Stone campaigned with his coconspirators who attacked the Capitol – with all of them promoting the use of force, intimidation and threats to overturn the election and urging Trump supporters to fight against it." (Opp. 8) (citing ¶¶ 79,

10

80, 86, 106-09)). The semantics of the sentence implies that Stone attacked the Capitol with "his coconspirators." He did not. Of course, "campaigned" is another word plaintiffs equivocate on its meaning. Campaign for what? Again, Stone's speech is political speech not advocating violence to anyone. *See Claibourne Hardware,* 458 U.S. at 927.  None of those allegations referring to Stone's speech claims he promoted the use of force or intimidation. The allegations, furthermore, must extend to force and intimidation against members of Congress; otherwise, plaintiffs' allegations might be supporting some other "conspiracy" not alleged in this lawsuit.

Next, plaintiffs claim: *Working with the Proud Boys and leaders Tarrio and Nordean,* Stone promoted and appeared on stage the night before a December 12, 2020, *Stop the Steal* rally at which Trump for President adviser, Katrina Pierson explicitly called for extra-legal action and promoted the use of force, intimidation, and threats to keep Defendant Trump in power. Katrina Pierson is not a defendant or alleged coconspirator. Stone did not ratify what she said. *See De Jonge*, 299 U.S. at 365. "Working with" can mean a variety of things. If Stone coordinated scheduling to appear and speak, then only in that sense, he "worked with them."

 Plaintiffs next allege *Stone appeared at Senator Rubio's private residence* to pressure him not to certify the election results. (Opp. 8). This allegation is not relevant to this alleged conspiracy. Petitioning for the redress of grievances of Stone's U.S. Senator is permitted under the First Amendment, regardless of its futility or location. Stone, Mot. at 29. ECF No. [100 at 38].

Stone is alleged to have *fundraised and worked to stop the certification*, "with multiple Oath Keepers who attacked the Capitol," in the days leading up to and including January 6. (Opp. at 9). This language is also misleading because they do not allege that Stone attacked the Capitol, only multiple Oath Keepers did. Nonetheless, Stone "engaged the Oath Keepers"

including Meggs to provide personal security for him on January 5 at the rally at the Supreme Court. (Opp. 9).  At that rally, Stone told Trump supporters that he would march with the next day to stop Congress from certifying the election results. (Opp. 9). Marching is not unlawful. And Stone did not march the next day. Security was provided so Stone could speak at the rally at the Supreme Court, is also protected conduct. Words that suggest, 'Don't give up,' 'Nothing is over until we say it is over,' perhaps is futile, but protected by the constitution. *See Watts*, 394 U.S.  at 708.

At the same rally on January 5, Alex Jones (labeled a coconspirator) but not sued here, "stoked anger" in Trump supporters by repeating false claims of election fraud. (Opp. 9). Plaintiffs lump all the speakers as if they are one person. Common sense and the First Amendment do not permit plaintiffs to do that. No one could appear at any symposium, if that were the law. Caveats would have to be given at every multi-panel discussion of our local bar associations. Plaintiffs were required to allege Stone approved of the other speakers' messages of violence by repeating the threats, writing a letter affirming it, telling others do what this person stated, but they cannot allege it.

Further, plaintiffs allege *Stone publicly acknowledge Alexander for driving the Stop the Steal movement* and likewise, Alexander said that Stone had offered "wise counsel to Trump's legal team and this movement" and it couldn't be done without Stone." (Opp. 9). These vague notions of approbation are done every day in Congress and at political events. Stone is wise, and said good things, and whatever *this is* could not be done without Stone. These remarks leave open the question what is *it* that could not be done. It could be coming to Washington and appearing and speaking.

Finally, plaintiffs claim *Stone actively supported the efforts of the Proud Boys and Oath Keepers to prepare and execute their attack on the Capitol and Capitol Police*. (Opp. 9). The way plaintiffs support this allegation is stating that Stone worked with Proud Boys for years. The "years" is alleged to be since 2018. Am. Compl. ¶ 25. Plaintiffs *alleged certain defendants* raised funds for protective gear and weapons. Am. Compl. ¶ 98. But Stone only raised money for "equipment" and "security." *See id.* Equipment for speech is qualitatively different than equipment for rioting. This equipment is for the January 5 rally, not for the attack on the Capitol. These vague notions of Stone's activities rely on sufficiently alleging his knowledge that the Capitol would be attacked. The plaintiffs do not sufficiently allege Stone had knowledge, agreed, participated in an overt act, or offered "substantial assistance," to be an aider or abettor. *See Halberstam,* 705 F.2d at 477.

### IV.    Plaintiffs do not plead failure to Prevent Conspiracy to Interfere with Civil Rights, under §1986.

Section 1986 requires that a person with *knowledge* of a civil rights conspiracy and having *power to prevent* it is liable if they do not act. 42 U.S.C. § 1986 ("having knowledge of any of the wrongs conspired to be done . . .  and having power to prevent or aid in preventing the commission of the same. . ."). As we have argued above, plaintiffs did not sufficiently allege Stone had knowledge of any wrongs conspired to be done, let alone plaintiffs' civil rights. His conduct was lawful and protected by the First Amendment. Stone makes the argument that he did not have the power to prevent any violation of plaintiffs' civil rights. Stone, Mot. at 18. All the cases demonstrate someone *with power,* must act.

The *amicus* professors opine section 1986 does not require a defendant to have been in a position of authority to be liable over section 1985 conspirators. ECF No. [123-1]. Plaintiffs'

argue that Stone was in a position of authority because the statute applies to everyone, not just people who have power as the plain text of the statute expresses. The amended complaint does not allege when Stone knew there was a conspiracy to physically disrupt the counting of the electoral votes at the Capitol. The cited cases by the *amicus* support Stone's position. In *Huey v. Barloga*, 277 F. Supp. 864, 867 (N.D. Ill. 1967), the defendants were trustees, employees, and agents of the Town of Cicero, Illinois – state actors in a position of authority. They had a "statutory duty" to keep the peace. *Id.* at 870. Furthermore, knowledge of the future wrongdoing and power over the conspirators is required. *Vietnamese Fishermen's Ass'n v. Knights of Ku Klux Klan*, 518 F. Supp. 993, 1007 (S.D. Tex. 1981). Plaintiffs attempt to link Stone to the Oath Keepers and Proud Boys, but they have not alleged he had power over them or Trump, the President.

Plaintiffs suggest that Stone had to tell "his close friend," Trump that he should abide by the election results *or* tell the attackers go home. (Opp. 34). Stone could have told his Oath Keeper bodyguards to not participate in the attack. (Opp. 34). Of course, Trump and Oath Keepers would have to agree with Stone or Stone would have to compel them since Stone did not have authority over either. This all of course assumes that there is a plausible section 1985 claim made and Stone had knowledge that the Capitol was going to be attacked on January 6, which he did not, and it was never alleged how Stone did possess that knowledge.  *See* Stone, Mot. at 18-19.

## CONCLUSION

Plaintiffs had the benefit of reviewing multiple motions to dismiss prior to filing their amended complaint. They have not requested the Court permit them the opportunity to amend the complaint. They have submitted their operative amended complaint. Plaintiffs did not sufficiently allege Stone had prior knowledge of and agree to enter the conspiracy. The also did not allege Stone committed an overt act in furtherance of that conspiracy. Stone also did not aid or abet any tort alleged by plaintiffs. The Court should dismiss this lawsuit with prejudice.

Respectfully submitted,

__/s/__Robert Buschel_____

| | |
|---|---|
| Grant J. Smith | Robert C. Buschel |
| (DDC Bar No. FL-36) | *Counsel of Record* |
| STRATEGYSMITH, P.A. | (DDC Bar No. FL-39) |
| 401 EAST LAS OLAS BOULEVARD | BUSCHEL GIBBONS, P.A. |
| SUITE 130-120 | 501 E. LAS OLAS BLVD. SUITE 304 |
| FORT LAUDERDALE, FL 33301 | FORT LAUDERDALE, FL 33301 |
| (954) 328-9064 | (954) 530-5301 |
| GSMITH@STRATEGYSMITH.COM | BUSCHEL@BGLAW-PA.COM |

**CERTIFICATE OF SERVICE**

I certify that on January 31, 2021, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notice of electronic filing to all registered

parties.

/s/ Robert Buschel
_____
Robert C. Buschel
*Counsel for Roger Stone*