**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Civil Division

---

CONRAD SMITH, ET AL.

      Plaintiffs,

v.

DONALD J. TRUMP FOR PRESIDENT,
INC., ET AL.

      Defendants.

Civil Action No.  1:21-cv-02265-APM

---

<u>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KELLY**</u>
<u>**MEGGS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND RULE 12(B)(6)**</u>

      Defendant Kelly Meggs, by and through undersigned counsel, hereby respectfully

submits this Reply Memorandum of Points and Authorities in further support of his Motion to

Dismiss under Rules 12(b)(1) and (b)(6).

<u>**LEGAL ARGUMENT**</u>

    **a.   Plaintiffs Lack Standing**

      Plaintiffs address Article III standing for the first time in the Opposition.  (ECF 118, p.

76).  As a threshold matter, Plaintiffs do not plead "concrete future injury" with particularity or

otherwise, anywhere in the Amended Complaint:  (a) concrete and particularized and (b) actual

or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env 't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). (Meggs MTD ECF 110 at p. 16.)  While late in the Opposition, at about pages 75-76, Plaintiffs argue that they have Standing and cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  (ECF 118 at p. 76).   'To establish standing under Article III of the Constitution, a plaintiff must demonstrate that (1) he has "suffered an 'injury in fact;'" (2) there is "a causal connection between the injury and the conduct complained of;" and (3) it is "'likely' . . . that the injury will be redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).'

Plaintiffs nevertheless omit any facts in the Amendment Complaint or any argument on the third requirement, that the declaratory relief that Plaintiffs request would redress their injuries enough for Article III.   *Id.* The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth, supra*, at 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 578 U.S. 330, 338, 194 L. Ed. 2d 635, 643, (2016).

" [A] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted). (See Kelly Meggs' MTD, ECF 110 at p.16).   Plaintiffs only briefly respond to Roger Stone's argument about causation. (*See Id*.).

This Defendant further argued, ""Even apart from that fundamental problem with their argument based on the risk of future harm, the plaintiffs did not factually establish a sufficient

risk of future harm to support Article III standing." *TransUnion LLC*, 141 S. Ct. at 2211-2212

(emphasis added). The Court further set forth that, "a plaintiff must 'demonstrate standing

separately for each form of relief sought.'" *Id.* (*citing Friends of the Earth*, 528 U. S. at 185) (*see

also, Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross").

     Further, Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure

that concrete adverseness which sharpens the presentation of issues" necessary for the proper

resolution of constitutional questions.' *LA v. Lyons*, 461 U.S. 95, 101, 103. S. Ct. 1660, 1665, 75

L.Ed. 2nd 675, 684, (1983)(*citing Baker v. Carr*, 369 U.S. 186, 204 (1962)(emphasis added)).

Nonetheless, the fundamental threshold question of Standing under Article III is lacking.  As this

Defendant argued, "Even apart from that fundamental problem with their argument based on the

risk of future harm, the plaintiffs did not factually establish a sufficient risk of future harm to

support Article III standing." *TransUnion LLC*, 141 S. Ct. at 2211-2212 (emphasis added).

     In a further argument on "conspiracy," Plaintiffs cite[1] *EIG Energy Fund XIV, L.P. v.

Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, (D.D.C. 2017) for conspiracy, but therein this court

also held that,

    "[t]he plaintiff bears the burden of invoking the court's subject matter jurisdiction.
*Arpaio v. Obama*, 797 F.3d 11, 19, 418 U.S. App. D.C. 163 (D.C. Cir. 2015).  When
ruling on a Rule 12(b)(1) motion, in which the defendant challenges the plaintiff's
standing to assert a claim, a federal court must presume that it "lack[s] jurisdiction
unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp.
v. Cuno*, 547 U.S. 332, 342 n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (*quoting
Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 115 L. Ed. 2d 288 (1991)).
The burden of establishing the elements of standing "rests upon the party asserting

[1] ECF 118, page 79.

jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). A plaintiff must establish standing "for each claim" and "for each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352 (internal quotation marks omitted), "with the manner and degree of evidence required at the successive stages of litigation," *Lujan*, 504 U.S. at 561.

### i. Plaintiffs fail to state a claim under 1985(1)

The constitutional questions behind the lack of a viable action under § 1985(1) also reflect that Plaintiffs fail to state a particularized recognized injury for Article III standing, as also set forth below under the 12(b)(6) argument.

As a 12(b)(6) argument, Dismissal is proper when a complaint, construed with all well-pleaded facts viewed in the light most favorable to plaintiffs. I*n re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Zagami v. Natural Health Trends Corp.*, 540 F. Supp. 2d 705, 709 (N.D. Tex. 2008), fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> When assessing a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.; Arpaio*, 797 F.3d at 19. The court is not required, however, to assume the truth of legal conclusions or accept inferences that are not supported by the facts set out in the complaint. *Iqbal*, 556 U.S. at 678; *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732, 375 U.S. App. D.C. 93 (D.C. Cir. 2007). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. If a complaint lacks sufficient facts "to state a claim that is plausible on its face," then the court must dismiss it. *Id*. (*quoting Twombly*, 550 U.S. at 570); *see also Arpaio*, 797 F.3d at 19.
>
> *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d at 66-67.

Defendant Meggs argued that "[m]oreover, Plaintiffs do not allege with particularity that Defendants deprived their constitutional rights. Instead Plaintiffs appear to repeatedly argue a "guilt by association" legal argument, primarily based in what appears as an "agency" argument under negligence law, couched in a civil conspiracy common law claim, as the legal foundation for a § 1985(1) claim.  (ECF 118 at p. 79)  This logic highlights the lack of a legally plausible 1985(1) claim – which, in a nutshell is not a federal tort statute.

Plaintiffs also cite to several cases as argument under 42 U.S.C. Section 1985(1), but they conflate common law conspiracy and other provisions of 1985, under the legal argument section of their Opposition for the Ku Klux Klan Act.  (ECF 118, pp. 4-7).

- *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983), a common law civil conspiracy action involving a wrongful death and survival action, not brought under §1985(1).  *Id.*

- *Jin v. Ministry of State Sec.*, 335 F.Supp. 2d 72, 80-81 (D.D.C. 2004), also based in common law claim of civil conspiracy, and not §1985(1)[2].  *Id.*

- *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781 (2nd Cir. 2016) addressed Plaintiff's Antitrust claim under 15 U.S.C. § 1, and further explained that "Like constitutional standing, antitrust standing is a threshold inquiry resolved at the pleading stage. (*Id. citing Gatt Commc'ns. v. PMC Assocs.*, L.L.C., 711 F.3d 68, 75 (2d Cir. 2013)).

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) also addressed claims brought by Telephone and Internet service subscribers held to have failed to state claim against local exchange carriers for alleged parallel billing and contracting designed to discourage competition in asserted violation of § 1 of Sherman Act (15 U.S.C.S. § 1).  *Id.* at 548.

---

[2] The District Court explained that '[i]n the District of Columbia, the four elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001). Furthermore, under District of Columbia law, a party seeking to recover for civil conspiracy must allege an underlying tortious act. *Id.* at 1023-24.

*Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78, f.n. 2, (D.D.C. 2004).

- *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 426 (4th Cir. 2015) which is another antitrust case in which the court granted a number of the motions to dismiss holding that:
  - A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group. At trial, a § 1 plaintiff will be required to make a "factual showing that each defendant conspired in violation of the antitrust laws." AD/SAT, Div. of Skylight, Inc. v. Associated Press, 181 F.3d 216, 234 (2d Cir. 1999)

  *Id*. at 422.

- *United States v. Dowlin*, 408 F.3d 647, 657 (10th Cir. 2005) was not about § 1985(1), but arose out of *criminal* charges under 18 U.S.C. § 371 and addressed the elements of the criminal statute[3].

- *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. 1984) (ECF 118 at p. 5), and Plaintiffs cited it failing to point out that *Hobson* addressed a claim under § 1985(3) – not  § 1985(1).

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1116 (N.D. Cal. 2008), is again another District Court case based upon alleging violations of § 1 of the Sherman Act, 15 U.S.C.S. § 1.

- *Sines v. Kessler*, 324 F. Supp. 3d 765, 796-97 (W.D. Va. 2018) (ECF 118 at p. 9), Plaintiffs again fail to point out that the District Court addressed claims under § 1985(3) – not  § 1985(1) as well as state based common law actions.  (See also ECF 118 p. 21).

- *U.S. v. Scott*, 979 F.3d 986, 990-91 (2d Cir. 2020) is a criminal law case on appeal involving a violation of 18 U.S.C. § 241.

- *Pinkerton v. United States*, 328 U.S. 640, 641, 66 S. Ct. 1180, 1181, 90 L. Ed. 1489, 1493, (1946), again not about § 1985(1), but is a criminal law case, in which the defendants were indicted or violations of the Internal Revenue Code.

---

[3] A conspiracy under 18 U.S.C. § 371 requires the government to prove: (1) the existence of an agreement; (2) to break the law; (3) an overt act; (4) in furtherance of the conspiracy's object; and (5) that the two willfully entered into the conspiracy. 4 See United States v. Hanson, 41 F.3d 580, 582 (10th Cir. 1994).
*United States v. Dowlin*, 408 F.3d 647, 657, 2005 U.S. App. LEXIS 8703, *13

- *Marsh v. Barry*, 824 F.2d 1139, 1143-45 (D.C. Cir. 1987).  Plaintiffs cite this case[4] which did not cite to §1985(1), but primarily rested in a §1983 claim, and other provisions of §1985 were referenced, but official state conduct was at issue and the state government controlled the jail in question, raising constitutional violations of equal protection.

- Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 105 (D.D.C. 2003) which primarily addressed criminal charges and the Alien Tort Statute which included the liability for aiding and abetting.  The court, however, dismissed the claims resting in negligence.[5]

Plaintiffs instead cite to cases that not only do not address 42 U.S.C. §1985(1), but address claims resting in criminal law, common law and other federal statutes to argue elements or criminal or common law conspiracy or even  §1985 (3) – but not the requirements of §1985(1), or even the statutory requirements of the state law claims (addressed below) and otherwise appear to be making claims resting in negligence based on agency principles.  In

---

[4] In this case, there was an admission by the Defendant that the conditions at the Jail rose to the Danger Point in advance of the Incident in question.  824 F.2d at 1144.

[5] The District Court held that 'Plaintiffs' negligence claims must be dismissed for failure to state a claim upon which relief can be granted. The 3AC neither alleges nor identifies a duty that AHIF owed to these plaintiffs, if it had no knowledge that funds it was disbursing were making their way into the coffers of al Qaeda. *See Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 284 (S.D.N.Y. 2003) (dismissing negligence claim made under New York law because plaintiffs had failed to allege that defendants owed them any duty); *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 571 (S.D.N.Y. 1996) (dismissing negligence claim made under New York law because plaintiffs "failed to plead a basic element of a negligence claim -- the existence of a duty of care"); see generally *Pulka v. Edelman*, 40 N.Y.2d 781, 782, 358 N.E.2d 1019, 1020, 390 N.Y.S.2d 393, 394 (1976) ("Before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff") (citation omitted). Plaintiffs have thus failed to state claims for negligence or for negligent infliction of emotional distress. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (breach of duty is an essential element to negligent infliction of emotional distress under both New York's "bystander" and "direct duty" theories).

274 F. Supp. 2d at 108.

criminal conspiracy, of note, "mere association, standing alone, is inadequate; an individual does not become a member of a conspiracy merely associating with conspirators known to be involved in crime." *United States v. Gaskins*, 402 U.S. App. D.C. 262, 273 (D.C. Cir., 2012) (quoting *Wardell*, 591 F.3d at 1288). To establish the existence of an agreement, the "plaintiff must set forth more than just conclusory allegations of [the] agreement." A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss. " *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997)

Instead Plaintiffs argue that § 1985(1) should be interpreted 'with the "broad applicability" accorded to it by courts.' Plaintiffs then cite *Stern v. United States Gypsum, Inc*., 547 F.2d 1329, 1342-1343, (7th Cir. 1977), and *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971) as well as *Spagnola v. Mathis*, 809 F.2d 16, 29 (D.C. Cir. 1986).

Quite noticeably, Plaintiffs fail to address the holding of *Stern* v. *United States Gypsum, Inc*. 'The public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionally protected free speech area, see, e.g., *Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964).' *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342, **which held that § 1985(1) does not apply to a federal damage remedy[6]**.

> Construction of § 1985(1) to apply a federal damage remedy to such facts would raise grave constitutional questions, because "laws which actually affect the exercise of these vital [First Amendment] rights" need not do so directly and overtly to be adjudged constitutionally offensive. *United Mine Workers, supra*, at

---

[6] 'Finding that Sherman Act liability in such circumstances would raise important constitutional problems involving the right to petition, and seeing "no basis whatever" in the legislative history for concluding Congress intended to raise such questions, *id*. at 137, the Court held that the Act could not be applied. This mode of analysis seems to us appropriate here, and it leads, once followed, straight to the conclusion we have reached.' 547 F.2d at 1344 (emphasis added.)

222; *Bates v. City of Little Rock*, 361 U.S. 516, 523, 4 L. Ed. 2d 480, 80 S. Ct. 412 (1960).

*Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1343, (7th Cir. 1977).

*Griffin v. Breckenridge* specifically addressed § 1985 (3), not (1), and specifically limited the reach of that section as the cause of action from reaching all private conspiracies to ensure it did not become overreach into state criminal law.  403 U.S. 88, 101-102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338, 348, (1971).

As this Defendant argued, 'Under 42 U.S.C. § 1985, only the third clause (3) has been recognized as protecting the constitutional rights of "equal protection of the laws" and "equal privileges and immunities under the laws" <u>against private conspiracies in limited contexts</u>. *Griffin v. Breckenridge*, 403 U.S. at 101-102.  (See ECF 110 at p. 26)  The Court found that,

> It is thus evident that all indicators -- text, companion provisions, and legislative history -- point unwaveringly to § 1985 (3)'s coverage of private conspiracies. <u>That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others.</u> For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of *Representative Cook, "that Congress has a right to punish an assault and battery when committed by two or more persons within a State." [internal citation omitted]*. The constitutional shoals that would lie in the path of interpreting § 1985 (3) as a general federal tort law can be avoided by giving full effect to the congressional purpose -- by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted supra, at 100. *<u>The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.</u>*  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Id*.

Instead Plaintiffs argue for a broadening of §1985(1) citing also to *Spagnola v. Mathis*, 809 F.2d 16, 29 (D.C. Cir. 1986), which addressed specifically the question of whether a 1985(1)

claim was compatible with the CSRA, the exclusive remedy for aggrieved federal employees advancing non constitutional claims.  The *Mathis* court held that "[a]lthough none of the above cases deals with § 1985(1) in particular, their unifying thread seems to be that the CSRA precludes resort to other statutory schemes for aggrieved federal employees raising non constitutional claims against their employers. We thus conclude that Spagnola's § 1985(1) claim is likewise precluded." *Id*. at 30.

Instead *Spagnola v. Mathis* makes clear that § 1985(1) is about state action – not private conduct.  *Id*. at 29.('Citing *Griffin*, the District Court in *Stith v. Barnwell*, 447 F. Supp. 970, 973-74 (M.D. N.C. 1978), stated unequivocally that " § 1985(1) would apply *where defendants who were acting as federal employees* were participating in a conspiracy otherwise proscribed by the subsection." Similarly, in *Mollnow v. Carlton*, 716 F.2d 627, 631 (9th Cir. 1983), *cert. denied*, 465 U.S. 1100, 80 L. Ed. 2d 126, 104 S. Ct. 1595 (1984), the Ninth Circuit noted that "§ 1985(1) is legislation specifically authorizing suit by injured *federal officers [against their superiors]*," but found that suit under the section was precluded for military subordinates.')[7]

Plaintiffs turn next to a DC Circuit case, (ECF 118 pp. 23, 24, 26), that addressed a legal malpractice claim in which the court found that "we cannot say that McCord's invocation of, [provision 1] of section 1985(2) is *frivolous*." *McCord v. Bailey*, 636 F.2d 606, 618, (D.C. Cir. 1980).  But the court also recognized a '[d]ue to the absence of state action and any intent on the defendants' part to inflict a class-based, invidious discrimination, McCord cannot maintain a

---

[7] To some extent, Plaintiffs recognize the lack of caselaw supporting their cause of action as plead, a private conspiracy § 1985(1) based in tort, topped off with a lack of factual predicate in the Amended Complaint for a concrete future constitutional violation, when Plaintiffs cite to brief excerpts of legislative history on § 1985(1).  Cong. Globe, 42d Cong., 1st Sess. 443 (1871). (See ECF 118, p. 23 at f.n. 7 and 8).

cause of action under 42 U.S.C. §§ 1983, 1985(2) (cl. 2), and 1985(3).  *Id.* at 618.  *McCord v. Bailey* does not address § 1985(1).

### b.  Lack of Specific Factual Predicate is Insufficient for Claims Under DC Law, or Otherwise

Plaintiffs argue about Defendant Meggs conspiring with others outside of the Defendant Oath Keepers, but do not state specific facts in support of this argument.  They instead make overbroad and vague assertions to argue that Inter-Corporate conspiracy, which not recognizing that Plaintiffs further omit undisputed facts, such as Stop the Steal Rally was a Campaign event campaigning for one official party and the Incumbent President, which includes First Amendment Protection, as well protection under the DC Human Rights Act.  At page 18 of their Opposition, Plaintiffs reassert certain facts plead in the Amended Complaint and are undisputed *only arguendo*, and argument alleged to be "fact" that constitutes a vague and markedly unspecific allegation.  (Meggs MTD ECF 110 at pp. 4-10).

Plaintiffs cite to  ¶ ¶ 39 and 215, (ECF 118 at p. 18), as if they are suddenly specific allegations.  However  ¶ 39 only alleges generally that Mr. Meggs breached the Capitol. Plaintiffs not do not include the how where when or why.  ("Defendant KELLY MEGGS is a resident of Dunnellon, Florida, and a member of OATH KEEPERS. He breached the United States Capitol on January 6." ¶39.)  (ECF 89, p. 14).

And ¶ 215 of ECF 89 only generally states:

Pursuant to D.C. Code § 10-503.16(b)(6), individuals are prohibited from "willfully and knowingly . . . engag[ing] in any act of physical violence upon the United States Capitol grounds or within any of the Capitol buildings." PROUD BOYS, PBI, NORDEAN, BIGGS, PEZZOLA, REHL, DONOHOE, OATH KEEPERS, STRAKA, CALDWELL, WATKINS, MEGGS, HOSTETTER, TAYLOR, WARNER, MARTINEZ, KINNISON, and MELE violently breached barricaded areas of the Capitol grounds and the Capitol Building and attacked the police officers guarding the Capitol, including Plaintiffs.

There are no specific facts alleged as to where, when, how, or any other details of the alleged violence or contacts or terms of the conspiracies, etc.  The entire theory for liability, not sufficient for the causes of actions plead in the Amended Complaint, instead rest on an overly broad and vague claim of "*aiding and abetting batteries*" or "*aiding and abetting assaults*" or even "*aiding and abetting* conspiracies."  ECF 89 at ¶ 165, ¶ 194, ¶196, ¶ 198, ¶201, ¶204, ¶207, ¶210.   Plaintiffs instead appear to allege overbroadly and vaguely a "guilt by association."

> JOHN DOE Defendants and others intentionally and unlawfully attacked Plaintiffs at the Capitol on January 6, 2021, as related above, causing harmful or offensive bodily contact to all Plaintiffs. **All Defendants *aided and abetted[7] the batteries of Plaintiffs.***

*(ECF 110, SMF 15 citing Id.[8])*

And referring to Mr. Meggs, as Plaintiffs repeat reference to an "agreement," – Plaintiffs undisputedly also alleged that Mr. Meggs was in DC for the purpose of providing *security* at the campaign event.  (ECF 89 at ¶ 86).  There is no specific allegation that Mr. Meggs ever touched any of the Plaintiffs or tried to harm any of the Plaintiffs. (ECF 89 ¶¶199 - 202).  Plaintiffs' claims that Mr. Meggs "breached the Capitol on January 6," (ECF 91¶ 39) but the allegations that Defendants, including Mr. Meggs, had a common goal to harm Plaintiffs are based on conclusory allegations, without factual predicate, and are, therefore, insufficient to withstand a motion to dismiss. (ECF 91 ¶ 86). (ECF 110, SMF 17, and citing fn.8.)

Plaintiffs further allege that Meggs, among others, had the "power to prevent or aid in preventing harms by others" (ECF 118 at p. 34), but there is no sufficient factual predicate to support this allegation.  Plaintiffs appear to content that the entire protest – and there were at minimum seven hundred persons known to have been at the Capitol on January Sixth, but

---

[8] ECF 91 is the redlined version of the Amended Complaint.

Plaintiffs appear to contend that all of these protestors were coordinated by each Defendant. There are no specific facts alleged to support who coordinated with who much less how many persons Defendant Meggs allegedly had controlled, and if it is any of the persons he is alleged to have controlled who came into contact with these plaintiffs.  Plaintiffs fail to plead who specifically harmed these Plaintiffs.  Plaintiffs further have not plead in the Amended Complaint whether anyone who in fact harmed these Plaintiffs were under Defendant Meggs' power.  (See ECF 118.)

### c. State Law Claims

The claims plead require Specific Intent – not through Agency or other principles of negligence.  There are no allegations in the Amended Complaint that Defendant Meggs treated the Plaintiffs differently from anyone else based upon their political affiliations or out of any prejudice towards them based upon their political affiliations or because of race.

The Campaign is a political event and Congress is full of politics which is why there are always protests at the Capitol.  That does not equate with any factual predicate alleging that these

Plaintiffs were targeted on pretext.  The application of the First Amendment and the need for particularity can be juxtaposed against the history in front of Congress and protestors[9]: [10]

> …But in Washington, the Capitol complex and committee hearings are by law and democratic tradition open to the public unless secret intelligence matters are being discussed.  The police who guard the Capitol complex will not ban serial disrupters from the premises unless a judge deems extraordinary circumstances warrant it.  "The US Capitol Police respects and protects the right of people to peaceably assemble and exercise their rights under the First Amendment" to the US constitution, spokeswoman Lt Kimberly Schneider said in a statement.  "We balance providing security with maintaining a safe and open campus that is accessible to the general public."[11]

> § 22–3704. Civil action.

> (b) In a civil action pursuant to subsection (a) of this section, whether an intentional act has occurred that demonstrates an accused's prejudice based on the actual or perceived color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, homelessness,

---

[9] In 2012, birthday-suit-clad protesters rushed House Speaker John Boehner's office when Seven naked protesters swarmed the office of Speaker John Boehner (R-OH) on Tuesday for some 20 minutes of loud chanting against cuts to AIDS funding.  ***After police showed up and repeatedly threatened to arrest the protesters for indecent exposure, they eventually put on their clothes and walked out of the Speaker's office.*** The three female protesters stuck around in the hallway to speak to reporters and were arrested anyway; the four male protesters appeared to get away, the organizers said.

*Nude Protesters Arrested After Storming Speaker Boehner's Office, By Sahil Kapur, Talking Points Memo, TPM, November 27, 2012*, https://talkingpointsmemo.com/dc/nude-protesters-arrested-after-storming-speaker-boehner-s-office

10 *Why Protesters Code Pink Stay Out Of Jail*, By Daniel Nasaw, BBC News Magazine, 19 September 2014, https://www.bbc.com/news/magazine-29280937

[11] *See Id. (emphasis added).*

disability, matriculation, **or political affiliation of a victim** of the subject

designated act shall be determined by reliable, probative, and substantial

evidence.

D.C. Code § 22-3704(a)(emphasis added).   And the Court of Appeals explained that

there must be a "but-for" causation, in a case cited by Plaintiffs.  This is fundamental because it

means the statute can remain constitutional and the court explained, '[b]ecause the statute

punished bias-motivated criminal conduct (rather than explicitly prohibiting expression, i.e.,

speech or messages), the Court concluded that "the statute in th[e] case [was] aimed at conduct

unprotected by the First Amendment." *Id*. at 487. Guided by this analysis, we interpret the Bias-

Related Crime Act in a way that only punishes analogous conduct, i.e., that which is not

protected by the First Amendment.'  *Lucas v. United States*, 240 A.3d 328, 337, (D.C. App.

2020).

The court further explained that '[w]e are persuaded by the reasoning of *Burrage* that the

Bias-Related Crime Act requires but-for causation. To find the penalty enhancement applicable

to an individual accused of a crime, the government must prove that the accused would not have

committed the underlying crime but-for prejudice against the victim based on the victim's

protected characteristic.' [12] *Id.* at 340.

The United States District Court for the District of Columbia also held, '[t]his provision

does not appear to apply to the instant set of facts because it solely allows civil actions for

---

[12] *See also* D.C. Code § 22-3704(a) (2012 Repl.) (providing civil relief to those injured "as a result of an intentional act that demonstrates an accused's prejudice based on" one of the same protected characteristics) *Id*. at 335.

conduct that would constitute a bias related "crime." *Uzoukwu v. Metro. Wash. Council of Gov'ts*, 983 F. Supp. 2d 67, 91, (D.D. C. 2013)[13].

Similarly, Plaintiffs do not cite *Collier*, where the court dismissed the plaintiff's assault claim because the plaintiff had not alleged that the defendant "intentionally threatened him or attempted to cause him harm." *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 15, (D.D.C. 2014). 'The court explained that, even if the defendant had proximately caused the plaintiff's harm through his negligence, negligence was insufficient to sustain a claim of assault, which requires an intentional action.[14]   *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 47, (D.D.C.2019).

Moreover, Plaintiffs argue a claim of rioting under D.C. Code § 22-1322 (which does not provide for a civil cause of action) into a D.C. Bias Related Claims Act civil action under D.C. Code § 22–3704.  Plaintiffs have not plead but-for the intentional act based on the protected characteristic in order to seek civil relief.

As for Terrorism allegations, there are no such convictions cited in the Amended Complaint, while Plaintiffs argue that "no defendant substantively challenges the sufficiency of

---

[13] Indeed, the District of Columbia enacted the bias related crime legislation "to provide for the collection and publication of data about bias-related crime, and to provide enhanced penalties for persons who commit a bias-related crime and appropriate civil relief for a victim of bias-related crime." D.C. Legis. Serv. 8-121 (Act 8-130) (1990) (emphasis added).'

[14] Even if Mr. Collier were to allege negligence, such an allegation of causation could not stand in the face of the other facts alleged—that Mr. Collier was harmed due to the intentional act of a third person, Officer McRae. A chain of causation can be broken by the action of a subsequent tortfeasor or criminal, who is a "superseding cause" of harm, i.e. a cause that relieves the first tortfeasor of liability to the injured party. See Convit, 980 A.2d at 1126.

*Collier v. District of Columbia*, 46 F. Supp. 3d at 15.

these allegations that at an act of terrorism occurred." (ECF 118 at p. 37). This Defendant

argued that Plaintiffs add a claim - in bad faith – without any legal predicate when they raise the

DC Terrorism statute with no corresponding facts. (ECF110 p. 9 at par. 21). This Defendant

cited to the DC law on terrorism which first requires a Specified Offense such as Murder,

Kidnapping, Assault with the Intent to Kill only, Arson  or Malicious Destruction of Property

that then requires criminal intent to include Weapons of Mass Destruction including but not

limited to Biological Agents and Nuclear Material.  D.C. Code § 22-3152.  To argue it is simply

inappropriate.  First, it is a criminal statute.  Secondly, there is no factual predicate in the

Amended Complaint to support this argument.  And this Defendant argued this point:  "There are

no allegations that contemplate the relevant sections of this statute to include specified criminal

offenses, with separately defined specific intent, required in relation to the conviction of said

enumerated actions." ECF 110 at p. 11.

For all of the foregoing reasons, it is respectfully requested, that the Amended Complaint

be Dismissed.

_____/s/ Juli Z. Haller_____
Juli Z. Haller
D.C. Bar No.466921
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W.,
S. Building, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Defendant Kelly Meggs*

Dated: January 31, 2022

## ***CERTIFICATE OF SERVICE***

I HEREBY CERTIFY that on the 31st day of January, 2022, a copy of the foregoing Reply

Memorandum in support of Defendant Meggs Motion to Dismiss (ECF 110), was filed

electronically to serve all counsel of record.


_____ /s/ *Juli Z. Haller* _____

Juli Z. Haller