# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH, et al, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants, | CIVIL CASE NO.: 1:21-cv-02265-APM |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

Patrick Trainor
Appearing *pro hac vice*
**LAW OFFICE OF PATRICK TRAINOR**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
E: pt@ptesq.com
*Counsel for Defendant Zachary Rehl*

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ............................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD ........................................................................................................... 1

LEGAL ARGUMENT ........................................................................................................... 3

    I.    Professional Rescuer Doctrine Bars Firefighters and Police Officers from Recovering Tort Damages for On-The-Job Injurie ................................................... 3

    II.   Plaintiffs Are Professional Rescuers Barred from Recovering Tort Damages for On-the-Job Injuries ............................................................................................ 7

CONCLUSION ..................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)..........................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)..........................................................2

*Entwistle v. Draves*,
    200 N.J. Super. 1, 490 A.2d 313 (App. Div. 1985)................................................................5

*Fancil v. Q.S.E. Foods, Inc.*,
    60 Ill. 2d 552 (1975) ..............................................................................................................5

*Flowers v. Rock Creek Terrace Ltd. Partnership*,
    308 Md. 432, 520 A.2d 361 (1987).......................................................................................3

*\*Gillespie v. Washington,*
    395 A.2d 18 (D.C. 1978)................................................................................................ passim

*\*Lee v. Luigi, Inc.*,
    696 A.2d 1371 (D.C. 1997)............................................................................................ passim

*Maltman v. Sauer*,
    84 Wash.2d 975, 530 P.2d 254 (1975) ............................................................................. 3-5

*Montgomery v. Risen*,
    875 F.3d 709 (D.C. Cir. 2017)..............................................................................................2

*\*Melton v. Crane Rental Co.*,
    742 A.2d 875 (D.C. 1999).....................................................................................................6

*Robinson v. Pezzat*,
    818 F.3d 1, 422 U.S. App. D.C. 35 (D.C. Cir. 2016) ..........................................................2

*\*Windsor v. Whitman-Walker Clinic, Inc.*,
    512 F.Supp.2d 66 (D.D.C. 2007) .....................................................................................3, 6

*\*Young v. Sherwin-Williams Co.*,
    569 A.2d 1173 (D.C. 1990)............................................................................................ passim

**Rule**                                                            **Page**

Federal Rule of Civil Procedure 56 ...................................................................................................1

Federal Rule of Civil Procedure 56(a) ..............................................................................................1

Federal Rule of Civil Procedure 56(c) ..............................................................................................2

**Statute**

2 U.S.C. § 1961(b) ............................................................................................................................7

2 U.S.C. § 1961(c) ............................................................................................................................7

2 U.S.C. § 1963 ............................................................................................................................7, 9

## OTHER AUTHORITIES

**Authority**

United States Capitol Police, *Our Mission*, https://www.uscp.gov/the-department/our-mission (last visited Feb. 1, 2023) ...............................7

*I thought I was going to lose my life: Capitol Police officers share their harrowing January stories for the first time*, Whitney Wild and Jeremy Herb, CNN.com (Jun. 4, 2021), https://www.cnn.com/2021/06/03/politics/capitol-police-officers-exclusive-interview-january-6/index.html, (last visited Feb. 1, 2023) ...................................................................................... 7-8

*Press Release*, Lawyers' Committee for Civil Rights Under Law, *Capitol Police Officers File Civil Rights Lawsuit to hold Trump, Militant Groups Accountable for Jan. 6 Capitol Attack* (Aug. 26, 2021) https://www.lawyerscommittee.org/capitol-police-officers-file-civil-rights-lawsuit-to-hold-trump-militant-groups-accountable-for-jan-6-capitol-attack/ (last visited Feb. 3, 2023)........8

*Press Release*, Selendy Gay Elsberg, PLLC, *Selendy Gay Elsberg Appears in Capitol Officers' Lawsuit* (Apr. 26, 2022) https://www.selendygay.com/news/general/2022-04-26-selendy-gay-elsberg-appears-in-capitol-police-officers-lawsuit (last visited Feb. 3, 2023) ...............................8

*Press Release*, United States Capitol Police, U.S. Capitol Police Arrest 80 Demonstrators, (Jul. 10, 2017), https://www.uscp.gov/media-center/press-releases/capitol-police-arrest-80-demonstrators, (last visited Feb. 6, 2023) ...................................................................................9

*Press Release*, United States Capitol Police, Approx. 155 Demonstrators Arrested in Senate Office Buildings, (Jul. 19, 2017), https://www.uscp.gov/media-center/press-releases/approx-155-demonstrators-arrested-senate-office-buildings (last visited Feb. 6, 2023)....................................9

*Press Release*, United States Capitol Police, USCP Arrests 181 Protesters for Demonstration Activity at Senate Finance Committee Hearing, (Sep. 25, 2017), https://www.uscp.gov/media-center/press-releases/uscp-arrests-181-protesters-demonstration-activity-senate-finance, (last visited Feb. 6, 2023)...................................................................................................................9

*Press Release*, United States Capitol Police, U.S. Capitol Police Charge 575 Individuals for Unlawfully Demonstrating in Hart Senate Office Building, (Jun. 28, 2018) https://www.uscp.gov/media-center/press-releases/us-capitol-police-charge-approximately-575-individuals-unlawfully, (last visited Feb. 6, 2023) ...........................................................................9

*Press Release*, United States Capitol Police, Illegal Demonstration on Capitol Grounds, (Jul. 15, 2021), https://www.uscp.gov/media-center/press-releases/illegal-demonstration-capitol-grounds (last visited Feb. 7, 2023)...........................................................................................................9

*Extinction Rebellion Protesters confront politicians at US Capitol*, The Guardian (Jul. 23, 2019), United States Capitol Police arrest seventeen (17) people for obstructing, crowding, and defacing public property, https://www.theguardian.com/environment/2019/jul/23/extinction-rebellion-protesters-us-capitol-washington, (last visited Feb. 7, 2023) ...........................................................9

*Capitol Police arrest 70 in immigration protests, including 90-year-old nun*, ABC News (Jul. 18, 2019), Seventy arrested during immigration protests at Capitol.  ABCNews.com, https://abcnews.go.com/Politics/capitol-police-arrest-70-immigration-protests-including-90/story?id=64414897, (last visited Feb. 7, 2023) ..........................................................................9

Defendant Zachary Rehl (hereinafter "Mr. Rehl"), through undersigned counsel, moves the Court pursuant to Federal Rule of Civil Procedure 56 to enter judgment for him on claims in Plaintiffs' First Amended Complaint (Amended Complaint ("Am. Compl."), ECF No. 89). As fully demonstrated in this Memorandum the Professional Rescuer Doctrine bars plaintiffs from recovering tort damages, and Mr. Rehl is entitled to judgment in his favor as a matter of law.

## FACTUAL BACKGROUND

The accompanying Statement of Material Facts addresses the facts not in genuine dispute and is incorporated herein by reference.

## PRELIMINARY STATEMENT

Plaintiffs are United States Capitol Police Officers who allege they sustained on-the-job injuries protecting the United States Capitol from Defendants during the political protest that occurred on January 6, 2021. Plaintiffs argue that during the political protest, which they describe as an insurrection, Defendants like Mr. Rehl violated their civil rights. In an effort to circumvent the Professional Rescuer Doctrine, which bars law enforcement officers and firefighters from recovering tort damages for on-the-job injuries, Plaintiffs gussied up their pleadings with enough hysterical references to the Ku Klux Klan and Reconstruction to make Virgil Kane believe the South has risen again. Despite Plaintiffs hyperbolic descriptions of January 6, 2021, this is a personal injury complaint for recovery of tort damages. Plaintiffs' sensationalistic claims cannot overcome the Professional Rescuer Doctrine, which bars them from recovering tort damages for on-the-job injuries.

## LEGAL STANDARD – SUMMARY JUDGMENT

Plaintiffs are law enforcement officers barred from recovering tort damages by the Professional Rescue Doctrine, which bars law enforcement officers and firefighters from recovering tort damages for on-the-job injuries. Am. Compl., ECF No. 89, ¶¶ 1, 8, 11-18, 128,

1

139, 156-165, 168, 203, 209.  Mr. Rehl is entitled to summary judgment, because the record shows there is "no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "may affect the outcome of the litigation."  *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Mr. Rehl must demonstrate that there is no genuine dispute of material fact that Plaintiffs are professional rescuers.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Mr. Rehl satisfied this burden by "citing to particular parts of materials in the record," that shows Plaintiffs are professional rescuers and by showing "that Plaintiffs cannot produce admissible evidence to support" the "presence of a genuine dispute." Fed. R. Civ. P. 56(c).  Plaintiffs must overcome the professional rescuer doctrine bar against tort recovery by identifying "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  Plaintiffs have failed proffer evidence to overcome the Professional Rescuer Doctrine bar against law enforcement officers, firefighters, and other professional rescuers from recovering tort damages for on-the-job injuries, therefore, Mr. Rehl must prevail based on Plaintiffs "failure of proof."  *Celotex*, 477 U.S. at 323.

When evaluating a summary judgment motion, a court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party."  *Robinson v. Pezzat*, 818 F.3d 1, 8, 422 U.S. App. D.C. 35 (D.C. Cir. 2016).  Summary judgment must be granted unless the nonmovant adduces substantial evidence opposing summary judgment, by coming forward with more than "a scintilla of evidence" or "mere allegations or denials" of the pleadings.  *Anderson*, 477 U.S. at 248-252.

**LEGAL ARGUMENT**

 I. **Professional Rescuer Doctrine Bars Firefighters and Police Officers from Recovering Tort Damages for On-The-Job Injuries**

The Professional Rescuer's Doctrine, sometimes known as the firefighter's rule "bars those whose business it is to prevent injury and save lives from tort recovery" for on-the-job injuries caused by the negligence of others. *Gillespie v. Washington*, 395 A.2d 18, 20 (D.C. 1978). The doctrine bars professional rescuers "like firefighters and police officers…from recovering tort damages for on-the-job injuries." *Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 (D.D.C. 2007). Under the doctrine, as a matter of law, "those engaged in rescue work as part of their employment may not…recover for injuries sustained by them on the job." *Gillespie*, 395 A.2d at 19-20. The doctrine prohibits the professional rescuer from recovering recover tort damages for injuries caused by "those dangers which are inherent in professional rescue activity, and therefore foreseeable," because these risks are "willingly submitted to by the professional rescuer when he accepts the position and the remuneration inextricably connected therewith." *Gillespie*, 395 A.2d at 20 (*quoting Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254, 257 (1975)). The doctrine further serves the important purpose of "prevent[ing] the proliferation of suits in tort for injuries sustained in pursuit of regular, but inherently dangerous functions, conducted for the public safety." *Gillespie,* 395 A.2d at 20.

As matter of public policy, "a fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity." *Flowers v. Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 446, 520 A.2d 361, 368 (1987). The District of Columbia's rationale for the doctrine "is that a professional rescuer has assumed risks of his or her employment and is compensated accordingly by the public, both in pay and in worker's compensation benefits in the event of injury." *Young v. Sherwin-Williams*

*Co.*, 569 A.2d 1173, 1174 (D.C. 1990).  The doctrine is premised on "the notion that firefighters and other professional rescuers voluntarily assume the risks of their employment and are compensated accordingly."  *Id.* at 1175.  The doctrine bars professional rescuer's from recovering tort damages whether the professional rescuer's injuries are caused by negligent activities or intentional misconduct.  *Id.* at 1178.

In the District of Columbia, the courts focus of whether the doctrine applies is "on the professional rescuer, not on those who create the hazards," thus, "the degree of culpability of the person who created the hazard is irrelevant," because the cause of the hazard "in no way affects the voluntariness of a rescuer's assumption of the risk."  *Id.*  The doctrine bars recovery even when a plaintiff's injuries are caused by intentional misconduct, because it "is unrealistic to assume that firefighters and other professional rescuers take that their jobs believing they will face only negligently created risks," and in circumstances where a rescuer's injuries are caused by intentional misconduct "the criminal law is available to deter and punish wrongdoers."  *Id*.

To determine whether a professional rescuer's injuries were caused in the course of his professional rescuing activities, and thus barred from recovering tort damages by the professional rescuer doctrine, the District of Columbia in *Gillespie v. Washington*, adopted the test set forth in *Maltman v. Sauer,* which established the proper test as "whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity."  *Gillespie*, 395 A.2d at 21 (*quoting Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254, 257 (1975)).

> "Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to those hazards.  When the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff."

4

*Maltman v. Sauer*, 84 Wash.2d 975, 530 P.2d 254, 257 (1975).

The New Jersey Supreme Court has held that "[w]hatever the label one attaches to defendants' actions or failure to act, be it negligence, or wilful, or wanton misconduct…it is clear that public policy bars policemen injured in the course of their employment duties from any actionable remedy." *Entwistle v. Draves*, 200 N.J. Super. 1, 490 A.2d 313, 315 (App. Div. 1985). In *Entwistle,* the doctrine barred recovery to a police officer injured while he was attempting to restore peace at a disorderly scene; the court held the cause of the officer's injuries was within the normal risks of his employment. *Id.* Other courts have found that injuries sustained by a police officer ambushed by a criminal during a routine security check of property was precluded by the doctrine. *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552 (1975).

In the District of Columbia, the doctrine has barred recovery to a harbor police officer injured at the scene of a drunken boat accident when he lifted the outdrive of the boat while trying to upright the capsized boat, in order to search for additional passengers, where the court found drunk boating was not an exemption from the doctrine, because the strain that caused the officer's injuries was "clearly within the ambit of danger associated with his rescue activity." *Gillespie*, 395 A.2d at 21. In *Lee v. Luigi, Inc.*, the doctrine prevented recovery by a police officer injured when he stepped on a slippery substance and fell down a flight of stairs during a burglary investigation at a restaurant, where the court held that the officer was required to climb the stairs to investigate the burglary and secure the restaurant, thus the cause of the officer's injuries was "within the ambit of his police activities." *Lee v. Luigi, Inc.*, 696 A.2d 1371, 1375 (D.C. 1997). In *Young*, the doctrine barred a firefighter from recovering tort damages where he was injured trying to save a truck driver's life by catching him as he fell from the cab of his truck, which was hanging off of an elevated bridge abutment. The court rejected Plaintiff's

5

argument that as a pumper firetruck driver the cause of his injuries was not within the scope of Plaintiff's employment, and held the first duty of any fireman is to save lives and saving a person hanging from a high place was not a hazard unknown to firefighters.  *Young*, 569 A.2d at 1176. In *Windsor v. Whitman-Whitaker Clinic, Inc.*, the doctrine barred a firefighter from recovering tort damages, where the firefighter fell from a second-floor landing, where smoke obscured the fact that there were no bannisters, railing, or bracing to prevent falls from the landing.  *Windsor v. Whitman-Whitaker Clinic, Inc.*, 512 F.Supp. 2d 66, 67-68 (D.D.C. 2007).  In *Windsor*, the court found that dangerous conditions caused by lack of visibility at the scene of a fire due to smoke was a risk assumed by firefighters.  *Id*. at 69.

Some courts recognize an exception to the professional rescuer doctrine for independent acts of negligence, which "allows recovery when the professional rescuer's injury is caused by an act of negligence independent from the circumstances which occasioned his presence at the scene of the rescue."  *Lee*, 696 A.2d at 1376.  The District of Columbia has recognized the independent acts of negligence exemption, where the injury was caused by the "negligence of a third party at a place remote from the situs and unrelated to the cause of emergency."  *Melton v. Crane Rental Co.*, 742 A.2d 875, 878 (D.C. 1999).  In *Melton*, EMT's were injured when their ambulance was struck in the rear-end by a crane truck while stopped at a red light as they were transporting a pregnant patient from the rescue scene to a hospital.  The Court held that the Professional Rescuer Doctrine did not bar tort recovery, because the EMT's had left the scene of the original emergency and there was no nexus between the negligent act and the act that called the EMT's to the original rescue scene.  *Melton*, 742 A.2d at 875-876.  *Melton* is not analogous to the instant matter, because Plaintiffs on-the-job injuries occurred at the original scene, not at a remote location, or at a later time after they had left the Capitol.

## II. Plaintiffs Are Professional Rescuers Barred from Recovering Tort Damages for On-the-Job Injuries

Plaintiffs as Capitol Police Officers are unquestionably professional rescuers and exactly the type of plaintiffs the professional rescuer doctrine bars from recovering tort damages for on-the-job injuries from those whose negligence caused the injuries. Am. Compl., ECF No. 89, ¶¶ 1-2, 8, 11-18, 32, 156-165, 128, 139, 156-165, 168, 200, 203, 206, 209. The mission of the United States Capitol Police ("USCP") is to "[p]rotect the Congress – its Members, employees, visitors, and facilities – so it can fulfill its constitutional and legislative responsibilities in a safe, secure and open environment." United States Capitol Police, *Our Mission*, https://www.uscp.gov/the-department/our-mission (last visited Feb. 1, 2023). United States Capitol Police Officers are tasked with the day-to-day law enforcement duties that "prevent any portion of the Capitol grounds and terraces from being used as playgrounds or otherwise, so far as may be necessary to protect the public property, turf and grass from destruction or injury." 2 U.S.C. § 1963, *See also* Am. Compl., ECF No. 89, ¶ 156.

United States Capitol Police Officers are charged with protecting the Capitol grounds, which "shall include any building or facility acquired by the Sergeant at Arms of the Senate for the use of the Senate." 2 U.S.C. § 1961(b). Further, the Capitol grounds "shall include any building or facility acquired by the Chief Administrative Officer of the House of Representatives for the use of the House of Representatives." 2 U.S.C. § 1961(c).

It is Capitol Police Officers first duty to protect the Capitol and persons therein. As Plaintiff Capitol Police Officer Byron Evans stated in an interview with CNN "you just feel a personal connection to something that you protect every single day." Whitney Wild and Jeremy Herb, *I thought I was going to lose my life: Capitol Police officers share their harrowing January 6 stories for the first time*, CNN.com (Jun. 4, 2021),

https://www.cnn.com/2021/06/03/politics/capitol-police-officers-exclusive-interview-january-6/index.html, (last visited Feb. 1, 2023).  In the CNN interview Plaintiff Evans was credited with assisting in the evacuation of all 100 senators on January 6, 2021.  Plaintiffs were also identified as Capitol Police Officers in the press release released by Plaintiffs' Counsel to announce the initial filing of this Complaint, wherein, Plaintiffs were identified as heroic Capitol Police Officers, who "joined the Capitol Police to uphold the law and protect the Capitol community." *Press Release*, Lawyers' Committee for Civil Rights Under Law, *Capitol Police Officers File Civil Rights Lawsuit to hold Trump, Militant Groups Accountable for Jan. 6 Capitol Attack* (Aug. 26, 2021) https://www.lawyerscommittee.org/capitol-police-officers-file-civil-rights-lawsuit-to-hold-trump-militant-groups-accountable-for-jan-6-capitol-attack/ (last visited Feb. 3, 2023).  Plaintiffs' Counsel's second press release stated that Plaintiffs were injured "executing their responsibilities" as "police officers defending the site [Capitol]."  *Press Release*, Selendy Gay Elsberg, PLLC, *Selendy Gay Elsberg Appears in Capitol Officers' Lawsuit* (Apr. 26, 2022) https://www.selendygay.com/news/general/2022-04-26-selendy-gay-elsberg-appears-in-capitol-police-officers-lawsuit (last visited Feb. 3, 2023); *See also* Am. Compl. ECF No. 89, ¶¶ 1, 10, 49, 121, 157-165, 167-168, 172, 177-179, 181, 186-187, 200, 203-204, 206, 209-210.

    This case presents precisely the type of scenario in which the professional rescuer doctrine, as a matter of law, bars professional rescuers, like Plaintiffs from recovering tort damages from those whose negligence was the proximate cause of their injuries, even if said injuries were caused by intentional misconduct.  *Young*, 569 A.2d at 1178.  Capitol Police Officers are charged with protecting the Capitol grounds, and persons therein from injury or damage.   Whether protecting the Capitol Grounds from protesters and trespassers is "within the ambit of danger associated with [Plaintiffs] rescue activity," and the type of hazards Plaintiffs

assumed when they accepted employment as Capitol Police Officers can be answered by reviewing the mission of the Capitol Police and past law enforcement action conducted by the Capitol Police. *Gillespie*, 395 A.2d at 21. As part of their duties, Capitol Police Officers routinely remove protesters from Capitol Grounds and arrest unlawful protesters, including when there are groups of fifty (50) or more persons arrested, for instance:

1. *Press Release*, United States Capitol Police, *U.S. Capitol Police Arrest 80 Demonstrators*, (Jul. 10, 2017), https://www.uscp.gov/media-center/press-releases/capitol-police-arrest-80-demonstrators, (last visited Feb. 6, 2023).
2. *Press Release*, United States Capitol Police, *Approx. 155 Demonstrators Arrested in Senate Office Buildings*, (Jul. 19, 2017), https://www.uscp.gov/media-center/press-releases/approx-155-demonstrators-arrested-senate-office-buildings, (last visited Feb. 6, 2023).
3. *Press Release*, United States Capitol Police, *USCP Arrests 181 Protesters for Demonstration Activity at Senate Finance Committee Hearing*, (Sep. 25, 2017), https://www.uscp.gov/media-center/press-releases/uscp-arrests-181-protesters-demonstration-activity-senate-finance, (last visited Feb. 6, 2023).
4. *Press Release*, United States Capitol Police, *U.S. Capitol Police Charge 575 Individuals for Unlawfully Demonstrating in Hart Senate Office Building*, (Jun. 28, 2018), https://www.uscp.gov/media-center/press-releases/us-capitol-police-charge-approximately-575-individuals-unlawfully, (last visited Feb. 6, 2023).
5. *Press Release*, United States Capitol Police, *Illegal Demonstration on Capitol Grounds,* (Jul. 15, 2021), https://www.uscp.gov/media-center/press-releases/illegal-demonstration-capitol-grounds (last visited Feb. 7, 2023).
6. *Extinction Rebellion Protesters confront politicians at US Capitol*, The Guardian (Jul. 23, 2019), United States Capitol Police arrest seventeen (17) people for obstructing, crowding, and defacing public property. https://www.theguardian.com/environment/2019/jul/23/extinction-rebellion-protesters-us-capitol-washington, (last visited Feb. 7, 2023)
7. *Capitol Police arrest 70 in immigration protests, including 90-year-old nun*, ABC News (Jul. 18, 2019), Seventy arrested during immigration protests at Capitol. ABCNews.com, https://abcnews.go.com/Politics/capitol-police-arrest-70-immigration-protests-including-90/story?id=64414897, (last visited Feb. 7, 2023).

The question of whether the professional rescuer doctrine bars Plaintiffs from recovering tort damages from Mr. Rehl, can only be answered in the affirmative. As evidenced above, and by the Capitol Police's statutory requirements pursuant to *2 U.S.C. §§ 1961, 1963*, protecting the Capitol Grounds from protesters and trespassers is clearly what the Capitol Police do, and the

injuries complained of herein, clearly occurred within the ambit of dangers and type of hazards that Plaintiffs assumed when they accepted employment as Capitol Police Officers. Plaintiffs injuries clearly occurred on-the-job within the ambit of their rescuer activity of protecting the Capitol and people therein, as such, as a matter of law Mr. Rehl is entitled to judgment in his favor.

## CONCLUSION

As a matter of law, Mr. Rehl is entitled to summary judgment. Plaintiffs can adduce no evidence to overcome the Professional Rescuer Doctrine's bar against firefighters and law enforcement officers recovering tort damages for on-the-job injuries.

Respectfully Submitted,

Dated: February 8, 2023

/s/ Patrick Trainor
PATRICK TRAINOR
Appearing *Pro Hac Vice*
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
E: pt@ptesq.com
*Lead Counsel for Defendant Zachary Rehl*