IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CONRAD SMITH, *et al.*,<br><br>                Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>                Defendants. | Civil Action No. 1:21-CV-02265-APM |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT ZACHARY REHL'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 4

    I.     The Standard of Review .................................................................. 4

    II.    The Motion Should Be Denied as a Matter of Law Because the PRD Does Not Apply to Claims under § 1985(1) or Intentional Torts. ................................. 5

          A.    Federal law does not recognize the PRD as a defense to claims under § 1985(1) ................................................................. 5

          B.    The PRD is not a defense to intentional torts or other claims for intentional infliction of harm.. .................................................. 7

    III.   Plaintiffs Are Entitled to Discovery of Evidence About the Nature and Scope of the January 6 Attack Before the Court Determines Whether the PRD Applies, If at All ........................................................................ 11

          A.    Rehl cites no undisputed facts establishing that Plaintiffs were injured from harms inherent in their regular work ………………….12

          B.    Plaintiffs require discovery to establish facts to refute Rehl's assertions ………………………………………………………….13

CONCLUSION ..................................................................................................... 15

i

## TABLES OF AUTHORITIES

**Cases**

*Aravanis v. Eisenberg,*
    237 Md. 242 (1965) ................................................................... 11

*Bassi v. Patten,*
    592 F. Supp. 2d 77 (D.D.C. 2009)............................................ 9

*Cameron v. Fogarty,*
    806 F.2d 380 (2d Cir. 1986) .................................................... 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................ 4

*Coleman v. Allstate Ins. Co.,*
    80 F. Supp. 3d 5 (D.D.C. 2015)............................................... 12

*Cristiano v. Marinaccio,*
    548 N.Y.S.2d 378 (N.Y. Sup. Ct. 1989).................................. 6

*Ctr. for Pub. Integrity v. U.S. Dep't of Energy,*
    393 F. Supp. 3d 86 (D.D.C. 2019)........................................... 4

*Dini v. Naiditch,*
    20 Ill. 2d 406, 170 N.E.2d 881 (1960)..................................... 6

*Entwistle v. Draves,*
    490 A.2d 313 (Sup. Ct. N.J. App. Div. 1985) ......................... 10

*Fancil v. Q.S.E. Foods, Inc.,*
    328 N.E.2d 538 (Ill. 1975)....................................................... 10

*Fraenkel v. Islamic Republic of Iran,*
    892 F.3d 348 (D.C. Cir. 2018)................................................. 9

*Gibson v. Leonard,*
    32 N.E. 182 (Ill. 1892)............................................................ 6

*Gillespie v. Washington,*
    395 A.2d 18 (D.C. 1978) ......................................................... 8

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983)................................................. 8

*In re Davis,*
    172 B.R. 437 (Bankr. D.D.C. 1994) ........................................................................ 9

*Janelsins v. Button,*
    102 Md. App. 30, 648 A.2d 1039 (Md. 1994) ..................................................... 9, 10

*Krauth v. Geller,*
    157 A.2d 129 (N.J. 1960) ......................................................................................... 6

*Kurd v. Republic of Turkey,*
    374 F. Supp. 3d 37 (D.D.C. 2019) ........................................................................... 8

*Lee v. Luigi,*
    696 A.2d 1371 (D.C. 1997) .............................................................................. 3, 7, 8

*Little v. United States,*
    709 A.2d 708 (D.C. 1998) ........................................................................................ 9

*\*Malley v. Briggs,*
    475 U.S. 335 (1986) .............................................................................................. 5, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................................................. 4

*Melton v. Crane Rental Co.,*
    742 A.2d 875 (D.C. 1999) ................................................................................ 3, 7, 8

*Napoleon v. Heard,*
    455 A.2d 901(D.C. 1983) ........................................................................................ 9

*Rogers v. Coastal Towing, L.L.C.,*
    723 F. Supp. 2d 929 (E.D. La. 2010) ....................................................................... 6

*Rude v. The Dancing Crab at Wash. Harbor, LP,*
    245 F.R.D. 18 (D.D.C. 2007) ................................................................................... 9

*\*SoundExchange, Inc. v. Muzak, LLC,*
    322 F. Supp. 3d 72 (D.D.C. 2018) ..................................................................... 4, 12

*\*State Farm Mut. Auto. Ins. Co. v. Hill,*
    775 A.2d 476 (Md. App. 2001) .......................................................................... 3, 10

*Stern v. U.S. Gypsum, Inc.,*
    547 F.2d 1329 (7th Cir. 1977) ................................................................................. 5

*Thompson v. Trump,*
   590 F. Supp. 3d 46 (D.D.C. 2022).....................................................................1, 5, 8

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.,*
   880 F. Supp. 2d 36 (D.D.C. 2012).........................................................................12

*Willis v. Stewart,*
   190 A.2d 814 (D.C. 1964) ......................................................................................11

*Young v. Sherwin-Williams Co., Inc.,*
   569 A.2d 1173 (D.C. 1990) ........................................................................3, 8, 9, 10

*Zorgani v. District of Columbia,*
   No. CV 17-2360 (EGS), 2022 WL 1491133 (D.D.C. May 11, 2022)....................12

**Statutes**

42 U.S.C. § 1985(1) ....................................................................................1, 2, 5, 6, 7, 8

**Other Authorities**

David L. Strauss, *Where There's Smoke, There's the Firefighter's Rule: Containing the
   Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031 (1992)...........2, 6

Restatement (Second) Torts, §496D (1965) ...............................................................11

**Rules**

Fed. R. Civ. P. 56..........................................................................................2, 4, 11, 12

Plaintiffs respectfully submit this response in opposition to Defendant Zachery Rehl's motion for summary judgment based entirely on the so-called "professional rescuers doctrine" ("PRD") under common law.  *See* ECF No. 184.  The Court should deny Rehl's motion because it is meritless.  Applying the PRD to bar Plaintiffs' Federal claim under 42 U.S.C. § 1985(1) would vitiate Congress' clear intent to protect federal officers from conspiracies against them.  Nor is there any legal basis for applying the PRD — a variant on the assumption of risk defense to negligence claims — to bar Plaintiffs' claims for intentional assault and battery.  Moreover, it would be premature to apply the PRD without affording Plaintiffs the opportunity to develop fact and expert evidence bearing on the applicability of the defense, including that the risks posed by the January 6 mass attack were not those inherent in Plaintiffs' profession and Plaintiffs did not assume them when joining the Capitol Police.

## <u>INTRODUCTION</u>

Plaintiffs seek accountability for the conspiracy between former President Donald J. Trump, his associates, and militant groups and their members – including Defendant Zachary Rehl – to attack the U.S. Congress and Capitol Police officers in a concerted effort to overturn a democratic election on January 6, 2021 (the "January 6 Attack").  This Court described the events that day as acts that "could never happen to our democracy," yet they "did that very afternoon." *Thompson v. Trump,* 590 F. Supp. 3d 46, 61 (D.D.C. 2022). The Court explained:

> Five people would die, dozens of police officers suffered physical and emotional injuries and abuse, and considerable damage was done to the Capitol building.  But in the end, after law enforcement succeeded in clearing rioters from the building, Congress convened again that evening and certified the next President and Vice President of the United States.  ***The first ever presidential transfer of power marred by violence was over.***

*Id.* at 62 (emphasis added).

This Court has already ruled that Plaintiffs' Amended Complaint, ECF No. 89, plausibly states claims against Rehl for violating § 1985(1) and aiding and abetting assault and battery. *See* Mem. Op. & Order, ECF No. 179. Not two weeks after that decision, and before he has responded to any discovery, Rehl nonetheless moved for summary judgment on an unpled affirmative defense to those same claims. The sole argument Rehl raises in his motion is that the PRD bars Plaintiffs from recovering damages for their on-the-job injuries because "Plaintiffs assumed the risks associated with employment as law enforcement officers." Rehl Mot. ¶¶ 1, 5.[1]

But the PRD is not among the eight affirmative defenses in Rehl's Answer. *See* ECF No. 109 at 59-61. Assuming Rehl has even preserved the defense, the PRD does not apply to the remaining legal claims against him, so his motion should be denied. Moreover, to the extent this Court were to hold, against the great weight of authority, that the expansive version of the PRD Rehl espouses should apply here – and it should not – Rehl's motion should be denied under Fed. R. Civ. P. 56(d). In particular, this Court should deny Rehl's motion for the following reasons:

First, as a matter of statutory construction, § 1985(1) clearly does not provide for a defense based on the PRD. The statutory text does not allow for it, and Congress could not have intended to include it because the PRD did not even exist when Congress enacted § 1985(1). It was not developed as a defense to premises liability until the 1890s and was not extended to other tortfeasors until the 1960s. Moreover, accepting Rehl's illogical argument — based on a PRD defense he did not even plead — would conflict with the purpose of § 1985(1) by precluding recovery by federal officers the statute was intended to protect. The plain text, purpose, and history of § 1985(1) contradict Rehl's argument and warrant denial of his motion.

---

[1]     The PRD is also often referred to by courts as the "Fireman's Rule." *See* David L. Strauss, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years*, 1992 Wis. L. Rev. 2031 (1992) (hereinafter, "*Where There's Smoke*").

Second, the PRD does not apply to the intentional torts asserted by Plaintiffs.  The D.C. Court of Appeals has held that the PRD "bars those engaged in rescue work as part of their employment from recovering damages for injuries sustained on the job as the result of *negligence of the person rescued*."  *Melton v. Crane Rental Co.,* 742 A.2d 875, 875 n.1 (D.C. 1999) (quoting *Lee v. Luigi,* 696 A.2d 1371, 1373-74 (D.C. 1997)) (emphasis added).  District of Columbia courts have applied the PRD to bar claims for wanton or grossly negligent conduct resulting from intoxication, *Young v. Sherwin-Williams Co., Inc*., 569 A.2d 1173 (D.C. 1990), but never to claims for intentional torts or intentional infliction of harm.  All three of Plaintiffs' pending claims against Rehl assert intentional torts or intentional infliction of harm in the form of a conspiracy to stop the certification of an election result.  Notwithstanding Rehl's suggestion to the contrary, the reported case law in D.C. has not expanded the PRD to apply to intentional torts.  Rehl has not pointed to *any* case in *any* jurisdiction in which a court has done what he asks of this Court.  Indeed, "[n]umerous cases from other jurisdictions have held, or said in *dicta*, that the fireman's rule [*i.e.*, the PRD] does not protect a defendant who intentionally causes injury to a public safety employee."  *State Farm Mut. Auto. Ins. Co. v. Hill*, 775 A.2d 476, 484 (Md. App. 2001) (collecting cases from New Mexico, Puerto Rico, Connecticut, Indiana, Iowa, Louisiana, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Tennessee, Texas, Virginia, and Washington State).

Third, even if the Court were to hold that the PRD could bar Capitol Police officers from suing those who conspired to violently attack them, Rehl cites no facts in the record to support his motion.  Instead, Rehl cites numerous sources outside the record describing peaceful protests broken up by Capitol Police officers.  Those cites reveal how outside the normal course of Plaintiffs' duties as Capitol Police officers were the risks they faced during the January 6 Attack.

3

Plaintiffs require discovery to establish that they did not assume the risks of being subjected to the unprecedented violence and threats Rehl and the other Defendants conspired to inflict upon them during the January 6 Attack, and that the injuries they sustained were not incurred in the course of their usual duties.  Because formal discovery in this case only commenced on January 26, 2023, Plaintiffs have had no opportunity to establish that the PRD does not apply here.  Accordingly, it plainly would be premature for this Court to enter summary judgment in favor of Rehl before any discovery based on an affirmative defense with narrow application.  *See SoundExchange, Inc. v. Muzak, LLC*, 322 F. Supp. 3d 72, 78 (D.D.C. 2018) (denying a pre-discovery motion for summary judgment on defendant's affirmative defenses as unjust and premature).

## **ARGUMENT**

### I.       **The Standard of Review**

Summary judgment shall only be granted if the moving party has shown that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact.  *Id*. at 323.  In determining a summary judgment motion, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor when determining whether a genuine issue of material fact actually exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 393 F. Supp. 3d 86, 90 (D.D.C. 2019).

**II.     The Motion Should Be Denied as a Matter of Law Because the PRD Does Not Apply to Claims under § 1985(1) or Intentional Torts**

The Court should deny Rehl's motion outright as a matter of law because the PRD does not apply to claims under § 1985(1) or to intentional torts. It is a common law affirmative defense only to negligence claims.

**A.     Federal law does not recognize the PRD as a defense to claims under § 1985(1).**

The PRD – a state common law doctrine – does not bar recovery for claims under § 1985. Whether a state common law defense can apply to a 1985(1) claim is ultimately a question of statutory interpretation. *See Malley v. Briggs*, 475 U.S. 335, 339-40 (1986). Courts do not assume that Congress intended to incorporate all common law defenses. *Id*. at 340. Here, the language of the statute does not suggest any congressional intent to incorporate a defense like the PRD. As this Court recognized in *Thompson*, the Reconstruction-Era civil rights statutes should be accorded "a sweep as broad as [their] language." 590 F. Supp. 3d at 91 (quoting *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1336 (7th Cir. 1977)). Nothing in the language of § 1985(1) suggests that, when Congress provided a cause of action for those injured by conspiracies targeting federal officers, Congress intended to carve out of that protection the very federal officers who were injured by such a conspiracy. *Cf. id.* ("It strains credulity to think that Reconstruction-Era members of Congress meant to protect low-level Executive Branch employees but not themselves.").

Even if there were room for doubt on this question, Congress could incorporate only those defenses it was aware of, that is, only those state common law defenses that existed at the time the statute was passed. *See Malley*, 475 U.S. at 340; *Cameron v. Fogarty*, 806 F.2d 380, 386 (2d Cir. 1986) (analyzing whether conviction was defense to § 1983 false arrest claim and reasoning, "[i]n determining whether an asserted defense is available to defeat liability in an action brought under § 1983, the courts have generally been guided in large part by whether the defense was available

at common law"). The PRD did not exist on April 20, 1871, when Congress enacted the statute. The earliest known reference to the concept in any state occurred twenty years later in *Gibson v. Leonard*, 32 N.E. 182, 183-84 (Ill. 1892), *overruled by Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E.2d 881 (1960), and that concerned a defense only to premises liability.[2] The modern version of the PRD defense came many decades later. *See Cristiano*, 548 N.Y.S.2d at 379 (identifying *Krauth v. Geller*, 157 A.2d 129, 131 (N.J. 1960), as an early case basing the rule on assumption of the risk).[3]

Finally, even if the PRD were available as a defense at common law at the time § 1985 was enacted – and it was not – the Court must "next consider[] whether § [1985(1)]'s history or purposes nonetheless counsel against recognizing the same immunity in § [1985(1)] actions." *Malley*, 475 U.S. at 340. Rehl's articulation of the PRD directly conflicts with the purpose of § 1985(1) because it would preclude recovery by a group of persons – federal law enforcement officers injured in the course of duty – whom Congress intended § 1985(1) to protect.

Federal courts have found state law tort defenses preempted based on less obvious conflicts with federal policy than present in this case. For example, in *Rogers v. Coastal Towing, L.L.C.*, the District Court for the Eastern District of Louisiana addressed the conflict between that state's PRD and federal maritime law, which affords the professional rescuer a cause of action, and held

---

[2]    *Where There's Smoke*, *supra* note 1, at 2034 (identifying *Gibson* as the first case to categorize firefighters as licensees entering property for their own purposes with the natural consent of a property owner, and holding that the owner owes no duty to the firefighter other than to refrain from willfully and wantonly injuring him); *Cristiano v. Marinaccio*, 548 N.Y.S.2d 378, 379 (N.Y. Sup. Ct. 1989) (noting "the 'Fireman's Rule' found its origin in *Gibson v. Leonard*").

[3]    For the sake of argument, if federal law were to recognize the PRD fashioned after the consensus of state laws, then it would not apply to intentional torts or any intentional or malicious conduct at all. *See infra* at 7-11. If Rehl advocates for a different rule outside of the consensus of state laws, then it would plainly conflict with the text of and Congressional purpose behind § 1985(1) to protect federal officers when preforming their duties at work for the reasons stated in the text.

that maritime law preempted the PRD.  723 F. Supp. 2d 929, 935-36 (E.D. La. 2010).  There, a paramedic sued a vessel owner to recover for injuries the paramedic suffered in the course of responding to a medical emergency aboard the vessel.  *Id.* at 932.  The vessel owner moved for summary judgment, arguing that Louisiana's PRD barred the paramedic from recovering for injuries sustained during the course of his work.  *Id.*  The court applied federal preemption law and denied the vessel owner's motion for summary judgment.  *Id.* at 936.  In doing so, the court explained: "[t]he Louisiana Professional Rescuer's Doctrine works a material prejudice to a characteristic feature of the general maritime law—salvage of life."  *Id.* at 935-36. The same principle holds true in this case.

Based on consideration of the text of § 1985, the absence of the PRD as a defense at common law when Congress enacted § 1985, and the PRD's contravention of § 1985's purposes, Congress clearly did not intend the PRD to block claims under § 1985(1).

### B. The PRD is not a defense to intentional torts or other claims for intentional infliction of harm.

"The [PRD] bars those engaged in rescue work as part of their employment from recovering damages for injuries sustained on the job *as the result of negligence of the person rescued*."  *Melton* 742 A.2d at 875 n.1 (emphasis added; quoting *Lee,* 696 A.2d at 1373-74).  As the D.C. Court of Appeals has explained: "the legal underpinning of the doctrine was to prevent the proliferation of suits in tort by rescuers in inherently dangerous jobs because they 'have assumed the risks inherent in the profession for which they are compensated by the public.'" *Melton,* 742 A.2d at 876 (quoting *Lee*, 696 A.2d at 1374).[4]

---

[4]     Apart from assumption of the risk, a second root of the PRD is the "well recognized public policy that the doctrine seeks to prevent a chilling effect that may occur if citizens in need of help were not free to solicit the assistance of professional rescuers for fear of tort liability." *Melton*, 742 A.2d at 876 n.5.  Of course, this policy concern has no application to federal security forces who

All three of the claims that remain pending against Rehl (Count I under § 1985(1), Count IV for battery, and Count V for assault) assert intentional torts or intentional infliction of harm.[5] The PRD does not apply to such claims.  Rather, as D.C. courts repeatedly have made clear, the PRD is a defense against negligence claims.  *See Melton,* 742 A.2d. at 875 n.1 (suit for negligence); *Lee,* 696 A.2d at 1372 (same); *Gillespie v. Washington*, 395 A.2d 18, 19-20 (D.C. 1978) (same); *Young*, 569 A.2d at 1175 (same).  No court applying D.C. law has applied the PRD to intentional tort claims or claims based on intentional infliction of harm.

Rehl cites to *Young v. Sherwin-Williams Co.* for the proposition that the PRD should extend to claims for "intentional misconduct."  Rehl Mem. at 4 ECF No. 184-1.  But *Young* concerned only negligence-related claims.  *See Young*, 569 A.2d at 1175 (noting that appellant had sued appellees "alleging 'gross, willful, and wanton negligence' by all appellees").  There, the appellant asked the court to carve out an *exception* to the PRD's applicability *to negligence claims*, so that the PRD would not apply to negligence claims involving "'wanton or willful' conduct."  *Id.* at 1174.  The court declined to do so, *see id.*, and it did *not* expand the PRD to apply to claims of intentional torts or for intentional infliction of harm.  To do so would be inconsistent with D.C. law, because the PRD is based on the defense of assumption of risk, *see Melton*, 742 A.2d at 876; *Lee*, 696 A.2d at 1374; *Young*, 569 A.2d at 1178; *Gillespie*, 395 A.2d at 20, and assumption of risk

---

protect specific buildings or individuals, such as the Capitol Police charged with protecting the Capitol Complex and Grounds and both houses of Congress.

[5]     "A civil conspiracy requires a showing that there was a single *plan*, the essential nature and general scope of which were *known* to each person who is to be held responsible for its consequences."  *Thompson,* 590 F. Supp. 3d at 97 (quotations omitted; emphasis added).  Battery and assault, of course, are intentional torts, and aiding and abetting battery or assault requires plaintiffs to allege, among other things, that the defendant was generally aware of the tortious activity and knowingly and substantially assisted it.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 50 (D.D.C. 2019).

is not a defense to intentional torts in the District of Columbia, *see Bassi v. Patten*, 592 F. Supp. 2d 77, 80 (D.D.C. 2009) (finding it "grounded in sound legal precedent" that "under District of Columbia law, neither contributory negligence nor assumption of risk is available as a defense to an intentional tort"); *Rude v. The Dancing Crab at Wash. Harbor, LP,* 245 F.R.D. 18 (D.D.C. 2007) ("Since defendants are not intentional tortfeasors, the law does not prohibit them from raising the affirmative defense[] of . . . assumption of the risk;" applying D.C. law); *In re Davis*, 172 B.R. 437, 454 (Bankr. D.D.C. 1994) ("[C]ontributory negligence and assumption of risk are not defenses to the intentional tort of conversion."). "[O]ne does not assume the risk that he will be the victim of an intentional tort." *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 359-60 (D.C. Cir. 2018) (quoting *Janelsins v. Button*, 102 Md. App. 30, 648 A.2d 1039, 1045 (Md. 1994) (noting that "jurisdictions that have considered the issue of assumption of risk as a defense to an intentional tort have overwhelmingly rejected its applicability" and citing cases)).[6]

Additionally, though D.C. courts have not considered whether to apply the PRD as a defense to claims for intentional torts or intentional infliction of harm, Maryland courts have. "Maryland, the source of the District's common law, [is] an especially persuasive authority when the District's common law is silent." *Little v. United States*, 709 A.2d 708, 711 n.7 (D.C. 1998) (quoting *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983)). Maryland law is clear that the PRD (known in Maryland as the "fireman's rule") does not bar recovery against a defendant who intentionally harms a professional rescuer:

> Because of the legitimate public policy of deterring and punishing *intentional* wrong-doing, the fact that a plaintiff "assumed the risk" that such wrongdoing would occur cannot bar recovery for the wrongs perpetrated. . . .

---

[6]     *Young*'s observation that "the degree of culpability of the person who has created the hazard is irrelevant," 569 A.2d at 1178, holds true for actions sounding in negligence, which were the claims before the court, but not for intentional tort claims, which were not.

> [I]t is a basic tenet of the common law that persons who intentionally cause harm
> to others should be held responsible for their actions.  Thus, a criminal should not
> be protected civilly from the consequences of his wrongdoing. . . . *[W]e can see no
> conceivable public policy reasons why persons who intentionally cause harm to
> public safety officers should be protected by the fireman's rule.*

*State Farm,* 775 A.2d at 482, 487 (emphasis added) (quoting *Janelsins v. Button,* 648 A.2d 1039,

1045 (Md. 1994)).

This Court should decline Rehl's invitation to extend the PRD beyond the bounds currently

recognized by D.C. law so that it applies to claims for intentional torts and intentional infliction of

harm.  His motion does not mention *State Farm* and instead relies on two cases from New Jersey

and Illinois.  Rehl Mem. at 5 (citing *Entwistle v. Draves,* 490 A.2d 313 (Sup. Ct. N.J. App. Div.

1985), and *Fancil v. Q.S.E. Foods, Inc.,* 328 N.E.2d 538 (Ill. 1975)).  Neither case justifies an

expansion of the doctrine.  Like *Young*, *Entwistle* involved only claims for negligence, *see* 490

A.2d at 314, and the court refused to carve out an exception for cases "where the negligence rose

to the level of wantonness."  *Id.* at 314. In doing so, the court reiterated its prior discussion of the

Fireman's Rule, which expressly excluded "intentional, malicious conduct" from the rule's

application, and noted that plaintiffs had not asserted a claim for such conduct.  *Id.* at 314 n.1, 315

("Absent intentional, malicious conduct, therefore, we conclude that wanton conduct . . . would

not require waiver of the general rule." (quotation omitted)).  Rehl's reliance upon *Fancil* is

similarly misplaced.  Rehl Mem. at 5.  In *Fancil,* a burglar fatally shot a police officer during a

nightly security check at the defendant's store.  328 N.E.2d at 539.  The police officer's wife sued

the store owner (not the burglar) for common law negligence for failing to properly light the

exterior of the store building.  *Id.*  The trial court dismissed her negligence claim against the store

owner, and the dismissal was affirmed on appeal.  *Id.* at 543.  Neither *Fancil* nor *Entwistle* justifies

expansion of the PRD to block claims for intentional torts or intentional infliction of harm.

Plaintiffs' remaining claims against Defendant Rehl are for intentional torts and intentional infliction of harm. District of Columbia law has recognized the PRD as a defense only to negligence claims, and applying the PRD to intentional torts would contradict D.C. law because assumption of risk defenses do not apply to intentional torts. Moreover, Maryland common law, which as noted is especially persuasive in interpreting D.C. law, explicitly holds that the PRD does not apply as a defense to claims for intentional torts. This Court should therefore deny Defendant Rehl's motion for summary judgment as a matter of law.

III.    **Plaintiffs Are Entitled to Discovery of Evidence About the Nature and Scope of the January 6 Attack Before the Court Determines Whether the PRD Applies, If at All.**

Even if the Court were to hold against the overwhelming weight of authority that the PRD affirmative defense extends to the remaining claims against Rehl – and it should not – Rehl still must establish that the injuries Plaintiffs suffered defending the Capitol in this instance were sustained in the course of their "regular duties" as Capitol Police officers. By preempting any discovery on these issues, Rehl's motion is clearly premature and should be denied under Rule 56(d). *See Aravanis v. Eisenberg*, 237 Md. 242, 252-54 (1965) (holding that question whether fireman's injury was due to "anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk" was proper for the jury); *Willis v. Stewart,* 190 A.2d 814, 818 (D.C. 1964) (holding that assumption of the risk is usually a jury question); *Restatement (Second) Torts,* §496D, cmt. c, e (1965) (explaining that the standard to be applied on assumption of the risk is a subjective one and usually one for the jury).

Under Fed. R. Civ. P. 56(d), this Court may deny or defer deciding a motion for summary judgment if the non-moving party does not yet have sufficient facts that are essential to justify its opposition. "Because pre-discovery summary judgment is disfavored, the D.C. Circuit has directed trial courts to grant Rule 56(d) requests 'almost as a matter of course.'" *SoundExchange,*

322 F. Supp. 3d at 78 (holding that it would be premature and unjust to consider a motion for summary judgment when the motion was filed before any discovery had begun on the defenses at issue); *see also Coleman v. Allstate Ins. Co.*, 80 F. Supp. 3d 5, 8 (D.D.C. 2015) (stating that the D.C. Circuit has warned that summary judgment is premature unless all parties have had a full opportunity to conduct discovery); *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 880 F. Supp. 2d 36, 40-41 (D.D.C. 2012) ("Rule 56(d) is provided to ensure that the nonmoving party isn't 'railroaded' by a premature motion for summary judgment."); *Zorgani v. District of Columbia*, No. CV 17-2360 (EGS), 2022 WL 1491133, at *9 (D.D.C. May 11, 2022) (denying motion for summary judgment when no discovery had taken place and the non-moving party had explained the discovery they sought to respond to the motion).

### A.   Rehl cites no undisputed facts establishing that Plaintiffs were injured from harms inherent in their regular work.

The fact that Plaintiffs were attacked and injured while on-the-job protecting the Capitol does not, as Rehl seems to argue, automatically mean that Plaintiffs assumed the risk of a violent attack against them.  Rehl cites nothing in the record to support his assertion – as required by Fed. R. Civ. P. 56(c)(1)(A) – because no such facts exist and even assuming they might, the parties have had no opportunity to develop the record.  *See* Pltfs.' Resp. to Rehl's Stmts. of Undisputed Facts & Pltfs.' Concise Stmt. of Genuine Issues of Disputed Mat. Facts (**Exhibit 1**).  Instead, Rehl confirms that there are disputed questions of fact by citing numerous sources outside the record.

The instances of conduct that Rehl cites of Capitol Police officers intervening in peaceful protests do not establish that the January 6 Attack posed the same kinds of risks inherent in Plaintiffs' jobs as Capitol Police officers.  Specifically, he asserts that what Plaintiffs faced during the January 6 Attack is akin to the times when they have "routinely remove[d] protesters from Capitol Grounds and arrest[ed] unlawful protesters, including when there [were] groups of fifty

(50) or more persons arrested." Rehl Mem. at 9.  All of the protests cited by Rehl were *peaceful*

demonstrations, with no violence – no tear gas nor bear spray nor weapons – reported.[7]  None

involved threats of the kinds posed by the mass attack on January 6, 2021.

**B.     Plaintiffs require discovery to establish facts to refute Rehl's assertions.**

To the extent that there is any question of whether Plaintiffs' "regular duties" encompassed

being subject to a massive paramilitary attack incited, led, or coordinated by officials from their

own government on January 6 – including being violently assaulted, tear-gassed, bear-sprayed,

and threatened with conventional and improvised weapons (ECF 89, ¶¶ 1, 101) – that is an issue

to be developed through fact discovery.  *See also id.* at ¶¶ 72, 77, 103, 124, 128, 133, 137

(breaching barriers, breaking windows, throwing explosives, spraying toxicants).

Here, the parties completed their Rule 26(f) conference less than three weeks ago, on

February 24, 2023, and have not exchanged initial disclosures, and Defendants have not served or

responded to any formal discovery.  Rehl has not even filed an Answer alleging the PRD as a

defense in this case.

Plaintiffs are therefore entitled to discovery in order to establish the nature and scope of

the events on January 6 before the Court determines the applicability of the PRD defense,

including, for example and without limitation, discovery relating to the following:

- Facts concerning the nature, causes, and extent of the January 6, 2021 mass attack on the Capitol caused by Rehl and his co-defendants, and the risks posed to Plaintiffs;

---

[7]      The worst offenses reported in the press releases and articles cited in Rehl's motion involved protesters who superglued their own hands to doors, protesters who lay down on the floor, and protesters who resisted arrest non-violently. Rehl Mem. at 9 (nos. 1-7).  One of the protesters that Rehl appears to equate with himself and the others who stormed the Capitol is a 90-year-old nun who, in 2019, was arrested while protesting the Trump administration's "immoral" immigration policies. *Id.* no. 7.  There is no suggestion that she was armed with any weapons or attacked any of the Capitol Police officers. *Id.*

- Facts concerning the nature of previous mass attacks on the Capitol, if any;

- Details regarding the training provided by the Capitol Police to each of Plaintiffs, including the specific nature of the training scenarios presented, materials presented, and any supplemental or additional training received by Plaintiffs;

- Information on the job duties and professional expectations for Capitol Police, including job postings, position descriptions, and other related documents;

- Information communicated by Capitol Police leaders to Capitol Police officers concerning expectations for risks to be faced by Capitol Police officers on January 6;

- Information on any preparations undertaken by the Capitol Police in anticipation of events on January 6;

- Reports, summaries, and data maintained by the Capitol Police regarding incidents at the Capitol prior to January 6, 2021;

- Reports, summaries, and data maintained by the Capitol Police regarding incidents at the Capitol prior to January 6, 2021 that involved large numbers of people and the nature of their activities;

- Facts relating to the size of the Capitol Police force, its capacity, available equipment, and logistics;

- Facts relating to Defendants' planning of the January 6 Attack;

- Facts relating to Defendants' execution of the January 6 Attack;

- Facts relating to the weapons brought to the Capitol and used during the January 6 mass attack;

- Facts relating to the incitement, direction, or coordination of the January 6 Attack by the President and other persons associated with the outgoing administration, and efforts to conceal or obfuscate facts concerning the January 6 Attack;

- Facts related to the Capitol Police command structure and its interaction with the Executive Branch; and

- Facts relating to the role of the National Guard or other U.S. Military forces in responding to the January 6 Attack.

Declaration of Edward G. Caspar (**Exhibit 2** attached).

14

Thus, numerous questions of fact concerning the nature and scope of the mass attack on January 6, 2021, organized by a coalition of militant groups and their members and supported by the former President or other persons associated with the outgoing administration, require that Plaintiffs be granted the opportunity to conduct discovery prior to this Court ruling on Rehl's motion for summary judgment.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant Zachary Rehl's motion for summary judgment.

Dated: March 15, 2023                         Respectfully submitted,

                                              */s/ William J. Blechman*
                                              William J. Blechman (Admitted *Pro Hac Vice*)
                                              (FL Bar No. 379281)
                                              Elizabeth B. Honkonen (Admitted *Pro Hac Vice*)
                                              (FL Bar No. 0149403)
                                              KENNY NACHWALTER, P.A.
                                              Four Seasons Tower – Suite 1100
                                              1441 Brickell Avenue
                                              Miami, FL 33131
                                              Tel: (305) 373-1000
                                              wblechman@knpa.com
                                              ehonkonen@knpa.com

                                              Faith E. Gay (*Pro Hac Vice*)
                                              Joshua S. Margolin (*Pro Hac Vice*)
                                              Claire O'Brien (*Pro Hac Vice*)
                                              Elizabeth Snow (*Pro Hac Vice*)
                                              SELENDY GAY ELSBERG PLLC
                                              1290 Avenue of the Americas
                                              New York, NY 10104
                                              Tel:  (212) 390-9000
                                              fgay@selendygay.com
                                              jmargolin@selendygay.com
                                              cobrien@selendygay.com
                                              esnow@selendygay.com

                                              and

Jon Greenbaum, D.C. Bar No. 489887
Edward G. Caspar, D.C. Bar No. 1644168
David Brody, D.C. Bar No. 1021476
Arusha Gordon, D.C. Bar No. 1035129
Marc Philip Epstein (*Pro Hac Vice*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street N.W.
Suite 900
Washington, D.C. 20005
Tel: (202) 662-8390
jgreenbaum@lawyerscommittee.org
ecaspar@lawyerscommittee.org
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
mepstein@lawyerscommittee.org

*Counsel for Plaintiffs*