THE LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC

19 Union Avenue, Suite 201 | Rutherford, New Jersey 07070
Telephone: (201) 777-3327 | eFax: (201) 896-7815 | help@ptesq.com

March 21, 2023

Honorable Amit P. Mehta, U.S.D.J.
United States District Court
333 Constitution Avenue N.W.
Washington, D.C. 20001

   Re: *Smith v. Trump, et al.*
     Civil Action No. 1:21-cv-02265-APM

Dear Judge Mehta:

  This office represents Zachary Rehl (hereinafter "Defendant" or "Mr. Rehl") in the above-referenced action.  Kindly accept this letter brief in lieu of a more formal brief as Mr. Rehl's reply to Plaintiffs' opposition to Mr. Rehl's Motion for Summary Judgment.  As Your Honor may be aware this office was not retained and did not enter its appearance on behalf of Mr. Rehl until November 2022, at which point Defendants' motions to dismiss were pending.

  By now Your Honor is fully familiar with the underlying facts in this matter, however, as it relates to Mr. Rehl's instant motion.  Before Your Honor decided Defendants' motions to dismiss and issued your Memorandum Opinion and Order on January 26, 2023 (ECF No. 179), this office requested consent of Plaintiffs' counsel to file an amended answer to the amended complaint, but Plaintiffs' counsel conditioned their consent on unacceptable demands and no amended answer was filed.

  As for Mr. Rehl's reply to Plaintiff's opposition to his motion for summary judgment.  Plaintiffs United States Capitol Police Officers ("USCPO") have failed to put forth a cogent argument that proves the Professional Rescuer Doctrine does not bar them from recovering in tort for on-the-job injuries.  Plaintiffs argue generally that the professional rescuer doctrine cannot be raised as a defense to intentional torts, and further that since the professional rescuer

doctrine is not an enumerated immunity in the text of the *Civil Rights Act of 1871,* it is not a

valid defense under § *1985(1).*  ECF No. 201, Plaintiffs' Memorandum of Law in Opposition to

Defendant Zachary Rehl's Motion for Summary Judgment ("Pl. Memo.") at 5-11.  The Civil

Rights Act of 1871 did not provide any defenses or immunities in its text when it was enacted,

and neither does *Section 1985(1).*

     Plaintiffs argue that Congress intended to "carve out protection" for federal officers

"injured by conspiracies targeting federal officers," therefore, the absence of immunities from

the text of the statute means that Congress eliminated general tort defenses and immunities,

particularly those defenses not available in 1871 from being raised.  ECF No. 201, Pl. Memo. at

5.  The canon of construction that statutes should be interpreted consistently with the common

law helps us interpret a statute that clearly covers a field formerly governed by the common law.

*Samantar v. Yousuf*, 560 U.S. 305, 320, (2010).  Although the Civil Rights Act of 1871 did not

provide defenses or immunities, the courts "have be read it in harmony with general principles of

tort immunities and defenses rather than in derogation of them."  *Malley v. Briggs*, 475 U.S. 335,

339 (1986) (*quoting Imbler v. Pachtman*, 424 U.S. 409, 418 (1976)).  Available defenses are no

longer restricted to what was available when the act was passed, because the courts analysis "is

no longer grounded in the common-law backdrop against which Congress enacted the 1871 Act,

we are no longer engaged in interpret[ing] the intent of Congress in enacting the Act."  *Ziglar v.*

*Abbasi*, 137 S. Cit. 1843, 1871 (2017) (Thomas, J., concurring).  Immunities "well grounded in

history and reason had not been abrogated by covert inclusion in the general language."  *Imbler*

*v. Pachtman*, 424 U.S. 409, 418 (1976).  In order to abrogate a common-law principle, the statute

must speak directly to the question addressed by the common law.  *Manohara v. Rajapaksa*, 711

F.3d 178, 180-81 (D.C. Cir. 2013).  Here, *Section 1985* must be read with general tort principles,

which includes the professional rescuer doctrine as a valid defense, because it does not speak directly to excluding the professional rescuer doctrine and does not generally exclude the professional rescuer doctrine.

Next, for the first time, Plaintiffs introduce the concept that their duty to protect and defend the Capitol, its grounds, and people therein is a discretionary duty, which is predicated on whether the duty(ies) required to protect and defend the Capitol are "regular duties."  ECF No. 201, Pl. Memo. at 4, 11-13.  Plaintiffs argue that they have only assumed the risks inherent with performing regular duties, thus, claims for tort recovery for on-the-job injuries sustained while performing regular duties are barred by the professional rescuer doctrine.  *Id.*  Conversely, Plaintiffs argue that they have not assumed the risks inherent with "irregular duties," thus, claims for tort recovery for on-the-job injuries sustained while performing irregular duties are not barred by the professional rescuer doctrine.  *Id.*

Plaintiffs did not bother to define regular verse irregular duties, but this argument has no basis in law.  It is axiomatic that professional rescuers are duty bound to respond to all calls and that their sacred duty is not an optional duty subject to an individual professional rescuer's determination of whether the cause of the call to which he must respond is within his personal wheelhouse of assumed risks, but that is Plaintiff's exact argument.

Plaintiffs mistakenly argue that *Gillespie v. Washington*, 395 A.2d 18, (D.C. 1978), *Melton v. Crane Rental Co.*, 742 A.2d 875 (D.C. 1999), and *Young v. Sherwin-Williams Co.*, 569 A.2d 1173 (D.C. 1990) stand for the proposition that the professional rescuer doctrine does not extend to intentional torts.  ECF No. 201, Pl. Memo. at 8.  The courts in the District of Columbia have specifically held that the professional rescuer doctrine encompasses claims for injuries caused by intentional misconduct.  The courts have reached this conclusion, because in the

District of Columbia the courts must focus "on the professional rescuer, not on those who create the hazards," thus, "the degree of culpability of the person who created the hazard is irrelevant," because the cause of the hazard "in no way affects the voluntariness of a rescuer's assumption of the risk." *Young,* 569 A.2d at 1178. "Under the professional rescuer doctrine, the professional rescuer is held to have assumed the risks attending his work…when he accepts the position and the remuneration inextricably connected therewith." *Gillespie,* 395 A.2d at 20. "[T]those engaged in rescue work as part of their employment may not, as a matter of law, recover for injuries sustained by them on the job." *Gillespie,* 395 A.2d at 20.

In *Gillespie,* where a maritime police officer was injured at the scene of boat accident allegedly caused by a drunk boat operator, the court stated that the alleged drunkenness (intentional misconduct) had no bearing on whether to apply the doctrine, because the hazards presented in a boat rescue where within the ambit of the dangers the officer faced. Plaintiffs further cite *Young v. Sherwin-Williams, Co.*, to claim that intentional torts are precluded from the professional rescuer doctrine, by mistakenly arguing that the court refused to extend the doctrine to claims involving "wanton and willful conduct." ECF No. 201, Pl. Memo. at 8. This is not true. In *Young* the professional rescuer doctrine was not precluded by willful and wanton acts, where a firefighter, who was injured while catching a drunk driver falling from his semi-truck, which was hanging from a bridge abutment after it crashed. *Young,* 569 A.2d at 1177-78. The court rejected the notion that intentional torts are exempt from the professional rescuer doctrine, because "the supposed difference between willful and wanton conduct and intentional conduct is merely one of degree." *Young,* 569 A.2d at 1178.

Plaintiffs incorrectly cite *Melton* as an example of where the court refused to extend the professional rescuer doctrine to intentional torts. Melton does not stand for the proposition that

intentional torts are exempt from the professional rescuer doctrine.  In *Melton*, EMT's were injured when their ambulance was rear-ended by a crane truck while it waited for a traffic signal to change away from the original scene of the EMT's call and after the EMT's had left the original scene.  The court ruled that there must be some "nexus between the rescue, the rescue activity" and the injury, and the separate scene of the accident precluded the doctrine's application.  *Melton*, 742 A.2s at 879.  No such similar facts are present in this case.

Plaintiffs cite a series of cases where the litigants are civilians, not professional rescuers, and general contributory negligence and assumption of risk defenses were raised to conflate the professional rescuer doctrine with the "rescue doctrine" and general contributory negligence and assumption of risk defenses.  ECF No. 201, PL. Memo. at 9.  "The rescue doctrine stands for the proposition that an individual injured while attempting to save others from imminent peril of harm or death may recover from one whose negligence caused the peril on which rescue was premised."  *Gillespie*, 395 A.2d at 20.  But Plaintiffs cited cases are not analogous, because civilians have not assumed the risks of saving others or received compensation for such acts as have professional rescuers.  Capitol Police Officers assumed the risks inherent with their duties in exchange for the remuneration and benefits paid to them.

Mr. Rehl has no documents or things to discover, he has been held as a political prisoner since March 2021, when his records and documents, electronic and otherwise were seized by federal authorities and their current whereabouts are unknown.  In spite of that fact, Plaintiffs seek the Court's imprimatur to conduct a politically motivated fishing expedition in search of documents and things Mr. Rehl does not possess, and which Plaintiffs themselves are better positioned to obtain.  For instance, Plaintiffs argue that they must be permitted to discover "facts concerning the nature of previous attacks on the Capitol."  ECF No. 201, Pl. Memo. at 14.  *See*

*also* ECF No. 201-2, Declaration of Edward G. Caspar (Dec. Caspar, ¶5(ii)).  "Information communicated by Capitol Police leaders to U.S. Capitol Police Officers…on January 6, 2021."  ECF No. 201, Pl. Memo. at 14.  *See also* ECF No. 201-2, Dec. Caspar, ¶ 5(v).  "Information on any precautions undertaken by Capitol Police in anticipation of events on January 6, 2021."  ECF No. 201, Pl. Memo. at 14.  *See also* ECF No. 201-2, Dec. Caspar, ¶ 5(vi).  It is an absurd belief that Mr. Rehl possesses likely classified Capitol Police internal security documents.

Lastly, the Court must block out Plaintiffs hysterical claims and obvious political motivations and render its decision consistent with the basic tort claims presented herein.  The fundamental question before the Court is whether on January 6, 2021, were Capitol Police Officers obligated to protect and defend the Capitol.  If they were, then the alleged injuries sustained by Plaintiffs were sustained on-the-job and their claims are barred by the professional rescuer doctrine.  Mr. Rehl's Motion for Summary Judgment must be granted.

## <u>CONCLUSION</u>

As a matter of law, Mr. Rehl is entitled to summary judgment.  Plaintiffs can adduce no evidence to overcome the Professional Rescuer Doctrine's bar against firefighters and law enforcement officers recovering tort damages for on-the-job injuries.

Respectfully Submitted,

March 21, 2023

/s/ Patrick Trainor

Patrick Trainor, Esq.
**THE LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Defendant Zachary Rehl*