# Exhibit 10

## Marc Epstein

| | |
|---|---|
| **From:** | Marc Epstein |
| **Sent:** | Friday, August 25, 2023 1:24 PM |
| **To:** | alanhostetter@gmail.com |
| **Cc:** | Edward Caspar |
| **Subject:** | Smith et al. v. Trump et al., No. 1:21-CV-02265-APM (D.D.C.) |
| **Attachments:** | 2023.08.25 Plaintiffs Letter to D Hostetter re Discovery.pdf |

Dear Mr. Hostetter,

I represent Plaintiffs in the civil case *Smith et al. v. Trump et al.*, No. 1:21-CV-02265-APM (D.D.C.), in which you are a defendant. Please see the attached letter regarding your failure to respond to our Requests for Production and your failure to make timely initial disclosures.

Regards,

Marc Epstein

Marc Epstein (he/him/his)
Counsel, Digital Justice Initiative
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, 9th Floor
Washington, DC 20005
www.lawyerscommittee.org



1500 K Street, NW          Tel:  202.662.8600
Suite 900                       Fax: 202.783.0857
Washington, DC 20005    www.lawyerscommittee.org

August 25, 2023

**VIA EMAIL AND U.S. MAIL**

Alan Hostetter
P.O. Box 1477
San Clemente, CA 92672
alanhostetter@gmail.com

Re:     _Smith et al. v. Trump et al._, No. 1:21-CV-02265-APM (D.D.C.)

Dear Mr. Hostetter:

I am counsel for Plaintiffs in the civil case _Smith et al. v. Trump et al_, No. 21-CV-02265-APM (D.D.C), in which you are a defendant. I write regarding your failure to respond to our Requests for Production and your failure to make timely initial disclosures.

We sent you Requests for Production on April 4, 2023. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), which I have attached here for your convenience, your written responses were due May 4, 2023. Under Federal Rule of Civil Procedure 34(b)(2)(B), you are required to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons" for each request. Rule 24(b)(2)(B) permits you to produce copies of documents or of electronically stored information instead of permitting inspection.

You have also failed to make timely initial disclosures, which were due April 17, 2023, pursuant to the attached Scheduling Order, and for which the Court extended your deadline to serve to May 18, 2023 (see the attached May 4, 2023 Minute Order). Federal Rule of Civil Procedure 26(a)(1)(A), which I have also attached here for your convenience, describes the disclosures you are required to make.

As a party to this case, you are required to respond to our Requests for Production and provide us with initial disclosures. **Please provide your responses to our Requests for Production and your initial disclosures by September 8, 2023.**

Sincerely,

_Marc Epstein_

Marc Epstein, D.C. Bar No. 90003967



LAWYERS' COMMITTEE FOR
CIVIL RIGHTS
U N D E R   L A W

1500 K Street, NW
Suite 900
Washington, DC 20005

Tel:  202.662.8600
Fax: 202.783.0857
www.lawyerscommittee.org

Lawyers' Committee for Civil Rights Under Law
Tel: (202) 662-8390
mepstein@lawyerscommittee.org
*Counsel for Plaintiffs*

**<u>Enclosures</u>**
1.  Plaintiffs' First Set of Requests for Production to Defendant Alan Hostetter, dated April 4, 2023
2.  Scheduling Order, Dkt. 213, dated April 5, 2023
3.  Minute Order, dated May 4, 2023
4.  Federal Rule of Civil Procedure 26
5.  Federal Rule of Civil Procedure 34

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CONRAD SMITH, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:21-CV-02265-APM |
| v. | |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT ALAN HOSTETTER

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, and Reginald Cleveland ("Plaintiffs"), by and through their undersigned counsel, hereby request Defendant Alan Hostetter to produce for inspection and copying the documents listed in this First Set of Requests for Production of Documents and Things ("Requests"), to Plaintiffs' attorneys Selendy Gay Elsberg PLLC, at 1290 Avenue of the Americas, New York, NY 10104, within 30 days of being served or at a time and place mutually agreed by the parties or ordered by the Court.

## DEFINITIONS

1.      The singular form of a word includes the plural, and vice versa.

2.      Any tense of a verb includes all tenses thereof.

3.      Any natural person includes that person's agents, assigns, attorneys, employees, representatives, and successors.

4.      Any entity other than a natural person includes (a) that entity's present and former agents, affiliates (foreign or domestic), assigns, attorneys, consultants, directors, divisions,

employees, officers, parents, predecessors, representatives, servants, subsidiaries, and successors; (b) any person or entity, directly or indirectly, wholly or in part, associated with, controlled by, or owned by that entity; (c) and any other person or entity acting or purporting to act on behalf of (a) or (b).

5.      "All," "any," and "each" mean any and all.

6.      "American Phoenix Project" means the non-profit organization headquartered in San Clemente, California and founded by Defendant Alan Hostetter in the spring of 2020.

7.      "And" and "or" are construed both conjunctively and disjunctively.

8.      "Certification" means the January 6, 2021 certification of the official results of the votes of the presidential electors in the United States presidential elections, pursuant to the 12th Amendment to the United States Constitution, the Electoral Count Act of 1887, 3 U.S.C. § 15, and related federal laws.

9.      "Communication" means every manner of the transmittal of information in the form of facts, ideas, inquiries, or otherwise, whether person-to-person, in a group, orally, in writing, by telephone, by electronic transmission, or otherwise.

10.     "Criminal Action" means the prosecution of You and other named defendants, captioned *USA v. Hostetter et al.*, No. 21-cr-392.

11.     "D.C. Stop the Steal Rally" means the demonstration held on December 12, 2020 in Washington, D.C.

12.     "Defendant" means any defendant in the above-captioned case, including, for the avoidance of doubt, Donald J. Trump, Donald J. Trump for President, Inc., Make America Great Again PAC, Stop the Steal LLC, Brandon J. Straka, Proud Boys, Proud Boys International, LLC, Enrique Tarrio, Ethan Nordean, Joseph R. Biggs, Zachary Rehl, Charles Donohoe, Dominic J.

Pezzola, Oath Keepers, Stewart Rhodes, Thomas E. Caldwell, Jessica Watkins, Kelly Meggs, Alan Hostetter, Russell Taylor, Erik Scott Warner, Felipe Antonio "Tony" Martinez, Derek Kinnison, and Ronald Mele.

13.     "Defendant Trump" means Defendant Donald J. Trump.

14.     "Device" means any phone, smartphone, tablet, laptop, personal computer, e-reader, smart watch, or other electronic device.

15.     "Document" means "document" and "electronically stored information" as defined in the Federal Rules of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

16.     "Ellipse" means the public park south of the White House fence and north of Constitution Avenue and the National Mall in Washington, D.C., also known as President's Park South.

17.     "Georgia Stop the Steal Rally" means the demonstration held on November 18, 2020 at the Georgia State Capitol, located at 206 Washington St. SW, Atlanta, GA 30334.

18.     "Federal Government Official" means, without limitation, any individual holding an office of trust with the United States government, including without limitation officials of the Executive branch, or anyone acting on their behalf, or congresspeople, or anyone acting on their behalf,

19.     "Hall of States Meeting" means the publicly reported meeting on January 5, 2021 including Henry "Enrique" Tarrio, Stewart Rhodes, Joshua Macias, and Bianca Gracia in the Hall of States garage located at 300 North Capitol St. NW, Washington, D.C. 20001.

20.     "Including" means including but not limited to.

21.    "January 6, 2021" means the events of January 6, 2021 in Washington, D.C., including the Save America Rally and the subsequent march to, attack on, and occupation of the U.S. Capitol, including the violent acts of Defendants as alleged in the Amended Complaint.

22.    "Member" means any known or perceived member.

23.    "Million MAGA March" means the demonstration held on November 14, 2020, which began at approximately 12:00 EST at Freedom Plaza, located near 4th St. and Pennsylvania Ave. in Washington, D.C.

24.    "Oath Keeper Defendants" means Defendants Oath Keepers, Stewart Rhodes, Thomas E. Caldwell, Jessica Watkins, and Kelly Meggs.

25.    "Oath Keepers" means the Nevada-based nonprofit founded by defendant Stewart Rhodes, with national leadership and state, county and local chapters across the United States that includes a far-right anti-government militia, whose leaders have been convicted of violently opposing the government of the United States, including the transfer of Presidential power as prescribed in the US Constitution.

26.    "Occupation of the Michigan State Capitol" means the demonstrations held on April 30, 2020 outside and inside the Michigan Capitol building, located at 100 N Capitol Ave., Lansing, Michigan 48933, also known as the American Patriot Rally, and organized by Michigan United for Liberty.

27.    "Parler" means the micro-blogging and social networking service launched in August 2018 and headquartered in Nashville, Tennessee.

28.    "Person" means a natural person or legal entity including any business or governmental entity or association.

29.    "November 2020 Election" means the election held on November 3, 2020.

30.     "Proud Boys" means Defendant Proud Boys and Defendant Proud Boys International, LLC.

31.     "Proud Boys Defendants" means Defendants Enrique Tarrio, Ethan Nordean, Joseph R. Biggs, Zachary Rehl, Charles Donohoe, and Dominic Pezzola.

32.     "QRF" means "Quick Reaction Force," an organized, armed military-style unit capable of rapidly responding to situations, typically to assist allied units.

33.     "Regarding" means (directly or indirectly, partially or wholly) about, alluding to, assessing, bearing upon, commenting upon, comprising, confirming, connected to, considering, containing, contradicting, dealing with, discussing, embodying, evaluating, evidencing, identifying, in connection with, indicating, in respect of, involving, memorializing, mentioning, noting, pertaining to, probative of, proving, recording, reflecting, referring to, regarding, relating to, reporting on, reviewing, setting forth, supporting, suggesting, summarizing, stating, showing, touching upon, a subject, or having been created, generated, or maintained in connection with or as a result of that subject.

34.     "RNC" means the Republican National Committee, which is the political committee responsible for developing and promoting the Republican Party.

35.     "Request" means any of these requests.

36.     "Rubio Rally" means the demonstration held on January 2, 2021 outside of Senator Marco Rubio's home in Miami, Florida.

37.     "Save America PAC" means the Save America Political Action Committee.

38.     "Save America Rally" means the "Save America" event held at the Ellipse in Washington, D.C. on January 6, 2021.

39.     "Select Committee" means the Select Committee to Investigate the January 6th Attack on the United States Capitol of the U.S. House of Representatives, formed on July 1, 2021.

40.     "Social Media Account" means an account on any electronic platform on which people can communicate, including Facebook, Twitter, Parler, WhatsApp, Gab, Gettr, Truth Social, Telegram, Rumble, MeWe, Signal, 4chan, 8chan, BitChute, Zello, theDonald.win, and Discord.

41.     "Stop the Steal Defendants" means Defendants Stop the Steal LLC and Brandon Straka.

42.     "Tallahassee Rally" means the demonstration held on July 10, 2021 at the Florida State Capitol, located at 400 S. Monroe St., Tallahassee, FL 32399.

43.     "Three Percenters" means the American far-right, anti-government militia group founded in 2008 and loosely affiliated with the Oath Keepers, and including or affiliated with Defendants Alan Hostetter, Russell Taylor, Erik Scott Warner, Felipe Antonio "Tony" Martinez, Derek Kinnison, and Ronald Mele.

44.     "Trump Defendants" means Defendants Donald J. Trump, Donald. J Trump for President Inc., and Make America Great Again PAC.

45.     "Trump Family" means Defendant Donald J. Trump, Donald Trump Jr., Eric Trump, Lara Trump, Ivanka Trump, Jared Kushner, Kimberly Guilfoyle, and Melania Trump.

46.     "U.S. Capitol" means the meeting place of the United States Congress and seat of the legislative branch of the U.S. federal government, located at First St. SE, Washington, D.C. 20004.

47.     "Weapons" means any tangible item or thing used or intended to be used to exert physical harm on a person or property and includes but is not limited to rocks, bottles, metal poles,

bear spray, pepper spray, chemical spray, explosives or other incendiary devices, firearms, knives, construction equipment or materials, batons, stun guns, flagpoles, fire extinguishers, helmets, battering rams, and riot shields.

48.     "White House" means the official residence of the president of the United States, located at 1600 Pennsylvania Avenue NW, Washington, D.C. 20500.

49.     "Willard Command Center" means the set of hotel rooms reserved at the Willard Hotel located in Washington, D.C. about a block from the White House, on or around January 6, 2021, which has been reported as a "command center" for January 6.

50.     "Women for Trump" means the political group founded by Amy Kremer and Kathryn Serkes in June 2016.

51.     "You" or "Your" means Defendant Alan Hostetter.

## INSTRUCTIONS

1.     These Requests seek production of material in Your possession, custody, or control. If any of your Documents or materials are presently in the possession of a U.S. government agency, for each set of materials identify the agency and the contact person.

2.     These Requests seek production of nonprivileged material.

3.     For each Request, either state that You will produce the requested material or state with specificity the grounds and reasons for objecting to the Request.

4.     If You object to all or part of a Request, state whether You are withholding any responsive material based on that objection.

5.     If You object to part of a Request, specify the part and state that You will produce Documents responsive to the rest.

6.     If You withhold responsive information by claiming that the information is privileged or subject to protection as trial-preparation material, expressly make the claim and

7

describe the nature of the information privileged or protected in a manner that, without revealing information itself privileged or protected, will enable assessment of the claim, in a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5). For each Document or Communication You withhold as privileged, identify the Document or Communication, state the specific basis for the claim of privilege, and provide the following information: (1) the date appearing on the Document or Communication; (2) a description of the general nature of the Document or Communication (e.g., whether it is a letter, memorandum, e-mail, etc.); (3) the author of the Document or Communication; and (4) the identity of each person to whom the Document or Communication was addressed and the identity of each person to whom a copy was sent.

7.      If You withhold responsive information by claiming that the information is subject to a protective order and/or confidentiality agreement, expressly make the claim, produce a copy of such protective order and/or confidentiality agreement, and explain the protocol for obtaining permission to disclose the information in this action.

8.      Produce Documents and Communications as they are kept in the usual course of business. For each Document and Communication, identify the file or location from which it was taken and the name, affiliation, and position of the producing custodian or non-custodial source.

9.      Produce each Document and Communication in its entirety, without abbreviation or redaction, including all attachments or materials attached thereto.

10.     Produce all versions of each Document and Communication that are not identical to the original Document and Communication (including all drafts) whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

11.     If after responding to any Request You learn that Your response is in some material respect incomplete or incorrect, supplement or correct Your response in a timely manner. Fed. R. Civ. P. 26(e)(1)(A).

## RELEVANT TIME PERIOD

Unless otherwise specified, these Requests cover the time period from and including January 1, 2020 to and including August 26, 2021.

## REQUESTS

1.     All Documents and Communications regarding January 6, 2021.

2.     All Documents and Communications regarding the November 2020 Election.

3.     All photographs, or audio or visual recordings, regarding January 6, 2021.

4.     All photographs, or audio or visual recordings, regarding the November 2020 Election.

5.     All Documents and Communications regarding the organization and planning for January 6, 2021.

6.     All Documents and Communications regarding encouraging or organizing attendance for January 6, 2021.

7.     All Documents and Communications regarding directions, instructions, or orders given to or by any Members of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, or American Phoenix Project, including to or by You, regarding January 6, 2021 or the November 2020 Election.

8.     All Documents and Communications regarding any public statements that You have made regarding January 6, 2021.

9

9.      All Documents and Communications regarding planning, travel arrangements, lodging arrangements, training, instructions, dress, or expenditures, or any other preparation for January 6, 2021.

10.     All Documents and Communications regarding the purchase, transport, or distributions of Weapons, crowd-control tools and equipment, or tactical equipment for rallies and events and any related services between November 1, 2020 and January 20, 2021.

11.     All Documents and Communications regarding any Weapons training or practice You have participated in.

12.     All Documents and Communications regarding possession of Weapons by You or others on or in connection with January 6, 2021.

13.     All Documents and Communications regarding a march to the Capitol on January 6, 2021.

14.     All Documents and Communications regarding individuals arrested for actions taken at or around the U.S. Capitol on January 6, 2021.

15.     All Documents and Communications regarding damage to the U.S. Capitol on January 6, 2021.

16.     All Documents and Communications regarding any QRF.

17.     All Documents and Communications regarding any visit by any Oath Keeper Defendants, Proud Boys Defendants, or Stop the Steal Defendants to Washington, D.C. between and including November 4, 2020 and January 6, 2021, including visits to the U.S. Capitol and the White House.

18.     All Documents and Communications regarding the U.S. Capitol's layout or security procedures, including the U.S. Capitol building or grounds.

19.     All Documents and Communications regarding the police presence on January 6, 2021, including the United States Capitol Police, United States Capitol Police officers, D.C. Metropolitan Police officers, D.C. Metropolitan Police Department, and National Guard.

20.     All Documents and Communications regarding President Joseph R. Biden or Vice President Kamala Harris taking office as the President of the United States and the Vice President of the United States, respectively, including communications regarding their inauguration on January 20, 2021.

21.     All Documents and Communications regarding the Willard Command Center.

22.     All Documents and Communications regarding the planning, preparation, and organization of the Save America Rally, including the Hall of States Meeting.

23.     All Communications regarding January 6, 2021 or the November 2020 Election with:

    a.     any Defendant or anyone acting on behalf of any Defendant;

    b.     any Member of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, or American Phoenix Project;

    c.     any Member of the Trump Family, or anyone acting on behalf of any Member of the Trump Family;

    d.     any Government Official, or anyone acting on behalf of any Government Official;

    e.     Stephen Bannon, John C. Eastman, Rudolph Giuliani, Sean Hannity, Laura Ingraham, Alexander Jones, Bernard Kerik, Michael Lindell, Daniel Scavino, or any Member of Women for Trump;

    f.     the RNC or anyone acting on behalf of the RNC;

    g.     the Save America PAC or anyone acting on behalf of the Save America PAC.

24.     All Documents and Communications regarding Your involvement in the planning, preparation, or organization of any planned rallies, demonstrations, or other similar events between November 4, 2020 and January 6, 2021, including with anyone employed by the White House or any Federal Government Official.

25.     All Documents and Communications regarding demonstrations, rallies, protests, gatherings, or violence, or planned rallies, gatherings, or violence, regarding the November 2020 Election, including:

        a.     The Occupation of the Michigan State Capitol;

        b.     The Million MAGA March;

        c.     The Georgia Stop the Steal Rally;

        d.     The D.C. Stop the Steal Rally;

        e.     The Rubio Rally; and

        f.     The Tallahassee Rally.

26.     All Documents and Communications regarding election fraud or supposed election fraud in connection with the November 2020 Election, including regarding purported attempts to alter the results of the November 2020 Election, the November 2020 Election purportedly being stolen or fraudulent, the November 2020 Election not being stolen or fraudulent, or making statements that the November 2020 Election was stolen or fraudulent.

27.     All Documents and Communications regarding Defendant Trump's ability to remain the President of the United States following the November 2020 election, including all related memoranda.

28.     All Documents and Communications from January 6, 2021 to the present regarding the propriety of the November 2020 Election or Defendant Trump's status as the rightful winner of the November 2020 Election.

29.     All Documents and Communications regarding the Certification, including regarding the purported ability of the U.S. Congress to reject presidential electors during the Certification, Vice President Michael Pence's power to reject electors during the Certification, memoranda authored by John C. Eastman regarding the Certification, or any attempts to submit competing slates of electors.

30.     All Documents and Communications regarding any hit list or list identifying any individual as targets for violence of any kind in connection with the November 2020 Election or January 6, 2021.

31.     Documents sufficient to show all Social Media Accounts connected with or used by You or any Defendant, as well as all individuals who has or has had access to the Social Media Accounts connected with or used by You or any Defendant.

32.     Documents sufficient to show all cell phone numbers and email addresses connected with or used by You or any Defendant.

33.     All Documents and Communications regarding the physical location of any Defendant or individual involved with January 6, 2021 on and throughout the period between 12:00 AM January 5, 2021 and 12:00 AM January 8, 2021.

34.     Documents sufficient to show all Devices used by You and the American Phoenix Project or its Members on or regarding January 6, 2021.

35.     Documents sufficient to show all cloud storage services used by You and the American Phoenix Project or its Members on or regarding January 6, 2021.

36.     All Documents and Communications sent to or received from any media organization or employee thereof between and including November 4, 2020 and the present regarding Defendant Trump, January 6, 2021, the Certification, or the November 2020 Election.

37.    All Documents and Communications regarding Your relationship to Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, or American Phoenix Project, including regarding any role You hold, or previously held, in Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, or American Phoenix Project.

38.    Documents sufficient to show the formal or informal organizational structure or chain-of-command of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, or American Phoenix Project, including all Members of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project, and any and all local chapters thereof, and any changes thereto.

39.    All Documents and Communications regarding the meetings, policies, or internal practices of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project, including regarding any official or unofficial meetings of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project.

40.    All Documents and Communications regarding trainings, resources, manuals, guides, or meetings offered or provided by or to any Member of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project, including about police or military tactics, Weapons training, crowd control, hand-to-hand combat, self-defense, or communications.

41.    All Documents and Communications regarding the methods and means of recruitment, solicitation of new Members, and advertising of Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project.

14

42.     All Documents and Communications regarding the fundraising, including sources of funds raised and uses of funds raised by Defendant Proud Boys, Defendant Oath Keepers, Defendant Stop the Steal LLC, Three Percenters, and American Phoenix Project.

43.     All Documents and Communications regarding fundraising communications sent by or to the RNC between and including November 4, 2020 and January 7, 2021 regarding Defendant Trump or January 6, 2021.

44.     All Documents and Communications regarding the Insurrection Act.

45.     All Documents and Communications regarding the following public statements:

    a.     Defendant Trump's statement to Proud Boys that they "stand back and stand by" on September 29, 2020, including use of the statement in promotional materials and attempts to monetize the statement;

    b.     Defendant Trump's tweets to "LIBERATE MINNESOTA!" "LIBERATE MICHIGAN!" and "LIBERATE VIRGINIA, and save your great 2nd Amendment. It is under siege!" on April 17, 2020 at 11:21 AM EST, 11:22 AM EST, and 11:25 AM EST respectively;

    c.     Defendant Donald J. Trump for President, Inc.'s fundraising emails on November 4, 2020, including those stating "They will try to STEAL THE ELECTION from the American People. Plain and simple," "I warned this would happen," and "The Left wants to undermine this Election and we need YOU to FIGHT BACK";

    d.     Defendant Donald J. Trump for President, Inc.'s fundraising email on December 1, 2020 stating "I can't defend this Election alone . . . I need YOUR help";

    e.     Defendant Donald J. Trump for President, Inc.'s fundraising email on December 3, 2020 stating "I cannot do it alone, I need YOUR HELP";

    f.     Defendant Trump's tweet stating that "WE MUST HAVE BEGUN TO FIGHT!!" on December 12, 2020 at 8:47 AM EST;

    g.     Defendant Trump's tweet stating that ".@senatemajldr and Republican Senators have to get together, or you won't have a Republican Party anymore. We won the Presidential Election, by a lot. FIGHT FOR IT. Don't let them take it away!" on December 18, 2020 at 9:14 AM EST;

h.   Defendant Trump's tweet stating that there would be a "big protest in D.C. on January 6th. Be there, will be wild!" on December 19, 2020 at 1:42 AM EST;

i.   Defendant Trump's tweet stating "They are slow walking the signature verification in Georgia. They don't want results to get out prior to January 6th. They know what they are trying so hard to hide. Terrible people! @BrianKempGA" on December 23, 2020 at 12:08 PM EST;

j.   Defendant Trump's tweet stating that "The 'Justice' Department and the FBI have done nothing about the 2020 Presidential Election Voter Fraud, the biggest SCAM in our nation's history, despite overwhelming evidence. They should be ashamed. History will remember. Never give up. See everyone in D.C. on January 6th." On December 26, 2020 at 8:14 AM EST;

k.   Defendant Trump's tweet stating "See you in Washington, DC on January 6th. Don't miss it. Information to follow!" on December 27, 2020 at 5:51 PM EST;

l.   Defendant Trump's tweet stating "The BIG Protest Rally in Washington, D.C. will take place at 11.00 A.M. on January 6th. Locational details to follow. StopTheSteal!" on January 1, 2021 at 2:53 PM EST;

m.   Defendant Trump's tweet stating "January 6th. See you in D.C." on January 1, 2021 at 6:38 PM EST;

n.   Defendant Trump's tweet stating "How can you certify an election when the numbers being certified are verifiably WRONG. You will see the real numbers tonight during my speech, but especially on JANUARY 6th. @SenTomCotton Republicans have pluses and minuses, but one thing is sure, THEY NEVER FORGET!" on January 4, 2021 at 10:07 AM EST;

o.   Defendant Trump's statement on January 4, 2021 that "If the liberal Democrats take the Senate and the White House—and they're not taking this White House—we're going to fight like hell, I'll tell you right now;"

p.   Defendant Trump's tweet stating "States want to correct their votes, which they now know were based on irregularities and fraud, plus corrupt process never received legislative approval. All Mike Pence has to do is send them back to the States, AND WE WIN. Do it Mike, this is a time for extreme courage!" on January 6, 2021 at 8:17 AM EST;

q.   Donald Trump Jr.'s statement at the Save America Rally that "You can be a hero, or you can be a zero. And the choice is yours. But we are all watching. The whole world is watching, folks. Choose wisely";

r.    Eric Trump's statement at the Save America Rally that "We live in the greatest country in the world, and we will never, ever, ever stop fighting";

s.    Eric Trump's statement at the Save America Rally that "[T]hey need to stand up. And we need to march on the Capitol today. And we need to stand up for this country. And we need to stand up for what's right";

t.    Defendant Trump's statements that the Save America Rally, including "you'll never take back our country with weakness. You have to show strength, and you have to be strong," "we're going to the Capitol," and "We're going to try and give them [Republicans] the kind of pride and boldness that they need to take back our country";

u.    Defendant Trump's tweet stating "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify. USA demands the truth!" on January 6, 2021 at 2:24 PM EST;

v.    Defendant Trump's tweet stating "Please support our Capitol Police and Law Enforcement. They are truly on the side of our Country. Stay peaceful!" on January 6, 2021 at 2:38 PM EST;

w.    Defendant Trump's tweet stating "I am asking for everyone at the U.S. Capitol to remain peaceful. No violence! Remember, WE are the Party of Law & Order – respect the Law and our great men and women in Blue. Thank you!" on January 6, 2021 at 3:13 PM EST;

x.    Defendant Trump's tweeted video in which he stated, "I know your pain, I know you're hurt. We had an election that was stolen from us. It was a landslide election and everyone knows it, especially the other side. But you have to go home now. We have to have peace. We have to have law and order. We have to respect our great people in law and order. We don't want anybody hurt. It's a very tough period of time. There's never been a time like this where such a thing happened where they could take it away from all of us—from me, from you, from our country. This was a fraudulent election, but we can't play into the hands of these people. We have to have peace. So go home. We love you. You're very special. You've seen what happens. You see the way others are treated that are so bad and so evil. I know how you feel, but go home, and go home in peace" on January 6, 2021 at 4:17 PM EST.

46.    All Documents and Communications regarding the deletion or destruction of Documents and Communications related to the November 2020 Election or January 6, 2021 by You or any other person.

47.     All requests or demands for Documents, Communications, or other information, including all subpoenas You received from any investigating authority, including any local, state, or federal government authority, regardless of whether You are a party in the relevant action and including the Criminal Action, and including in any civil case, regardless of whether You are a party in the relevant action, and including from the Select Committee, regarding January 6, 2021, the Certification, or any other relevant subject. To the extent a responsive Document, Communication, or other information is publicly available, it need not be produced in response to this Request.

48.     All Documents and Communications You produced or shared in response to any requests and demands or subpoenas referred to in Request 47.

Dated: April 4, 2023

By: _____

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Claire O'Brien, *pro hac vice*
Elizabeth Snow, *pro hac vice*
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
cobrien@selendygay.com
esnow@selendygay.com

Jon Greenbaum, D.C. Bar No. 489887
Edward G. Caspar, D.C. Bar No. 1644168
David Brody, D.C. Bar No. 1021476
Arusha Gordon, D.C. Bar No. 1035129
Marc P. Epstein, *pro hac vice*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC  20005
Tel: 202-662-8390
jgreenbaum@lawyerscommittee.org
ecaspar@lawyerscommittee.com
dbrody@lawyerscommittee.org
agordon@lawyerscommittee.org
mepstein@lawyerscommittee.org

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
KENNY NACHWALTER, P.A.
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@knpa.com
ehonkonen@knpa.com

*Attorneys for Plaintiffs Conrad Smith, et al.*

19

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| **CONRAD SMITH**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cv-2265 (APM)** |
| | ) | |
| **DONALD J. TRUMP**, *et al.*, | ) | |
| | ) | |
| **Defendant.** | ) | |
| ———————————————— | ) | |

## <u>SCHEDULING ORDER</u>

Pursuant to the parties' Report under Local Civil Rule 16.3 and the Status Conference held on March 17, 2023, the court orders the following with regard to further proceedings in this matter:

I.    <u>Scheduling.</u>

    A.    The parties shall exchange initial disclosures, as required under Rule 26(a)(1), on or before **April 17, 2023**;

    B.    The deadline for joinder of parties and amendments of pleadings is **April 29, 2024**;

    C.    The parties shall submit a Joint Status Report regarding the status of discovery on or before **April 28, 2023**;

    D.    Proponent expert reports and disclosures, consistent with Rule 26(a)(2), shall be made no later than **January 23, 2024**;

    E.    Rebuttal expert reports and disclosures, consistent with Rule 26(a)(2), shall be made on or before **February 13, 2024**;

    F.    Fact discovery shall conclude on **March 29, 2024**;

    G.    Expert discovery shall conclude on **July 31, 2024**;

    H.    A Post-Discovery Status Conference is set for **August 9, 2024, at 2:30 p.m.** via videoconference.

The parties may <u>not</u> extend by stipulation the deadlines for Joint Status Reports, the end of fact discovery, or the close of expert discovery.  Instead, the parties must seek an extension of time, preferably by filing a consent motion with the court.  A motion to extend any deadline shall indicate whether any previous extensions were requested and granted.

The parties may modify all other interim deadlines by stipulation.  If the parties cannot agree to a schedule modification, the party seeking additional time must file a motion and show good cause for the modification.

Likewise, a request for additional time to conduct discovery must be made on or before the discovery deadline.  A request for an extension of time made after the discovery deadline will be considered untimely.

II.      <u>Limits on Discovery.</u>

Parties shall not exceed the numerical limitations placed on the various methods of discovery as set forth in the Federal Rules of Civil Procedure, unless granted leave by the court.

III.     <u>Discovery Disputes.</u>

In the event that a discovery dispute arises, the parties shall make a good faith effort to resolve or narrow the areas of disagreement.  If the parties are unable to resolve the discovery dispute, then the parties shall jointly call Judge Mehta's chambers at (202) 354-3250, at which time the court will either rule on the issue or determine the manner in which it will be handled.  The parties may not file a discovery motion without leave of court.

Disputes regarding discovery must be raised on or before the discovery deadline.  Disputes raised after the deadline will be considered untimely.


Dated:  April 5, 2023

Amit P. Mehta
United States District Court Judge

2

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Columbia**

**Notice of Electronic Filing**

The following transaction was entered on 05/04/2023 at 2:53:08 PM and filed on 05/04/2023

| | |
|---|---|
| **Case Name:** | SMITH et al v. TRUMP et al |
| **Case Number:** | 1:21-cv-02265-APM |
| **Filer:** | |
| **Document Number:** | |

**Docket Text:**
**MINUTE ORDER. Pursuant to the status conference held on May 4, 2023: outstanding initial disclosures shall be due on or before May 18, 2023; counsel for defendant Straka shall meet and confer with counsel for plaintiffs by May 11, 2023; a status report is due to the court on or before June 13, 2023; and a remote status conference will be held on June 16, 2023 at 3:30 p.m. Additionally, in view of the partial jury verdict in the Proud Boys trial, the discovery stay with respect to Mr. Nordean is hereby lifted. Signed by Judge Amit P. Mehta on 05/04/2023. (lcapm3) Modified meet and confer deadline on 5/4/2023 (zjd).**

**1:21-cv-02265-APM Notice has been electronically mailed to:**

Paul Douglas Kamenar     paul.kamenar@gmail.com

John Daniel Hull, IV     jdhull@hullmcguire.com

William J. Blechman     wblechman@knpa.com, aneill@knpa.com, dpatton@knpa.com, ehonkonen@knpa.com, jgray@knpa.com, jruiz@knpa.com, mbrehm@knpa.com, mhernandez@knpa.com, mponzoli@knpa.com

Jon M. Greenbaum     jgreenbaum@lawyerscommittee.org, jon-greenbaum-5373@ecf.pacerpro.com, legalassistant@lawyerscommittee.org

Eric Lawrence Klein     eklein@bdlaw.com, jjones@bdlaw.com

Nicholas D. Smith     nds@davidbsmithpllc.com

Faith E. Gay     fgay@selendygay.com, edockets@selendygay.com, faith-gay-0057@ecf.pacerpro.com, faith-gay-3310@ecf.pacerpro.com, mco@selendygay.com, paralegals@selendygay.com

Jason Caldwell Greaves     jason@binnall.com

Ronald J. Krock     rkrock@selendygay.com, MCO@selendygay.com, edockets@selendaygay.com, paralegals@selendaygay.com, ronald-krock--6175@ecf.pacerpro.com

Jesse R Binnall     jesse@binnall.com, lindsay@binnall.com, shawnay@binnall.com, sophia@binnall.com

Stephen R. Klein     steve@barrklein.com

Benjamin Barr     ben@barrklein.com

Robert C Buschel     Buschel@bglaw-pa.com, BG.J6R6@case.prolific.com

Grant J. Smith     gsmith@strategysmith.com

David Ryan Brody     dbrody@lawyerscommittee.org, david-brody-9913@ecf.pacerpro.com, kyle-jackson-5618@ecf.pacerpro.com

Dyke Huish     huishlaw@mac.com

Edward G. Caspar     ecaspar@lawyerscommittee.org, adarsh-patel-7122@ecf.pacerpro.com, edward-caspar-4207@ecf.pacerpro.com

Nicolai Cocis     nic@cocislaw.com

Steven C. Bailey     steven@stevencbailey.org

Joshua S. Margolin     jmargolin@selendygay.com

Claire O'Brien     cobrien@selendygay.com

Denae Kassotis     dkassotis@selendygay.com

Marc Philip Epstein     mepstein@lawyerscommittee.org, marc-epstein-9756@ecf.pacerpro.com

Patrick Trainor     pt@ptesq.com

Elizabeth Snow     esnow@selendygay.com

Elizabeth Brooks Honkonen     ebh@knpa.com

Anna Theresa Neill     aneill@knpa.com

**1:21-cv-02265-APM Notice will be delivered by other means to::**

ALAN HOSTETTER


ERIK SCOTT WARNER
28574 Moonshadow Dr.
Menifee, CA 92584

KELLY MEGGS


THOMAS E. CALDWELL
P.O. Box 1120
Berryville, VA 22611

The following document(s) are associated with this transaction:


*This is a re-generated NEF. Created on 5/4/2023 at 4:09 PM*

Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 25. Substitution of Parties

(a) DEATH.

(1) *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

(2) *Continuation Among the Remaining Parties.* After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

(3) *Service.* A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

(b) INCOMPETENCY. If a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative. The motion must be served as provided in Rule 25(a)(3).

(c) TRANSFER OF INTEREST. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

(d) PUBLIC OFFICERS; DEATH OR SEPARATION FROM OFFICE. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 17, 1961, eff. July 19, 1961; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007.)

TITLE V. DISCLOSURES AND DISCOVERY

## Rule 26. Duty to Disclose; General Provisions Governing Discovery

(a) REQUIRED DISCLOSURES.

(1) *Initial Disclosure.*

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(B) *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure:

(i) an action for review on an administrative record;

(ii) a forfeiture action in rem arising from a federal statute;

(iii) a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

(iv) an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

(v) an action to enforce or quash an administrative summons or subpoena;

(vi) an action by the United States to recover benefit payments;

(vii) an action by the United States to collect on a student loan guaranteed by the United States;

(viii) a proceeding ancillary to a proceeding in another court; and

(ix) an action to enforce an arbitration award.

(C) *Time for Initial Disclosures—In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

(D) *Time for Initial Disclosures—For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

(E) *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) *Disclosure of Expert Testimony.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

(i) the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

(ii) the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

(iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

(B) *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

(b) DISCOVERY SCOPE AND LIMITS.

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

(2) *Limitations on Frequency and Extent.*

(A) *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

(B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective

order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

(3) *Trial Preparation: Materials.*

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

> (i) they are otherwise discoverable under Rule 26(b)(1); and

> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

> (i) a written statement that the person has signed or otherwise adopted or approved; or

> (ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation: Experts.*

(A) *Deposition of an Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule

26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

(i) relate to compensation for the expert's study or testimony;

(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

(i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

(ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the

claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

(c) PROTECTIVE ORDERS.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

(3) *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

(d) TIMING AND SEQUENCE OF DISCOVERY.

(1) *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

(2) *Early Rule 34 Requests.*

(A) *Time to Deliver.* More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:

(i) to that party by any other party, and

(ii) by that party to any plaintiff or to any other party that has been served.

**Rule 26**        FEDERAL RULES OF CIVIL PROCEDURE        44

(B) *When Considered Served.* The request is considered to have been served at the first Rule 26(f) conference.

(3) *Sequence.* Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

(A) methods of discovery may be used in any sequence; and

(B) discovery by one party does not require any other party to delay its discovery.

(e) SUPPLEMENTING DISCLOSURES AND RESPONSES.

(1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

(f) CONFERENCE OF THE PARTIES; PLANNING FOR DISCOVERY.

(1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

(2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

(3) *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;

(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;

(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

(4) *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

(A) require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

(B) require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

(g) SIGNING DISCLOSURES AND DISCOVERY REQUESTS, RESPONSES, AND OBJECTIONS.

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on

motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 28, 2010, eff. Dec. 1, 2010; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 27. Depositions to Perpetuate Testimony

(a) BEFORE AN ACTION IS FILED.

(1) *Petition.* A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. The petition must be titled in the petitioner's name and must show:

(A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;

(B) the subject matter of the expected action and the petitioner's interest;

(C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

(E) the name, address, and expected substance of the testimony of each deponent.

(2) *Notice and Service.* At least 21 days before the hearing date, the petitioner must serve each expected adverse party with a copy of the petition and a notice stating the time and place of the hearing. The notice may be served either inside or outside the district or state in the manner provided in Rule 4. If that service cannot be made with reasonable diligence on an expected adverse party, the court may order service by publication or otherwise. The court must appoint an attorney to represent persons not served in the manner provided in Rule 4 and to cross-examine the deponent if an unserved person is not otherwise represented. If any expected adverse party is a minor or is incompetent, Rule 17(c) applies.

(3) *Order and Examination.* If satisfied that perpetuating the testimony may prevent a failure or delay of justice, the court must issue an order that designates or describes the persons whose depositions may be taken, specifies the subject matter of the examinations, and states whether the depositions will be taken orally or by written interrogatories. The depositions may then be taken under these rules, and the court may issue orders like those authorized by Rules 34 and 35. A reference in these rules to the court where an action is pending means, for purposes of this rule, the court where the petition for the deposition was filed.

(2) *Scope.* An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

(b) ANSWERS AND OBJECTIONS.

    (1) *Responding Party.* The interrogatories must be answered:

        (A) by the party to whom they are directed; or

        (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

    (2) *Time to Respond.* The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

    (3) *Answering Each Interrogatory.* Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

    (4) *Objections.* The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

    (5) *Signature.* The person who makes the answers must sign them, and the attorney who objects must sign any objections.

(c) USE. An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.

(d) OPTION TO PRODUCE BUSINESS RECORDS. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

    (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

    (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

**Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes**

(a) IN GENERAL. A party may serve on any other party a request within the scope of Rule 26(b):

    (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

(b) PROCEDURE.

(1) *Contents of the Request.* The request:

(A) must describe with reasonable particularity each item or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) *Responses and Objections.*

(A) *Time to Respond.* The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties' first Rule 26(f) conference. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

(C) *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

(D) *Responding to a Request for Production of Electronically Stored Information.* The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use.

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

   (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

   (iii) A party need not produce the same electronically stored information in more than one form.

(c) NONPARTIES. As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 35. Physical and Mental Examinations

(a) ORDER FOR AN EXAMINATION.

   (1) *In General.* The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

   (2) *Motion and Notice; Contents of the Order.* The order:

      (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

      (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

(b) EXAMINER'S REPORT.

   (1) *Request by the Party or Person Examined.* The party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition. The request may be made by the party against whom the examination order was issued or by the person examined.

   (2) *Contents.* The examiner's report must be in writing and must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests.

   (3) *Request by the Moving Party.* After delivering the reports, the party who moved for the examination may request—and is entitled to receive—from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition. But those reports need not be delivered by the party with custody or control of the person examined if the party shows that it could not obtain them.

   (4) *Waiver of Privilege.* By requesting and obtaining the examiner's report, or by deposing the examiner, the party examined waives any privilege it may have—in that action or any other action involving the same controversy—concerning testimony about all examinations of the same condition.