# Exhibit 7

```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )      CR No. 22-15-2
                                   )      Washington, D.C.
        vs.                        )      May 25, 2023
                                   )      1:53 p.m.
KELLY MEGGS,                       )
                                   )
          Defendant.               )
_____   )


              TRANSCRIPT OF SENTENCING PROCEEDINGS
            BEFORE THE HONORABLE AMIT P. MEHTA
                 UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Government:            Kathryn L. Rakoczy
                               Jeffrey S. Nestler
                               Alexandra Hughes
                               Troy Edwards
                               Louis Manzo
                               U.S. ATTORNEY'S OFFICE
                               601 D Street, NW
                               Washington, D.C. 20579
                               (202) 252-7277
                               Email:
                               kathryn.rakoczy@usdoj.gov
                               Email:
                               jeffrey.nestler@usdoj.gov
```

```
APPEARANCES CONTINUED:

For Defendant
Kelly Meggs:                    Stanley Edmund Woodward, Jr.
                                BRAND WOODWARD LAW
                                1808 Park Road NW
                                Washington, D.C. 20010
                                (202) 996-7447
                                Email:
                                stanley@brandwoodwardlaw.com

Probation Officer:              Crystal Lustig

Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

```
 1                    P R O C E E D I N G S
 2           COURTROOM DEPUTY:  All rise.  The Court is now in
 3   session; the Honorable Amit P. Mehta now presiding.
 4           THE COURT:  Please be seated, everyone.
 5           COURTROOM DEPUTY:  Good afternoon, Your Honor.
 6   This is Criminal Case No. 22-15-2, United States of America
 7   versus Kelly Meggs.
 8           Kathryn Rakoczy, Jeffrey Nestler,
 9   Alexandra Hughes, Troy Edwards, and Louis Manzo for the
10   government.
11           Stanley Woodward for the defense.
12           We also have Crystal Lustig on behalf of the
13   probation office.
14           The defendant is appearing in person for these
15   proceedings.
16           THE COURT:  All right.  Good afternoon, everyone.
17           Mr. Meggs, good afternoon to you, sir.
18           All right.  So we are here for sentencing this
19   afternoon.  Everybody is ready to proceed?
20           Okay.  So for -- primarily for Mr. Meggs' benefit,
21   let me just explain how we'll proceed this afternoon.
22           So we'll go through what I've received and
23   reviewed in connection with sentencing, I'll ask counsel to
24   confirm that Mr. Meggs has read the Presentence
25   Investigation Report.  And then we'll talk about some of
```

```
1   the factual disputes that have been raised with respect to
2   the PSR.
3           I'll then hear argument from counsel about both
4   scope of conspiracy or offense conduct, I should say, and
5   then applications for enhancements and then provide my
6   Guidelines determination.  And then we'll move into the
7   allocutions from there.  And then, of course, Mr. Meggs will
8   have the opportunity to be heard, if he wishes.
9           So with that, let me just begin with what I've
10  received and reviewed with respect to Mr. Meggs.  There's
11  the Presentence Investigation Report at 542 and the
12  Probation Office's recommendation at 543; the government's
13  memorandum in aid of sentencing at 565 and its reply at 580;
14  Mr. Meggs' memorandum in aid of sentencing at 569, which
15  included, I believe it was four letters, perhaps a few more
16  in the reply brief that was submitted at 581; and then there
17  was an under-seal filing made this morning at 600, which
18  I have had the opportunity to look at as well.
19          Is there anything I'm missing?
20          And I should add, of course, I've reviewed the
21  government's exhibits in connection with their submission
22  regarding Mr. Meggs.
23          MR. WOODWARD:  No.  The motion addresses the
24  redacted exhibit that we also filed this morning.
25          THE COURT:  Okay.
```

1          All right.  So with that, Mr. Woodward, could I

2     have you please confirm that Mr. Meggs has had an

3     opportunity to review the PSR?

4          MR. WOODWARD:  Your Honor, just a -- "yes" is the

5     answer, with the only caveat that I was not able to get him

6     a physical copy.  We've mailed a copy to Lewisburg.  After

7     we mailed the copy, he was transferred to D.C.  So the way

8     that we reviewed the final PSR was on a Webex where he could

9     see my screen.

10          THE COURT:  Okay.

11          MR. WOODWARD:  And I'll let Mr. Meggs speak up

12     if he has concerns about his knowledge or understanding of

13     the PSR.

14          THE COURT:  Okay.

15          Well, let me ask you through -- does Mr. Meggs --

16     is he requesting additional time to look at the hard copy?

17     Or are you satisfied with what you've seen and had the

18     opportunity to review, Mr. Meggs?

19          MR. WOODWARD:  No.  He's satisfied that he's had

20     an opportunity to see and review the PSR.

21          THE COURT:  All right.  Great.

22          All right.  Well, let's just start with some of

23     the factual disputes with the PSR.

24          You know, as I go through this, I don't plan to

25     sort of take this paragraph by paragraph.  Mr. Woodward,

```
 1    I'll sort of identify some of the objections you've raised.

 2             At the end of the day, my sentence is not being

 3    largely -- or is really not at all being driven by the PSR's

 4    characterization of the facts as to which you've raised some

 5    concerns.  I've obviously had the opportunity to sit through

 6    the trials and consider the evidence for myself.  So let me

 7    just go ahead and just respond to some of the factual

 8    disputes that are raised.

 9             One is that the contention is that Mr. Meggs "did

10    not interfere with officers trying to protect the building."

11             I think there certainly is evidence that he did,

12    if not directly, then certainly through co-conspirators.

13    Notably, Mr. Isaacs was the first one through, and he

14    certainly was very on the hip pocket of Officer Salke as he

15    was going through the door.

16             And then, of course, there's Officer Dunn's

17    testimony that, while perhaps there may not have been

18    interference in the sense of physical force used upon

19    Officer Dunn, he certainly testified and expressed his view

20    that the Oath Keepers' presence there was interfering with

21    his ability to do his job that day and control the crowd.

22    Further contention is that Mr. Meggs "did not enter into a

23    conspiracy in the days and weeks after the election."

24             As I held yesterday, the early communications

25    starting after the election established a foundation for the
```

1   conspiracy and the understanding among the co-conspirators

2   that violence might be used or needed to keep the President

3   out of office -- excuse me, keep President Trump in office

4   and keep President-elect Biden out, and that those

5   statements and early communications laid the groundwork and

6   foundation for the ultimate object of the conspiracy, which

7   was to interfere with the transfer of power through

8   resisting the authority of the government by force and, as

9   I will find and do find now, through a preponderance of the

10   evidence, to prevent the execution of the laws by force.

11         The contention is that Mr. Meggs "did not agree

12   with the call to action."  I certainly think a reasonable

13   juror and I would contend otherwise.  He was not merely

14   communicating what Mr. Rhodes was saying when he was

15   repeating the term "call to action" in his post, I think

16   either the next day or two days later.  He certainly agreed

17   with it, both by his own words and by his actions that

18   followed in the weeks and months thereafter.

19         Notably, for example, you know, his communications

20   with Mr. Berry in late November demonstrate someone who's

21   encouraging someone to join the Oath Keepers, to assure him

22   that the cause is worthy.  And when Mr. Berry says something

23   like, "I'm going to be honest.  With the dishonesty in this

24   election, we need to reach further and further to the brink

25   of no return.  I'm fighting for the future of my family and