# Exhibit 9

```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,
                                            Criminal Action
              Plaintiff,                    No. 21-00175

   vs.                                      Washington, D.C.
                                            April 20, 2023
   ETHAN NORDEAN, JOSEPH R. BIGGS,          1:30 p.m.
   ZACHARY REHL, ENRIQUE TARRIO and
   DOMINIC J. PEZZOLA,

              Defendants.
   _____


                TRANSCRIPT OF THE JURY TRIAL - DAY 68
                         AFTERNOON SESSION
              BEFORE THE HONORABLE TIMOTHY J. KELLY,
                    UNITED STATES DISTRICT JUDGE


   APPEARANCES:

   For the Government:

           JASON B.A. McCULLOUGH, ESQ.
           ERIK M. KENERSON, ESQ.
           CONOR MULROE, ESQ.
           NADIA MOORE, ESQ.
           UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF
           COLUMBIA
           555 Fourth Street, Northwest
           Eleventh Floor
           Washington, D.C. 20530

   For the Defendant NORDEAN:

           NICHOLAS D. SMITH, ESQ.
           DAVID B. SMITH, PLLC
           1123 Broadway
           Suite 909
           New York, New York 10010
```

```
 1    APPEARANCES, CONT'D:

 2

 3    For the Defendant Biggs:

 4            JOHN D. HULL, IV, ESQ.
              HULL McGUIRE, P.C.
 5            1420 N Street, Northwest
              Washington, D.C. 20005
 6
              NORMAN A. PATTIS, ESQ.
 7            PATTIS & SMITH, LLC
              383 Orange Street
 8            First Floor
              New Haven, Connecticut 06511
 9
      For the Defendant Rehl:
10
              CARMEN D. HERNANDEZ, ESQ.
11            7166 Mink Hollow Road
              Highland, Maryland 20777
12
      For the Defendant Tarrio:
13
              NAYIB HASSAN, ESQ.
14            LAW OFFICES OF NAYIB HASSAN, P.A.
              6175 Northwest 153rd Street
15            Suite 209
              Miami Lakes, Florida 33014
16
              SABINO JAUREGUI, ESQ.
17            JAUREGUI LAW, P.A.
              1014 West 49th Street
18             Hialeah, Florida 33012

19    For the Defendant Pezzola:

20            STEVEN METCALF, II, ESQ.
              METCALF & METCALF, P.C.
21            99 Park Avenue
              Sixth Floor
22            New York, New York 10016

23            ROGER ROOTS, ESQ.
              LAW OFFICES OF ROGER ROOTS
24            113 Lake Drive East
              Livingston, Montana 59047
25
```

```
 1  REPORTED BY:
 2           STACY HEAVENRIDGE, RPR
             Official Court Reporter
 3           U.S. District & Bankruptcy Courts
             for the District of Columbia
 4           333 Constitution Avenue, NW, Room 4700-A
             Washington, D.C. 20001
 5
 6   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription
 7
 8                              I N D E X
 9
10      DOMINIC PEZZOLA
11      Cross-Examination By Mr. Kenerson              19322
12      Redirect Examination By Mr. Metcalf            19422
13
14                           E X H I B I T S
15  GOVERNMENT EXHIBITS                                ADMIT
16  447C                                               19369
17  604-5                                              19341
18  DEFENSE EXHIBITS                                   ADMIT
19  Pezzola 311                                        19436
20
21
22
23
24
25
```

~~PEZZOLA - CROSS~~

1  Q. So you didn't care whether your message got across?
2  A. I'm pretty sure they could have heard me. I mean, if they
3  couldn't hear me there, I'm sure they weren't going to be able
4  to read lips any better.
5         MR. KENERSON: Could we play until about 40 seconds.
6       (Whereupon, a video was played in open court.)
7         MR. KENERSON: Pause right there.
8  BY MR. KENERSON:
9  Q. This man has his hands on a police officer's neck, correct?
10 A. Up around his collar, I would say.
11 Q. I want to ask you a little bit about your testimony from
12 when you grabbed at the shield.
13 A. Okay.
14 Q. If I understand your testimony correct, you said you
15 grabbed at it when it was in Officer Ode's hands, correct?
16 A. Yes, sir.
17 Q. But you didn't take it from him?
18 A. No, I did not.
19 Q. Someone else took it from him?
20 A. I fell backwards and that's what appeared to have happened,
21 yes.
22 Q. You then took it from that person, correct? That's your
23 testimony?
24 A. Yes.
25 Q. So shield was in Ode's hands. Wound up in this person with

~~PEZZOLA - CROSS~~

1  the "W" jacket's hands, correct?
2  A.  Uh-huh -- yes.
3  Q.  And then you took it from the hands of that person with the
4  "W" jacket?
5  A.  Yes.
6  Q.  That's your testimony?
7  A.  That's my testimony.
8  Q.  And when you grabbed it first, when it was still in
9  Officer Ode's hands, you were trying to take it, correct?
10 A.  I was trying to protect myself.
11 Q.  You were trying to protect yourself by taking it, correct?
12 A.  I was trying to protect myself by trying to find cover.
13 Q.  By taking Officer Ode's shield, correct?
14 A.  If by "taking," you mean by trying to find cover, then
15 correct.
16 Q.  So when you were grabbing that shield from Officer Ode, you
17 were trying to take it from his possession at that point?
18 A.  Just, again, take it from his possession so I can keep from
19 being killed, yes.
20         MR. KENERSON:  Can we, Ms. Rohde, play this until
21 about 51 seconds?
22     (Whereupon, a video was played in open court.)
23 BY MR. KENERSON:
24 Q.  And where we've stopped here, Mr. Pezzola, that is your
25 hand to the left side of the screen about a little higher than

1  halfway up it, correct?
2  A.  That's right.
3  Q.  And that is your hand grabbing for Officer Ode's shield,
4  correct?
5  A.  It is.
6         MR. KENERSON:  If we can go frame by frame, Ms. Rohde.
7      (Whereupon, a video was played in open court.)
8         MR. KENERSON:  You can stop right there.
9  BY MR. KENERSON:
10 Q.  That shield has just come onto our screen.  That's your
11 hand on it to the left side, correct?
12 A.  It appears to be so.
13 Q.  That's when you were pulling on the shield?
14 A.  I think at that point, I just grabbed onto it.
15 Q.  You had just grabbed onto it.  You were about to start
16 pulling on it, correct?
17 A.  Yeah, that's fair to say.
18 Q.  And you were about to start pulling on it because you
19 wanted to take possession of it, according to you, because you
20 wanted to defend yourself, correct?
21 A.  I mean, the thought of just wanting to take possession of
22 it, no.  There was no intention to take -- I mean, the
23 intention wasn't just to take possession.  The intention was to
24 cover my head from bullets that were still flying at me.
25 Q.  Well, how are you going to cover your head if you don't

1  take possession of it?
2  A.  In simple terms, yes, it was to take possession of it.  But
3  the intent wasn't to rob it or anything.  It was just to
4  protect myself.
5  Q.  I understand that's your testimony.  But you were trying
6  take possession of it, correct?
7  A.  I was trying, but I failed.
8  Q.  And your testimony, again, was that --
9          MR. KENERSON:  Well, Ms. Rohde, if we could slow this
10 down to about a quarter speed.
11 BY MR. KENERSON:
12 Q.  And, Mr. Pezzola, if you could tell us at the point where
13 you think you lost grip of that shield.
14         (Whereupon, a video was played in open court.)
15 A.  You want me to tell you to pause it when I --
16 Q.  Sure.
17 A.  Okay.
18         (Whereupon, a video was played in open court.)
19 Q.  So you still have possession of it now?
20 A.  Yes, sir.  Well, I wouldn't say possession.  My hands are
21 on it.
22 Q.  Understood.
23         (Whereupon, a video was played in open court.)
24 A.  So it's shortly -- right about here, you can see this
25 individual.  I believe he's putting his hand kind of on my back

PEZZOLA - CROSS

1  and kind of shoving me out of the way.  And I believe that's
2  when I fell back straight on my back.
3  Q.  Mr. Pezzola, it was chaotic at the bottom of that pile,
4  correct?
5  A.  Yes, sir, it was.
6  Q.  Things happened quickly?
7  A.  Very quickly.
8  Q.  There were people basically everywhere, correct?
9  A.  Everywhere.
10 Q.  Spray was coming in multiple directions?
11 A.  It was.
12 Q.  So am I correct in assuming that you did not have time in
13 real time to observe the man you pointed out yesterday in the
14 "W" jacket?
15 A.  Not in real time.  But all I know is when I fell on my
16 back, the shield was completely out of my grasp.
17 Q.  So your -- what you have testified to yesterday, at least,
18 about the man in the "W" jacket reaching down, that's based on
19 your review of the video, correct?
20 A.  It is.
21 Q.  Okay.
22          MR. KENERSON:  Ms. Rohde, can we go to 444AX, please.
23          If we could play it, please.
24      (Whereupon, a video was played in open court.)
25

~~PEZZOLA - CROSS~~

1   Q.   And when you got to the back of the shield, Mr. Donohoe
2   helped you carry it at some point; is that right?
3   A.   That's fair to say, sure.
4           MR. KENERSON:  Ms. Rohde, can we bring up 442A.
5           If we could just play the first couple seconds.
6       (Whereupon, a video was played in open court.)
7           MR. KENERSON:  Pause right there.
8   BY MR. KENERSON:
9   Q.   That person who we just saw going by -- for the record,
10  we're stopped at 10 seconds -- that's the individual that you
11  now know as Mr. Donohoe correct?
12  A.   Yes, sir.
13  Q.   And that is him helping you carry the riot shield, correct?
14  A.   That's right.
15          MR. KENERSON:  And can we continue playing.
16      (Whereupon, a video was played in open court.)
17          MR. KENERSON:  Pause right there.
18  BY MR. KENERSON:
19  Q.   That was you who just said "yeah" to the question if you
20  just stole a riot shield correct?
21  A.   Yes, sir.  I was basically just giving a quick, simple
22  response to someone I really didn't want to communicate with.
23  Basically, just trying to blow them off.  That's a one-word
24  sentence just to get him out of my hair, so...
25          MR. KENERSON:  If we could have Exhibit 475.

~~PEZZOLA - CROSS~~

1  A.  I did.
2  Q.  You didn't offer it to any of these officers in front of us
3  right now?
4  A.  I did not.
5        MR. KENERSON:  Can we play.
6     (Whereupon, a video was played in open court.)
7        MR. KENERSON:  You can stop.  Pause here.
8  BY MR. KENERSON:
9  Q.  This was your voice we just heard, Mr. Pezzola?
10 A.  Yes, sir.
11       MR. KENERSON:  For the record, paused at 23 seconds.
12 BY MR. KENERSON:
13 Q.  Saying:  We ain't stopping.  Fuck you.
14       MR. METCALF:  Objection.  Cumulative at this point.
15 He just said yes, it was him.
16       THE COURT:  Overruled.
17       THE WITNESS:  Yes, sir.  We, as in the crowd.  I was
18 no longer near anyone I knew at this point.
19 BY MR. KENERSON:
20 Q.  You said:  You better decide which side you're on,
21 motherfuckers.
22    Correct?
23 A.  I did.
24 Q.  And you said:  You think Antifa is fucking bad?  Just you
25 wait.

~~PEZZOLA - CROSS~~

1      Correct?
2  A.  Yes, sir.
3         MR. KENERSON:  Keep playing.
4      (Whereupon, a video was played in open court.)
5         MR. KENERSON:  Pause it there.
6  BY MR. KENERSON:
7  Q.  That was your voice again, correct, Mr. Pezzola?
8  A.  Yes, sir.
9  Q.  I took this from a fucking cop.  All right?  Shut the fuck
10 up.
11     Correct?
12 A.  Yes, sir.  He was trying to egg me on to charging forward
13 because I had a shield.  You didn't get the rest of the
14 conversation where I had told him I took this because I was
15 getting shot at.  People were being shot in the face,
16 essentially.
17 Q.  You told him that?
18 A.  I believe so, yeah.
19 Q.  How long before this or after this?
20 A.  I had another interaction with gentleman at some point.  He
21 was kind of being a jerk.  So I just told him that.
22 Q.  He was being a jerk, so you decided to tell him that police
23 were shooting at you?
24 A.  Yeah.
25 Q.  Top of these stairs?

~~PEZZOLA - CROSS~~

1  A.  No, down at the bottom.
2  Q.  Oh, down at the bottom?
3  A.  Yes.  Well, they were shooting at us in the stairs too.
4  That's correct.  I'm sorry.
5  Q.  Sounds like we had a misunderstanding.  I meant:  Where you
6  told him that?  Was that at the top of these stairs?
7  A.  It was in this general area, yeah.
8  Q.  In this general area?
9  A.  Yes.
10 Q.  Before or after these words on the screen?
11 A.  It was after.  It was a little bit after.  He was behind me
12 for a minute.  I saw him looking at me.  He might have said
13 something else to me.  I really don't remember.  But I know
14 that conversation came up.
15 Q.  So there's the words on the screen.  Some amount of time
16 passes.  You have some other interaction with him.  And that's
17 when you tell him that police were shooting at you and that's
18 why you took it?
19 A.  Yes, sir.  I believe I was in this area for a certain
20 amount of time.
21 Q.  Okay.
22         MR. KENERSON:  Can we go to 425, please.
23         If we could just skip to 35 seconds.
24         We can play until 40.
25     (Whereupon, a video was played in open court.)

~~PEZZOLA - CROSS~~

1  BY MR. KENERSON:
2  Q.  Now, Mr. Pezzola, that's you with the riot shield, correct?
3  A.  Yes, sir.
4  Q.  And your testimony on direct was that you broke the
5  windowpane on the left, correct?
6  A.  That's correct.
7  Q.  Now, at this point, the window on the right has already
8  been damaged by the two-by-four, correct?
9  A.  I would say it was completely totaled, yes.
10          THE COURT:  Can I ask you both to keep your voices up
11  all the way to the end of your question or answer.
12          THE WITNESS:  Apologies.
13          MR. KENERSON:  And apologies here as well, Your Honor.
14  Thank you.
15          Can we play this until 48 seconds, please.
16      (Whereupon, a video was played in open court.)
17          MR. KENERSON:  Pause right there.
18  BY MR. KENERSON:
19  Q.  Now, Mr. Pezzola, you did strike the right pane with that
20  shield, correct?
21  A.  I struck a completely destroyed piece of glass that needed
22  to be replaced with that shield, yes.
23  Q.  You struck the right pane of glass with that shield,
24  correct?
25  A.  I wouldn't consider it a pane anymore at this point.  It

~~PEZZOLA - CROSS~~

1  was just a broken piece of glass.  You can't expect me to call
2  that a pane anymore.  It's completely fractured.
3  Q.  Mr. Pezzola, you did a lot less damage to that window than
4  the two-by-four did, correct?
5  A.  No -- oh, less damage?
6  Q.  Yeah, a lot less damage.
7  A.  Oh, absolutely.
8  Q.  But you still did some, correct?
9  A.  It's like when something is wet, you can't make it wetter.
10 If this is broke, you can't break it anymore.
11 Q.  So you just said you did a lot less damage, but now your
12 testimony is you did no damage?
13         MR. METCALF:  Your Honor, that mischaracterizes his
14 answer and it's cumulative at this point and asked and
15 answered.
16         THE COURT:  Overruled.
17         THE WITNESS:  You're just twisting my words,
18 Mr. Kenerson.  That's all.
19 BY MR. KENERSON:
20 Q.  Mr. Pezzola, while you were busting open that window, the
21 goal was for someone inside to hear you, correct?
22 A.  I'm sorry?
23 Q.  While you were busting open that window, your goal was for
24 someone inside to hear you, correct?
25 A.  I believe so.  That was the goal.