UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONRAD SMITH, et al.,

    Plaintiffs,

        v.                                        Case No. 1:21-cv-2265 (APM)

DONALD J. TRUMP, et. al,

    Defendants.

### RESPONSES AND OBJECTIONS OF TARRIO AND BIGGS
### TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Under Rules 26 and 33, Fed. R. Civ. P., defendants Henry Tarrio and Joseph R. Biggs (sometimes "defendants") respond to plaintiffs' First Set of Interrogatories dated March 28, 2024 ("Interrogatories").[1] Defendants note here that the Introduction (Section A) immediately below is relevant to, and is being made part of, each of the below responses as well as a part of any future Tarrio-Biggs responses to other written discovery requests in the three January 6 civil cases (21-cv-2265, 21-cv-3267 and 21-cv-400) in which they are defendants.

    **A. INTRODUCTION RELEVANT TO ALL TARRIO-BIGGS WRITTEN
        DISCOVERY RESPONSES IN 21-cv-2265, 21-cv-3267 and 21-cv-400**

    **1. For Tarrio and Biggs, participating minimally as defendants in the three January
       6 civil suits to avoid default judgments has backfired.**

Defendants Tarrio and Biggs are now deep into their third year of participating in the January 6 civil rights cases of *Smith, et al. v. Trump, et al. (*21-cv-2265-APM) and *District of Columbia v. Proud Boys International L.L.C., et al. (*21-cv-3267-APM). In late 2021, each was

---

[1] Tarrio and Biggs are responding jointly to the Interrogatories. Last year, they also responded jointly plaintiffs' First Requests for Production of Documents dated April 4, 2023. The Interrogatories to Tarrio and Biggs, like plaintiffs' Rule 34 requests last year, are in all important respects identical.

sued in these cases under 42 U.S.C. § 1985 for their supposed roles on January 6 at the Capitol. They hired the undersigned, already Biggs' defense counsel in *USA v Nordean, et al.* (21-cr-175-TJK), to represent them in the two cases. At the time, Tarrio, unlike Biggs, was not facing a January 6-related criminal prosecution by the Department of Justice (DOJ), nor did he anticipate one.

Earlier in the year, on April 7, 2021, Tarrio was also named as a defendant (without Biggs) in the amended complaint of what is now styled as *Lee, et al. v. Trump, et al.* (21-cv-400-APM), brought by eleven members of Congress originally represented by lawyers for the NAACP. *Lee* was the third January 6 case brought under 42 U.S.C. § 1985 that included Tarrio as a defendant. Although Tarrio was not aware of this for months, as soon as he did know, he asked his lawyer to enter an appearance and take steps to set aside an entry of default entered against Tarrio.

In the motion to set aside the default, Tarrio was candid about his desire to participate even minimally in the *Lee* case. Apart from being better positioned to protect his financial interests (i.e., avoid a default judgment), he viewed participating in the case as an opportunity to answer the complaint and tell his side of the January 6 story. "[T]o the extent his resources allow," he said in his motion, "Tarrio seeks to participate as a defendant in this case and several others like it both to protect his rights and to add to the record of those cases." ECF No. 48 at 2 (21-cv-400).

Tarrio's choice of words here is important.

It reflects his and Biggs's theme in participating in these three cases which they had embraced from the start. In the instant lawsuit, (21--2265), in *District of Columbia v. Proud Boys International L.L.C.* and (in Tarrio's case) *in Lee, et al. v. Trump, et al.*, and had the same goals. They even shared a barebones "strategy"-- which can by summarized as follows:

(1) Participate to avoid default judgments,

(2) Don't hide from any January 6 federal civil suit, and.

(3) Use the suits as an opportunity to tell the truth about defendants' roles on January 6.

To that end, Tarrio and Biggs each kept their activity in the litigation at a minimum but still adequate to help advance the progress of the case. These two defendants, who were and are broke, didn't file Rule 12 motions. They filed answers, with respectful, factual rejoinders to allegations that painted Tarrio and Biggs consistently in unflattering and often hyperbolic terms. The narrative set forth in the *Smith, et al. v. Trump, et al*. complaint (ECF Nos. 1 and 89) may be the most deliberately misleading tale about a human event to ever appear in print in any language. Nonetheless, Tarrio and Biggs, in their respective answers to the original complaint and later the amended complaint, refuted' most sensational allegations but did so dispassionately and in good faith. For example, Biggs, in his Answer to the Amended Complaint (ECF No. 99, 21-cv-2265), refused to respond to gratuitous general comments about "the racially motivated mission of Proud Boys" (*see* Amended Complaint, par. 80, ECF No. 89). Instead, Biggs simply denied specific allegations that the large Proud Boys contingent that marched in Washington, D.C. on December 12, 2020, "attacked anyone or were violent, disrespectful of Black churches or motivated by racial prejudice." Answer par. 18. Biggs pointed out that the moniker "Ministry of Self Defense" (MOSD), as the full name implies, "was created in response to stabbings on December 12 of four Proud Boys near the Harrington Hotel in downtown Washington, D.C. by a member of Antifa." *Id*. at par. 4. In that connection, he also explained that on January 6 the Proud Boys organization's clothing, protective gear and communications devices were different than at previous Washington, D.C. marches because they "were intended to detect and avoid Antifa while marching during the daylight hours." *Id*. at par. 22. Finally, Biggs underscored that, contrary to astonishing allegations made in the Amended Complaint

(*see* ECF No. 89, par. 140(j)), he did not "attack" any police or "force" his way into the Capitol building. Biggs Answer at par. 31. DOJ itself made no make such allegations in *Nordean* in any of its indictments.

Rather than engaging counsel to participate on their behalf, and properly countering allegations that seemed to them irresponsible, Biggs and Tarrio could have tried to dodge and avoid altogether (as many others did) actions under 42 U.S.C. §1985, especially as they both became increasingly consumed with a mounting criminal prosecution. But they didn't. In late 2021, moreover, Tarrio's and Biggs's personal and legal situations were quite different. Biggs, already a January 6 criminal defendant portrayed by DOJ as a leader and co-conspirator, had been held in a Florida jail for several months, and Tarrio was not touched by DOJ for over a year after January 6, 2021. On March 8, 2022, he was unexpectedly arrested at his Miami home, and has been incarcerated ever since. Nonetheless, he and Biggs continued to participate in the civil actions from jails.

In retrospect, that may have been a mistake, at least financially.

Tarrio and Biggs continue to experience downward freefalls personally and financially. The pretrial detention period in *Nordean* has been surprisingly protracted: two years for Biggs, and over one year for Tarrio. Both were convicted after a five-month trial that was originally estimated to take 4 to 6 weeks. The criminal trial itself was marked by novel applications of law, heard by a jury which took three weeks to pick, and struck veteran observers and media as "one-off" in every respect. It featured conspiracy theories that were brand new. It ended in convictions on the more novel counts and in unusually long prison sentences: 22 years for Tarrio and 17 for Biggs. At the time of sentencing, Biggs had already been continuously detained for 28 months and Tarrio for 17 months.

While these sentences are being appealed to the D.C. Circuit, that process has been remarkably slow due to the length of the trial, the sheer voluminousness of the record in a five-defendant trial, the number of issues, and the novelty and complexity of those issues. What's more, it does not appear from recent developments in this case and *District of Columbia v. Proud Boys International L.L.C.* that plaintiffs desire to discover a January 6 theory of civil liability for Tarrio and Biggs other than the unlikely conspiracy a jury found in the turbulent and unique *Nordean* trial. Plaintiffs may not in fact see their lawsuit as a stand-alone, independent inquiry into the truth of January 6, 2021. In the meantime, these defendants, even if successful in reducing the length of their prison terms, will continue to be unemployed and unable to generate income for several more years. Criminal charges will continue to be the focus of Tarrio, Biggs and the families of each. All energies and available financial resources now flow in that direction. The civil cases have become a drain on money, time and energy which they can no longer afford.

**B. While Tarrio and Biggs are weaker financially and legally than they were in 2021, plaintiffs now have increased access to relevant information in discovery.**

On August 1, 2023, Tarrio and Biggs filed a Notice re: Discovery Compliance ("Notice") together with an attachment. ECFs Nos. 241, 241-1. The attachment, ECF No. 241-1, is a three-page discovery response served July 28, 2023. While it would not normally be filed on the docket, it was filed it anyway. It reflects the unusually constrained, restricted discovery terrain for Tarrio-Biggs one year ago. These same limitations apply now. Nearly all discoverable ESI and other materials in the *Nordean* criminal prosecution (21-cr-175) against Tarrio, Biggs and other Proud Boys are protected from release by three protective orders: ECF Nos. 83 and 103 and a third order that was filed under seal. It also states that the trial exhibits in *Nordean* were covered by the same protective orders (*i.e.*, ECF Nos. 83 and 103) had not been released yet, and that post-verdict matters kept defendants from producing meaningful discovery in *Smith, et al. v. Trump, et al.*

Four weeks later, on August 28, 2023, a similar Notice was filed in *District of Columbia v. Proud Boys International LLC, et al. (*21-cv-3267-APM). ECF 227, 227-1; however, this second update was more optimistic and stated that the protected materials in *Nordean* should be made public "by the end of 2023 at the latest."

### DOJ's USAfx ESI Cache

That optimism was probably ill-conceived. Most *Nordean* ESI will remain protected and non-public indefinitely. In Nordean, the outsize cache of January 6 ESI for five defendants was maintained by DOJ's USAfx file exchange tool used to securely distribute discovery to defense counsel. The entire cache is still protected from disclosure under the *Nordea*n protective orders. It is estimated that the Biggs file amounts to roughly 19 terabytes, and the Tarrio file roughly 16 terabytes. ECF Nos. 83 and 103 apply to almost all of it while the convictions and sentences are being appealed to the District of Columbia Circuit. The five consolidated appeals (appellants are Ethan Nordean, Biggs, Zachary Rehl, Dominic Pezzola, Tarrio) and DOJ's cross-appeals advance only on an extraordinarily slow, deliberate and mind-numbing track. (*See*, D.C. Court of Appeals Docket 23-3193, USA v. Biggs, consolidating cases 23-3192, 23-3193, 23-3194, 23-3195, 23-3196 and cross-appeal 23-3159.) Most *Nordean* ESI is not likely to be discoverable for the duration of the appeals.

### CHS Materials

In addition to the USAfx super-cache, there is a second, much smaller set of documents produced by the government in hardcopy form during the *Nordean* case ("CHS materials") A separate protective order filed under seal designates all approximately 120 documents as "highly sensitive" and none merely "sensitive." (Most protective orders have both classifications.) These documents, many of which are partially redacted, are FD-1023 CHS reporting documents.

No inventory or privilege list is being provided for the CHS materials. Plaintiffs are welcome to ask DOJ for access to these documents on their own.

### **Access to Trial Exhibits in *Nordean***

Since late August 2023, there have been two developments affecting Tarrio's and Biggs's ability to participate in this case and other January 6 civil cases. In hearings in early September 2023, Biggs and Tarrio were sentenced to lengthy prison terms. To serve his 17-year sentence, Biggs was transferred from a Washington, D.C. jail to FCI Talladega, Talladega, Georgia. Tarrio, also held in local Washington, D.C. jails for over a year, was sentenced to a term of 22 years and sent to FCI Manchester, Manchester, Kentucky. Both are now more difficult to access for their attorney, a Washington, D.C. resident. Ironically, despite the good reputations these prisons have as correctional facilities, at these institutions Tarrio and Biggs are more difficult to access by phone or other means than they were in pretrial detention at the Alexandria, Virigina and Washington, D.C. local jails. Aside from being more financially distressed in the long term than they were a year ago, they thus far have poorer access to their lawyers as well.

The second development is that, with the help of Tarrio's and Biggs's counsel, trial exhibits in *Nordean* were finally released to plaintiffs in October of 2023. Most of the trial exhibits came from DOJ's USAfx discovery cache. At the *Nordean* trial between December 19, 2022, and May 44, 2023, they were discussed and introduced into evidence by the government and the defense. Even though they are a relatively small subset of the overall DOJ cache, the trial exhibits represent roughly 1,200 items admitted at trial in the form of documents, videos, photographs and social media chats. While reviewing two of plaintiffs' joint status reports in August and October (ECF Nos. 239 and 253), Tarrio and Biggs' counsel learned that plaintiffs on May 31, 2023, had filed an Application for Access to Trial Exhibits with Judge Timothy Kelly, who had presided *in Nordean*.

However, the request had never been acted upon. *See* ECF No. 809 (21-cr-175). On October 5, 2023, their counsel moved on behalf of Biggs that Judge Kelly act on plaintiffs' Application. A few days later, by minute order of October 11, 2023, the Court indeed granted the motion and allowed plaintiffs to access all trial exhibits for use in this civil case. Docket entries in 21-cr-175 related to obtaining the trial exhibits are below:

| 05/31/2023 | 809 | Application For Access To Trial Exhibits by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE, ENRIQUE TARRIO, DOMINIC J. PEZZOLA. "Leave to file GRANTED" by Judge Timothy J. Kelly on 5/31/2023. (Attachments: # 1 Text of Proposed Order)(zltp) (Entered: 06/02/2023) |
|---|---|---|

| 10/05/2023 | 918 | MOTION Motion to 'Join' ECF No. 809 to Release Admitted Trial Exhibits or In Alternative for Clarification re 809 MOTION to Access by JOSEPH R. BIGGS as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE, ENRIQUE TARRIO, DOMINIC J. PEZZOLA. (Hull, John) (Entered: 10/05/2023) |
|---|---|---|

| 10/11/2023 | | MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), ENRIQUE TARRIO (5), and DOMINIC J. PEZZOLA (6) granting the 809 Application for Access to Trial Exhibits and Defendant Biggs's 918 Motion to Join that application. Upon consideration of the application for access to trial exhibits by Conrad Smith, Danny McElroy, Byron Evans, Governor Latson, Melissa Marshall, Michael Fortune, Jason DeRoche, and Reginald Cleveland ("Applicants"), it is hereby ORDERED that the application is GRANTED. It is further ORDERED that Defendant Biggs's motion is GRANTED. It is further ORDERED that the Government may make exhibits available to Applicants and Defendant Biggs using the "drop box" technical solution described in In re: Media Access to Video Exhibits in Pretrial Hearings During the COVID-19 Pandemic, Standing Order No. 21-28 (BAH) (May 14, 2021). Signed by Judge Timothy J. Kelly on 10/11/2023. (lctjk1) (Entered: 10/11/2023) |
|---|---|---|

From the same docket, the full exhibit lists by party of the approximately 1,200 exhibits in the *Nordean* case against Tarrio and Biggs are as follows:

| 05/04/2023 | 798 | EXHIBIT LIST by USA as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), ENRIQUE TARRIO (5), and DOMINIC J. PEZZOLA (6). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |
| --- | --- | --- |
| 05/04/2023 | 799 | EXHIBIT LIST by ETHAN NORDEAN (1). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |
| 05/04/2023 | 800 | EXHIBIT LIST by JOSEPH R. BIGGS (2). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |
| 05/04/2023 | 801 | EXHIBIT LIST by ZACHARY REHL (3). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |
| 05/04/2023 | 802 | EXHIBIT LIST by ENRIQUE TARRIO (5). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |
| 05/04/2023 | 803 | EXHIBIT LIST by DOMINIC J. PEZZOLA (6). All admitted exhibits sent into jury 4/26/2023 at 2:45 PM. (zkh) (Entered: 05/05/2023) |

## B. GENERAL OBJECTIONS AND COMMENTS

1. These General Objections and Comments apply to each of the five interrogatories in plaintiffs' First Set, except in the limited instances that are specified.

2. Each defendant reserves the right to supplement these responses under Fed. R. Civ. P. 26 (e).

3. Defendants object to Interrogatories 1 through 5--and especially to Interrogatories 1 through 4--because they are premature.

4. Defendants object to Interrogatories 1 through 5 to the extent they are: (1) disproportional in reach considering the needs of the case; (2) overly broad as to either time or content; (3) ambiguous or vague; (4) improper, (5) unreasonably cumulative or duplicative; (6) immaterial; (7) irrelevant; and/or (8) unlikely to lead to the discovery of admissible evidence.

5. Defendants object to Interrogatories 1 through 5 to the extent they seek information that is (1) confidential, (2) proprietary, or (3) often likely to lead to the violation of court orders, contracts with third parties, or privacy rights of third parties.

6. Defendants also object to having to respond to the Interrogatories under certain provisions of Rule 26(b), Fed. R. Civ. P. Due to their continuing incarceration, continuing inability to generate an income, expenses related to their ongoing appeals, and the demands of this litigation, each defendant now experiences a financial freefall with no stopping point for years. The playing field becomes more lobsided each day this litigation continues. Plaintiffs' resources (money, staffing and expertise), on the other hand, are by comparison limitless. Plaintiffs can and should take the laboring oar from this point forward in conducting discovery. Plaintiffs' access to discoverable information from the *Nordean* case and other sources has markedly improved over the last year. Their relative access to information is far superior to that of defendants.

7. Finally, defendants note that under Rule 33(d), Fed. R. Civ. P, most if not all the information plaintiffs seek in these Interrogatories can be derived from documents and ESI they already have or can obtain in the future.

8. Except for seven weeks in early 2022, Tarrio has been a continuing resident of a District of Columbia, Florida, Virgina or Tennessee lock-up or correctional institution since September 6, 2021. He has been unemployed since that time. As such, Tarrio is not wealthy. Tarrio is also insolvent. He has significant debts of fees and costs from local and federal criminal and civil proceedings in the District of Columbia. While he has been employed or owned businesses during all his adult life, he now has a negative net worth. He has an uncertain financial future.

9. Biggs has been incarcerated in a Florida, Virigina, Washington, D.C. or Alabama lock-up or prison since April 22, 2021. He has been unemployed since that time. Biggs is a U.S. Army veteran. Before being imprisoned, his primary source of income was a monthly military pension. However, after an October 27, 2022, hearing, the Department of Veterans Affairs permanently stripped him of the pension in view of his being additionally charged with seditious conspiracy.

Biggs has debts of fees and costs from past and ongoing federal criminal and civil proceedings in the District of Columbia. He is also insolvent. He has an uncertain financial future.

10. Below plaintiffs' original interrogatories are in single space and bold. Defendants' responses are in double space and non-bold.

## RESPONSES TO INTERROGATORIES

**1. Identify all sources of income from December 19, 2016, to the present, including salaries, wages, or commissions, dividends, interest, income from a business or profession, partnership income, capital gains, annuities and pensions, rents and royalties, income from estates and trusts, and disposition of precious metals. For all sources of income deriving from salaries or businesses, include the dates of employment and nature of the business.**

RESPONSE: The Introduction, and each of the Objections and Comments, apply to Interrogatory 1 and are incorporated by reference herein. In particular, Interrogatory 1 is premature.

**2. Identify in U.S. dollars the amount and fair market value as of December 19, 2020, of each of your assets, located within the United States or elsewhere, including any checking, savings, investment, and other financial accounts in any domestic or foreign bank or financial institution over which you have signatory authority or other such control; cash surrender value of insurance, life insurance policies, and legal defense funds; accounts receivable and notes receivable; merchandise inventory; furniture and fixtures; personal property (*e.g.*, machinery and equipment, commodities, virtual currency, jewelry, art, antiques, furniture, cash, gold, silver, etc.); motor vehicles (*e.g.*, including automobiles, motorcycles, boats, snowmobiles, campers, trucks, delivery equipment, etc.); stocks, bonds, and other securities; pensions and annuities; digital assets (*e.g.*, virtual currency, accounts on any cryptocurrency or token exchange or online wallet service, any hardware, software or paper wallet and any other digital assets, including but not limited to currencies, tokens, or NFTs held or controlled by any other means); judgments; patents; interests in any corporation, partnership, or trust; and safety deposit boxes in your name or to which you have access.**

    a.    **Include all jointly held assets and if any asset is jointly held, identify the asset as jointly held and state each person's respective shares.**

    b.    **Include assets held in the name of another person or entity but over which you have a legal, equitable, or beneficial interest. Such interest might include your right to collect the income, to direct the sale or transfer of the asset, or to benefit from the sale or exchange of same.**

     c.     **Include assets belonging to any unemancipated children or to dependent adults with whom you reside noting their identifiers, as well as assets of those or other individuals that you control by power of attorney. "Dependents" include your live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.**

     d.     **For financial accounts, include the name, address, telephone number, and type of account, and identify the account balance.**

     e.     **For interests in a corporation, partnership, or trust, include the name and address of each such corporation, partnership, or trust, and include the names, addresses and telephone numbers of all other shareholders, partners, settlors, trust protectors, trustees, and beneficiaries.**

     f.     **For safety deposit boxes titled in your name or to which you have access, include the name and address of the bank or other financial institution at which the safety deposit box is maintained, the name and address of the person under whose name the box is rented, and list and describe in detail the contents of the box as of the date that these interrogatories were served.**

RESPONSE:  The Introduction, and each of the Objections and Comments, apply to Interrogatory 2 and are incorporated by reference herein.  In particular, Interrogatory 2 is premature.

**3. Identify in U.S. dollars the amount and fair market value as of December 19, 2020, each of your liabilities, including loans, loans on insurance, accounts payable, notes payable, mortgages, accrued real estate taxes, judgments, reserves, and if you do not own the property where you currently reside, the amount of your rent and frequency with which your rent must be paid.**

RESPONSE: The Introduction, and each of the Objections and Comments apply to Interrogatory 3 and are incorporated by reference herein.  In particular, Interrogatory 3 is premature.

**4. Identify any interest that you have had in any real property since December 19, 2020, including the property's address, type of property (*e.g.*, house, condominium, etc.), cost of the property at the time purchased, present market value of the property, any encumbrances against the property and the balance, if any, of the encumbrance (*e.g.*, mortgage, etc.), how you titled the property upon its purchase or acquisition, how the property is currently titled, and, if your interest was transferred to another person or entity, when the transfer was made, to whom the property was transferred, the consideration paid to you for such property, and by whom the consideration was paid.**

RESPONSE: The Introduction, and each of the Objections and Comments, apply to Interrogatory 4 and are incorporated by reference herein. In particular, Interrogatory 4 is premature.

**5. For each phone number or digital platform with which you have had an account, had access to, or used to communicate (including by sending or receiving digital messages or audio) at any time between January 1, 2020, and the present, identify (a) your account name, handle, profile, username, email address, or phone number; (b) the activation and, if applicable, termination dates of the account; (c) the account name, handle, profile, or username of any account that you followed, monitored, or received communications from and that belonged to, were affiliated with, or were specifically dedicated to providing information from or related to, Donald Trump, his political campaign, or his political campaign organizations, including Defendants Trump for President and Make America Great Again PAC; and (d) the communications services provider associated with each phone number.**

RESPONSE: The Introduction, and each of the Objections and Comments, apply to this Interrogatory and are deemed incorporated by reference as if fully set forth herein.

Tarrio and Biggs no longer have the information requested by Interrogatory 5. However, information sought by Interrogatory 5 can be derived in substantial part from ESI and documents now in plaintiffs' possession or can obtain in the future. ESI or other materials reflecting or related to communications concerning January 6 or the 2020 presidential election can be derived only from cell phones, computers or other electronic digital devices Tarrio or Biggs owned and used prior to their arrests. Tarrio's electronic devices were seized by DOJ twice and have not been returned. After extraction from these devices, much of the data sought by the Request appeared in DOJ's USAfx file

exchange tool as discovery in the *USA v. Nordean* case (21-cr-175-TJK) but is protected from release by protective orders at ECF Nos. 83 and 103. Moreover, some of the information sought by this Interrogatory can be derived from the approximately 1,200 exhibits and items of evidence made accessible to plaintiffs by Judge Timothy Kelly's order in *Nordean* on October 11, 2023.

Additionally, subpoenas for all the requested information were issued and served upon third-party communications carriers, social media platforms and other providers by DOJ in the weeks immediately following January 6 and should be of public record.

NOTE: Tarrio and Biggs both used Parler, Telegraph and conventional SMS messaging. By 2019, Tarrio and Biggs had each been banned from Twitter, Instagram, YouTube and Facebook. Neither can recall "liking" anyone else's posts on a social media platform. Neither Tarrio or Biggs have ever had a formal or informal connection to Donald Trump or any of his political campaigns. However, Tarrio is an acquaintance of a Trump advisor, lawyer and fellow Floridian named Roger Stone. Tarrio was once active in Latinos for Trump, a Florida group with no connection to the official Trump election campaign.

 

Respectfully submitted,

COUNSEL FOR HENRY TARRIO
and JOSEPH RANDALL BIGGS, and as to
Responses and Objections

Dated: June 29, 2024

By: /s/ *John Daniel Hull*
JOHN DANIEL HULL
DC Bar No. 323006
California Bar No. 222862
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C.  20005
202-429-6520 o
619-895-8336  c
jdhull@hullmcguire.com

<u>Declaration of Henry Tarrio</u>

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the information contained in the foregoing Responses and Objections of Tarrio and Biggs to Plaintiffs' First Set of Interrogatories is true and correct.

Executed on _____, 2024.        By: _____
                                                    Henry Tarrio

<u>Declaration of Joseph Randall Biggs</u>

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the information contained in the foregoing Responses and Objections of Tarrio and Biggs to Plaintiffs' First Set of Interrogatories is true and correct.

Executed on _____, 2024.        By: _____
                                                    Joseph Randall Biggs

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 29, 2024, he served a true and correct copy of the foregoing Responses and Objections of Tarrio and Biggs to Plaintiffs' First Set of Interrogatories via email upon counsel for plaintiffs, counsel for defendants and *pro se* parties.

By: /s/ *John Daniel Hull*
JOHN DANIEL HULL
DC Bar No. 323006
California Bar No. 222862
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C.  20005
619-895-8336 c
202-429-6520 o
jdhull@hullmcguire.com