## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CONRAD SMITH**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | )     **Case No. 21-cv-02265 (APM)** |
| **DONALD J. TRUMP,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>ORDER</u>

Before the court is Plaintiffs' Motion for Partial Summary Judgment, ECF No. 306, which seeks entry of judgment on two elements of their claim under 42 U.S.C. § 1985(1) against five individual Defendants: Joseph Biggs, Kelly Meggs, Ethan Nordean, Zachary Rehl, and Henry "Enrique" Tarrio. ECF No. 306 [hereinafter Pls.' Mot.].[1] Each Defendant was convicted of violating 18 U.S.C. § 372 for joining a conspiracy to prevent Members of Congress or federal law enforcement officers from discharging their lawful duties by force, intimidation, or threat. Section 1985(1) is the civil analog to § 372 and thus their elements of proof overlap. *Compare* 18 U.S.C. § 372 *with* 42 U.S.C. 1985(1). Invoking the doctrine of offensive collateral estoppel, Plaintiffs contend that Defendants' § 372 convictions foreclose from them contesting in this case "that they entered into an unlawful conspiracy in violation of Section 1985(1)." Pls.' Mot at 18. They ask the court to "hold[] that Smith Plaintiffs have met the elements that each Smith

---

[1] Plaintiffs also initially included Defendant Dominic Pezzola in their motion, but later dropped him because the court already had entered default against him. Notice of Withdrawal, ECF No. 368. Furthermore, based on its separate suit against various January 6 actors, the District of Columbia had joined the Smith Plaintiffs' motion, but on the eve of oral argument announced its intent to dismiss its case against all defendants. *See Dist. of Columbia v. Proud Boys Int'l., LLC*, 21-cv-3267 (APM), Request for Voluntary Dismissal, ECF No. 367. The court therefore does not reach the District's portion of the motion.

Convicted Defendant (i) agreed to participate in a common scheme between two or more individuals to (ii) commit an unlawful act, or to commit a lawful act in an unlawful manner, as required by 42 U.S.C. § 1985(1)."  Proposed Order, ECF No. 306-44, at 1–2.  They further ask the court find that Defendants are "collaterally estopped from contesting that they entered into a conspiracy between at least two people to prevent, by force, intimidation, or threat, members of Congress and/or federal law enforcement from discharging a duty . . ."  *Id.* at 2.

It is settled that "issues determined in connection with a criminal conviction may be taken as preclusively established for the purposes of later civil cases."  *Otherson v. Dep't of Just., I.N.S.*, 711 F.2d 267, 271 (D.C. Cir. 1983) (citations omitted).  Such estoppel effect extends, however, "only to questions 'distinctly put in issue and directly determined' in the criminal prosecution."  *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951) (quoting *Frank v. Mangum*, 237 U.S. 309, 334 (1915)).  "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment."  *Id.*

Putting these principles into practice is difficult, especially when the underlying conviction is one for conspiracy.  "A general verdict of the jury . . . without special findings does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy."  *Id.*  "And since all of the acts charged need not be proved for a conviction . . . such a verdict does not establish that defendants used all of the means charged or any particular one."  *Id.* (citation omitted).  Therefore, a court must determine what was actually decided by a criminal judgment based "upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts."  *Id.* (citations omitted).

2

Plaintiffs' assertion of collateral estoppel turns on the claimed factual overlap between their § 372 convictions and the § 1985(1) conspiracy alleged here. According to Plaintiffs, the two conspiracies are "the same." Pls.' Mot. at 16 (asserting that Defendants' criminal "conspiratorial conduct" is "the same conspiracy alleged in this case"). The court disagrees. The § 1985(1) conspiracy that Plaintiffs allege is far *broader* than the § 372 conspiracies for which Defendants were convicted.

In their criminal cases, Defendants Biggs, Nordean, Rehl, and Tarrio were accused of conspiring only among themselves and other members of the Proud Boys. *See United States v. Tarrio*, 21-cr-175 (TJK), Third Superseding Indictment, ECF No. 380, ¶ 114. One object of their § 372 conspiracy was to prevent Members of Congress and federal law enforcement from carrying out their duties. *Id.* ¶ 114. The government alleged dozens of acts by those Defendants and others to support the charge. *Id.* ¶¶ 1–24, 29–108, 113. The same can be said about Defendant Meggs. The government charged him with conspiring only with other members of the Oath Keepers, and the charged conspiracy was directed towards Members of Congress (but not law enforcement officers). *See United States v. Rhodes*, 22-cr-15 (APM), Superseding Indictment, ECF No. 167, ¶ 140. There, too, the government charged dozens of predicate acts of the alleged conspiracy. *Id.* ¶¶ 1–13, 18–134, 137.

Here, in sharp contrast, Plaintiffs do not allege Defendants' participation in a *single* conspiracy with their respective groups. Rather, each Defendant purportedly was a member of *five* conspiracies. Am. Compl., ECF No. 89, ¶ 170. All Defendants are accused of joining an overarching scheme that involves all named defendants in this case, including President Trump and his campaign entities, regardless of criminal charge or conviction. *Id.* ¶ 170.a. Then there are various alleged sub-conspiracies. Plaintiffs claim that Defendants Biggs, Nordean, Rehl, and

3

Tarrio—either collectively or a subset of them—formed "agreements" with various other actors, including: (1) Stop the Steal and Ali Alexander, *id.* ¶ 170.c; (2) Roger Stone, *id.* ¶ 170.e; (3) the Oath Keepers, Thomas Caldwell, and Meggs, *id.* ¶ 170.f; and (4) other Proud Boys, *id.* ¶ 170.g. Defendant Meggs is alleged to be a participant in three of these sub-agreements, *id.* ¶ 170.c, .e, and .f, but also one with just other Oath Keepers, *id.* ¶ 170.h. No jury passed on Defendants' participation in the alleged overarching conspiracy or any sub-conspiracy other than the one involving only their own group.

Plaintiffs' counsel could not say, at oral argument, which of these many configurations of conspiracy Plaintiffs would try to prove at trial to establish liability. Hr'g Tr., March 3, 2025, ECF No. 369, at 19:22-24 (Plaintiffs' counsel stating "we don't need to prove each one of [the] conspiracies" alleged in paragraph 170 of the complaint). But knowing the scope of the conspiracy Plaintiffs intend to establish is critical. A defendant can be found liable only for those injuries caused by the conspiracy he joined. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 181 (D.D.C. 2018) ("[F]or a Court to impose liability [for a civil conspiracy] the underlying unlawful act must cause some injury.") (citing 42 U.S.C. § 1985(3)). Therefore, entering judgment that Defendants "participate[d] in a common scheme between two or more individuals," as Plaintiffs request, begs two important questions: with whom and what was the object? Without firm answers to those questions, entering judgment in the open-ended manner sought by Plaintiffs leaves Defendants exposed to the possibility of being held liable for a conspiracy that they did not join or one that did not cause injury. Given the uncertainty of what theory of conspiracy Plaintiffs intend to present to the jury, the court is not prepared to enter *judgment* as to two elements of Plaintiffs' § 1985(1) claim: that (1) Defendants entered into an alleged agreement (2) whose object is prohibited by the statute.

The most the court can say, at this stage, is that Defendants were convicted of a conspiracy involving two or more of their fellow group members and one object of their conspiracy was to prevent Members of Congress or federal law enforcement officers from performing their duties. Depending on what conspiracy Plaintiffs put to the jury, it may be appropriate to present the fact of Defendants' convictions as proof that the Defendant entered *some* alleged conspiracy whose object was prohibited by § 1985(1). *See Emich Motors*, 340 U.S. at 570–72, 570 n.7 (holding that it would be proper to "offer[] in evidence" a criminal judgment of conspiracy to violate the Sherman Act and that coercion was used to effectuate the conspiracy, with an accompanying "expla[nation of] the scope and effect of the former judgment on the case at trial").  The juries' general verdicts are not likely to provide preclusive force, however, as to any particular fact of the conspiracy.  *Cf. Columbia Plaza Corp. v. Security Nat. Bank*, 676 F.2d 780, 789–90 (D.C. Cir. 1982) (holding that the trial court properly excluded the defendants' indictments and convictions for conspiracy under Federal Rule of Evidence 803(22) "[s]ince general verdicts were rendered in the criminal cases, [and] these verdicts did not themselves provide a basis for concluding that the alleged overt acts involving [the plaintiff]—which were among a great number of alleged overt acts not involving the project—were proved in those cases").  Therefore, Plaintiffs will have to flesh out the precise contours of any agreement presented to the jury (including its participants) with other admissible proof.

For the reasons stated, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 306, is denied.

Dated:  March 5, 2025

Amit P. Mehta
United States District Court Judge