## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CONRAD SMITH,**

             Plaintiff,

       v.

**DONALD J. TRUMP,** *et al.*

           Defendants.

Re:    **DOMINIC PEZZOLA,**
               individual Defendant

Civil Cause of Action

1:21-CV-02265-APM

Assigned to the Honorable
Judge Amit Mehta

## DEFENDANT DOMINIC PEZZOLA'S
## ANSWER TO THE AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES

Comes now the Defendant DOMINIC PEZZOLA ("PEZZOLA"), and hereby Answers

the Complaint of the Plaintiff, along with his Affirmative Defenses.

## INTRODUCTION, GENERAL ANSWERS AND RESPONSES

DOMINIC PEZZOLA joined the Proud Boys in December 2020.  He met some Proud

Boys at the December 12, 2020, protests in Washington, D.C.  Over the following couple of

weeks, he kept in touch with those he met and eventually formally joined the peaceful men's

group.  As a result, PEZZOLA knows very little about the Proud Boys, their history,

personalities, or activities.  PEZZOLA did learn and see that the Proud Boys never initiate any

violence but they will defend themselves and will not tolerate being treated as punching bags.

Also, he learned and saw that the Proud Boys as chivalrous gentlemen defend others from the

violence from the Left. The Proud Boys will not sit back and allow civilians to suffer violence from political street thugs. I learned that the vast majority of Proud Boys do not get involved in any political activities but only gather together as men from time to time, drink, bond, fellowship, and usually play or watch sports on television. These came to be called the "party boys." A very few of the Proud Boys became concerned about protecting people exercising their political and free speech rights from political violence from ANTIFA, anarchists, and Leftists.

At the criminal trial, I openly acknowledged that as someone new to the Proud Boys and unfamiliar with their traditions, cultures, and way of doing things, I did not exhibit those goals but picked up a plastic riot shield dropped and abandoned by a police officer and used it later to break the Left-hand side of a window. The Architect of the Capitol testified that it cost $750 to repair the window.

However, this lawsuit is one in a series of nearly identical lawsuits which are merely the impeachment proceeding in late January and February 2021, recycled into legal formatting. The confusion and unfounded hyperbole and lack of structure of these lawsuits flows from them being rewrites of the impeachment managers' speeches. As soon as each lawsuit faded from the news headlines, another one popped up making the same unsubstantiated claims, like Hollywood sequels.

The Amended Complaint is structured that there was a giant conspiracy which strikes PEZZOLA as a conspiracy theory like a gossamer web of innuendo and speculation, and therefore police officers should be compensated for injuries and the District should be compensated for as-yet unidentified "other" damages.

Defendant PEZZOLA, by counsel, respectfully demands that the allegations be restated in a Second Amended Complaint without run-on compound paragraphs and sentences that assert

2

multiple different, often unrelated, facts within the same sentence, so that it can be more easily understood, analyzed, responded to, discussed, and decided. In order to try to admit or deny parts of long compound paragraphs, PEZZOLA may note that the paragraph is compound, but continues his objection on a blanket level whether restated or not.

 With some exceptions of a few bad actors who created much of the violence, far too many (yet not a large number out of the total) of members of the U.S. Capitol Police and Metropolitan Police Department were injured to varying extents during violent confrontations with a few – very few – of the estimated 500,000 to 1 million people who came to the District of Columbia on January 6, 2021. These officers deserve to be compensated, to the extent the legal system is capable of making them whole, for the injuries they sustained.

 Presumably, all personnel including sworn line officers have been fully compensated by insurance and/or their employer for any medical expenses. The job of a law enforcement officer is inherently dangerous and injuries are not unexpected, although PEZZOLA maintains that health care and payment of consequences should be generous and fully complete for such occupations.

 Unfortunately, however, all participants in the furor over January 6, 2021, have studiously avoided specifics and have hidden behind vague and boilerplate mentions of injuries. Therefore, no one knows outside of the USCP and MPD what injuries we are talking about. In and out of courts those attacking Trump patriots offer nothing but confusing and vague hints, not factual allegations. Presumably just given the nature of life and random occurrences such as in a large crowd those injuries would range from minor to serious. But we do not know.

 If injuries or experiences were at the serious end of the spectrum, associated emotional damages, loss of normal activities, etc., are possible and would justify compensation. But given

the nature of the occupation some conflicts are anticipated to sometimes occur. Therefore, emotional damages and the like within the scope of ordinary law enforcement conflicts, especially if injuries were at the less serious end of the spectrum, would be unlikely. They would be an ordinary part of the job, meaning that they would not be disturbing or unusual. As an example, if a civilian had to slog 20 miles through a muddy swamp after their car broke down they would be exhausted, fearful, and traumatized, whereas an infantry soldier doing the same thing would take it as just another day on the job. Therefore, we need a lot more details to determine what medical costs and non-economic damages actually occurred and are legally compensable. Although judges have bristled at any suggestion that the failures of Congressional leadership to prepare, train, and equip the USCP and the shocking behavior of a few MPD officers acting like thugs, analysis of causation of damages, categorization of non-economic damages, and the like cannot be separated from all sources of responsibility for injuries.

Many issues track back to the cavalier and uncaring attitude of Congressional leadership in failing to train and equip USCP officers and Washington, D.C. leadership in allowing a few MPD officers to act like MS-13 gang members, throwing a protestor 25 feet to the ground off the side of an exterior stairway, kicking an elderly woman down the stairs three times in rapid succession, crushing Roseanne Boyland to death by pushing other protestors on top of her Derek Chauvin style, illegally firing rubber bullets at the heads of protestors, unprovoked and for no valid reason, etc. No doubt almost all USCP officers acted with integrity and professionalism, and most MPD officers did, and as far as PEZZOLA knows these Plaintiffs here acted properly and with high quality conduct and performance. Just as the vast majority of pro-Trump demonstrators acted peacefully and properly so the vast majority of law enforcement officers acted properly and did not share in the misconduct of a few bad apples.

However, reasoning from the structure and functioning of government and inter-agency cooperation, it is obvious that the U.S. Government has already reimbursed the Plaintiffs directly or through insurance, or a combination of both. This is a "hard cold math" feature of the law sometimes. Feelings may be strong and there may be indication and yet when a plaintiff has been fully paid the matter is at an end. Under human nature, one might not want it to be over. But the law can be cold and rough nevertheless.

PEZZOLA and others point out that – as proven on body-cam videos, smart phone videos of individuals (so called "civilian video") and security cameras of the Capitol grounds, outside of the U.S. Capitol building and inside of the Capitol building, most if not all of the injuries sustained by law enforcement officers on Capitol Hill on January 6, 2021, were caused by the unprovoked and unnecessary violence against peaceful demonstrators by which just a few officers created a defensive riot, thereby harming everyone both these Plaintiffs other officers and the demonstrators.[1]

While most USCP officers and Washington, D.C. Metropolitan Police Department behaved properly, a few USCP officers are proven on videos[2] to have initiated and escalated violence and a much larger proportion of MPD officers acted like street thugs and committed unprovoked violence against as-yet-then-peaceful demonstrators.

---

[1]     Audio recordings of police radio traffic proves the panic and hysteria of law enforcement officers, in which a few bad apples among the officers whipped the rest of the police officers into a frenzy of extreme violence. For example, the radio traffic screams in hysteria "SHOTS FIRED!" without identifying that it was a police officer Lt. Michael Byrd who shot Ashli Babbit. Traditionally, the code word "SHOTS FIRED!" means that police officers are being shot _at_ – not that officers are doing the shooting. Thus, hundreds of police officers were misinformed that officers were being shot at – which was untrue – and they responded accordingly. Call after call on the radio portrays the peaceful demonstration as Armaggedon, the end of the world, provoking police officers into over-reacting. Time and time again, leaders speaking on the radio describe events that had not yet happened at the time of the radio call, such as where people were. The radio traffic led ahead of actual events. Thus man officers were deceived as to the causes, nature, and progress of actual events in the otherwise peaceful demonstration.
[2]     While the USCP officers did not wear body-cam videos, the MPD officers did and MPD video often captures the misconduct and violence of a small proportion of the USCP officers as well as MPD officers.

Videos show that the crowds nearest the U.S. Capitol building could not retreat because of the crush of the ever-growing crowds from behind.  The handling of this situation violated clear and unmistakable requirements of D.C. law, in which three warnings to disperse are required and police must ensure that it is possible for people to disperse.   Neither requirements under D.C. law were met by the officers that day.

Much of the problem was also caused by the Congress, Mayor Muriel Bowser, and a very few errant police officers.  As a result, intervening independent causes of the officer's injuries by their fellow officers are unmistakably and clearly proven by the video recordings of events that day.

However, these Plaintiffs are not suing those who actually injured them, except as unknown John Does 1-10.  Assuming that the Plaintiffs and other officers can get access through the U.S. Capitol Police to the identifications of those actually responsible from the FBI's massive review of video recordings, those who actually assaulted officers for injuries should be sued.

Also, because the cell phone network and cell towers were overloaded by the sheer quantity of the traffic from the large crowds,[3] it should be noted that delivery of text messages can easily be delayed.  Text messages may not transit and arrive in real time.  As a result, the time stamps on text messages are not necessarily accurate.

Furthermore, with every allegation denied, the Defendant intends any denial as including a demand that the allegation be proven by competent evidence.  Rather than repeating this demand each time, Defendant applies this to all of his answers on a blanket basis and

---

[3]    Sascha Segan, Reporter, PCMAG, wrote an analysis, Why Cell Networks Cut Out at the US Capitol Riot, January 7, 2021, explaining why demonstrators at the U.S. Capitol could neither communicate with each other nor access data usage to know what Donald Trump was saying from the Ellipse or the White House, https://www.pcmag.com/opinions/why-cell-networks-cut-out-at-the-us-capitol-riot .

incorporates it by reference as if fully set forth in the answer to each such paragraph.

Furthermore, throughout the Complaint's compound paragraphs, the Amended Complaint alleges actions or statements by all of the Defendants but also an unbounded population of a million other people. Clearly it would be impossible for Defendant PEZZOLA to know everything that other people did or said or speak for all of the people swept up in the Complaint's over-broad implications.

Therefore, PEZZOLA can only admit or deny with regard to himself or maybe those about whom he has direct personal knowledge.

PEZZOLA, by counsel, objects that being aware of things only through news reports is no different from any other consumer of news as being something he could or should admit or deny. He may point that out for clarity but asserts the objection as a blanket interpretation for all allegations. Unless PEZZOLA is able to clarify events from personal knowledge, PEZZOLA will not include or consider news reporting, rumors, innuendo, or the like but denies any such content as untrue unless independently proven.

Also, where an allegation rests on misinterpreting, twisting, misreading, or mangling a fact or statement, including false mischaracterizations, PEZZOLA will outright deny the allegation as untrue. Even where someone else may have done or said something somewhat similar to what is alleged, if the allegation is a twisting or misrepresentation of what actually was done or said, PEZZOLA will deny the allegation.

Where PEZZOLA DENIES an allegation, particularly a compound paragraph, this is intended to and should be understood to deny any implied allegations or implications or inferences that might be drawn from the explicit factual allegations. Defendant also denies that the factual allegation if taken as true necessarily has the meaning assigned to it by the Plaintiffs

as having any relevance to the case.

Where PEZZOLA DENIES any allegation or factual detail this includes DENYING any allegation or inference made or which might be interpreted or inferred from or gleaned from the paragraph.

Furthermore, PEZZOLA does not necessarily agree that any of the indictments can be "incorporated into the Amended Complaint by reference." PEZZOLA denies that a conviction based on an indictment can be taken as proving anything alleged in the indictment or the First Amendment Complaint here especially where a jury in a criminal trial could have found guilt based on alternate possible fact patterns and/or there was no attempt made to determine with specificity what facts the jury found to be true.

## ANSWERS TO INDIVIDUAL PARAGRAPHS OF THE COMPLAINT

***Answering Complaint Par. 1)*** The paragraph is compound. As to the first sentence, PEZZOLA accepts the allegations as to who is suing whom. As to the second sentence, PEZZOLA has no way of knowing the Plaintiffs' times of service. However, the observable conduct and video recordings of a few of the Plaintiffs' fellow officers indicates that their actions and goals were not "to protect Congress" but to initiate a violent riot for no legitimate reason. Therefore, the Defendant cannot assume anything about these Plaintiffs and expects them to state their case. PEZZOLA further notes that Congress and the U.S. Capitol building were designed for the people to meet with and watch their elected representatives and having hundreds or over a thousand visitors in the U.S. Capitol building each business day does not interfere with Congress "carrying out its constitutional responsibilities safely and openly." Congress boasts that it has 3.5 million visitors a year from around the world inside the U.S.

Capitol building,[4] yet it functions just fine with all of the visitors. As to the third sentence, PEZZOLA DENIES the compound collection of unrelated allegations as categorically untrue. A few of the Plaintiffs fellow officers created the danger by violently attacking peaceful crowds. Furthermore, PEZZOLA did not "provoke, aid, or join in" any of the events described.[5] As to the allegation of racial slurs, counsel and Plaintiffs have violated Federal Rules of Civil Procedure Rule 11 in making knowingly false allegations purely for the purpose of accessing funding for the lawsuit based on falsehoods. As to the fourth sentence, PEZZOLA denies each and every allegation of the many and unrelated allegations. Among other falsehoods, the videos show that the USCP tear-gassed itself by firing huge tear gas cannons into the wind, causing the tear gas to drift back on to their own position, while the officers comment on video recordings that the tear gas is blowing back on themselves. As to the fifth paragraph, PEZZOLA denies that the Plaintiffs have suffered injuries *because they have painstakingly avoided identifying any*, denies that any injuries do or could possibly persist, and denies that any Defendant of which PEZZOLA is aware caused any injuries.

  ***Answering Complaint Par. 2)***    PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the compound paragraph. The attack on the United States Capitol on January 6, 2021, was caused by the unprovoked violence of a small number of USCP and MPD officers as bad actors who somehow felt an unexplained urgency to clear the U.S. Capitol building even though on any given day it contains hundreds of visitors and the Grounds. Officers obviously though that if they unleashed

---

[4]  Hantman testimony, U.S. Congress, House Committee on Appropriations, Subcommittee on Legislative, Legislative Branch Appropriations for 2004, hearings, part 1, 108th Cong., 1st sess., July 15, 2003 (Washington: GPO, 2003), p. 1464. 3.5 million visitors per year is roughly 13,461 visitors on average per business day (dividing by 260 business days per year).

[5]  Pezzola did get carried away and broke a window, but this was in response to the crowd, not provoking it.

extreme violence against the peaceful demonstrators that the crowd would leave.  However, the crowd could not leave because more and more were arriving around the outside the whole time. Therefore, no amount of beatings, violence, and mis-use of chemicals could produce any result other than intentionally causing unnecessary injury to the demonstrators.  They had no pathway to disperse, as shown on video recordings including the building's own security cameras. Officers could have simply waited for reinforcements to advise demonstrators on the outside of the crowd that they had to leave and arresting from the outside of the crowd if necessary.  As to the second sentence, counsel and Plaintiffs have violated Federal Rules of Civil Procedure Rule 11 in making knowingly false allegations purely for the purpose of creating false news headlines. The Vice President of the Oath Keepers, also Black by the way, was an informant to the FBI for many months before the November 2020 Presidential election and yet he had nothing to report about any conspiracy among the Oath Keepers or with anyone else and there was no evidence of any conspiracy involving Donald Trump.  While neither PEZZOLA nor his counsel speak for Trump or other Defendants, the Amended Complaint attempts to fabricate a bridge or lynchpin involving Donald Trump so that it is meant to affect PEZZOLA as well. As to the third sentence, first clause, every American citizen has the right to believe what he or she wishes even if others do not agree and making claims of election fraud is protected by the guarantees of the First Amendment to the U.S. Constitution.  The fact that others disagreed does nothing to affect this constitutional right.  As to the third sentence, second clause, there was no use of force, intimidation, or threats nor the encouragement of the same other than by ANTIFA[6] and other anarchist or Left-wing street gangs.  As to the third sentence, third clause, no pro-Trump

---

[6]     As with most Left-wing organizations, projects, or efforts, who persistently lie in the pursuit of their Leftist agenda, ANTIFA is an intentional deception.  ANTIFA is literally an extension of Mussolini's fascist "Black shirts" right down to the uniforms.  They are in every respect fascists yet lie and call themselves anti-fascists.

demonstrator incited any violence or engaged in any violence against any members of Congress or law enforcement officers, but a few bad apple officers initiated unprovoked violence against the crowds.  As to the fourth sentence, PEZZOLA denies each and every allegation including for the reasons stated.  As to the fifth sentence, PEZZOLA denies each and every allegation and notes that the allegations violate FRCP Rule 11 in that there is not a shred of evidence that any of the Defendants "planned, aided, or actively participated in any attack."  As to the sixth sentence, PEZZOLA denies the allegations.

*Answering Complaint Par. 3)*          PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph and demands sanctions pursuant to FRCP Rule 11 given the utter lack of any foundation for them.

*Answering Complaint Par. 4)*          PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph and demands sanctions pursuant to FRCP Rule 11 given the utter lack of any foundation for them. The allegations are an absurd perversion of the judicial system.  Not a single part of the paragraph has any remote relationship with the real world.

*Answering Complaint Par. 5)*          The paragraph is actually redundant of other allegations and for the same reasons identified already PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph.  Furthermore, the allegation against the PROUD BOYS violate FRCP Rule 11 and PEZZOLA demands sanctions.  The propensity of the PROUD BOYS to defend themselves against unprovoked violence initiated by ANTIFA, anarchists, and left-wing street thugs is self defense.  All Defendants were entitled to the legal right of self defense.   As to the final sentence, the allegations are vague and impossible to respond to concerning "furthering their efforts and

carrying out their plans, including traditional and social media, speeches, and interviews." The Plaintiffs appear to be accusing PEZZOLA and other Defendants of exercising their right to free speech guaranteed by the First Amendment to the U.S. Constitution.

 ***Answering Complaint Par. 6)***  PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph. PEZZOLA further notes the obsession of Leftists with money raised for planned peaceful visits to the nation's capital city[7] because Leftists receive and waste massive amounts of money whereas patriots require only a tank of gas and money for fast food. PEZZOLA further notes that "joining in TRUMP's January 6 rally" is a constitutional right guaranteed by the First Amendment of the U.S. Constitution in contrast to "ultimately, to join in the Capitol Attack" which never happened. Specifically evidence of constitutionally protected political activity cannot be confused with what never happened being an attack on the U.S. Capitol. There was of course unprovoked violence against the crowds.

 ***Answering Complaint Par. 7)***  As to the first sentence of the compound paragraph, the Plaintiffs accuse the DEFENDANT and other Defendants of exercising their constitutional rights guaranteed by the First Amendment to the U.S. Constitution, specifically "fabricating and spreading the lie that the Presidential election was stolen from TRUMP by means of election fraud; promoting and disseminating countless false claims of election fraud." The DEFENDANT is constitutionally guaranteed the right to make such claims, even if other people disagree or make contrary claims. As to the balance of the paragraph, none of those things ever occurred and PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph.

---

[7] Capital of course being the city while Capitol is the building.

*Answering Complaint Par. 8)*    PEZZOLA DENIES each and every allegation or factual detail made or which might be inferred, interpreted from or gleaned from the paragraph. Much of the paragraph again becomes redundant and PEZZOLA denies the allegations including for the reasons already stated

*Answering Complaint Par. 9)*    PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph. PEZZOLA has no way of knowing what President Trump did or did not do, but denies that the allegations are meaningful or rational.  The Legislative Branch is a different Branch of government and is not dependent upon the President for its security.  If it were, it would undermine its independence and our system of government.  It has already been proven conclusively that Donald Trump ordered the arrangement of 10,000 to 20,000 National Guard troops to keep the peace in Washington, D.C. on January 6, 2021, which was blocked by the leaders of Congress, the leaders of Washington, D.C. and members of his own Administration like Katrina Pierson as documented in emails obtained by Citizens for Responsibility and Ethics in Washington (CREW).  Therefore, the implication that Trump should have or could have done anything more is logically without merit, regardless of factually what Trump did or did not do. The allegations also violate FCRP Rule 11 and PEZZOLA asks for sanctions in that there were no white supremacists or hate groups on Capitol Hill on January 6, 2021, or none that anyone would be aware of or notice, and that the terms are undefined and undefinable in any event.

*Answering Complaint Par. 10)*    PEZZOLA DENIES each and every allegation or factual detail made or which might be interpreted from or gleaned from the paragraph. Furthermore, Defendant specifically denies that any significant damage was done to the U.S. Capitol, but on the contrary it is extraordinary how painstakingly careful and respectful

demonstrators were in not damaging almost anything. A few large windows were broken,

allowing doors to be opened from inside undamaged. The East Rotunda doors were damaged,

but only because the Plaintiffs and other USCP officers did not close the massive 10 ton, 17 feet

high, solid bronze Columbus Doors which fit right in front of the East Rotunda Doors.



The Architect of the Capitol testified that the damage to a very large window, left-side pane that

I broke was all-inclusive only $750, including labor and overhead and administration to replace.

However, the Architect of the Capitol and DOJ has ferociously refused to itemize the damage to

the Capitol, because it was very slight. Trash removal is obviously the vast majority of any

costs, but largely because demonstrators were pushed out before they could take their items with

them. Some allegations violate FRCP Rule 11 and should be sanctioned as there was no

evidence of any bias or racially motivated violence. Defendant denies that "Plaintiffs suffered significant physical, psychological, and emotional injuries as a result." in that the Plaintiffs have steadfastly avoided identifying any injuries and this is an incredible position for someone who has been actually injured to take. Maybe they were injured, but a person who has been injured would feel strongly about describing their injuries. PEZZOLA denies each and every allegation of fact or implications thereof, except that PEZZOLA agrees that the Government must never be allowed to get away with such a hoax as January 6 ever again.

**Answering Complaint Par. 11)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 12)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 13)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 14)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 15)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of herself.

**Answering Complaint Par. 16)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 17)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

**Answering Complaint Par. 18)**    The Paragraph is compound. Defendant accepts the allegations about the Plaintiff without personal knowledge the Plaintiff's description of himself.

***Answering Complaint Par. 19)***      The Paragraph is compound.  The allegations of the first sentence appear to be correct from public reporting.  As to the second sentence, PEZZOLA DENIES that Donald Trump's actions were taken solely in his personal capacity because it is the duty of any President to "see to it that the laws be faithfully executed."  However, this obviously raises the problem of what the paragraph's allegation means concerning "TRUMP's actions." Again, PEZZOLA and his counsel do not have standing to speak for Trump, but it appears that the Plaintiffs' intend to use their allegations about Trump to smear PEZZOLA and other Defendants.  The Complaint – stemming from the January / February 2021 impeachment presentation – offers a fantastical tale of "TRUMP's actions" which have no relationship to Trump's actions.  Therefore, talking about this paragraph requires separating the conspiracy theory fomented by the Plaintiffs here and in companion lawsuits from what Trump is actually proven to have done.

***Answering Complaint Par. 20)***      The Paragraph is compound.  The allegations of the first sentence appear to be correct from public reporting but PEZZOLA has no first-hand knowledge of these details.

***Answering Complaint Par. 21)***      The Paragraph is compound.  The allegations of the first sentence appear to be correct from public reporting but PEZZOLA has no first-hand knowledge of these details.

***Answering Complaint Par. 22)***      PEZZOLA has no knowledge of the allegations of the paragraph.  Again, reading things in the news the same as the general public is not treated here as knowledge, because the Plaintiffs would still have to prove the news reports.

***Answering Complaint Par. 23)***      PEZZOLA repeats his response to Paragraph 22.

***Answering Complaint Par. 24)***      EZZOLA has no knowledge of the allegations of

the paragraph.

*Answering Complaint Par. 25)*        EZZOLA has no knowledge of the allegations of the paragraph.

*Answering Complaint Par. 26)*        The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.[8]  Through the course of criminal trials that unfolded, Defendant became aware that there was no evidence whatsoever of the Proud Boys planning, conspiring to, or carrying out any attack on the U.S. Capitol.  Like the Oath Keepers, no Proud Boys member interacted negatively with any police officer nor committed any violence.  No evidence was offered in the trials of any act of violence.

*Answering Complaint Par. 27)*        The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.[9]  However, from everything PEZZOLA has learned indirectly the PROUD BOYS espouse self-defense against left-wing street thugs attempting to silence conservative voices.  The By laws of the Proud Boys produced in criminal trials prohibit white supremacy, neo-Nazi groups, and other similar beliefs or actions and list such agendas as grounds for termination from the PROUD BOYS.

*Answering Complaint Par. 28)*        The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.

*Answering Complaint Par. 29)*        The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph, again except for news reports generally available to everyone, without first-hand knowledge.

*Answering Complaint Par. 30)*        The Paragraph is compound.  Defendant has no

---

[8]        Note again that RHODES is not considering simply reading the same news reports available to everyone else generally counts as knowledge for these purposes.

[9]        Note again that RHODES is not considering simply reading the same news reports available to everyone else generally counts as knowledge for these purposes.

knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 31)***    The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 32)***    The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 33)***    The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 34)***    The Paragraph is compound.  Defendant has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 35)***    The paragraph is compound.  EZZOLA has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 36)***    The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 37)***    The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 38)***    The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 39)***    The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

     ***Answering Complaint Par. 40)***    The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph, except that it is a constitutional  right guaranteed by the First Amendment to the U.S. Constitution to "spread TRUMP's false claims that the 2020 election was stolen" whether or not others may think he should have or not, and even if he

believed it to be false or doubted it. The law is based on the biological reality that humans are capable of thinking for themselves and are not unthinking animals robotically responding to statements and therefore the courts have held that, yes, one can shout fire in a crowded theater, particularly if they believe it or suspect that it requires investigation.

  ***Answering Complaint Par. 41)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 42)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 43)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 44)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 45)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 46)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations of the paragraph.

  ***Answering Complaint Par. 47)***  The paragraph is a conclusion of law as to alleged subject matter jurisdiction.  PEZZOLA denies that there are any federal claims stated in the case.

  ***Answering Complaint Par. 48)***  The paragraph is a conclusion of law as to proper venue.  Defendant contends that the primary unsubstantiated  claims of the Plaintiffs did not happen, but if they were true, in the District of Columbia, they are allegations of conspiracy prior to January 6, 2021, in the Defendants' home states, which in PEZZOLA'S  case was New York.

  ***Answering Complaint Par. 49)***  The paragraph is a conclusion of law as to *in*

*personam* jurisdiction of the Federal Court in the District of Columbia, which involves "State" law causes of action. PEZZOLA agrees that the paragraph would state the correct rule of law if the Defendants had actually caused any injuries within the District of Columbia, but they did not.

**Answering Complaint Par. 50)**    The first sentence alleges that "Throughout the 2020 campaign season, TRUMP fabricated and disseminated a false narrative that the 2020 U.S. Presidential election was 'rigged,' and that the only way he could lose was through massive voter fraud." However, this / these "narratives" (statements) are constitutional rights guaranteed under the First Amendment to the U.S. Constitution. Regardless of anyone else's opinion and regardless of whether anyone told Trump or others that they held a different view and regardless of the truth or falsity of the messages, these statements are the exercise of a constitutional right such that the Court has no power to find fault in whole or in part from the alleged statements. The balance of the paragraph merely alleges how Trump disseminated his constitutionally-protected beliefs.

**Answering Complaint Par. 51)**    Digging themselves in deeper and deeper, the Plaintiffs in this and all other companion lawsuits rely more and more heavily on finding fault in constitutionally protected speech, alleging: "Among other false claims of fraud, TRUMP made and disseminated meritless claims attacking 'mail-in voting,' including by posting the following tweets on May 28, 2020, at 9:00 p.m. and June 22, 2020, at 7:16 a.m., respectively:" These are even more deep and profound as political (operations of government not party) speech criticizing the conduct of government operations. Furthermore, these clearly implicate the President's constitutional duty to "see to it that the laws be faithfully executed."

**Answering Complaint Par. 52)**    Likewise, this paragraph repeats criticism of Trump's constitutionally-protected speech. " In another social media post, TRUMP wrote, 'Mail-

In Ballot fraud found in many elections. People are just now seeing how bad, dishonest and slow it is. . . . Just a formula for RIGGING an Election. . . . Rigged Election!!! 20% fraudulent ballots?'"  This again implicates the President's duty to see to it that the laws be faithfully executed, not that fraud be experienced in a federal election.

**_Answering Complaint Par. 53)_**          The paragraph further illustrates the constitutional violation of the Amended Complaint with:  "Mail-in voting and absentee voting were important means for voters, including and especially voters of color, to safely and effectively access the polls, particularly because of the ongoing global COVID-19 pandemic. Other Defendants parroted TRUMP's false claims and further disseminated them through social media and other platforms."   The fact that these Plaintiffs, overwhelmingly their non-profit organization (agenda-driven) counsel and others in companion lawsuits and public activism disagree with TRUMP and the Defendants merely illustrates more clearly, deeply, and firmly, that the constitutional right to free speech is being attacked.  Any debate in which a proponent is arguing "In fact, the opposite is true" highlights a difference of opinion on political (operation of government) issues.

**_Answering Complaint Par. 54)_**          As to the first sentence of this paragraph, the Plaintiffs here and in nearly identical companion lawsuits further attacks the constitutionally-protected right of free speech, alleging "TRUMP and his co-Defendants made these and other false claims to delegitimize the election and stoke anger among his followers, and to prevent anyone else from taking office in the event TRUMP lost the election."  Even if the focus of this allegation were the Defendants' motivations rather than what they said, legally invading free speech would require meeting the stringent test of _Brandenburg v. Ohio_, 395 U.S. 444, 448 (1969); _NAACP v. Claiborne Hardware Co._, 458 U.S. 886 (1982); _N.A.A.C.P. v. Button_, 371 U.S. 415, 83 S. Ct. 328 (1963).  Even with a bad faith motive, the constitutional right of free

speech protects the statements in the context alleged.   As to the second sentence, it is false that

Trump said "For instance, TRUMP publicly refused to agree that he would acknowledge a Biden

and Harris electoral victory."   To anyone able to listen honestly, Trump's statements were very

clear that he could not concede the allegation *before* the election was even held and *before* it was

known if the outcome was reliable or not.   Journalists and Democrats repeatedly asked Trump

*before* election day if he would accept the outcome of the election.   That is a question impossible

to answer without knowing the actual facts of what might transpire.[10]   As to the last sentence,

these simply repeat the violation of the constitutional right of Free Speech.

  ***Answering Complaint Par. 55)***  The paragraph is compound, but is marbled with

violations of the First Amendment.   PEZZOLA categorically denies the existence of any  "plan

to employ force, intimidation, and threats on his behalf to keep him in office, should he lose the

election."   It is a known fact that mail-in ballots had corrupted the voting, but saying so is

protected under the Constitution.   The Plaintiffs like companion lawsuits and others have failed

to read the Insurrection Act.   The allegation violates Rule 11 of the FRCP for Plaintiffs' counsel

not bothering to read the statute they cite.   The Insurrection Act[11] calls up additional *manpower*

---

[10] Indeed, if Trump had answered "yes" before knowing exactly what would happen this would encourage and stimulate misconduct in the election by immunizing any action in the election and creating a blank check.

[11] "**The Insurrection Act:**   Soon after Congress was first assembled under the Constitution, it authorized the President to call out the militia, initially to protect the frontier against "hostile incursions of the Indians," and subsequently in cases of invasion, insurrection, or obstruction of the laws. Insurrections against state governments could be put down under the act only if the state legislature applied for such assistance. These provisions were quickly extended to allow for the employment of the Armed Forces in domestic circumstances, where the law already provided the militia could be employed. After the Civil War, Congress added a new provision for the use of federal military forces to protect civil rights. The Insurrection Act has been invoked on dozens of occasions through U.S. history, although its use since the end of the 1960s civil rights disturbances has become exceedingly rare. Its last invocation appears to have occurred in 1992, when the acquittal of police officers on charges of beating motorist Rodney King sparked rioting in Los Angeles. Congress amended the statute in 2006 after Hurricane

to enforce *existing* substantive law.  There is nothing in the Insurrection Act which allows the alteration of any existing law.[12]  It has nothing to do with martial law.  Although invoked by President Lincoln in the Civil War, martial law does not exist in the United States and finds no footing in the U.S. Constitution.  Therefore, the Plaintiffs, their counsel, but the counsel in every companion lawsuit, the Select Committee in the U.S. House, and tens of thousands of lying politicians, lying journalists, and other lying commentators have knowingly and openly deceived judges, courts, and the public.  PEZZOLA categorically denies that anyone ever suggested that Trump "arrest political opponents in both the media and the Democratic Party and responds that this allegation violates Rule 11 of the FRCP.  There was discussion that Trump seize *voting machines* (not ballot boxes) on the basis of sound reasons of malfunctioning *after the election was over* had been counted to preserve evidence.  Preserving evidence is entirely proper and within the President's authority to "see to it that the laws be faithfully executed."  PEZZOLA has no knowledge of the rest of the allegations of the compound paragraph.

> **Answering Complaint Par. 56)**    The paragraph is compound.  PEZZOLA has no knowledge of the factual allegations and details of the paragraph.

> **Answering Complaint Par. 57)**    The paragraph is compound.  PEZZOLA has no knowledge of the allegations and details of the paragraph except to note that it primarily consists of Free Speech guaranteed by the U.S. Constitution, added to an unforeseeable independent and

---

Katrina raised concerns that the statutory requirements impeded the military's ability to render effective assistance amid the perceived breakdown of civil law and order, but repealed that amendment the following year after state governors objected to it." – Congressional Research Service, "**Defense Primer: Legal Authorities for the Use of Military Forces**," Congressional Research Service, December 10, 2024, https://crsreports.congress.gov/product/pdf/IF/IF10539

[12]    "The President, by using the militia or the armed forces, or both, or by any other means, shall take such measures as he considers necessary to suppress, in a State, any insurrection, domestic violence, unlawful combination, or conspiracy, if it—" https://www.law.cornell.edu/uscode/text/10/251

unrelated action of others.  Furthermore, the reference to "predominantly white protestors" is despicable and disgusting and for different reasons than normal should be sanctioned under FRCP Rule 11.  It is a fact that the majority of the United States is White, which should not matter in any sense except for the constant dishonesty of race-baiters pointing out that a crowd or group matches the composition of the country's population, as if that is nefarious.  The fact that any particular gathering of human beings corresponds to the nation as a whole should never be mentioned without the speaker hanging his head in shame. [13]   PEZZOLA similarly reminds that the target of racial discrimination at times in our nation's history was Italians.

   ***Answering Complaint Par. 58)***        The paragraph is compound.  PEZZOLA denies each and every allegation and detail of the paragraph.  PEZZOLA is not aware of any Trump supporters who espouse any such White supremacy or violence, and PEZZOLA would know if they did.  The balance of the paragraph violates Rule 11 of the FRCP.  As clearly shown in the transcript of the presidential debate, the conversation included "CHRIS WALLACE:  'Are you willing tonight to condemn white supremacists and militia groups…'  DONALD TRUMP:  'Sure…'"  Donald Trump paused and asked "Give me a name.  Give me a name.   Go ahead and who do you want me to condemn?"  Joe Biden then interjected **"The Proud Boys."** And Trump then condemned the Proud Boys.  See transcript set forth in Jonathon Moseley, January 6 House Committee repeats Trump 'Stand by, Proud Boys' myth," American Thinker, June 12, 2022,

---

[13]       In fact, voter fraud (if terms are precise compared with election fraud) mostly involves the true voter's vote being stolen by an imposter.  Therefore, if some urban areas are disproportionately Black, the true voter being Black is having his or her vote stolen from them, probably (based on observing decades of leftwing activism) by White liberals in places like Manhattan or maybe Bridgeport, Connecticut, or otherwise living on their parents' basement. The true voter is a victim, not a wrong-doer.

https://www.americanthinker.com/blog/2022/06/january_6_house_committee_repeats_trump_sta
nd_by_proud_boys_myth.html   Therefore, as the slightest of investigation – the work already

having been done for them in attorney Moseley's <u>American Thinker</u> article – reveals **(A)** Trump

was asked to condemn someone, (B) Trump asked "Give me a name.  Give me a name.   Go

ahead and who do you want me to condemn?"  (C) Joe Biden volunteered "The Proud Boys" (D)

Trump then ***condemned*** the Proud Boys.  https://www.c-span.org/video/?475793-1/trump-biden-

debate&live%27   When Joe Biden mentioned "the Proud Boys" and Donald Trump repeated the

name, it was in the context of "who do you want me to condemn?"  It is not possible for a

reasonably diligent attorney to make the claim in this or other lawsuits that state the opposite of

the truth when the entire nation heard the presidential debate and it is available on-line.

   ***Answering Complaint Par. 59)***  The paragraph is compound.  PEZZOLA denies

each and every allegation and detail of the paragraph.

   ***Answering Complaint Par. 60)***  The paragraph is compound.  PEZZOLA denies

each and every allegation and detail of the paragraph.  Although completely irrelevant as

evidence of anything, Trump did in fact disavow the Proud Boys in 2020.

> "I don't know who the Proud Boys are. You'll have to give me a
> definition because I really don't know who they are. I can only say they
> have to stand down and let law enforcement do their work," Trump told
> reporters at the White House.
>
> The president then echoed his comments from Tuesday night, insisting
> that the "real problem" is antifa, the broad, far-left militant anti-fascist
> movement.
>
> "Whatever group you are talking about, let law enforcement do the work.
> Now, Antifa is a real problem. Because the problem is on the left. And
> Biden refuses to talk about it," Trump said.
> * * *
> When asked by a reporter if he welcomed support from white
> supremacist groups or would denounce them, Trump said that "law and
> order" was important to his campaign, and added, "I have always

denounced any form – any form of any of that, you have to denounce.
But I also – Joe Biden has to say something about antifa."

Claire Hansen, **"Trump: 'I Don't Know Who the Proud Boys Are,'"** US News & World Report, September 30, 2020, https://www.usnews.com/news/national-news/articles/2020-09-30/trump-i-dont-know-who-the-proud-boys-are

*Answering Complaint Par. 61)*    The paragraph is compound, but is marbled with violations of the First Amendment.  PEZZOLA has no knowledge of the allegations of fact and details of the paragraph.  (Again, reading the same news reports as everyone else which are generally available does not count as knowledge in Plaintiff's interpretation.  That is, for the purpose of an Answer , any plaintiff in any lawsuit would still need to prove the allegations because the Defendant merely reading the news could not attest to any allegations.)

*Answering Complaint Par. 62)*    The paragraph is compound, but is marbled with violations of the First Amendment.  PEZZOLA does not have knowledge of what "many jurisdictions" did.  PEZZOLA answers that Trump's statements cited were all true.   PEZZOLA is aware of what TRUMP said.  (Note that the fact that something was said is different from whether something said is true.  The fact of Trump making such a speech which PEZZOLA and others heard PEZZOLA agrees with is different from the truth of the speech.  Similarly, PEZZOLA is aware of tweets like those mentioned.

*Answering Complaint Par. 63)*    The paragraph is compound.  PEZZOLA declines to provide a response because the news media plays no role in U.S. elections under the Constitution, laws, and rules governing elections.  Anyone who believed the news media would not have been a Trump supporter.

*Answering Complaint Par. 64)*    The paragraph is compound, but is marbled with violations of the U.S. Constitution which permits both Free Speech and recourse to the courts.

PEZZOLA has no knowledge of the allegations of fact and details of the paragraph concerning individual lawsuits.

      ***Answering Complaint Par. 65)***     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including for the reasons stated in the preceding paragraph.

      ***Answering Complaint Par. 66)***     The paragraph is compound.  PEZZOLA declines to provide a response because it is a constitutional right to seek decision in the courts.

      ***Answering Complaint Par. 67)***     The paragraph is compound.  PEZZOLA has no knowledge of the internal conversations described and of course the Plaintiffs do not either. However, the participants named have a First Amendment right to express their beliefs whether others think they are right or wrong.  To illustrate the lack of credibility of these claims, these Plaintiffs and others claim that "In December 2020, then-Attorney General William Barr announced that the Department of Justice found no evidence of widespread voter fraud." However, Bill Barr made clear *that he did not look*.  The U.S. Department of Justice does not regulate or investigate elections.  Therefore, Bill Barr would have no way of "finding" any evidence of *widespread* voter fraud.  In fact, early on Bill Barr warned DOJ officials not to get involved in claims of the 2020 election being incorrect.  Therefore, for Barr to claim he did not find something *he was not looking for* says all we need to know about the credibility of the 2020 election.

      ***Answering Complaint Par. 68)***     The paragraph is compound.  PEZZOLA denies all of the factual allegations and details of the paragraph.  The allegation that "Many of the false claims of election fraud propagated by Defendants targeted Black and minority voters." is a

despicable and reprehensible lie.  The Plaintiffs and counsel have violated Rule 11 of the FRCP

in this allegation.  **New York City** has the largest **population of Italian** Americans in the United

States, yet complaints about the election in New York City did not target Italians.  New York

City was simply a lost cause.

 ***Answering Complaint Par. 69)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.  Once again, the news media plays no role

in U.S. elections.  PEZZOLA responds that the statements quotes were and are all true.

 ***Answering Complaint Par. 70)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.

 ***Answering Complaint Par. 71)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.

 ***Answering Complaint Par. 72)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.

 ***Answering Complaint Par. 73)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.  PEZZOLA further denies that it is

remotely relevant what opinions were shared with Trump, like any other human being.  Someone

else's opinion do not alter in any way Trump's right to Free Speech.  PEZZOLA specifically

denies that anyone " intimidated Raffensperger and his wife."

 ***Answering Complaint Par. 74)***  The paragraph is compound.  PEZZOLA denies all

of the factual allegations and details of the paragraph.  The logical fallacies attempted of

coincidence being causation are false.  Furthermore, Trump's statement(s) that Michigan

purposely allowed widespread voter fraud as confirmed in the hard facts including the fervor of

Democrat party Michigan officials to enshrine fraudulent election officials in the Michigan

Constitution and Michigan law before and after the 2020 election.

*Answering Complaint Par. 75)*     The paragraph is compound.  PEZZOLA denies all of the factual allegations and details of the paragraph.  Again, the Plaintiffs offer coincidence as causation.

*Answering Complaint Par. 76)*     The paragraph is compound.  PEZZOLA denies all of the factual allegations and details of the paragraph.  Not only were the tip-offs of inaccurate voting results (election official fraud, voter fraud, changing rules, courts rewriting the election rules, etc.)  completely accurate, but informing officials and asking them to make sure the election results are correct is correct and proper and indeed within the President's core duty to "see to it that the laws be faithfully executed."   Trump and his campaign filed a formal suit in Federal court over Georgia's rampant violations of election law.  FRCP Rule 26 requires a "meet and confer" consultation among the parties and their counsel.  The dishonest smears against the Defendants pretend that the telephone call – whose opening few minutes have been cut off – was a stand-alone conversation.  In fact, it was a required "meet and confer" consultation.  Trying to portray a court requirement as intimidation is despicable and reprehensible and a violation of FRCP Rule 11.  It is noteworthy that the opening introduction of the phone call has been cut off. Any such telephone call with all of the parties to the lawsuit and all their attorneys and including the President of the United States would begin with a statement of the purpose of the phone call and an introduction of the participants all around.  Thus, the dishonesty of misrepresenting the phone call is intentional.

*Answering Complaint Par. 77)*     The paragraph is compound.  PEZZOLA denies all of the factual allegations and details of the paragraph.    PEZZOLA is not aware of any white supremacists or extremist groups involved in the 2020 election or protests from November 2020

through January 6, 2021.  As the President clearly stated over and over, violence from ANTIFA

was his focus and the focus of the Defendants.  The right of self-defense cannot be portrayed as

violence or intimidation.  The fact that the Oath Keepers and Proud Boys would not bow down to

Left-wing and anarchist street thugs is neither intimidation nor violence by the Defendants.

*Answering Complaint Par. 78)*          The paragraph is compound, but is marbled with

violations of the U.S. Constitution which permits both Free Speech and petitioning the

government for redress of grievances.  PEZZOLA denies the allegations of fact and details of the

paragraph, but also denies the relevance and meaning of the allegations.  Furthermore, the events

described have nothing to do with the other Defendants in this and related cases.  Furthermore,

the word "storm" as a verb involving people instead of weather has no meaning and no definition

and no one knows what it means.  A family of tourists might post on social media that "they took

Paris by storm" in terms of sight-seeing, because the word has no meaning.  The paragraph

alleges that Alexander asked "'Who is going to be ready to storm the capitol with us in a few

minutes?" after which they led the crowd inside the state capitol." which people are allowed to

do.  In Washington, D.C. the U.S. Capitol boasts that 3.5 million visitors from around the world

tour the U.S. Capitol every year.[14]  The fact that someone goes inside the Federal or State

Capitol is not an indication of anything wrong.  Counting only business days, dividing by 260,

over 13,000 visitors enter and tour the U.S. Capitol every business day.  Yet we are told that a

couple thousand demonstrators – compared to the usual 13,460 visitors every day – was

crippling to the 750 foot long U.S. Capitol building.

*Answering Complaint Par. 79)*          The paragraph is compound, but is marbled with

---

[14]      Hantman testimony, U.S. Congress, House Committee on Appropriations, Subcommittee on
Legislative, Legislative Branch Appropriations for 2004, hearings, part 1, 108th Cong., 1st sess., July 15,
2003 (Washington: GPO, 2003), p. 1464.

violations of the U.S. Constitution which permits both Free Speech and petitioning the government for redress of grievances.  PEZZOLA does not have knowledge of these events and indeed had not yet arrived in Washington, D.C. However, PEZZOLA objects that the statements and actions described are constitutional rights.

**Answering Complaint Par. 80)**     The paragraph is compound.  The allegations are reprehensible and outrageously false.  PEZZOLA denies the factual allegations  and details of the paragraph.  The Proud Boys are led by a Black man and about 20% of their membership are minorities.  Their ByLaws prohibit racism and make it grounds for termination from the organization.   In November 2020, a Black woman and another Black bystander attacked and stabbed a member of the Proud Boys who was still in the hospital recovering on January 6, 2021. The persistent refusal to distinguish between people defending themselves against attacks from Leftist street thugs rises to the level of intentional dishonesty.  The paragraph recites that "Proud Boys members" tore down a "Black Lives Matter" banner at the Asbury United Methodist Church and Metropolitan African Methodist Episcopal Church, but in a brazen act of lack of candor (while raising race themselves) fails to advise the Court that it was a Black man Enrique Tarrio charged and convicted of doing so.  So the Plaintiffs claim that the banner was torn down as racial motivation without telling the Court that it was a Black man who tore down the banner according to the D.C. government and courts.  This is a violation of Rule 11 of the FRCP. Furthermore, all Trump supporters and Defendants were clear in their view that "Black Lives Matter" was a group of White leftists probably living on their parents couches in New York City exploiting Black people to push a deconstructionist, Marxist agenda.  Defendants were clear that Leftists lie and they especially lie about who they are.

**Answering Complaint Par. 81)**     The paragraph is compound.  PEZZOLA responds

that the allegations are not capable of being answered due to being vague and speculative. PEZZOLA has no idea what television channels Trump was watching or when.

**_Answering Complaint Par. 82)_**    The paragraph is compound.  The first two long sentences are actually the only places where the events of January 6, 2021, are accurately described, as far as it goes.  However, the third sentence is incorrect, in that Congress does not ever certify any Presidential election results.  This matters because Trump critics have tried to misrepresent the mathematics conducted on January 6 as more adjudicatory.  There is nothing in the U.S. Constitution or the Electoral College Act about Congress certifying the election results. The Congressional Record does not reflect opening the session as a certification.  The ending of the session in the Congressional Record does not say anything about certifying the election.  The President of the Senate opens the ballots "in the presence of" Members of Congress and hands them to two tellers who count the votes.  There is no certifying.  It is only mathematics. Congress does have the power, of course, to challenge the accuracy and propriety of the ballots from individual States.

**_Answering Complaint Par. 83)_**    The paragraph is compound.  PEZZOLA denies the allegations of the paragraph, because the Constitution and Electoral Count Act empower Congress to challenge the propriety and accuracy of ballots from individual States.  Congress has the final word.  No one can know for sure who won the election until Congress has spoken.  See, e.g., the election of 1876.  PEZZOLA is not aware of any force, intimidation, or threats to stop the counting those ballots nor can PEZZOLA imagine any scenario under which that could be possible.  PEZZOLA is not aware of any extremists or white supremacist groups involved.   The evidence proves that there was never any intent, plan, or conspiracy by anyone "to try to physically force Congress to abandon the count."  As the FBI's Inspector General makes clear in

his 88-page report of December 2024, there were at least 26 confidential human sources embedded in "Stop the Steal" groups including the Vice President of the Oath Keepers yet none of them reported any plans, conspiracies, or intents to attack the U.S. Capitol or physically interrupt the counting of the ballots.

**Answering Complaint Par. 84)**     The paragraph is compound.  Pezzola has no knowledge of the allegations or details of the paragraph.

**Answering Complaint Par. 85)**     The paragraph is compound.  Pezzola has no knowledge of the allegations or details of the paragraph.

**Answering Complaint Par. 86)**     The paragraph is compound.  Pezzola has no knowledge of the allegations or details of the paragraph.

**Answering Complaint Par. 87)**     The paragraph is compound, but is marbled with violations of the First Amendment. PEZZOLA denies that Trump promoted or mentioned any march to the U.S. Capitol.  The first time PEZZOLA, the Oath Keepers, and most Rally attendees heard of the idea of continuing on to the Capitol was at the end of Trump's speech at the Rally.  PEZZOLA agrees with the balance of the paragraph, but cautions that calling something "wild" probably does not mean what the Plaintiffs think it means.  When snow boarders describe a ride down a snow-covered mountain as "wicked!" they are not saying that the experience was pure evil. When young adults discuss an upcoming "wild party" they do not mean that it is any more dangerous than a "rave" dance.

**Answering Complaint Par. 88)**     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    However, Trump apparently (if he did it himself) sent the tweets quoted, yet they do

not mean what the Plaintiffs imagine.

   ***Answering Complaint Par. 89)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

   ***Answering Complaint Par. 90)***  The paragraph is compound.  PEZZOLA has no knowledge of the allegations or factual details of the paragraph.

   ***Answering Complaint Par. 91)***  PEZZOLA has no knowledge of the allegations of the paragraph, except that there was no plan for any attack on the U.S. Capital.  The OIG of the FBI not only reported on the existence of at least 26 Confidential Human Sources from the FBI alone embedded in the groups allegedly involved, including the Vice President of the Oath Keepers, but quotes from emails and reports in detail that these informants had nothing to report. One email from a high official expresses annoyance that FBI agents are reporting on contacts with these 26 CHS's when they have nothing to say. https://oig.justice.gov/sites/default/files/reports/25-011_0.pdf   Characteristically, the Plaintiffs throw all of Anglo-American jurisprudence in the trash bin with allegations of what unidentified "Many users" supposedly said on chat groups.

   ***Answering Complaint Par. 92)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

   ***Answering Complaint Par. 93)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Again, no one on the Leftist side of the legal system seems to be familiar with how people talk; they should probably get out and mingle more with ordinary Americans.  The Plaintiffs, like others in related cases and in criminal prosecutions, rely upon their own personal interpretation of "code words" they imagine like shapes in the clouds spoken by Defendants. Furthermore, at least half of Trump's words spoken to the crowd at the Ellipse could not be understood due to malfunctions of the sound system.

  ***Answering Complaint Par. 94)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    The paragraph alleges what "they said," without identifying who "they" are.  The allegation "Many of Defendants' plans were publicly announced and widely reported," begs the question what "Defendants' plans" were and does not convey any meaning like what the Plaintiffs imagine.  Defendants' plans to peacefully protest while engaging in self-defense if attacked were indeed publicly announced and widely reported.  But, again throwing U.S. law in the trash, the Plaintiffs allege that "One post tagging TRUMP said TRUMP should '[j]ust call us and we'll come armed to occupy DC.'"  So an anonymous post is offered to be somehow significant and with no connection to any of the Defendants is being used to create guilt by association.  However, the Plaintiffs quote a statement that what protestors would do would depend upon being "called" by Trump.  PEZZOLA denies that "TRUMP and his advisors actively monitored websites and social media platforms, including Twitter, where his followers made similar posts."  In a country of almost 350 million people, looking at one or two media platforms is not the same as monitoring all posts on all platforms.

**Answering Complaint Par. 95)**     The paragraph is compound.  PEZZOLA agrees with the factual allegations and details of the first half of the first sentence of the paragraph, but DENIES "widespread reports that many had already resorted to violence and threats of violence in response to TRUMP losing the election."  The only violence resorted to was self defense in response to being violently attacked by ANTIFA, anarchists, and Leftist street thugs.  PEZZOLA DENIES that there was any mention of any "march" from or after the Rally at the Ellipse.

**Answering Complaint Par. 96)**     The paragraph is compound, but is marbled with violations of the First Amendment.  The allegations of the paragraph are protected Free Speech guaranteed under the First Amendment to the U.S. Constitution as well as *Brandenburg v. Ohio*. Furthermore, there is and can be no election result until Congress has spoken, under its authority to review and contest the results from individual States.

**Answering Complaint Par. 97)**     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

**Answering Complaint Par. 98)**     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   Unlike Left-wing activists and paid rent-a-mobs patriots do not need to raise funds to drive their car, stop at a burger joint, and go to rallies.  However, the Plaintiffs alleged that Ethan Nordean posted a donation plea for ***protective*** gear thus confirming that Plaintiffs and their counsel were and are aware that the Proud Boys were preparing to defend themselves against attacks and violence against them from ANTIFA and other Leftist street thugs.  Likewise the

Plaintiffs allege that Roger Stone sought donations for security, again clarifying that Trump supporters expected to be violently attacked and would need to defend themselves.

  ***Answering Complaint Par. 99)***  The paragraph is compound.  PEZZOLA DENIES the factual allegations and details of the paragraph, including because the paragraph alleges preparations for "the Capitol attack" when all of the details are plainly for attending the Rally at the Ellipse having nothing to do with the U.S. Capitol.  Again, PEZZOLA does not speak for the PROUD BOYS except to the extent that these Plaintiffs and others in related lawsuits and other forums are trying to slop mud on the Oath Keepers while smearing others.  But PEZZOLA has learned and points out that "THE MINISTRY OF ***SELF*** DEFENSE" of the Proud Boys was created to govern those very, very, very few Proud Boys who have any interest in political rallies.  Like the Oath Keepers, the vast majority of Proud Boys had no interest in politics or political rallies or events.  The Proud Boys were informally divided into the "party boys" who simply got together as men and watched sports on TV and drank and mostly trash-talked each other as a joke and the "rally boys" who were interested in political rallies.  Very, very, very few of the Proud Boys were interested in political rallies at all.  A similar dynamic without the colorful labels applied within the Oath Keepers.  However, the Proud Boys found that the almost complete lack of any guidance or governance for members watching sports on TV over adult beverages was inadequate for when the Proud Boys ran security for Trump supporters.  After violent Leftists stabbed several Proud Boys, the Ministry of Self Defense was created to develop some mission discipline such as not wandering off alone.  The Proud Boys were famous for not following instructions or guidelines and doing whatever they wanted.

  ***Answering Complaint Par. 100)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Specifically, (1) Kelly Meggs was not a leader of the Oath Keepers on December 19, 2020, or before and had no authority to negotiate anything for the Oath Keepers, and (2) he was explicitly referring to a counter-demonstration within the State of Florida which furious ANTIFA anarchists declared against Governor Ron DeSantis passing legislation outlawing violent demonstrations in Florida.  Kelly Meggs was working to support Gov. DeSantis' efforts and legislation and oppose violent left-wing demonstrators.

*Answering Complaint Par. 101)*        The paragraph is compound.  PEZZOLA DENIES the factual allegations and details of the paragraph, specifically in that the context of those communications was to prepare to de-escalate a riot by Leftist street thugs and for that purpose all such items were left outside of the District of Columbia at their hotels.  As the Plaintiffs and their counsel actually know or should know under minimal investigation required by Rule 11 of the FRCP, these had nothing to do with the U.S. Capitol.

*Answering Complaint Par. 102)*        The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Participants were not tracked.  There were no plans for any attack.  And there were no such numbers.  To the best of PEZZOLA'S  awareness something like 25 to 30 Proud Boys were present in Washington, D.C. on or about January 6, 2021.  Despite puffery by Enrique Tarrio for public relations – and to deter violence from ANTIFA – Tarrio claimed that he expected 1000 members on January 6, 2021.

*Answering Complaint Par. 103)*        The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Many of these allegations the Plaintiffs' counsel know or should have known under a reasonable investigation under FRCP Rule 11, including

    a.   "MEGGS and other members of OATH KEEPERS received training in firearms to prepare for January 6."  However, the training in firearms was in September 2020 before the outcome of the election was known and when most Trump supporters expected Trump to win the election.  It had nothing to do with January 6.  At the time, there was no indication that there would be any events on January 6, 2021.  This has been highlighted repeatedly and Plaintiffs' counsel knew or should have known that the allegations are sanctionably lacking in candor to the Court.

    b.   PEZZOLA has no knowledge of the conversations between Caldwell and Watkins, recalling also that Caldwell was never a member of the Oath Keepers.  However, neither Watkins nor Caldwell had any authority or position to make any plans involving the Oath Keepers.

    c.   As the Plaintiffs and their counsel actually know (the Plaintiffs being USCP officers), the USCP issued six (6) demonstration permits for the Capitol grounds (or Capital "lawn") for January 6, 2021, including at least one associated with Ali Alexander's plans.  Thus in violation of Rule 11 of the FRCP the Plaintiffs and their counsel have actual knowledge – because the undersigned law firm has repeatedly broadcast it in many pleadings – that Alexander was referring to the event on the Capitol Grounds for which the USCP by Scott Grossi had issued a permit.  The map was for

the event, since the USCP does not mark its various demonstration areas

and locations on the ground.

    d.  PEZZOLA has no knowledge of subparagraph (e).

    e.  PEZZOLA has no knowledge of the PROUD BOYS's telegram chat

channel but responds that the prosecutors and these Plaintiffs seem to have

no knowledge of the way some people talk and that the Proud Boys

engaged in a lot of hyperbolic trash talk which clearly did not correspond

to anything they actually did or attempted.

*Answering Complaint Par. 104)*    The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as

erroneous.   The Oath Keepers arranged one single "Quick ***REACTION*** Force" not more than

one which was explicitly and clearly to be used in ***REACTION*** if (a) the expected ANTIFA,

anarchist and leftist street gangs engaged in a full-scale riotous street war as they had done in

every other such event, and/or (b) the President invoked the Insurrection Act to deputize and

authorize trained, skilled, veterans to assist and keep the peace.

*Answering Complaint Par. 105)*    The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as

erroneous.

*Answering Complaint Par. 106)*    The paragraph is compound.  PEZZOLA has no

knowledge of the factual allegations and details of the paragraph, except by examining the six (6)

demonstration permits issued by the USCP by Scott Grossi.  The USCP sought to conceal those

permits from public awareness, and ignored requests from a paralegal member of the undersigned law firm. It was not until a news outlet won a FOIA request that the USCP was forced to end its lack of candor and reveal the six (6) permits. The permits show six different entities, at least one unrelated being a church choir.[15] PEZZOLA does not know which came first, the permit or Ali Alexander, but suspects from the documentation that the permits were obtained first and then later the idea arose of partnering with other "Stop the Steal" oriented entities.

*Answering Complaint Par. 107)*      The paragraph is compound. PEZZOLA admits the first sentence, although notes that it is completely irrelevant to issues relating to the U.S. Capitol. PEZZOLA denies generally, not from direct knowledge, the second sentence. The evidence presented in the mini-trial in Colorado seeking to keep Trump off the 2024 presidential ballot included Trump White House staffer Katrina Pierson documenting in her sworn testimony and in her communications that she personally intervened to adamantly insist that Roger Stone and Ali Alexander and other "crazies" as Pierson put it be kept completely and totally disconnected from anything involving Donald Trump and his speech to the "Women for America First" rally on January 6, 2021. Pierson demanded a meeting with Trump to keep all the people she didn't like away from Trump. Katrina Pierson then boasted with Max Miller, another attendee at the

---

[15]      Those who are not deeply involved in Christian worship might not connect with the attitude of many devout Christian groups that ***worship is prayer*** or can be, such that singing Christian worship songs is meant to invite the presence of God by the Holy Spirit, including a calming influence of peace, wisdom, and mutual understanding. Videos showing the choir singing on the East side of the U.S. Capitol are understood to be an effort to commit things into the hands of God to work His plans and ways, presumably to de-escalate and calm conflicts. In other words, at least one, probably two, permits were granted having nothing to do with any protests or political activities. Of the remaining four, it appears that after they were granted in December 2020, at least one offered to partner with Ali Alexander, Roger Stone, and other speakers out of mutual convenience.

meeting she demanded with President Trump, how Pierson and Miller had blocked Trump's command to deploy 10,000 to 20,000 National Guard troops to keep the peace in Washington, D.C. on and about January 6, 2021.[16]  Many people acted to stop Trump's orders to keep the peace with the National Guard, but Katrina Pierson gloated in text messages that she blocked the National Guard.  She and Max Miller laughed in the text messages that Trump actually thought a lot of people would be showing up on January 6, 2021, which they thought was clearly ridiculous.  Meanwhile, Trump had nothing to do with the January 5, 2021, gathering which the Oath Keepers were originally supposed to provide security at.  Claims of election fraud are of course protected Free Speech guaranteed by the First Amendment of the U.S. Constitution.  Furthermore, the statements alleged in the paragraph were all the truth.

*Answering Complaint Par. 108)*      The paragraph is compound.  PEZZOLA has no knowledge of the factual allegations and details of the paragraph.

*Answering Complaint Par. 109)*      The paragraph is compound.  PEZZOLA has no knowledge of the factual allegations and details of the paragraph.

*Answering Complaint Par. 110)*      The paragraph is compound.  PEZZOLA denies that the factual allegations and details of the long, run-on first sentence of the paragraph have any relationship to this universe and are clearly false in every respect.  The quotes made by Trump have no relationship of any kind to their mischaracterization by the Plaintiffs.

*Answering Complaint Par. 111)*      The paragraph is compound.  PEZZOLA denies that the factual allegations and details of the long, run-on first sentence of the paragraph have any relationship to this universe and are clearly false in every respect.  The quotes made by Trump

---

[16]      https://www.c-span.org/video/?531545-103/president-trump-14th-amendment-hearing-colorado-day-3-part-4

have no relationship of any kind to their mischaracterization by the Plaintiffs.

In fact, on the contrary, Trump communicated:



**Answering Complaint Par. 112)**    The paragraph is compound.  PEZZOLA has no

knowledge of the factual allegations and details of the paragraph.  Nor would PEZZOLA – a

Yale law school graduate – expect to know the private and confidential attorney-client privileged

communications between these attorneys and Trump.

**Answering Complaint Par. 113)**    The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.as being wholly uninformed by Amendment XII and Amendment XX (3) of the U.S. Constitution and the Electoral College Act as it existed in 2021.  The Congress has the final say of who won any Presidential election.  Always.  Specifically, every Presidential candidate must file a certified slate of electors bound to that candidate many months before the printing of the ballots ahead of the Presidential election.  Therefore, there will always in every election in every State without exception be multiple slates of electors to the Electoral College.  The winning slate is not final until Congress has spoken.  There is literally no winner of any Presidential election until all objections have been heard and resolved at the Joint Session of Congress on January 6 every four years (the January 6 following a Presidential election).  Therefore, the attempted insinuation by these Plaintiffs, other Plaintiffs in other related cases, and others fails.  For example, the Plaintiffs repeat Mike Pence's consistent and frequent lie that "he did not have "unilateral authority to determine which electoral votes should be counted and which should not."  ***But no one asked him to.***  Pence's confused comments have no weight here.  The fact that a person long in politics informed by professionals is answering a question no one is asking reveals and telegraphs dishonesty.  A person who knowingly answers a different question than the one asked is dodging the truth.  When Pence dodges the question he was asked to do and denies something completely irrelevant, he confirms that the establishment stole the 2020 election.  No one ever asked Pence to decide the winner of the Electoral College votes.  Millions of Americans including these Defendants petitioned their government for redress of grievances as a right guaranteed to them under the First Amendment of the U.S. Constitution that legitimate objections be heard and resolved by the Congress as is required of Congress.  The Defendants organized and worked to have the laws complied with, when it was obvious that Washington,

D.C. not only was violating dozens of laws but didn't even understand what the laws are.[17]

Some also requested that Mike Pence *not making his own decision* remand the votes back to any States which requested it in keeping with Article II, Section 1, Clause 2 of the U.S. Constitution. Many legislatures erroneously believed they could not call themselves into session, which is untrue because the Electoral College is a Federal function not a State function. Therefore, State legislatures were asking Pence to send the Electoral College ballots back to the State legislatures which would enable them to meet and review the facts and decide as Article II, Section 1, Clause 1 directs. But Pence was only asked at most to inquire of the States "Are you sure?" Pence was not asked to decide anything. Thus, Pence either lacked the ability to grasp the situation or lacked the ethical fiber to be honest about what he was being asked to do. And in so doing he inadvertently admitted a conspiracy by the uni-party establishment to corrupt and steal the 2020 election from the American people. [18]

**Answering Complaint Par. 114)**     The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   By this point, the allegations become redundant and PEZZOLA has already explained in what ways, to what extent, and how the allegations are true, false, or mischaracterized, and denies these allegations for those same reasons as explained above.

**Answering Complaint Par. 115)**     The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred,

---

[17]     Congress amended the Electoral College Act in 2022. However, the Plaintiffs here and in related lawsuits are arguing the Defendants actions and intentions clearly related to the law existing prior to any 2022 modification.
[18]     As some wish to point out, the Constitution provides for the President of the Senate to open the ballots and count them in the presence of the Joint Session of Congress. The Electoral College Act changes that to the President of the Senate hands them to be counted by two unknown tellers. However, the Electoral Count Act provided procedures for determining *which slate of Electors to count* since every Presidential candidate in every State will always in all cases submit a certified slate of electors in order to qualify to appear on the ballot.

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including for the same reasons as explained above. For one thing, Defendant and the PROUD BOYS he was with did not stay at the Rally and did not listen to much of what Trump said. They walked across the grass of the Washington Mall joined by many unrelated persons. In a well-known photograph and video, probably 80% of the people walking calmly across the Mall are not Proud Boys but had spontaneously joined in the group without being asked.

***Answering Complaint Par. 116)***    The paragraph is compound. PEZZOLA denies the factual allegations and details of the paragraph, including for the following reasons: (a) There was no march. Pennsylvania Avenue was clogged with souvenir and vendor tables and food vendors and crowds were milling about aimlessly as if Pennsylvania Avenue and surrounding areas were a county fair, (b) a permit for a march would be issued by the District of Columbia with regards to the streets of D.C. and would not come within the purview of the permit from the U.S. Park Police for the "Women for America First" Rally on the Ellipse portion of the Washington Mall, between the White House and the Washington Monument, (c) Trump explicitly did not call for anyone to go to the Capitol but explicitly said

> "I know that everyone here will soon be marching over to the capitol building to peacefully and patriotically make your voices heard. "

https://www.youtube.com/shorts/bXsWrbG-3gM  *See also*

https://www.youtube.com/watch?v=25w2vlfg88M

This is because the events at the Capitol had been announced by organizers in December 2020. Those who were going to the permitted demonstrations already knew they were going there.[19]

---

[19]    These Plaintiffs and everyone fail to recognize that the crowd at the Ellipse Rally could not hear what Trump was saying. Recorded from the podium where the microphones are affixed, Trump's words are clear. But in the crowd, Trump's words were garbled by the sound system and could often not be understood. See:

The permitted events at the Capitol were organized almost a month before the Rally at the Ellipse was announced.  In this, Trump had been misinformed because this was the first time anyone ever mentioned a march to the Capitol.  And (d) the side streets off of Pennsylvania Avenue were blocked off by barricades and by MPD cruisers, but at the end of Pennsylvania Avenue there was no terminus for any supposed march.  So people marched down Pennsylvania Avenue or across the grass of the Washington Mall there was no ending point for the march, nowhere to go upon arriving.  Therefore, there was no plan for any march.  The physical layout would push massive crowds against the fences at the edge of the U.S. Capitol Grounds.  There was no stage set up.  There was no pathway to reach the Capitol and then march way and disperse.  The ending of any supposed march was a trap where the marching crowds would have nowhere to go except up on to the U.S. Capitol grounds.

*Answering Complaint Par. 117)*      The paragraph is compound.  PEZZOLA denies the factual allegations and details of the paragraph, including being raw speculation or attempted psychic mind-reading.

*Answering Complaint Par. 118)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Again, the allegations grow redundant.  The allegations are also raw speculation.  Furthermore, there are thousands of video recordings of Trump's speech and none of them to PEZZOLA'S  knowledge includes any response from the crowd.   (The Plaintiffs are probably thinking of the fabricated video produced by James Goldston, former News President at ABC

---

https://www.youtube.com/watch?v=MjBx58tQagU and
https://www.youtube.com/watch?v=76w7RPLwYIs

News, for the U.S. House of Representatives Select Committee to Investigate the Attack on the Capitol. Goldston rearranged and changed the sequence of events to create a movie instead of an accurate portrayal. For example, at 4:22 PM a demonstrator reads all of Donald Trump's tweets for the day over a bull horn, including one sent at 2:24 PM. The falsified video's caption claims that this is happening at 2:24 PM when in fact it is happening at 4:22 PM. There are reasons beyond the scope of this topic why that mattered. Immediately after that clip, Goldston added voices that were not present in reality superimposed on the crowd – the quotes cited here by the Plaintiffs and by other attorneys in other lawsuits. It appears that the quotes actually come from the ZELLO conference call of people all across the country watching the events on TV and talking to their televisions and each other, who were not in Washington, D.C.

*Answering Complaint Par. 119)*      The paragraph is compound. PEZZOLA has no knowledge of the factual allegations and details of the paragraph. However, Trump's alleged statements as quoted are protected Free Speech guaranteed under the First Amendment to the U.S. Constitution. Finally, PEZZOLA is not aware of any responsive statements from the crowd.

*Answering Complaint Par. 120)*      The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   First, the crowd was not angry but lumbered and meandered at a slow pace along Pennsylvania Avenue through a forest of souvenir vendors, food vendors, clothing vendors, like attendees milling about at a county fair. Second, the crowd at the Ellipse was quite happy and festive. Third, because of the malfunctioning sound system probably half of the crowd left the Ellipse early long before Trump talked about going to the Capitol. NTD television network had

many cameras and banners there and would have raw video of these events.  Fourth, to the best of PEZZOLA'S  knowledge Trump did not mention Pennsylvania Avenue.  Fifth, the Plaintiffs' attempt at psychic mind-reading of what Trump intended is inconsistent with centuries of Anglo-American jurisprudence and in direct conflict with what Trump actually said.  Furthermore, with a few exceptions there is little to no evidence that the demonstrators on Capitol Hill on January 6, 2021, were the same persons who had been at the Ellipse Rally that morning.  The demonstrations on Capitol Hill had been publicized independently since December 2020. Furthermore, an estimated 1 million people were at or around the Ellipse but only a maximum of 10,000 demonstrators were on Capitol Hill according to estimates from the USCP.  There is no evidence that Trump or anyone else expected anyone to use force, intimidation, or threats. In fact, the video record shows that the crowds were peaceful until violently attacked unprovoked by law enforcement officers for no valid reason.

 *Answering Complaint Par. 121)*  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   TRUMP did not give any directions, hints, or anything of the sort to use force, intimidation, and threats.  It was not foreseeable that law enforcement officers would violate the law and initiate violence unprovoked against the crowds.

 *Answering Complaint Par. 122)*  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   The Plaintiffs' attempts, like those of the FBI and prosecutors, to engage in psychic mind-reading must fail as a fundamental rejection of U.S. law.  Trump did not encourage any

violence. The crowd did not shout anything to PEZZOLA'S knowledge except "USA!" There was no violent mob. And other than Ray Epps and "Southwest Watchtower Commander" who have not been punished, no one discussed or understood "going to the Capitol" to mean "going *in* to the Capitol." Trump was quite explicit that his followers "make their voices heard" which is protected Free Speech and protected petitioning the government for redress of grievances guaranteed under the First Amendment to the U.S. Constitution. Therefore, it was foreseeable that law enforcement officers would respect the U.S. Constitution and allow demonstrators to peacefully exercise their First Amendment rights. Again, this is in the context of Plaintiffs and many other Plaintiffs in related cases and other forums imagining that Trump meant the opposite of what Trump said, and the crowds did. The Plaintiffs would not have been injured if their colleagues had not initiated violence against the demonstrators.

     *Answering Complaint Par. 123)*    The paragraph is compound. PEZZOLA agrees with the first half of the first sentence, but denies that Congress convened to announce a pre-determined winner of the election. Amendments XII and XX (3) of the U.S. Constitution and the Electoral Count Act as it was then worded require that the Congress hear and resolve all objections to the Electoral College votes of individuals states if properly presented. Therefore, it would be impossible to know which slate of Electors from a State was the winning slate until Congress' consideration was completed at the end of the January 6, 2021, Joint Session of Congress. The Constitutional process is not a mere formality. Indeed, in the third section the Plaintiffs – represented by a chorus of Left-wing legal scholars – admits that "Congress lodged objections" thus admitting that the count was *not* a mere formality and that the Congress had the opportunity and the duty to hear and resolve objections. Unable to resist pointing the finger at Trump, these legal scholars have three fingers pointing back, conceding that Congress decides on

proper objection which slate of Electors to count.  Meanwhile, the attempt to make this a racial

issue is despicable and reprehensible and a violation of Rule 11 of the FRCP.  The objections to

7 States[20] include many of the Whitest and least racially diverse States in the United States of

America, such as Michigan,[21] Wisconsin,[22]  Pennsylvania,[23] Arizona.[24]

      ***Answering Complaint Par. 124)***     The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as

erroneous.    The PROUD BOYS carried cell phones, which mostly did not work because of the

sheer quantities of the crowd on Capitol Hill.  A few brought standard walkie talkies publicly

and commercially available such as Zachary Rehl.  (Rehl is accused by the prosecutors of being

"armed" with a radio and goggles.)  PEZZOLA does not believe that as many as 30 to 50 Proud

Boys were present at the Capitol on January 6, 2021.  The rest of the allegations are denied.

      ***Answering Complaint Par. 125)***     The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as

---

[20]     It is untrue that challengers to the 2020 Presidential Election targeted cities.  The problems of violating established laws and rules and changing the rules in mid-stream were mostly State-wide, affecting mail-in ballots, the lack of identification, unlawful drop boxes in competition with the monopoly of the U.S. Postal Service and without any standards for who opens the drop boxes and what happens to its contents, hundreds of people registered to vote at the same address or at empty fields or commercial sites, changes to deadlines for mail-in ballots being received, etc.  These were not limited to any one city in a State.  However, election litigation rules require showing that the problems might have changed the outcome.  Therefore, special attention was paid to locations which voted heavily for Joe Biden especially unexpectedly so, to show that the State's results likely could have been different.

[21]     https://statisticalatlas.com/state/Michigan/Race-and-Ethnicity  (75.7% White)

[22]     https://statisticalatlas.com/state/Wisconsin/Race-and-Ethnicity  (82.1% White)

[23]     https://statisticalatlas.com/state/Pennsylvania/Race-and-Ethnicity  (77.7% White)

[24]     https://statisticalatlas.com/state/Arizona/Race-and-Ethnicity  (56.1% White)

erroneous.    PEZZOLA believes there were only approximately 50 Proud Boys or fewer in

Washington, D.C. on January 6, 2021, which was a Wednesday / work day and the third mass

demonstration.  Members of the Proud Boys report that there was widespread resistance to going

to D.C. a third time and that Enrique Tarrio sought to hide from Left-wing street thugs the extent

to which the pro-Trump crowds were unprotected as a result.  However, police radio traffic

clearly demonstrates that the police and others think everyone is a Proud Boys member or an

Oath Keepers member who are not.  Most people using those names do not know who is a Proud

Boys member and do not know who is an Oath Keepers member, and are clearly wrong.  For

example, police described a crowd walking along the sidewalk not in conformity to Enrique

Tarrio's instructions for clothing that day, but radioed back to headquarters a crowd of Proud

Boys at that location.  PEZZOLA is not aware of anyone using any communications other than

ordinary cell phones, which can come with ear pieces and can use apps that mimic walkie talkies,

except a few publicly available walkie-talkies.



**AVAILABLE AT WALMART for $56**  "Cobra RX385 Two-Way Radios (Pair) Rugged and Water Resistant Walkie Talkies, up to 32 mile Extended Range & 40 Channels, NOAA Weather Chanels and Weather Alerts."  www.walmart.com/ip/Cobra-RX385-Two-Way-Radios-Pair-Rugged-Water-Resistant-Walkie-Talkies-32-mile-Extended-Range-40-Channels-NOAA-Weather-Chanels-Alerts/814316130

But most were just ordinary cell phones.  The Defendants could not hear Trump's speech

because the cell phone network and towers were overloaded.[25]  PEZZOLA lacks knowledge of

the rest of the paragraph but finds its allegations fantastical.

> ***Answering Complaint Par. 126)***        The paragraph is compound.  PEZZOLA DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,

---

[25]        PCMAG, *infra.*

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   No such thing was planned nor could it be orchestrated.

*Answering Complaint Par. 127)*     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

*Answering Complaint Par. 128)*     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Also note that Tarrio was in Baltimore, Maryland, at the time.  So perhaps putting weight on such a comment is a misunderstanding.

*Answering Complaint Par. 129)*     The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Other than law enforcement, investigations prove that there were 2 out of 10,000 demonstrators who had hand guns which they never touched or withdrew from hiding and never used or brandished.  There were no explosives other than those held and used by law enforcement officers.  Defendant is not aware of any knives; certainly none were used or brandished on January 6, 2021.  There were no radio systems – only smart phones some of which are advertised on commercial television for business use as mimicking walkie-talkies.

*Answering Complaint Par. 130)*     The paragraph is compound other than the lack of clarity as to when "At this point" refers to, PEZZOLA agrees with the factual allegations and details of the paragraph.  According to the then Parliamentarian, Nancy Pelosi was removed from

the Dais or Rostrum at 2:13 PM EST.  Thus, the decision to recess must have been significantly earlier than 2:13 PM.  The House reconvened for a few minutes and then recessed again at around 2:29 PM.  The Senate recessed at around 2:28 – 2:29 PM.

  ***Answering Complaint Par. 131)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   The allegations once again engage in attempted psychic mind-reading.  But the Defendants were unable to closely follow or respond to Trump's speech, as explained by PCMAG the following day.  The allegation that "As TRUMP's speech played from a loudspeaker, one man said, 'There's about a million people on their way now.'"  sounds like the ZELLO telephone conference call which Jessica Watkins participated in.  The participants of the ZELLO call were scattered all around the United States as far away as California.  Listening to Trump's speech on a speaker and commenting on it sounds like someone watching the news on television in their house.

  ***Answering Complaint Par. 132)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   To the best of PEZZOLA'S  knowledge, there were and have never been any white supremacists or such sentiments in any of the organizations involved in contesting the 2020 election or demonstrating on Capitol Hill on January 6, 2021.  One of the primary leaders was ALI ALEXANDER, a/k/a Ali Abdul Razaq Akbar, a/k/a Ali Abdul Akbar, an African-American man of Arab descent.  The head of the PROUD BOYS is a Black Cuban-American.  The Vice President of the Oath Keepers and the leader of all operations in the Washington, D.C. area are

both African-American.  A small group of Oath Keepers famously helped African-American Lt. Tarik Johnson of the USCP gain the trust and cooperation of the crowd to relocate dozens of USCP officers without incident.  https://www.youtube.com/watch?v=7mIPR8vZkA4  The race-baiting of the Plaintiff's ideological attorneys is ridiculous and reprehensible.



Oath Keepers Assisting U.S. Capitol Police through crowd

U.S. Capitol Police Lt. Tarik Johnson

*USCP Officers led by Lt. Tarik Johnson (bottom center wearing red MAGA cap) escorted through the crowds by Oath Keepers telling crowd on bullhorn to make a path for the officers*

**Answering Complaint Par. 133)**    The paragraph is compound.  RHODES DENIES

each and every allegation or factual detail of the paragraph, made or which might be inferred,
interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as
erroneous.     Defendants did not engage in any attack.



*Trump supporters peacefully demonstrating*

Before dawn two cars pulled up alongside the sidewalk on the edge of the U.S. Capitol Grounds
along Second Street West and unloaded prefabricated sections of lumber and assembled a mock
gallows.  Before 7:00 AM the simple toy gallows was  finished and one of the four men involved
walked past a hotel and away from Union Station to a little known café next to an FBI building
to have coffee.  No one would know about the little café unless they had contacts with the FBI.
See:  https://justthenews.com/government/federal-agencies/j6-gallows-builders-remain-
unidentified-while-fbi-and-doj-continue and
https://www.washingtonexaminer.com/news/washington-secrets/2447016/new-suspicions-on-

who-built-jan-6-gallows/    Demonstrators defended themselves but did not assault anyone.
Probably 99.9% of the demonstrators simply stood peacefully.  A few defended themselves and
others against the violence initiated by law enforcement officers.

*Answering Complaint Par. 134)*    The paragraph is compound.  PEZZOLA has no
knowledge of the factual allegations and details of the paragraph.

*Answering Complaint Par. 135)*    The paragraph is compound.  PEZZOLA DENIES
each and every allegation or factual detail of the paragraph, made or which might be inferred,
interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as
erroneous.

*Answering Complaint Par. 136)*    RHODES has no knowledge of the factual
allegations and details of the paragraph.

*Answering Complaint Par. 137)*    The paragraph is compound.  PEZZOLA DENIES
each and every allegation or factual detail of the paragraph, made or which might be inferred,
interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as
erroneous.   No walls were defaced.  All art was respected and was left untouched.  No one
urinated unless they were prevented from reaching a bathroom in time.  No one smeared any
feces on any walls.  No monuments were wrecked.  No memorials were damaged.  The honor
and respect exhibited for the contents of the U.S. Capitol and the building was remarkable.

*Answering Complaint Par. 138)*    The paragraph is compound.  RHODES DENIES
each and every allegation or factual detail of the paragraph, made or which might be inferred,
interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as
erroneous.    The OATH KEEPERS never used ZELLO for communication.  The Zello app is a
remote group chat program.  None of the people on the Zello call were at the U.S. Capitol.  They

were watching the news on television, making irresponsible comments and trash-talking. One leader of the chat was in California. Another said he would like to join the events in D.C. but it would take him 12 hours to drive to D.C. The lack of crowd noise on the Zello call is very noticeable.

    ***Answering Complaint Par. 139)***    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

    ***Answering Complaint Par. 140)***    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

    ***Answering Complaint Par. 141)***    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

    ***Answering Complaint Par. 142)***    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. The Plaintiffs quote a message from MELE that is conditional on "**just in case.**" Thus the Plaintiffs here and in companion lawsuits actually know that there was no plan or intent to engage in any plan or conduct any attack but wanted to be in Washington, D.C. "**just in case.**" There were no attackers but no one shouted what is claimed. Again, this is most likely James

Goldston's Hollywood movie version altering the videos.  Trump's speech was never accessible to those at the U.S. Capitol because the cell phone system was overloaded and no one played it on a bullhorn.  On the contrary, the demonstrator famously wearing a cheap Halloween Viking costume, Jacob Chansley, read Donald Trump's tweets at the East Rotunda and Columbus Doors, telling everyone it was time to go home.  Ethan Nordean claiming "he was 'facing jail time cuz we followed [TRUMP's] lead'" does not mean that he attacked the Capitol or Trump ever suggested that he do so; it can mean a dozen different things.   PEZZOLA DENIES every other allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, but most of all objects that the Plaintiffs and others apparently do not know how to read the English language, as the statements quoted, if said, do not mean what the Plaintiffs claim.

*Answering Complaint Par. 143)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  But, once again, PEZZOLA mostly DENIES that the alleged statements have any meaning remotely like what these Plaintiffs here and those in related lawsuits are pretending.  500,000 to 1 million demonstrators came to the Rally on the Ellipse in the morning of January 6, 2021.  That has no relationship of any kind to the attack that never happened at the Capitol.

*Answering Complaint Par. 144)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.to the extent he has any knowledge.  Once again, the Plaintiffs' learned Left-wing lawyers seem incapable of distinguishing between events at the Ellipse and events at the U.S.

Capitol.Donald Trump as is overwhelmingly proven ordered 10,000 to 20,000 National Guard troops to keep the peace in Washington, D.C. and many actors including Nancy Pelosi, Mayor Muriel Bowser, Katrina Pierson, Pentagon "TV generals" and others each independently blocked Trump's orders.  The Congress is a separate branch from the Executive Branch and the President is not responsible for the security of Congress.  Otherwise, Congress would be vulnerable and beholden to the President.  Having done everything possible he could do, Trump would not be expected to do any more whether he watched television or not.  Trump could not "call off the attackers" because no attackers answered to him.  Trump never suggested that anyone attack the Capitol and 99.9% of demonstrators did not.  Trumps' speech was in no way incendiary and is protected by the First Amendment to the U.S. Constitution.  While there were no attackers, demonstrators on Capitol Hill were not listening to Trump's speech because they could not do so.  As PCMAG describes in detail the cell phone network was overwhelmed and video files would be affected worst of all.

*Answering Complaint Par. 145)*      The paragraph is compound.  RHODES DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    The tweet quoted does not in any way "egg" anyone on, but is benign and harmless.

*Answering Complaint Par. 146)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Trump's benign tweet from 2:24 PM was read over a megaphone at around 4:22 PM by a demonstrator as he read all tweets and messages together including Trump's call for

everyone to go home and his own additional message that it was time for everyone to go home. No one chanted any of the things mentioned in the paragraph. Those are statements from people watching television in their homes talking on the ZELLO app, which former ABC News President James Goldston in his Hollywood movie version of the video superimposed on video of the crowds. The Select Committee literally fabricated evidence.

**_Answering Complaint Par. 147)_**    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Trump knew that he had ordered 10,000 to 20,000 National Guard troops to be deployed to keep the peace.

**_Answering Complaint Par. 148)_**    The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Once again, the Plaintiffs' attorneys employ the FBI's psychic mind-reading powers to tell us what someone was thinking or knew. Trump had no power to "call off" the demonstrators who were not attackers. Not only did he never tell anyone to attack the Capitol directly or indirectly, explicitly or implicitly, and he could not tell anyone what to do, but any such message would never reach the demonstrators on Capitol Hill as the cell phone network was overloaded, which PCMAG analyzed on January 7, 2021. In the fantastical world of this and related lawsuits, about 99.9% of the 10,000 demonstrators were engaged in violence and obviously could not stop and watch a video on their cell phone. Meanwhile the 99% of all demonstrators who might have been able to watch a video on their smart phone were not engaged in any violence anyway and did not need to be "called off."

*Answering Complaint Par. 149)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.    Among other falsehoods, the appellation of "attackers" is typical of the childish argument of this and related lawsuits, assuming rather than proving something to be true. Trump praising the 99.9% of demonstrators who were peaceful and expressed their opinions does not mean Trump was praising anyone who was violent. See response to paragraph 58 above.

*Answering Complaint Par. 150)*      The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous and denies that they have any significance to the lawsuit.



*Answering Complaint Par. 151)*      The paragraph is compound.  PEZZOLA has no knowledge of the  factual allegations and details of the paragraph including because he never

went inside the U.S. Capitol.

  ***Answering Complaint Par. 152)***  The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous and that the allegations have any significance to the lawsuit.

  ***Answering Complaint Par. 153)***  The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous and that the allegations have any significance to the lawsuit. Trump and others have a constitutional right to express their opinions about the 2020 election, which also happen to be correct. "To this day" Trump's statements and claims continue to be true and correct.

  ***Answering Complaint Par. 154)***  The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Among other falsehoods, the appellation of "attackers" is typical of the childish argument of this and related lawsuits, assuming rather than proving something to be true. Trump praising the 99.9% of demonstrators who were peaceful and expressed their opinions does not mean Trump was praising anyone who was violent.

  ***Answering Complaint Par. 155)***  The paragraph is compound. PEZZOLA has no knowledge of the  factual allegations and details of the paragraph. Even though much of the allegations are about supposed statements by PROUD BOYS, Pezzola has been locked up.

  ***Answering Complaint Par. 156)***  The paragraph is a statement of law to which an answer is not required but which seems correct.

***Answering Complaint Par. 157)***     PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  Video recordings prove that the USCP gassed themselves by firing tear gas into the wind which blew back upon themselves.[26]  PEZZOLA understands that no demonstrators had pepper spray or mace.  PEZZOLA is not aware of anyone spraying any fire extinguishers which in any event are designed to be safe – maybe not pleasant, but safe – for humans.

> Fire extinguishers that contain dry powder are generally not toxic but can be irritating. If the powder gets on your skin, you could experience itchiness and redness. Breathing in the powder can lead to a sore throat and an upset stomach.

Josiah Raiford , "Are Fire Extinguishers Toxic? Will the chemicals hurt me?"
FIRE FIGHTER NOW, August 19, 2022
https://firefighternow.com/are-fire-extinguishers-toxic-will-the-chemicals-hurt-me/

***Answering Complaint Par. 158)***     PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries. See ¶ 157

***Answering Complaint Par. 159)***     PEZZOLA rejects in the strongest possible terms

---

[26]     PEZZOLA assumes that this means the USCP officers were unfamiliar with their equipment, that they had not been properly trained by arrangement of Congressional leadership like Nancy Pelosi and Chuck Schumer.

any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries. See ¶ 157

 *Answering Complaint Par. 160)*  PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  Plaintiff does allege that he was physically assaulted but the government has demonstrated that by "assault" it means things that are not an assault.  Physical assault might make an injury possible or likely but it is not an allegation of a specific injury.  See ¶ 157  Video recordings totaling 44,000 hours do not contain or evidence any racial slurs, because there were none.  If there were, it would be looped on television news for the last four years.

 *Answering Complaint Par. 161)*  PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  Plaintiff does allege that she was physically assaulted but the government has demonstrated that by "assault" it means things that are not an assault.  Physical assault might make an injury possible or likely but it is not an allegation of a specific injury.  See ¶ 157

***Answering Complaint Par. 162)***      PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  Plaintiff does allege that he was physically assaulted but the government has demonstrated that by "assault" it means things that are not an assault.  Physical assault might make an injury possible or likely but it is not an allegation of a specific injury.  See ¶ 157  Any chemical pollutants were released by law enforcement officers against the demonstrators.  Video recordings totaling 44,000 hours do not contain or evidence any racial slurs, because there were none.  If there were, it would be looped on television news for the last four years.

***Answering Complaint Par. 163)***      PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  Plaintiff does allege that he was physically assaulted but the government has demonstrated that by "assault" it means things that are not an assault.  Physical assault might make an injury possible or likely but it is not an allegation of a specific injury.  See ¶ 157  Any chemical pollutants were released by law enforcement officers against the demonstrators.

***Answering Complaint Par. 164)***      PEZZOLA rejects in the strongest possible terms any relevance to any of the Plaintiffs' race.  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred,

interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous, including because the paragraph is "word salad" without actually alleging any particular injuries.  See ¶ 157  Any chemical pollutants were released by law enforcement officers against the demonstrators.  Only law enforcement officers had tear gas, and all tear gas was released by the officers, which is contributor negligence.

***Answering Complaint Par. 165)***    The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

## COUNT I

***Answering Complaint Par. 166)***    The paragraph restates the allegations of preceding paragraphs, which PEZZOLA categorically denies in full.

***Answering Complaint Par. 167)***    The paragraph is a statement of law to which an answer is not required but which seems incorrect.

***Answering Complaint Par. 168)***    The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

***Answering Complaint Par. 169)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

***Answering Complaint Par. 170)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned

from the paragraph and denies the legal claims and conclusions as erroneous.

     ***Answering Complaint Par. 171)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

     ***Answering Complaint Par. 172)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  PEZZOLA does not have knowledge of any injuries suffered by each of the Plaintiffs or the extent to which they have already been compensated, offset by contributory negligence, caused by intervening superseding causes, and the like but the Plaintiffs must seek remedy from those who injured them not opportunistically try to transform injury into a political agenda.

## COUNT II

     ***Answering Complaint Par. 173)***    The paragraph restates the allegations of preceding paragraphs, which PEZZOLA categorically denies in full.

     ***Answering Complaint Par. 174)***    The paragraph is a statement of law to which an answer is not required but which seems incorrect.

     ***Answering Complaint Par. 175)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.

     ***Answering Complaint Par. 176)***    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  The allegation that *each* (every Defendant) "had the power to prevent, or aid in preventing, the wrongs conspired to

be done" is – depending on the Defendant – preposterous.  Some Defendants would necessarily have more influence over events than others.  A few might be in a position to make significant changes.  Most would have no power to influence events.  No allegations are made sufficient to identify these.  It would be likely impossible to be more specific without substantial discovery.

   ***Answering Complaint Par. 177)***  The paragraph is compound.  PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  The paragraph postulates the scenario in which Trump and his agents did not exercise their First Amendment rights to educate the public as to the ways in which the 2020 election was fraudulent in voter fraud and election fraud and a failure to abide by established rules.  This is unconvincing at least and untrue on detailed examination.  The truth that the 2020 election was stolen from the American people and an incompetent but incredibly narcisstic mentally-impaired Joe Biden was falsely declared the winner did not originate with Trump or his team.  The alarm was first raised when an overwhelmingly Republican precinct in Antrim, Michigan reported 8,000 votes for Joe Biden and only 2,000 for Trump.  When this was challenged, the totals in the voting machines was flipped.  The ease with which voting totals could be erroneously tabulated and then just as easily adjusted alerted the entire nation to the fragile and unreliable nature of the voting machines.  This became a scandal that set off a nationwide alarm.  For example, as part of the desperate scramble to hide the fraud in the election, AFP Fact Check reassured the nation that the massively erroneous election results were a result of "user error" instead of a "software error."  https://factcheck.afp.com/michigan-county-vote-count-glitch-was-not-fraud  This of course does nothing to give any confidence to the results of the election.  The absurdity of commenting on the massive errors in the election results by saying its alright because it was

caused by one type of error instead of a different type of error reveals a profound dishonesty. Therefore, even if Trump and his team had remained silent, the distrust of the election results from 2020 would have arisen all the same.  Furthermore, most challenges and lawsuits were from the local or State Republican party – not from Trump.  So, again, had Trump remained silent the exposure of the fraudulent 2020 election would have occurred all the same. Furthermore, of course, the allegations from the 2020 election are true and have been confirmed and proven more true over time.  Moreover, neither Trump nor any member of his teams or representatives employed any "intimidation or threats to prevent the counting or certification of popular or electoral votes by certain states, the counting of electoral votes by Congress, or Biden and Harris from taking office."  Thus, nothing Trump might have done differently would have changed any of the subsequent events.  Moreover, Trump's "supporters did abide by all laws and the directives of law enforcement officers while rallying near the United States Capitol," to the great exasperation and irritation of those who simply hate Trump.  Evidence of USCP officers welcoming Trump supporters into the U.S. Capitol building itself at many entrances was desperately and feverishly suppressed to avoid the public learning that the Trump supporters did comply with both the law and the directions of law enforcement officers.  Chief Judge Beryl Howell established the erroneous standard that no government official can transform what is unlawful into lawful.  However, under 18 U.S.C. 1752 the crime is literally defined as entering and remaining "without authorization."  Therefore, contrary to Howell's error, a person "with authorization" has committed no crime but one "without authorization" maybe has (all other elements being satisfied).  Therefore, it was necessarily to intensely suppress the fact that many Trump supporters entering the Capitol were doing so on "the directives of law enforcement officers."  As explained above, TRUMP could not have "instructed the mob to cease the Attack

and leave the Capitol and its grounds after it began." Those standing peacefully on the Ground might have been able to get the message despite the overwhelmed cell phone network. But those very few like around 0.1% of the total engaged in violence would not have stopped to check their smart phones. Furthermore, people are not the robotic **automatons** that Leftist authoritarians assume. Those concerned about the election would not necessarily just obey Trump's recommendations. Meanwhile, Trump had already acted over the preceding several days to deploy 10,000 National Guard troops to keep the peace and was blocked by Speaker of the House Nancy Pelosi, Mayor Bowser, and others.

*Answering Complaint Par. 178)*    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions and the legal claims as erroneous, even though PEZZOLA lacks detailed knowledge of Alexander and Stone's activities. The Plaintiffs' attorneys again focus on raising money, this time to spread the truth about the 2020 election. It is baffling what Leftists think is required by way of money. Trump supporters could reach more people in an afternoon over the internet at no cost than would be reached by Leftists paying for full freight. The paragraph further alleges that "They further failed to aid in preventing the wrongs conspired to be done by neglecting and failing to alert law enforcement authorities of the unlawful conspiracy." But there was no conspiracy. It never existed. It never happened. Admittedly, the FBI OIG's report came out in December 2024, long after the Amended Complaint was filed. But the OIG found that of 26 informants on the FBI payroll, not a single one reported to FBI on any unlawful conspiracy. Those tasked with learning about and reporting on the conspiracy could not find one to report to the FBI on.

***Answering Complaint Par. 179)***     The paragraph is compound. PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. None of the Defendants could have "not attack[ed] the United States Capitol" because none of them did. Had they not attacked the Capitol, it would have been exactly what did actually not happen. The Defendants could not have "informed law enforcement of the plans to attack the Capitol to stop the count of electoral votes" because no such plans ever existed at any time. The Vice President of the Oath Keepers for months before the 2020 election was an FBI informant and yet had no information to report to the FBI about any such plans, because there never were any such plans. By contrast, had law enforcement officers not violated the law and initiated unprovoked violence against demonstrators for no reason and complied with the law requiring three (3) audible warnings and ensured a pathway for demonstrators to disperse for beginning arrests much less violence these Plaintiffs would not have been injured.

***Answering Complaint Par. 180)***     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. First, the Plaintiffs allege that Oath Keepers is vicariously liable for things that never actually happened at all. Second, it is not credible that if the allegations ever did occur that they would be within the scope of the Oath Keepers' "agency" or normal purpose. The Oath Keepers provides assistance with disaster relief and community assistance as an extension of its members' service as military veterans, former police and former firefighters. When waves of destructive violence attacked U.S. cities from 2012 through 2020, the Oath Keepers were drawn into providing volunteer security to protect property and human life and keep the peace, again always in coordination with

local law enforcement.

**_Answering Complaint Par. 181)_**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  The Plaintiffs suffered their injuries solely as a direct and proximate cause of Donald Trump's orders to deploy 10,000 to 20,000 National Guard troops to keep the police being blocked by the Plaintiffs' employer Speaker Nancy Pelosi and Senate Majority Leader Chuck Schumer, their fellow officers violating the law by initiating unprovoked violence against First Amendment protestors, their employers in Congress having only one-third of the USCP's strength report for duty that day, and their employers' failure to provide proper training and equipment.

## COUNT III

**_Answering Complaint Par. 182)_**     The paragraph restates the allegations of preceding paragraphs, which PEZZOLA categorically denies in full.

**_Answering Complaint Par. 183)_**     The paragraph is a statement of law to which an answer is not required but which seems incorrect.  Furthermore, the law does not apply because the alleged events occurred on Federal land not on land that the BRCA regulates.

**_Answering Complaint Par. 184)_**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions and the legal claims as erroneous, in each of the three categories asserted:  Even if any of the allegations were true, (1) no act of alleged terrorism occurred on territory governed by D.C. Law under the D.C. Anti-Terrorism Act of 2002, (2) no rioting or incitement to riot occurred on territory governed by D.C. Law including D.C. Code § 22-1322 but in any event the cause of action fails under

*Brandenburg v. Ohio, et al.* (3) no property was destroyed belonging to the District of Columbia or on territory governed by D.C. law including D.C. Code § 22-303.

***Answering Complaint Par. 185)*** PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Defendants' lawful actions were motivated by demanding Congress comply with the law as set forth in Amendments IXX (3) and XX (3) of the U.S. Constitution and the Electoral Count Act as it was in 2021. In no way did any demonstrator, even assuming the flatly untrue allegations made, act towards any law enforcement officer on the basis of their political beliefs. Instead, law enforcement officers blew Joshua Black's face off unprovoked, and then complained that they were slipping on Joshua Black's blood on the ground. See: https://open.ink/collections/j6 starting at time-stamp 18:00.



Law enforcement officers kicked an elderly women down the outside marble stairs not once but three times in quick succession. Law enforcement officers murdered Roseanne Boyland by

crushing her in the same manner as Derek Chauvin was convicted of murdering drug addict George Floyd, high on drugs at the time, by restraining him with a knee on Floyd's throat which was never on his throat but only on his back. Some demonstrators responded in self defense and the defense of others because of the violent actions of some law enforcement officers not because of their political beliefs or race or anything else.

*Answering Complaint Par. 186)*    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Plaintiffs were injured because their colleagues initiated unprovoked violence against crowds of demonstrators who could not retreat for lack of any pathway to retreat.

*Answering Complaint Par. 187)*    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Paragraph 187 is a political statement which indicts the Plaintiffs, their attorneys, and their colleagues. Furthermore, the paragraph alleges that the lawsuit does not allege any motivation of political affiliation but then alleges that political affiliation is the basis for their Count III. The Plaintiffs negate their Count III in the allegations of Paragraph 187.

*Answering Complaint Par. 188)*    PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. The Defendants were exercising their First Amendment protected rights of Free Speech and petitioning the government for redress of grievances demanding that Congress comply with Amendments XII and XX (3) of the U.S. Constitution and the Electoral Count Act, upon demonstrated lawlessness

by Congress and strong indications that Congress would break the law, including by Congress' studied and persistent ignorance of the governing law.

**Answering Complaint Par. 189)**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.   The record is clear that the demonstrators demanded compliance with the law by Congress without regard to anyone's political affiliation but if anything held fellow Republicans in the most contempt for being feckless cowards who knew their duty under the law but refused to do their duty.

**Answering Complaint Par. 190)**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  Even if the allegations of the Plaintiffs were true, no action alleged (though also untrue) was undertaken to "intimidate or coerce a significant portion of the civilian population of The District of Columbia."  The alleged events at issue took place on Federal property, to wit the U.S. Capitol Grounds and U.S. Capitol.  Similarly, the D.C. Anti-Terrorism Act of 2002 does not govern acts to "intimidate or coerce a significant portion of the civilian population of … The United States" occurring on Federal land.  None of the alleged actions took place on territory governed by D.C. nor with reference to any of the population of D.C., but only on the Federal territory of Capitol Hill.  Furthermore, the law's attempt to criminalize acts undertaken to "influence the policy or conduct of a unit of government by intimidation or coercion." D.C. Code § 22-3152(1) are either unconstitutionally void for vagueness or more clearly and directly in violation of the First Amendment to the U.S. Constitution.  Every citizen of the United States has a guaranteed constitutional right to "petition the government for redress of grievances."  Therefore, it is a

constitutional right to attempt to "influence the policy or conduct of a unit of government by intimidation or coercion."

**_Answering Complaint Par. 191)_**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  Even if the Plaintiffs' allegations were true, no property belonging to or on the territory of the District of Columbia was destroyed and certainly not maliciously.  The paragraph inadvertently admits that the Plaintiffs have no jurisdiction by identifying the property supposedly destroyed as being "the United States Capitol Building, its grounds, and its contents."  However, those are Federal property under Federal jurisdiction.  Indeed, 18 U.S.C. 1361 actually was enacted to apply, and that Federal law would pre-empt with regard to Federal property.  None of the actions complained of occurred on the territory of the District of Columbia.

**_Answering Complaint Par. 192)_**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  These allegations again become redundant and PEZZOLA'S  response to this paragraph is the same.  Defendants came to Washington, D.C. to exercise their First Amendment rights of Free Speech and petitioning their government for the redress of grievances, specifically demanding that Congress comply with the U.S. Constitution and the law.  The Oath Keepers, like apparently the Proud Boys, came to D.C. to provide volunteer security against the violence of ANTIFA, anarchists, and Leftist street thugs to those demonstrating in Washington, D.C.

**_Answering Complaint Par. 193)_**     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned

from the paragraph and denies the legal claims and conclusions as erroneous. The allegation is again redundant and PEZZOLA'S response is the same as before. Not only are the allegations factually untrue but the law as applied violates the U.S. Constitution as taught by *Brandenburg v. Ohio.*

  *Answering Complaint Par. 194)*   PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. Furthermore, the paragraph does not contain factual allegations to support a legal conclusion of "aided and abetted." That phrase is amazingly undefined and finds no definition anywhere including in common usage. But the paragraph and the Amended Complaint fail to state factual allegations sufficient to support such a legal conclusion. Just as examples, whom was aided and abetted? How were they aided and abetted? Was there an accidental effect of aiding and abetting, such as a tourist taking a photograph unknowingly steps in the path of a police officer chasing a suspect trying to get away? Or was there an intent to aid and abet someone?

  *Answering Complaint Par. 195)*   PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. However, specifically, PEZZOLA responds that no one knows what "joining with" (hundreds of attackers) means and is pretty sure that the Plaintiffs' counsel don't know what it means with any precision, either. Moreover, there were no attackers for the Defendants to "join with."

  *Answering Complaint Par. 196)*   PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous. No such actions

took place.  The paragraph would appear to refer to public statements and actions allegedly causing incitement, though not satisfying the standard of *Brandenburg v. Ohio*.  Therefore, PEZZOLA is able to answer on the basis of public statements ("legal acts") of the Trump related Defendants.  None of the Defendants incited or aided and abetted others to engage in a riot.  Furthermore, the paragraph does not contain factual allegations to support a legal conclusion of "aided and abetted."

      ***Answering Complaint Par. 197)***     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  Once again, these attorneys like those in related cases and other commentators and actors seem unwilling or unable to distinguish between the 500,000 to 1 million demonstrators who attended the "Women for America First" event on the Ellipse portion of the Washington Mall (park) as opposed to the roughly 10,000 demonstrators who went to Capitol Hill.  Travel to Washington, D.C. is a fundamental and essential part of the economy of Washington, D.C. with roughly 26 million tourists and visitors from around the world every year.  This has nothing to do with the protests on Capitol Hill.

      ***Answering Complaint Par. 198)***     PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  Furthermore, no property alleged to have been injured, broken or destroyed, even if that were true, is property of the District of Columbia.  The allegations would be governed by 18 U.S.C. 1361.  That Federal law must pre-empt D.C. law.  None of the allegations took place on territory of the District of Columbia nor involved any property of the District of Columbia.

## COUNT IV

***Answering Complaint Par. 199)***        The paragraph restates the allegations of preceding paragraphs, which PEZZOLA categorically denies in full.

***Answering Complaint Par. 200)***        PEZZOLA responds that unless the unprovoked violent attacks of the Plaintiffs' colleagues are somehow chargeable to one, some, or more of these particular Plaintiffs -- such as being conducted together -- or demonstrators acted in self-defense or the defense of others, then some persons as yet unidentified attacked and injured the Plaintiffs for which injuries the Plaintiffs should be compensated.  We have seen January 6 demonstrators outrageously prosecuted for raising an arm to defend themselves from being struck by police; this is not mere speculation.  No plaintiff in any case can be battered by their victim trying to defend himself against a plaintiff's violence against them.  But assuming that the Plaintiffs did not create the problem, then the Plaintiffs were wrongfully injured and would be entitled to compensation, just not from these Defendants.  However, the allegation is limited to "John Doe Defendants and others" and would seem to exclude any of the Defendants in this case.  Furthermore, use of the phrase "offensive bodily contact" is a concern because this is a term of art in the old common law for a *harmless* touching that is unconsented.  Under the old common law given someone a kiss or shaking their hand could be an "unconsented offensive bodily contact."  Therefore, the paragraph is overly-broad including both incidents that could and/or did cause injury and those that did not, mixed together.

***Answering Complaint Par. 201)***        PEZZOLA DENIES each and every allegation or factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned from the paragraph and denies the legal claims and conclusions as erroneous.  There are no allegations of how any of the Defendants aided or abetted anyone in relation to the actions

alleged to have occurred on January 6, 2021, on Capitol Hill.  Each Defendant was and is aware

that all of the allegations by these Plaintiffs' attorneys and by others are provably false.

**Answering Complaint Par. 202)**    PEZZOLA DENIES each and every allegation or

factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned

from the paragraph and denies the legal claims and conclusions as erroneous.  First, the Plaintiffs

allege that Oath Keepers is vicariously liable for things that never actually happened at all.

Second, it is not credible that if the allegations ever did occur that they would be within the

scope of the Oath Keepers' "agency" or normal purpose.  The Oath Keepers provides assistance

with disaster relief and community assistance as an extension of its members' service as military

veterans, former police and former firefighters.  When waves of destructive violence attacked

U.S. cities from 2012 through 2020, the Oath Keepers were drawn into providing volunteer

security to protect property and human life and keep the peace, again always in coordination with

local law enforcement.

**Answering Complaint Par. 203)**    To the best of PEZZOLA knowledge, no Defendant

conspired with anyone, not at least one other person nor even with themselves in their own

thoughts, to cause offensive bodily contact to any of the Plaintiffs or any other law enforcement

officer, except in self defense.  PEZZOLA notes that "offensive bodily contact" is an old term of

art from the common law which includes harmless but unexpected contact.  Under the old

common law definition, tapping someone on their shoulder to get their attention would qualify as

an unconsented bodily contact which might be offensive in the point of view of the person

touched.  PEZZOLA further responds that a conspiracy requires an agreement to do an unlawful

act as its object, therefore negligence or foreseeability would not support conspirator liability.

However, Defendants did not take nor agree with anyone to take any action that would

foreseeably cause injury.  The Defendants planned and agreed to exercise their First Amendment

Free Speech rights and rights to petition their government for the redress of grievances protected

by the U.S. Constitution.  The Oath Keepers in particular planned to keep the peace and prevent

ANITIFA, anarchists, and leftist street thugs from attacking Trump supporters.

**Answering Complaint Par. 204)**    PEZZOLA DENIES each and every allegation or

factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned

from the paragraph and denies the legal claims and conclusions as erroneous.

## COUNT V

**Answering Complaint Par. 205)**    The paragraph restates the allegations of preceding

paragraphs, which PEZZOLA categorically denies in full.

**Answering Complaint Par. 206)**    PEZZOLA responds that unless the unprovoked

violent attacks of the Plaintiffs' colleagues are somehow chargeable to one, some, or more of the

Plaintiffs such as being conducted together, or demonstrators acted in self-defense or the defense

of others, that some persons as yet unidentified attacked and injured the Plaintiffs for which they

should be compensated.  We have seen January 6 demonstrators outrageously prosecuted for

raising an arm to defend themselves from being struck by police; this is not mere speculation.

No plaintiff in any case can be placed in imminent fear or apprehension of their victim trying to

defend himself against a plaintiff's violence against them.  But assuming that the Plaintiffs did

not create the problem, then the Plaintiffs were wrongfully injured and would be entitled to

compensation, just not from these Defendants.  However, the allegation is limited to "John Doe

Defendants and others" and would seem to exclude any of the Defendants in this case.

Furthermore, use of the phrase "apprehensive of imminent harmful or offensive contact" is a

concern because "offensive contact" is a term of art in the old common law for a *harmless*

touching that is unconsented.  Under the old common law given someone a kiss or shaking their

hand could be an "unconsented offensive bodily contact."  Therefore, the paragraph is overly-

broad including incidents that apparently caused injury and those that possibly did not, mixed

together.

**Answering Complaint Par. 207)**       To the best of PEZZOLA knowledge, no Defendant

conspired with anyone, not at least one other person nor even with themselves in their own

thoughts, to cause offensive bodily contact to any of the Plaintiffs or any other law enforcement

officer, except in self defense.  PEZZOLA notes that "offensive bodily contact" is an old term of

art from the common law which includes harmless but unexpected contact.  Under the old

common law definition, tapping someone on their shoulder to get their attention would qualify as

an unconsented bodily contact which might be offensive in the point of view of the person

touched.  PEZZOLA further responds that a conspiracy requires an agreement to do an unlawful

act as its object, therefore negligence or foreseeability would not support conspirator liability.

However, Defendants did not take nor agree with anyone to take any action that would

foreseeably cause injury.  The Defendants planned and agreed to exercise their First Amendment

Free Speech rights and rights to petition their government for the redress of grievances protected

by the U.S. Constitution.  The Oath Keepers in particular planned to keep the peace and prevent

ANITIFA, anarchists, and leftist street thugs from attacking Trump supporters.

**Answering Complaint Par. 208)**       PEZZOLA DENIES each and every allegation or

factual detail of the paragraph, made or which might be inferred, interpreted from or gleaned

from the paragraph and denies the legal claims and conclusions as erroneous.  First, the Plaintiffs

allege that Oath Keepers is vicariously liable for things that never actually happened at all.

Second, it is not credible that if the allegations ever did occur that they would be within the

scope of the Oath Keepers' "agency" or normal purpose.  The Oath Keepers provides assistance with disaster relief and community assistance as an extension of its members' service as military veterans, former police and former firefighters.  When waves of destructive violence attacked U.S. cities from 2012 through 2020, the Oath Keepers were drawn into providing volunteer security to protect property and human life and keep the peace, again always in coordination with local law enforcement.

*Answering Complaint Par. 209)*        To the best of PEZZOLA knowledge, no Defendant conspired with anyone, not at least one other person nor even with themselves in their own thoughts, to attempt or threaten to inflict physical harm to any of the Plaintiffs or any other law enforcement officer.  Demonstrators are often seen on video recordings appealing to law enforcement officers to support their rights to demonstrate, thus indicating no expectation of any physical conflict.  Defendants did not take nor agree with anyone to take any action that would foreseeably cause injury.  There was no conspiracy to assault the Plaintiffs or any law enforcement officers.  The Defendants planned and agreed to exercise their First Amendment Free Speech rights and rights to petition their government for the redress of grievances protected by the U.S. Constitution.  The Oath Keepers in particular planned to keep the peace and prevent ANITIFA, anarchists, and leftist street thugs from attacking Trump supporters.

*Answering Complaint Par. 210)*        It appears that the Plaintiffs here were injured, including by the mis-use by their law enforcement colleagues of tear gas and pepper spray which only law enforcement officers possessed that day.  However, to the extent of PEZZOLA'S knowledge of the Defendants and the circumstances, none of the Defendants assaulted or injured any law enforcement officers including these Plaintiffs.  None of the Defendants to PEZZOLA'S knowledge conspired or aided and abetted anyone to do anything other than exercise their rights

of Free Speech and petitioning the government for redress of grievances.

April 28, 2025                         RESPECTFULLY SUBMITTED,


                                      _/s/ Roger Roots_

                                      Roger Roots, Esq.
                                      **JOHN PIERCE LAW, P.C.**
                                      21550 Oxnard Street,
                                      3rd Floor, PMB 172
                                      Woodland Hills, CA 91367
                                      (775) 764-9347
                                      rroots@johnpiercelaw.com
                                      _Civil Attorney for Elmer DOMINIC PEZZOLA_

### AFFIRMATIVE DEFENSES [27]

Plaintiff's claims in the Amended Complaint should be dismissed in Defendant PEZZOLA' favor based upon the following affirmative defenses.  The Defendant specifically alleges as true each and every factual circumstance and element of each Affirmative Defense.

A)  Contributory Negligence:  Leadership of the U.S. Capitol Police and the District of Columbia's Metropolitan Police Department, are significantly responsible for the damages alleged in the Complaint.  This is not meant to shift the blame as a moral matter or to under-appreciate the law enforcement officers who are similar to many of the Oath Keepers' membership, but under the law this affects the quantum of damages or even liability if the jury finds under the District's recently amended law that the District was more than 50% responsible.  Again, the Defendant assumes that the Federal Government is responsible for indemnifying any law enforcement officers who were injured.

For example, Congressional leadership – the Plaintiffs' bosses – Nancy Pelosi and Chuck Schumer and the District of Columbia Mayor Muriel Bowser refused Trump's offer of 10,000 to 20,000 National Guard troops, pre-authorized by then Commander-in-Chief President Donald Trump, to protect the U.S. Capitol building and other areas of the District, despite being advised by federal law enforcement and security officials to take this action.  The District did request about 153 National Guardsmen for traffic control only, and these were granted

---

[27]    Credit due to Thomas Caldwell's attorney David Fischer from whose Answer Harrelson incorporates his Affirmative Defenses.

several days before January 6, 2021, and were in fact on duty and deployed on July 5-6, 2021. Therefore, Congressional leadership as the Plaintiffs' bosses were fully aware that it could have requested additional National Guardsmen for other needs beyond just traffic duty, because they actually did request approximately 153 National Guardsmen for traffic duty and received approval for them. The Congressional leadership knows the process.

Furthermore, Mayor Bowser and Congressional leadership allowed Antifa, so-called (mis-named) Black Lives Matter (consisting of White privileged liberals simply seeking to create devision), anarchist, and other Leftist protestors to riot, run amok, batter Washington, D.C.'s Metro Police Department officers, commit arson, burn police cars, throw bricks and frozen water bottles, and destroy public property from 2017 through 2020. Congressional leadership and the District of Columbia celebrated and rewarded the rioters such as by renaming a street as Black Lives Matter Plaza, thereby capitulating to the violent riots. Nancy Pelosi, Chuck Schumer and other Congressional leaders who are the Plaintiffs' bosses engaged in a knee-bending ceremony in the Capitol signaling submission to the Leftist and anarchist street gangs. This encouraged and incited further violent street riots. Congressional leadership effectively endorsed and encouraged left-wing and anarchist rioters to burn churches, burn businesses, burn cars, and burn buildings; to topple historical statues; fomented a violent attack upon the White House as the nation's world-wide headquarters of its military and foreign policy and crisis management and which resulted in law enforcement officers being assaulted and injured and causing the U.S. Secret Service to evacuate President

Trump from the Oval Office; failing to provide security for Republican U.S. Senators such as Rand Paul (R-KY), who was assaulted, battered, and threatened by a mob of BLM and Antifa protestors; and otherwise encouraging and tacitly approving of unruly and violent behavior.  Congressional leadership's refusal to oppose violent rioting along with the District's officials doing likewise clearly contributed to the damages and injuries that Plaintiffs alleges in the Amended Complaint.  Accordingly, PEZZOLA asserts the affirmative defense of contributory negligence and superseding intervening causes.

PEZZOLA and other Defendants came prepared to defend themselves against lawless rioters whom the Plaintiffs celebrated and coddled for years and were then falsely blamed for being ready to defend themselves and others where Congressional leadership and the District of Columbia failed to maintain order and safety.  The Defendants' preparation to meet such Left-wing violence was a necessity in light of these street wars.

B) Proximate Causation and/or Mitigating Damages:  PEZZOLA did not commit any violence nor any property destruction.  The Plaintiffs are suing PEZZOLA for what other people did, mostly people who are unidentified and/or whom PEZZOLA has never met or known.  A correct analogy is that a jewelry store left the door open, but doesn't know who robbed it, so they are accusing random, innocent people found walking down the street who did not do it.  Most of the clashes between demonstrators and police began when the District of Columbia's MPD arrived and took a very different approach than most of the U.S. Capitol Police.  On one body-cam video, USCP officers are seen and heard confronting

MPD officers asking "*What* are you doing???" as MPD officers fought with demonstrators. MPD officers, like USCP officers, did not follow their training or instructions concerning the use of force and especially use of non-lethal force. Clashes with USCP and MPD officers and demonstrators were inflamed when police unlawfully (contrary to rules and instructions) fired rubber bullets and other munitions at the heads of demonstrators from above and blew out part of the face of demonstrator Joshua Black. **"The Blood on the Marble"** was from Joshua Black and other pro-Trump demonstrators, not from the police. Many police have mentioned in public or testified in Congress about slipping on blood. But it was the blood of Trump supporters they were slipping on – as proven by video recordings. Furthermore, the USCP leadership knew that there was a planned "March to the Capitol" on the streets of Washington, D.C. MPD accommodated the march with deployment of police blocking side streets while allowing the march along Pennsylvania Avenue, N.W. Yet the MPD deployed exactly zero (0) MPD officers at the terminus of the "March to the Capitol" leaving only 5 USCP officers standing behind some portable bike racks near the fountain now known as the "Peace Monument." Finally, the USCP had the ability to use the building's massive public address system to warn the crowds to disperse, which is heard on French TV's raw video at dusk. But they did not. . These actions would have mitigated the damages claimed.

C)  Intervening superseding cause. Congressional leadership's handling of the situation was an intervening superseding cause of damages that the Plaintiffs claim. In part this means that there was a cause of some, many, or all of the

damages over which the Defendant had no control. It means in part that the proximate causation chain was interrupted.

D)  Mistaken Identity:  While in general plaintiffs may often have to start with a lawsuit to find out who was actually to blame for injuries, clearly that was not PEZZOLA.  Out of around 500,000 to 1 million demonstrators in the District of Columbia on January 5-6, 2021, with about 10,000 demonstrators at and around the U.S. Capitol and Capitol Grounds, and 1, 583 charged mostly for misdemeanor trespassing, these Defendants are not the people responsible for what the Plaintiffs complain of.

E)  Lack of Damages – Injuries to USCP Officers:  While injuries to anyone, especially police officers, are a very serious matter, nevertheless for the purposes of a legal process to assign responsibility, the Plaintiffs' Complaint provides very little detail about who was injured, how, how much, and any indications as to how (context).  Naturally Defendant is not suggesting public disclosure of names or personally identifying information or HIPPA-protected medical information. But at some point in some way the details of injuries claimed with regard to a large number of officers must be alleged or disclosed.  While of course money alone cannot fully remedy physical injuries or related effects, the Amended Complaint has not identified how much of the costs (to the extent that a monetary remedy can be effective) have already been paid by the Federal Government.

April 28, 2025                              RESPECTFULLY SUBMITTED,


                                              */s/ Roger Roots*

                                              Roger Roots, Esq.

**JOHN PIERCE LAW, P.C.**
21550 Oxnard Street,
3rd Floor, PMB 172
Woodland Hills, CA 91367
(775) 764-9347
rroots@johnpiercelaw.com
*Civil Attorney for Elmer DOMINIC*
*PEZZOLA*

CERTIFICATE OF SERVICE

I hereby certify that, on April 28, 2025, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.   To the extent that some Defendants are not represented by counsel, the firm will serve them by mail, postage prepaid.

*/s/ Roger Roots*
Roger Roots, Esq.