UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH, *et al.*,<br><br>　　　　　Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 1:21-CV-02265-APM |

**PLAINTIFF OFFICER CONRAD SMITH'S RESPONSE
TO RONALD MELE'S PREMATURE SUMMARY JUDGMENT MOTION**

Plaintiff Conrad Smith ("Officer Smith") submits this Response in opposition to Defendant Ronald Mele's ("Mele") summary judgment motion ["Motion" ECF No. 394-1].  This Response is supported by a separate "Counter Statement of Disputed Material Facts."  For reasons ranging from the Motion being premature because fact discovery is still ongoing (and Plaintiffs have not yet deposed Mele), disputes of material fact, errors in legal analysis, and technical violations of the Local Rules, the Court should deny Mele's Motion.

**I.　　Summary of the Argument**

Defendant Ronald Mele participated in the attack on the U.S. Capitol on January 6, 2021 (the "Attack").  He did so as part of a common effort to use force, intimidation and threats to stop Congress from certifying the Electoral College's vote, which would officially establish Joseph R. Biden, Jr. as the next President.  In legal terms, he conspired with others to use force, intimidation, and threats to prevent Government officials from doing their jobs, which is actionable under 42 U.S.C. § 1985(1) (Count I of Plaintiffs' Amended Complaint), and he aided and abetted the assault and battery of Plaintiffs (Counts IV and V, respectively) – including Officer Conrad Smith – who are seven current and former U.S. Capitol Police Officers defending the Capitol from the Attack.

Mele has moved for summary judgment on Officer Smith's conspiracy and assault and battery claims.[1] His Motion is based in part on Defendants' deposition of Officer Smith. But Plaintiffs, including Officer Smith, have not yet deposed Mele or any other Individual Defendants, Mele has not yet produced his documents in response to Plaintiffs' written discovery, depositions are stayed, and Plaintiffs have otherwise been stymied in their efforts to obtain fact discovery material to the conspiracy and Mele's role in the Attack. Under Fed.R.Civ.P. 56(d), this Court should deny Mele's Motion as premature because fact discovery material to his Motion remains open. Moreover, there already are material facts in the record that contradict Mele's account of his role in the Attack and how his actions proximately caused legally cognizable harm to Officer Smith. These disputes separately require the denial of his Motion.

There are also several technical deficiencies in Mele's Motion. He challenges the "plausibility" of Officer Smith's conspiracy claim, but in previously denying Defendants' Rule 12 motion, this Court already ruled the claim legally plausible, which is the law of the case. He challenges the credibility of Officer Smith's deposition testimony, but the credibility of witnesses is for the jury to decide. His Motion does not include referenced exhibits or a meaningful statement of undisputed material facts, perhaps because his lawyer – who drafted the motion before withdrawing from this case – recognized that the facts relevant to the Motion *were* in dispute.

For any number of the foregoing reasons, the Court should deny Mele's Motion.

## II. <u>Legal Standard</u>

Summary judgment should not be granted unless the moving party has shown that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *See* Fed.

---

[1] Mele's Motion also covers other claims that were previously dismissed and are not at issue in this case.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Mele, as the movant, bears the burden of establishing the absence of a genuine issue of material fact. *Id*. at 323. In ruling on a summary judgment motion, this Court must view all facts in the light most favorable to the non-moving party, Plaintiff Smith, and draw all reasonable inferences in his favor when determining whether a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. The Court Should Deny Mele's Premature Motion Per Fed.R.Civ.P. 56(d) Because Fact Discovery is Ongoing and Required to Resolve the Motion

Mele challenges the factual basis of Officer Smith's pending claims against him, including his participation in the conspiracy and the injury to Officer Smith caused by the conspiracy.

Mele's Motion is objectively premature because fact discovery is still ongoing (and depositions are currently stayed). Plaintiffs have not yet deposed Mele or other Individual Defendants. Mele himself has yet to produce documents in response to Plaintiffs' Request for Production or respond to Plaintiffs' Interrogatories. *See* ECF No. 392, Joint Case Status Report at 3. The requests for this discovery date back to July 2023 and June 2024. *Id.* Following a May 13, 2025 hearing, this Court ordered Mele to meet and confer with Plaintiffs on outstanding discovery. *See* Minute Order May 13, 2025. This occurred, and the parties agreed on a further extension of the deadline for Mele to respond to discovery until the earlier of ten days after the Court's ruling on Mele's Motion or September 12, 2025.

While Plaintiffs' discovery requests to Mele remain pending, Plaintiffs also have diligently pursued other avenues to obtain relevant discovery from other sources at significant time and expense to Plaintiffs, but that process remains ongoing. Other deposition and document discovery from parties and non-parties necessary to oppose Mele's Motion remains pending because of objections, obstruction, and/or delay by Defendants and non-parties. For example, Defendants

3

Martinez, Kinnison, and Warner, with whom Mele is alleged to have closely coordinated before and during the Attack, have failed to respond to various discovery requests, as detailed in Plaintiffs' recent Motion to Compel.  *See* ECF No. 409, "Plaintiffs' Motion to Compel Defendants Martinez, Warner, Kinnison, Nordean, Biggs, and Meggs to Respond to Discovery Requests and Respond to Initial Disclosures."  The discovery from Mele and other defendants and third-party witnesses[2] is important to revealing the scope of their collaboration and planning for the January 6th Attack and their participation in it, all of which bears on the extent of their participation in the alleged conspiracy and the cause of Plaintiff Smith's injuries.

The law is settled that when, as here, parties have not "had a full opportunity to conduct discovery," a court should deny a summary judgment motion.  *Orlowske v. Burwell*, 318 F.R.D. 544, 547 (D.D.C. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (2016)); *Crowley v. Vilsack*, 236 F. Supp. 3d 326, 331 (D.D.C. 2017) (denying summary judgment as "disfavored" before plaintiff has had full opportunity to conduct discovery); *Vance v. O'Rourke*, No. 18-CV-00577, 2019 WL 914010, at *9 (D.D.C. Feb. 22, 2019) ("Although the affidavit focuses on the

---

[2]     As for non-parties' obstruction of Plaintiffs' discovery efforts, consider the example of Caroline Wren, who played an important role in the January 6th Rally that preceded the attack on the Capitol.  Among other things, Ms. Wren communicated with others planning the Rally about Defendant Trump's intentions to start a march to the Capitol, and she communicated with Rally promoter Ali Alexander and others about the exact logistics for such a march.  *See Smith, et al., v. Wren*, No. 9:24-mc-81074 (S.D. Fla.), ECF No. 17, Movants' Motion for Contempt and Sanctions against Respondent, at 3-4 (June 17, 2025).  Ms. Wren refused to produce documents in response to a properly served subpoena duces tecum, thus requiring Plaintiffs to seek relief from a Judge in the Southern District of Florida, where the subpoena issued.  Ms. Wren ignored several Court Orders to produce the documents.  Then, on July 9, 2025, the Judge in the Southern District of Florida issued an Order fining Ms. Wren $2,000.00 per day until she produced the subpoenaed records.  *See id.*, ECF No. 23, Order on Motion for Contempt (July 9, 2025).  Within 24 hours of that Order, Ms. Wren sent an email to Plaintiffs' counsel with nearly 1,000 documents.  The email address that she used to transmit the documents to Plaintiffs' counsel is the same email address that Plaintiffs' counsel used to send her the Court's prior Orders.  *See id.*, ECF No. 24, Movants' Notice to Court (July 10, 2025).

need for documents as proof, presumably Plaintiff would like the opportunity to depose Tanner as well. Such basic discovery is appropriate before the court considers granting judgment in favor of Defendant."); *see also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … allow time to obtain affidavits or declarations or to take discovery.").

A request by the non-moving party for additional time to conduct discovery should thus be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (internal quotation and citation omitted). To obtain this relief, the non-moving party need only submit an affidavit, under Rule 56(d), which "state[s] with sufficient particularity … why discovery [is] necessary." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation and citation omitted). The affidavit should "outline the particular facts [the party] intends to discover and describe why those facts are necessary to the litigation [, as well as] … explain why he could not produce the facts in opposition to the motion." *Convertino v. DOJ*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (internal quotations and citations omitted). As described earlier, Plaintiffs *have* been diligent in pursuing discovery.

The Affidavit from Plaintiffs' Counsel accompanying this Response as Exhibit 1 meets the requirements of Fed.R.Civ.P. 56(d). It explains that once Plaintiffs can depose Mele and take other discovery, they expect to prove that Mele knowingly participated in the conspiracy to use force, intimidation and threat to stop Congress from certifying the Presidential election, aided and abetted the assault and battery of various individuals at the Capitol (including Capitol Police officers like Officer Smith who defended it), and proximately caused damage to Officer Smith.

5

For example, as explained in the Affidavit, among the facts that Plaintiffs intend to discover are who-said-what-to-whom in terms of Mele's communications with Defendants Martinez, Kinnison, and Warner and members of the Proud Boys and Oath Keepers about the planning to attack the Capitol, including those associated with the Three Percenters and members of the Proud Boys and Oath Keepers; what those people learned from others and shared with Mele with respect to the plan for the Attack and its purpose; what did Mele and others anticipate would happen during and as a result of the Attack; Mele's knowledge of the efforts by others leading up to January 6th to contest the results of the Presidential election; Mele's understanding of how the Attack on the Capitol would stop Congress from certifying the Presidential election; Mele's knowledge of guns, knives, and other weapons, including bear spray, pepper spray and other irritants, being brought to and/or into the Capitol during the Attack; Mele's knowledge of guns, knives, and other weapons, including bear spray, pepper spray, and other irritants, being used inside the Capitol against Capitol Police, including Officer Smith, during the Attack; what people inside the Capitol who participated in the Attack told Mele about the Attack after it occurred, including confronting, threatening, and physically attacking Capitol Police – including Officer Smith; the identity of people whom Mele told about the Attack after it occurred and what he said to them; the identity and whereabouts of documents that Mele prepared or received reflecting or referring to the Attack that were not introduced as exhibits in his criminal trial; whether Mele destroyed or tampered with any documents reflecting or referring to the planning for the Attack or the Attack itself or his or others' participation in the Attack; and the identity of social media sources and telephone numbers that Mele has used since October 1, 2020 to communicate with others about the Attack, his role in it, and his knowledge about others who participated in the Attack.

Plaintiffs anticipate that once they are able to take depositions and obtain requested documents from Mele and other Individual Defendants and non-parties, that discovery will explain how Mele and his co-conspirators' preparations for and participation in the Attack intentionally and foreseeably led to the violence inside and outside the Capitol; how the attackers' violence and force inside and outside the Capitol foreseeably caused Officer Smith's injuries; and Mele's role in the conspiracy.

Accordingly, based on Fed.R.Civ.P. 56(d) and controlling case law, the Court should deny Mele's Motion, and it need not reach the other issues presented in his Motion.

## IV. The Court Should Deny Mele's Motion Because the Court Has Already Ruled That Plaintiffs' Section 1985(1) Conspiracy Claim is Legally Plausible

Mele argues that Officer Smith's conspiracy claim is not legally "plausible." Motion at 12. However, this Court has already denied Defendants' motion to dismiss Plaintiffs' conspiracy claim, which is the law of this case. ECF No. 179, at 3-4 (rejecting Mele's argument regarding plausibility of causation), 11-12 (rejecting Mele's argument regarding plausibility of his participation in a § 1985(1) conspiracy); ECF Nos. 117, 6-7, at 11-13 (Mele Motion to Dismiss). A court should deny a summary judgment motion based on the law of the case when: (i) the movant reiterates legal arguments previously made in a motion to dismiss as to "the same issue;" (ii) "in [this] same case;" (iii) that the Court rejected in denying dismissal of the claim; and (iv) as to which Defendant "has presented no intervening change in controlling legal authority." *Smith v. Athena Constr. Grp., Inc.*, No. 2024 WL 1213393, at *2-3 (D.D.C. Mar. 20, 2024) (emphasis and internal quotation omitted) (quoting *LaShawn A. v. Barry*, 87 F. 3d 1389, 1393 (D.C. Cir. 1996)). Those elements

are met here. Therefore, this Court should reject Mele's "plausibility" argument based on the law of the case.[3]

V. **The Court Should Deny Mele's Motion Because There are Disputes About Facts Material to His Motion**

Mele's self-serving (and unsworn) characterization of his participation in the Capitol Attack as minimal, as though he merely appeared at the Ellipse Rally by happenstance, runs contrary to unrebutted facts and should be disregarded. There already are facts in the record – including in documents Mele cites in his Motion – that directly contradict Mele's characterization of his role in the Attack and demonstrate that he participated in a conspiracy to use force, intimidation, or threats to prevent Congress from certifying the Presidential election. This alone provides ample basis for the Court to reject Mele's Motion. With the ability to pursue discovery from Mele (and others), including Mele's admission to facts in the Government's Sentencing Memorandum and in charging instruments, on which he relies in his Motion, Plaintiffs anticipate being able to prove with admissible evidence additional facts that on their own dispute Mele's factual statements in his Motion and require the denial of his Motion.

For example, in response to Defendant Trump's December 19, 2020 "be there will be wild" tweet urging protestors to come to D.C. on January 6th,[4] Mele posted on Facebook on December 24, 2020 that he was going to rent a car and arrive on January 5 in Washington, D.C., Retyped Second Superseding Indictment, *United States v. Mele*, No. 21-CR-392, ECF No. 366, ¶ 29

---

[3] Mele further maintains that because the Government charged him with a lesser criminal offense in connection with the Attack, he could not have participated in the conspiracy alleged by Officer Smith and other Plaintiffs in this civil case. But the former does not foreclose the latter because, among other reasons, the different legal standards of proof and reasons unrelated to the merits explain why the Government may charge people with some crimes and not others.

[4] Gov't Sentencing Memorandum in *United States v. Warner, Martinez, Kinnison, and Mele*, No. 21-CR-392, ECF No. 452, at 3 (Apr. 12, 2024) [hereinafter "Gov't Sentencing Memo"].

8

(D.D.C. Nov. 7. 2023) [hereinafter "Superseding Indictment"], where he reserved a room for two nights at the Courtyard Marriott. *Id.* ¶ 30. Mele also posted messages encouraging other "soldiers" to "ready up," *id.* ¶ 33, and made clear that he was prepared to use violence by posting that he was bringing a firearm to D.C. in his rental car and concealing it under his seat on January 2, 2020. *Id.* ¶ 51; Gov't Sentencing Memo at 8-10. Mele joined the "California Patriots-DC Brigade" Telegram chat and discussed plans for the Attack. *Id.* at 39; *United States v. Mele*, No. 21-CR-392 (D.D.C.), Gov't Trial Ex. 903 at 10, Exhibit 2. He posted online that he was heading to D.C. not to rally but, in the words of one of his co-conspirators, to "take care of business because the time for talking was over." *Mele*, Trial Ex. 903 at 14. Mele's social media posts also showed that on January 6, he brought a knife, a magazine of ammunition, and bear spray. Gov't Sentencing Memo at 7. He wore a ballistic plate carrier and carried bear spray to the Attack, Gov't Sentencing Memo at 13-14; Am. Sentencing Memorandum of Defendant Ronald Mele, *United States v. Mele*, No. 21-CR-392, ECF No. 457, at 4 (D.D.C. Jan. 14, 2024), and posted online during the Attack that he (and others) were storming the Capitol. Gov't Sentencing Memo at 20-21. He and others advanced against the police defending the Capitol, as Mele shouted "Push! Push! Push! F[***] you! Push!." *Id.* at 20. When attackers threw police barricades to the ground, Mele and others marched forward right over them. *Id.* at 18. Mele, Martinez, and Kinnison then proceeded up the Upper West Terrace of the Capitol, where Mele "called for the crowd to push forward and announced on video that they were storming the Capitol." *Id.* at 20-21; Defendant Mele's Answer to Plaintiffs' Am. Complaint, ECF No. 202, ¶ 140, Mar. 16, 2023 ("… Mr. Mele admits to the video at the steps next to the Upper West Terrace…."). At 2:38 p.m. on January 6th, Mele shot a "selfie" video on the steps next to the Upper West Terrace of the Capitol, stating "We stormed the Capitol." Superseding Indictment ¶ 68. When his wife texted him that protesters had breached the Capitol and "they

9

[security] are evacuating VP Pence," Mele responded "Babe that was us." Gov't Sentencing Memo at 24.

Mele did not have to participate in every phase of the conspiracy or have personal knowledge of precisely what other co-conspirators were doing in carrying out the conspiracy to be a conspirator. *See Thompson v. Trump*, 590 F. Supp. 3d 46, 97 (D.D.C. 2022); ECF No. 179, at 11 (incorporating Court's holdings on conspiracy in *Thompson*). He simply had to agree to the common plan to use force, intimidation, or violence to stop Congress from certifying the Presidential election results.[5] *See Thompson*, 590 F. Supp. 3d at 97–98.

Because Mele planned his participating in the Attack with other Defendants, culpably associated himself with the Attack, participated in it as something that he wanted to bring about, and sought by his action to make it succeed, the Court should deny his Motion as to Count I. *See, e.g.*, *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("[O]nce the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy…. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable…. [And he] need not even have planned or known about the injurious action…."); *Thompson*, 590 F. Supp. 3d at 97 ("It is enough 'that members of the conspiracy in some way or manner, or through some contrivance, positively or tacitly[,] came to a mutual

---

[5] "[I]n the District of Columbia a conspiracy requires: an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act." *Halberstam v. Welch*, 705 F. 2d 472, 487 (D.C. Cir. 1983); *District of Columbia v. Proud Boys Int'l*, No. 21-cv-03267, 2023 WL 2733767, at *6 (D.D.C. Mar. 31, 2023) (Mehta, J.) ("A civil conspiracy is defined as an agreement between two or more people to participate in an unlawful act or a lawful act in an unlawful manner" (quoting *Hobson v. Wilson*, 737 F. 2d 1, 51 (D.C. Cir. 1984)). The agreement may be "express or tacit," *id.* (citing *Halberstam*, 705 F. 2d at 477), and "[a]ll coconspirators must share in the general conspiratorial objective, though they need not know all the details of the plan or even possess the same motives." *Id.* (citing *Hobson*, 737 F. 2d at 51).

understanding to try to accomplish a common and unlawful plan.'" (quoting 3B FED. JURY PRAC. & INSTR. § 167:30)); *id*. at 72 (ruling that emotional harm is "a concrete injury to establish standing to bring claims under Section 1985(1)").

Mele argues that the size of the crowd renders the idea of a common conspiracy "not only implausible but frivolous." Motion at 13. But the opposite is true: the mob's size made it more likely that the common goal of disrupting certification by intimidation, threat or violence would succeed. In this regard, size matters for the same reason that a conspiracy is a greater "threat to the public" – "because it 'decreases the probability that the individuals involved will depart from their path of criminality.'" *United States v. Recio*, 537 U.S. 270, 275 (2003) (cited by Mele) (quoting *Callanan v. United States*, 364 U.S. 587, 593-94 (1961)).[6]

### VI. The Court Should Deny Mele's Motion Because He or His Co-Conspirators Proximately Caused Officer Smith Legally Cognizable Damages, and at a Minimum, There is a Dispute About Facts Material to Causation

Mele argues that he did not proximately cause Officer Smith harm because he (Mele) did not participate in the Attack as *he* defines it. But the facts demonstrate that Mele conspired to cause, and participated in, the Attack, and Officer Smith's deposition testimony in this case establishes that he suffered harm as a result.

In his deposition, ECF No. 394-2,[7] Officer Smith testified that he was present during the Attack protecting the House Chamber, Smith Dep. at 61:20-24, which was unlike anything that he

---

[6] So long as the conspirators support a common plan, it does not matter that they may come to the conspiracy by way of separate agreements that ultimately build to an overarching conspiracy. This is so because, as the Supreme Court observed, "conspiracies involving … elaborate arrangements generally are not born full grown." *Blumenthal v. U.S.*, 332 U.S. 539, 556 (1947) (cited by Mele). "Rather they mature by successive stages which are necessary to bring in the essential parties." *Id*. at 556-57.

[7] Officer Smith's full deposition transcript is filed under seal at ECF No. 394-2. Plaintiffs are filing the attached excerpts from Conrad Smith's deposition transcript: pages 25, 50, 61, 71-72, 83-84, 87, 95-96, 98, 101. *See* Exhibit 3. In accordance with the Court's Order dated

11

had experienced in his 30+ years as a U.S. Capitol Police Officer. *Id*. at 25:4-6, 95:16-96:8, 98:15-20. This includes never before having been exposed to pepper spray or bear spray in his professional capacity. *Id.* at 50:5-14. When the Attack reached the House Chamber, he and others "proceeded to build barricades on the doors with the available furniture that [they] had in the Speakers' Lobby in the chamber." *Id.* at 68:1-7, 87:8-18. He saw the attackers "surging towards the doors, banging on the doors, and glass flying in." He heard a gunshot, the gunshot that killed Ashli Babitt, and yet the mob continued to attack the House Chamber doors. *Id.* at 71:4, 72:4-22, 83:10-17, 83:25-84:5. After barricading the Speaker's Lobby, Officer Smith helped barricade the House Chamber doors. *Id.* at 86:8-24. In addition to the noise and the violence, noxious gas stung Officer Smith's throat. *Id.* at 89:2-18. He testified that it had an "acrid[,] nasty taste." *Id*. at 89:9-18.

Officer Smith testified that he suffers from anxiety, grief, and emotional distress as a result of the Attack. *Id*. at 95:16-96:8; 98:15-20. At his deposition, he testified to experiencing heightened stress, anxiety, and grief because of the Attack:

> We were overrun. We – we – people just burst through and just smashed and destroyed. And the memory of that, I mean, it's going to linger, going to linger. That's – that's what – that's – I'm grieving over that. My loss of confidence and how – in my environment where I used to – where – where I am.

*Id*. at 98:15-20. Mele's Motion does not dispute any of this testimony.

Officer Smith indisputably sustained physical harm from noxious gas during the Attack. Mele has provided no admissible evidence supporting his assertion that Officer Smith was not harmed by pepper spray or other irritants, much less who caused those irritants to harm Officer

---

June 6, 2025, Plaintiffs withdraw their request to seal these specific pages. *See* Order, ECF No. 400 ("The Court will maintain under seal the transcript of the deposition of Conrad Smith attached to ECF No. 394, without prejudice to arguments that – if additional deposition pages become relevant in this case – such testimony should be publicly disclosed").

Smith, and Plaintiffs anticipate that this is an example of events that will be the subject of future discovery (*e.g.*, whether other Defendants or attackers had pepper spray, when they used it, and so forth).

Officer Smith has also suffered legally cognizable emotional distress caused by the Attack. This Court has already "recogniz[ed] emotional harm as a concrete injury to establish standing to bring claims under §1985(1)." *Thompson*, 590 F. Supp. 3d at 72. For purposes of defeating a summary judgment motion based on "lack of injury," Officer Smith's testimony about his ordeal is plainly sufficient. *See also Smith v. Athena Constr.*, 2024 WL 1213393, at *5 (Mehta, J.).[8]

The emotional harms that Officer Smith sustained as a result of the Attack are also legally cognizable damages from Mele's aiding and abetting the assault and battery. *See Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 99-100 (D.D.C. 2006) (denying summary judgment and holding that "a plaintiff may recover damages for mental suffering unaccompanied by physical injury where the plaintiff sues for an intentional tort;" further concluding that emotional distress damages are available for all tort claims because D.C. follows the Restatement (Second) of Torts, which authorizes such recovery); *see also Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978) (reversing trial court's dismissal of the complaint and remanding for trial, and recognizing that "[o]nce liability is established for intentional torts such as false arrest and battery,

---

[8] In *Athena Construction*, the relator testified about his emotional distress due to an allegedly retaliatory lawsuit against him. When asked about the damages he had suffered, he answered: "I was intimidated and it caused a lot of stress" and "I just had a lawsuit filed against me. It's intimidating." *Smith v. Athena Construction*, 2024 WL 1213393, at *5. While the court noted that, at trial, the relator would need to provide more evidence to support these "general statements" of emotional distress, "it is enough to survive summary judgment." *Id.* Suffice to say, the emotional distress Officer Smith suffered as a result of a physical attack (involving *inter alia* barricades and the shooting of Ashli Babbitt) is at least as injurious as the emotional distress the relator suffered from a retaliatory lawsuit in *Athena Construction*.

a plaintiff is entitled at least to nominal damages, as well as to compensation for 'mental suffering, including fright, shame and mortification ...'" (citation omitted)).

Officer Smith's injuries from the Attack were reasonably foreseeable, thus making them legally cognizable. Mele should have reasonably foreseen, among other things, that participating in a scheme to prevent Congress from discharging its Constitutional duties while being a body-armor-wearing, bear-spray-carrying member and encourager of a large, angry mob storming the Capitol could and would result in injuries to the Capitol Police present there. *See Sines v. Kessler*, 324 F. Supp. 3d 765, 796-97 (W.D. Va. 2018) (co-conspirators may be held liable for one defendant's decision to drive his car into the crowd, killing woman and injuring others; among other things, fellow defendants "ratified" his car attack by praising it after the fact, and such ratifications "plausibly demonstrate that Defendant Fields's actions were consistent with the conspiracy's avowed goals").

In this case, the risk that the mob would "Storm the Capitol" to "Stop the Steal" and injure the Capitol Police while doing so was at least as foreseeable as the car attack in *Sines*. From the first day the DC Brigade's Telegram chat was up and running, the group – which included Mele – ***actually foresaw***: (i) that violence would occur, and (ii) that the police would try *and fail* to prevent an attack. Gov't Sentencing Memo at 5; *United States v. Mele*, Gov't Trial Ex. 903 at 14 ("There are not enough cops to stop us!"). Even when dealing with acts of criminal conduct, which generally are not foreseeable, *see Marsh v. Barry*, 824 F. 2d 1139, 1143 (D.C. Cir. 1987), when the unlawful conduct *is foreseeable – because it has been foreseen* – the argument falls apart. *Marsh*, 824 F. 2d at 1144 ("Since rioting at the Jail was actually *foreseen*, at least rioting must have been foreseeable.").

14

Mele's Motion challenges the credibility of Officer Smith's deposition testimony. But the assessment of the credibility of his testimony is uniquely the province of the jury, and not a dispute resolvable on summary judgment. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010) (reversing grant of summary judgment on retaliatory transfer claim and applying the principle that "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge' at summary judgment…. Thus, we do not 'determine the truth of the matter,' but instead decide only 'whether there is a genuine issue for trial'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)).

## VII. The Court Should Deny Mele's Motion Based on its Legal Deficiencies

While Mele is now proceeding *pro se*, he *was* represented by counsel before and at the time that he filed his Motion. Thus, Mele's failure to comply with the Local Rules of this Court occurred while counsel represented him. Regardless, the subsequent absence of counsel does not excuse Mele from complying with the Local Rules of this Court. *See Apollo v. Bank of America, N.A.*, No. 17-cv-2492, 2019 WL 5727766, at *1 (D.D.C. Nov. 5, 2019) (*pro se* litigant "still must comply with the Federal Rules of Civil Procedure and this court's local rules," including Local Rule 7(h)(1); denying summary judgment even though, unlike Mele, *pro se* litigant supported motion with affidavit).

Mele's Motion suffers from several technical deficiencies that independently justify denial of his Motion. It is not accompanied by a statement of undisputed material facts that cites to evidentiary support in the record, as required by Local Rule 7(h)(1). It includes unspecified "facts" in three lengthy videos and references a number of "Exhibits" that are simply not included with his Motion.

15

## VIII. Conclusion

Based on the foregoing analysis, Plaintiff Conrad Smith requests that the Court deny Mele's Summary Judgment Motion. For the Court's convenience, a proposed Order accompanies this Response as Exhibit 4.

Dated: July 17, 2025

Respectfully submitted,

By: _____

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
Jeffrey T. Foreman, *pro hac vice*
SPERLING KENNY NACHWALTER, LLC
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
Tel:  (305) 373-1000
Email:  wjb@sperlingkenny.com
            ebh@sperlingkenny.com
            jtf@sperlingkenny.com

Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein D.C. Bar No. 90003967
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, N.W., Suite 900
Washington, D.C.  20005
Tel:  (202) 662-8390
Email:  ecaspar@lawyerscommittee.org
            mepstein@lawyerscommittee.org

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Babak Ghafarzade, *pro hac vice*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, N.Y.  10104
Tel:  (212) 390-9000
Email:  fgay@selendygay.com
            jmargolin@selendygay.com
            bghafarzade@selendygay.com

***Attorneys for Plaintiff Conrad Smith***

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5, a copy of the foregoing filing is being served electronically on those parties who have appeared and registered with the Court's ECF system. Plaintiffs are serving remaining Defendants via first class mail or other permitted means.

William J. Blechman

684640 1