UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. 1:21-CV-02265-APM |

**PLAINTIFF CONRAD SMITH'S RESPONSE
TO RONALD MELE'S "STATEMENT OF UNDISPUTED FACTS"
AND COUNTERSTATEMENT OF FACTS THAT DEFEAT SUMMARY JUDGMENT**

Pursuant to Local Rule LCvR 7(h)(1) and Fed. R. Civ. P. 56(c), Plaintiff Conrad Smith submits: (a) Officer Smith's Response to the "Statement of Undisputed Facts" set out on pages 4-11 of Defendant Ronald Mele's ("Mele") Motion for Summary Judgment; and (b) Officer Smith's Counterstatement of Facts, either or both of which defeat Mele's summary judgment motion.

**Response to Mele's "Statement of Undisputed Facts"**

For the Court's convenience, the sections of Mele's "statement of undisputed facts" are identified as "***Mele's Statements***" and are quoted below in single-space, followed by Officer Smith's double-spaced responses.

A.   **General Events of January 6, 2021**

***Mele's Statements***:  The Court can take judicial notice of two montage videos that were submitted by the Government and admitted into evidence in hundreds of January 6 trials.  These videos, marked exhibits 101 and 1201, feature montages of the events of January 6, 2021.  These exhibits are public records and are composed of videos authenticated by the Government and excerpts of the congressional record.  Defendant Mele also asks the Court to take judicial notice to the footage collected in the documentary *January 6, a True Timeline.* https://subsplash.com/u/-ZM3MTQ/media/embed/d/5txqjc9?logoWatermark=0. The documentary is a compilation of video footage taken from official CCTV and police body camera from January 6 that is public record.  Defendant Mele contends that arranging each of these videos individually is too cumbersome both for the Defendant and for the Court.  The video is undisputed and the events have been the subject

of hundreds of trials, more than any event in the history of the world. If there are any particular facts that the Court or the Plaintiffs contend are in dispute, Defendant Mele will produce the appropriate video separately.

**Response No. 1:** Pursuant to Federal Rules of Evidence 201, "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court may take judicial notice of a "government document available from a reliable source." *Massie v. Pelosi*, 590 F. Supp. 3d 196, 227 & fn. 23 (D.D.C. 2022) (citation omitted) (In connection with presenting the scientific argument in support of masking in the House of Representatives to protect against the spread of Covid-19, taking judicial notice of CDC report "reflecting the number of COVID-19 related cases and deaths in the United States") (citation omitted)). Mele's Motion does not include the referenced video. Accordingly, the Court cannot take judicial notice of a video that is not in the record. Even if presented, Mele has not provided sufficient information for the Court to evaluate the reliability of the video or to specifically identify which of his cited "facts" come from the Government's videos and which "facts" come from his conspiracy-theorist "documentary" video.

Moreover, the documentary appears to be biased: among other things, within the first minute of the video, the narrator states that "news organization and mass media have controlled the story of that day, and big tech and social media companies have censored, shadow-banned, and deplatformed eyewitness accounts." And, as it plays out, the video then repeatedly promotes the conspiracy theory that Ray Epps – an Oath Keeper – was actually a secret government plant responsible for inciting a peace-loving crowd to violence. *See* Cortelyou C. Kenney, "DEFAMATION 2.0," 56 Loy. L.A. L. Rev. 1, 4-5 (2023) ("The conspiracy theories surrounding

Mr. Epps originated with 'obscure right-wing media outlets, like Revolver News, which used selectively edited videos and unfounded leaps of logic to paint Mr. Epps as a secret federal asset in charge of a 'breach team' responsible for setting off the riot at the Capitol.") (quoting *The New York Times*; cleaned up).  Despite the fact that the "Epps Conspiracy" was baseless, January 6 defendants kept raising it.  *See*, *State of New Mexico ex rel. White v. Griffin*, No. D-101-CV-2022-00473, 2022 WL 4295619, at *14 ¶ 95 (N.M. Dist. Sept. 26, 2022) ("Mr. Griffin's trial testimony also referenced a number of January 6 conspiracy theories that he failed to substantiate with credible evidence.  *E.g.* … 'It's not any secret that there was FBI informants that were involved in January 6th … like Ray Epps.'"); (citation omitted)); *United States v. Nordean et al.*, No. 21-cr-000175 (TJK) (D.D.C.), ECF No. 1036, Trial Transcript of April 19, 2023, at 18977:15-21 (striking Pezzola testimony that Ray Epps is "a suspected government operative").  To the extent the conspiracy theory continued to have legs (even after the January 6 Committee issued a statement debunking it), it was fatally repudiated when the Government indicted Epps in May 2023 for his actions on January 6.  Epps, who pled guilty and was sentenced to probation, was pardoned by President Trump along with the other January 6 convicts.[1]

The documentary video also promotes the theory that, because some signs and gates were knocked down in the first wave of the attack, a large portion of the mob was supposedly unaware that they should not have been on Capitol grounds.  Photo evidence disputes this claim:

---

[1] https://www.msn.com/en-us/news/politics/ray-epps-included-in-trump-s-blanket-j6-pardon/ar-AA1xEGGA?apiversion=v2&noservercache=1&domshim=1&renderwebcomponents=1&wcseo=1&batchservertelemetry=1&noservertelemetry=1.





***Mele's Statements***:  The Court can take judicial notice to the following facts extracted from those exhibits.

The house met at noon and was called to order.  The Senate met at 12:30 and was called to order.  At 12:51, the Senate proceeded to the House of Representatives for the Joint Session.  At 12:55, the house was called to order.  At 12:56, Vice President Mike Pence exited the Senate

chamber and walked across the Capitol to the House chamber. Meanwhile, at 12:57 pm, the first breach occurred at the Peace Monument. By 12:58, the west lawn was filled with protestors. For over one hour, protestors on the West Lawn observed a thin one-man-wide police line that separated the tens of thousands of protestors on the west lawn from the western terrace. The Vice President's secret service detail Elizabeth Glavey testified at dozens of January 6 trials that she was unaware of the events going on outside at this time.

At 1:00 pm, the Vice President entered the House chamber. The Vice President called the joint session to order at 1:05 pm. At 1:14 pm, the two houses withdrew to separate sessions to deliberate an objection. At that time, the Vice President and the Senate walked across the Capitol to the Senate chamber. At 1:29, the Senate and the House reconvened separately and continued as business as usual oblivious to the events outside.

Meanwhile, outside, by 1:30 pm two protestors had already died, Benjamin Phillips and Kevin Greeson. Still, no protestors crossed the police line or entered the building. Metro Police used non-lethal weapons on the crowd, including chemical irritants. Of the thousands of protestors, some were engaged with police while others stood peacefully. At 2:02 pm, a Capitol Police Officer pushed a protestor off of a high wall on the North West side. Meanwhile, at 2:06 pm, protestors breached police barriers on the east side of the building and ascended the Capitol Steps by the Columbus doors. On the westside, at 2:09 pm, a handful of officers were overrun on the northwest stairs leading to the Senate Wing doors. At 2:11 pm, the first protestors reached the upper northwest terrace by the senate wing door. At 2:13, the first protestor entered the building. When he did, a Capitol Police officer can be seen spraying a chemical irritant at the protestor as he enters. The protestor put his hands in the air and walked away from the police. Thereafter, hundreds of protestors entered the building. These protestors included notable protestors like Jacob Chansley (the man dressed in costume including Viking horns). Chansley was famously caught on camera walking peacefully with Capitol Police officers through the building and was not accused of any violence.

Meanwhile, the Senate continued its proceeding until 2:13 pm when it called for recess to resume after the events of January 6. The House continued uninterrupted until 2:18 when it called for recess.

Meanwhile, the group of protestors who entered the Senate Wing Door at 2:13, were making their way southbound through the building. At 2:25, they were stopped in the Crypt by a group of police officers. Others who entered through the Senate Wing door took a different route and were walking through the Rotunda and Statutory hall at that time, arriving outside the house chamber after 2:6 pm [sic]. At 2:26, the Columbus doors on the East side were opened from the inside.

Meanwhile, outside, Officer Daniel Thau ordered another officer to fire a cannister of CS gas into the scaffolding where protestors stood over 30 feet in the air. Thankfully, the officer misfired, gassing the police instead. This caused the police to retreat from the line that they held for over an hour. The protestors surged and the police retreated into the building. Daniel Thau's role in causing the police to retreat at 2:26 pm can be seen clearly from his own body camera footage that was made public at https://rumble.com/v26usre-office-daniel-thaus-body-cam-

videofrom-january-6-2021.html. The line can be seen peaceful at 2:25, and then the surge occurs just after Thau and his fellow officer gas the line.

The House resumed its session at 2:26 and continued until it called for a recess at 2:29.

The police began clearing the building at around 3:00 pm. Protestors and police engaged by the Western "tunnel" until about 4:45 pm. Thereafter, the protestors were cleared from the area.

**Response No. 2:** Plaintiff incorporates by reference his objection in **Response No. 1 above** to taking judicial notice of unsupported, unreliable statements. For example, consistent with the conspiracy theory about Epps, Mele proffers a timeline skewed to relieve the attackers of responsibility for the attack, blaming everything instead on the police. In doing so, he has failed to include "references to the parts of the record relied on to support the statement" as required by LCvR 7(h). Plaintiff disputes the unsupported timeline, which *inter alia* omits Defendant Trump's 2:24 pm tweet that "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution." *See* Am. Complaint, ECF No. 89, ¶ 145. Plaintiff does not dispute that at "2:13 pm, Warner [Mele's California Three-Percenter co-conspirator] entered the Capitol Building through a broken window," as set out in the Retyped Second Superseding Indictment in *United States v. Warner, Martinez, Kinnison, and Mele*, No. 21-CR-392 (RCL), ECF No. 366, ¶ 64 (D.D.C. Nov. 7, 2023).

B.   **Conrad Smith's Activities on January 6, 2021**

*Mele's Statements*: Plaintiff Conrad Smith is a 32-year veteran Capitol Police officer who was allegedly present at the Capitol on January 6, 2021. Smith was deposed on February 27, 2025. Smith is not a credible witness. When asked to describe the difference between the January 6 riot and the Black Lives Matter Riots that occurred just months prior, he answered as follows:

THE WITNESS: I believe the protesters in he [sic] Black Lives Matter demonstration were addressing their grievances with the administration as any protester has done for years in this country.
BY MR. GROSS:
Q How is it different than the January 6?
MR. CASPAR: Objection as to form. But you can answer.
THE WITNESS: It's drastically different.
BY MR. GROSS:

  Q How?
  A The Black Lives Matter demonstrators came and they spoke their peace. They yelled, waved some signs, and went home.

Smith Depo at 172-173. It is well-known that the Black Lives Matter riots, that lasted for weeks, included the toppling of historic statues and the burning of a historic church. *See* https://www.youtube.com/watch?v=2JW4XQ4x7EM. President Donald Trump was forced to go into a bunker for his safety. But Smith claims he is not familiar with that. *Id.* at 171. Smith's apologetic perspective of the Black Lives Matter Protest calls his testimony into question.

  **Response No. 3:** Plaintiff does not dispute that he is a 32-year veteran of the Capitol Police and that he sat for deposition on February 27, 2025. Plaintiff disputes that it reflects poorly on Officer Smith's credibility that he refused to see a direct equivalence between the Black Lives Matter protest in Lafayette Square and the January 6 attack on the Capitol.

  ***Mele's Statements***: Moreover, during his deposition, Smith was questioned about his memories of the day of January 6, 2021. *See generally, id.* at 176-194. Smith admitted that he doesn't have a "clear memory," and was not aware of the passage of time, even not being able to tell whether 30 minutes, an hour or an hour and a half passed between two events. *Id.* at 186:8-18. ("A I'm not 100 percent on the time because I wasn't really paying attention to the passing of time, but I would say maybe 30 minutes or so, maybe a little more. Q Could it have been an hour? A It could have been. Q Could it have been an hour and a half? A Again, I was not paying attention to the passage of time while these events were going on. It could have been 30 minutes. It could have been an hour. It could have been longer.").

  **Response No. 4:** Plaintiff does not dispute that he testified as set out on page 186 in his deposition, and that during the Attack he was not "100 percent [sure] on the time." Plaintiff disputes that his statement that he did not have a "clear memory" of having seen Mike Pence (Dep. at 179:16) applies across the board to all events that he witnessed and experienced during the January 6 attack (for example, to his testimony concerning his efforts to barricade the Chamber). Plaintiff remembers the Attack and incorporates the balance of his deposition testimony about the Attack which is already in the record.

  ***Mele's Statements***: Smith does not remember when he first heard of the events outside over the radio, but what he does remember is that he heard about it after the Senate had already left the House and were debating the objections in the Senate. *Id.* at 185 ("Q So to be clear, the first time that you heard that there was a breach on your radio, the Senators were not on the House

Floor? A Yes. The Senators were not on the House Floor when I heard that there was a breach.") "Shortly thereafter, we heard on the radio that they're in the building." Thereafter, according to Smith, the procedure ceased and the House went into "lockdown." *Id.* at 68-70 ("1 A At the time that that was going on, they were in the middle of the certification of the presidential votes, and they went into immediate recess. The speaker and her protective team immediately left the chamber. And we proceeded to build barricades on the doors with the available furniture that we had in the Speaker's Lobby in the chamber."). According to the official timeline (*See* Government montage exhibit 1201, citing congressional record) the House recessed at 2:29 pm, so therefore the lockdown was after that time. At some known time thereafter, Smith was evacuated to safety through the tunnels to the Rayburn Officer Building across the street. He did not return to the Capitol building until many hours later.

**Response No. 5**: Plaintiff does not dispute that he testified as quoted, and that the House recessed at 2:29 pm. After that, as Plaintiff stated in his interrogatory responses, he "went to the House subway, through the tunnel, and to the Rayburn Building. [He] stayed at the Rayburn building until approximately 6:30 p.m., when [he] returned to the House Chamber in the Capitol. [He] remained in the House Chamber for the remainder of the evening, until approximately 1:00 a.m. on January 7, 2021." *See* Exhibit A. Plaintiff disputes Mele's description to the extent inconsistent with that response. Plaintiff remembers the Attack and incorporates the balance of his deposition testimony about the Attack, which is already in the record.

**Mele's Statements**: According to Smith, the Capitol Polce did not have sufficient manpower on January 6 and were not adequately trained to face a surging mob to overrun the Capitol. *Id.* at 110-11. "That's far beyond anything we could ever think of in traditional CDU training." *Id.* Also, the Capitol Police were not provided adequate equipment to deal with he [sic] situation on January 6. *Id.* at 110-11.

**Response No. 6**: Plaintiff does not dispute that he testified that the Capitol Police did not have sufficient manpower on January 6 and they were not equipped to face a surging mob [seeking] to overrun the Capitol – "we were not equipped for an organized force coming to attack the Capitol

8

(Smith Dep. at 111:22-23, ECF No. 394-2).[2] Plaintiff remembers the Attack and incorporates the balance of his deposition testimony about the Attack, which is already in the record.

### C. Ronald Mele's Activities on January 6, 2021

*Mele's Statements*: The government's Second Superseding Indictment (*United States v. Mele*, Case No. 21-CR-392, ECF No. 210) details Mele's actions, none of which involve entering the Capitol, engaging in violence, or conspiring to injure law enforcement, including Smith. The allegations against Mele are:

**Response No. 7**: Plaintiff does not dispute that the Second Superseding Indictment sets out *some* of the allegations in Mele's statement, but, as set out in the chart below, Plaintiff disputes that Mele has accurately summarized some allegations and disputes the veracity of others. Mele's Statement is not accurate.

| Mele's "Fact" | Officer Smith's Response |
| --- | --- |
| Mele is a 51-year-old resident of Temecula, California. (¶ 18). | Undisputed for purposes of this summary judgment motion. |
| Mele conspired with Hostetter, Warner, Martinez, Kinnison, and others to obstruct Congress's certification of the Electoral College vote from December 19, 2020, to January 6, 2021. (¶¶ 19, 24). | Disputed in that Mele omits from his recitation of paragraph 19 that he, Hostetter, Taylor, Warner, Martinez, and Kinnison "conspired with each other, and with others known and unknown, to corruptly obstruct, influence, and impede the Congressional proceeding at the U.S. Capitol on January 6, 2021." Mele also participated in a conspiracy with others. |
| December 24, 2020: Mele posted on Facebook about renting a car to arrive in D.C. on January 5 to "support our President on the 6th and days to follow just in case." (¶ 29). | Disputed in that Mele omits from his recitation of paragraph 29 that he planned "to rent a suburban…. Need room for the 'gear.'" |

---

[2] Officer Smith's full deposition transcript is filed under seal at ECF No. 394-2. Plaintiffs are filing the attached excerpts from Conrad Smith's deposition transcript: pages 25, 50, 61, 71-72, 83-84, 87, 95-96, 98, 101. *See* Plaintiff Smith's Response to Mele's Motion, Exhibit 3. In accordance with the Court's Order dated June 6, 2025, Plaintiffs withdraw their request to seal these specific pages. *See* Order, ECF No. 400 ("The Court will maintain under seal the transcript of the deposition of Conrad Smith attached to ECF No. 394, without prejudice to arguments that – if additional deposition pages become relevant in this case – such testimony should be publicly disclosed").

| Mele's "Fact" | Officer Smith's Response |
|---|---|
| December 25, 2020: Mele reserved hotel rooms for January 5–6, 2021, at a Courtyard Marriott in D.C. (¶ 30). | Undisputed for purposes of this summary judgment motion. |
| December 27, 2020: Mele posted on Facebook about showing support during Congress's electoral vote count on January 6. (¶ 31). | Undisputed for purposes of this summary judgment motion. |
| December 28, 2020: Mele discussed travel logistics via text with Warner, Kinnison, and Martinez, sending a car rental confirmation. (¶ 32). | Undisputed for purposes of this summary judgment motion. |
| December 29, 2020: Mele posted on Facebook, "Soldiers hitting the highway soon to be in DC on the 6th. Ready up!" (¶ 33). | Undisputed for purposes of this summary judgment motion; however, Mele omits that the Indictment then recites: "On the same date, in response to a question about when to be at the Capitol on the morning of January 6, 2021, Taylor posted to the Answer the Call telegram chat, 'I personally want to be on the front steps and be one of the first ones to breach the doors.'" (¶ 34)  Further to Response No. 1 above, messages such as this one further dispute the Epps Conspiracy theory that, but for "federal agent" Epps supposedly goading the crowd and police, no breach of the Capitol would have occurred. |
| December 30, 2020: Mele responded to Kinnison's text about a January 5 rally, suggesting an earlier arrival. (¶ 36). | Undisputed that Mele suggested arriving earlier on January 5th to attend a rally outside the Supreme Court at which Taylor and Hostetter were named speakers. |
| January 1, 2021: Mele joined the "California Patriots-DC Brigade" Telegram chat created by Russell Taylor, with over 30 others. (¶¶ 38, 41–42). | Undisputed for purposes of this summary judgment motion; however, Mele omits that the Incitement notes that the Brigade is comprised of people who "are all ready and willing to fight," that the "thread is exclusive to be utilized to organize a group of fighters to have each other's backs," and discusses the need and desire to bring "some type of weaponry…." ¶¶ 39-40. |

10

| Mele's "Fact" | Officer Smith's Response |
|---|---|
| January 1, 2021: Kinnison identified Mele as "redline Ron" in a Telegram post, noting Mele's Three Percenter affiliation and travel with "gear." (¶¶ 43–44). | Undisputed for purposes of this summary judgment motion; however, Mele omits the description of the gear ("medical kits, radios, multiple cans of bear spray, knives, flags, plates, goggles, helmets") and the suggestion that "we should clear all text in this chat the morning of the 5th just in case for opsec purposes"). |
| January 2, 2021: Mele discussed bringing a firearm in the rental SUV, stating it could be stashed under the seat. (¶ 51). | Undisputed for purposes of this summary judgment motion; however, Mele omits that he gave advice to his compatriots concerning the weaponry they should bring: "Shorter the better. Mine will be able to be stashed under the seat. I'll bring it. 18"barrel." |
| January 2, 2021: Mele, Kinnison, Warner, and Martinez met at Mele's house, posed for a photo with Three Percenter hand signals, and drove to D.C., arriving January 4. (¶ 53). | Undisputed for purposes of this summary judgment motion; however, Mele omits the prior paragraph, reciting Kinnison's message to Mele et al. concerning his "bandolier" of "shotgun ammunition." (¶ 52) |
| January 6, 2021: Mele, Martinez, Kinnison, and Warner congregated on the National Mall, posing for a photo with Mele and Martinez in camouflage plate-carrier vests. (¶ 62). | Undisputed for purposes of this summary judgment motion. |
| January 6, 2021: At approximately 2:38 p.m., Mele shot a "selfie" video on the steps next to the Upper West Terrace, stating, "We stormed the Capitol." (¶ 68). | Undisputed for purposes of this summary judgment motion. |
| The Government brought only four charges against Mele: | Undisputed for purposes of this summary judgment motion. |
| Count 1: Conspiracy to obstruct an official proceeding (18 U.S.C. § 1512(k)), alleging Mele conspired to obstruct Congress's certification from December 19, 2020, to January 6, 2021. (¶¶ 23–24). | Undisputed for purposes of this summary judgment motion; however, Mele omits "to corruptly obstruct, influence, and impede an official proceeding" |
| Count 2: Obstruction and aiding/abetting (18 U.S.C. §§ 1512(c)(2), 2), alleging Mele attempted to obstruct the certification on January 6, 2021. (Dismissed per Fischer). (¶¶ 73–74). | Undisputed for purposes of this summary judgment motion, with the understanding that Mele is reciting a summary and with the exception of the dismissal comment. |

11

| Mele's "Fact" | Officer Smith's Response |
|---|---|
| Count 5: Entering a restricted area (18 U.S.C. § 1752(a)(1)), alleging Mele knowingly entered a restricted area on January 6, 2021, without lawful authority. (¶¶ 79–80). | Undisputed for purposes of this summary judgment motion, with the understanding that this is the same count as Count 3, ¶¶ 75-76, of the Retyped Second Superseding Indictment. |
| Count 6: Disorderly conduct in a restricted area (18 U.S.C. § 1752(a)(2)), alleging Mele engaged in disorderly conduct in a restricted area on January 6, 2021, with intent to impede government business. (¶¶ 81–82). | Undisputed for purposes of this summary judgment motion (with the understanding that this is the same count as Count 3, ¶¶ 75-76, of the Retyped Second Superseding Indictment); however, Mele omits the statement that his conduct "did in fact impede and disrupt the orderly conduct of Government business and official functions." (Retyped Second Superseding Indictment ¶ 78) |
| Notably, the Government did not charge Mele with 18 U.S.C. 231(a)(3), obstructing law enforcement, a charge brought against hundreds of January 6 defendants who allegedly obstructed or interfered with law enforcement. | Undisputed that Mele was not so charged; the remainder is disputed as unsupported. |
| Mele was not alleged to have entered the Capitol building. (Exhibit A, ¶ 68). | No exhibit other than Mr. Smith's deposition excerpt has been filed, so disputed. |
| Mele was not alleged to have engaged in violence against police or to have aided or abetted such violence. (*Id.*). | No exhibit other than Mr. Smith's deposition excerpt has been filed, so disputed. Plaintiff further disputes Mele's assertion on the grounds that, in the Government's Sentencing Memorandum, there is evidence (on p. 20) that Mele shouted "'Push! Push! Push! F[***] you! Push!' [and] Martinez, Kinnison, and Mele then continued advancing on the police." |
| Mele's presence at the Capitol was limited to approximately 2:38 p.m., when he recorded a selfie video on the steps next to the Upper West Terrace. (*Id.* ¶ 68). There is no allegation of his presence after this time. | Disputed: the Government's Sentencing Memorandum (p. 22) states that "Mele remained on Capitol grounds until at least approximately 4:18 p.m." |

| Mele's "Fact" | Officer Smith's Response |
|---|---|
| There is no allegation that Mele conspired to injure law enforcement, including Smith. The indictment focuses solely on obstructing Congress's certification, not harming police. (*Id.* ¶¶ 19, 24). | Disputed that Mele was not in a conspiracy that would foreseeably injure police. As one of his conspirators posted in the DC Brigade Telegram chat: "I am going to dc for rally not to talk but to take care of business, time for talking is over! This is tyranny and our constitution states we can put bitches 6ft deep! Let's Do it! There are not enough cops to stop us!" Gov't Sentencing Memo, at 5 (emphasis added); *United States v. Mele*, Gov't Trial Ex. 903, at 14. |
| The Department of Justice's investigation, as documented on its official website, found no evidence of a grand conspiracy involving Mele with Trump, the Proud Boys, or the Oath Keepers to injure Smith or any officer. https://www.justice.gov/usao-dc/pr/four-threepercenters- california-found-guilty-conspiracy-and-other-charges-related-jan-6. | Disputed. Plaintiff contends that Mele did participate in a conspiracy broader than Mele's characterization. Moreover, the Indictment pleads that the conspiracy involved not only Mele and his compatriots, but that they acted together with others – as would be necessary to stop the proceedings by force, violence, or intimidation, and the Government found evidence (as set out in the Sentencing Memorandum) that the conspiracy fully contemplated that police would foreseeably be injured as a result. *Id.* |
| The government's extensive January 6 investigation, involving surveillance, social media and phone analysis, and embedded sources, found no evidence that Mele conspired with former President Donald J. Trump, Trump for President, Inc., Make America Great Again PAC, Stop the Steal, LLC, Ali Alexander, Brandon Straka, Roger Stone, the Proud Boys, the Oath Keepers, or other named Defendants, other than the co-defendants in his case, 1:21-cr-392. (See March 3, 2025 Hearing Transcript (Hearing), at 15–16, 19, 21–23). Mele's communications were limited to a Telegram chat and text messages with a small group, only including four of the defendants. (Second Superseding Indictment, ¶¶ 29–32, 38–44, Exhibit C, Mele Affidavit). | Disputed. Plaintiff contends that Mele did participate in a conspiracy broader than Mele's characterization. Additionally, as set out in the Government's Sentencing Memorandum, Mele's communications in the Answer the Call and the DC Brigade Telegram chats are with a broader audience than simply the four men named as defendants in his criminal case. Nor was Mele intending to limit his actions to those four men; in answering President Trump's call – in order to succeed with their common goal – Mele acknowledged that they needed a large crowd of people to stop the certification: "Damn right I'll be there! Looking forward to meeting you Porter [Taylor's codename] as well as hundreds of thousands more." (Gov't Sentencing Memo at 39; *United States v. Mele*, Gov't Trial Ex. 903, at 10.) |

13

| Mele's "Fact" | Officer Smith's Response |
|---|---|
| | As to the Hearing Transcript, the colloquy to which Mele cites concerned the potential collateral estoppel effect of the juries' verdicts. In that context, the Court noted that the juries had not been instructed in the other cases as to an overarching conspiracy. Indeed, other courts (*e.g.*, *Griffin*, cited in Resp. 1 above) have found that there was an overarching conspiracy. Plaintiff will be proving the overarching conspiracy in this case once discovery is able to proceed. This Court did not find that Plaintiff was precluded from proving that the conspiracy was broader than simply Mele and the riders in his van loaded with weapons. |
| | Finally, Plaintiff disputes that Mele submitted an affidavit in support of his Motion for Summary Judgment. |

### Officer Smith's Counterstatement of Facts That Require Denial of Summary Judgment

1. In response to Defendant Trump's December 19, 2020 "be there will be wild" tweet urging protestors to come to D.C. on January 6th, Gov't Sentencing Memorandum in *United States v. Warner, Martinez, Kinnison, and Mele*, No. 21-CR-392, ECF No. 452, at 3 (D.D.C. Apr. 12, 2024) [hereinafter "Gov't Sentencing Memo"], Mele posted on Facebook on December 24, 2020 that he was going to rent a car and arrive on January 5th in Washington, D.C., Retyped Second Superseding Indictment, *United States v. Mele*, No. 21-CR-392, ECF No. 336, ¶ 29 (D.D.C. Nov. 7, 2023) [hereinafter "Superseding Indictment"], where he reserved a room for two nights at the Courtyard Marriott. *Id.* ¶ 30. Mele also posted messages encouraging other "soldiers" to "ready up," *id.* ¶ 33, and made clear that he was prepared to use violence by posting that he was bringing a firearm to D.C. in his rental car and concealing it under his seat on January 2, 2020. *Id.* ¶ 51; Gov't Sentencing Memo at 8-10. Mele's social media posts also showed that on January 6, he

brought a knife, a magazine of ammunition, and bear spray. Gov't Sentencing Memo at 7. Mele joined the "California Patriots-DC Brigade" Telegram chat and discussed plans for the Attack. *Id*. at 39; *United States v. Mele*, Gov't Trial Ex. 903 at 10. He posted online that he was heading to D.C. not to rally but, in a co-conspirator's words, to "take care of business because the time for talking was over." *United States v. Mele*, Gov't Trial Ex. 903 at 14. He wore a ballistic plate carrier and carried bear spray to the Attack, Gov't Sentencing Memo at 13-14; Am. Sentencing Memorandum of Defendant Ronald Mele, *United States v. Mele,* No. 21-CR-392, ECF No. 457, at 4 (D.D.C. Jan. 14, 2024) [hereinafter "Mele Am. Sentencing Memo"], and posted online during the Attack that he (and others) were storming the Capitol. Gov't Sentencing Memo at 20-21. He and others advanced against the police, as Mele shouted "Push! Push! Push! F[***] you! Push!." *Id*. at 20. When attackers threw police barricades to the ground, Mele and others marched forward right over them. *Id*. at 18. Mele, Martinez, and Kinnison then proceeded up the Upper West Terrace of the Capitol, where Mele "called for the crowd to push forward and announced on video that they were storming the Capitol." *Id*. at 20-21; Defendant Mele's Answer to Plaintiffs' Am. Complaint, ECF No. 202, ¶ 140 (Mar. 16, 2023) ("… Mr. Mele admits to the video at the steps next to the Upper West Terrace…."). At 2:38 p.m. on January 6th, Mele shot a "selfie" video on the steps next to the Upper West Terrace of the Capitol, stating "We stormed the Capitol." Superseding Indictment ¶ 618. When his wife texted him that protesters had breached the Capitol and "they [security] are evacuating VP Pence," Mele responded "Babe that was us." Gov't Sentencing Memo at 24.

        2.       "We were overrun," Officer Smith testified, "[w]e – we – people just burst through and just smashed and destroyed." Smith Dep. at 98:15-20, 95:16-96:8. Although he had been on the force for more than thirty years, *id.* at 25:4-6, Officer Smith had never experienced anything

15

like the January 6 attack on the Capitol; for example, he had never been exposed to pepper spray or bear spray in a professional setting. *Id.* at 50:5-14. He was protecting the House Chamber when the attack occurred. *Id.* at 61:20-24. "[I]n the middle of the certification of the presidential votes," he and others "proceeded to build barricades on the doors with the available furniture that we had in the Speakers' Lobby in the chamber." *Id.* at 68:1-7, 87:8-18. He saw the crowd "surging towards the doors, banging on the doors, and glass flying in;" Ashli Babitt was shot and yet the mob continued to attack the House Chamber doors. *Id.* at 71:4-13; 72:4-22; 83:10-17, 83:25-84:5. After barricading the Speaker's Lobby, he helped barricade the House Chamber doors. *Id.* at 86:8-24. In addition to the noise and the violence, noxious gas stung Officer Smith's throat. *Id.* at 89:2-18. Officer Smith suffers from anxiety, grief, and emotional distress as a result of the attack. *Id.* at 95:16-96:8, 98:15-20.

3. Officer Smith suffered physical and emotional injuries from the attack. The physical injuries stemmed from the noxious gas in the air. Smith Dep. at 89:9-18. And the emotional injuries were caused by the overwhelming nature of the attack, the stress and anxiety of being "overrun" by a mob, and his fear that he no longer felt safe in his workplace. *Id.* at 98:15-20; 101:1-6, 9-14.

4. On November 7, 2023, Mele (along with Kinnison and others) was convicted on four counts following a jury trial. Gov't Sentencing Memo at 30. In particular, Mele was convicted "by a unanimous jury" of: (I) "Conspiracy to obstruct official proceeding" (18 USC § 1512(k)); (II) "Obstruction of an official proceeding and aiding and abetting" (18 USC §1512(c)(2) & 2); (III) "Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon" (18 USC §1752(a)(1)); and (IV) "Disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon" (18 USC §1752(a)(2)). (Mele Am.

16

Sentencing Memo, pp. 1-2). As this Court described it, Mele and others were convicted by a jury of a conspiracy whose "object was to prevent Members of Congress or federal law enforcement officers from performing their duties." Order of March 5, 2025, ECF No. 371 at 5.

Dated: July 17, 2025

Respectfully submitted,

By: _____

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
Jeffrey T. Foreman, *pro hac vice*
SPERLING KENNY NACHWALTER, LLC
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
Tel:  (305) 373-1000
Email:  wjb@sperlingkenny.com
            ebh@sperlingkenny.com
            jtf@sperlingkenny.com

Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein D.C. Bar No. 90003967
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, N.W., Suite 900
Washington, D.C.  20005
Tel:  (202) 662-8390
Email:  ecaspar@lawyerscommittee.org
    mepstein@lawyerscommittee.org

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Babak Ghafarzade, *pro hac vice*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, N.Y.  10104
Tel:  (212) 390-9000
Email:  fgay@selendygay.com
            jmargolin@selendygay.com
            bghafarzade@selendygay.com

***Attorneys for Plaintiff Conrad Smith***

17

## CERTIFICATE OF SERVICE

      Pursuant to Federal Rule of Civil Procedure 5, a copy of the foregoing filing is being served electronically on those parties who have appeared and registered with the Court's ECF system. Plaintiffs are serving remaining Defendants via first class mail or other permitted means.

                                                              /s/ William J. Blechman

                                                               William J. Blechman

684398 1