UNITED STATES DISTRICT COURT.
FOR THE DISTRICT OF COLUMBIA

**CONRAD SMITH, et al.,**

    **Plaintiffs,**
      v.                                            Case No: 1:21-cv-02265 (APM)

**DONALD J. TRUMP, et al.,**                  <u>**Oral Argument Requested**</u>

    **Defendants.**

## <u>DEFENDANT TARRIO'S RESPONSE TO MOTION TO COMPEL (ECF 434)</u>

### Introduction and Request for Oral Argument

Defendant Henry Tarrio responds to Plaintiffs' Motion to Compel (ECF 434) filed on September 9, 2025. In their Motion, they argue that Tarrio: (1) has waived any Fifth Privilege with respect to document production or testimony; (2) never had a valid self-incrimination privilege in the first place; and surprisingly (3) has engaged in delay tactics and gamesmanship with respect to discovery in this proceeding. Tarrio disproves all three contentions below.

Tarrio's undersigned counsel acknowledges that this response was due on September 23 and as such it is being filed late. He apologizes. The reason for the delay is an unexpected shout-out early last week from a long-standing, billable client whose needs unfortunately would need to temporarily trump those of his *pro bono* client Henry Tarrio. That non-Tarrio matter, for the time being, is concluded. Counsel, however, acknowledges that this late filing has unfairly thrown off the timing of any reply Plaintiffs would file to counter it and therefore asks that the usual seven days be extended and reset until at least a week from today's date. If the Court prefers to treat this late filing as a concession to the Motion to Compel, that is of course the Court's prerogative, but Tarrio and his counsel believe the importance of the constitutional issue here outweighs the slight of the tardy response.

1

Finally, but importantly, prior to missing his September 23 deadline, and due to the long and somewhat complex history of Defendant Tarrio's good faith participation in this case since day one, and the circumstances underlying his admittedly new Fifth Amendment issue, counsel asked Plaintiffs' lead counsel early last week if he would agree to a short oral argument on this Motion to Compel with ten (10) minutes only allotted to each side. Plaintiffs' counsel had "no objection" to that request at the time. Assuming that is still the case, Tarrio and his counsel would ask that such an argument be granted by the Court. Just ten minutes is required.

## DISCUSSION

At the last status conference on August 19, 2025, the parties, via plaintiffs' lead counsel, jointly informed the Court of a new development and issue raised by Tarrio with respect to outstanding discovery requests. Specifically, defendant Tarrio asserted he believed that he could and should avail himself of the privilege against self-incrimination under the Fifth Amendment. Good faith discussions between beginning July 21, 2025—and there were several—on the issue failed to bear fruit. Consequently, the parties suggested to the Court that a Rule 37 motion to compel represented the best vehicle to adjudicate the issue. *See* ECF 194 at related case docket 21-cv-400-APM.

To be fair, before July 21, Tarrio had agreed with the parties and the Court—and was so ordered—to "turn over the keys" (i.e., logins and passwords) to Plaintiffs to inspect two or three past digital platforms belonging to Tarrio. That was a mistake. Providing unfettered access to Tarrio's (or anyone's) ESI, is probably irresponsible and certainly very bad form. An open-ended inspection exposing non-case information due to issues having nothing to do with this case could harm Tarrio or members of his family. In short, Tarrio has changed his mind about agreeing to such an inspection.

*Separately,* and unrelated to the inspection, however, Tarrio and his counsel came to appreciate a pervasive self-incrimination issue with respect to the compelled production of discovery and testimony in *all* January 6 civil cases against Tarrio. Again, Tarrio first raised this issue via a telephone call to plaintiffs' lead counsel on July 21, 2025, and did so in advance of the production deadline. Accordingly, service of responses to the outstanding discovery requests raised the self-incrimination issue on the due date of July 25, 2025.

**Tarrio's Good Faith Participation in All January 6 Civil Proceedings**

As the Court may recall, during all of 2021, when the cases under 42 U.S.C. § 1985 in *Lee* (then *Thompson), et al. v. Trump, et al.* (21-cv-400-APM), the instant case *(Smith)*, and finally *District of Columbia v. Proud Boys International, L.L.C.* (21-cv-3267-APM) were filed, Henry Tarrio had not been indicted — much less appear as a defendant — in *any* criminal prosecution concerning the events at the Capitol on January 6. Not one. Tarrio, who was not in Washington. D.C. on January 6, and who has since that day consistently and vociferously disavowed any plan or conspiracy by the Proud Boys organization to storm the Capitol building in an effort to prevent the Biden-Harris electoral college vote certification, would not be indicted, jailed and prosecuted by the Department of Justice in the Proud Boys "leaders" criminal case of *U.S.A. v. Nordean, et. al.* (21-cr-175-TJK) resulting in his 22-year prison sentence until March 8, 2022. On that day, well over a year after January 6, he was unexpectedly arrested at his Miami home and remained in DOJ's custody until his full pardon on January 20, 2025.

Tarrio was a free man, however, when each of the January 6 civil conspiracy cases were filed. He stepped up to participate in each of them. During that 14-month period prior to his arrest and confinement on Maerhc 8, 2022, Tarrio was candid and forthright with this Court about his desire to participate, even if minimally, in the January 6 civil cases. Apart from being better positioned to

3

protect his financial interests (i.e., avoid a default judgment), he viewed participating in the case as an opportunity to respond to the complaint (which he did) and tell his side of the January 6 story. For example, in the *Lee* case, on January 9, 2022, in moving to set aside an entry of default, he noted that "to the extent his resources allow, Tarrio seeks to participate as a defendant in this case and several others like it both to protect his rights and to add to the record of those cases." ECF 55 at 2 (21-cv-400). In the instant case (21-cv-2265), his participation (including discovery) has been through counsel since November 1, 2021, and has been particularly robust. *See e.g.,* ECFs 101 (12/23/2021 Answer), 152, 241, 307, 313-315, 366, 408. Moreover, Tarrio via counsel (acting in his role of criminal defense counsel for Joseph Biggs) made it possible for a treasure trove of documents and exhibits to be released to Plaintiffs from Tarrio's five-month long criminal trial proceeding between December 2022 and May 2023 (21-cr-175, ECF 918), took a laboring oar in responses to Plaintiffs' Rule 12 motions, and participated in all but one status report and all but status conference. Finally, at every possible juncture, Tarrio has unsuccessfully raised discovery proportionality issues under Rule 26 *ad nauseum*.[1]

### I. Defendant Tarrio has not waived his Fifth Amendment privilege

Contrary to Plaintiffs' suggestions in the Motion to Compel, the privilege against self-incrimination, which also applies to being forced to self-select documents in civil cases, is especially important in Tarrio's current circumstances, and certainly he has not waived it here. "Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) quoting *Aetna Ins. Co. v. Kennedy to Use of Bogash,* 301 U.S. 389 (1937). Waiver of the Fifth Amendment testimonial privilege is strongly

---

[1] While understandable, Plaintiffs' scorched earth discovery approach in this case has been particularly counterproductive and frustrating because every document and bit of ESI pertaining to Henry Tarrio is available from the either the Proud Boys criminal trial DOJ exhibits trove (Plaintiffs have) or other Proud Boys (Plaintiffs can get.)

4

disfavored and "should be inferred only in the most compelling of circumstances." *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981).

## II. Defendant Tarrio's basis for invoking Fifth Amendment protection is valid

Even while of first impression in several respects, Tarrio's Fifth Amendment issue before the Court is controlled most recently by *Ohio v. Reiner*, 532 U.S. 17 (2001). It highlights the simple idea of good faith apprehension of "ambiguous circumstances" in providing documents or testimony. In that case, defendant Matthew Reiner was tried for death of his infant son, who died from shaken baby syndrome. Part of Reiner's defense was the overture that witness Susan Batt, the family's babysitter, was responsible for the child's injuries. Ms. Batt, who was subpoenaed, asserted the Fifth Amendment privilege and testified she had nothing to do with the child's injuries even though she was with Reiner's son within the possible time frame of the fatal trauma. [2]

Reversing, the Supreme Court held that the Fifth Amendment's privilege's protection extends only to witnesses who have "reasonable cause to apprehend danger from a direct answer." It emphasized that the privilege against self-incrimination applies where a witness' answers "could reasonably 'furnish a link in the chain of evidence', quoting *Hoffman v. United States,* 341 U.S. 479, 486 (1951). Ms. Batt, the babysitter witness, the Court continued, had reasonable cause" to apprehend danger from her answers if questioned at Reiner's trial. Under such circumstances, she had a valid Fifth Amendment privilege against self-incrimination as it

---

[2] Batt was eventually granted transactional immunity at the trial level under Ohio law (Ohio Rev. Code Ann. §2945.44). The Ohio Supreme Court ultimately held that she had been granted immunity wrongfully because her testimony did not incriminate her, and it prejudiced the defendant because it effectively told the jury she did not cause the injuries.

5

was reasonable for Batt to fear any answers to possible questions might tend to incriminate her. Id.

The inquiry, of course, is for the trial court. The person asserting the privilege doesn't get to make it up. Danger or risk of an "imaginary and unsubstantial character" will not support the assertion. *Mason v. United States, 244 U.S. 362, 366 (1917)*. One core notion of the Fifth Amendment, the Reiner court also underscored, "is to protect innocent men … 'who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald v. United States, 353 U.S.391, 421 (1957)*.

### III. Tarrio's circumstances have changed and form the basis for a 5th Amendment privilege

Although they are not his fault or for the most part anyone else's, Henry Tarrio currently is presented with an array of circumstances that are many magnitudes greater faced by the unfortunate Ms. Blatt in her one-off testimony in the *Reiner* case. They are highly ambiguous and fall into the category of 'extremely threatening' for purposes of evaluating his invoking a Fifth Amendment protection. They insist that he no longer be required to produce documents, testify or otherwise participate in this January 6 civil case. There are several reasons, and a variety of dynamics at work here.

A. In 2021, when the three all January 6 civil cases (all of them mimicking DOJ criminal indictments) against Tarrio were filed, most observers would have likely predicted that the political and cultural upheaval that January 6 represented for Americans would have subsided or, more optimistically, help drive some degree of national reconciliation. That has not happened. It did not happen during the tenure of the previous presidential administration in 2021-2025 or during the present administration installed earlier this year. With the current raging cultural discord in the United States, shifting notions of what the two major political parties stands for and who

they serve, and even the role of Article III judges in the fray, the divide is as great, if not greater, than it was on January 6, 2021. The uneasy national conversation is, in effect, boiling over.

B. Henry Tarrio, for better or for worse, and at least for the time being, has become a strident, and some think an important, voice in that national conversation. Since his release from prison in January, he has become far more active as a pundit and commentator on social media, with legions of digital "followers." He also understands that things may change again, and change soon, to his detriment and the detriment of people who support him and think like him. Tarrio has new friends and new critics. He is lightning rod. And federal midterm elections are only thirteen months away.

C. As of last month, alignments in the 119th Congress were as follows. House of Representatives: 219 Republicans, 212 Democrats, 4 vacant seats. Senate: 53 Republicans, 45 Democrats, and 2 Independents (both of whom caucus with Democrats). Even with the current chief executive in office for another two years, with a shift in the majority of either chamber (or both), legislative activities and at least some national policy may change. Given the current national climate, any change in Congress could be reasonably viewed by Tarrio as credible threat with respect to any further steps taken in January 6 civil cases. For example, in February 2022, a few weeks before his January 6 criminal prosecution arrest, Tarrio appeared before the now-disbanded "U.S. House Select Committee to Investigate the January 6th Attack on the Capitol." Based on recent history, there is frankly nothing particularly imaginary, unsubstantial, or fanciful about believing that an analogous committee could be established by Congress again to investigate non-January 6 matters involving Tarrio it simply did not like.

D. To be sure, for the last few months, Tarrio has been hearing especially aggressive real-time war drums from plaintiffs' lawyers (law firm of Paul Weiss and Lawyers Committee for Civil Rights Under Law) and a highly focused DC Superior Court judge in *Metropolitan A.M.E. Church*

*v. Proud Boys International L.L.C.* (No. 2021 00000B). A non-January 6 matter, the lawsuit was filed in early 2021 after Tarrio claimed credit for burning a Black Lives Matter flag during a rally on December 12, 2020, and somehow recovered $2.8 million for the insult in a default posture while most of the *pro se* Proud Boys named defendants either didn't know about the suit and/or were in jail. Tarrio, who is now representing himself, has also pleaded the 5th Amendment concerning discovery requests. He faces contempt charges. Interestingly, lawyers for the church, on a regular if not daily basis, monitor Tarrio's statements made in podcasts and on social media. Often, they report his statements to the Superior Court judge.

  E. Importantly, with respect the *Metropolitan A.M.E. Church* case, under applicable statutes of limitation, there is <u>nothing</u> to prevent the Justice Department from bringing either federal or District of Columbia criminal charges against Tarrio in connection with the December 12, 2020, rally and flag burning. By the same token, nothing prevents a prosecution under D.C. law for acts Tarrio allegedly committed (and was fully pardoned for) on January 6, 2021. The simplest of many examples under DC law Tarrio could be charged with for either event can be given is DC Crim § 22–3153. Acts of terrorism, § 22–3153 subsections (i), (l) (m) and (n). Tarrio is more than happy to supplement this response with fuller catalogue of examples.

  F. Tarrio, on balance, however, is wide open to any number of investigations or prosecutions to the extent he continues to produce discovery or testifies in this or any other January 6 civil proceeding. To be fair, such charges are limited only by the imaginations of AUSAs themselves.

  G. Finally, there are no curative measures available to protect Tarrio in these scenarios. As there is no current parallel criminal proceeding in place, a stay of discovery is not possible. No protective order could be effective; documents and information subject to protective orders are rarely kept from grand juries.

8

For the foregoing reasons, defendant Tarrio asks that the Motion to Compel be denied in its entirety.

Respectfully submitted,

FOR DEFENDANT HENRY TARRIO

Dated: September 30, 2025

By: /s/ John Daniel Hull
J. DANIEL HULL
DC Bar No. 323006; California Bar No. 222862
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C.  20005
619-895-8336/202-429-6520
jdhull@hullmcguire.com

## CERTIFICATE OF SERVICE

On September 30, 2025, the foregoing Defendant Henry Tarrio's Response to Motion to Compel was served upon all counsel of record via the ECF system. .

                                                                                  By:  /s/ *John Daniel Hull*
JOHN DANIEL HULL
DC Bar No. 323006; California Bar No. 222862
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C.  20005
619-895-8336
202-429-6520
jdhull@hullmcguire.com