1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CONRAD SMITH, ET AL.,                )
                                     )
        Plaintiffs,                  )
                                     )   CV No. 21-2265
     vs.                             )   Washington, D.C.
                                     )   October 1, 2025
DONALD J. TRUMP, ET AL.,             )   11:31 a.m.
                                     )
        Defendants.                  )
_____)


    TRANSCRIPT OF DISCOVERY CONFERENCE VIA ZOOM PROCEEDINGS
          BEFORE THE HONORABLE AMIT P. MEHTA
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Smith Plaintiffs:          Edward G. Caspar
                               Marc P. Epstein
                               LAWYERS' COMMITTEE FOR
                               CIVIL RIGHTS UNDER LAW
                               1500 K Street NW
                               Suite 900
                               Washington, D.C. 20005
                               (202) 662-8318
                               Email:
                               mepstein@lawyerscommittee.org


For Defendant
Donald J. Trump:               Jesse R. Binnall
                               Jason C. Greaves
                               BINNALL LAW GROUP
                               717 King Street
                               Suite 200
                               Alexandria, VA 22314
                               (703) 888-1943
                               Email: jesse@binnall.com
                               Email: jason@binnall.com


Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               E. Barrett Prettyman CH
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY:  Good morning.  This Honorable Court is now in session; the Honorable Amit P. Mehta presiding.

Your Honor, we are now on the record for Civil Action 21-2265, Smith, et al., versus Trump, et al.

Present for the plaintiffs is Edward Caspar and Marc Epstein.

Present for the defendant entities is Jason Greaves.

THE COURT:  All right, Counsel, good morning.

Thanks for your patience with me.  We were in a trial, which is why I had to vacate the last hearing, and so I appreciate your patience.

So unless there's anything anybody wants to discuss before we jump right into things, I'm happy to continue right along where we left off.

MR. GREAVES:  Your Honor, just on behalf of the entity defendants, I just want to acknowledge that the defendants have -- sorry, that the plaintiffs have provided the materials that Your Honor requested they provide at the last hearing.  They did provide the preservation letter, which resolves that issue for now.

And for the itemization of medical records, they have declined to itemize anything, but they're now

4

specifically disclaiming any damages for medical treatment for any of the plaintiffs.

So it's a similar posture as what they acknowledged at the last hearing for, you know, income and lost opportunities; they are not specifically going to be seeking any of those damages.

THE COURT:  Okay.

All right.  Well, that's helpful.

All right.  So let's just go ahead and dive right into things, starting with the attorneys-eyes-only designation.

Help me understand what the dispute is, at least in terms what you're asking me to resolve; in other words, I understand designations have been made; there have been some objections to those designations, although, from plaintiffs -- the way plaintiffs describe it, there have been no objections to the most recent designations of attorneys-eyes-only provisions.

So where do we stand on this and is there anything specific you all need me to actually weigh in on?

MR. GREAVES:  So, Your Honor, I would disagree that we haven't objected, because the most recent designations are basically 95 percent the same.  It's almost entirely overlapping -- the things that we previously objected to are still being withheld -- being designated as

AEO.  So I think that our objections still stand and we've given them our notice of why we think it's improper.

So I think we're just asking for the Court to weigh in on whether or not these designations are proper, because -- I mean, we have other issues that we intend to raise as well, because it's not just the designations in discovery -- in the deposition testimony and in their interrogatory answers but also in every -- basically, every single document that they produced, which is not, I understand, before the Court right now, but we intend to bring it before the Court, which is every single medical record for those plaintiffs has been designated AEO.

And so the issue here -- there's two main issues, is that, it's very difficult for us to be able to advise our clients about the status of these plaintiffs, their medical treatment, which is central to their claims, regardless of whether they're seeking bills and recompence for the actual medical treatment, they're still seeking pain and suffering for mental health resulting from January 6th.

So we need to be able to, not just the attorneys evaluate, but the clients need to be able to evaluate what their status was, what their pre-existing conditions were, and, you know, what kind of treatment they received for post-traumatic stress and those types of diagnoses after the fact, and that is -- we're prevented from doing that.

And then the other kind of maybe minor issue but is still, I think, improperly designated, is the identity of witnesses.

So in depositions, plaintiffs have designated -- have identified, you know, the names of supervisors -- you know, supervising Capitol Police officers that were present at January 6th, they have designated their identities as attorneys' eyes only as some kind of a privacy concern.  And the same with one of the witnesses who basically introduced one of the plaintiffs to their counsel that was identified in one of the depositions.

And so not being able to discuss the identities of those people with our clients presents problems, and also I think it presents problems for what happens when we want to designate these people for depositions or call them as witnesses.

So I think it's problematic from just the logistics, and it's just not proper because we have a protective order that covers these types of things.

THE COURT:  So let me go ahead and interrupt you, Mr. Greaves.

Let me just turn to plaintiffs' counsel and get your position on those two categories.

Why don't we start with the identity of witnesses first.

MR. CASPAR:  Your Honor, it's -- I don't know what Mr. Greaves is referencing there.

And that's part of the challenge with this discovery dispute, that the defendants have raised a generalized grievance which is at odds with the protective order.  They needed to identify with particularity the piece of discovery that they're concerned about.

The second piece of information Mr. Greaves referenced, I think I do understand what that refers to.  Another defendant asked in Interrogatory 4 the identity of the person who connected the plaintiffs with plaintiffs' counsel in this case.  That person is another U.S. Capitol Police officer.  We provided that information to defendants.  The interrogatory asked for the personal contact information of that officer.  We also provided that to the defendants.  But we designated that AEO because it's that person's personal contact information.  No defendant, not the campaign, nor Defendant Rehl, sent us a notice of objection as to that designation.  If they did, we would confer with them and narrow the designation if it's warranted.

But the problem with this dispute is that these generalized grievances don't enable us to understand what pieces of information they actually need and that we can address.  And without following the protective order's command that they designate with particularity the discovery

material at issue, it's almost impossible to address their concerns.

MR. GREAVES:  Your Honor, may I respond to that?

THE COURT:  Well -- before you do, let me just ask Mr. Caspar:  In terms of the medical records, what's your response to that category of material that Mr. Greaves is suggesting has been designated attorneys' eyes only?

MR. CASPAR:  Yes, Your Honor.

So the medical records, first, we've produced them and they have them and they can make whatever use out of them they want in their defense.

We've designated them AEO, because, as courts universally recognize, medical information is highly sensitive.

What this means is that, under the AEO designation, they -- you know, the documents themselves can't be shared with defendants, but certainly defense counsel can discuss the nature of the plaintiffs' claims and injuries.  There's nothing preventing that.

The sensitivity around medical records is even more acute in this case, Your Honor.  We know from actual facts and experiences that some defendants in this case will use information in litigation to intimidate parties.  It's happened already in this case, where another defendant who's now out of the case attempted to dox our clients and

plaintiffs' counsel by releasing information about them online.

Now, the protective order in this case prevented that from being worse than it actually was, because, thankfully, they didn't have much personal information to put online besides business addresses and images. And so the protective order works.

And we know from actual well-reported incidents that another defendant has harassed other U.S. Capitol Police officers because of their role in January 6th, and that another defendant's intimidation publicly of litigants and other people involved in litigation, it's well-reported. So these AEO designations were made based on actual facts and lived experiences and certainly in good faith as a protective order requires.

And I'll point out, Your Honor, that a protective order also allowed Defendant Trump to designate every single piece of discovery in the immunity proceedings as AEO. And for good reason, Your Honor. Because the protective order recognizes that there's highly sensitive information around this case.

And so it gives the parties the flexibility to designate material AEO in good faith, which I think, obviously, we have exercised. And then it requires the other party challenging those designations to identify the

specific discovery material that they want to take issue with with particularity so that the parties can work this out without troubling the Court.  That procedure hasn't been followed here, Your Honor, and, you know, we think it needs to be followed.

THE COURT:  All right.

Mr. Greaves, you wanted to respond?

MR. GREAVES:  Yes, Your Honor.

And the first thing is that I completely disagree with the plaintiffs' characterization that we haven't followed any of the requirements of the protective order.

We have, and I have them right here, specifically objected to each and every one of those things.  We've designated line items.  We've included in great detail what exactly we're objecting to and why.  So I don't know what they're saying about --

THE COURT:  Let me interrupt you if I can, because what at least I understand the plaintiffs' position to be is that, yes, you've done that.  They've responded.  They've de-designated some things, maintained the designation as to others and there hasn't been a further objection since then.

MR. GREAVES:  What I'm saying, Your Honor, is that they've de-designated almost nothing, and that we've already told them that our objections remain the same.  So I don't know -- if they're asking us to file a new set of

11

objections --

THE COURT:  Okay.

MR. GREAVES:  -- we certainly can do that, but it would seem to be kind of a waste of time.

But they can't pretend to not know what our problems are with their designations, which is what they're doing now.  They know fully well what we're targeting.

THE COURT:  Can I ask you a question?

In terms -- let's just talk about medical records for a second.  What is the concern about the inability to actually share a medical record with your client as opposed to discussing it with them?

I mean, if what Mr. Caspar says is accurate and that you can say to your client that plaintiff X has suffered the following injuries, you know, he's been diagnosed with X, he's received the following treatment, what is the need then, in your estimation, to also then make the document itself available?

MR. GREAVES:  I don't know that I can make those disclosures to my client based on the attorneys-eyes-only designation.

I mean, I don't, as a practice -- and I've been doing personal injury defense work for a long time.  As a practice, I don't typically send medical records to a client, but I would want to be able to discuss them with the

12

client.

THE COURT:  Well, so I just heard Mr. Caspar say that their objection is not to discussing the records and their contents, but it's to sharing the records with the client.

And, Mr. Caspar, do I understand you correctly that that's your position?

MR. CASPAR:  That's right, Your Honor.

I think the protective order speaks to discovery material that can't be shared with clients, right.

But an attorney has to be able to advise their clients and have those conversations with them, and which those are obviously privileged conversations.

Yes, Your Honor -- so in short, yes.

THE COURT:  So does that help, Mr. Greaves, sort of resolve this issue?

MR. GREAVES:  Your Honor, I think it's a distinction without a difference.

THE COURT:  Well, no, it's a big difference, right.

I mean, there's the difference between physically handing medical records over to your client versus either, you know -- let me put it differently.

You could either -- without a designation, you could theoretically hand those records over to your

client, and you can also obviously show them without handing them over.

But, again, the same question remains, which is, what is the -- how are you being inhibited if what your primary consideration is, and you just said yourself, you don't typically send, you know, plaintiff's medical records to your clients.  So help me understand why the inability to do that is going to inhibit your ability to present a defense?

MR. GREAVES:  I mean, if that's the Court's take on the protective order, that I'm allowed to discuss the contents of medical records with my client, I don't think there is a problem.

THE COURT:  Okay.

Well, look, it's not my -- I mean, I haven't studied it, but that's the plaintiffs' position.  And if that's the plaintiffs' position, then I'm certainly not going to advocate for any greater stringency than that.

MR. GREAVES:  Right.

Now, there is a second part of this that I do think we need to address, which is -- so as the records have been produced to us, and we've discussed this a little bit before at one of the prior conferences, they have been redacted for all PII on the plaintiffs themselves, including their home addresses and their Social Security numbers.

And so that information is not just being withheld from our clients, it's actually being withheld from us as counsel.

THE COURT:  Right.

MR. GREAVES:  That's information that's relevant for one of the other issues.

THE COURT:  Right.

So we could just put a pin on that for a moment, because I know that's another issue and I want to sort of walk through this.

So can we then put this attorneys'-eyes-only issue to rest, at least insofar as medical records and the identity of witnesses go?  Because it sounds like that issue, the second one, has been resolved, with the exception of the contact information that Mr. Caspar referenced.

MR. GREAVES:  Understood.

And I'm not concerned about Defendant Rehl's contact information.

My only concern was the identity of the witness itself was not somehow protected by the protective order.

THE COURT:  Right.

Okay.  Well, I understood Mr. Caspar to say that that witness's identity has been turned over, okay?

MR. GREAVES:  Okay.

THE COURT:  All right.  Great.

So I think that takes care of what's sort of I.

I think we took care of II last time we were together.

We talked through III last time we were together.

All right.  We're now at IV, which are the Privacy Act releases.

And where are we on that issue?

MR. GREAVES:  So that's --

THE COURT:  This is the PII issue?

MR. GREAVES:  Yes.

So that would be the issue where -- plaintiffs are basically saying that -- first they're saying that they don't know what -- which of the requests we've sent to Capitol Police implicate privacy interests, although they have acknowledged to us in letters that at least one of those requests does implicate privacy concerns.

And so the issue then becomes, they are -- they're basically withholding consent on this so that they -- until there's some kind of protection where they get to pre-clear the records.

And my understanding of this is that they want to be able to continue redacting records the way that they've been producing them to us in the past, which, again, I don't think it's proper for them to be doing.

And, again, this is all protected by the

16

protective order.  And by redaction, it prevents us as counsel from being able to utilize this information.

As I have expressed to plaintiffs' counsel, if I want to be able to send a private investigator to somebody's address and talk to their neighbors, I have to be able to do that.

But they're withholding information on their physical addresses.  They won't even permit their clients to answer these questions at depositions.

THE COURT:  All right.

So, Mr. Caspar, what's the justification for withholding -- I gather that it's only Social Security numbers and home addresses.  Is that the issue?

MR. CASPAR:  That's right, Your Honor.

THE COURT:  Okay.

And what's the justification for withholding those in their entirety?

MR. CASPAR:  Yeah.

Your Honor, so if you would give me a couple minutes because this is a critical issue for our clients.

So just a few points to consider.

First off, the plaintiffs are okay helping the campaign to get the records that they've subpoenaed from the Capitol Police and from the Department of Labor.  We're okay given the Privacy Act releases.  The campaign should have

access to those records.  We're not arguing about the relevance.

What's of concern to the plaintiffs is that these records have a -- very few discrete pieces of information within them, that, if disclosed, would severely prejudice the privacy interests and -- as to which the campaign has comparatively minimal interest.  And those are, like Your Honor recognized, the plaintiffs' own current home addresses and their Social Security numbers, but also the Social Security numbers of their spouses and their children.

And so as to those discrete pieces of information, they do create a significant risk of harassment and intimidation, and -- you know, if that information is disclosed, especially to defendants, which the experience I mentioned earlier in this litigation, I think, validates it.

THE COURT:  So you'll forgive me, but what is the issue with designating that as attorneys' eyes only as opposed to redacting it altogether?

MR. CASPAR:  And the issue there is that -- this relates to what we just previously discussed.

So I agree with Mr. Greaves that the attorney needs to be able to discuss information with their client to advise them properly, right?  That's why when we designate information as AEO, perhaps the attorney cannot produce the documents to their clients, but they can discuss it.

So AEO is not a complete protection, right.  And so if we were to provide, say, the contact information -- the current living addresses of our clients and their families, it's ambiguous.  I do not believe the protective order prohibits the attorneys from sharing that information in a conversation with the individual defendants and --

THE COURT:  Well, you'll -- I mean, Mr. Greaves, I don't -- well, let me ask you:  Is it your wish to be able to share that information with your client or is it to simply be able to use it to conduct an appropriate investigation?

MR. GREAVES:  Absolutely not, Your Honor.

We have no intention of sharing information with our client directly.  It's just for use in litigation.

THE COURT:  Okay.

MR. CASPAR:  There are two other points, Your Honor.

THE COURT:  Okay.

MR. CASPAR:  Sorry to --

THE COURT:  No.  Go ahead.

MR. CASPAR:  The other concern is that, not all parties to this litigation are represented by counsel; some are pro se.

And the law on this issue supports keeping these very discrete pieces of information private, especially in

cases involving police officers.  We've cited a couple of those cases in the Status Report.

So courts consistently recognize that these discrete pieces of information are highly sensitive because of the risks they entail, that producing them entails.  And the need that the defendants have articulated to just -- in our view doesn't outweigh that risk.

So those are the last two pieces of information I would share with Your Honor; that other defendants are pro se; and that, you know, courts consistently recognize that there's little need for these two pieces of information and there's a lot at risk in disclosing them.

THE COURT:  Okay.

Mr. Greaves, do you want to add anything else?

MR. GREAVES:  Your Honor, I would just add that the campaign is not here voluntarily.  The plaintiffs are.  They have control over who they want to sue and who they don't want to sue.

So I don't know that it matters what other parties are involved in this litigation.  All I'm concerned with is the campaign's ability to defend itself.

THE COURT:  Well, look, you're right in one sense; you certainly are here involuntarily.

On the other hand, I don't know that I can --

do you think I can draw a line between the campaign as a

defendant as opposed to a pro se defendant who might not have the same ethical obligations that you and other members of the Bar do?

MR. GREAVES:  Well, Your Honor, wouldn't the protective order sufficiently protect that?

Because if it's attorneys' eyes only, it would only be represented parties that would have that information.

THE COURT:  Is that how the plaintiffs have been treating this information?

In other words, that with respect to pro se defendants, there have been attorneys-eyes-only designations as to which information has been withheld under that designation from the pro se defendant?

MR. CASPAR:  No, Your Honor.

We have been making AEO-designated-material discovery available to the pro se defendants, because we believe they have equal access -- equal right of access to all discovery in this case.

Now, some of the pro se defendants, we have had a lot of trouble contacting, and we sometimes get return -- like, you know, notices in the mail saying we can't -- the address isn't correct and that's going to be an issue for a future time.  And so for that, we've been holding on to -- we've been notifying them that this information is available

21

to them.

But our understanding is that all defendants in the case have equal right of access to the discovery.

MR. BINNALL:  Your Honor, if I can be heard just real quickly on this, I might have a thought that could be helpful.

THE COURT:  Hi, Mr. Binnall.

MR. BINNALL:  Jesse Binnall on behalf of the entities.

I don't know that the Court necessarily needs to go down this full route right now, because there's no indication that other defendants are seeking this particular information, specifically the unrepresented defendants.

I think it's particularly appropriate -- and if the Court needs to enter another -- or an addendum to the protective order to make very certain that this applies only between these parties and that it is for, in these instances, attorneys' eyes only, I think the Court can do that.

And then if you have to approach the issue later, when it's not effectively a strawman argument, you know, about what happens with unrepresented parties, it can be addressed then.  But I just don't know that that's an issue that needs to be addressed now.

THE COURT:  In a sense, I understand your -- the

22

approach, Mr. Binnall.

My fear is that if we do that and then I do have a pro se defendant come forward, it's not clear to me how I can distinguish the campaign as a defendant from the pro se defendants, other than the fact that the campaign is represented, if the pro se defendant offers the same rationale for wanting the information as the campaign.

MR. BINNALL:  I understand that, Your Honor.

But at the same time, it's not right to tie down the campaign's ability to defend itself just because they also happen to sue defendants who may not be in a financial position to afford counsel.

And so there needs to be some sort of solution here, where, should they wish to get that information, we can customize an option for what information can rightfully be given to them to allow them to defend themselves, while recognizing that it's a different issue here because the campaign does have counsel and people that are authorized by the Bar are -- have obligations as members of the Bar and officers of the Court to hold that information confidential.

THE COURT:  Can I ask you to sort of precisely articulate what it is that you think you would, for example -- let's just start with the Social Security numbers.

23

What is it that the campaign believes it needs Social Security numbers for?

MR. GREAVES:  Your Honor, typically with personal injury defense, the Social Security number is kind of the first place you go with public record searches, and a lot of the databases that you use to get background information on people require Social Security numbers.  Certainly when it comes to getting medical records, you would need the person's Social Security number for that as well.

THE COURT:  Okay.

And in terms of the home address?

MR. GREAVES:  Again, that would be just a matter of being able to identify witnesses; people who could speak to, you know, the status of the plaintiffs, how they have dealt with January 6th or what they know about their trauma from January 6th.

All those things are ripe for investigation or if we wanted to -- again, this -- I'm not saying that these are things that we're planning to do.  But what has been typical that I have done in the past is, you know, I've -- you send a private investigator to watch somebody and see how they behave in their everyday life in your typical car accident case.  Do they go to the gym; do they, you know --

THE COURT:  Right.

And, look, I think -- I don't disagree that that

24

is a potentially appropriate use.

I guess I sort of glom on to what you said a second ago, which is that you don't intend to do that as of now.

And so if that's not the intention, to conduct that kind of investigation as of today, it's not clear to me what the value is of the home address.

MR. GREAVES:  Well, Your Honor, I didn't mean to say that we don't intend to do those things.

What I meant to say is that -- I'm not saying that I have -- I don't want to, again, in front of plaintiffs' counsel, like, talk about all of our -- whatever strategies we might have for investigating this case, but these are the things that would be typically done in a personal injury defense.

THE COURT:  Okay.

Mr. Caspar, do you want to just be heard on that last topic in terms what the articulated need is for this information?

MR. CASPAR:  Yes, Your Honor.

I think the solution is, there's a -- we're not the first litigants to try this path, right?

So the solution is in the case law that we cited, which recognizes, including a Supreme Court case, that a litigant's privacy interests is part of the burden

calculation that must be weighed against the other party's interest in the information.

In this case, we've articulated a significant privacy interest, supported by actual fact and circumstances related to this case.  And when you put that on the scale, weigh it against the interests of the other litigants, I don't believe they've articulated an incident -- an interest that, especially as speculative as it is, that would outweigh those significant privacy concerns.

And I think that weighing of interests, which courts commonly do, is a straightforward way of resolving this dispute.

THE COURT:  Okay.

MR. GREAVES:  Your Honor, may I be heard on their privacy interest for a moment?

THE COURT:  Sure.

MR. GREAVES:  Their cited examples for this supposed heightened privacy concern in this case really are, A, have nothing to do with the campaign; and, B, even to the extent that they have to do with other defendants, they're wildly overblown and overstated.

I mean, their cited example to Brandon Straka as a defendant formerly in this case.  He said that people should remember what was done to him simply because of his politics.  You know, first of all, again, that wasn't the

campaign that said that.

Enrique Tarrio allegedly insulted Capitol Police officers.  Again, not the campaign, but also, again, none of this is indicative of any kind of special privacy concern that would be any greater than in a normal case, certainly not one that would override basic, basic discovery requirements in any personal injury case.

And then with President Donald J. Trump specifically, their cited examples are particularly disingenuous when they say that he's attacked jurors and attacked a judge's daughter.  That's just not correct.  It's not accurate to say that President Trump has done those things.

President Trump, you know, in their cited examples, one of which was, President Trump cited a tweet -- or they cited President Trump's tweet, talking about a juror in the Roger Stone trial, who had a history on social media prior to trial of partisanship against Donald Trump, accusing Trump supporters like Stone of racism and being Putin cronies and praising the Mueller investigation that had led to the charges against Stone to begin with.  Like any other citizen, Donald Trump was entitled to highlight that bias on Twitter.

And similarly again, they cited to a *Business Insider* article, which uses hyperbolic rhetoric to

27

characterize a statement by President Trump that the judge in that case was biased against him, and that his daughter received money from the Biden-Harris campaign, again, as an "attack" on the judge and his daughter.

But I mean, it really boils down to the campaign they're affiliating with President Trump, who plaintiffs portray in this lawsuit, again, we believe without basis, as being engaged in this nefarious conspiracy.  It's out to get these plaintiffs.

And this is all just hyperbolic rhetoric.  There's not an actual privacy concern here that translates to the campaign, and certainly not when we're trying to do everything we can to adequately protect these -- you know, this information from being disclosed to anybody improperly that would be outside the bounds of the protective order.

THE COURT:  Okay.

All right.  Let me -- I'm going to just defer on the issue.

Let me go ahead and -- I want to take a look at some of the cases that have been cited and then I'll get you all an order out on the subject, okay?

MR. GREAVES:  All right.

THE COURT:  All right.

So V is medical records.  Have we resolved that in our earlier discussions?

MR. GREAVES:  I don't know that it's resolved.

The plaintiffs did provide a supplemental production shortly before our last hearing, which did fill in a few of the gaps.

But there's still a significant gap in records here, identified records, for one of the plaintiffs for sort of the most important period of treatment, which is immediately after January 6th, Plaintiff Marshall.

THE COURT:  This is for Mr. Marshall.

So let me ask:  Are there additional medical records that the plaintiffs either have in their possession or are working to get concerning Plaintiff Marshall?

MR. CASPAR:  Yes, Your Honor.

And if you don't mind on this particular issue, I would like my co-counsel, Marc Epstein, to address that.

THE COURT:  Sure.

Mr. Epstein.

MR. EPSTEIN:  Thank you, Your Honor.

We do intend to provide additional medical records in a supplemental production early next week.

I am not sure what records Mr. Greaves is referring to, but that might just be because I haven't looked recently and I don't know if they're in this upcoming production.  But I'm happy to confer with Mr. Greaves after.

THE COURT:  Well, why don't you let him know

what's coming and hopefully that will address this concern. And if not, you all can let me know, okay?

MR. CASPAR:  Thank you.

THE COURT:  And then the last issue concerns the retainer agreement.  I take it there's been no progress on that issue and we still have a dispute there?

MR. CASPAR:  That's right, Your Honor.

THE COURT:  All right.

MR. GREAVES:  Your Honor, from our perspective, from the defense perspective, the retainer agreement, while we think it would be judicially inefficient to bifurcate, as some of these other cases have indicated is, I guess, the procedure sometimes in District of D.C., I mean, we're not even sure what opportunity we would have to re-open discovery on attorneys' fees.  So it just seems judicially inefficient to do it that way.

I mean, regardless, though, we do think that the case has been brought without factual foundation and possibly even for an improper purpose.

But we do recognize that that issue is not ripe before the Court for determination.  And if the Court, you know, intends to follow these other District cases and follow this bifurcation system, you know, we understand that, and we'd be willing to, for now, put this request on hold.

THE COURT:  Okay.

All right.  Well, if you're prepared to put it on hold, then I think that certainly is the -- I think that's the path I would certainly take as well in terms of not reaching out to resolve an issue that may not be ripe for consideration at this point.

All right.  So I'll treat that issue then as essentially moot at this point, okay?

So, again, the bottom line is, I think we've resolved everything except the issue concerning the addresses and the Social Security numbers.  If you all would bear with me, I'll take a look at the cases that have been cited by the parties and then we'll get you an order about how we'll deal with that, okay?

MR. CASPAR:  Thank you, Your Honor.

THE COURT:  All right.  Is there anything else we need to discuss?

MR. CASPAR:  One last thing, Your Honor.

I just wanted to mention that we have filed a notice that we would be interested in oral argument on the issue of the dispute we had with the campaign on the prejudice.  If that would be of assistance to the Court, we'd be interested in doing that.

THE COURT:  Okay.

I can tell you that I'm now finally coming out

from underneath some things, and so I certainly hope to turn to, I know we have a number of outstanding motions in this case, as soon as I can.

MR. CASPAR:  Thank you, Your Honor.

THE COURT:  All right?

Thank you, everyone.

(Proceedings concluded at 12:07 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__October 6, 2025_____    _____

                                William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 3/2
**MR. BINNALL: [3]** 21/4 21/8 22/8
**MR. CASPAR: [17]** 7/1 8/8 12/8 16/14 16/18 17/19 18/16 18/19 18/21 20/15 24/20 28/13 29/3 29/7 30/15 30/18 31/4
**MR. EPSTEIN: [1]** 28/18
**MR. GREAVES: [26]** 3/18 4/21 8/3 10/8 10/22 11/3 11/19 12/17 13/10 13/19 14/5 14/16 14/24 15/8 15/10 18/12 19/15 20/4 23/3 23/12 24/8 25/14 25/17 27/22 28/1 29/9
**THE COURT: [46]**

**1**

**11:31 [1]** 1/6
**12:07 [1]** 31/7
**1500 [1]** 2/4
**1943 [1]** 2/11

**2**

**200 [1]** 2/10
**20001 [1]** 2/16
**20005 [1]** 2/5
**202 [2]** 2/5 2/16
**2025 [2]** 1/5 32/7
**21-2265 [2]** 1/4 3/6
**22314 [1]** 2/10
**2265 [2]** 1/4 3/6

**3**

**3249 [1]** 2/16
**333 [1]** 2/15
**354-3249 [1]** 2/16

**6**

**662-8318 [1]** 2/5
**6th [6]** 5/19 6/7 9/10 23/15 23/16 28/8

**7**

**703 [1]** 2/11
**717 [1]** 2/9

**8**

**8318 [1]** 2/5
**888-1943 [1]** 2/11

**9**

**900 [1]** 2/4
**95 [1]** 4/23

**A**

**a.m [1]** 1/6
**ability [3]** 13/8 19/21 22/10
**able [14]** 5/14 5/20 5/21 6/12 11/25 12/11 15/22 16/2 16/4 16/5 17/22 18/8 18/10 23/13
**about [13]** 5/15 7/7 9/1 10/16 11/9 11/10 14/17 17/1 21/22 23/15 24/12 26/16 30/13
**above [1]** 32/4
**above-titled [1]** 32/4
**Absolutely [1]** 18/12
**access [4]** 17/1 20/18 20/18 21/3
**accident [1]** 23/22
**accurate [2]** 11/13 26/12
**accusing [1]** 26/19
**acknowledge [1]** 3/19
**acknowledged [2]** 4/4 15/15
**Act [2]** 15/6 16/25
**Action [1]** 3/6
**actual [6]** 5/17 8/21 9/8 9/13 25/4 27/11
**actually [5]** 4/20 7/23 9/4 11/11 14/2
**acute [1]** 8/21
**add [2]** 19/14 19/15
**addendum [1]** 21/15
**additional [2]** 28/10 28/19
**address [9]** 7/24 8/1 13/21 16/5 20/23 23/11 24/7 28/15 29/1
**addressed [2]** 21/23 21/24
**addresses [7]** 9/6 13/25 16/8 16/13 17/9 18/3 30/11
**adequately [1]** 27/13
**advise [3]** 5/14 12/11 17/23
**advocate [1]** 13/18
**AEO [11]** 5/1 5/12 7/16 8/12 8/15 9/13 9/18 9/23 17/24 18/1 20/16
**AEO-designated-material [1]** 20/16
**affiliating [1]** 27/6
**afford [1]** 22/12
**after [3]** 5/24 28/8 28/24
**again [13]** 13/3 15/23 15/25 23/12 23/18 24/11 25/25 26/3 26/3 26/24 27/3

27/7 30/9

**against [5]** 25/1 25/6 26/18 26/21 27/2
**ago [1]** 24/3
**agree [1]** 17/21
**agreement [2]** 29/5 29/10
**ahead [4]** 4/9 6/20 18/20 27/19
**aided [1]** 2/18
**al [4]** 1/3 1/6 3/6 3/6
**Alexandria [1]** 2/10
**all [29]** 3/11 4/8 4/9 4/20 10/6 13/24 14/25 15/5 15/25 16/10 18/21 19/20 20/19 21/2 23/17 24/12 25/25 27/10 27/17 27/21 27/22 27/23 29/2 29/8 30/2 30/7 30/11 30/16 31/5
**All right [5]** 3/11 16/10 27/22 29/8 31/5
**allegedly [1]** 26/2
**allow [1]** 22/16
**allowed [2]** 9/17 13/11
**almost [3]** 4/23 8/1 10/23
**along [1]** 3/17
**already [2]** 8/24 10/23
**also [9]** 5/8 6/13 7/15 9/17 11/17 13/1 17/9 22/11 26/3
**although [2]** 4/15 15/14
**altogether [1]** 17/18
**am [1]** 28/21
**ambiguous [1]** 18/4
**AMIT [2]** 1/9 3/3
**Amit P [1]** 3/3
**another [7]** 7/10 7/12 8/24 9/9 9/11 14/9 21/15
**answer [1]** 16/9
**answers [1]** 5/8
**any [9]** 4/1 4/2 4/6 10/11 13/18 26/4 26/5 26/7 26/22
**anybody [2]** 3/15 27/14
**anything [5]** 3/15 3/25 4/19 19/14 30/16
**APPEARANCES [1]** 1/11
**applies [1]** 21/16
**appreciate [1]** 3/14
**approach [2]** 21/20 22/1
**appropriate [3]**

27/30 9

18/10 21/14 24/1

**are [33]**
**arguing [1]** 17/1
**argument [2]** 21/21 30/20
**around [2]** 8/20 9/20
**article [1]** 26/25
**articulate [1]** 22/23
**articulated [4]** 19/6 24/18 25/3 25/7
**as [43]**
**as being [1]** 27/8
**As I have [1]** 16/3
**as opposed [2]** 11/11 17/18
**as some [1]** 29/12
**ask [5]** 8/4 11/8 18/8 22/22 28/10
**asked [2]** 7/10 7/14
**asking [3]** 4/13 5/3 10/25
**assistance [1]** 30/22
**attack [1]** 27/4
**attacked [2]** 26/10 26/11
**attempted [1]** 8/25
**attorney [3]** 12/11 17/21 17/24
**attorneys [6]** 4/10 4/18 5/20 11/20 18/5 20/12
**attorneys' [7]** 6/8 8/7 14/11 17/17 20/6 21/18 29/15
**attorneys'-eyes-only [1]** 14/11
**attorneys-eyes-only [4]** 4/10 4/18 11/20 20/12
**authorized [1]** 22/19
**available [3]** 11/18 20/17 20/25
**Avenue [1]** 2/15

**B**

**background [1]** 23/6
**Bar [3]** 20/3 22/19 22/20
**Barrett [1]** 2/15
**based [2]** 9/13 11/20
**basic [2]** 26/6 26/6
**basically [5]** 4/23 5/8 6/10 15/12 15/18
**basis [1]** 27/7
**be [42]**
**bear [1]** 30/12
**because [21]** 4/22 5/5 5/6 6/18 7/16 8/12 9/4 9/10 9/19 10/17 14/9 14/13 16/20 19/4 20/6 20/17 21/11 22/10 22/18 25/24 28/22
**becomes [1]** 15/17
**been [25]** 4/14 4/14

**B**

been... **[23]**  4/17
5/12 8/7 10/3 10/21
11/15 11/22 13/22
13/23 14/14 14/23
15/23 20/9 20/12
20/13 20/16 20/24
20/25 23/19 27/20
29/5 29/18 30/12
before **[8]**  1/9 3/16
5/10 5/11 8/4 13/23
28/3 29/21
begin **[1]**  26/21
behalf **[2]**  3/18 21/8
behave **[1]**  23/22
being **[12]**  4/25 4/25
6/12 9/4 13/4 14/1
14/2 16/2 23/13
26/19 27/8 27/14
believe **[4]**  18/4
20/18 25/7 27/7
believes **[1]**  23/1
besides **[1]**  9/6
between **[3]**  12/21
19/25 21/17
bias **[1]**  26/23
biased **[1]**  27/2
Biden **[1]**  27/3
Biden-Harris **[1]**
27/3
bifurcate **[1]**  29/11
bifurcation **[1]**
29/23
big **[1]**  12/19
bills **[1]**  5/17
Binnall **[5]**  2/8 2/9
21/7 21/8 22/1
binnall.com **[2]**  2/11
2/12
bit **[1]**  13/22
boils **[1]**  27/5
bottom **[1]**  30/9
bounds **[1]**  27/15
Brandon **[1]**  25/22
bring **[1]**  5/11
brought **[1]**  29/18
burden **[1]**  24/25
business **[2]**  9/6
26/24

**C**

calculation **[1]**  25/1
call **[1]**  6/15
campaign **[18]**  7/18
16/23 16/25 17/6
19/16 19/25 22/4
22/5 22/7 22/18 23/1
25/19 26/1 26/3 27/3
27/5 27/12 30/21
campaign's **[2]**  19/21
22/10
can **[25]**  7/23 8/10
8/18 10/2 10/17 11/3
11/8 11/14 11/19
13/1 14/11 17/25

19/24 19/25 21/4
21/18 21/22 22/4
22/15 22/15 22/22
27/13 29/2 30/25
31/3
can't **[4]**  8/17 11/5
12/10 20/22
cannot **[1]**  17/24
Capitol **[6]**  6/6 7/12
9/9 15/14 16/24 26/2
car **[1]**  23/22
care **[2]**  15/1 15/2
case **[22]**  7/12 8/21
8/22 8/24 8/25 9/3
9/21 20/19 21/3
23/23 24/13 24/23
24/24 25/3 25/5
25/18 25/23 26/5
26/7 27/2 29/18 31/3
cases **[6]**  19/1 19/2
27/20 29/12 29/22
30/12
Caspar **[10]**  2/2 3/7
8/5 11/13 12/2 12/6
14/15 14/22 16/11
24/17
categories **[1]**  6/23
category **[1]**  8/6
central **[1]**  5/16
certain **[1]**  21/16
certainly **[11]**  8/17
9/14 11/3 13/17
19/23 23/7 26/5
27/12 30/3 30/4 31/1
Certified **[1]**  2/14
certify **[1]**  32/2
CH **[1]**  2/15
challenge **[1]**  7/3
challenging **[1]**  9/25
characterization **[1]**
10/10
characterize **[1]**
27/1
charges **[1]**  26/21
children **[1]**  17/10
circumstances **[1]**
25/4
cited **[11]**  19/1
24/23 25/17 25/22
26/9 26/14 26/15
26/16 26/24 27/20
30/13
citizen **[1]**  26/22
CIVIL **[2]**  2/3 3/5
claims **[2]**  5/16 8/18
clear **[3]**  15/19 22/3
24/6
client **[12]**  11/11
11/14 11/20 11/25
12/1 12/5 12/22 13/1
13/12 17/22 18/9
18/14
clients **[12]**  5/15
5/21 6/13 8/25 12/10
12/12 13/7 14/2 16/8

16/20 17/23 18/3
co **[1]**  28/15
co-counsel **[1]**  28/15
COLUMBIA **[1]**  1/1
come **[1]**  22/3
comes **[1]**  23/8
coming **[2]**  29/1
30/25
command **[1]**  7/25
COMMITTEE **[1]**  2/3
commonly **[1]**  25/11
comparatively **[1]**
17/7
complete **[1]**  18/1
completely **[1]**  10/9
computer **[1]**  2/18
computer-aided **[1]**
2/18
concern **[9]**  6/9
11/10 14/19 17/3
18/21 25/18 26/4
27/11 29/1
concerned **[3]**  7/7
14/17 19/20
concerning **[2]**  28/12
30/10
concerns **[4]**  8/2
15/16 25/9 29/4
concluded **[1]**  31/7
conditions **[1]**  5/22
conduct **[2]**  18/10
24/5
confer **[2]**  7/19
28/24
CONFERENCE **[1]**  1/9
conferences **[1]**
13/23
confidential **[1]**
22/21
connected **[1]**  7/11
CONRAD **[1]**  1/3
consent **[1]**  15/18
consider **[1]**  16/21
consideration **[2]**
13/5 30/6
consistently **[2]**
19/3 19/10
conspiracy **[1]**  27/8
Constitution **[1]**
2/15
contact **[5]**  7/14
7/17 14/15 14/18
18/2
contacting **[1]**  20/21
contents **[2]**  12/4
13/12
continue **[2]**  3/17
15/22
control **[1]**  19/17
conversation **[1]**
18/6
conversations **[2]**
12/12 12/13
correct **[3]**  20/23
26/11 32/3

correctly **[1]**  12/6
could **[5]**  12/24
12/25 14/8 21/5
23/13
counsel **[14]**  3/11
6/10 6/22 7/12 8/18
9/1 14/3 16/2 16/3
18/22 22/12 22/18
24/12 28/15
couple **[2]**  16/19
19/1
COURT **[16]**  1/1 2/13
2/14 3/3 5/3 5/10
5/11 10/3 21/10
21/15 21/18 22/20
24/24 29/21 29/21
30/22
Court's **[1]**  13/10
courts **[4]**  8/12 19/3
19/10 25/11
covers **[1]**  6/19
create **[1]**  17/12
critical **[1]**  16/20
cronies **[1]**  26/20
CRR **[2]**  32/2 32/8
current **[2]**  17/8
18/3
customize **[1]**  22/15
CV **[1]**  1/4

**D**

D.C **[4]**  1/5 2/5 2/16
29/13
damages **[2]**  4/1 4/6
databases **[1]**  23/6
Date **[1]**  32/7
daughter **[3]**  26/11
27/2 27/4
de **[2]**  10/20 10/23
de-designated **[2]**
10/20 10/23
deal **[1]**  30/14
dealt **[1]**  23/15
declined **[1]**  3/25
defend **[3]**  19/21
22/10 22/16
defendant **[16]**  2/7
3/9 7/10 7/17 7/18
8/24 9/9 9/17 14/17
20/1 20/1 20/14 22/3
22/4 22/6 25/23
Defendant Rehl **[1]**
7/18
Defendant Rehl's **[1]**
14/17
Defendant Trump **[1]**
9/17
defendant's **[1]**  9/11
defendants **[21]**  1/7
3/19 3/20 7/4 7/13
7/15 8/17 8/22 17/14
18/6 19/6 19/9 20/12
20/17 20/20 21/2
21/12 21/13 22/5
22/11 25/20

**D**

defense [7]   8/11 8/17 11/23 13/9 23/4 24/15 29/10
defer [1]   27/17
Department [1]   16/24
deposition [1]   5/7
depositions [4]   6/4 6/11 6/15 16/9
describe [1]   4/16
designate [5]   6/15 7/25 9/17 9/23 17/23
designated [12]   4/25 5/12 6/2 6/4 6/7 7/16 8/7 8/12 10/14 10/20 10/23 20/16
designating [1]   17/17
designation [8]   4/11 7/19 7/20 8/16 10/20 11/21 12/24 20/14
designations [10]   4/14 4/15 4/17 4/23 5/4 5/6 9/13 9/25 11/6 20/12
detail [1]   10/14
determination [1]   29/21
diagnosed [1]   11/16
diagnoses [1]   5/24
did [4]   3/22 7/19 28/2 28/3
didn't [2]   9/5 24/8
difference [3]   12/18 12/19 12/21
different [1]   22/17
differently [1]   12/23
difficult [1]   5/14
directly [1]   18/14
disagree [3]   4/21 10/9 23/25
disclaiming [1]   4/1
disclosed [3]   17/5 17/14 27/14
disclosing [1]   19/12
disclosures [1]   11/20
discovery [13]   1/9 5/7 7/4 7/7 7/25 9/18 10/1 12/9 20/17 20/19 21/3 26/6 29/15
discrete [4]   17/4 17/11 18/25 19/4
discuss [8]   3/16 6/12 8/18 11/25 13/11 17/22 17/25 30/17
discussed [2]   13/22 17/20
discussing [2]   11/12 12/3
discussions [1]   27/25

disingenuous [1]   26/10
dispute [6]   4/12 7/4 7/21 25/12 29/6 30/21
distinction [1]   12/18
distinguish [1]   22/4
DISTRICT [5]   1/1 1/1 1/10 29/13 29/22
dive [1]   4/9
do [30]   4/19 7/9 8/4 11/3 12/6 13/8 13/20 16/5 17/12 18/4 19/14 19/25 20/3 21/18 22/2 22/2 23/19 23/23 23/23 24/3 24/9 24/17 25/11 25/19 25/20 27/12 28/19 29/16 29/17 29/20
do you [1]   19/25
document [2]   5/9 11/18
documents [2]   8/16 17/25
does [3]   12/15 15/16 22/18
doesn't [1]   19/7
doing [5]   5/25 11/7 11/23 15/24 30/23
don't [27]   6/24 7/1 7/22 10/15 10/24 11/19 11/22 11/24 13/6 13/12 15/13 15/23 18/8 19/18 19/19 19/24 21/10 21/23 23/25 24/3 24/9 24/11 25/7 28/1 28/14 28/23 28/25
DONALD [5]   1/6 2/8 26/8 26/18 26/22
Donald J. Trump [1]   26/8
Donald Trump [1]   26/22
done [5]   10/19 23/20 24/14 25/24 26/12
down [3]   21/11 22/9 27/5
dox [1]   8/25
draw [1]   19/25

**E**

each [1]   10/13
earlier [2]   17/15 27/25
early [1]   28/20
Edward [2]   2/2 3/7
Edward Caspar [1]   3/7
effectively [1]   21/21
either [3]   12/22 12/24 28/11

else [2]   19/14 30/10
Email [3]   2/6 2/11 2/12
enable [1]   7/22
engaged [1]   27/8
Enrique [1]   26/2
entail [1]   19/5
entails [1]   19/5
enter [1]   21/15
entirely [1]   4/24
entirety [1]   16/17
entities [2]   3/9 21/9
entitled [1]   26/22
entity [1]   3/19
Epstein [4]   2/2 3/8 28/15 28/17
equal [3]   20/18 20/18 21/3
especially [3]   17/14 18/25 25/8
essentially [1]   30/8
estimation [1]   11/17
et [4]   1/3 1/6 3/6 3/6
et al [1]   3/6
ethical [1]   20/2
evaluate [2]   5/21 5/21
even [5]   8/20 16/8 25/19 29/14 29/19
every [5]   5/8 5/8 5/11 9/17 10/13
everyday [1]   23/22
everyone [1]   31/6
everything [2]   27/13 30/10
exactly [1]   10/15
example [2]   22/24 25/22
examples [3]   25/17 26/9 26/15
except [1]   30/10
exception [1]   14/14
exercised [1]   9/24
existing [1]   5/22
experience [1]   17/14
experiences [2]   8/22 9/14
expressed [1]   16/3
extent [1]   25/20
eyes [10]   4/10 4/18 6/8 8/7 11/20 14/11 17/17 20/6 20/12 21/18

**F**

fact [3]   5/25 22/5 25/4
facts [2]   8/22 9/13
factual [1]   29/18
faith [2]   9/14 9/23
families [1]   18/4
fear [1]   22/2
fees [1]   29/15

few [3]   16/21 17/4 28/4
file [1]   10/25
filed [1]   30/19
fill [1]   28/3
finally [1]   30/25
financial [1]   22/11
first [8]   6/25 8/9 10/9 15/12 16/22 23/5 24/22 25/25
flexibility [1]   9/22
follow [2]   29/22 29/23
followed [3]   10/4 10/5 10/11
following [3]   7/24 11/15 11/16
foregoing [1]   32/3
forgive [1]   17/16
formerly [1]   25/23
forward [1]   22/3
foundation [1]   29/18
front [1]   24/11
full [1]   21/11
fully [1]   11/7
further [1]   10/21
future [1]   20/24

**G**

gap [1]   28/5
gaps [1]   28/4
gather [1]   16/12
generalized [2]   7/5 7/22
get [10]   6/22 15/19 16/23 20/21 22/14 23/6 27/9 27/20 28/12 30/13
getting [1]   23/8
give [1]   16/19
given [3]   5/2 16/25 22/16
gives [1]   9/22
glom [1]   24/2
go [8]   4/9 6/20 14/13 18/20 21/11 23/5 23/23 27/19
go ahead [4]   4/9 6/20 18/20 27/19
going [5]   4/5 13/8 13/18 20/23 27/17
good [5]   3/2 3/11 9/14 9/19 9/23
great [2]   10/14 14/25
greater [2]   13/18 26/5
Greaves [13]   2/8 3/10 6/21 7/2 7/8 8/6 10/7 12/15 17/21 18/7 19/14 28/21 28/24
grievance [1]   7/5
grievances [1]   7/22
GROUP [1]   2/9

**G**

guess [2]   24/2 29/12
gym [1]   23/23

**H**

had [5]   3/13 20/20
 26/17 26/21 30/21
hand [2]   12/25 19/24
handing [2]   12/22
 13/1
happen [1]   22/11
happened [1]   8/24
happens [2]   6/14
 21/22
happy [2]   3/16 28/24
harassed [1]   9/9
harassment [1]   17/12
Harris [1]   27/3
has [12]   5/12 8/7
 9/9 11/14 12/11
 14/14 14/23 17/6
 20/13 23/19 26/12
 29/18
hasn't [2]   10/3
 10/21
have [56]
haven't [4]   4/22
 10/10 13/15 28/22
He [1]   25/23
he's [3]   11/15 11/16
 26/10
health [1]   5/19
heard [4]   12/2 21/4
 24/17 25/14
hearing [4]   3/13
 3/22 4/4 28/3
heightened [1]   25/18
help [3]   4/12 12/15
 13/7
helpful [2]   4/8 21/6
helping [1]   16/22
here [9]   5/13 10/4
 10/12 19/16 19/23
 22/14 22/18 27/11
 28/6
Hi [1]   21/7
highlight [1]   26/22
highly [3]   8/13 9/20
 19/4
him [3]   25/24 27/2
 28/25
his [3]   25/24 27/2
 27/4
history [1]   26/17
hold [3]   22/20 29/25
 30/3
holding [1]   20/24
home [5]   13/25 16/13
 17/8 23/11 24/7
Honor [38]
HONORABLE [3]   1/9
 3/2 3/3
hope [1]   31/1
hopefully [1]   29/1
how [6]   13/4 20/9

22/3 23/14 23/21
 30/14
hyperbolic [2]   26/25
 27/10

**I**

I am [1]   28/21
I can [6]   11/19
 19/24 19/25 22/4
 30/25 31/3
I don't [15]   7/1
 10/15 10/24 11/19
 11/22 11/24 13/12
 15/23 18/8 19/19
 21/10 23/25 25/7
 28/1 28/23
I guess [2]   24/2
 29/12
I had [1]   3/13
I have [3]   10/12
 23/20 24/11
I haven't [1]   13/15
I just [1]   12/2
I know [1]   31/2
I mean [6]   11/13
 11/22 13/10 18/7
 25/22 29/13
I might [1]   21/5
I think [17]   5/1 6/2
 6/14 6/17 7/9 9/23
 12/9 12/17 15/2
 17/15 21/14 21/18
 23/25 24/21 25/10
 30/3 30/3
I understand [6]
 4/14 5/10 10/18 12/6
 21/25 22/8
I want [1]   14/9
I would [6]   4/21
 11/25 19/9 19/15
 28/15 30/4
I'll [4]   9/16 27/20
 30/7 30/12
I'm [11]   3/16 10/22
 13/11 13/17 14/17
 19/20 23/18 24/10
 27/17 28/24 30/25
I'm not [2]   14/17
 24/10
I've [2]   11/22 23/20
identified [3]   6/5
 6/11 28/6
identify [3]   7/6
 9/25 23/13
identities [2]   6/8
 6/12
identity [6]   6/2
 6/24 7/10 14/13
 14/19 14/23
II [1]   15/2
III [1]   15/4
images [1]   9/6
immediately [1]   28/8
immunity [1]   9/18
implicate [2]   15/14

15/16
important [1]   28/7
impossible [1]   8/1
improper [2]   5/2
 29/19
improperly [2]   6/2
 27/14
inability [2]   11/10
 13/8
incident [1]   25/7
incidents [1]   9/8
included [1]   10/14
including [2]   13/24
 24/24
income [1]   4/4
indicated [1]   29/12
indication [1]   21/12
indicative [1]   26/4
individual [1]   18/6
inefficient [2]
 29/11 29/16
information [42]
inhibit [1]   13/8
inhibited [1]   13/4
injuries [2]   8/19
 11/15
injury [4]   11/23
 23/4 24/14 26/7
Insider [1]   26/25
insofar [1]   14/12
instances [1]   21/18
insulted [1]   26/2
intend [5]   5/5 5/10
 24/3 24/9 28/19
intends [1]   29/22
intention [2]   18/13
 24/5
interest [5]   17/7
 25/2 25/4 25/8 25/15
interested [2]   30/20
 30/23
interests [5]   15/14
 17/6 24/25 25/6
 25/10
interrogatory [3]
 5/8 7/10 7/14
interrupt [2]   6/20
 10/17
intimidate [1]   8/23
intimidation [2]
 9/11 17/13
introduced [1]   6/10
investigating [1]
 24/13
investigation [4]
 18/11 23/17 24/6
 26/20
investigator [2]
 16/4 23/21
involuntarily [1]
 19/23
involved [2]   9/12
 19/20
involving [1]   19/1
is [84]

is the [1]   11/17
isn't [1]   20/23
issue [31]   3/23 5/13
 6/1 8/1 10/1 12/16
 14/9 14/11 14/14
 15/7 15/9 15/11
 15/17 16/13 16/20
 17/17 17/19 18/24
 20/23 21/20 21/23
 22/17 27/18 28/14
 29/4 29/6 29/20 30/5
 30/7 30/10 30/21
issues [3]   5/5 5/13
 14/6
it [35]
it would be [1]
 29/11
it's [32]   4/3 4/23
 5/2 5/6 5/14 6/17
 6/18 7/1 7/16 7/20
 8/1 8/23 9/12 12/4
 12/17 12/19 13/15
 14/2 15/24 16/12
 18/4 18/14 20/6
 21/14 21/21 22/3
 22/9 22/17 24/6
 26/11 27/8 28/1
itemization [1]   3/24
itemize [1]   3/25
items [1]   10/14
itself [4]   11/18
 14/20 19/21 22/10
IV [1]   15/5

**J**

J. [1]   26/8
January [6]   5/19 6/7
 9/10 23/15 23/16
 28/8
January 6th [6]   5/19
 6/7 9/10 23/15 23/16
 28/8
jason [3]   2/8 2/12
 3/10
Jason Greaves [1]
 3/10
jesse [3]   2/8 2/11
 21/8
judge [3]   1/10 27/1
 27/4
judge's [1]   26/11
judicially [2]   29/11
 29/15
jump [1]   3/16
juror [1]   26/16
jurors [1]   26/10
just [32]   3/18 3/19
 4/9 5/3 5/6 5/20
 6/17 6/18 6/22 8/4
 11/9 12/2 13/5 14/1
 14/8 16/21 17/20
 18/14 19/6 19/15
 21/4 21/23 22/10
 22/24 23/12 24/17
 26/11 27/10 27/17

**J**

**just... [3]**   28/22 29/15 30/19
**justification [2]** 16/11 16/16

**K**

**keeping [1]**   18/24
**kind [8]**   5/23 6/1 6/8 11/4 15/19 23/4 24/6 26/4
**King [1]**   2/9
**know [41]**

**L**

**Labor [1]**   16/24
**last [10]**   3/13 3/22 4/4 15/2 15/4 19/8 24/18 28/3 29/4 30/18
**later [1]**   21/20
**law [4]**   2/3 2/9 18/24 24/23
**lawsuit [1]**   27/7
**LAWYERS' [1]**   2/3
**lawyerscommittee.org [1]**   2/6
**least [4]**   4/12 10/18 14/12 15/15
**led [1]**   26/21
**left [1]**   3/17
**let [11]**   6/20 6/22 8/4 10/17 12/23 18/8 27/17 27/19 28/10 28/25 29/2
**let's [3]**   4/9 11/9 22/24
**letter [1]**   3/22
**letters [1]**   15/15
**life [1]**   23/22
**like [7]**   14/13 17/7 20/22 24/12 26/19 26/21 28/15
**line [3]**   10/14 19/25 30/9
**litigant's [1]**   24/25
**litigants [3]**   9/11 24/22 25/6
**litigation [6]**   8/23 9/12 17/15 18/14 18/22 19/20
**little [2]**   13/22 19/11
**lived [1]**   9/14
**living [1]**   18/3
**logistics [1]**   6/18
**long [1]**   11/23
**look [5]**   13/15 19/22 23/25 27/19 30/12
**looked [1]**   28/23
**lost [1]**   4/5
**lot [3]**   19/12 20/21 23/5

**M**

**made [2]**   4/14 9/13
**mail [1]**   20/22
**main [1]**   5/13
**maintained [1]**   10/20
**make [4]**   8/10 11/17 11/19 21/16
**making [1]**   20/16
**Marc [3]**   2/2 3/8 28/15
**Marc Epstein [2]**   3/8 28/15
**Marshall [3]**   28/8 28/9 28/12
**material [6]**   8/1 8/6 9/23 10/1 12/10 20/16
**materials [1]**   3/21
**matter [2]**   23/12 32/4
**matters [1]**   19/19
**may [4]**   8/3 22/11 25/14 30/5
**maybe [1]**   6/1
**me [20]**   3/12 4/12 4/13 4/20 6/20 6/22 8/4 10/17 12/23 13/7 16/19 17/16 18/8 22/3 24/6 27/17 27/19 28/10 29/2 30/12
**mean [12]**   5/5 11/13 11/22 12/21 13/10 13/15 18/7 24/8 25/22 27/5 29/13 29/17
**means [1]**   8/15
**meant [1]**   24/10
**mechanical [1]**   2/17
**media [1]**   26/17
**medical [20]**   3/24 4/1 5/11 5/15 5/18 8/5 8/9 8/13 8/20 11/9 11/11 11/24 12/22 13/6 13/12 14/12 23/8 27/24 28/10 28/19
**MEHTA [2]**   1/9 3/3
**members [2]**   20/2 22/19
**mental [1]**   5/19
**mention [1]**   30/19
**mentioned [1]**   17/15
**mepstein [1]**   2/6
**Merit [1]**   2/13
**might [4]**   20/1 21/5 24/13 28/22
**mind [1]**   28/14
**minimal [1]**   17/7
**minor [1]**   6/1
**minutes [1]**   16/20
**moment [2]**   14/8 25/15
**money [1]**   27/3
**moot [1]**   30/8

**more [1]**   8/21
**morning [2]**   3/2 3/11
**most [3]**   4/17 4/22 28/7
**motions [1]**   31/2
**Mr. [23]**   6/21 7/2 7/8 8/5 8/6 10/7 11/13 12/2 12/6 12/15 14/15 14/22 16/11 17/21 18/7 19/14 21/7 22/1 24/17 28/9 28/17 28/21 28/24
**Mr. Binnall [2]**   21/7 22/1
**Mr. Caspar [8]**   8/5 11/13 12/2 12/6 14/15 14/22 16/11 24/17
**Mr. Epstein [1]**   28/17
**Mr. Greaves [11]**   6/21 7/2 7/8 8/6 10/7 12/15 17/21 18/7 19/14 28/21 28/24
**Mr. Marshall [1]**   28/9
**much [1]**   9/5
**Mueller [1]**   26/20
**must [1]**   25/1
**my [7]**   11/20 13/12 13/15 14/19 15/21 22/2 28/15

**N**

**names [1]**   6/5
**narrow [1]**   7/20
**nature [1]**   8/18
**necessarily [1]** 21/10
**need [11]**   4/20 5/20 5/21 7/23 11/17 13/21 19/6 19/11 23/8 24/18 30/17
**needed [1]**   7/6
**needs [7]**   10/4 17/22 21/10 21/15 21/24 22/13 23/1
**nefarious [1]**   27/8
**neighbors [1]**   16/5
**new [1]**   10/25
**next [1]**   28/20
**no [9]**   1/4 4/17 7/17 12/19 18/13 18/20 20/15 21/11 29/5
**none [1]**   26/3
**normal [1]**   26/5
**not [43]**
**nothing [3]**   8/19 10/23 25/19
**notice [3]**   5/2 7/18 30/20
**notices [1]**   20/22
**notifying [1]**   20/25

**now [16]**   3/3 3/5 3/23 3/25 5/10 8/25 9/3 11/7 13/20 15/5 20/20 21/11 21/24 24/4 29/24 30/25
**number [3]**   23/4 23/9 31/2
**numbers [8]**   13/25 16/13 17/9 17/10 22/25 23/2 23/7 30/11
**NW [2]**   2/4 2/15

**O**

**objected [3]**   4/22 4/25 10/13
**objecting [1]**   10/15
**objection [3]**   7/18 10/21 12/3
**objections [5]**   4/15 4/17 5/1 10/24 11/1
**obligations [2]**   20/2 22/19
**obviously [3]**   9/24 12/13 13/1
**October [2]**   1/5 32/7
**odds [1]**   7/5
**off [2]**   3/17 16/22
**offers [1]**   22/6
**officer [2]**   7/13 7/15
**officers [5]**   6/6 9/10 19/1 22/20 26/3
**Official [1]**   2/14
**okay [22]**   4/7 11/2 13/14 14/22 14/23 14/24 16/15 16/22 16/24 18/15 18/18 19/13 23/10 24/16 25/13 27/16 27/21 29/2 30/1 30/8 30/14 30/24
**one [13]**   6/9 6/10 6/11 10/13 13/23 14/6 14/14 15/15 19/22 26/6 26/15 28/6 30/18
**online [2]**   9/2 9/6
**only [14]**   4/10 4/18 6/8 8/7 11/20 14/11 14/19 16/12 17/17 20/6 20/7 20/12 21/16 21/18
**open [1]**   29/14
**opportunities [1]** 4/5
**opportunity [1]** 29/14
**opposed [3]**   11/11 17/18 20/1
**option [1]**   22/15
**oral [1]**   30/20
**order [18]**   6/19 7/6 9/3 9/7 9/15 9/17 9/19 10/11 12/9

**O**

order... [9]  13/11 14/20 16/1 18/5 20/5 21/16 27/15 27/21 30/13
order's [1]  7/24
other [22]  4/13 5/5 6/1 9/9 9/12 9/25 14/6 18/16 18/21 19/9 19/19 19/24 20/2 20/11 21/12 22/5 25/1 25/6 25/20 26/22 29/12 29/22
others [1]  10/21
our [17]  5/1 5/2 5/14 6/13 8/25 10/24 11/5 14/2 16/20 18/3 18/14 19/7 21/2 24/12 27/25 28/3 29/9
out [8]  8/10 8/25 9/16 10/3 27/8 27/21 30/5 30/25
outside [1]  27/15
outstanding [1]  31/2
outweigh [2]  19/7 25/9
over [5]  12/22 12/25 13/2 14/23 19/17
overblown [1]  25/21
overlapping [1]  4/24
override [1]  26/6
overstated [1]  25/21
own [1]  17/8

**P**

p.m [1]  31/7
pain [1]  5/18
part [3]  7/3 13/20 24/25
particular [2]  21/12 28/14
particularity [3]  7/6 7/25 10/2
particularly [2]  21/14 26/9
parties [9]  8/23 9/22 10/2 18/22 19/19 20/7 21/17 21/22 30/13
partisanship [1]  26/18
party [1]  9/25
party's [1]  25/1
past [2]  15/23 23/20
path [2]  24/22 30/4
patience [2]  3/12 3/14
people [7]  6/13 6/15 9/12 22/18 23/7 23/13 25/23
percent [1]  4/23
perhaps [1]  17/24
period [1]  28/7
permit [1]  16/8

person [2]  7/11 7/12
person's [2]  7/16 23/9
personal [7]  7/14 7/17 9/5 11/23 23/3 24/14 26/7
perspective [2]  29/9 29/10
physical [1]  16/8
physically [1]  12/21
piece [3]  7/6 7/8 9/18
pieces [7]  7/23 17/4 17/11 18/25 19/4 19/8 19/11
PII [2]  13/24 15/9
pin [1]  14/8
place [1]  23/5
plaintiff [3]  11/14 28/8 28/12
plaintiff's [1]  13/6
plaintiffs [24]  1/4 2/2 3/7 3/20 4/2 4/16 4/16 5/12 5/15 6/4 6/10 7/11 13/24 15/11 16/22 17/3 19/16 20/9 23/14 27/6 27/9 28/2 28/6 28/11
plaintiffs' [11]  6/22 7/11 8/18 9/1 10/10 10/18 13/16 13/17 16/3 17/8 24/11
planning [1]  23/19
point [3]  9/16 30/6 30/8
points [2]  16/21 18/16
police [7]  6/6 7/13 9/10 15/14 16/24 19/1 26/2
politics [1]  25/25
portray [1]  27/7
position [6]  6/23 10/18 12/7 13/16 13/17 22/12
possession [1]  28/11
possibly [1]  29/19
post [1]  5/24
post-traumatic [1]  5/24
posture [1]  4/3
potentially [1]  24/1
practice [2]  11/22 11/24
praising [1]  26/20
pre [2]  5/22 15/19
pre-clear [1]  15/19
pre-existing [1]  5/22
precisely [1]  22/22
prejudice [2]  17/5 30/22
prepared [1]  30/2

present [4]  3/7 3/9 6/7 13/9
presents [2]  6/13 6/14
preservation [1]  3/22
President [7]  26/8 26/12 26/14 26/15 26/16 27/1 27/6
President Trump [5]  26/12 26/14 26/15 27/1 27/6
President Trump's [1]  26/16
presiding [1]  3/4
pretend [1]  11/5
Prettyman [1]  2/15
prevented [2]  5/25 9/3
preventing [1]  8/19
prevents [1]  16/1
previously [2]  4/24 17/20
primary [1]  13/5
prior [2]  13/23 26/18
privacy [13]  6/8 15/5 15/14 15/16 16/25 17/6 24/25 25/4 25/9 25/15 25/18 26/4 27/11
private [3]  16/4 18/25 23/21
privileged [1]  12/13
pro [10]  18/23 19/10 20/1 20/11 20/14 20/17 20/20 22/3 22/5 22/6
pro se [10]  18/23 19/10 20/1 20/11 20/14 20/17 20/20 22/3 22/5 22/6
problem [2]  7/21 13/13
problematic [1]  6/17
problems [3]  6/13 6/14 11/6
procedure [2]  10/3 29/13
proceedings [5]  1/9 2/17 9/18 31/7 32/4
produce [1]  17/24
produced [4]  2/18 5/9 8/9 13/22
producing [2]  15/23 19/5
production [3]  28/3 28/20 28/24
progress [1]  29/5
prohibits [1]  18/5
proper [3]  5/4 6/18 15/24
properly [1]  17/23
protect [2]  20/5 27/13

protected [2]  14/20 15/25
protection [2]  15/19 18/1
protective [17]  6/19 7/5 7/24 9/3 9/7 9/15 9/16 9/19 10/11 12/9 13/11 14/20 16/1 18/4 20/5 21/16 27/15
provide [5]  3/21 3/22 18/2 28/2 28/19
provided [3]  3/20 7/13 7/15
provisions [1]  4/18
public [1]  23/5
publicly [1]  9/11
purpose [1]  29/19
put [7]  9/6 12/23 14/8 14/11 25/5 29/24 30/2
Putin [1]  26/20

**Q**

question [2]  11/8 13/3
questions [1]  16/9
quickly [1]  21/5

**R**

racism [1]  26/19
raise [1]  5/6
raised [1]  7/4
rationale [1]  22/7
re [1]  29/14
re-open [1]  29/14
reaching [1]  30/5
real [1]  21/5
really [2]  25/18 27/5
Realtime [1]  2/14
reason [1]  9/19
received [3]  5/23 11/16 27/3
recent [2]  4/17 4/22
recently [1]  28/23
recognize [4]  8/13 19/3 19/10 29/20
recognized [1]  17/8
recognizes [2]  9/20 24/24
recognizing [1]  22/17
recompence [1]  5/17
record [5]  3/5 5/12 11/11 23/5 32/3
recorded [1]  2/17
records [26]  3/24 8/5 8/9 8/20 11/9 11/24 12/3 12/4 12/22 12/25 13/7 13/12 13/21 14/12 15/20 15/22 16/23 17/1 17/4 23/8 27/24 28/5 28/6 28/11

**R**

**records... [2]** 28/19 28/21
**redacted [1]** 13/24
**redacting [2]** 15/22 17/18
**redaction [1]** 16/1
**referenced [2]** 7/9 14/15
**referencing [1]** 7/2
**referring [1]** 28/22
**refers [1]** 7/9
**regardless [2]** 5/16 29/17
**Registered [1]** 2/13
**Rehl [1]** 7/18
**Rehl's [1]** 14/17
**related [1]** 25/5
**relates [1]** 17/20
**releases [2]** 15/6 16/25
**releasing [1]** 9/1
**relevance [1]** 17/2
**relevant [1]** 14/5
**remain [1]** 10/24
**remains [1]** 13/3
**remember [1]** 25/24
**Report [1]** 19/2
**reported [2]** 9/8 9/12
**Reporter [4]** 2/13 2/13 2/14 2/14
**represented [3]** 18/22 20/7 22/6
**request [1]** 29/24
**requested [1]** 3/21
**requests [2]** 15/13 15/16
**require [1]** 23/7
**requirements [2]** 10/11 26/7
**requires [2]** 9/15 9/24
**resolve [3]** 4/13 12/16 30/5
**resolved [4]** 14/14 27/24 28/1 30/10
**resolves [1]** 3/23
**resolving [1]** 25/11
**respect [1]** 20/11
**respond [2]** 8/3 10/7
**responded [1]** 10/19
**response [1]** 8/6
**rest [1]** 14/12
**resulting [1]** 5/19
**retainer [2]** 29/5 29/10
**return [1]** 20/21
**rhetoric [2]** 26/25 27/10
**right [38]**
**rightfully [1]** 22/16
**RIGHTS [1]** 2/3
**ripe [3]** 23/17 29/20 30/5

**risk [3]** 17/12 19/7 19/12
**risks [1]** 19/5
**RMR [2]** 32/2 32/8
**Roger [1]** 26/17
**role [1]** 9/10
**route [1]** 21/11

**S**

**said [4]** 13/5 24/2 25/23 26/1
**same [7]** 4/23 6/9 10/24 13/3 20/2 22/6 22/9
**say [8]** 11/14 12/2 14/22 18/2 24/9 24/10 26/10 26/12
**saying [7]** 10/16 10/22 15/12 15/12 20/22 23/18 24/10
**says [1]** 11/13
**scale [1]** 25/5
**se [10]** 18/23 19/10 20/1 20/11 20/14 20/17 20/20 22/3 22/5 22/6
**searches [1]** 23/5
**second [5]** 7/8 11/10 13/20 14/14 24/3
**Security [10]** 13/25 16/12 17/9 17/10 22/24 23/2 23/4 23/7 23/9 30/11
**see [1]** 23/21
**seeking [4]** 4/6 5/17 5/18 21/12
**seem [1]** 11/4
**seems [1]** 29/15
**send [4]** 11/24 13/6 16/4 23/20
**sense [2]** 19/22 21/25
**sensitive [3]** 8/14 9/20 19/4
**sensitivity [1]** 8/20
**sent [2]** 7/18 15/13
**session [1]** 3/3
**set [1]** 10/25
**severely [1]** 17/5
**share [3]** 11/11 18/9 19/9
**shared [2]** 8/17 12/10
**sharing [3]** 12/4 18/5 18/13
**short [1]** 12/14
**shortly [1]** 28/3
**should [3]** 16/25 22/14 25/23
**show [1]** 13/1
**significant [4]** 17/12 25/3 25/9 28/5
**similar [1]** 4/3
**similarly [1]** 26/24
**simply [2]** 18/10

**since [1]** 10/21
**single [3]** 5/9 5/11 9/17
**SMITH [3]** 1/3 2/2 3/6
**so [55]**
**So I think [2]** 5/3 15/1
**So it's [1]** 4/3
**social [11]** 13/25 16/12 17/9 17/10 22/24 23/2 23/4 23/7 23/9 26/17 30/11
**solution [3]** 22/13 24/21 24/23
**some [11]** 4/15 6/8 8/22 10/20 15/19 18/23 20/20 22/13 27/20 29/12 31/1
**some are [1]** 18/23
**somebody [1]** 23/21
**somebody's [1]** 16/4
**somehow [1]** 14/20
**sometimes [2]** 20/21 29/13
**soon [1]** 31/3
**sorry [2]** 3/20 18/19
**sort [7]** 12/16 14/9 15/1 22/13 22/22 24/2 28/6
**sort of [1]** 12/16
**sounds [1]** 14/13
**speak [1]** 23/13
**speaks [1]** 12/9
**special [1]** 26/4
**specific [2]** 4/20 10/1
**specifically [5]** 4/1 4/5 10/12 21/13 26/9
**speculative [1]** 25/8
**spouses [1]** 17/10
**stand [2]** 4/19 5/1
**start [2]** 6/24 22/24
**starting [1]** 4/10
**statement [1]** 27/1
**STATES [2]** 1/1 1/10
**status [4]** 5/15 5/22 19/2 23/14
**stenography [1]** 2/17
**still [6]** 4/25 5/1 5/18 6/2 28/5 29/6
**Stone [3]** 26/17 26/19 26/21
**straightforward [1]** 25/11
**Straka [1]** 25/22
**strategies [1]** 24/12
**strawman [1]** 21/21
**Street [2]** 2/4 2/9
**stress [1]** 5/24
**stringency [1]** 13/18
**studied [1]** 13/16
**subject [1]** 27/21
**subpoenaed [1]** 16/23

**sue [1]** 19/17 19/18 22/11
**suffered [1]** 11/15
**suffering [1]** 5/18
**sufficiently [1]** 20/5
**suggesting [1]** 8/7
**Suite [2]** 2/4 2/10
**supervising [1]** 6/6
**supervisors [1]** 6/5
**supplemental [2]** 28/2 28/20
**supported [1]** 25/4
**supporters [1]** 26/19
**supports [1]** 18/24
**supposed [1]** 25/18
**Supreme [1]** 24/24
**Supreme Court [1]** 24/24
**sure [4]** 25/16 28/16 28/21 29/14
**system [1]** 29/23

**T**

**take [6]** 10/1 13/10 27/19 29/5 30/4 30/12
**takes [1]** 15/1
**talk [3]** 11/9 16/5 24/12
**talked [1]** 15/4
**talking [1]** 26/16
**targeting [1]** 11/7
**Tarrio [1]** 26/2
**tell [1]** 30/25
**terms [6]** 4/13 8/5 11/9 23/11 24/18 30/4
**testimony [1]** 5/7
**than [4]** 9/4 13/18 22/5 26/5
**Thank [5]** 28/18 29/3 30/15 31/4 31/6
**Thank you [4]** 28/18 29/3 30/15 31/4
**thankfully [1]** 9/5
**Thanks [1]** 3/12
**that [190]**
**that's [19]** 4/8 7/3 12/7 12/8 13/10 13/16 13/17 14/5 14/5 14/9 15/8 16/14 17/23 20/23 21/23 24/5 26/11 29/7 30/3
**their [34]**
**them [25]** 5/2 6/15 7/20 8/9 8/10 8/11 8/12 9/1 10/12 10/24 11/12 11/25 12/12 13/1 13/2 15/23 15/24 17/5 17/23 19/5 19/12 20/25 21/1 22/16 22/16
**themselves [3]** 8/16 13/24 22/17

**T**

then [17]   6/1 9/24 10/21 11/17 11/17 13/17 14/11 15/17 21/20 21/23 22/2 26/8 27/20 29/4 30/3 30/7 30/13

theoretically [1] 12/25

there [14]   4/14 4/16 4/19 7/2 10/21 13/13 13/20 17/19 18/16 20/12 22/13 28/10 29/6 30/16

there's [13]   3/15 5/13 8/19 9/20 12/21 15/19 19/11 19/12 21/11 24/21 27/10 28/5 29/5

these [19]   5/4 5/15 6/15 6/19 7/21 9/13 16/9 17/3 18/24 19/3 19/11 21/17 21/17 23/18 24/13 27/9 27/13 29/12 29/22

they [46]

they're [13]   3/25 5/17 5/18 7/7 10/16 10/25 11/6 15/12 15/17 16/7 25/20 27/6 28/23

they've [6]   10/19 10/19 10/23 15/22 16/23 25/7

thing [2]   10/9 30/18

things [12]   3/16 4/10 4/24 6/19 10/13 10/20 23/17 23/19 24/9 24/14 26/13 31/1

think [29]   5/1 5/2 5/3 6/2 6/14 6/17 7/9 9/23 10/4 12/9 12/17 13/12 13/21 15/1 15/2 15/24 17/15 19/25 21/14 21/18 22/23 23/25 24/21 25/10 29/11 29/17 30/3 30/3 30/9

this [59]

this relates [1] 17/20

those [23]   4/6 4/15 5/12 5/24 6/13 6/23 9/25 10/13 11/19 12/12 12/13 12/25 15/16 16/16 17/1 17/7 17/11 19/2 19/8 23/17 24/9 25/9 26/12

though [1]   29/17

thought [1]   21/5

through [2]   14/10 15/4

tie [1]   22/9

time [6]   11/4 11/23 15/2 15/4 20/24 22/9

titled [1]   32/4

today [1]   24/6

together [2]   15/3 15/4

told [1]   10/24

took [1]   15/2

topic [1]   24/18

transcript [3]   1/9 2/17 32/3

transcription [1] 2/18

translates [1]   27/11

trauma [1]   23/15

traumatic [1]   5/24

treat [1]   30/7

treating [1]   20/10

treatment [6]   4/1 5/16 5/18 5/23 11/16 28/7

trial [3]   3/13 26/17 26/18

trouble [1]   20/21

troubling [1]   10/3

TRUMP [13]   1/6 2/8 3/6 9/17 26/8 26/12 26/14 26/15 26/18 26/19 26/22 27/1 27/6

Trump's [1]   26/16

try [1]   24/22

trying [1]   27/12

turn [2]   6/22 31/1

turned [1]   14/23

tweet [2]   26/15 26/16

Twitter [1]   26/23

two [5]   5/13 6/23 18/16 19/8 19/11

types [2]   5/24 6/19

typical [2]   23/19 23/22

typically [4]   11/24 13/6 23/3 24/14

**U**

U.S. [2]   7/12 9/9

U.S. Capitol [2] 7/12 9/9

under [3]   2/3 8/15 20/13

underneath [1]   31/1

understand [11]   4/12 4/14 5/10 7/9 7/22 10/18 12/6 13/7 21/25 22/8 29/23

understanding [2] 15/21 21/2

understood [2]   14/16 14/22

UNITED [2]   1/1 1/10

universally [1]   8/13

unless [1]   3/15

unrepresented [2]

until [1]   15/18

upcoming [1]   28/23

us [9]   5/14 7/18 7/22 10/25 13/22 14/2 15/15 15/23 16/1

use [6]   8/10 8/23 18/10 18/14 23/6 24/1

uses [1]   26/25

utilize [1]   16/2

**V**

VA [1]   2/10

vacate [1]   3/13

validates [1]   17/15

value [1]   24/7

versus [2]   3/6 12/22

very [4]   5/14 17/4 18/25 21/16

VIA [1]   1/9

view [1]   19/7

voluntarily [1] 19/16

vs [1]   1/5

**W**

walk [1]   14/10

want [14]   3/19 6/14 8/11 10/1 11/25 14/9 15/21 16/4 19/14 19/17 19/18 24/11 24/17 27/19

wanted [3]   10/7 23/18 30/19

wanting [1]   22/7

wants [1]   3/15

warranted [1]   7/20

was [9]   5/22 6/11 9/4 14/19 14/20 25/24 26/15 26/22 27/2

Washington [3]   1/5 2/5 2/16

wasn't [1]   25/25

waste [1]   11/4

watch [1]   23/21

way [4]   4/16 15/22 25/11 29/16

we [65]

we believe [2]   20/18 27/7

we can [1]   22/15

we'd [2]   29/24 30/23

we'll [2]   30/13 30/14

we're [11]   5/3 5/25 10/15 11/7 15/5 16/24 17/1 23/19 24/21 27/12 29/13

we've [13]   5/1 8/9 8/12 10/13 10/14 10/23 13/22 15/13 19/1 20/24 20/25

29/3 30/9

week [1]   28/20

weigh [3]   4/20 5/4 25/6

weighed [1]   25/1

weighing [1]   25/10

well [19]   4/8 5/6 8/4 9/8 9/12 11/7 12/2 12/19 13/15 14/22 18/7 18/8 19/22 20/4 23/9 24/8 28/25 30/2 30/4

well-reported [2] 9/8 9/12

were [7]   3/12 5/22 6/6 9/13 15/2 15/4 18/2

what [40]

what's [6]   8/5 15/1 16/11 16/16 17/3 29/1

whatever [2]   8/10 24/12

when [7]   6/14 17/23 21/21 23/7 25/5 26/10 27/12

where [7]   3/17 4/19 8/24 15/7 15/11 15/19 22/14

whether [2]   5/4 5/17

which [24]   3/13 3/23 5/9 5/11 5/16 7/5 9/23 11/6 12/12 13/3 13/21 15/5 15/13 15/23 17/6 17/14 20/13 24/3 24/24 25/10 26/15 26/25 28/3 28/7

while [2]   22/17 29/10

who [9]   6/9 7/11 19/17 19/17 20/1 22/11 23/13 26/17 27/6

who's [1]   8/24

why [7]   3/13 5/2 6/24 10/15 13/7 17/23 28/25

wildly [1]   25/21

will [2]   8/22 29/1

William [3]   2/13 32/2 32/8

willing [1]   29/24

wish [2]   18/8 22/14

withheld [4]   4/25 14/1 14/2 20/13

withholding [4] 15/18 16/7 16/12 16/16

within [1]   17/5

without [7]   7/24 10/3 12/18 12/24 13/1 27/7 29/18

witness [1]   14/19

witness's [1]   14/23

**W**

**witnesses [6]**  6/3
6/9 6/16 6/24 14/13
23/13
**won't [1]**  16/8
**words [2]**  4/13 20/11
**work [2]**  10/2 11/23
**working [1]**  28/12
**works [1]**  9/7
**worse [1]**  9/4
**would [26]**  4/21 7/19
11/4 11/25 15/11
16/19 17/5 19/9
19/15 20/6 20/7
22/23 23/8 23/12
24/14 25/9 26/5 26/6
27/15 28/15 29/11
29/14 30/4 30/11
30/20 30/22
**wouldn't [1]**  20/4

**Y**

**Yeah [1]**  16/18
**yes [8]**  8/8 10/8
10/19 12/14 12/14
15/10 24/20 28/13
**you [65]**
**you could [1]**  12/25
**you don't [1]**  13/6
**you know [14]**  4/4
5/23 6/5 6/6 8/16
12/23 17/13 19/10
21/21 25/25 26/14
27/13 29/22 29/23
**you'll [2]**  17/16
18/7
**you're [3]**  4/13
19/22 30/2
**you've [1]**  10/19
**your [55]**
**Your Honor [35]**
**yourself [1]**  13/5

**Z**

**Zaremba [3]**  2/13
32/2 32/8
**ZOOM [1]**  1/9