UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONRAD SMITH et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DONALD J. TRUMP et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 21-cv-02265 (APM) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Dominic J. Pezzola and Stewart Rhodes's Motion to Set Aside Default, ECF No. 386 [hereinafter Defs.' Mot.]. For the reasons explained below, the motion is granted.

### I.

Federal Rule of Civil Procedure 55(c) allows a district court to vacate "an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether a movant has established "good cause," the court must consider three factors: "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980) (citations omitted). The court must bear in mind "the federal policy favoring trial over default judgment." *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995). Given that interest, "all doubts are resolved in favor of the party seeking relief." *Jackson v. Beech*, 636 F.2d 831, 835–36 (D.C. Cir. 1980); *accord Khochinsky v. Republic of Poland*, 1 F.4th 1, 7 (D.C. Cir. 2021).

**A.**

*Willfulness of the Default.* As to the first factor, the court finds that Defendants Pezzola and Rhodes willfully defaulted. Plaintiffs served Pezzola on September 15, 2021, *see* Aff. of Serv., ECF No. 14, and Rhodes on February 2, 2022, *see* Aff. of Serv., ECF No. 135. Neither filed a timely answer. The court entered defaults over a year later, on August 1, 2023. *See* Clerk's Entry of Default as to Stewart Rhodes, ECF No. 231; Clerk's Entry of Default as to Dominic J. Pezzola, ECF No. 234. Six days later, attorney John Pierce entered an appearance on behalf of both Defendants. *See* Notice of Appearance by John M. Pierce on behalf of Dominic J. Pezzola, ECF No. 247; Notice of Appearance by John M. Pierce on behalf of Stewart Rhodes, ECF No. 249. A second lawyer, Roger Roots, entered his appearance on January 11, 2024. *See* Notice of Appearance by Roger Roots on behalf of Dominic J. Pezzola, ECF No. 263; Notice of Appearance by Roger Roots on behalf of Stewart Rhodes, ECF No. 264. Remarkably, counsel waited more than a year to set aside the defaults, moving finally on April 16, 2025. *See* Defs.' Mot. to Set Aside Default, ECF No. 383. Two days later, this court denied without prejudice Defendants' motion for failure to comply with the meet-and-confer requirement under Local Civil Rule 7(m), and Defendants refiled their motion to set aside thereafter, *see* Defs.' Mot.

Defendants argue that "extraordinary circumstances" prevented them from seeking relief sooner. *Id.* at 5–6. Those circumstances include "[t]he unprecedented volume of January 6 criminal cases and appeals" managed by counsel, as well as "Defendants' initial lack of counsel, incarceration, counsel's overburdened schedule, and the firm's sole paralegal and Mr. Roots' medical absences in late 2024." *Id.* Yet, those same impediments did not prevent Pezzola and Rhodes from fully participating in the parallel suit *District of Columbia v. Proud Boys*, Case No. 21-cv-3267-APM (D.D.C.) [hereinafter *Proud Boys*]. In that case, Defendants' counsel

appeared in May 2023, filed answers, and actively engaged until the case's dismissal on February 28, 2025. *See* Pls.' Opp'n to Defs.' Mot., ECF No. 399 [hereinafter Pls.' Opp'n], at 3–6 (detailing Defendants' appearances and other activities in the *Proud Boys* case, including a series of status conferences held jointly with this matter); *see also* Def. Rhodes's Answer to the Am. Compl. with Affirmative Defenses, *Proud Boys* Docket, ECF No. 187; Def. Pezzola's Answer to the Am. Compl. with Affirmative Defenses, *Proud Boys* Docket, ECF No. 195. Defendants' excuses for not moving to vacate the defaults in this case sooner therefore ring hollow. Their defaults were willful. *See Whelan*, 48 F.3d at 1259 ("Absent some explanation such as monumental incompetence, the record suggests intentional delay.").

**B.**

*Prejudice to Plaintiffs from Vacating the Defaults*. Although considerable time has passed since they filed this case, Plaintiffs have shown, at most, that they would suffer "minimal prejudice from a set-aside of the default." *Id.* at 1260. Plaintiffs claim that they "have been forced to pursue a wide variety of means of obtaining simple discovery," which "may have [been] avoided" had Defendants "meaningfully engaged in this case" sooner. Pls.' Opp'n at 14. But the additional "means" that they cite—review of materials from the *Rhodes* criminal trials and seeking discovery from third parties, such as Alex Jones and Roger Stone, *see id.*—is work they likely would have undertaken anyway. The *Rhodes* and *Proud Boys* criminal trials are a ripe source of evidence to support their claims not only against Rhodes and Pezzola but other named defendants too. Additionally, discovery from Jones and Stone was inevitable given their well-known connections to the named defendants and their January 6-related activities.

Plaintiffs also contend that, if Pezzola and Rhodes were permitted to avoid default, they "would have to revisit their discovery strategy and prioritization, pursue new and additional

3

discovery with respect to Pezzola and Rhodes individually, and address an array of discovery issues that will inevitably result from Pezzola's and Rhodes's strategic delay and gamesmanship." *Id.* But Plaintiffs offer no specifics as to how Pezzola's and Rhodes's late appearances would cause them to "revisit strategy." And discovery is ongoing—written and document discovery continues among the parties and depositions have not yet commenced. So, the addition of Pezzola and Rhodes will not greatly add to Plaintiffs' burden.

Plaintiffs further express the concern that they "will be forced to conduct discovery without the benefit of fresh memories," *id.*, and that "many of the documents Plaintiffs *could have* sought from other sources had they known Pezzola and Rhodes intended to litigate this case may now be more difficult to obtain" for various reasons, *id.* at 15. But these concerns are speculative at this point. Further, to the extent Plaintiffs worry that Pezzola's and Rhodes's memories may have faded, both defendants testified during their criminal trials, so Plaintiffs have access to sworn testimony that is closer in time to the events of January 6.

Next, Plaintiffs worry that their delay has afforded Pezzola and Rhodes "the opportunity to coordinate with other Defendants to align their strategies and potentially align their stories, and other relevant discovery may have been lost or destroyed during the delay as well." *Id.* But those concerns, too, are speculative. They also are mitigated by the availability of Defendants' criminal trial testimonies, as well as the opportunity to depose them in this case. Moreover, the loss of evidence seems unlikely, given that federal investigators seized key evidence from Defendants— such as their electronic devices—to which Defendants have received some access.

Finally, Plaintiffs fear that Pezzola and Rhodes will "issue additional burdensome discovery requests of their own at the tail end of discovery." *Id.* But this case is not "at the tail end of discovery," and any added burden of answering Defendants' requests, if any, is likely to be

4

minimal, given that Plaintiffs already have provided extensive discovery to others. The marginal burden on Plaintiffs therefore is likely to be minimal. *Cf. Whelan*, 48 F.3d at 1259 (holding that vacating the default would have prejudiced the plaintiffs as to one claim but not others where the plaintiffs already had tried other defendants on that particular claim).

### C.

*Meritorious Defense.* As to the last factor, Pezzola and Rhodes have advanced meritorious defenses. They deny that they participated in the claimed conspiracy, assert that the First Amendment protects their alleged acts, and contend that other actors were the proximate cause of Plaintiffs' injuries. *See* Defs.' Mot. at 7–8. Plaintiffs respond that the defenses advanced are largely conclusory or cannot be sustained under the law. *See* Pls.' Opp'n at 17–21. But for purposes of Rule 55(c), a defense is "meritorious if [it] contain[s] even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (internal quotation marks omitted). Pezzola and Rhodes satisfy this low bar. If they can show, for example, that they did not conspire with others or that some intervening cause was the proximate cause for Plaintiffs' injuries, they will have mounted a complete defense against Plaintiffs' claims.

### II.

In summary, although the court finds that Pezzola and Rhodes willfully defaulted, the court believes that the "federal policy favoring trial over default judgment," *Whelan*, 48 F.3d at 1258, overcomes Defendants' disregard for these proceedings and weighs in favor of vacating the defaults. Further, "[e]ven when a default is willful, a district court does not necessarily abuse its discretion by vacating a default when the asserted defense is meritorious and the district court took steps to mitigate any prejudice to the non-defaulting party." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016). The court is prepared to take such steps. Plaintiffs

may seek an award of fees and costs incurred because of the default. *See id.* at 963. The court also will consider other appropriate measures, such as protective orders or adverse inference instructions, if Plaintiffs can show prejudice arising from Defendants' late arrival to these proceedings.

    For the foregoing reasons, Defendants Pezzola and Rhodes's Motion to Set Aside Default, ECF No. 386, is granted. The court accepts Defendants' Answers for filing, ECF Nos. 386-1 & 386-2.

Dated: October 17, 2025

                                           Amit P. Mehta
                                          United States District Judge