**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONRAD SMITH, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:21-CV-02265-APM |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO THE MOTION TO SET ASIDE (OR, ALTERNATIVELY, ALTER OR AMEND) DEFAULT JUDGMENT AGAINST DEFENDANTS NORDEAN AND BIGGS**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................2

    I.    Defendant Ethan Nordean..................................................................................4

    II.    Defendant Joseph R. Biggs ...............................................................................5

LEGAL STANDARD..........................................................................................................7

ARGUMENT.....................................................................................................................8

    I.    Defendants Have Not Met the Standard for Relief from Default Judgment............8

        A.    Defendants' Default Was Willful. ...............................................................8

            1.    Defendants Knew the Litigation Was Ongoing, Abandoned It Anyway, and Failed to Monitor It....................................................10

            2.    Defendants' Pro Se Status Is No Excuse For Their Willful Default. ......................................................................................14

        B.    Setting Aside the Judgment Would Further Increase the Significant Prejudice Already Caused by Defendants' Default. ..................................15

        C.    Defendants Nordean and Biggs Have Failed to Allege Meritorious Defenses..................................................................................................19

    II.    Defendants Forfeited Their Alternative Request to Alter or Amend the Judgment by Offering a Skeletal Argument. ........................................................................20

CONCLUSION...............................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ackra Direct Mktg. Corp. v. Fingerhut Corp.*,
  86 F.3d 852 (8th Cir. 1996) ...................................................................................7, 14, 15

*Canales v. A.H.R.., Inc.*
  254 F.R.D. 1 (D.D.C. 2008)...........................................................................7, 10, 11, 12, 14

*Capital Yacht Club*, 228 F.R.D. 389, 395 (D.D.C. 2005)..........................................................16

*Flanagan v. Islamic Republic of Iran*,
  190 F. Supp. 3d 138 (D.D.C. 2016) .......................................................................9, 16, 17, 18

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
  675 F. Supp. 2d 104 (D.D.C. 2009) ....................................................................................16

*Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis
  Painting Co.*,
  288 F. Supp. 2d 22 (D.D.C. 2003) .................................................................................9, 10, 14

*Mazengo v. Mzengi*,
  542 F. Supp. 2d 96 (D.D.C. 2008) .......................................................................................7, 9, 13

*McNeil v. United States*,
  508 U.S. 106 (1993).............................................................................................................12

*National Restaurant Association Educational Foundation v. Shain*,
  287 F.R.D. 83 (D.D.C. 2012)..............................................................................................19

*Powerserve Int'l, Inc. v. Lavi*,
  239 F.3d 508 (2d Cir. 2001)................................................................................................16

*Pretzel & Stouffer, Chartered v. Imperial Adjusters Inc.*,
  28 F.3d 42 (7th Cir. 1994) ....................................................................................................8

*Robinson v. Ergo Sols. LLC*,
  4 F. Supp. 3d 181 (D.D.C. 2014) ......................................................................................9, 14

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005).............................................................................................20

*Serv. Emps. Int'l Union Nat'l Industry Pension Fund v. Hamilton Park Health
  Care Ctr., Ltd*,
  304 F.R.D. 65 (D.D.C. 2014)...............................................................................................16

*Toomer* v. *Esper*,
  464 F. Supp. 3d 157 (D.D.C. 2020), *aff'd sub nom. Toomer v. Austin*, No. 20-
  5184, 2022 WL 301561 (D.C. Cir. Jan. 21, 2022).............................................................7, 13

*United States v. Oil Tanker Bearing Int'l Maritime Org. No. 9116512*,
  480 F. Supp. 3d 39, 43 (D.D.C. 2020)...................................................................................2

*United States v. Theodorovich*,
    102 F.R.D. 587 (D.D.C. 1984)..................................................................7, 9, 10, 12, 14

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990)...........................................................................................20

*Whittaker v. District of Columbia*,
    228 F.R.D. 378 (D.D.C. 2005)..............................................................................19, 20

### Other Authorities

Complaint, *District of Columbia v. Proud Boys Int'l LLC et al.*,
    No. 1:21-cv-3267 (D.D.C. Dec. 14, 2021)...................................................................2

Complaint as to Biggs, *United States v. Nordean*,
    No. 1:21-cr-175-TJK (D.D.C. Jan. 19, 2021) ...........................................................2

Complaint as to Nordean, *United States v. Nordean*,
    No. 1:21-cr-175-TJK (D.D.C. Feb. 2, 2021) .............................................................2

Handbook for Self-Represented (Pro Se) Litigants in Civil Cases (Mar. 23, 2022),
    https://www.dcd.uscourts.gov/sites/dcd/files/ProSeHandbookDDC-March-23-
    2022.pdf ....................................................................................................................11

Judgment as to Derek Kinnison, *United States v. Hostetter*,
    No. 1:21-cr-00392-RCL (D.D.C. Apr. 23, 2024), Dkt. 472 .....................................17

Judgment as to Erik Scott Warner, *United States v. Hostetter*,
    No. 1:21-cr-00392-RCL (D.D.C. Apr. 23, 2024), Dkt. 468 .....................................17

Retyped Second Superseding Indictment, *United States v. Hostetter*,
    No. 1:21-cr-00392-RCL (D.D.C. Nov. 8, 2023), Dkt. 378........................................17

Superseding Indictment, *United States v. Rhodes*,
    No. 1:21-cr-00015-APM (D.D.C. June 22, 2022), Dkt. 167 ....................................17

Verdict Form, *United States v. Rhodes*,
    No. 1:21-cr-00015-APM (D.D.C. Nov. 29, 2022), Dkt. 410......................................17

### Rules

D.D.C. Local Civil Rule 5.1(c)(1) .......................................................................12, 14

D.D.C. Local Civil Rule 7(k)...........................................................................3, 5, 6, 7

Fed. R. Civ. P. 59(e) ..............................................................................................8, 20, 21

Fed. R. Civ. P. 60(b)(1)................................................................................... *passim*

**INTRODUCTION**

Defendants Joseph Biggs and Ethan Nordean ("Defendants") have been litigants of convenience, choosing to participate in these proceedings when it suits them and ignoring the case when it does not. Defendants' latest motion is the next entry in that practice. Defendants ask that the Court lift default judgment against them after they ignored the Court's Orders, Plaintiffs' communications, and their obligations as litigants for months (Defendant Biggs) or years (Defendant Nordean) because they finally face consequences for their inaction. In doing so, they falsely equate their position to that of two other defendants, Dominic Pezzola and Stewart Rhodes, for whom the Court set aside the clerk's automatic entry of default. The standards by which the Court may vacate an entry of default versus a default judgment differ, and so do the instant facts. Nothing about the routine process by which the clerk entered default against Defendants Pezzola and Rhodes for failing to timely file an answer bears on the Court's decision to order a final judgment against Defendants Nordean and Biggs for willfully disappearing in the middle of this litigation. The Court should reject Defendants Nordean and Biggs's belated attempt at gamesmanship and deny their Motion.

In their six-page Motion, Defendants fail to meet their burden to show that relief is warranted under Fed. R. Civ. P. 60(b)(1). First, their default was willful. It is undisputed that Defendants were aware of this lawsuit. They concede that they retained counsel, entered appearances, and at times participated in this litigation. The termination of their former counsel's representation is no excuse. Defendants were aware of this litigation, knew their counsel would no longer represent them, and had no reason to believe that this change in circumstance would absolve them from their obligations. They chose to avoid this litigation.

Next, vacating judgment would compound prejudice against Plaintiffs. Five years have elapsed since the events giving rise to this action, and Plaintiffs' ability to collect evidence has been irreparably compromised by years of delay. Defendants provide no basis for the Court to conclude that they will meaningfully participate moving forward—especially since they largely

1

blame their failures on their pro se status, and their current counsel has only entered a limited appearance for the purpose of this motion.

Last, Defendants have failed to assert meritorious defenses. Their Motion is not supported by competent evidence. They offer nothing more than conclusory assertions devoid of any evidentiary foundation. The Court should not accept their self-serving, unsworn claims at face value.

After years of non-compliance, conscious withdrawal, and dilatory behavior, Defendants have given this Court every reason to doubt their intention to meaningfully participate in this litigation. The Court should deny their Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants are leaders of the Proud Boys. *See* Dkt. 89 (Amended Complaint) ¶¶ 26, 28, 30–31, 50–51.[1] In the days leading up to January 6, 2021, Defendants called for the use of force and violence in response to Defendant Donald Trump's claims of voter fraud and a stolen election in the 2020 Presidential election. *See, e.g.*, *id.* ¶¶ 59 (Defendant Biggs posting, "Trump basically said to go f\*\*k them up! this makes me so happy"), 93 (Defendant Nordean posting, "Fight now, or lose everything"), 92–93 (Defendant Biggs calling for lawmakers who "break[] their own stupid F\*\*king laws [to] be dragged out of office and hung"). On January 6, 2021, Defendants led a group of Proud Boys to overwhelm a metal barricade and overrun Capitol Police officers. *Id.* ¶¶ 125–126.

Following the events of January 6, Defendants were named in a federal criminal case and several civil lawsuits, including this matter.[2] Here, Plaintiffs filed a complaint on August 26, 2021, Dkt. 1, and an amended complaint on December 3, 2021, Dkt. 89. Defendants were both properly

---

[1] "Once default is entered, the defendant[s] [are] deemed to admit every well-pleaded allegation in the complaint." *United States v. Oil Tanker Bearing Int'l Maritime Org. No. 9116512*, 480 F. Supp. 3d 39, 43 (D.D.C. 2020) (quotation marks omitted).

[2] *See, e.g.*, Complaint as to Biggs, *United States v. Nordean*, No. 21-cr-175-TJK (D.D.C. Jan. 19, 2021); Complaint as to Nordean, *United States v. Nordean*, No. 21-cr-175-TJK (D.D.C. Feb. 2, 2021); Complaint, *District of Columbia v. Proud Boys Int'l LLC*, No. 1:21-cv-3267 (D.D.C. Dec. 14, 2021).

served.  Dkts. 10, 38.  Defendant Biggs filed an answer to Plaintiffs' amended complaint on December 23, 2021.  Dkt. 99.  Defendant Nordean moved to dismiss the amended complaint on December 23, 2021, Dkt. 95, and the Court denied his motion on January 26, 2023, except with respect to three of Plaintiffs' claims, Dkt. 179.

Plaintiffs served discovery requests on Defendants and then made several attempts to communicate with them, including through their former counsel, as described in detail below.  Dkt. 409-2 (Declaration of Marc P. Epstein in Support of Plaintiffs' Motion to Compel Defendants Martinez, Warner, Kinnison, Nordean, Biggs, and Meggs to Discovery Requests and Provide Initial Disclosures ("MTC Epstein Decl.")) ¶¶ 17–21, 23, 25, 28, 29.  Defendants failed to respond to Plaintiffs' discovery requests, despite a September 20, 2024, order from the Court warning them that failing to confer with Plaintiffs regarding these requests could result in sanctions.  *Id.*; Dkt. 329 at 1.  After multiple attempts at communication, and with the Court's permission, on July 11, 2025, Plaintiffs moved to compel initial disclosures from Defendant Nordean and discovery responses from both Defendants Nordean and Biggs.  Dkt. 409 ("MTC").  Defendants failed to oppose or otherwise acknowledge Plaintiffs' motion.  On October 16, 2025, the Court granted Plaintiffs' motion and compelled Defendants to respond to their outstanding discovery obligations.  Dkt. 443 ("MTC Order").  Defendants failed to abide by or otherwise acknowledge the Court's order.

On January 26, 2026, Plaintiffs moved for sanctions of default judgment against several defendants, including Defendants Biggs and Nordean.  Dkt. 471.  Although Plaintiffs served the motion on Defendants via U.S. Mail and included Defendants' addresses in the Local Civil Rule 7(k) appendix, Defendants never responded or otherwise acknowledged Plaintiffs' motions.  Dkt. 471-3 at 2; Declaration of Jeffrey Blumberg in Support of Plaintiffs' Opposition to the Motion to Set Aside (or, Alternatively, Alter or Amend) Default Judgment Against Defendants Nordean and Biggs ("Blumberg Opp. Decl.") ¶¶ 4−6.  Finding Defendants' prolonged course of conduct warranted the severe sanction of default judgment, the Court granted Plaintiffs' motion and entered default judgment against Defendants on February 14, 2026.  Dkt. 474.

On March 16, 2026, Defendants filed a six-page motion ("Motion") to set aside default judgment. Dkt. 479. This filing included a proposed order and Defendant Nordean's answer to the amended complaint, but it did not include any accompanying declaration or sworn affidavit adding new facts or evidence to the record. *See* Dkts. 479-1, 479-2. Defendants filed the Motion through counsel, who appeared for the limited purpose of moving to set aside the default judgment. *See* Dkts. 477, 479.

## I.      Defendant Ethan Nordean

Defendant Nordean appeared in this action on October 6, 2021, through his then-counsel, Nicholas D. Smith ("Nordean's counsel"). Dkt. 33. In his appearance, Nordean's counsel expressly stated that his appearance was "limited" to the "motion to stay pending related criminal case." *Id.* On February 26, 2023, Defendant Nordean filed an unopposed motion to stay the case until the conclusion of Defendant Nordean's criminal trial. Dkt. 195. On February 28, 2023, the Court granted that motion to stay. Feb. 28, 2023, Minute Order. On May 4, 2023, following the partial jury verdict in Defendant Nordean's criminal trial, the Court lifted the discovery stay with respect to Defendant Nordean. May 4, 2023, Minute Order. At that point, proceedings in this action against him recommenced. After the stay was lifted, Plaintiffs made numerous attempts to re-engage with Defendant Nordean about this proceeding over the course of three years:

- On May 9, 2023, Plaintiffs sent Defendant Nordean a draft case status report. Dkt. 219 at 1, n.1. Plaintiffs followed up on May 11, 2023, and May 12, 2023, but did not receive a written response. *Id.* On May 15, 2023, Plaintiffs spoke by telephone with Nordean's counsel, who stated that he would provide the court with Defendant Nordean's positions as soon as he could. *Id.*

- On July 10, 2023, Plaintiffs emailed Nordean's counsel, who wrote back on July 12, 2023, that he no longer represented Defendant Nordean but that he would "pass along to . . . Nordean and his family" Plaintiffs' requests for initial disclosures and Plaintiffs' May 11, 2023, requests for production "and urge [Defendant Nordean and his family] to file an answer as soon as he is able." MTC Epstein Decl. Ex. 2 at 4–5.

4

- On August 2, 2023, Plaintiffs mailed a letter regarding Defendant Nordean's discovery deficiencies to the detention facility in which Nordean's counsel said he was incarcerated. MTC Epstein Decl. ¶ 18, Ex. 17.  On December 19, 2024, Plaintiffs mailed another letter regarding the status of the case and Defendant Nordean's discovery deficiencies to the federal prison where Defendant Nordean was then located, according to the Bureau of Prisons website.  MTC Epstein Decl. ¶ 19, Ex. 18.  On June 24, 2025, Plaintiffs mailed an interrogatory to Defendant Nordean's home address as listed in the amended complaint after his release from prison.  MTC Epstein Decl. ¶ 20, Ex. 19.

- On July 11, 2025, Plaintiffs included Defendant Nordean's address in the Local Civil Rule 7(k) appendix of their motion to compel.  Dkt. 409-1 at 3. The same day, Plaintiffs mailed a copy of the motion to compel, Dkt. 409, and its attachments to Defendant Nordean. Blumberg Opp. Decl. ¶ 2, Ex. 1.

- On November 4, 2025, Plaintiffs sent Defendant Nordean, via FedEx, a copy of the Court's order granting the motion to compel against him, and a letter informing him that Plaintiffs would seek sanctions and default judgment if he continued his non-compliance.  Dkt. 471-2 (Declaration of Jeffrey Blumberg in Support of Plaintiffs' Motion for Sanctions (Default Judgment) Against Defendants Martinez, Kinnison, Nordean, and Biggs ("MFS Blumberg Decl.")) ¶¶ 4, 8, Exs. 3, 7.

- On January 26, 2026, Plaintiffs included Defendant Nordean's address in the Local Civil Rule 7(k) appendix of their motion for sanctions of default judgment.  Dkt. 471-3 at 2.  The following day, January 27, 2026, Plaintiffs served a copy of the motion for sanctions, Dkt. 471, and its attachments on Defendant Nordean by U.S. Mail. Blumberg Opp. Decl. ¶ 4, Ex. 4.

## II.    <u>Defendant Joseph R. Biggs</u>

Defendant Biggs appeared in this action on October 18, 2021, through his then-counsel, John Daniel Hull ("Mr. Hull").  Dkt. 55.  While represented by counsel, Defendant Biggs failed to serve adequate initial disclosures or responses to Plaintiffs' requests for production served on April

5

4, 2023, March 28, 2024, and April 1, 2025, and interrogatories served on March 28, 2024. MTC at 7–8; MTC Epstein Decl. ¶ 28. Defendant Biggs continued to disregard his discovery obligations for approximately another two months. Then, on June 11, 2025, Mr. Hull moved to withdraw, which the Court subsequently granted. Dkt. 403; June 24, 2025, Minute Order. In his motion to withdraw, Mr. Hull stated that he served notice on Defendant Biggs by mailing the motion to each of Defendant Biggs's two known addresses:  his Camino address[3] and Fairway address. Dkt. 403 at 3. In the written notice to Defendant Biggs, Mr. Hull informed Defendant Biggs that he was no longer represented by counsel and that he must "notify the Clerk in writing within seven days of service of [the] [m]otion" if he intended to proceed on his own or object to Mr. Hull's withdrawal. *Id.* at 2. Defendant Biggs failed to file anything in response. Accordingly, Defendant Biggs received ample notice from his former counsel of the ongoing nature of this litigation and his obligation to continue litigating this matter.

After Defendant Biggs began proceeding pro se, Plaintiffs made numerous attempts to engage with him:

- On July 11, 2025, Plaintiffs included both Defendant Biggs's Camino and Fairway addresses in the Local Civil Rule 7(k) appendix of their motion to compel. Dkt. 409-1 at 3. The same day, Plaintiffs mailed copies of the motion to compel, Dkt. 409, and its attachments to Defendant Biggs at both his Camino and Fairway addresses. Blumberg Opp. Decl. ¶ 3, Exs. 2–3.

- On November 4, 2025, Plaintiffs mailed Defendant Biggs a copy of the Court's order granting the motion to compel Defendant Biggs, and a letter informing him that Plaintiffs would seek sanctions and default judgment if he continued his non-compliance. MFS Blumberg Decl. ¶ 5, Ex. 4. It was marked delivered to Defendant Biggs's Fairway address. *Id.* ¶ 9, Ex. 8.

---

[3] The Camino address was the address listed on both complaints. Dkts. 1, 89.

- On January 26, 2026, Plaintiffs included Defendant Biggs's Fairway address in the Local Civil Rule 7(k) appendix of their motion for sanctions of default judgment.[4]  Dkt. 471-3 at 2.  The following day, January 27, 2026, Plaintiffs mailed a copy of the motion for sanctions, Dkt. 471, and its attachments to Defendant Biggs at his Fairway address.  Blumberg Opp. Decl. ¶ 5, Ex. 5.

### LEGAL STANDARD

A defendant seeking to set aside a default judgment under Fed. R. Civ. P. 60(b)(1) must demonstrate "mistake, inadvertence, surprise, or excusable neglect."  Relief pursuant to this rule is only granted in "extraordinary circumstances," *Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 99 (D.D.C. 2008), and it is the movant who bears the burden of showing that Rule 60's requirements are satisfied.  *Toomer v. Esper*, 464 F. Supp. 3d 157, 165 (D.D.C. 2020), *aff'd sub nom. Toomer v. Austin*, No. 20-5184, 2022 WL 301561 (D.C. Cir. Jan. 21, 2022).  The Court must consider whether:  (1) the default was willful, (2) setting aside the judgment would prejudice the plaintiff, and (3) the defendant has alleged a meritorious defense.  *Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1, 7–8 (D.D.C. 2008).  These factors are disjunctive, meaning that an adverse finding as to any one of them may be sufficient for the Court to uphold default judgment.  *See, e.g.*, *United States v. Theodorovich*, 102 F.R.D. 587, 590 (D.D.C. 1984) (denying a Rule 60(b)(1) motion even though there was "no prejudice to the plaintiff" because prejudice is "but one factor to be considered in light of all others and is not itself dispositive"); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (affirming default judgment and holding that "where the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not prohibit

---

[4] After Mr. Hull withdrew from the litigation, Plaintiffs initially sent routine service to both the Camino and Fairway addresses for Defendant Biggs. *See, e.g.*, Dkt. 409-1 at 3. Plaintiffs excluded the Camino address from the Local Civil Rule 7(k) appendix to their motion for sanctions of default judgment because previous service to that address had been routinely returned. *See, e.g.*, Dkt. 459 (image of envelope addressed to Defendant Biggs at his Camino address and containing the Court's October 16, 2025, MTC Order marked as returned to sender). By contrast, service sent simultaneously to the Fairway address was generally not returned. *See, e.g.*, MFS Blumberg Decl. ¶ 9, Ex. 8.

default judgment"); *Pretzel & Stouffer, Chartered v. Imperial Adjusters Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) (same).

**ARGUMENT**

Defendants' six-page Motion relies entirely on conclusory assertions, is unsupported by any affidavit or other evidence, and lacks supporting case law.  Rather than carry their burden to justify relief from default judgment, Defendants' Motion confirms their willful default, that vacating default judgment would further prejudice Plaintiffs, and that they have no meritorious defenses.

Defendants' default was willful because they knew the litigation was ongoing when they abandoned it.  Plaintiffs would suffer continued prejudice if Defendants re-enter the litigation because their lengthy delays have prevented Plaintiffs from collecting evidence that likely has been corrupted, lost, or destroyed.  Defendants' willful withdrawal from the litigation while pro se, which will be their status once more if the Court grants their Motion, contradicts their assertion that they are now ready and willing to participate in good faith.  And failing to cite any specific facts by which the Court could assess the merits of their defenses, the Motion offers nothing more than general denials and unsupported affirmative defenses.  Finally, Defendants have forfeited any alternative request for the Court to amend or alter the judgments against them under Fed. R. Civ. P. 59(e) because they have failed to offer any arguments or case law to support it.

I.      **Defendants Have Not Met the Standard for Relief from Default Judgment.**

Defendants have failed to show that the Court should set aside default judgment against them under Fed. R. Civ. P. 60(b)(1).  Their defaults were willful; vacating the judgments against them would further prejudice Plaintiffs; and they have provided no facts for the Court to weigh the merit of their defenses.

A.      **Defendants' Default Was Willful.**

The Court granted default judgment against Defendants as a sanction for their willful behavior in refusing to participate in this litigation.  Dkt. 474.  To prevail on their Motion,

8

Defendants now must show that their refusal to participate was not willful. They fail to carry that burden.

In this Circuit, "the boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 156 (D.D.C. 2016); *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003). "Ignorance of one's legal obligations," for instance, is not "the type of 'mistake' or 'neglect' that Rule 60(b)(1) excuses." *Mazengo*, 542 F. Supp. 2d at 99. When a defendant's own conduct significantly contributes to his own ignorance of the proceeding and, as a consequence, his default, courts have denied relief from default judgment. *See Theodorovich*, 102 F.R.D. at 588–89 (denying relief from default judgment where defendant failed to provide written notice of his change of address to his former attorney or the U.S. Post Office and deliberately failed to pick up mail related to the lawsuit). And when a defendant "has failed to present any convincing evidence" tending to rebut his willful default, the court must "presume[] that he intended the result of his actions" that "thwart[ed] the efficient resolution of [the] case." *Id.* at 590. In denying vacatur, one court noted that it found "no case where a court set aside a default judgment in the face of a willful default, and several cases suggest that a finding of willfulness is virtually dispositive." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 181, 186 (D.D.C. 2014). Plaintiffs know of no contrary authority, and Defendants have not cited any.

The record and Defendants' own Motion show that their respective defaults were willful because (1) they had actual knowledge that the litigation was ongoing yet abandoned it and failed to monitor the case or maintain valid contact information with the Court, and (2) their pro se status was not a valid excuse.

9

### 1.     Defendants Knew the Litigation Was Ongoing, Abandoned It Anyway, and Failed to Monitor It.

First, Defendants had actual knowledge that this litigation was ongoing yet abandoned it anyway—a "deliberate decision to default." *Int'l Painters*, 288 F. Supp. 2d at 26. They also failed to monitor the case and maintain valid contact information with the Court as required. In *Theodorovich*, the court found willfulness and denied relief from default judgment where the defendant failed to provide written notice of his change of address to his former attorney or the U.S. Post Office, failed to retrieve mail related to the lawsuit, and consistently "made himself unavailable for important discovery proceedings." 102 F.R.D. at 589–90. And in *Canales*, the court similarly found willfulness and denied relief when the defendant "offer[ed] no reason why it failed to check the public court docket to confirm the status of the case against it." 254 F.R.D. at 10.

**Defendant Nordean:** Defendant Nordean *knew* the case was ongoing because, as his Motion admits, the Court granted his unopposed motion to stay the matter only "until the end of [his] criminal trial." Mot. ¶ 2. Defendant Nordean knew the litigation would recommence once his criminal trial concluded, which is exactly what happened. *See* May 4, 2023, Minute Order. Yet despite knowing that the Court would lift the stay after his trial, Defendant Nordean ignored this case from May 4, 2023, onward and failed to re-engage in discovery, as he was obligated to do.

Defendant Nordean's argument rests on his claim that his counsel's obligations terminated when the Court entered a temporary stay. *See* Mot. ¶ 10 ("Nordean's counsel honestly believed that his obligations ended, in line with the limited appearance, once the motion to stay was granted, and *nothing in the record indicates that Nordean himself had reason to know otherwise*." (emphasis added)). This purported fact about Defendant Nordean's counsel's "belief" is not supported by any competent evidence and should not be considered. *See Theodorovich*, 102 F.R.D. at 590. Regardless, it has no bearing on Defendant Nordean's participation in the suit and knowledge of his obligations to it. Defendant Nordean makes no attempt to explain how his

10

*counsel*'s honest belief about *counsel*'s limited purpose would alter *Defendant Nordean*'s knowledge that the litigation was ongoing and set to resume against him after the stay was lifted. *See id*. To the contrary, the Court's order granting the motion to stay clearly stated that it was *temporary* and would lift when Defendant Nordean's criminal trial concluded. *See* Feb. 28, 2023, Minute Order ("This matter shall be stayed with respect to Defendant Nordean only until the conclusion of his criminal case."). Defendant Nordean's apparent belief that his obligations ceased with the temporary stay belies reality, the established record, and the ample case law that such erroneous beliefs do not excuse default. *See Canales*, 254 F.R.D. at 9–10 (denying motion to set aside default judgment where defendant argued that it believed its discussions and communications with plaintiffs' counsel had resolved its liability and that it never received notice of the motion for default judgment).

Moreover, the Court should not credit Defendant Nordean's assertion that this matter proceeded without his knowledge. Mot. ¶ 2. The record shows that he received actual notice that the litigation had recommenced following the stay. When Defendant Nordean failed to respond to Plaintiffs' May 11, 2023, requests for production and to provide initial disclosures, Plaintiffs contacted Nordean's counsel, who stated that he would "pass along to . . . Nordean and his family" Plaintiffs' requests for responses to their requests for production and for initial disclosures. MTC Epstein Decl. Ex. 2 at 4–5. Defendant Nordean did not respond to the requests. *Id*. And he has not denied receiving this message or any of Plaintiffs' numerous follow-ups. *See supra* at 4–5.

Pointing to no properly supported evidence or authority, the Motion makes the conclusory assertion that Defendant Nordean "did not know about (and denies having received service of)" the motion to compel, the order granting it, or the motion for sanctions of default judgment. Mot. ¶ 2. Plaintiffs sent a copy of the motion to compel to Defendant Nordean. Blumberg Opp. Decl. ¶ 2, Ex. 1. Moreover, the successful delivery of Plaintiffs' courtesy package regarding the MTC Order—and including a copy of it—demonstrates his awareness of the motion to compel. *See* MFS Blumberg Decl. Exs. 3, 7. And Plaintiffs served a copy of the motion for sanctions on Defendant Nordean by mailing it to his address. Blumberg Opp. Decl. ¶ 4, Ex. 4.

11

Even taking Defendant Nordean's unsupported assertions at face value, Defendant Nordean effectively admits that he failed to: (a) adequately monitor his case by checking the court docket or his mail at the address he provided to the Court or (b) maintain up-to-date contact information with the Court so that he could stay abreast of proceedings. *See, e.g.*, D.D.C. LCvR 5.1(c)(1) (requiring that a "[n]otice of a change in address or telephone number . . . must be filed within 14 days of the change" and unless such notice is filed with the Clerk, "the address and telephone number of a party or an attorney noted on the first filing shall be conclusively taken as the last known address and telephone number of the party or attorney."); D.D.C., Representing Yourself in Federal Court: A Handbook for Pro Se Litigants in Civil Litigation 1 (2022), https://www.dcd.uscourts.gov/sites/dcd/files/ProSeHandbookDDC-March-23-2022.pdf ("Be sure the Court always has your correct address and telephone number. If your contact information changes, notify the Clerks' Office in writing immediately."). Monitoring the docket and providing up-to-date contact information are minimal requirements that any litigant must adhere to. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "procedural rules in ordinary civil litigation" should not be "interpreted so as to excuse mistakes by those," including prisoners, "who proceed without counsel"). Defendant Nordean's dereliction as to both requirements makes his default willful. *See Theodorovich*, 102 F.R.D. at 589–90; *Canales*, 254 F.R.D. at 10.

In the face of demonstrable evidence that Defendant Nordean willfully abandoned this lawsuit, he offers up only an unsworn, unsupported line in the Motion that he was not aware of outstanding discovery obligations. *See* Mot. ¶ 2. And he provides no explanation or case law for the conclusory assertion that he has somehow demonstrated "good faith" by retaining counsel for this Motion—only *after* default judgment was entered because he willfully ignored the demands of this litigation for years—and claiming, with no accompanying sworn declaration, that he is suddenly willing to "participate in the discovery." Mot. ¶ 13. These conclusory assertions are insufficient to carry his burden. *Theodorovich*, 102 F.R.D. at 590 (noting that when a defendant "fail[s] to present any convincing evidence" tending to rebut his willful default, his willfulness must be presumed).

12

***Defendant Biggs:*** Defendant Biggs likewise knew the case was ongoing against him and willfully failed to participate in it. The Motion concedes as much by admitting that Defendant Biggs stopped responding to his own lawyer *after his release from prison* in January 2025. *See* Mot. ¶ 3; Dkt. 403 at 1–2 ("Since January 20, 2025, the two [Defendant Biggs and his former counsel] have had no discourse whatsoever despite [former counsel's] efforts to make contact and converse."). Defendant Biggs's choice to ignore his lawyer—which was entirely within his own control—occurred in the middle of discovery for litigation that he knew was ongoing, given that his latest filings before being released from prison, he now claims, evince a desire to "compl[y] with Plaintiffs' discovery requests." Mot. ¶ 3 (citing Dkts. 307, Dkt. 315). In other words, Defendant Biggs does not claim ignorance of his ongoing legal obligations when he stopped responding to the Court, Plaintiffs, and his own counsel in January 2025. *See Mazengo*, 542 F. Supp. 2d at 99 (holding that Rule 60(b)(1) does not excuse a defendant's "ignorance" of his legal obligations). He admits that he abandoned the case knowing that he had outstanding obligations.

Moreover, other than noting that the October 16, 2025, MTC Order was returned to the Court from his Camino address as undeliverable,[5] the Motion cites no facts supporting the conclusory assertion that "[s]ubsequent to the withdrawal of Mr. Hull, Biggs has not been served with anything regarding this matter." Mot. ¶ 3. It is Defendant Biggs's burden to establish that he did not act willfully. *Toomer*, 464 F. Supp. 3d at 165. Yet neither Defendant Biggs nor his counsel attached any sworn declaration from which this Court could conclude that he was unaware of the MTC Order or any other filings. *See supra* at 4. The Motion's statement that "there is no indication that Biggs actually was served" notice of Plaintiffs' motion to compel or subsequent status reports is not an actual denial that he received or was otherwise aware of these filings. Mot. ¶ 3. Indeed, Plaintiffs' evidence shows that he was served notice of these materials at the Fairway address, which Plaintiffs used to serve both the motion to compel and the motion for sanctions of default judgment via U.S. Mail. *See supra* at 6–7. Nor does Defendant Biggs deny that FedEx

---

[5] The MTC Order was returned to the Court as undeliverable from the Camino address because Defendant Biggs either failed to monitor the case (i.e., by checking and signing for his mail) or keep his address current with the Court, as he was required to do. *See infra* at 13–14.

13

delivered Plaintiffs' courtesy package regarding and including the MTC Order on November 5, 2025. MFS Blumberg Decl. Ex. 8. Furthermore, to the extent he "has not been served with anything regarding this matter" since his counsel withdrew in June 2025, Mot. ¶ 3, this results from Defendant Biggs's own choices. Defendant Biggs's former counsel explicitly instructed Defendant Biggs to "notify the Clerk in writing [of his decision to proceed pro se or object to counsel's withdrawal] within seven days of service" of the withdrawal motion. Dkt. 403 at 2. Defendant Biggs nonetheless failed to do so. He then disappeared from this case and failed to confirm or update his valid contact information with the Court. *See Theodorovich*, 102 F.R.D. at 589–90; D.D.C. LCvR 5.1(c)(1). Accordingly, Defendant Biggs's default was willful, and his conclusory claim of "good faith," Mot. ¶ 13, like Defendant Nordean's, finds no support in the record. *See Theodorovich*, 102 F.R.D. at 589–90; *Canales*, 254 F.R.D. at 10.

Finally, insofar as the Motion claims that Defendants only learned of the default judgment on February 26, 2026, when their counsel "happened" upon it, Mot. ¶¶ 2, 3, (1) they have not provided any sworn statements to this effect, and (2) this merely confirms that they abandoned the case despite knowing that it was ongoing. *See supra* at 4, 10–14. Defendants' Motion, along with the established record, demonstrates that they made the "deliberate decision to default." *Int'l Painters*, 288 F. Supp. 2d at 26. Accordingly, their default was willful. *See Robinson*, 4 F. Supp. 3d at 185.

### 2.    Defendants' Pro Se Status Is No Excuse For Their Willful Default.

Second, Defendants' chief argument against willfulness appears to be that because they "participated actively in the litigation" while represented by counsel until February 28, 2023 (Defendant Nordean) and June 24, 2025 (Defendant Biggs), their pro se status provides an excuse for their default as "[t]he events that precipitated default judgment all occurred *after* Nordean and Biggs were no longer represented by counsel." Mot. ¶ 6. But "pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure." *Ackra*, 86 F.3d at 856–57. Defendants' pro se status simply does not excuse their

14

choice to ignore their obligations as litigants for two and a half years (Nordean) and nine months (Biggs).  Mot. ¶¶ 3, 10.

And in any event,  Defendants did not meet their obligations while represented by counsel. Defendant Biggs failed to produce any documents or amend or supplement his responses to Plaintiffs' first two sets of requests for production, and he did not respond at all to Plaintiffs' third set of requests for production all while represented by counsel.  *See* Dkt. 392 (May 12, 2023, Joint Status Report on Defendant Biggs's discovery deficiencies); May 13, 2025, Minute Order (ordering Defendant Biggs to produce records or respond to outstanding discovery requests); MTC Epstein Decl. ¶ 28 (outlining Defendant Biggs's discovery failures before his counsel's representation termination on June 24, 2025).  And Defendant Nordean failed to answer Plaintiffs' amended complaint.  *See* January 26, 2023, Minute Order (ordering answers to be filed by February 9, 2023, which was before his counsel's withdrawal); MTC Epstein Decl. Ex. 16 (describing Defendant Nordean's failure to provide an answer by that deadline).  And these and other repeated discovery failures—many of which predated the withdrawal of Defendants' former counsel— ultimately contributed to the Court's decision to issue default judgment against Defendants.  Dkt. 474; *see also Ackra*, 86 F.3d at 856 ("Appellants' pro se status certainly does not forgive their dilatory tactics before their counsel withdrew.").

**B.      Setting Aside the Judgment Would Further Increase the Significant Prejudice Already Caused by Defendants' Default.**

Setting aside the judgments against Defendants would significantly prejudice Plaintiffs by forcing them to attempt to obtain discovery from two recalcitrant pro se defendants with an admitted track record of avoiding participation in this litigation.  Defendants' defaults have already frustrated Plaintiffs' efforts to collect relevant evidence such as digital documents, prejudice that cannot be redressed in instances where this digital evidence has been destroyed or lost during their delays in production.  And if they continue their lack of participation while pro se after resolution of this Motion, this would continue to frustrate the discovery process, prejudice Plaintiffs, and delay resolution of this case.

15

When assessing prejudice, courts consider "the possible, tangible harms that may flow from a party's delayed appearance" or meaningful engagement "in the case, including the 'loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.'" *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 159 (D.D.C. 2016) (citing *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 110 (D.D.C. 2009)).   When a defendant's default has deprived the plaintiff of "access to relevant discovery," the plaintiff need not identify the lost or frustrated evidence with particularity because it is the moving defendant's burden to show that setting aside default judgment would pose no prejudice to the plaintiff. *Flanagan*, 190 F. Supp. 3d at 159–60.

As an initial matter, Defendants' willful default has already caused considerable prejudice to Plaintiffs by forcing them to waste many hours and resources attempting to track down Defendants for discovery purposes, preparing related motions to compel and for sanctions, and litigating the instant motion.[6] But Defendants' strategic delay would prejudice Plaintiffs moving forward too.  Whether through spoliation, fraud, or the mere passage of time, Defendants have potentially lost, corrupted, or deleted much of the digital evidence Plaintiffs have sought from them for years.  *See, e.g.*, MTC Epstein Decl. Ex. 16 (Plaintiffs' First RFPs to Defendant Nordean, dated May 11, 2023) at 9–18; MTC Epstein Decl. Ex. 20 (Plaintiffs' First RFPs to Defendant Biggs, dated April 4, 2023) at 9–18; MTC Epstein Decl. Ex. 22 (Plaintiffs' Second RFPs to

---

[6] If the Court grants the instant Motion, it should do so on the conditions that Defendants pay Plaintiffs' costs and fees associated with Defendants' discovery delays, the motion to compel, the motion for sanctions (default judgment), and the present motion. *See Capital Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 395 (D.D.C. 2005) ("[A] district court has inherent power to impose a reasonable condition on the vacatur [of default judgment] in order to avoid undue prejudice to the opposing party." (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515–16 (2d Cir. 2001) (affirming imposition of bond requirement as condition for vacatur of default and discussing cases))); *see also Gilmore*, 675 F. Supp. 2d at 114 (requiring payment of fees and costs, and posting of bond, as condition for default vacatur); *Serv. Emps. Int'l Union Nat'l Industry Pension Fund v. Hamilton Park Health Care Ctr., Ltd*, 304 F.R.D. 65, 71–72 (D.D.C. 2014) ("[I]t is appropriate to condition vacatur of the default on the two moving defendants' payment of plaintiffs' reasonable attorney's fees and costs associated with (1) plaintiffs' affidavit for default, (2) plaintiffs' motion for default judgment, and (3) plaintiffs' reply in support of the default judgment motion."). Plaintiffs are prepared to so move.

Defendant Biggs, dated March 28, 2024) at 5–6; MTC Epstein Decl. Ex. 27 (Plaintiffs' Third RFPs to Defendants Tarrio and Biggs, dated April 1, 2025) at 4. Indeed, some defendants in this action have already claimed to have lost critical sources of evidence.[7] Others were convicted of tampering in the aftermath of January 6, 2021, with evidence that is relevant to the claims in this case.[8] At the same time, Defendants have not produced any discovery or confirmed that they have preserved relevant discovery, such that their return to the case—even in purported "good faith"— is unlikely to avoid prejudice to Plaintiffs. Accordingly, there "can be no doubt that the Plaintiffs will be materially and actually prejudiced in their effort to take discovery." *Flanagan*, 190 F. Supp. 3d at 159 (internal quotation and citation omitted).

Plaintiffs cannot be faulted for a lack of specific examples of documents and devices spoliated or witnesses now unavailable. As courts have noted, it is not a plaintiff's burden to identify such examples when the defendant's default has deprived the plaintiff of those particulars. *See Flanagan*, 190 F. Supp. 3d at 159–60. In *Flanagan*, the plaintiffs argued that the defendant's discovery delays and consequent default had made it impossible to (i) obtain documents that were "undoubtedly . . . destroyed" and (ii) take discovery from potential personnel or other witnesses who, for various reasons, were no longer available after such a delay. *Id.* at 159. When the defendant complained that the plaintiffs could not identify any such witnesses or personnel with particularity, the court found that "rich": "Of course Plaintiffs cannot identify particular, relevant personnel; as a consequence of [the defendant's] default, they have had no access to relevant

---

[7] Another defendant in this case, Dominic Pezzola, also a Proud Boys member, Amended Complaint ¶ 34, recently claimed in response to Plaintiffs' interrogatories that he "accidentally left" his phone from the relevant time period at the home of a fellow Proud Boy, who subsequently "threw it away." Blumberg Opp. Decl. ¶ 7 & n.2.

[8] For example, multiple defendants in this case were criminally charged and convicted of tampering with evidence relating to January 6, 2021. These include Defendants Stewart Rhodes, Kelly Meggs, and Thomas Caldwell, *see* Superseding Indictment at 38–39, 44, *United States v. Rhodes*, No. 1:22-cr-00015-APM (D.D.C. June 22, 2022), Dkt. 167; Verdict Form at 6–7, *Rhodes* (Nov. 29, 2022), Dkt. 410, and Defendants Derek Kinnison and Erik Warner, *see* Retyped Second Superseding Indictment at 18–19, *United States v. Hostetter*, No. 1:21-cr-00392-RCL (D.D.C. Nov. 8, 2023), Dkt. 378 (alleging that Defendants Kinnison and Warner deleted relevant Telegram app messages); Judgment as to Erik Scott Warner at 2, *Hostetter* (Apr. 23, 2024), Dkt. 468; Judgment as to Derek Kinnison at 2, *Hostetter* (Apr. 23, 2024), Dkt. 472.

discovery in this case for over four years." *Id.* at 159–60. Here, too, "Plaintiffs cannot identify particular, relevant" examples of lost or destroyed digital evidence because, "as a consequence of" Defendants' discovery delays and default, Plaintiffs have "had no access to relevant discovery" for years since the litigation recommenced. *Id.*

Defense counsel's limited appearance for this Motion only makes it more likely that Plaintiffs' prejudice will continue. On the one hand, Defendants ask the Court to excuse their default because "[t]he events that precipitated the default judgment all occurred" when they were pro se. On the other, they tell the Court that they will fulfill their discovery obligations if their Motion is granted, at which point they once again would proceed pro se. *Compare* Mot. ¶ 6 *with id.* ¶ 4. The Court should reject these inconsistent arguments.

Moreover, the Court's order to set aside default against other defendants in this case, which Defendants attempt to rely on, does not apply. Defendants invoke the Court's decision to set aside an entry of default against Defendants Pezzola and Rhodes to argue that Plaintiffs would suffer no prejudice by letting Defendants Nordean and Biggs back into the litigation. But even though the Court's list of considerations is similar, the threshold for setting aside a mere entry of default is much lower than that for setting aside default judgment. *See Flanagan*, 190 F. Supp. 3d at 150 ("A *final* default judgment, by contrast [to an entry of default], can be set aside only under the more stringent standard of Rule 60(b)."). That the Court lifted default against Defendants Pezzola and Rhodes therefore does not mean that it should also set aside default judgment as to Defendants Nordean and Biggs.

Second, the process by which the Court arrived at default judgment against Defendants Nordean and Biggs was different than that for the routine entry of default against Rhodes and Pezzola. Defendants Nordean and Biggs initially participated in the litigation and therefore had clear notice of its ongoing character when they stopped engaging. *See supra* at 10–15. They then chose to stop participating in the litigation and similarly chose not to monitor the case or provide updated contact information. In turn, Plaintiffs made multiple unreciprocated attempts at outreach, filed and won a motion to compel, ultimately resorted to filing a motion for the sanction of default

18

judgment, and are now litigating this Motion. *See supra* at 2–4. Defendants Pezzola and Rhodes, on the other hand, never responded to the amended complaint, so Plaintiffs needed only to submit routine affidavits confirming service of the amended complaint to obtain the clerk's automatic entry of default. *See* Dkts. 229, 230. The Court's order setting aside these automatic default entries has no bearing on this Motion.

Accordingly, Plaintiffs would continue to suffer considerable prejudice if the Court revives the litigation as to Defendants.

### C.    Defendants Nordean and Biggs Have Failed to Allege Meritorious Defenses.

When considering whether a defendant moving to vacate default judgment under Rule 60(b)(1) has alleged a meritorious defense, courts routinely reject general denials, conclusory allegations without factual support, and defenses that would not constitute complete defenses to the underlying claims even if proven. *See Whittaker v. D.C.*, 228 F.R.D. 378, 381 (D.D.C. 2005). In *Whittaker*, the Attorney General, arguing for the defendant and proffering no factual allegations of its own, made a perfunctory denial of the claims. *Id*. The court denied the defendant's motion for failing to allege a meritorious defense, finding that this "general denial" of the allegations in the complaint did not satisfy the required Rule 60(b)(1) showing. *Id*. Similarly, in *National Restaurant Association Educational Foundation v. Shain*, the court found that the defendants, seeking to set aside an entry of default, failed to allege a meritorious defense when they provided a "laundry-list" of eighteen affirmative defenses without supplying "any factual basis" or "explanation" for them. 287 F.R.D. 83, 87–88 (D.D.C. 2012) (emphasis omitted). These defenses "amount[ed] to nothing more than conclusory denials, which the Court rejects." *Id.* at 88. And "[b]y neglecting to allege facts in their answer or even address their proposed affirmative defenses in their motion," the defendants "provided no means by which the Court might assess them, much less conclude that they are meritorious." *Id*. Here, Defendants fail to present meritorious defenses because their Motion contains mere general denials of the allegations in the underlying dispute, and their answers provide no basis to discern the merit of their affirmative defenses.

19

Thus, Defendants' Motion and answers fit squarely within *Whittaker* and *Shain*. The nine affirmative defenses in Defendant Nordean's answer and the eight affirmative defenses in Defendant Biggs's answer—most comprising just one sentence—do not include any case-specific facts or references, much less attempt to apply law to fact. *See* Dkts. 99, 479-2. Nor do their Motion or the specific responses in their respective answers adduce any facts "by which the Court might assess" their defenses, "much less conclude that they are meritorious." *Shain*, 287 F.R.D. at 88; Dkts. 99, 479-2. Like the defendants in both *Shain* and *Whittaker*, Defendants submitted a shoestring motion with no specific facts to substantiate their defenses and only general denials as to the underlying dispute. *Shain*, 287 F.R.D. at 87–88; *Whittaker*, 228 F.R.D. at 381. The instant Motion lacks any declaration or affidavit to supplement the record with new facts as to Plaintiffs' claims—instead, it only purports to address Defendants' procedural shortcomings, mentioning nothing of the underlying dispute. *See* Mot. *passim*; *supra* at 2–4. The only words the Motion spares on the underlying claims are that Defendants "deny (1) the existence of or their participation in the conspiracy alleged in the Amended Complaint and (2) any allegations of assault or battery." Mot. ¶ 12. These factually unsupported "general denials" do not carry Defendants' burden of showing that they have alleged a meritorious defense. *Whittaker*, 228 F.R.D. at 381.

## II.    Defendants Forfeited Their Alternative Request to Alter or Amend the Judgment by Offering a Skeletal Argument.

Defendants summarily request alternative relief under Fed. R. Civ. P. 59(e) without citing case law in support of this request or otherwise discussing it beyond noting that it is timely. Mot. ¶ 9. The law is clear that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Or, put differently, "[j]udges are not expected to be mindreaders," and a litigant therefore "has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Id.* (quoting *Zannino*, 895 F.2d at 17).

20

In requesting that the Court amend or alter the judgment without offering explanation for *how* or *why* they want the Court to do so, Defendants have made only a "skeletal" argument that leaves the Court to divine their argument for them. The Court should not do so, and Plaintiffs cannot meaningfully respond to this barebones argument. Defendants have thus forfeited any request for alternative relief under Fed. R. Civ. P. 59(e).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny this motion to vacate the judgments against Defendants for failing to meet their burden under Rule 60(b)(1). Plaintiffs further request that the Court deny Defendants' request to amend or alter the judgments under Rule 59(e) as forfeited.

Dated: April 13, 2026

Respectfully submitted,

SELENDY GAY PLLC
Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Babak Ghafarzade, *pro hac vice*
Sarah W. Chase, *pro hac vice*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
bghafarzade@selendygay.com
schase@selendygay.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW

By:  /s/ Jeffrey Blumberg

    Edward G. Caspar, D.C. Bar No. 1644168
    Jeffrey Blumberg, D.C. Bar No. 432928
    Marc P. Epstein, D.C. Bar No. 90003967
    1500 K Street NW, Suite 900
    Washington, D.C. 20005
    Tel: 202-662-8326
    ecaspar@lawyerscommittee.org
    jblumberg@lawyerscommittee.org
    mepstein@lawyerscommittee.org

SPERLING KENNY NACHWALTER
William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com
ehonkonen@sperlingkenny.com

22

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, I served a copy of the foregoing Motion and accompanying documents on all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice to all attorneys of record. Plaintiffs are serving the remaining Defendants via first class mail or other permitted means.

Dated: April 13, 2026                                    */s/ Jeffrey  Blumberg*
                                                                Jeffrey Blumberg

23