**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| CONRAD SMITH et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-02265 (APM) |
| | ) | |
| DONALD J. TRUMP et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Before the court is a discovery dispute over whether certain Defendants and their counsel have an obligation to produce to Plaintiffs electronic discovery that may be in the actual possession of their criminal defense counsel. *See* Pls.' Mot. to Compel Def. Tarrio to Produc. Crim. Case Disc., ECF No. 482 [hereinafter Pls.' Mot.]; Joint Case Status Report, ECF No. 483 [hereinafter Jt. Report], at 2–7. Specifically, Plaintiffs have sought from Defendants Tarrio, Meggs, Rehl, Pezzola, and Rhodes "Cellebrite reports" of their individual "devices and electronic accounts." Jt. Report. at 2–7. Cellebrite reports are forensic summaries of mobile-device data that the Federal Bureau of Investigation generated from Defendants' devices that were seized as part of the investigation into the events of January 6. The government produced these reports to criminal defense counsel during Defendants' respective prosecutions.

Although Defendants themselves do not have actual possession of these Cellebrite reports, they agree that, if their criminal defense counsel has them, the reports are in their "possession, custody, or control" for purposes of Federal Rule of Civil Procedure 34(a)(1). *See* Def.' Tarrio's Resp. to Pls.' Mot., ECF No. 487 [hereinafter Tarrio Opp'n], at 1; *see generally* Jt. Report at 3–7

(requesting Cellebrite reports of devices and electronic accounts as to Meggs, Rehl, Pezzola, and Rhodes).  Still, Defendants and their counsel now make three overarching objections to Plaintiffs' request: (1) the Cellebrite reports are subject to protective orders in the criminal cases that bar their disclosure, Jt. Report at 3–6; (2) producing the reports would be unduly burdensome, *id.* at 4, 5; and (3) although Federal Rules of Civil Procedure 26 and 34 obligate them to obtain the Cellebrite reports, their counsel in this case have no corresponding duty to assist in that effort, *see* Tarrio Opp'n at 1–2.  None of these objections are well taken.

To begin, the criminal case protective orders do not foreclose disclosure of the Cellebrite reports to either civil defense counsel or Plaintiffs.  The protective orders in both *United States v. Crowl* and *United States v. Nordean* limit the disclosure of materials designated as "Sensitive" or "Highly Sensitive."  *See* Protective Ord. Governing Disc., *United States v. Crowl*, No. 21-cr-28-APM (D.D.C.), ECF No. 123 [hereinafter *Crowl* PO],[1] ¶ 1; Protective Ord. Governing Disc., *United States v. Nordean*, No. 21-cr-175-TJK (D.D.C.), ECF No. 83 [hereinafter *Nordean* PO], ¶ 1.  Both protective orders expressly *exclude* from those designations "materials that [w]ere derived directly from Defendant or that pertain solely to Defendant."  *Crowl* PO ¶ 11(b); *Nordean* PO ¶ 11(b).  Examples of such materials includes "Defendant's  . . . telephone records, digital device downloads, social media records, electronic communications . . ." *Id.*  Cellebrite reports fit this description.  They are "digital device downloads" and they may contain "telephone records," "social media records," and "electronic communications."  The protective orders thus could not be clearer: Cellebrite reports of Defendants' individual devices are not subject to any limit on disclosure.

---

[1] Defendant Rhodes was not an original defendant in this case, but the court in *United States v. Rhodes* adopted all filings in *Crowl* such that the protective order in *Crowl* governed discovery in the later-filed *Rhodes* matter.  *See* Order, *United States v. Rhodes,* No. 22-cr-15-APM (D.D.C.), ECF No. 8.

Defendants' undue burden objection fares no better.  Defendants argue that the Cellebrite reports are likely to be voluminous and only parts will be relevant to this matter, and the time needed to redact irrelevant information will consume substantial time and resources, creating an undue burden.  Jt. Report at 3–5.  The court does not doubt that the Cellebrite reports will be full of information, including of a highly private nature, that is not relevant to this litigation.  But there are ways to deal with that challenge without requiring counsel to spend inordinate time making redactions.  For instance, a protective order limiting the use and distribution of such materials is one answer.  Further, the court is confident that Plaintiffs' counsel will not misuse sensitive, irrelevant information that they receive.  And, if they were to do so, the court may sanction any misconduct.

Finally, Tarrio's counsel asserts that, although the Rules compel his client to obtain the Cellebrite reports from criminal defense counsel, he personally has no obligation to assist in that effort.  *See* Tarrio Opp'n at 1–2.  That position is mystifying.  It seems to rest on the notion that he can pick and choose when he has a duty to assist Tarrio in satisfying discovery demands.  But just the opposite is true.  "Lawyers have a special professional obligation to ensure compliance with the procedural rules because '[a] lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.'"  *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 4750552, at *1 (D.D.C. July 13, 2023) (quoting ABA Model R. Prof'l Conduct, Preamble [1] (2023)).  "Lawyers who fail to fulfill their professional obligations to ensure diligent compliance with discovery obligations frustrate the purposes of the procedural rules and therefore may be specially targeted for sanctions, including payment of reasonable attorney's fees and costs caused by the failure."  *Id.*

Tarrio's counsel simply cannot foist onto his client discovery obligations that extend equally to him.

Not surprisingly, Tarrio's counsel cites no authority whatsoever for his position. Instead, he says the *absence* of on-point caselaw is what allows him to refrain from acting. Tarrio Opp'n at 1–2. But the fact that no court has opined in writing on this precise question does not bolster his view; if anything, it undermines it. After all, it is hard to fathom a judicial opinion that would sanction the idea that a lawyer's discovery obligations are both contextual and discretionary.[2] No court has said so before. This court will not be the first.

Accordingly, the court hereby orders Defendants Tarrio, Meggs, Rehl, Pezzola, and Rhodes and their counsel to undertake reasonable efforts to obtain and disclose to Plaintiffs any Cellebrite reports of the individual digital devices that their criminal defense counsel received in discovery or as to which their client otherwise has possession, custody, or control. If a protective order is needed, the court will consider one. Defendants and their counsel shall take steps to comply with this Order by no later than May 6, 2026. The affected parties shall submit a Joint Status Report by May 11, 2026, which updates the court on the retrieval and production of Cellebrite reports.[3]

Dated: April 22, 2026

Amit P. Mehta
United States District Judge

---

[2] The court, of course, excludes conduct that would require a lawyer to act unethically. Tarrio's counsel has not even hinted that his stance rests on avoiding an ethical transgression.

[3] This Order does not reach any other discovery demand that Plaintiffs may have made to these Defendants. *See* Pls.' Mot. at 2 (demanding production of "any other communications produced to [Defendant Tarrio] in [his] criminal case . . . from November 3, 2020, to January 21, 2021, excluding trial exhibits"); Jt. Report at 2–7 (stating that Plaintiffs "provided a short list, which *included* a request for Cellebrite reports . . .") (emphasis added).