**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMITH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TRUMP, et al.,<br><br>    Defendants. | CIVIL ACTION NO.: 1:21-cv-02265-APM |
| ZACHARY REHL,<br><br>    Counter-Plaintiff,<br><br>    v.<br><br>THE LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW,<br><br>    Counter-Defendant;<br><br>    and<br><br>UNITED STATES OF AMERICA,<br>TODD BLANCHE, ACTING ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,<br>950 Pennsylvania Ave., N.W.<br>Washington, D.C. 20530,<br><br>    Third-Party Defendant. | **ZACHARY REHL'S REPLY TO LAWYERS COMMITTEE'S OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER WITH COUNTERCLAIMS** |

Zachary Rehl (hereinafter "Rehl") respectfully replies to the Lawyers Committee for Civil Rights Under Law's ("Lawyers Committee") Opposition [D.E. 500] to Rehl's Motion for Leave to File Second Amended Answer with Counterclaims [D.E. 495]. In support thereof, Rehl states as follows:

**MEMORANDUM OF LAW**

## I.     The Lawyers Committee is Misusing its Tax-Exempt Status to Encourage Discriminatory Disfavoring of White Working-Class Christians

The Lawyers Committee is a "public charity" pursuant to section 501(c)(3) of the Internal Revenue Code ("IRC") [*26 U.S.C. § 501(c)(3)*] who self-identifies its public charity as "[a]n organization that normally receives a substantial part of its support from a governmental unit or from the general public described in section 170(b)(1)(A)(vi)."  Lawyers Committee for Civil Rights Under Law, *2022 Return of Organization Exempt from Income Tax* at 15, *Schedule A (Form 990)* Public Charity Status and Public Support, *https://www.lawyerscommittee.org/wp-content/uploads/2023/11/LCCRUL-Public-Disclosure-2022.pdf* (open to public inspection, last accessed May 30, 2026).

The Lawyers Committee's operates several tax-exempt program services, including its Criminal Justice Project, which is at issue here.  For tax year 2021, the Lawyers Committee amended the stated purpose for the "Criminal Justice Project's" to:

> "The Criminal Justice Project challenges structural racism within the criminal justice system and aims to ensure that ***Black people and other people of color enjoy safety from violence by the state and by white supremacists***.  Areas of focus include promoting ***police accountability and combatting the criminalization of poverty and holding white supremacists accountable through a sub-unit known as the James Byrd, Jr. Center to Stip (sic) Hate***."

> *Id*. at 49, *Schedule O (Form 990) 2022 Supplemental Information to Form 990 or 990-EZ* (open to public inspection, last accessed May 30, 2026).

An entity who receives tax-exempt status has received a grant of federal financial assistance, which "operates in effect as Government matching grant and is available only for the particular purposes stated in the Code [IRC]."  *McGlotten v. Connally*, 338 F. Supp. 448, 462 (D.D.C. 1972)  (holding tax-exemptions were federal financial assistance that could not be used for discriminatory purposes where Black man challenged tax-exempt status of the Grand Lodge

of the B.P.O.E., because its Constitution limited membership to White male citizens of the United States of America).

Tax-exemptions are "substantial and significant support by the Government" that are not available for entities whose conduct and activities violate the Constitution or frustrate federal policy. *Green v. Connally*, 330 F. Supp. 1150, 1169 (D.D.C. 1971), *aff'd sub nom. Coit v. Green*, 404 U.S. 997 (1971) (private schools that excluded Black students were not eligible for tax-exempt status, because such an award means substantial and significant Government support for constitutionally prohibited segregation and frustrates federal policy).

Taxpayers bear the burden of establishing their entitlement to exemptions and that it complies with the limits set by congressional policy that it neutral in political affairs and that no substantial part of the activities of which is carrying on propaganda. *Christian Echoes Nat. Ministry, Inc. v. United States*, 470 F.2d 849, 854 (10th Cir. 1972). The "Supreme Court has declared that the Constitution forbids the Government [through tax exemptions from] supporting and encouraging" conduct that violates the Constitution, and conduct that the government itself could not do. *McGlotten,* 338 F. Supp. at 462 (D.D.C. 1972).

Here, the Lawyers Committee offers no explanation for what a White supremacist is, the process used to determine who is a White supremacist, the process offered to the accused, who is authorized to make this determination, how they "hold White supremacists accountable," or for what they are being held accountable. It is impossible to distinguish the Lawyers Committee's tax-exempt stated purpose of "holding White supremacists accountable" from propaganda and advocacy for discrimination against White people.

II.     **Rehl Has Suffered an Injury in Fact**

Rehl's counterclaims have sufficiently plead that he was injured by being branded a Klansman, White supremacist, neo-Nazi, and neo-Fascist, deprived any semblance of due process to defend himself, and to Rehl's detriment the Lawyers Committee has exploited his branding to raise millions of dollars in tax exempt donations and matching federal financial assistance via its tax exemption.

The Lawyers Committee argues Rehl's motion must be denied, because he can "not satisfy Article III's core requirements: injury in fact, traceability, and redressability," specifically that Rehl cannot prove he suffered an injury in fact to satisfy the first prong of *Lujan*. *Plaintiffs Opposition to Zachary Rehl's Motion for Leave to File Second Amended Answer with Counterclaims ("Pl. Opp.")* at 6 [D.E. 495] *(citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)*.* This argument ignores that at this stage to establish standing, a party only "must state a plausible claim that [he has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905, 913 (D.C. Cir. 2015).

In its argument, the Lawyers Committee mischaracterizes Rehl as a third-party and relies on authorities where third-party's were found to lack standing because they were not directly injured by the Internal Revenue Service's ("IRS") grant of § 501(c)(3) tax exempt status. First, the Lawyers Committee relies on *Allen v. Wright*, a nation-wide class action where a group of "[p]arents of black public-school children" in desegregating school districts sued to prevent the IRS from granting tax-exempt status to private schools located in these school districts who plaintiffs alleged stifled desegregation by engaging in racial discrimination. *Allen v. Wright*, 468 U.S. 737, 739-740, 747 (1984). The parents alleged the IRS had "not adopted sufficient standards and procedures" to prevent private schools that engaged in racial discrimination from

receiving tax-exempt status.  *Id.* at 739-740, 747.  At the time of the suit, the IRS's rules required private schools to "show affirmatively both that it has adopted a racially nondiscriminatory policy as to students and made it known to the public" and provide demographic breakdowns of faculty and students, and recipients of financial aid and scholarships, and to keep records of its ongoing compliance with these requirements.  *Id.* at 741.

The parents never alleged "their children [were] the victims of discriminatory exclusion," or were forced to attend segregated schools, "[i[ndeed, they have not alleged at any stage…that their children have ever applied or would ever apply to any private school."  *Id.* at 746.  The Court agreed with the IRS's viewpoint, that the parents' alleged injuries were "highly indirect," and if discrimination was present, it "results from the independent action of some third party." *Id.* at 757.  The Supreme Court held that the parents lacked standing, because they could not establish a direct injury related the private schools' tax-exempt status.  *Id.* at 746.

Next, the Lawyers Committee relies on *Simon v. E. Ky. Welfare Rights Org.,* where indigent serving organizations and a group of indigents who claimed they were denied hospital services brought suit against the IRS after they issued a ruling that provided tax exempt status to "a nonprofit hospital that offered only emergency-room services to indigents."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28-29 (1976).  The plaintiffs alleged the ruling "encouraged hospitals to deny services to indigents" and caused their service denials.  *Id.* at 42-43.  The Supreme Court held plaintiffs lacked standing, because it was "purely speculative" whether the denials of service resulted from decisions made by the hospitals "without regard to the tax implications," or for some other reason.  *Id.* at 42-43.

The Lawyers Committee continues to mischaracterize Rehl as a third-party to argue he cannot challenge its tax exemption by citing *Abulhawa v. United States Dep't of the Treasury*,

239 F. Supp. 3d 24 (D.D.C. 2017).  In *Abulhawa*, third-parties brought suit to revoke the tax-exempt status of organizations that raise funds to build homes in the West Bank and East Jerusalem, which plaintiffs alleged was a criminal enterprise that caused at least one plaintiff to suffer the loss of real property, and that the donors only contributed because of the tax-exempt status.  *Abulhawa*, 239 F. Supp. 3d at 27-35.  The complaint was dismissed because the Court could not redress plaintiffs injuries, where it found two groups of plaintiffs; one group of plaintiffs had already suffered the loss of their property and could not be made whole and the second group alleged future injuries that were too speculative.  *Id.* at 36-37.

Lawyers Committee further cites *Khalaf v. Regan*, 1985 WL 392 at *1 (D.D.C. Jan. 8, 1995) to claim Rehl lacks standing which requires dismissal.  In *Khalaf*, a group of third-party individuals challenged tax-exemptions provided to several organizations that support settlements in the West Bank where plaintiffs alleged these organizations used tax exempt funds to finance the confiscation of their real property by Israel.  *Id*.  The Court dismissed the complaint where it found it could not redress the third-party plaintiff's injuries where they were "removed from their positions as officials of West Bank villages, placed [ ] under town arrest, imprisoned [ ], or expelled [ ] outright from Israeli-held territory" because their injuries "can neither be rationally attributed to benefits conferred by U.S. tax laws, nor is it any more likely to be redressed by their elimination."  *Id.* at *3.  The Lawyers Committee's authorities are misplaced.

Rehl is not a third-party like the *Allen* parents whose children were not injured, because they never applied to the allegedly discriminatory private schools, or *Simon* where reasons for the service denials were unclear, or outsiders in *Abulhawa and Khalaf*.  Rehl's injuries are directly linked to the Lawyers Committee's unsupported denigration of him as a Klansman,

White supremacist, neo-Nazi, and neo-fascist and the Lawyers Committee's tax-exempt stated purpose of "holding White supremacists accountable."

### III.    Rehl Can Establish Causation and Redressability

The courts find a party has standing in "cases challenging government action on the basis of third-party conduct that would otherwise be illegal in the absence of the Government's action." *Nat'l Wrestling Coaches Ass'n v. Dept. of Educ.,* 366 F.3d 930, 940-41 (D.C. Cir. 2004). In these circumstances, "[c]ausation and redressability [are satisfied simultaneously] because the intervening choices of third parties are not truly independent of government policy." *Id.* (*citing Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 442 (D.C. Cir. 1998)).

Rehl's ability to satisfy causation and redressability is supported by this District's holding in cases where plaintiffs were injured by the conduct of third-parties who were truly not independent of the government. Causation and redressability were satisfied where a lesbian couple was denied the ability to foster an unaccompanied refugee child because of the religious beliefs of the government funded program administrator. *Marouf v. Azar*, 391 F. Supp. 3d 23, 34–35 (D.D.C. 2019). In *Marouf*, plaintiffs had standing, because the government funded administrator's denial based on its religious beliefs placed same-sex couples in a disfavored class, which "is otherwise illegal in the absence of the Government's action." *Id.* at 35 (*quoting Nat'l Wrestling Coaches Assn.*, 366 F.3d at 940. (internal quotations omitted).

In *Tozzi v. United States Department of Health & Human Services,* a manufacturer of medical devices sued HHS after it published a report that upgraded a substance in the manufacturer's PVC from a substance "reasonably anticipated" to be a human carcinogen to a "known" human carcinogen. *Tozzi v. United States Department of Health & Human Services,* 271 F.3d 301, 304-306 (D.C. Cir. 2001). The D.C. Circuit found that the plaintiff could redress

7

his injuries through the action, because HHS' upgrade directly injured his profits, reputation, and goodwill, where ninety-five percent of its sales relied on the substance, and the HHS upgrade would be a substantial factor in municipalities to decisions to stop buying and using PVC, and manufacturer would be viewed responsible "for introducing a known human carcinogen into the environment." *Tozzi*, 271 F.3d at 307-308.

The Court in *Tozzi* stressed "[a]n additional factor reinforces our conclusions regarding both injury and causation: [w]hen the government attaches an inherently pejorative and damaging term such as carcinogen to a product, the probability of economic harm increases exponentially." *Id.* at 309.

Rehl further relies on *Motor & Equip. Mfrs. Ass'n v. Nichols*, where an association of automotive aftermarket manufacturers challenged two EPA rules (1) that permitted California to enforce its own automotive emissions; and (2) the EPA's subsequent rule that deemed compliance with the California diagnostic device regulations as compliance with the federal diagnostic device regulations. *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 452 (D.C.Cir.1998). In *Motor & Equip. Mfrs.*, the court found the plaintiff established standing, because he was likely to be financially injured by the ruling, and its injuries were traceable to the rules, which permitted third-party conduct that "resulted in an almost unanimous decision by major manufacturers to install OBDs that comply with California's regulations." *Id.* at 457.

In *Animal Legal Defense Fund*, the D.C. Circuit found plaintiffs had standing, who were injured by viewing primates in captivity and sued the Secretary of Agriculture for failing to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors" where a favorable decision would improve

the living conditions of the primates. *Animal Legal Def. Fund, Inc. v. Glickman,* 154 F.3d 426, 428 (D.C. Cir. 1998).

A party who has never been a Klansman, White supremacist, neo-Nazi, and neo-fascist member is injured when the government adjudicates him as such, and applies these pejorative labels to seize his property without due process, such conduct by the Government would be unlawful.  Through this action Rehl can redress his injuries and pursue a change in the system that provides federal financial assistance to entities who engage in racial discrimination of White people under the reckless and unsupported canard that they are Klansmen, White supremacists, neo-Nazis, and neo-fascists.  *Marouf,* 391 F. Supp. at 37.

## IV.    Conclusion

The Lawyers Committee's remaining arguments that Rehl's abuse of process claims fails, the claim is unduly delayed, in bad faith, and dilatory are without merit.  The Lawyers Committee does not explain how they would be prejudiced with discovery still ongoing and their intentions to conduct upwards of 100 depositions and demands for discovery to third-parties pending.  The blatantly obvious political nature of this action which was brought without regard for the Professional Rescuer's Doctrine prohibition of such claims, illustrates the ulterior purpose of this action.  Lastly, demanding that the Lawyers Committee dismiss this frivolous action does not bad faith make.

Respectfully submitted,

June 2, 2026

_____

Patrick Trainor, Esq. (appearing *pro hac vice*)
**LAW OFFICE OF PATRICK TRAINOR**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070

P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Zachary Rehl*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of June 2026, the foregoing document was filed through the CM/ECF System, and the notification of such electronic filing will be sent to all counsel of record in this case.

June 2, 2026                                             _____

                                                                   Patrick Trainor, Esq.